1  GRODSKY, OLECKI & PURITSKY LLP
   Allen B. Grodsky (SBN 111064)
2  *allen@thegolawfirm.com*
   John J. Metzidis (SBN 259464)
3  *john@thegolawfirm.com*
   11111 Santa Monica Boulevard, Suite 1070
4  Los Angeles, California 90025
   Telephone:   (310) 315-3009
5  Facsimile:   (310) 315-1557

6  Attorneys for Defendants
   Katherine Von Drachenberg, Kat Von D, Inc.,
7  and High Voltage Tattoo, Inc.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  WESTERN DIVISION

12

13 | JEFFREY B. SEDLIK, an individual; | Case No. 2:21-cv-01102-DSF-MRWx |

   Plaintiff,

14 | | DISCOVERY MATTER
      Before the Hon. Michael R. Wilner,
      U.S. Magistrate Judge |

   vs.

15

16 KATHERINE VON
   DRACHENBERG (a.k.a. "KAT
   VON D"), an individual; KAT

17 VON D., INC., a California
   corporation; HIGH VOLTAGE

18 TATTOO, INC., a California
   corporation; and DOES 1 through 10,

19 inclusive,

20             Defendants.

**JOINT STIPULATION (L.R. 37-2.1) RE: DEFENDANTS' MOTION FOR ORDER (1) COMPELLING PLAINTIFF TO ANSWER INTERROGATORIES; OR, ALTERNATIVELY, (2) IMPOSING SANCTIONS FOR PLAINTIFF'S FAILURE TO ANSWER**

21

Hearing
Date:    January 19, 2022
22 Time:    9:30 a.m.
   Place:   Courtroom 550
23            Roybal Federal Building
             255 E. Temple Street
24            Los Angeles, CA 90012

25 Action filed:  February 7, 2021
   Fact DCO:      February 1, 2022
26 FPTC:          June 27, 2022
   Trial:         July 26, 2022

27

28

1

2

## **TABLE OF CONTENTS**

3    1.    DEFENDANTS' INTRODUCTORY STATEMENT ..................................... 5

4    2.    PLAINTIFF'S INTRODUCTORY STATEMENT ........................................ 8

5    3.    DEFENDANTS' SPECIAL INTERROGATORY NO. 8 ........................... 15

6          A.    Defendants' SPI No. 8 and Plaintiff's Written Responses ................ 15

7          B.    Defendants' Contentions as to Defendants' SPI No. 8 ...................... 16

8                (1)    The Interrogatory Seeks Relevant Information. ...................... 16

9                (2)    Plaintiff's Response is Deficient and Evasive; He Should
                        Be Compelled to Answer in Full. ............................................. 18
10
11               (3)    Alternatively, The Court Should Impose Issue Sanctions
                        Under Rule 37(d). ................................................................... 19

12               (4)    Conclusion. .............................................................................. 20

13         C.    Plaintiff's Contentions as to Defendants' SPI No. 8 ......................... 20

14               (1)    Defendants failed to formulate an answerable interrogatory
                        in SPI No. 8. Their motion demonstrates unequivocally that
15                      what they assert is "Hornbook law" is far from it. ................... 21

16               (2)    Plaintiff is not legally required to conduct extensive legal
                        research to attempt to determine undefined terms in
17                      Defendants interrogatory ........................................................ 23

18               (3)    Plaintiff did not waive any objections by timely responding
                        to interrogatories following an extension granted by
19                      Defendants' counsel. ............................................................... 24

20               (4)    Plaintiff's Conclusion ............................................................. 25

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**<u>Cases</u>** **<u>Page</u>**

3

*A. Farber & Partners, Inc. v. Garber*,
    234 F.R.D. 186 (C.D. Cal. 2006) ...................................................... 7, 18

4

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994) ............................................................ 16

5

6

*Axelbank v. Rony*,
    277 F.2d 314 (9th Cir. 1960) ......................................................... 6, 16

7

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ............................................................ 16

8

9

*Davis v. Fendler*,
    650 F.2d 1154 (9th Cir. 1981) .......................................................... 19

10

*Deere v. Am. Water Works Co.*,
    306 F.R.D. 208 (S.D. Ind. 2015) ........................................................ 6

11

12

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997) .......................................................... 17

13

*Eagle Access Control Systems, Inc. v. USA Power Gate, Inc.*,
    2008 WL 11334485 (C.D. Cal. Dec. 18, 2008) ............................. 17, 22, 23

14

15

*Ets-Hokin v. Skyy Spirits, Inc.*,
    225 F.3d 1068 (9th Cir. 2000) .......................................................... 17

16

*Idema v. Dreamworks, Inc.*,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001) ................................... 17, 18, 22, 23

17

18

*La Chemise Lacoste v. Alligator Co. Inc.*,
    60 F.R.D. 164 (D. Del. 1973) ........................................................... 23

19

*L.H. v. Schwarzenegger*,
    2007 WL 2781132 (E.D. Cal. Sept. 21, 2007) ..................................... 23

20

21

*Los Angeles News Serv. v. Tullo*,
    973 F.2d 791 (9th Cir. 1992) ...................................................... 6, 17, 21, 22

22

*National Ass'n of Radiation Survivors v. Tumage*,
    115 F.R.D. 543 (N.D. Cal. 1987) ...................................................... 23

23

24

*O'Connor v. Boeing N. American, Inc.*,
    185 F.R.D. 272 (C.D. Cal. 1999) ........................................................ 6

25

*Ramirez v. County of Los Angeles*,
    231 F.R.D. 407 (C.D. Cal. 2005) ...................................................... 19

