Gary S. Sedlik, Esq. (CA Bar No. 181192)
SEDLIKGROUP, P.C.
P.O. Box 3238
Manhattan Beach, CA 90266
Phone: (310) 439-9986 | Fax: (844) 320-8044
Email: gary@sedlikgroup.com

Attorneys for Plaintiff Jeffrey B. Sedlik

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JEFFREY B. SEDLIK, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-01102-DSF-MRWx<br><br>Before the Honorable Dale S. Fischer, U.S. District Judge<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS**<br><br>Hearing<br>Date:    April 18, 2022<br>Time:    1:30 p.m.<br>Place:   First Street Courthouse<br>           350 West 1st Street, Crtrm 7D<br>           Los Angeles, California<br><br>Trial:    July 26, 2022 |

1      TO THE HONORABLE COURT, ALL PARTIES, AND THEIR

2  ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on April 18, 2022, at 1:30 p.m. or as soon

4  thereafter as counsel may be heard, in Courtroom 7D of the First Street Courthouse,

5  located at 350 West 1st Street, Los Angeles, California 90012, before the Hon. Dale

6  S. Fischer, United States District Judge, Plaintiff Jeffrey B. Sedlik ("Plaintiff") will

7  and hereby does move this Court for an order, pursuant to Federal Rule of Civil

8  Procedure, Rule 56, for an order granting summary judgment, or, in the alternative,

9  summary adjudication of Plaintiff's claims against Defendants in this action.

10      The motion will be made on the grounds that Plaintiff is entitled to summary

11  judgment or summary adjudication of liability for direct, vicarious and contributory

12  copyright infringement as a matter of law because, after considering all evidence in

13  the light most favorable to Defendants, no reasonable fact-finder could deny that

14  Plaintiff owns the copyrights in at issue in this case and that Defendants have

15  engaged in unauthorized conduct that infringes Plaintiff's exclusive rights under the

16  Copyright Act. Further, Plaintiff is entitled to summary judgment as a matter of law

17  on his claims under Section 1202(a) of the Digital Millennium Copyright Act

18  ("DMCA") because, after considering all evidence in the light most favorable to

19  Defendants, no reasonable fact-finder could deny that Defendants knowingly and

20  intentionally falsified the Copyright Management Information in Plaintiff's

21  copyright photograph.

22      This Motion is based upon the papers filed herein, including the following

23  Memorandum, and Exhibits identified in the contemporaneously-filed Declarations

24  of Gary S. Sedlik and Jeffrey B. Sedlik and documents attached thereto, as well as

25  Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law. A proposed

26  order is submitted for consideration by the Court.

27

28

1

2
Dated:  March 16, 2022                    SEDLIKGROUP, P.C.
                                          Gary S. Sedlik, Esq.

3
                                          By:  ___/s/ Gary S. Sedlik_____
4                                                   Gary S. Sedlik

5                                         Attorneys for Plaintiff Jeffrey B. Sedlik

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

Memorandum of Points and Authorities     1

I. Background     1

II. Statement of Facts     2

III. Legal Standard     10

IV. Argument     12

A. Mr. Sedlik Owns a Valid Copyright in the Iconic Miles Davis Portrait     13

B. Defendants Willfully Copied and Infringed the Iconic Miles Davis Portrait and Made an Unauthorized Derivative Work from the Iconic Miles Davis Portrait     13

    1. Defendants had access to the Iconic Miles Davis Portrait     14

    2.  The infringing works are either identical copies of the Iconic Miles Davis Portrait or substantially similar to the Iconic Miles Davis Portrait     15

    3. Defendants created an unauthorized derivative work of the Iconic Miles Davis Portrait in the form of a tattoo     15

    4. The tattoo is substantially similar to the Iconic Miles Davis Portrait     16

    a. Plaintiff satisfies the extrinsic test     16

    b. Plaintiff satisfies the intrinsic test     18

    c.

C.     Defendants Falsified Copyright Management Information in Violation of 17 U.S.C. 1202     20

V. Conclusion     21

1

## TABLE OF AUTHORITIES

2

A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001)        19
Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)                       11
Celotex Corp. v. Catrett, 477 U.S. 317 (1986)                              10, 11
City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036 (9th Cir. 2014)          11
Cobbler Nevada, LLC v. Gonzales, 901 F.3d 1142 (9th Cir. 2018)             19
DC Comics v. Towle, 802 F.3d 1012 (9th Cir. 2015)                          12
Ellison v. Robertson, 357 F.3d 1072 (9th Cir. 2004)                        19
Erickson Prods., Inc. v. Kast, 921 F.3d 822 (9th Cir. 2019)                19
Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068  (9th Cir. 2000)            12
Harper v. Wallingford, 877 F.2d 728 (9th Cir. 1989)                        11
In re Oracle Corp. Sec. Litig., 627 F.3d 376 (9th Cir. 2010)               10, 12
JBJ Fabrics, Inc. v. Mark Indus., Inc., No. 86-4881 FFF, 1987 U.S. Dist.   18
LEXIS 13445 (C.D. Cal. Nov. 4, 1987).
Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913           19, 20
(2005)
Pasillas v. McDonald's Corp., 927 F.2d 440 (9th Cir. 1991)                 16
Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007)        19
Rogers v. Koons, 960 F.2d 301 (2d Cir.1992)                                13, 16
Smith v. Jackson, 84 F.3d 1213 (9th Cir. 1996)                             13, 16
S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081 (9th Cir. 1989)                12
State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756 (N.D. Cal. Sep.      12
15, 1987).
Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000)             13,
                                                                           14, 16
Twentieth Century- Fox Film Corp. v. MCA, Inc., 715 F.2d 1327 (9th         18
Cir. 1983).
Universal City Studios, Inc. v. Corley, 273 F.3d 429 (2d Cir. 2001)        20
VHT, Inc. v. Zillow Grp., 918 F.3d 723 (9th Cir. 2019)                     19

