1  GRODSKY, OLECKI & PURITSKY LLP
2  Allen B. Grodsky (SBN 111064)
   *allen@thegolawfirm.com*
   John J. Metzidis (SBN 259464)
3  *john@thegolawfirm.com*
   11111 Santa Monica Boulevard, Suite 1070
4  Los Angeles, California 90025
   Telephone:  (310) 315-3009
5  Facsimile:   (310) 315-1557

6  Attorneys for Defendants
   Katherine Von Drachenberg, Kat Von D, Inc.,
7  and High Voltage Tattoo, Inc.

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12
   JEFFREY B. SEDLIK, an individual;    Case No. 2:21-cv-01102-DSF-MRWx
13
        Plaintiff,                      Before the Hon. Dale S. Fischer,
14                                       U.S. District Judge
        vs.
15                                       **DEFENDANTS' OPPOSITION TO**
   KATHERINE VON                        **PLAINTIFF'S MOTION FOR**
16 DRACHENBERG (a.k.a. "KAT             **SUMMARY JUDGMENT**
   VON D"), an individual; KAT
17 VON D., INC., a California            [*Defendants' Statement of Genuine*
   corporation; HIGH VOLTAGE            *Disputes and Appendix of Evidence filed*
18 TATTOO, INC., a California            *concurrently*]
   corporation; and DOES 1 through 10,
19 inclusive,                            Hearing
                                         Date:    April 18, 2022
20      Defendants.                      Time:    1:30 p.m.
                                         Place:   Courtroom 7D
21                                                First Street Courthouse
                                                  350 West 1st Street
22                                                Los Angeles, CA 90012

23

24                                       Action filed:  February 7, 2021
                                         Trial:         July 26, 2022
25

26

27

28

1

## **TABLE OF CONTENTS**

2

3

1.      INTRODUCTION ........................................................................ 7

4

2.      PLAINTIFF'S INFRINGEMENT CLAIMS ARE EITHER
5       BARRED BY THE FAIR USE DOCTRINE, OR THERE IS A
        MATERIAL DISPUTE OF FACT AS TO WHETHER THEY ARE
6       SO BARRED ................................................................................ 9

7

3.      THERE ARE MATERIAL DISPUTES OF FACT AS TO
8       WHETHER SEDLIK CAN CARRY HIS BURDEN OF PROVING
        INFRINGEMENT .......................................................................... 9
9

10      A.      In The Ninth Circuit, A Copyright Infringement Plaintiff
                Must Prove Both Copying and Unlawful Appropriation,
11              which Requires Analysis Of The Extrinsic and Intrinsic Tests .......... 10

12
        B.      There Is A Material Dispute Of Fact Under The Extrinsic Test ......... 11
13

14              (1)     Sedlik Failed To Identify Any Sources of Alleged
                        Similarity In His Separate Statement ........................................ 12
15

16              (2)     Application of the Analytic Dissection To Cases Involving
                        Photography .............................................................................. 13
17

18              (3)     There Are Material Disputes of Fact As to Whether
                        Sedlik Can Satisfy the Extrinsic Test ...................................... 17
19

20      C.      There Is A Material Dispute Of Fact On the Intrinsic Test ............... 21

21
4.      THERE IS AT LEAST A MATERIAL DISPUTE OF FACT AS TO
22      WHETHER SEDLIK HAS PROVEN ANY OF HIS INFRINGEMENT
        CLAIMS AGAINST KVD, INC .................................................. 22
23

24      A.      Facts Relating to KVD, Inc. ............................................................. 22

25      B.      There Is At Least A Material Dispute Of Fact As To Whether
26              KVD Inc. is Responsible for Direct Copyright Infringement ............ 23

27

28

## TABLE OF CONTENTS
(Continued)

C.    There Is At Least A Material Dispute of Fact As To Whether
KVD Inc. Had The Right or Ability to Supervise the Alleged
Infringement and Thus Whether It is Vicariously Liable ................... 24

D.    There Is At Least A Material Dispute of Fact As To Whether
KVD Inc. Contributed To or Induced the Alleged Infringement
and Therefore Whether It Is Contributorily Liable ............................ 26

5.    SEDLIK'S CLAIM UNDER 17 U.S.C. § 1202 EITHER FAILS
IN ITS ENTIRETY OR THERE IS A MATERIAL DISPUTE OF
FACT PRECLUDING JUDGMENT IN SEDLIK'S FAVOR ..................... 27

6.    CONCLUSION .............................................................................. 29

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>CASES:</u>                                                          <u>PAGES:</u>

4

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) .......................................................26

5

6

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) .........................................................11

7

8

*Bill Diodato Photography, LLC v. Kate Spade LLC*,
   388 F. Supp.2d 382 (S.D.N.Y. 2005)............................................16

9

10

*C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*,
   213 F.3d 474 (9th Cir. 2000) .........................................................10

11

12

*Clover v. Tesfaye*,
   2021 WL 4705512 (9th Cir. Oct. 8, 2021)....................................11

13

14

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001).........................................................17

15

16

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004)........................................................25

17

18

*Ets-Hokin v. Skyy Spirits, Inc.*,
   225 F.3d 1068 (9th Cir. 2000)................................................14, 17

19

20

*Folkens v. Wyland Worldwide, LLC*,
   882 F.3d 768 (9th Cir. 2018) .........................................................17

21

22

*Fox Broad. Co. v. Dish Network LLC*,
   747 F.3d 1060 (9th Cir. 2014)........................................................24

23

24

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
   771 F.3d 1119 (9th Cir. 2014)........................................................28

25

26

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006)........................................................21

27

28

1
2

## TABLE OF AUTHORITIES
(Continued)

3
4
*Hong v. Recreational Equipment, Inc.*,
    2021 WL 848170 (D. Idaho Mar. 4, 2021) ............................................28, 29

5
6
*Houghton v. South*,
    965 F.2d 1532 (9th Cir. 1992) ...................................................................... 10

7
8
*Idema v. Dreamworks, Inc.*,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001) ...................................................11, 14