26

27

28

1

## TABLE OF AUTHORITIES
(continued)

2

3

*Reece v. Island Treasures Art Gallery, Inc.,*
4
    468 F. Supp. 2d 1197 (D. Haw. 2006) ..................................................... 17, 22

*Rogers v. Koons,*
5
    960 F.2d 301 (2d Cir. 1992) .................................................................. 17, 22

6

*Skidmore v. Led Zeppelin,*
    952 F.3d 1051 (9th Cir. 2020) ....................................................................... 16
7

*Swirsky v. Carey,*
8
    376 F.3d 841 (9th Cir. 2004) ........................................................................ 16

9

**Statutes**

10

17 U.S.C. § 501 .................................................................................................... 8

11

**Rules**

12

FRCP 33(a)(2) ..................................................................................................... 6

13

FRCP 33(b)(4) ................................................................................................... 19

14

FRCP 37(a)(3)(B)(iii) .............................................................................. 16, 18, 19

15

FRCP 37(a)(4) ............................................................................................... 7, 18

16

FRCP 37(a)(5)(B) ......................................................................................... 21, 26

17

FRCP 37(b)(2)(A) ................................................................................................ 7

18

FRCP 37(b)(2)(A)(i)-(iv) ................................................................................... 19

19

FRCP 37(b)(2)(A)(i) .......................................................................................... 20

20

FRCP 37(b)(2)(A)(ii) ......................................................................................... 20

21

FRCP 37(d)(3) ........................................................................................ 7, 16, 19

22

23

24

25

26

27

28

## 1.   **DEFENDANTS' INTRODUCTORY STATEMENT**

In this copyright infringement action, Defendants seek an order compelling Plaintiff to respond one contention interrogatory.  The interrogatory concerns the protectible elements of Plaintiff's copyrighted photograph.  The Court should order Plaintiff to respond to this interrogatory completely and without objection, or otherwise award appropriate issue sanctions.

This action was brought by a photographer, Plaintiff Jeffrey Sedlik, against a tattoo artist, Defendant Katherine Von Drachenberg (p/k/a "Kat Von D") and her related entities.  In 2017, Kat inked a portrait tattoo of the jazz musician Miles Davis on the arm of one of her clients.  As she has done with many of the tattoos she has inked, she posted photos of the tattoo to her Facebook and Instagram accounts at the time she was working on the tattoo in 2017.

The tattoo was based on a photograph of Miles Davis that was found online.  A comparison of the two appears below:





*Kat's Tattoo*                     *Sedlik's Photograph*

More than three years later, in February 2021, Plaintiff Sedlik filed this lawsuit.  He contends that the tattoo itself and the social media posts depicting the tattoo constitute infringement of his copyright in the Miles Davis photograph.  Compl. ¶¶ 89-90 (Dkt. 1, attached for reference as Ex. 10).

Kat contends the tattoo is a fair use under the Copyright Act, and that she was not required to obtain a license.  She has also raised the statute of limitations as a defense, and contends that her tattoo does not infringe the protectible elements of Plaintiff's copyrighted photograph.

To this end, and relevant here, Defendants propounded the following contention interrogatory to Plaintiff:

- <u>SPI No. 8</u>:  Identify and describe in detail each and every element in the PHOTOGRAPH that you contend is protected by copyright law.

This interrogatory is entirely appropriate for this copyright infringement case.  Rule 33 directly permits interrogatories that ask for a party's "contention that relates to fact or the application of law to fact."  FRCP 33(a)(2).  Such "contention interrogatories" are "permissible and acceptable."  *O'Connor v. Boeing N. American, Inc.*, 185 F.R.D. 272, 280-81 (C.D. Cal. 1999); *cf. Deere v. Am. Water Works Co.*, 306 F.R.D. 208, 215 (S.D. Ind. 2015) (contention interrogatories serve a useful purpose by narrowing the issues for litigation).

As to SPI No. 8, copyright protection "is limited to the new and original contribution of the author."  *Axelbank v. Rony*, 277 F.2d 314, 317 (9th Cir. 1960).  In the photography context, courts "have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as ***protectable elements*** of a photographer's work."  *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992) (citations omitted, emphasis added).  In order to assess Plaintiff's claims of infringement, Defendants are entitled to know what specific elements of his photograph that Plaintiff claims to be protected by copyright law.

Plaintiff has avoided answering this interrogatory.  In response to SPI No. 8, after asserting boilerplate objections, Plaintiff's response – only that "Plaintiff holds a registered copyright in the Iconic Miles Davis Portrait" – is evasive, incomplete, and in fact not responsive at all.  *Cf.* FRCP 37(a)(4).  And Plaintiff was unwilling to supplement these responses further after a telephonic meet-and-confer. Metzidis Decl. ¶¶ 15-16; Ex. 8.

Plaintiff's boilerplate objections are improper and should be overruled.  *E.g.*, *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).  But in addition, Plaintiff also waived any objections by failing to serve timely responses by the November 29, 2021 deadline.  *See* Metzidis Decl. ¶¶ 5-11; Exs. 3-4.  This failure alone is sufficient to disregard Plaintiff's objections and justify the issuance of sanctions under Rule 37(d)(3).

Ultimately, Defendants need ***complete*** and ***unqualified responses*** to their contention interrogatory regarding the protected elements of Plaintiff's copyrighted photograph.  This Court should order Plaintiff to provide such responses forthwith, without objection or qualification.  Alternatively, in light of Plaintiff's failure to serve timely objections and continued resistance to providing complete responses, the Court should impose issue sanctions on Plaintiff pursuant to FRCP 37(d)(3) and FRCP 37(b)(2)(A).[1]

---

[1]     The accompanying declaration of Defendants' counsel, John Metzidis, and accompanying exhibits also refer to an additional interrogatory (SPI No. 3, regarding the statute of limitations) that was in dispute.  As of December 28, 2021, the parties have resolved their dispute as to SPI No. 3, and Defendants have agreed to remove it from this motion.