17 U.S.C. § 101                                                            12
17 U.S.C. § 102                                                            12
17 U.S.C. § 106                                                            12
17 U.S.C. § 410(c)                                                         4, 13
17 U.S.C. § 1202                                                           20
Fed. R. Civ. P. 56(a)                                                      10, 11
Fed. R. Civ. P. 56(c)                                                      10, 11

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
## MEMORANDUM OF POINTS AND AUTHORITIES

2
## I.    INTRODUCTION

3      This is a straightforward case of copyright infringement resulting from

4 Defendants' unauthorized usage, reproduction, display, distribution, creation of

5 derivative works from, and commercial exploitation of Plaintiff's world-famous

6 copyrighted photograph of Miles Davis (the "Iconic Miles Davis Portrait").

7      Plaintiff's claims are appropriately decided on summary judgment or summary

8 adjudication because the evidence is clear and uncontroverted that Defendants took

9 Plaintiff's copyrighted Iconic Miles Davis Portrait, made numerous unauthorized

10 duplicate reproductions and derivative works of the Iconic Miles Davis Portrait,

11 and displayed and distributed these duplications and derivative works to millions of

12 individuals through social media platforms such as Instagram, Facebook, Twitter,

13 Tumblr and through commercial websites. Defendants never asked for nor received

14 Plaintiff's permission or a license to reproduce, distribute, display, make derivative

15 works from, or otherwise commercially exploit Plaintiff's copyrighted photograph.

16      In addition, Defendants removed, altered or falsified Plaintiff's Copyright

17 Management Information associated with the Iconic Miles Davis Portrait, replacing

18 it or appending to it with false Copyright Management Information, including false

19 statements by Defendants that Defendants authored the Iconic Miles Davis Portrait.

20 Defendants' actions and statements were made intentionally, willfully, and with full

21 knowledge that Defendants had no rights to reproduce, distribute, display, make

22 derivative works from, or falsely claim authorship of the Iconic Miles Davis

23 Portrait.

24      For all of these reasons, Plaintiff seeks summary judgment, or, as appropriate,

25 summary adjudication, of his claims for willful direct, vicarious and contributory

26 copyright infringement against each Defendant, as well as for Defendants'

27 intentional removal, alteration or falsification of Plaintiff's Copyright Management

28 Information.

1

## II.   STATEMENT OF FACTS

2      Plaintiff, Jeffrey B. Sedlik ("Mr. Sedlik"), is a world-renowned, award-winning

3    professional photographer and professor. See Plaintiff's Statement of

4    Uncontroverted Facts and Conclusions of Law (PSUF") at ¶1. He is a ten-time

5    recipient of the Communication Arts Award of Excellence, and many other awards,

6    including the Clio, One Show, Art Directors Club, Photo Design, PDN/Nikon,

7    Creativity Award, IPC Industry Leadership Award, and others. PSUF ¶2. Sedlik's

8    work has been profiled in Studio Photography & Design, In Focus, Photo District

9    News, Rangefinder, and other industry publications. PSUF ¶3. His fine art

10   repertoire includes group and solo exhibitions in Los Angeles, San Francisco,

11   Monterey, St. Louis, and New York City. PSUF ¶4.

12      In 1989, Mr. Sedlik independently conceived and created the iconic

13   photographic portrait depicting world-famous jazz musician Miles Davis (the

14   "Iconic Miles Davis Portrait") that is the subject of this litigation. PSUF ¶5. Mr.

15   Sedlik is the sole and exclusive owner of the copyright in the Iconic Miles Davis

16   Portrait. PSUF ¶6.  A depiction of a reproduction of the Iconic Miles Davis Portrait

17   is provided below:

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



PSUF ¶6. Mr. Sedlik has offered and sold non-exclusive copyright licenses authorizing limited reproduction, distribution, display, and creation of derivative works of Sedlik's Iconic Miles Davis Portrait for commercial and non-commercial purposes since its creation. PSUF ¶7.

Mr. Sedlik's sole and exclusive ownership of the copyright in the Iconic Miles Davis Portrait was registered by Mr. Sedlik with the United States Copyright Office, as recorded in Certificate of Registration Number VA645-610, issued to Mr. Sedlik by the United States Copyright Office with an Effective Date of Registration of July 6, 1994, a true and correct copy of which is attached as Exhibit A to the

1   Complaint in this matter. PSUF ¶8. Mr. Sedlik's copyright registration is valid and
2   in good standing as today PSUF ¶9.[1]

3       Defendant Katherine Von Drachenberg ("Kat Von D") is a tattooist who has
4   appeared on reality television shows such as "Miami Ink" and "LA Ink." PSUF
5   ¶10. At all times relevant to the claims in this action, Ms. Von D owned and
6   operated defendant High Voltage Tattoo, Inc. ("HVT"), which operated a tattoo
7   shop in Los Angeles called "Kat Von D's High Voltage Tattoo." PSUF ¶11. At all
8   times relevant to the claims in this action, Kat Von D was an employee of High
9   Voltage Tattoo. PSUF ¶12.