9
10
*Kisch v. Ammirati & Puris, Inc.*,
    657 F. Supp. 380 (S.D.N.Y. 1987) ................................................................ 16

11
12
*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir.) ................................................................................. 9

13
14
*Matthew Bender & Co. v. West Publ'g Co.*,
    158 F.3d 693 (2d Cir. 1998) .......................................................................... 26

15
16
*MGM Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ...................................................................................... 26

17
18
*Mike Deodato Photography*,
    388 F. Supp.2d at 393 .................................................................................... 17

19
20
*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) ........................................................................ 28

21
22
*New London Assocs., LLC v. Kinetic Social, LLC*,
    384 F. Supp.3d 392 (S.D.N.Y. 2019) ........................................................... 25

23
24
*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir.) ............................................................................24, 26

25
26
*Perfect 10, Inc. v. Visa Int'l Service Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ........................................................................ 24

27
28
*Reece v. Island Treasures Art Gallery, Inc.*,
    468 F. Supp.2d 1197 (D. Ha. 2006) ..................................................14, 15, 17, 18

## TABLE OF AUTHORITIES
(Continued)

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018)............................................................13, 14, 17

*Sid Avery & Assocs., Inc. v. Pixels.com, LLC*,
    479 F. Supp. 3d 859 (C.D. Cal. 2020)........................................................27, 28

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir.)..............................................10, 11, 12, 13, 21

*Smith v. Weeknd*,
    2020 WL 4932074 (C.D. Cal. July 22, 2020) ................................................11

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ........................................................................11

*Telemasters, Inc v. Vintage Club Master Ass'n*,
    2007 WL 9706067 (C.D. Cal. May 11, 2007) ................................................25

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ................................................................12, 18

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
    715 F.2d 1327 (9th Cir. 1983)........................................................................21

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir.)....................................................................................26

*Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*,
    739 F.2d 1434 (9th Cir. 1984)........................................................................28

## STATUTES:

17 U.S.C. § 102 ............................................................................................17

17 U.S.C. § 107 ..............................................................................................9

17 U.S.C. § 1202............................................................................8, 27, 29

1    **1.    INTRODUCTION.**

2        By moving for summary judgment on each of the four claims for relief in his

3    Complaint, Plaintiff Jeff Sedlik ("Plaintiff" or "Sedlik") has the burden of

4    producing evidence establishing each element of his claims.  He has failed to do so.

5    He offers no evidence to support elements of some of his claims; for others, he

6    relies on "undisputed" facts which are not in any way supported by the evidence he

7    cites in his separate statement.  And in any event, the evidence submitted by

8    Defendants either creates material disputes of fact as to each of Plaintiff's claims or

9    establishes that Defendants are entitled to judgment on those claims.  In either

10   event, Plaintiff's motion should be denied in its entirety.

11       Plaintiff seeks summary judgment on his claims for direct, vicarious, and

12   contributory copyright infringement, but there are numerous disputes of material

13   fact as to whether he can prove unlawful appropriation, an essential element of his

14   claim.  The similarities between Plaintiff's "Silence" Photograph and the tattoo (the

15   "Tattoo") created by Defendant Katherine Von Drachenberg ("Kat") stem from

16   similarity in ideas, expression merging with the idea being expressed, and *scenes a*

17   *faire*, each of which are not protectible and cannot be considered in the

18   infringement analysis.  And as shown by expert testimony submitted by

19   Defendants, those elements of the "Silence" Photograph that are protectible are not

20   similar at all to the Tattoo – or at the very least there is a dispute of material fact on

21   the question of similarity.  Therefore, Plaintiff's motion must be denied.

22       Furthermore, Plaintiff simply ignores Defendants' defense of fair use.  As set

23   forth in Defendants' concurrently filed motion for summary judgment, based on the

24   undisputed facts – including the clearly transformative nature of the Tattoo and the

25   absence of any market for the licensing of photographs to be used as tattoos – the

26   Tattoo and social media posts of it constitute a fair use under well-established Ninth

27   Circuit law (or, alternatively, creates a material dispute of fact as to whether there

28

was a fair use).  Pursuant to the Copyright Act, a fair use is not an infringement. For this reason as well, Plaintiff's motion must be denied.

In addition, Plaintiff seeks to hold Defendant Kat Von D, Inc. ("KVD, Inc.") liable on its infringement claims.  But Plaintiff has submitted *no evidence* that KVD, Inc. had any involvement in the Tattoo or social media posts.  To the contrary, Defendants have submitted evidence that High Voltage is the company Kat uses for her tattoo pursuits and KVD, Inc. deals with her other businesses: acting, etc.  While Defendants believe that Plaintiff has failed as a matter of law in proving his claims against KVD, Inc., at the very least there is a material dispute of fact as to whether KVD, Inc. played any role in the Tattoo or social media posts, encouraged the alleged infringement, supervised the alleged infringers, or had any financial interest in it.  Therefore, Plaintiff's motion for summary judgment against KVD, Inc. should be denied.

Finally, Plaintiff asserts a claim under 17 U.S.C. § 1202 for falsification of copyright management information ("CMI") but offers no facts to support it.  There is no evidence that any of the Defendants put false CMI on any social media post. Rather Plaintiff bases his entire claim on a social media post by Kat stating that she tattooed the Tattoo.  That statement is 100% true and cannot be the basis of a falsification of CMI claim.  Moreover, Plaintiff has failed to introduce evidence of bad intent on the part of Defendants, an essential element of a Section 1202 claim. On the contrary, Defendants have submitted evidence that Kat had no idea who Sedlik was or that he owned the copyright to the "Silence" Photograph and that is sufficient to at least create a material dispute of fact on the issue of intent.

All in all, there are at the very least material disputes of fact as essential elements of each of Plaintiff's claim and for that reason, Plaintiff's motion for summary judgment must be denied.