## 2.    **PLAINTIFF'S INTRODUCTORY STATEMENT**

Plaintiff Jeffrey B. Sedlik ("Sedlik") Sedlik is a world-renowned, award-winning professional photographer and professor. In 1989, Sedlik independently conceived and created the iconic photographic portrait depicting world-famous jazz musician Miles Davis (the "Iconic Miles Davis Portrait") that is the subject of this litigation. Sedlik is the sole and exclusive owner of the copyright in the Iconic Miles Davis Portrait, which is a world-famous image that has appeared in magazines around the world and was featured by Life magazine in its annual "Pictures of the Year" issue.

As alleged in his complaint and described in great detail in response to Defendants' Special Interrogatory Nos. 1 and 2, on or about February 10, 2018, Sedlik conducted a Google search for "Miles Davis portrait." See Metzidis Decl., Exh. 5, Pages 3-5. After spending substantial time reviewing many of the thousands of images presented, and subsequently following many additional links to other images and web pages, Sedlik saw, for the first time, an image of a tattoo that was a copy of the Iconic Miles Davis Portrait. Id. This was the first time Sedlik learned that Defendants had copied the Iconic Miles Davis Portrait. Id. Sedlik subsequently discovered that Defendants had not only copied the Iconic Miles Davis Portrait in the form of a tattoo, but also had unlawfully reproduced, displayed, distributed and/or made derivative works from the Iconic Miles Davis Portrait without Sedlik's authorization in violation of 17 U.S.C. § 501, et. seq. by posting multiple images and videos of the tattoo and also the Iconic Miles Davis Portrait on social media accounts displayed to hundreds of thousands of people in 2017 and 2018. Metzidis Decl., Exh. 10 at page 22. As Defendants readily admit, they never obtained permission or a license from Sedlik to reproduce, display, distribute and/or make derivative works from the Iconic Miles Davis Portrait. Within three years of this discovery, Sedlik filed the instant complaint for copyright infringement against Defendants on February 8, 2021. Metzidis Decl. Exh. 10.

On or about October 25, 2021, Gary Sedlik ("G. Sedlik"), counsel for Plaintiff, received an email from "Stacey Ferguson" with Defendants' law firm of Grodsky, Olecki & Puritsky, LLP with two attached PDF files – Defendants First Set of Special Interrogatories and Defendants' Second Set of Requests for Production. G. Sedlik Declaration at 4 ("G. Sedlik Decl."). G. Sedlik never received service copies of the discovery via U.S. Mail. Id.

On or about December 1, 2021, G. Sedlik received an email from John Metzidis, counsel for Defendants, stating that he was "following up" on Plaintiff's responses to the discovery. G. Sedlik Decl. at 5. G. Sedlik immediately reviewed his email and saw that courtesy copies of the discovery had indeed been sent by email but otherwise was unable to find any record of having received service copies of the discovery. G. Sedlik Decl. at 5. G Sedlik even checked his incoming mail logs for any evidence that he had received the service copies of the discovery (Mr. Sedlik regularly and routinely logs incoming litigation-related mail to ensure that deadlines are properly and timely calendared). G. Sedlik Decl. at 5. G. Sedlik's review confirmed that he had never received service copies of the discovery via U.S. Mail. G. Sedlik Decl. at 5.

After confirming that he had not received service copies of the discovery, G. Sedlik promptly responded to Mr. Metzidis via email and stated "Thank you for reaching out. I was actually wondering about this because I never received these in the mail and assumed your office had decided not to serve or to revise but hadn't followed up. Can you please confirm that they were actually served via mail and, if so, weren't returned to your office?" Metzidis Decl., Exh. 3. Because he had received courtesy copies of the discovery via email and to avoid any issues regarding a dispute about valid service of the discovery via U.S. Mail, G. Sedlik also informed Mr. Metzidis that he would deem service complete in exchange for a short extension of time to provide responses ("In any event, I don't think we need to make an issue out of this as I'd be happy to deem service complete as long as we

have an agreement in terms of a response date.") Metzidis Decl., Exh. 3 and G. Sedlik Decl. at 6.

After exchanging a few emails regarding timing of the responses, Mr. Metzidis confirmed that Plaintiffs could serve responses by Monday, December 13, 2021, as requested by G. Sedlik. Metzidis Decl., Exh. 4 and G. Sedlik Decl. at 7. Specifically, Mr. Metzidis stated that "As long as we get substantive responses, I think next Monday 12/13 should be fine." G. Sedlik. Metzidis Decl., Exh. 4 and G. Sedlik Decl. at 7.

Mr. Metzidis did not explain what he meant by "substantive responses," but G. Sedlik assumed that Metzidis did not intend to violate the Civility and Professionalism Guidelines of the Central District of California by attaching to his agreed extension any "unfair or extraneous conditions," or otherwise condition a brief extension (the first and only extension sought by G. Sedlik relating to this discovery) upon a "preclusion of substantive rights" of Plaintiff. G. Sedlik Decl. at 8. In any event, it was clear that the brief extension did not affect Defendants' substantive rights in the litigation in any way or cause any undue or unnecessary hardship to Defendants. G. Sedlik Decl. at 8.