10      Kat Von D also owns and operates defendant Kat Von D, Inc. ("KVD, Inc."), a
11  corporation of which she is the CEO, Secretary, CFO, sole owner and sole
12  shareholder, and whose stated official purpose was, until a few months ago,
13  "Personal Services - Body Art." PSUF ¶13.[2] Kat Von D is the sole employee of Kat
14  Von D, Inc. PSUF ¶15.

15      On or around March 18, 2017, Defendants posted to one of their Instagram
16  accounts that was and is owned or controlled by Defendants an image of Kat Von D
17  in the process of reproducing Mr. Sedlik's Iconic Miles Davis Portrait in the form
18  of a derivative work (a tattoo).  PSUF ¶16. This Instagram post also displays an
19  unauthorized reproduction of the Iconic Miles Davis Portrait, which is prominently
20  featured in the middle of the post, which Ms. Von D is apparently using as a visual
21  aid and reference to precisely copy and replicate Mr. Sedlik's Iconic Miles Davis
22  Portrait. PSUF ¶17. The Defendants distributed, reproduced, displayed and
23  published the photograph of Kat Von D in the act of infringing Mr. Sedlik's

24

25      [1] As the Effective Date of Registration of the Iconic Miles Davis Portrait is within five years of the date of first
26  publication of that work, Mr. Sedlik is entitled to a rebuttable presumption of the validity of the registration and the
    facts stated on the Certificate of Registration, under 17 U.S.C. § 410(c).
27  [2] The Merriam Webster Dictionary defines the term "body art" as "(A)rt that uses the human body as a
    medium...(S)pecifically: decorative tattoos or piercings." During the pendency of this litigation (but years after the
28  relevant acts underlying Plaintiff's claims in this action took place) Ms. Von D apparently chose to modify the
    corporate purpose of KVD, Inc. from "body art" to "Artist/Actress." PSUF ¶14,

copyright, publishing that photograph and others depicting the resulting infringing Miles Davis Tattoo and other infringing reproductions of the Iconic Miles Davis Portrait on Instagram and other social media platforms. PSUF ¶18. Defendants further exploited the derivative Miles Davis Tattoo by engaging in an organized, methodical cross-promotional campaign in which Defendants each repeatedly induced, enabled and facilitated public postings and photographs of the infringing Miles Davis Tattoo to each other's social media accounts, and in such posting, included  hyperlinks to Defendants' other social media accounts, so as to maximize their illicit distribution and display of the infringing Miles Davis Tattoo and to induce, enable and facilitate third party "sharing" of the depictions of the infringing Miles Davis Tattoo, in an effort to increase exposure to and engagement with a global audience of paying customers and potential customers for Defendants' various businesses and business ventures, which (at all relevant times) has not only included body art, but has also include make-up, shoes, clothing, music releases, music performances, and other products and services. PSUF ¶19. By repeatedly publishing their infringing reproductions of Mr. Sedlik's Iconic Miles Davis Portrait (along with Kat Von D's infringing derivative work of the Iconic Miles Davis Portrait) to their tens of millions of social media followers  around the world, Defendants induced, enabled, facilitated, and otherwise encouraged each other and third parties s to infringe Mr. Sedlik's copyright through further, uncontrolled, viral unauthorized reproduction, distribution and display.. PSUF ¶20. None of the Defendants sought or obtained Mr. Sedlik's permission or a license to use, reproduce, distribute, display, make derivative works of, publish or otherwise use and exploit Mr. Sedlik's copyright-protected Iconic Miles Davis Portrait on their social media accounts or in any other media, for any purpose. PSUF ¶21. A reproduction of Defendants' March 18, 2017 Instagram post (one of many) is provided below, not only depicting Kat Von D in the act of copying Mr. Sedlik's photograph in an infringing derivative tattoo, but also prominently displaying an

unauthorized reproduction of the Iconic Miles Davis Portrait, as used by Kat Von D to facilitate her efforts to precisely replicate the essential protected expression embodied in Mr. Sedlik's photograph:



PSUF ¶22.

On or about May 16, 2017, Defendants published the following image on Kat Von D's Instagram page:

1
2
3
4
5
6
7
8
9
10
11
12



13   PSUF ¶23. The May 16, 2017 image ("May 16, 2017 KVD Final Instagram Post")
14   depicts a nearly exact duplication of the Iconic Miles Davis Portrait as a derivative
15   work reproduced by Defendant Kat Von D in the form of a derivative tattoo. PSUF
16   ¶23. Kat Von D captioned the May 17, 2017 KVD Final Instagram Post: "Final
17   #MilesDavis portrait I tattooed at @highvoltagetat ♥", not only failing to provide
18   attribution to Mr. Sedlik, but also falsely claiming authorship of the portrait, while
19   knowing that she did not in fact author that portrait, in a purposeful effort to
20   conceal her infringing activity. PSUF ¶23.