**2.      PLAINTIFF'S INFRINGEMENT CLAIMS ARE EITHER BARRED BY THE FAIR USE DOCTRINE, OR THERE IS A MATERIAL DISPUTE OF FACT AS TO WHETHER THEY ARE SO BARRED.**

Under the Copyright Act, the fair use of a copyrighted work "is not an infringement of copyright."  17 U.S.C.A. § 107.   As the Ninth Circuit has stated, "[f]air use is not just excused by the law, it is wholly authorized by the law." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir.), *cert. denied*, 137  S. Ct. 416 (2016).

In their motion for summary judgment (Dkt. 31, 32) scheduled to be heard the same day as this motion, Defendants argue that, on the undisputed facts and as a matter of law, the Tattoo and social media posts depicting the Tattoo constitute a fair use and therefore are not infringements.  Rather than repeat that argument, Defendant refer the Court to it and incorporate it by this reference.

While Defendants believe that the facts that support the factors courts analyze in determining the existence of a fair use are undisputed, *at the very least* there is a dispute of material fact as to the two most important factors:  the first factor of whether the Tattoo and social media posts are transformative and the fourth factor of the effect of the use on the market for the work.   *See* Defs.' MSJ (Dkt. 32), §§ 3.B and 3.E.

For these reasons, based on fair use alone, Plaintiff's motion should be denied.

**3.      THERE ARE MATERIAL DISPUTES OF FACT AS TO WHETHER SEDLIK CAN CARRY HIS BURDEN OF PROVING INFRINGEMENT.**

Proof of copyright infringement requires Sedlik to show: (1) "that he owns a valid copyright in" [the "Silence" Photograph]; and (2) that [each of the

Defendants] copied protected aspects of the work." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir.), *cert. denied*, 141 S. Ct. 453 (2020).

As the party who bears the burden of proof at trial on this claim, Sedlik "must come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000), *quoting*, *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted). Indeed, Sedlik "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*, 213 F.3d at 480.

Defendants do not dispute the first element, that Sedlik owns a valid copyright in the "Silence" Photograph. But there is a material dispute of fact on whether the Defendants copied "protectible elements" of the "Silence" Photograph.

**A.** **In The Ninth Circuit, A Copyright Infringement Plaintiff Must Prove Both Copying and Unlawful Appropriation, which Requires Analysis Of The Extrinsic and Intrinsic Tests.**

The Ninth Circuit has recently held that "[t]he second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.' Although these requirements are too often referred to in shorthand lingo as the need to prove 'substantial similarity,' they are distinct concepts." *Skidmore*, 952 F.3d at 1064 (citations omitted).

"The hallmark of 'unlawful appropriation' is that the works share substantial similarities." *Id*. The Ninth Circuit uses a two-part test – the extrinsic test and the intrinsic test – to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work. *Id*.

The extrinsic test compares the objective similarities of specific expressive elements in the two works. *Id*. "Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and

-10-

1  unprotected material in a plaintiff's work.'" *Id*., *quoting*, *Swirsky v. Carey*, 376

2  F.3d 841, 845 (9th Cir. 2004).  The intrinsic test is based on the standpoint of the

3  ordinary reasonable observer.  *Skidmore*, 952 F.3d at 1051.  "Both tests must be

4  satisfied for the works to be deemed substantially similar."  *Id*.

5      Here, there are material disputes of fact, under *both* the extrinsic and intrinsic

6  test – and thus as to whether the Tattoo (and the social media posts of the Tattoo in

7  various states of progress) are substantially similar to the "Silence" Photograph.

8      **B.    <u>There Is A Material Dispute Of Fact Under The Extrinsic Test</u>.**

9      "The extrinsic test places the burden on the plaintiff to identify the sources of

10  the alleged similarity between the plaintiff's work and the allegedly infringing

11  work."  *Smith v. Weeknd*, 2020 WL 4932074, at *5 (C.D. Cal. July 22, 2020), *aff'd*

12  *sub nom. Clover v. Tesfaye*, 2021 WL 4705512 (9th Cir. Oct. 8, 2021).  Once the

13  plaintiff has identified the alleged similarities, "[u]sing analytic dissection, and, if

14  necessary, expert testimony, the court must determine whether any of the allegedly

15  similar features are protected by copyright."  *Apple Computer, Inc. v. Microsoft*

16  *Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994), *cert. denied*, 513 U.S. 1184 (1995).

17      In an analytic dissection, "each of the 'constituent elements' of the

18  copyrighted work(s) are isolated, to the exclusion of other elements, combinations

19  of elements, or types of expression therein."  *Idema v. Dreamworks, Inc.*, 162 F.

20  Supp. 2d 1129, 1177 (C.D. Cal. 2001), *aff'd in part, dismissed in part*, 90 F. App'x

21  496 (9th Cir. 2003).  In this analysis, a copyright infringement plaintiff "***may place***

22  ***no reliance*** upon any similarity in expression resulting from unprotectable

23  elements."  *Apple Computer*, 35 F.3d at 1446 (emphasis added).

24      Once the Court has "dissected the alleged similarities and considered the

25  range of possible expression," it "must define the scope of the plaintiff's

26  copyright – that is, decide whether the work is entitled to 'broad' or 'thin'

27  protection."  *Id*., 35 F.3d at 1443.  "Depending on the degree of protection, the

28  court must set the appropriate standard for a subjective comparison of the works to

1    determine whether, as a whole, they are sufficiently similar to support a finding of

2    illicit copying." *Id.*

3         Using this test, there is a material dispute of fact as to whether Sedlik can

4    prevail on the extrinsic test.

5                    **(1)   Sedlik Failed To Identify Any Sources of Alleged Similarity**

6                           **In His Separate Statement.**

7         As noted above, it was Sedlik's burden to identify the sources of alleged

8    similarity between the Tattoo and the "Silence" Photograph. *Smith*, 2020 WL

9    4932074, at * 5. *See also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485

10   (9th Cir. 2000), *overruled on other grounds by Skidmore*, 952 F.3d 1051("Initially,

11   the extrinsic test requires that *the plaintiff* identify concrete elements based on

12   objective criteria") (emphasis added).