As agreed, Sedlik timely served his responses to the Special Interrogatories and Requests for Production on December 13, 2021. Metzidis Decl., Exh. 5. G. Sedlik Decl. at 9. Sedlik asserted appropriate and relevant objections to, and also provided a substantive response to, Defendants' Special Interrogatory No. 8, which states:

> Identify and describe in detail each and every element in
> the PHOTOGRAPH that you contend is protected by
> copyright law. As used in this interrogatory, the term
> "PHOTOGRAPH" shall mean and refer to the photograph
> of Miles Davis alleged in Paragraph 15 of your
> Complaint.

Notably, Defendants chose to use the uncapitalized and undefined word "element" in this Interrogatory. Unlike other words and terms Defendants used throughout their discovery, Defendants chose not to provide a definition or explanation for what Defendants may have meant by using the word "element" with respect to the Iconic Miles Davis Portrait.

Frankly, Plaintiff and Plaintiff's counsel had no understanding of the meaning of Defendants' interrogatory, and objected on that basis, as well as other appropriate and applicable bases (Plaintiff did not make "boilerplate" objections, but rather asserted proper and relevant objections based on the formation of the Interrogatory and Plaintiff's attempt to provide a response). G. Sedlik Decl. at 10. Plaintiff merely could have objected to the interrogatory as unintelligible and refused to attempt to ascertain what Defendants' may have meant, but instead Plaintiff made a reasonable effort to respond based upon the Interrogatory as phrased by Defendants. G. Sedlik Decl. at 10.

As near as Plaintiff could ascertain, Plaintiff understood Defendants to be asking if Plaintiff believed that Plaintiff held a valid copyright in the Iconic Miles Davis Portrait. G. Sedlik Decl. at 10. For that reason, Plaintiff's substantive response provided that "Plaintiff holds a registered copyright in the Iconic Miles Davis Portrait." G. Sedlik Decl. at 10. Plaintiff believed at the time and continues to believe that this is a full and complete response to the Interrogatory, to the extent that it is understood by Plaintiff. G. Sedlik Decl. at 10.

Following service of Plaintiff's responses and objections to the Interrogatories, Defendants requested a meet and confer. Notably, Defendants and Defendants' counsel did not assert during this telephonic meet and confer that Plaintiff had waived his objections relating to all of the responses to interrogatories or document demands served by Defendants and never requested during the telephonic meet and confer that Plaintiff re-serve his responses without objections. G. Sedlik Decl. at 11. In fact, Defendants seemingly had no issues with the

objections asserted in nearly all of the responses. G. Sedlik Decl. at 11. The only other interrogatory that remained at issue following the telephonic meet and confer, Special Interrogatory No. 3, was resolved by Plaintiff serving a supplemental response including all previously asserted objections. G. Sedlik Decl. at 11.

During the telephonic meet and confer between G Sedlik and Mr. Metzidis regarding SPI No. 8, G. Sedlik explained in detail that Plaintiff did not understand the request and also explained that Defendants' failure to define the term "element" or otherwise explain the meaning of the interrogatory rendered it unintelligible. G. Sedlik Decl. at 12. Mr. Metzidis responded by saying that he "presumed" that the Plaintiff was "familiar with the caselaw on copyright" and what it is that's protected by copyright "like clothes and lighting, frames and lenses used…that kind of stuff." G. Sedlik Decl. at 12. G. Sedlik explained that Defendants should not have drafted and served interrogatories that presume that Plaintiff (or his counsel) would either (1) have detailed knowledge of caselaw that Defendants contend explain the meaning of undefined terms in the interrogatory (that Defendants easily could have defined within the interrogatory); or (2) would require that Plaintiff conduct legal research regarding the history of copyright caselaw throughout the United States to attempt to discern how various courts throughout the country may have defined the term "element." G. Sedlik Decl. at 12. Instead, G. Sedlik explained that Defendants should have (1) defined the term "element" as they had defined many other terms throughout their discovery responses (and even within Interrogatory No. 8) or (2) more appropriately, listed out individual "elements" that Defendants were interested in. G. Sedlik Decl. at 12. G. Sedlik further explained that Defendants had plenty of available interrogatories that they could have used to list out whatever "elements" they wanted to know about specifically. G. Sedlik Decl. at 12.

Notably, to date, and throughout the lengthy meet and confer process, Defendants have never provided a list of "elements" (or defined that term) to permit Plaintiff to understand the meaning of SPI No. 8. G. Sedlik Decl. at 13. Instead,

1   Defendants have vaguely cited to various cases in different jurisdictions throughout

2   the United States spanning more than 60 years of caselaw, each of which has

3   different explanations of what may or may not be considered an "element" of a

4   photograph or other artwork. G. Sedlik Decl. at 13. This confusing litany of

5   explanations and contrasting caselaw provided by Defendants – as opposed to a

6   specific, clear interrogatory – is exactly the reason that Plaintiff could not

7   understand Defendants' interrogatory as drafted. If Defendants can't understand or

8   explain what they mean by the term "element," why should Plaintiff be charged

9   with figuring it out for them?

10        Ultimately, it is not Plaintiff's responsibility to re-draft, fix or perform

11   exhaustive legal research to attempt to interpret the meaning of a deficient

12   interrogatory. Defendants should have – and easily could have – defined the vague

13   term used in their interrogatory or, better yet, listed out whatever "elements" they

14   believe are central to their interrogatory based on the caselaw they claim explains

15   this term. Throughout the meet and confer process and even within this motion,

16   Defendants have not and cannot explain what they meant in their interrogatory,

17   only providing possible meanings and listing cases spanning 60+ years that contain

18   language about what the term "may" or "may not" or "could" mean or "might"

19   include (or exclude).