21       Continuing their coordinated promotional campaign, Defendants shared and
22   duplicated this image, including the unauthorized derivate work of the Iconic Miles
23   Davis Portrait, with each other, inducing, enabling, facilitating and encouraging the
24   other Defendants and the public to unlawfully reproduce the same image on their
25   respective social media accounts. By posting this image on their social media
26   accounts and publishing an unauthorized derivative work of Mr. Sedlik's
27   copyrighted Iconic Miles Davis Portrait to tens of millions of people around the

28

world, Defendants induced, enabled, facilitated and otherwise encouraged others to unlawfully reproduce, distribute and display the Iconic Miles Davis Portrait.

None of the Defendants sought or obtained Mr. Sedlik's permission or a license to use, display, publish or distribute Mr. Sedlik's Iconic Miles Davis Portrait on their social media accounts. PSUF ¶21.

One year later, on or about April 26, 2018, Defendants published the following image on High Voltage Tattoo's Instagram page:



PSUF ¶25. The April 26, 2018 image ("April 26, 2018 HVT Instagram Post") depicts the ¨final product¨ of defendant Kat Von D's unauthorized and unlicensed reproduction and derivative work made from the Iconic Miles Davis Portrait in the form of a tattoo. PSUF ¶25. The April 26, 2018 HVT Instagram Post depicts a

nearly exact unauthorized derivative work of the Iconic Miles Davis Portrait as reproduced by defendant Kat Von D in the form of a tattoo. PSUF ¶25.

Defendants captioned the April 26, 2018 HVT Instagram Post, somewhat ironically, with an apparent quotation from Miles Davis praising the creation of original works of art: ""When you're creating your own shit, man, even the sky ain't the limit." -Miles Davis [tattoo by @thekatvond]". PSUF ¶25. Defendants "tagged" Kat Von D's Instagram username for the purpose of promoting and soliciting sales of products and services offered by Kat Von D, KVD, Inc. and High Voltage Tattoo. PSUF ¶25.

By posting this image on their social media accounts and publishing an unauthorized derivative work of Mr. Sedlik's copyrighted Iconic Miles Davis Portrait to millions of people around the world, Defendants induced, enabled, facilitated and otherwise encouraged others to unlawfully reproduce the Iconic Miles Davis Portrait. None of the Defendants sought or obtained Mr. Sedlik's permission or a license to use, display, publish or distribute Mr. Sedlik's Iconic Miles Davis Portrait on their social media accounts. PSUF ¶21.

Defendants also posted videos depicting Mr. Sedlik's Iconic Miles Davis Portrait to their social media accounts, and induced, enabled and facilitated third parties to share and post videos online displaying, distributing, reproducing and publishing Mr. Sedlik's Iconic Miles Davis Portrait without his permission or a license. PSUF ¶26.

Defendants strategically utilized their social media accounts to cross-promote their various brands, products and services, and regularly monitored and assessed the performance of individual social media posts to determine their customer engagement and to otherwise determine the effectiveness of their commercial campaigns. PSUF ¶27.

Defendants never attempted to contact Mr. Sedlik to request permission or a license to reproduce Mr. Sedlik's Iconic Miles Davis Portrait, or to create a

derivative tattoo of the Iconic Miles Davis Portrait, or to reproduce, distribute and display reproductions of that derivative tattoo  on their various social media accounts, websites and in other media. PSUF ¶¶21.

By proclaiming to millions of her followers in her May 16, 2017 KVD Final Instagram Post (along with other social media posts made by Kat Von D and other Defendants) that Kat Von D had "made" a portrait of Miles Davis, Kat Von D knowingly appended false Copyright Management Information to the unauthorized derivative tattoo of Mr. Sedlik's Iconic Miles Davis Portrait, with the intent to mislead the public and to conceal her infringement and to further conceal the fact that Mr. Sedlik, not Kat Von D, conceived and created the Iconic Miles Davis Portrait, and that Mr. Sedlik, not Kat Von D is the copyright owner of the Iconic Miles Davis Portrait. PSUF ¶28.

On about February 10, 2018, Mr. Sedlik discovered, for the first time, that Defendants had made, distributed and displayed the unauthorized derivative tattoo and the various unauthorized reproductions of his copyrighted Iconic Miles Davis Portrait. PSUF ¶29.

## III.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323–24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an

1   element essential to its case must make a showing sufficient to establish a genuine

2   dispute of fact with respect to the existence of that element of the case or be subject

3   to summary judgment.  See Celotex Corp., 477 U.S. at 322.  "The court must view

4   the evidence in the light most favorable to the nonmovant and draw all reasonable

5   inferences in the nonmovant's favor." City of Pomona v. SQM N. Am. Corp., 750

6   F.3d 1036, 1049 (9th Cir. 2014).

7       A motion for summary judgment must be granted when "the pleadings,

8   depositions, answers to interrogatories, and admissions on file, together with the

9   affidavits, if any, show that there is no genuine issue as to any material fact and that

10   the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

11   A disputed fact is material if it might affect the outcome of the suit under the

12   governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

13       The "mere existence of some alleged factual dispute between the parties will not

14   defeat an otherwise properly supported motion for summary judgment; the

15   requirement is that there be no genuine issue of material fact." Anderson, 477 U.S.