13        None of the Undisputed Facts in Sedlik's separate statement address what are

14   the protected elements of the "Silence" Photograph or how they are similar to

15   elements of the Tattoo.  (See Plaintiff's Separate Statement (Dkt. 37-1).)

16        Rather, in his motion, Sedlik broadly asserts that each element of the

17   "Silence" Photograph – "the combination of subject matter, pose, light and shadow,

18   camera angle, juxtaposition of elements within composition etc." – is similar to the

19   Tattoo.  Pltf's MSJ (Dkt. 37) at 17:3-10.  He then refers the Court to his fifteen-

20   page supplemental interrogatory responses (which are not referenced at all in the

21   Separate Statement) and invites the Court to sift through those and figure out for

22   itself what the similar elements are. *Id.*

23        The problem with this approach is that it is exactly the opposite of what this

24   Court's Order re: Motions for Summary Judgment requires:  "No party should

25   submit evidence other than the specific items of evidence or testimony necessary to

26   support or controvert a proposed statement of undisputed fact" and "documents that

27   do not specifically support or controvert material in the separate statement should

28   not be submitted in support or in opposition to a motion for summary judgment."

Standing Order Re: MSJs, at 3:15-23.  And even if the Court were to consider the interrogatory response, it identifies what elements of the "Silence" Photograph Sedlik contends are protected by copyright law, not which specific claimed protectible elements of the "Silence" Photograph are similar to the Tattoo.

For that reason alone, Sedlik's motion as it relates to the copyright infringement claims should be denied.

### (2) Application of the Analytic Dissection To Cases Involving Photography.

The Ninth Circuit has held that analytic dissection in cases involving photographs operates differently than in other kinds of cases.  While "photos can be broken down into objective elements that reflect the various creative choices the photographer made in composing the image – choices related to subject matter, pose, lighting, camera angle, depth of field, and the like," "none of those elements is subject to copyright protection when viewed in isolation."  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1119 (9th Cir. 2018), *overruled on other grounds by Skidmore*, 952 F.3d 1051.

The Ninth Circuit in *Rentmeester* provided the following example specifically applying to the field of photography:

> a photographer who produces a photo using a highly
> original lighting technique or a novel camera angle cannot
> prevent other photographers from using those same
> techniques to produce new images of their own, provided
> the new images are not substantially similar to the earlier,
> copyrighted photo. With respect to a photograph's subject
> matter, no photographer can claim a monopoly on the
> right to photograph a particular subject just because he
> was the first to capture it on film.  A subsequent
> photographer is free to take her own photo of the same

1               subject, again so long as the resulting image is not

2               substantially similar to the earlier photograph.

3   *Id*.

4      Moreover, copyright protection does not extend to an "idea" or "concept"

5   "regardless of the form in which it is described, explained, illustrated, or embodied

6   in such work."  17 U.S.C. 102(b).  "The line between idea and expression in

7   copyright cases is often blurry and difficult to identify in the context of a

8   photograph."  *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp.2d 1197,

9   1205 (D. Ha. 2006).

10     Thus, "[a]mong the unprotectable elements which the court must filter out

11   are:  ideas, as distinguished from expression; elements borrowed from another

12   artists or from the public domain; instances in which a particular expression

13   'merges' with the idea being expressed; and the degree to which the form of the

14   expression is so standard in the treatment of a given idea that is constitutes a *scènes*

15   *à faire*, or a 'scene which must be done.'"  *Idema*, 162 F. Supp.2d at 1176-77.  *See*

16   *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) ("Under the . . .

17   doctrine of *scènes à faire*, courts will not protect a copyrighted work from

18   infringement if the expression embodied in the work necessarily flows from a

19   commonplace idea; like merger, the rationale is that there should be no monopoly

20   on the underlying unprotectable idea").

21     These principles were applied in the *Rentmeester* case, in which Plaintiff

22   photographer created a "highly original" photograph of Michael Jordan "leaping

23   toward a basketball hoop with a basketball raised above his head in his left hand, as

24   though he is attempting to dunk the ball."  883 F.3d at 1115.  Plaintiff "instructed

25   Jordan on the precise pose he wanted Jordan to assume" and "[i]t was an unusual

26   pose for a basketball player to adopt."  *Id*.  Years later, Defendant Nike "hired a

27   photographer to produce its own photograph of Jordan, one obviously inspired by

28   [Plaintiff's] in which "Jordan is again shown leaping toward a basketball hoop with

a basketball held in his left hand above his head, as though he is about to dunk the ball." *Id*. at 1116.

The Ninth Circuit affirmed the district court's denial of a motion to dismiss, holding that, despite the fact that "[t]he two photos are undeniably similar in the subject matter they depict" and "[b]oth capture Michael Jordan in a leaping pose inspired by ballet's grand jeté," Plaintiff's "copyright does not confer a monopoly on that general 'idea" or 'concept'; he cannot prohibit other photographers from taking their own photos of Jordan in a leaping, grand jeté-inspired pose." *Id*. at 1121. The Ninth Circuit went on to identify various differences in the photos: the background, the position of Jordan's limbs.

The Ninth Circuit concluded: "What [Plaintiff's] photo and the Nike photo share are similarities in general ideas or concepts: Michael Jordan attempting to dunk in a pose inspired by ballet's grand jeté; an outdoor setting stripped of most of the traditional trappings of basketball; a camera angle that captures the subject silhouetted against the sky, [Plaintiff] cannot claim an exclusive right to ideas or concepts at that level of generality, even in combination." *Id*. at 1122-23.

Also instructive is *Reece*, 468 F. Supp.2d 1107, in which – similar to our case – a Plaintiff photographer claimed infringement by an artist who worked in a completely different medium, stained glass. The two works in *Reece* both "depict, from the same angle, a woman kneeling on Oahu's Kailua beach performing an ike motion from the hulu noha (sitting) position." *Id*. at 1200-01. Plaintiff moved for a preliminary injunction contending that Defendant's stained glass work was "a virtually identical copy" of his photograph. *Id*. at 1201.