20        In an extraordinary (and legally unnecessary) attempt to resolve the dispute

21   over SPI No. 8, G. Sedlik explained to Mr. Metzidis in a follow up email that

22   Plaintiff would substantively respond to questions regarding his "original

23   expression" in the Iconic Miles Davis Portrait during his upcoming deposition on

24   January 11, 2022.  G. Sedlik Decl. at 14. Mr. Metzidis categorically rejected this

25   proposal, insisting instead that Plaintiff provide a written response to SPI No. 8

26   "not subject to any objections or qualifications," that was "satisfactory to

27   Defendants," which is essentially an empty offer that did not assist in the resolution

28   of the dispute in any way. G. Sedlik Decl. at 14.

1        In summary, Plaintiff did not waive his objections to SPI No. 8 because

2    Defendants' counsel granted Plaintiff an extension of time to respond and Plaintiff

3    served timely, substantive responses. Further, even if Plaintiff's objections <u>were</u>

4    waived, SPI No. 8 is so hopefully unintelligible as drafted that it would force

5    Plaintiff to conduct expensive, time-consuming and extensive legal research to try

6    to determine what Defendants were asking, which is not required by Rule 33 or 26.

7    Even today, Defendants cannot explain to Plaintiff or this Court what they meant by

8    the term "element" in SPI No. 8.

9        For those reasons, Plaintiff respectfully requests that this Court deny

10   Defendants' motion in its entirety. Plaintiff also requests that this Court impose

11   monetary sanctions on Defendants and/or Defendants' counsel pursuant to

12   FRCP 37(a)(5)(B) and/or any other appropriate rule and require that Defendants

13   and/or Defendants' counsel pay the reasonable attorneys' fees and costs incurred in

14   Plaintiff's opposition to this motion, which was not substantially justified as

15   demonstrated herein.

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.     DEFENDANTS' SPECIAL INTERROGATORY NO. 8**

    **A.     <u>Defendants' SPI No. 8 and Plaintiff's Written Responses</u>**

       Defendants' Special Interrogatory No. 8, served October 25, 2021, states as follows:

> SPECIAL INTERROGATORY NO. 8
>
>     Identify and describe in detail each and every element in the PHOTOGRAPH that you contend is protected by copyright law.
>
>     [As used in this interrogatory, the term "PHOTOGRAPH" shall mean and refer to the photograph of Miles Davis alleged in Paragraph 15 of your Complaint.]

Ex. 1 at 3:19-23.

       Plaintiff's written response to Defendants' Special Interrogatory No. 8, served December 13, 2021, states as follows:

> RESP. TO INTERROGATORY NO. 8.
>
>     Responding Party incorporates the general objections and objections to definitions and instructions, above, and further objects to this request as follows: Objection: Prematurely asks for an opinion or contention that relates to fact or the application of law to fact, in violation of F.R.C.P. 33(a)(2). Objection: Responding Party further objects to the extent this request, as broadly phrased, seeks material that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the trial preparation material doctrine, or the joint defense or common interest privilege. Objection: Seeks premature disclosure of expert opinions and related

materials. Subject to these objections and the general
objections stated above, which are expressly incorporated
here by reference, and based on Plaintiff's understanding
of this Request, Plaintiff responds as follows: Plaintiff
holds a registered copyright in the Iconic Miles Davis
Portrait.

Ex. 5 at 7:25-8:9.

## B.   <u>Defendants' Contentions as to Defendants' SPI No. 8</u>

Defendants' SPI No. 8 properly asks Plaintiff to identify and describe in
detail the elements of his copyrighted photograph that he contends are protectible.
The Court should order Plaintiff to provide a full and complete response without
objection, pursuant to FRCP 37(a)(3)(B)(iii).  Alternatively, the Court should just
impose issue sanctions pursuant to FRCP 37(d)(3) due to Plaintiff's failure to serve
timely objections or responses.

### (1)   <u>The Interrogatory Seeks Relevant Information.</u>

In the Ninth Circuit, courts use a two-part test to determine whether a
defendant's work is substantially similar to a plaintiff's copyrighted work.
*Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  The first part,
the "extrinsic test," compares the objective similarities of specific expressive
elements in the two works.  *Id*.  "***Crucially***, because ***only substantial similarity in
protectable expression*** may constitute actionable copying that results in
infringement liability, '***it is essential to distinguish between the protected and
unprotected material in a plaintiff's work***.'"  *Skidmore v. Led Zeppelin*, 952 F.3d
1051, 1064 (9th Cir. 2020) (quoting *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir.
2004)) (emphasis added); *cf. Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d
1435, 1443 (9th Cir. 1994) ("only those elements of a work that are protectable and
used without the author's permission can be compared when it comes to the
ultimate question of illicit copying"); *Axelbank v. Rony*, 277 F.2d 314, 317 (9th Cir.

-16-

1960) ("the analysis must first be to determine exactly what the [plaintiff's]
copyright covers, and then to see if there has been an infringement thereof").