16   242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be

17   resolved in favor of either party. Id. at 250–51. "[M]ere disagreement or the bald

18   assertion that a genuine issue of material fact exists" does not preclude summary

19   judgment. Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). "The mere

20   existence of a scintilla of evidence in support of the [non-movant's] position will be

21   insufficient; there must be evidence on which the jury…could find by a

22   preponderance of the evidence that the [non-movant] is entitled to a verdict…."

23   Anderson, 477 U.S. at 252. "Only disputes over facts that might affect the outcome

24   of the suit under the governing law will properly preclude the entry of summary

25   judgment." Id. at 248.

26       The Federal Rules of Civil Procedure allow a party to move for partial summary

27   judgment and a court to enter an order stating a material fact - not genuinely in

28   dispute - as established in the case. Fed. R. Civ. P. 56(a), (g). A court may grant

1  partial summary judgment - without determining a claim - to limit issues at trial.

2  See State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756, 759 (N.D. Cal. Sep. 15,

3  1987).

4      "A district court's ruling on a motion for summary judgment may only be based

5  on admissible evidence." Oracle, 627 F.3d at 385. A party seeking to admit

6  evidence bears the burden of proof to show its admissibility. Id. But courts need not

7  scour the record to determine if evidence is admissible. Id. at 385–86.

8      **IV.   ARGUMENT**

9      "Copyright protection subsists … in original works of authorship fixed in any

10  tangible medium of expression." 17 U.S.C. § 102(a). "Works of authorship" include

11  "pictorial, graphical and sculptural works," 17 U.S.C. § 102(a)(5), which cover

12  "photographs.  17 U.S.C. § 101. "[A]lmost any photograph may claim the

13  necessary originality to support a copyright merely by virtue of the photographers'

14  [sic] personal choice of subject matter, angle of photograph, lighting, and

15  determination of the precise time when the photograph is to be taken.' Ets-Hokin v.

16  Skyy Spirits, Inc., 225 F.3d 1068, 1076-1077 (9th Cir. 2000) (citations omitted).

17  Further, "creative decisions involved in producing a photograph may render it

18  sufficiently original to be copyrightable, [including] selection of subject, posture,

19  background, lighting, and perhaps even perspective alone." Id.

20      The owner of a copyright in a photograph has the exclusive right of: (i)

21  reproduction; (ii) adaptation; (iii) public distribution; and (iv) public display. 17

22  U.S.C. § 106. "Copying" is shorthand for infringing any of these rights. S.O.S., Inc.

23  v. Payday, Inc., 886 F.2d 1081, 1085 fn. 3 (9th Cir. 1989). Mr. Sedlik also has the

24  exclusive right to "authorize others to prepare derivative works based on [his]

25  copyrighted works." DC Comics v. Towle, 802 F.3d 1012, 1023 (9th Cir. 2015)

26  (citation omitted).

27      To succeed on his copyright infringement claims, Mr. Sedlik need only establish

28  (1) ownership of the Iconic Miles Davis Portrait; and (2) infringement – that

-12-

Defendants copied elements of the Iconic Miles Davis Portrait. <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 481 (9th Cir. 2000) (<u>citing</u> <u>Smith v. Jackson</u>, 84 F.3d 1213, 1218 (9th Cir. 1996)). Mr. Sedlik establishes copying by showing that Defendant "accessed" the Iconic Miles Davis Portrait and that the Iconic Miles Davis Portrait and Defendant's infringing work(s) are "substantially similar." <u>Id</u>.

**A. <u>Mr. Sedlik Owns a Valid Copyright in the Iconic Miles Davis Portrait</u>**

Mr. Sedlik holds a valid copyright registration for the Iconic Miles Davis Portrait. PSUF ¶¶ 8,9. As the photographer, Mr. Sedlik translated his idea into a fixed tangible medium of expression, and thereby owns the copyright in the Iconic Miles Davis Portrait. <u>See</u>, <u>e.g.</u>, <u>Rogers v. Koons</u>, 960 F.2d 301, 307 (2d Cir.1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.").

As the Effective Date of Registration of the Iconic Miles Davis Portrait is within five years of the date of first publication of that work, Mr. Sedlik is entitled to a rebuttable presumption of the validity of the registration and the facts stated on the Certificate of Registration, under 17 U.S.C. § 410(c).

No other party was ever lawfully assigned the copyright in the Iconic Miles Davis Portrait and there can thus be no material dispute regarding the first element of Mr. Sedlik's claim. Defendants do not dispute Mr. Sedlik's ownership of copyright in the Iconic Miles Davis Portrait. This Court should thus adjudicate Mr. Sedlik's ownership of a valid copyright in the Iconic Miles Davis Portrait.

**B. <u>Defendants Willfully Copied and Infringed the Iconic Miles Davis Portrait and Made an Unauthorized Derivative Work from the Iconic Miles Davis Portrait</u>**

Defendants' conduct in infringing Plaintiff's Iconic Miles Davis Portrait was willful and deliberate based on their knowledge and understanding of copyright law and the requirement to request permission from an artist prior to making

unauthorized reproductions or derivative works. For example, Defendants, through

Kat Von D, readily admitted in their deposition that they had full knowledge that it

would be unlawful for a business to use a photographer's image without prior

permission (somewhat ironically, Defendants were testifying about the

unauthorized use of one of Defendants' Instagram posts depicting the copying or

Mr. Sedlik's Iconic Miles Davis Portrait). PSUF, ¶ 33.