The district court, notwithstanding its finding that "the works appear to be images of the same likeness," "present[ing] the woman from the same angle and orientation," denied the motion finding that it could not say that the works were substantially similar. The Court noted that "the idea of a hula dancer performing an ike movement in the hula kahiko style from the noho position is not protected." *Id*.

-15-

at 1206.  While acknowledging that "the angle and perspective of the pieces are very similar," the Court concluded that the "position of the subject dancer relative to her setting is not."  *Id*.  It then noted that the "lighting element [was] unique to the photograph" because of course the stained glass work was a different medium. *Id*. at 1208.

Finally, in *Bill Diodato Photography, LLC v. Kate Spade LLC*, 388 F. Supp. 2d 382 (S.D.N.Y. 2005), Plaintiff was a photographer whose photograph depicted "the bottom of a bathroom stall," through which "one can see a woman's feet, astride a toilet, in stylish colorful shoes, with a handbag on the floor."  *Id*. at 384. Plaintiff sued the fashion company Kate Spade which, after receiving a portfolio containing Plaintiff's photo, ran an advertising campaign including a photograph "of a woman's feet, astride a toilet, in stylish colorful shoes, with a handbag on the floor."  *Id*. at 384, 387.  The district court granted summary judgment holding that no protectible elements were copied.

The Court began by noting that "[t]o the extent that aspects of [Defendant's] photograph are derived from the idea of [Plaintiff's photograph], or naturally flow from the idea, they are not protectible."  *Id*. at 392.  And while the pose in the photograph was "seemingly unnatural," "[i]n cases involving photographs, a 'plaintiff's copyrights cannot monopolize the various poses used,' and 'can protect only plaintiff's particular photographic expression of these poses and not the underlying ideas therefor.'" *Id*. at 393 (quoting *Kisch v. Ammirati & Puris, Inc.*, 657 F. Supp. 380, 382 (S.D.N.Y. 1987)).  The Court then focused on the differences between the photos:  the "mood, colors, lighting, and depth of objects are distinct and the view is slightly cropped."  The Court concluded that the "elements that are arguably copied in the Kate Spade Photograph are non-original unprotectible element." *Id*. at 394.

Application of these cases to the facts in the record show that there is a material dispute of fact as to whether Sedlik can satisfy the extrinsic test.

**(3)** **There Are Material Disputes of Fact As to Whether Sedlik Can Satisfy the Extrinsic Test.**

Two of the elements Sedlik mentions in his opposition – subject matter and pose – are not protectible.  Sedlik does not and cannot own a legal monopoly the idea of Miles Davis making a "Sssh!" symbol with his fingers.  That is an idea.  Just like the idea of Michael Jordan dunking the ball in *Rentmeester* or the hula dancer in *Reece* or the woman's feet under a bathroom stall in *Bill Diodato Photography*, it is an unprotectible idea.  And the mere fact Sedlik posed Davis in that pose doesn't change anything; the photographer did the same with Jordan in *Rentmeester*.  883 F.3d at 1122-23; *see also Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 773-74, 776  (9th Cir. 2018) (drawing of dolphins who "were posed by professional animal trainers" is non-protectible because "the fact that a pose can be achieved with the assistance of animal trainers does not in and of itself dictate whether the pose can be found in nature" and concluding that it "is an idea first expressed in nature" and "[n]o artist may use copyright law to prevent others from depicting this ecological idea.").

Similarly, once it is clear that the idea of Miles Davis making the "Sssh!" sign with his hand is not protectible, it follows then that there are only so many ways one can make the "Sssh!" sign with one's hand.  The placement of the hand "necessarily flows from [the] commonplace idea [of the Sssh! symbol]."  *See Ets-Hokin*, 225 F.3d at 1082; *see also Mike Deodato Photography*, 388 F. Supp.2d at 393 ("there are few places that [a handbag] can be strategically positioned so as not to conceal the model's shoes or fade into the background").

Moreover, Sedlik does not control (nor could he copyright) Miles Davis's appearance.  *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. 2001) ("A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102 . . . notwithstanding the fact that Appellants' names and likenesses are embodied in a copyrightable photograph").

-17-

1    Once the Court eliminates the unprotectible elements – the idea of Miles

2  Davis making a Sssh! sign with this hand, Miles Davis's likeness, and the

3  placement of the hand – what is clear is that copyright protection for the "Silence"

4  Photograph is thin and that the remaining elements of Sedlik's photograph are

5  different than Kat's tattoo.

6    Satisfying the extrinsic test "often requires . . . expert testimony." *Three*

7  *Boys*, 212 F.3d at 486.  We have provided just that:  expert testimony from Anna

8  Felicity Friedman, a scholar and professor of art history with a Master's degree in

9  Art History, Theory & Criticism from the School of the Art Institute of Chicago, as

10  well as a Ph.D. in the History of Culture from the University of Chicago.  Defs.'

11  Additional Fact ("AF") 187.  Dr. Friedman identified substantial differences

12  between the "Silence" Photograph and the Tattoo.

13    For example, the light and shadows – something Sedlik claims to have

14  carefully controlled in his photograph – are different in the Tattoo.  This should not

15  be surprising.  Indeed, as Dr. Friedman testifies: the "quality of shadows is quite

16  different due to the inherent difference in the tattoo medium which makes them

17  soften and muddier."  AF 188.  Indeed:

18        The tattooed portrait has significantly less reflectance and

19        sculpting through the use of light and a more uniform

20        lighting effect that is far less dramatic.  For example, in

21        the tattooed portrait the cheekbones are far less prominent

22        and there is little highlighting on the forehead of the

23        subject in contrast to the photograph.  This is partially due

24        to the nature of tattooing on skin which is tinted and

25        disallows a bright white highlight.

26  AF 189.  It should be no surprise that different media (photography v. human skin)

27  result in dramatically different light and shadow.  The same result was found in

28  *Reece* with the different media of photography and stained glass:  "The medium

-18-

each artist has chosen . . . contributes to the different feel and concept of the works as a whole," identifying the "photograph's stark contrasts between darkness and light [as] characteristic of the . . . choice of film, exposure and timing" as opposed to the "entirely different feeling [that] emerges from the brightly colored and textured stained glass collage." 468 F. Supp. at 1209.