As part of the extrinsic test, the Court performs an "analytic dissection," that
is, a process which filters and isolates each of the constituent elements of the
copyrighted work to the exclusion of other elements. *Dr. Seuss Enters., L.P. v.
Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997). "It is the copyright
plaintiff's burden to identify the 'elements' for the purposes of this comparison."
*Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001).[2]

In the photography context, courts "have carefully delineated selection of
subject, posture, background, lighting, and perhaps even perspective alone as
***protectable elements*** of a photographer's work." *Los Angeles News Serv. v. Tullo*,
973 F.2d 791, 794 (9th Cir. 1992) (citations omitted, emphasis added); *cf. Rogers v.
Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph
may include posing the subjects, lighting, angle, selection of film and camera,
evoking the desired expression, and almost any other variant involved."); *Ets-
Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074-75 (9th Cir. 2000) ("such decisions
by the photographer – or, more precisely, the elements of photographs that *result*
from these decisions – are worthy of copyright protection"); *see also Reece v.
Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1206 (D. Haw. 2006)
("The protectable elements of a photograph generally include lighting, selection of
film and camera, angle of photograph, and determination of the precise time when
the photograph is to be taken."); *Eagle Access Control Systems, Inc. v. USA Power
Gate, Inc.*, 2008 WL 11334485, at *5 (C.D. Cal. Dec. 18, 2008) ("The original
elements of a photograph that may create copyrightable elements include the

---

[2] Among the unprotectable elements which the Court must filter out are:
ideas, as distinguished from expression; elements borrowed from another artists or
from the public domain; instances in which a particular expression "merges" with
the idea being expressed; and the degree to which the form of the expression is so
standard in the treatment of a given idea that is constitutes *scènes à faire*. *See
Idema*, 162 F. Supp. 2d at 1176-77.

-17-

presentation of the subject of the photograph, the arrangement of objects in the photo, and the lighting and shading of the objects.").

All of this is basic, hornbook copyright law. Here, in order to assess Plaintiff's claims of infringement, Defendants are entitled to know precisely what are the specific elements of the photograph that Plaintiff contends to be protected by copyright law. This is necessary to conduct the analytical dissection as part of the extrinsic test; and indeed it is Plaintiff's burden to identify these elements for purposes of this comparison. *Idema*, 162 F. Supp. 2d at 1177.

### (2)    Plaintiff's Response is Deficient and Evasive; He Should Be Compelled to Answer in Full.

The response Plaintiff has given to SPI No. 8 – only that "Plaintiff holds a registered copyright in the Iconic Miles Davis Portrait" – is evasive, incomplete, and in fact not responsive at all. It is tantamount to a failure to respond under FRCP 37(a)(4), and justifies an order compelling a response pursuant to FRCP 37(a)(3)(B)(iii).

The boilerplate objections Plaintiff has lodged with regard to SPI No. 8 – that the interrogatory is "premature," seeks "privileged information," and that it prematurely seeks "expert opinion" – are baseless. This Court should not sustain boilerplate objections to straightforward written discovery. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

There is nothing "premature" in asking Plaintiff, toward the end of discovery, about factual contentions that are solely within his knowledge and have nothing to do with documents or testimony from the opposing party or third parties. Plaintiff is fully capable of identifying and describing in detail the elements of his own photograph that he contends are protectible expression. By his own admission, Plaintiff is an accomplished photographer with 35 years of experience in the industry, is "the author an owner of hundreds of thousands of copyrighted photographs," and has testified on behalf of multiple professional associations that

represent the legal interests of photographers.  Ex. 11 at 2, 4 (6/2/20 written testimony to Congress).[3]

Simply put:  Plaintiff knows exactly what this interrogatory is asking, and is capable of providing an answer.  Because Defendants needs to know Plaintiff's contentions in order to defend against claims of infringement, the Court should order Plaintiff to provide a complete answer and without objection.

**(3)** **Alternatively, The Court Should Impose Issue Sanctions Under Rule 37(d).**

Alternatively, in lieu of compelling Plaintiff to respond pursuant to FRCP 37(a)(3)(B)(iii), the Court should just impose an issue sanction pursuant to FRCP 37(d)(3), which empowers the Court to impose any sanction listed in FRCP 37(b)(2)(A)(i)-(iv).

Rule 37(d) has been triggered because Plaintiff was properly served with the interrogatories on October 25, and failed to serve any objections or responses by the deadline of November 29.  Metzidis Decl. ¶¶ 5-11; Exs. 3-4.  At the very least, this failure alone constitutes a waiver or forfeiture of any objections.  *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409-10 (C.D. Cal. 2005); *Davis v. Fendler*, 650 F.2d. 1154, 1160 (9th Cir. 1981); FRCP 33(b)(4).

Nonetheless, Defendants gave Plaintiffs at least three opportunities to mitigate this failure by providing a complete response:  in defense counsel's December 2 proposal that Plaintiff just serve responses "as soon as [he] reasonably can" (Ex. 3 at 2); in the December 14 email identifying the deficiencies in the December 13 responses (Ex. 7 at 1); and in and after the December 17 meet-and-confer, in spite of which Plaintiff refused to provide a supplemental and unqualified response (Ex. 8 at 2; Metzidis Decl. ¶¶ 16-17).

---

[3]    Video of Plaintiff's congressional testimony is also available at <https://www.c-span.org/video/?c4889428/user-clip-jeffrey-sedlik-testimony-dmca-512>.

Here, an appropriately tailored issue sanction would be to direct that there are no elements in Plaintiff's photograph that are protected by copyright law, or to direct that none of the accused works (i.e., the tattoo itself, and the social media posts thereof) is substantially similar to the protectible elements of Plaintiff's copyrighted photograph (pursuant to FRCP 37(b)(2)(A)(i)); or to prohibit Plaintiff from supporting his claim that his photograph contains protectible elements (pursuant to FRCP 37(b)(2)(A)(ii)).  In Defendants' December 10 meet-and-confer letter, Plaintiff was warned that Defendants reserved the right to seek these or related types of sanctions.  Ex. 6 at 8.

### (4)   Conclusion.

In any event, Defendants are entitled to have a full, complete, and unqualified response to their SPI No. 8 regarding Plaintiff's contentions about the protectible elements of his copyrighted photograph.  If the Court does not impose an issue sanction, Defendants respectfully request that the Court so order Plaintiff to respond to SPI No. 8, without objection, within 7 days of entry of the Court's order (and by no later than February 1, 2022).