> Q Are you aware that a picture of you making the tattoo that included Mr. Sedlik's Miles Davis portrait appeared on the website grazia.fr?
> A No, I'm not aware of that.
> Q What about, are you familiar with the website thefix.com?
> A No.
> Q Are you aware that images of you applying or creating the tattoo that included Mr. Sedlik's Miles Davis portrait appeared on the website thefix.com?
> A Of The Fix? No, I'm not aware of that.
> Q Okay.
> A But, you know, you've got to take it up with them, because magazines, they have to do their due diligence. **They can't just put someone's image on the cover without the permission of the photographer.** If they didn't do that, that's their job. I don't run that magazine.

PSUF, ¶ 33 (emphasis added). From this testimony, it is clear that Defendants are

aware of copyright law and limitations on copying other artists' work without

permission, but chose to do so anyway in this case.

   Copying is proven by showing that: (1) Defendants had a reasonable opportunity

to view or access the copyrighted material; and (2) Defendants' works and

Plaintiff's work are substantially similar. Three Boys Music Corp., 212 F.3d at 486.

As set forth below, Mr. Sedlik easily satisfies both of these prongs.

### 1.  Defendants had access to the Iconic Miles Davis Portrait

   In this case, there is no dispute that Defendants had access to the Iconic Miles

Davis Portrait. PSUF ¶ 30. First of all, the Iconic Miles Davis Portrait appears

multiple times in the images and videos that Defendants and Defendants' associates

posted to their social media sites. See, e.g., PSUF ¶¶16, 17, 18, 22, 23, 25, 26.

Further, Defendants admit that they obtained, viewed and used digital and printed

copies of the Iconic Miles Davis Portrait prior to making the tattoo that is the subject of this lawsuit. PSUF ¶¶ 31. Therefore, this first prong of copying is not in dispute.

**2.** **The infringing works are either identical copies of the Iconic Miles Davis Portrait or substantially similar to the Iconic Miles Davis Portrait**

Defendants infringed Mr. Sedlik's copyright in several distinct manners. First, Defendants literally copied the Iconic Miles Davis Portrait and prominently displayed a printed version of the Iconic Miles Davis Portrait in many of their social media posts. See, e.g., PSUF ¶¶ 16, 17, 18, 22, 23, 25, 26.

Defendants admitted at deposition and their social media posts shows that they obtained digital versions of the Iconic Miles Davis Portrait, printed out those versions one or more times, and then placed those exact copies of the Iconic Miles Davis Portrait prominently in their social media posts. See, e.g., PSUF ¶¶ 31.

Therefore, there can be no dispute that Defendants literally copied, displayed and distributed duplicate reproductions of Mr. Sedlik's Iconic Miles Davis Portrait without his permission.

**3.** **Defendants created an unauthorized derivative work of the Iconic Miles Davis Portrait in the form of a tattoo**

Not only did Defendants literally make exact duplicates of Mr. Sedlik Iconic Miles Davis Portrait, they also made an unauthorized reproduction of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a derivative tattoo, and then repeatedly published and distributed photographs of that unauthorized reproduction to millions of people on their social media accounts. This, also, cannot reasonably be in dispute. Defendants posted numerous images of them "in the act" of replicating Mr. Sedlik's Iconic Miles Davis Portrait in the form of the derivative tattoo, including but not limited to:

1      -  Multiple photographs and videos depicting Kat Von D meticulously

2         tracing Mr. Sedlik's Iconic Miles Davis Portrait on a light box in order to

3         replicate the details of the Iconic Miles Davis Portrait and then transfer

4         those details in through  that tracing to her client's arm, in the form of a

5         derivative  tattoo. PSUF ¶32.

6      -  Photographs of Kat Von D in the act of replicating  Mr. Sedlik's Iconic

7         Miles Davis Portrait in the form of a derivative tattoo, with a duplicate

8         reproduction of Mr. Sedlik's Iconic Miles Davis Portrait immediately

9         beside her for additional visual reference. See, e.g., PSUF ¶16, 17.

10      **4.**  **The tattoo is substantially similar to the Iconic Miles Davis**

11         **Portrait**

12     Substantial similarity is established by showing extrinsic and intrinsic similarity

13  between the works at issue. Three Boys Music Corp., 212 F.3d at 485. The extrinsic

14  test requires Plaintiff to "identify concrete elements based on objective criteria." Id.

15  (citing Smith, 84 F.3d at 1218). The intrinsic test asks, "whether the ordinary,

16  reasonable person would find the total concept and feel of the works to be

17  substantially similar." Id. (quoting Pasillas v. McDonald's Corp., 927 F.2d 440, 442

18  (9th Cir. 1991).

19     As noted above, and further explained below, there is no real question that

20  Defendants used the Iconic Miles Davis Portrait, incorporating the essential original

21  expression of that portrait in their derivative tattoo, and thus Plaintiff easily

22  establishes substantial similarity under both the extrinsic and intrinsic tests.