The background of the two works is entirely different. The "Silence" Photograph has a black background. The Tattoo "features an amorphous small border of fuzzy greys of various shades that then dissolves into a background of skin color." AF 190.

In the "Silence" Photograph, Davis is wearing a black jacket. There is no black jacket depicted in the Tattoo. AF 191.

Davis's hair is not the same in the two works. "The tattooed portrait has a very different hairstyle that does not feature curls but rather a hazy halo of hair. The hairline is also slightly different. It is more receding in the tattooed portrait. There is little, if no, shading or highlights on the hair in the tattooed version." AF 192.

While Miles Davis' facial features are not a protectible element of the Photograph, the fact is that the Tattoo renders them differently than the Photograph. Dr. Friedman provided expert testimony about multiple differences in the features on Davis's face, including:

- Eyes: "The eyes in the tattooed portrait are rendered quite differently. They feature bright white spots near the pupils rather than tiny, almost unnoticeable pinprick-sized spots in the original; the shape of the eyelids and the quality of light on them differs – the eyes in the tattooed portrait look more droopy, older and the upper eyelids are noticeably bigger in the tattooed portrait; above the eyelids, especially with the eye on the left, the shape of the skin between the eyebrow and eyelid are substantially different" AF 193.

- Eyebrows: Davis's eyebrows on the Tattoo are "wider and appear more sparse with respect to eyebrow hair" and "the brow [on the Tattoo] is significantly less furrowed with fewer wrinkles and softer edges to those that are present [in the "Silence" Photograph]." AF 194. "The less furrowed brow gives Davis a more resigned, gentler and less aggressive appearance." AF 195.

- Nose: "The nose in the tattooed portrait is wider and less angular, and it lacks the highlights and shadows that sculpt the nose in the photographic portrait. The nostril is not flared but more relaxed." AF 196. "Additionally, the 'laugh line' running from the left side of the nose to the mouth is rendered as deeper and at a steeper angle conveying a more sad appearance in the tattooed portrait." AF 197.

- General features: "[D]ue to the nature of the tattoo being rendered onto a 3-dimensional, uneven substrate," "[t]he tattooed portrait is fuller and softer . . . . [t]he nose and cheekbones are less angular, the forehead is taller and narrower . . . . [t]he eye area is also narrower." AF 198.

The consequence of these differences is that the works as a whole are different. On the one hand, Sedlik's "Silence" Photograph "is dynamic," makes Davis look "powerful with a strong gaze," and results in Davis "look[ing] as if he could jump off the photographic paper." AF 199.

Contrast that with the Tattoo, in which Davis looks "older, more weathered, almost defeated." Dr. Friedman goes on to opine:

> His hair looks dull and ungroomed. His eyes seem vacant. He floats in a ghostly manner, his head and hand disembodied, amidst a murky, undefined background.

AF 200. Dr. Friedman concludes:

> Davis looks like he is about to be absorbed into the tattoo wearer's skin, and at his wrist the image looks as if it is

1    starting to dissolve.  This tattooed portrait of Miles Davis

2    looks like a memorial, nor a person captured in vibrant

3    life . . . ."

4  AF 201.

5        This is consistent with Kat's testimony about what she hoped to achieve in

6  the Tattoo:

7        So I wanted to create a sentiment on him that was

8        something that was melancholy and had movement in it.

9        Because when I do listen to Miles Davis' music there is so

10       much movement in it. And so that's why I – I added all

11       the textures and all of the shading and the composition

12       that you see in that tattoo, none of which are in the

13       original photograph.

14  AF 202.

15       All of these differences show that there are at least material disputes of fact

16  as to the whether Sedlik can satisfy the extrinsic test.

17       **C.    <u>There Is A Material Dispute Of Fact On the Intrinsic Test</u>.**

18       Sedlik also insists that he carried the burden of satisfying the intrinsic test,

19  "which examines an ordinary person's subjective impressions of the similarities

20  between two works," notwithstanding that it "is exclusively the province of the

21  jury." *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1077 (9th

22  Cir. 2006), *overruled on other grounds by Skidmore*, 952 F.3d 1051 (9th Cir. 2020).

23       In arguing that he satisfied the intrinsic test, Sedlik relies primarily on

24  *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1329 (9th Cir.

25  1983), a case in which the Ninth Circuit reversed the trial court's grant of a

26  summary judgment for the Plaintiff in a copyright infringement matter, noting:

27  "[w]e intimate no opinion whether the films are substantially similar as to either

28

idea or expression, but state only that reasonable minds could differ on those key factual issues."

Reasonable minds could differ in this case as well. For all the reasons set forth in Section 3.B above, including the difference between the media of photography and tattooing which dramatically changes the subject depicted, there is a material dispute of fact as to whether Sedlik could pass the intrinsic test and for that reason, summary judgment should be denied.

**4.** **THERE IS AT LEAST A MATERIAL DISPUTE OF FACT AS TO WHETHER SEDLIK HAS PROVEN ANY OF HIS INFRINGEMENT CLAIMS AGAINST KVD, INC.**

Even if Sedlik carried his burden of proving unlawful appropriation, there are at the very least material disputes of fact as to whether Defendant Kat Von D, Inc. ("KVD, Inc.") is liable for direct, contributory, or vicarious infringement. Indeed, as set forth in Defendants' Motion for Summary Judgment, Defendants believe that the evidence – all of which was ignored by Sedlik in this motion – establishes as a matter of law that KVD, Inc. is not liable for any of those claims.

**A.** **Facts Relating to KVD, Inc.**

Defendant Katherine Von Drachenberg is professionally known as "Kat Von D." Defendant's Additional Fact ("AF") 34. She is a renowned tattoo artist and has special expertise in inking "black and gray" style portrait tattoos. AF 35-36.

Defendant High Voltage Tattoo, Inc. ("High Voltage") was the operating company for Kat's tattoo shop in West Hollywood. AF 40. The shop closed in November 2021. AF 41.