### C.   Plaintiff's Contentions as to Defendants' SPI No. 8

Defendants' SPI No. 8 is unintelligible as Defendants chose to draft it. Following the granting of an extension of time to respond, Plaintiff provided a timely and substantive response to SPI No. 8, to the extent Plaintiff was able to understand what Defendants may have meant to ask. Nowhere in the federal rules does it require Plaintiff or Plaintiff's counsel to perform exhaustive legal research (or any legal research) to attempt to ascertain the meaning of an interrogatory, which should be entirely self-contained. Even throughout the exhaustive meet and confer process – and in this motion – Defendants still cannot actually explain what they meant to ask Plaintiff, but rather assert that Plaintiff should have researched more than 60 years of U.S. copyright law and read and interpreted numerous cases throughout the United States to guess at the meaning of Defendants' SPI No. 8. It

1  would have been easy for Defendants to draft a self-contained interrogatory but

2  they chose not to do so. Even worse, Defendants and Defendants' counsel have

3  pursued this frivolous Motion to Compel, wasting Plaintiff's resources and this

4  Court's time and resources, regarding a clearly deficient interrogatory.

5      For all of those reasons, Plaintiff respectfully requests that this Court deny

6  Defendants' motion in its entirety. Plaintiff also requests that this Court impose

7  monetary sanctions on Defendants and/or Defendants' counsel pursuant to

8  FRCP 37(a)(5)(B) and/or any other appropriate rule and require that Defendants

9  and/or Defendants' counsel pay the reasonable attorneys' fees and costs incurred in

10  Plaintiff's opposition to this motion, which was not substantially justified as

11  demonstrated herein.

12      **(1)  <u>Defendants failed to formulate an answerable interrogatory</u>**

13      **<u>in SPI No. 8. Their motion demonstrates unequivocally that</u>**

14      **<u>what they assert is "Hornbook law" is far from it.</u>**

15      Defendants claim that it was Plaintiff's burden to research more than 60

16  years of copyright law throughout the United States to determine what Defendants

17  meant by the undefined term "element" in SPI No. 8, which, according to

18  Defendants, is "Hornbook law." The cases cited by Defendants herein, however,

19  plainly demonstrate that there is <u>no</u> "Hornbook law" definition of the term

20  "element" and, in fact, no accepted definition of that term anywhere in the caselaw

21  cited by Defendants. A brief review of the caselaw quotations and arguments above

22  from Defendants makes this clear (each of the following is a direct quotation of

23  Defendants' arguments presented above):

24      • In the photography context, courts "have carefully delineated selection of

25      subject, posture, background, lighting, and **perhaps even** perspective

26      alone as protectable elements of a photographer's work." *Los Angeles*

27      *News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992) (citations omitted,

28      emphasis added);

- *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph **may include** posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and **almost any other variant involved**.") (emphasis added);

- *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1206 (D. Haw. 2006) ("The protectable elements of a photograph **generally include** lighting, selection of film and camera, angle of photograph, and determination of the precise time when the photograph is to be taken.");

- *Eagle Access Control Systems, Inc. v. USA Power Gate, Inc.*, 2008 WL 11334485, at *5 (C.D. Cal. Dec. 18, 2008) ("The original elements of a photograph that **may create copyrightable elements include** the presentation of the subject of the photograph, the arrangement of objects in the photo, and the lighting and shading of the objects.").

- **Among the unprotectable elements** which the Court must filter out are: ideas, as distinguished from expression; elements borrowed from another artists or from the public domain; instances in which a particular expression "merges" with the idea being expressed; and the degree to which the form of the expression is so standard in the treatment of a given idea that is constitutes *scènes à faire*. *See Idema*, 162 F. Supp. 2d at 1176-77.

Which of these conflicting and inconsistent cases, explanations and arguments relating to the term "element," exactly, is "Hornbook law" according to the Defendants? Is it "**perhaps**" the elements listed in *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992)? Is it the ones that "**may**" be included in *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992), along with "**almost any other variant involved**"? Is it whatever may be "**generally included**" in *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1206 (D. Haw. 2006)? Or perhaps those that "**may create**" copyrightable elements listed in *Eagle Access*

*Control Systems, Inc. v. USA Power Gate, Inc.*, 2008 WL 11334485, at *5 (C.D. Cal. Dec. 18, 2008)? Lastly would it be the undefined commentary supplied in *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001) that Defendants contend are "**[a]mong the unprotectable elements**"? The answer is that <u>none</u> of these cases stands for the proposition that there is a "Hornbook law" definition of the term "element" relating to the copyrightability of a photograph, and Defendants have no legal basis to contend that Plaintiff is required to respond to an interrogatory that is unintelligible and unanswerable as written.

### (2)   <u>Plaintiff is not legally required to conduct extensive legal research to attempt to determine undefined terms in Defendants interrogaotry</u>

A responding party is typically not required to conduct extensive research in order to answer an interrogatory, but reasonable efforts to respond must be undertaken. *L.H. v. Schwarzenegger*, No. S-06-2042 LKK GGH, 2007 U.S. Dist. LEXIS 73752, 2007 WL 2781132, *2 (E.D. Cal. Sep. 21, 2007). <u>See also</u> *National Ass'n of Radiation Survivors v. Tumage*, 115 F.R.D. 543, 554-56 (N.D.Cal.1987) (Responding party has an obligation to conduct a reasonably inquiry into the factual basis of its responses to the request to produce documents.); (*La Chemise Lacoste v. Alligator Co. Inc.,* 60 F.R.D. 164, 171 (D.Del. 1973) ("A party, of course, must provide by way of answers to interrogatories the relevant facts readily available to it but it should not be required to enter upon extensive independent research in order to acquire such information.") (citations omitted).