23                **a. Plaintiff satisfies the extrinsic test**

24     The extrinsic test "break[s] the works down into their constituent elements, and

25  compar[es] those elements for proof of copying." Smith, 84 F.3d at 1218. Courts

26  look to the "posing the subjects, lighting, angle, selection of film and camera,

27  evoking the desired expression, and almost any other variant involved." Rogers v.

28  Koons, 960 F.2d 301, 307 (2d Cir.1992). A comparison of the Iconic Miles Davis

1   Portrait and the subject tattoo illustrates that the objective details comprising the

2   Iconic Miles Davis Portrait have been copied into the derivative tattoo.

3       Mr. Sedlik's selection and arrangement of the elements of the Iconic Miles Davis

4   Portrait -- Sedlik's *combination* of subject matter, pose, light and shadow, camera

5   angle, juxtaposition of elements within the composition, etc., as more fully

6   identified, described and detailed in "PLAINTIFF JEFFREY B. SEDLIK'S

7   SECOND SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF

8   SPECIAL INTERROGATORIES" attached as Exhibit D to the G. Sedlik Decl., is

9   protected original expression, virtually all of which is reflected in the objective

10  details of the infringing tattoo. The two works are so remarkably similar that the

11  ordinary observer, unless she set out to detect the disparities, would overlook them.

12  The constituent elements and selection and arrangement of those visual elements in

13  the Iconic Miles Davis Portrait remain completely unchanged in the tattoo, with

14  only de minimis variation arising from the medium of reproduction. Kat Von D

15  made her best effort to apply her technical skills to replicate every aspect and detail

16  of Mr. Sedlik's photograph in the tattoo, and succeeded in that skillful replication,

17  with the only exceptions arising from insignificant details that Kat Von D's skillset

18  did not permit her to more precisely replicate.

19      Defendants' focus on the (minor) differences between the tattoo and the Iconic

20  Miles Davis Portrait is nothing more than a diversionary tactic in Defendant's

21  copyright shell game. As stated by copyright scholar David Nimmer, "It is entirely

22  immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if

23  in other respects, similarity as to a substantial element of plaintiff's work can be

24  shown."[3]

25      Thus, given the infinite ways one could choose to pose the subjects, to use

26  lighting, angles, and selection of film and camera, as well as desired expressions of

27

28  [3] Nimmer on Copyright, on Copyright § 13.03[B] [1][a]

1   the subjects, the similarities between the Iconic Miles Davis Photograph and the
2   infringing tattoo establish copying. The extrinsic test is satisfied.

3   **b. Plaintiff satisfies the intrinsic test**

4           Plaintiff also satisfies the "intrinsic test" because any ordinary, reasonable
5   observer would find the total concept and feel of the works to be substantially
6   similar. While the intrinsic test is considered subjective, the Court must still grant
7   summary judgment if the moving party has shown that "the works are so
8   overwhelmingly identical that the possibility of independent creation is precluded."
9   Twentieth Century- Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1330 (9th Cir.
10  1983). Here, the only conclusion a trier of fact can reach is that the "expression" of
11  the works undoubtedly "evoke[s] a feeling of sameness." JBJ Fabrics, Inc. v. Mark
12  Indus., Inc., No. 86-4881 FFF, 1987 U.S. Dist. LEXIS 13445, at *9 (C.D. Cal. Nov.
13  4, 1987).

14      A review of the tattoo reveals the works' nearly identical composition, concept,
15  expression, and feel. Mr. Sedlik's distinctive stylistic selection, coordination and
16  arrangement of Miles Davis, his body, his face, hand, and manner in which Mr.
17  Sedlik sculpted Mr. Davis' features with light and shadow in the Iconic Miles Davis
18  Portrait, with its intricate shading, layering, arrangement, and styling, clearly
19  evokes specific and unique motif — a total concept and feel that is copied almost
20  exactly in the tattoo. Ultimately, Defendants copied all of the essential original
21  expression – the heart and soul – of Mr. Sedlik's Iconic Miles Davis Portrait into
22  their derivative tattoo. Given Plaintiff's evidence of ownership and Defendants'
23  admission of access, summary judgment should be granted.

24      Defendants not only directly infringed Plaintiff's copyright, but the facts above
25  establish that Defendants committed both vicarious and contributory infringement
26  as well. Copyright law "allows imposition of liability when the defendant profits
27  directly from the infringement and has a right and ability to supervise the direct
28  infringer, even if the defendant initially lacks knowledge of the infringement."

1  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 n.9
2  (2005); *see also* *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("A
3  defendant is vicariously liable for copyright infringement if he enjoys a direct
4  financial benefit from another's infringing activity and 'has the right and ability to
5  supervise' the infringing activity." (quoting *A & M Records, Inc. v. Napster, Inc.*,
6  239 F.3d 1004, 1013 (9th Cir. 2001))).

7      The publication of photographs and videos of the Miles Davis Tattoo and the
8  Iconic Miles Davis Portrait to Defendants' social media induced, enabled and
9  facilitated the other Defendants as well thousands of other social media users to
10 distribute and display  reproductions of those photographs and videos on their
11 respective social media accounts without license from Plaintiff, and without
12 Plaintiff's Copyright Management Information.