Defendant Kat Von D, Inc. ("KVD Inc.") is a another company owned by Kat. AF 47. This company has nothing to do with tattooing. AF 48. Instead, it is involved in all of Kat's commercial enterprises outside of tattooing, such as

television appearances and film.  AF 49-50.   KVD Inc. holds no ownership interest in High Voltage.  AF 51.

**B.**      **There Is At Least A Material Dispute Of Fact As To Whether KVD Inc. is Responsible for Direct Copyright Infringement.**

Plaintiff's first claim for direct infringement alleges each of the Defendants "creat[ed] infringing derivative works" by "reproducing [the Photograph] in the form of a tattoo" and "publish[ed] [the Photograph by] using, reproducing, displaying, and distributing [the Photograph] online and on websites. . . ."  Compl. (Dkt. 1) ¶¶ 89-90.

But Sedlik has produce *no evidence whatsoever* that KVD Inc. did any such thing.   His Separate Statement of Unconverted Facts repeatedly refers to "Defendants" (plural) having posted to social media accounts, reproduced or displayed the photographs, and engaging in media campaigns all solely based on citations to paragraphs in Defendants' Answer.  *See* Plaintiff's Undisputed Fact Nos. 16-25, Dkt. 37-1 at 5-11.  Some of these citations are to paragraphs of the Answer in which Defendants simply *denied* each and every allegation in a particular paragraph of the Complaint.[1]  The other citations are to paragraphs in which Defendants admitted that a particular social media post *was made* but did not admit that *each* of the Defendants was responsible for making it and indeed denied all of Plaintiff's allegations other than that mere fact that a post was made.[2] Plaintiff's reliance on these irrelevant admissions in Defendants' answer provide no evidence whatsoever that KVD, Inc. played any role in the creation of the Tattoo or social media posts.

---

[1]      *See* Plaintiff's Undisputed Fact Nos. 18-20, citing Paragraphs 43, 45, 46, 52, 59, 65, and 76 of the Answer, all of which are complete denials of the referenced Paragraph of the Complaint.  (Dkt. 13.)

[2]      *See* Plaintiff's Undisputed Fact Nos. 18-25, citing Paragraphs 32, 47, 51, 53, 57, 58, 60, 64, 66, 70, and 72, each of which admit the existence of a particular social media post but admit nothing about KVD, Inc.'s supposed role in creating or uploading the posts.

Indeed, the *only* evidence Sedlik submits about KVD, Inc. at all is a California Secretary of State Statement of Information *from 2008* – nine years before the Tattoo was created – that describes KVD, Inc.'s *then*-type of business as "personal services – body art." *See* Pltf's UF 13 and Defendant's Response thereto. That evidence says nothing about whether KVD, Inc. had any role in the creation of the Tattoo or social media posts at issue here. And even if it did, it is contradicted by the evidence that KVD Inc. is a company that Kat uses for her non-tattoo-related pursuits. AF 49-50.

That evidence in no way establishes that KVD, Inc. took any affirmative action that could constitute direct copyright infringement and, even if it did, the evidence submitted that KVD, Inc. has no involvement in tattooing creates a material dispute of fact and Plaintiff's motion should be denied. *See Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014) (infringement "requires 'copying by the defendant,' . . . which comprises a requirement that the defendant cause the copying").

C.   **There Is At Least A Material Dispute of Fact As To Whether KVD Inc. Had The Right or Ability to Supervise the Alleged Infringement and Thus Whether It is Vicariously Liable.**

To prove Plaintiff's second claim for vicarious infringement, Plaintiff "must prove 'the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity.'" *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670, 673 (9th Cir.), *cert. denied*, 138 S. Ct. 504 (2017), *quoting Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007), *cert. denied*, 553 U.S. 1079 (2008). In its summary judgment motion, Defendants assert that Sedlik can prove neither element; at the very least, there is a material dispute of fact as to both elements.

Plaintiff cannot establish that KVD Inc. had the right and ability to supervise the alleged infringing conduct. KVD Inc. is the entity used by Kat for non-tattoo-

related pursuits and it has and had no ownership interest in High Voltage, the entity through which Kat pursued her tattooing activities and at which the tattoo was created. AF 40, 49-51. The mere fact Kat is the owner of both High Voltage and KVD Inc. isn't sufficient to establish that KVD Inc. had the right or ability to supervise the creation of the tattoo or the social media posts. *See New London Assocs., LLC v. Kinetic Social, LLC*, 384 F. Supp.3d 392, 410 (S.D.N.Y. 2019) (plaintiff's "allegations that certain individuals who were affiliated with the [defendant] Financing Entities also had roles in the management and operation of [the defendants accused of direct copyright infringement] are insufficient to state a claim for vicarious liability").

Similarly, there is at the very least a material dispute of fact as to whether KVD Inc. had a direct financial benefit in the alleged infringing activity (and more likely, Sedlik has failed to show such benefit as a matter of law. "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (emphasis added). Sedlik has no "undisputed fact" in his separate statement addressing the supposed direct financial benefit KVD, Inc. received. Moreover, because Kat received no compensation at all for creating the tattoo and for years has not charged for doing so, and because KVD Inc. is unrelated to Kat's activities in the field of tattooing, there is no evidence of direct financial interest received by KVD Inc. *See Telemasters, Inc v. Vintage Club Master Ass'n*, 2007 WL 9706067, at *11 (C.D. Cal. May 11, 2007) ("Plaintiff has failed to raise a triable issue as to whether [Defendant] received a direct financial benefit from another's infringing activity and Defendant is entitled to summary judgment on Plaintiff's claim for vicarious copyright infringement").

Therefore, if the Court should deny Sedlik's motion for summary judgment on vicarious infringement as to KVD, Inc.