Here, Defendants insist that Plaintiff had a duty to conduct extensive legal research <u>just to understand</u> Defendants' interrogatory, much less respond to it. In effect, Defendants presented a poorly-drafted, unintelligible interrogatory and now demand that Plaintiff "figure it out," even following extensive efforts by Plaintiff and Plaintiff's counsel to understand what Defendants asked. Of course, Defendants are not permitted to serve an unintelligible interrogatory and later seek to modify to

ask something different either. To date, Defendants still have not been able to explain to Plaintiff, or to this Court, what they meant when they used the undefined term "element" in SPI No. 8. Plaintiff responded to the interrogatory as drafted by explaining that he holds a valid copyright in the Iconic Miles Davis Portrait, which is a truthful and accurate factual statement. To force Plaintiff and Plaintiff's counsel to "fix" a poorly-drafted and unintelligible interrogatory and perform legal research to attempt to ascertain what Defendants actually meant to ask goes far beyond the "reasonable efforts' required of Plaintiff under Rule 33 and Rule 26.

**(3)** **Plaintiff did not waive any objections by timely responding to interrogatories following an extension granted by Defendants' counsel**

The Central District's Civility and Professionalism Guidelines, which this Court has specifically admonished the parties to follow, clearly provide that "Unless time is of the essence, as a matter of courtesy we will grant first requests for reasonable extensions of time to respond to litigation deadlines." United States District Court, Central District of California, Civility and Professionalism Guidelines, at Section B(2). ("C&P Guidelines"). The C&P Guidelines further state that "We will not attach to extensions unfair and extraneous conditions." Id. In addition, the C&P Guidelines provide that "We will not, by granting extensions, seek to preclude an opponent's substantive rights, such as his or her right to move against a complaint." Id. The California Bar has adopted similar provisions regarding professionalism and courtesy in granting extensions in its Attorney Civility Guide. See "California Attorney Guidelines of Civility and Professionalism" (Adopted July 2007) at Section 6, Scheduling, Continuances and Extensions of Time ("An attorney should place conditions on an agreement to an extension only if they are fair and essential or if the attorney is entitled to impose them, for instance to preserve rights or seek reciprocal scheduling concessions.").

-24-

As explained above, Plaintiff's counsel, G. Sedlik, never received service copies of Defendants' written discovery. G. Sedlik Decl. at 5. When the issue regarding responses was first raised by Defendants' counsel, G. Sedlik immediately offered to waive his arguments regarding proper service of the discovery in exchange for a brief extension of time, which Defendants' counsel granted. G. Sedlik Decl. at 5. Although Defendants' counsel sought to impose the condition that Plaintiff's responses be "substantive" (whatever that may mean), Plaintiff's counsel never agreed to such a condition, which, in the opinion of Plaintiff's counsel, would violate both the Central District's Civility and Professionalism Guidelines and the California Bar's similar Guidelines of Civility and Professionalism.

In any event, Plaintiff later provided a timely <u>and substantive</u> response to SPI No. 8. G. Sedlik Decl. at 9. Defendants' argument in this motion that Defendants' counsel doesn't like or approve of Plaintiff's substantive response does not alter the fact that Plaintiff timely served a substantive response and objections based on the extension granted by Defendants' counsel. Defendants' arguments are further undermined by the fact that Defendants' counsel accepted <u>all</u> of Plaintiff's other objections pertaining to <u>all</u> of the other interrogatories and document demands served by Defendants, including Plaintiff's later-served supplemental response to SPI No. 3 <u>with objections</u> (that was originally a part of this motion to compel). Lastly, Defendants' arguments regarding the waiver of objections is essentially a red herring in that the interrogatory as drafted by Defendants is unintelligible and, regardless of the validity of Plaintiff's objections, unanswerable in the form presented by Defendants.

### (4)   **Plaintiff's Conclusion**

In conclusion, Plaintiff complied with his obligations to respond to Defendant' SPI No. 8 as drafted and did not waive any of his validly-asserted objections. Defendants have no legal basis to compel a response to a different

question that they never asked or to compel Plaintiff to perform extensive legal research to try to ascertain the meaning of Defendants' interrogatory. For all of the reasons stated herein, Plaintiff respectfully requests that this Court deny Defendants' motion in its entirety. Plaintiff also requests that this Court impose monetary sanctions on Defendants and/or Defendants' counsel pursuant to FRCP 37(a)(5)(B) and/or any other appropriate rule and require that Defendants and/or Defendants' counsel pay the attorneys' fees and costs incurred in Plaintiff's opposition to this motion, which was not substantially justified as demonstrated herein.

Dated:  December 29, 2021          Respectfully submitted,

                                   GRODSKY, OLECKI & PURITSKY LLP
                                   Allen B. Grodsky
                                   John J. Metzidis

                                   By:  ___/s/ John J. Metzidis_____
                                           John J. Metzidis

                                   Attorneys for Defendants Katherine Von
                                   Drachenberg, Kat Von D, Inc., and High Voltage
                                   Tattoo, Inc.

Dated:  December 29, 2021          SEDLIKGROUP, P.C.
                                   Gary S. Sedlik

                                   By:  ___/s/ Gary S. Sedlik (w/ permission)___
                                           Gary S. Sedlik

                                   Attorneys for Plaintiff Jeffrey B. Sedlik

1

## **COMPLIANCE WITH LOCAL RULE 5-4.3.4**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.

Dated:  December 29, 2021          By:   __/s/ John J. Metzidis_____
                                                    John J. Metzidis