13     At all times following initial publication of photographs and videos of the Miles
14 Davis Tattoo and Iconic Miles Davis Portrait to Defendant's Instagram accounts,
15 Defendants have had the right and ability to supervise and permanently remove the
16 photographs and videos from public display on Defendants' social media accounts
17 and from accounts of other social media users who "shared" Defendants'
18 photographs and videos to their respective accounts. For these reasons, Defendants
19 have committed vicarious copyright infringement in addition to their direct
20 infringement.

21     Defendants' conduct also constitutes contributory copyright infringement.
22 *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 831 (9th Cir. 2019) ("A party engages
23 in contributory copyright infringement when it '(1) has knowledge of another's
24 infringement and (2) either (a) materially contributes to or (b) induces that
25 infringement.'" (quoting *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723, 745 (9th Cir.
26 2019))); *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1147 (9th Cir. 2018)
27 ("We have adopted the well-settled rule that '[o]ne infringes contributorily by
28 intentionally inducing or encouraging direct infringement.' *Perfect 10, Inc. v.*

1  Amazon.com, Inc., 508 F.3d 1146, 1170 (9th Cir. 2007) (alteration in original)

2  (quoting Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 930

3  (2005)). Stated differently, 'liability exists if the defendant engages in personal

4  conduct that encourages or assists the infringement.'").

5  　　As stated above, at all times relevant to the conduct described in the Complaint,

6  Defendants knew of each others' infringement of the Iconic Miles Davis Portrait

7  and both materially contributed to the infringement by providing photographs and

8  other materials to aid in the infringing activity or induced the infringement by

9  publishing Mr. Sedlik's Iconic Miles Davis Portrait and derivative works based on

10  Mr. Sedlik's Iconic Miles Davis Portrait to multiple social media platforms

11  intended to induce others to further share and distribute Defendants' infringing

12  works.

13  　　　　**C. Defendants Falsified Copyright Management Information in**

14  　　　　　　**Violation of 17 U.S.C. 1202**

15  　　Congress enacted the DMCA in 1998 "to strengthen copyright protection in the

16  digital age." Universal City Studios, Inc. v. Corley, 273 F.3d 429, 435 (2d Cir.

17  2001). "Fearful that the ease with which pirates could copy and distribute a

18  copyrightable work in digital form was overwhelming the capacity of conventional

19  copyright enforcement to find and enjoin unlawfully copied material, Congress

20  sought to combat copyright piracy in its earlier stages, before the work was even

21  copied." Id.

22  　　The DMCA prohibits the falsification of Copyright Management Information.

23  Specifically, 17 U.S.C. § 1202(a)(1) states that "No person shall knowingly and

24  with the intent to induce, enable, facilitate, or conceal infringement … provide

25  copyright management information that is false" Id.

26  　　The May 16, 2017 image ("May 16, 2017 KVD Final Instagram Post") depicts a

27  nearly exact duplication of the Iconic Miles Davis Portrait as a derivative work

28  reproduced by Defendant Kat Von D in the form of a derivative tattoo. Kat Von D

-20-

captioned the May 17, 2017 KVD Final Instagram Post: "Final #MilesDavis portrait I tattooed at @highvoltagetat," not only failing to provide attribution to Mr. Sedlik, but also falsely claiming authorship of the portrait, while knowing that she did not in fact author that portrait, in a purposeful effort to conceal her infringing activity. PSUF ¶¶23,28.

By proclaiming to millions of her followers in her May 16, 2017 KVD Final Instagram Post (along with other social media posts made by Kat Von D and other Defendants) that Kat Von D had "made" a portrait of Miles Davis, Kat Von D knowingly appended false Copyright Management Information to the unauthorized derivative tattoo as depicted in her social media posts of Mr. Sedlik's Iconic Miles Davis Portrait, with the intent to mislead the public and to conceal her infringement and to further conceal the fact that Mr. Sedlik, not Kat Von D, conceived and created the Iconic Miles Davis Portrait, and that Mr. Sedlik, not Kat Von D is the copyright owner of the Iconic Miles Davis Portrait in an effort to  PSUF ¶¶23, 28.

By posting these images on their social media accounts and publishing an unauthorized derivative work of Mr. Sedlik's copyrighted Iconic Miles Davis Portrait with falsified Copyright Management Information to millions of people around the world, Defendants induced, enabled, facilitated and otherwise encouraged others to unlawfully reproduce the Iconic Miles Davis Portrait.

**V. CONCLUSION**

There can be no reasonable dispute regarding Defendants willful, knowing and intentional unauthorized copying of Plaintiff's Iconic Miles Davis Portrait, which they used for commercial purposes to promote their commercial brands and services. Further, Defendants falsified the Copyright Management Information in Mr. Sedlik's Iconic Miles Davis Portrait to facilitate their infringement. As such, Plaintiff respectfully requests summary judgment or, as appropriate, summary adjudication, of all of Plaintiff's claims in his favor and against Defendants.

1    This motion is made following the conference of counsel pursuant to L.R. 37-1,

2    which took place on March 9, 2022.  Sedlik Decl. ¶ 7.

3

4    Dated:  March 16, 2022                    SEDLIKGROUP, P.C.
                                                Gary S. Sedlik, Esq.

5

6                                               By:   /s/ Gary S. Sedlik
                                                        Gary S. Sedlik

7                                               Attorneys for Plaintiff Jeffrey B. Sedlik

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28