**D.** **There Is At Least A Material Dispute of Fact As To Whether KVD Inc. Contributed To or Induced the Alleged Infringement and Therefore Whether It Is Contributorily Liable.**

To prove Plaintiff's third claim for contributory infringement, Plaintiff must prove KVD Inc. "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10*, 847 F.3d at 870 (9th Cir. 2017). To prove inducement liability, Plaintiff must present evidence of "active steps . . . taken to encourage direct infringement." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019), *quoting MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (citation and quotation omitted). "Put differently, liability exists if the defendant engages in 'personal conduct that encourages or assists the infringement.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001). *quoting Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998), *cert. denied*, 526 U.S. 1154 (1999).

Again, Plaintiff's assertions in his "undisputed facts" about actions taken by KVD, Inc. are unsupported by any evidence. *See* Defendants' Response to UFs 16-20, 23-28. Rather, there is evidence that KVD Inc. is Kat's entity for non-tattoo-related businesses, like film or TV appearances. AF 49-50. Therefore, either KVD, Inc. is entitled to judgment on Plaintiff's claim for contributory infringement or there is a material dispute of fact as to whether Sedlik can prevail on that claim.

**5.    SEDLIK'S CLAIM UNDER 17 U.S.C. § 1202 EITHER FAILS IN ITS ENTIRETY OR THERE IS A MATERIAL DISPUTE OF FACT PRECLUDING JUDGMENT IN SEDLIK'S FAVOR.**

Plaintiff's fourth claim for violation of 17 U.S.C. § 1202 alleges two separate claims:  removal or alteration of copyright management information ("CMI") in violation of Section 1202(b), and falsification of CMI in violation of Section 1202(a).  On this motion, Plaintiff seeks summary judgment only on the "falsification" claim, apparently conceding that he has no evidence to support the removal or alteration claim.  Plaintiff has not presented evidence sufficient to establish his falsification claim and for that reason summary judgment should be granted in Defendants' favor; in the alternative, there is at least a material dispute of fact as to each of the elements of a falsification claim and this motion should be denied.

To establish liability under Section 1202(a), Plaintiff must show both that (1) Defendants "provided" or "distribut[e]d or import[ed] for distribution" false CMI, and (2) did so "knowingly and with the intent to induce, enable, facilitate, or conceal infringement."  *Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, 479 F. Supp. 3d 859, 870 (C.D. Cal. 2020).  Plaintiff cannot prove either of these elements.

First, the sole evidence that Defendants "provided" or "distributed" false CMI is a single 5/16/2017 Instagram post on the @thekatvond Instagram page depicting the final Tattoo Defendants with the words "Final #MilesDavis portrait I tattooed at @highvoltagetat."[3]  Somehow, Plaintiff seeks to twist this simple truthful statement by Kat that she is the person who made the tattoo depicted on Instagram into her saying that she is the photographer who created the "Silence"

---

[3]     The evidence Plaintiff offers to support his "undisputed fact" regarding this Instagram post is a citation to paragraphs of the Complaint and Answer that don't relate to the post.  *See* Response to UF 23.  Nevertheless, Defendants readily acknowledged that this was one of the social media posts Kat and High Voltage made regarding the Tattoo.  *See* AFs 127, 130.  There remains *no evidence whatsoever* that KVD, Inc. made any social media posts regarding the Tattoo.

Photograph.  The Instagram post says no such thing and no reasonable jury would interpret it that way.  At the very least, there is a genuine dispute of material fact given that a reasonable interpretation of the Instagram post is that it is saying nothing at all about Sedlik's copyrighted photograph.  *See Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014), *quoting*, *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) ("Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'").

Second, as to the second elements of whether Defendants acted knowingly and with the intent to induce, enable, facilitate or conceal infringement, "[s]ummary judgment is generally inappropriate when mental state is an issue, unless no reasonable inference supports the adverse party's claim." *Sid Avery*, 2020 WL 6114918 at *871, *quoting, Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir. 1984).

Here, Plaintiff offered no evidence whatsoever evidencing the mental state of any of the Defendants here, despite the fact that he "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*, 213 F.3d at 480.  Moreover, the evidence in the record at the very least creates a dispute of material fact on the issue of intent.  For example, the photograph that Kat used as a reference in creating the tattoo was provided to Kat by her client, and did not contain a copyright symbol, did not have Sedlik's name on it, and did not have a watermark on it.  AF 68-71.  Kat did not remove any CMI from the photograph she was provided.  AF 72.  Kat had never heard of Sedlik before she was sued in this case.  AF 203.  At the time she created the Tattoo, she had no idea that Sedlik had a copyright in the "Silence" Photograph.  AF 204.  In Kat's experience, "[t]attooers never look into who has done any of the [reference] artwork" because "[i]t's not common practice in the tattoo industry."  AF 205; *cf. *AFs 113-14 (this is consistent with industry custom and practice).  *See Hong v.*

1  *Recreational Equipment, Inc.*, 2021 WL 848170, at *7 (D. Idaho Mar. 4, 2021)

2  (granting summary judgment in favor of Defendant on 1202(a) claim because

3  Defendant put on evidence that "there was no CMI on the [allegedly infringing]

4  image [Defendant] downloaded; that [Defendant] did not know that the image was

5  copyrighted until [Plaintiff] filed the present lawsuit; and that [Defendant] thus did

6  not [act] knowingly and with the intent to induce, enable, facilitate, or conceal an

7  infringement").

8

9  **6.    CONCLUSION.**

10      Plaintiff has failed to establish undisputed facts for each of the elements of

11  his affirmative claims, and Defendants have shown that there are genuine issues of

12  fact as to essential elements of Plaintiff's claim and as to its fair use defense.  For

13  the reasons, Plaintiff's motion should be denied in its entirety.

14

15  Dated:  March 28, 2022            Respectfully submitted,

16                                   GRODSKY, OLECKI & PURITSKY LLP
                                     Allen B. Grodsky
17                                   John J. Metzidis

18                                   By:   /s/ Allen B. Grodsky
19                                              Allen B. Grodsky

20                                   Attorneys for Defendants Katherine Von
                                     Drachenberg, Kat Von D, Inc., and High Voltage
21                                   Tattoo, Inc.

22

23

24

25

26

27

28