1  GRODSKY, OLECKI & PURITSKY LLP
   Allen B. Grodsky (SBN 111064)
2  *allen@thegolawfirm.com*
   John J. Metzidis (SBN 259464)
3  *john@thegolawfirm.com*
   11111 Santa Monica Boulevard, Suite 1070
4  Los Angeles, California 90025
   Telephone:   (310) 315-3009
5  Facsimile:   (310) 315-1557

6  Attorneys for Defendants
   Katherine Von Drachenberg, Kat Von D, Inc.,
7  and High Voltage Tattoo, Inc.

8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                        WESTERN DIVISION

12

13  JEFFREY B. SEDLIK, an individual;       Case No. 2:21-cv-01102-DSF-MRWx

14            Plaintiff,                     Before the Hon. Dale S. Fischer,
                                             U.S. District Judge
15       vs.
                                             **DEFENDANTS' STATEMENT OF**
16  KATHERINE VON                            **GENUINE DISPUTES IN**
    DRACHENBERG (a.k.a. "KAT                 **OPPOSITION TO PLAINTIFF'S**
17  VON D"), an individual; KAT              **MOTION FOR SUMMARY**
    VON D., INC., a California               **JUDGMENT**
18  corporation; HIGH VOLTAGE
    TATTOO, INC., a California               [*Defendants' Opposition Brief and*
19  corporation; and DOES 1 through 10,      *Appendix of Evidence filed*
    inclusive,                               *concurrently*]
20
              Defendants.                    Hearing
21                                           Date:    April 18, 2022
                                             Time:    1:30 p.m.
22                                           Place:   Courtroom 7D
                                                      First Street Courthouse
23                                                    350 West 1st Street
                                                      Los Angeles, CA 90012
24

25                                           Action filed:  February 7, 2021
                                             FPTC:          June 27, 2022
26                                           Trial:         July 26, 2022

27

28

Pursuant to this Court's standing Order Re Motions for Summary Judgment, Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc. (together, "Defendants") submit the following Statement of Genuine Disputes in Opposition to Plaintiff's Motion for Summary Judgment.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGED UNCONTROVERTED FACTS

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **1.** Plaintiff, Jeffrey B. Sedlik ("Mr. Sedlik"), is a world-renowned, award-winning professional photographer and professor.<br><br>[Declaration of Jeffrey B. Sedlik dated March 16, 2022 ("J. Sedlik Decl.") ¶ 2] | Undisputed. |
| **2.** He is a ten-time recipient of the Communication Arts Award of Excellence, and many other awards, including the Clio, One Show, Art Directors Club, Photo Design, PDN/Nikon, Creativity Award, IPC Industry Leadership Award, and others.<br><br>[J. Sedlik Decl. ¶ 2.] | Undisputed. |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **3.**  Sedlik's work has been profiled in Studio Photography & Design, In Focus, Photo District News, Rangefinder, and other industry publications.<br><br>[J. Sedlik Decl. ¶ 2.] | Undisputed. |
| **4.**  His fine art repertoire includes group and solo exhibitions in Los Angeles, San Francisco, Monterey, St. Louis, and New York City.<br><br>[J. Sedlik Decl. ¶ 2.] | Undisputed. |
| **5.**  In 1989, Mr. Sedlik independently conceived and created the iconic photographic portrait depicting world-famous jazz musician Miles Davis (the "Iconic Miles Davis Portrait") that is the subject of this litigation.<br><br>[J. Sedlik Decl. ¶ 3.] | Undisputed. |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **6.** Mr. Sedlik is the sole and exclusive owner of the copyright in the Iconic Miles Davis Portrait which was first published in Jazziz Magazine in or around August 1989. A depiction of a reproduction of the Iconic Miles Davis Portrait appears below:<br><br><br><br>[J. Sedlik Decl. ¶ 3.] | Undisputed. |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **7.** Mr. Sedlik has offered and sold non-exclusive copyright licenses authorizing limited reproduction, distribution, display, and creation of derivative works of Sedlik's Iconic Miles Davis Portrait for commercial and non-commercial purposes since its creation.<br><br>[J. Sedlik Decl. ¶ 4.] | Undisputed. |
| **8.** Mr. Sedlik's sole and exclusive ownership of the copyright in the Iconic Miles Davis Portrait was registered by Mr. Sedlik with the United States Copyright Office, as recorded in Certificate of Registration Number VA645-610, issued to Mr. Sedlik by the United States Copyright Office with an Effective Date of Registration of July 6, 1994, a true and correct copy of which is attached to the Complaint in this matter as Exhibit "A."<br><br>[J. Sedlik Decl. ¶ 6.] | Undisputed. |

| **Plaintiff's Undisputed Fact** | **Defendants' Response** |
|---|---|
| **9.** Mr. Sedlik's copyright registration is valid and in good standing as today.<br><br>[J. Sedlik Decl. ¶ 5.] | Undisputed. |
| **10.** Defendant Katherine Von Drachenberg ("Kat Von D") is a tattooist who has appeared on reality television shows such as "Miami Ink" and "LA Ink."<br><br>[Complaint, ¶ 20.] | Undisputed. |
| **11.** At all times relevant to the claims in this action, Ms. Von D owned and operated defendant High Voltage Tattoo, Inc. ("HVT"), which operated a tattoo shop in Los Angeles called "Kat Von D's High Voltage Tattoo.<br><br>[Deposition of Katherine Von Drachenberg dated January 18, 2022 ("KVD Depo"), attached as Exhibit "A" to Declaration of Gary S. Sedlik ("G. Sedlik Decl.") p. 26:12-14, p. 69:8 through p. 70:17.] | Undisputed. |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **12.** At all times relevant to the claims in this action, Kat Von D was an employee of High Voltage Tattoo.<br><br>[KVD Depo at p. 26:12-14, p. 69:8 through p. 70:17.] | Undisputed. |
| **13.** Kat Von D also owns and operates defendant Kat Von D, Inc. ("KVD, Inc."), a corporation of which she is the CEO, Secretary, CFO, sole owner and sole shareholder, and whose stated official purpose was, until a few months ago, "Personal Services - Body Art."<br><br>[KVD Depo, p. 73:1-9;. Exhibit B to G. Sedlik Decl.] | Undisputed that Kat Von D owns and operates KVD, Inc., a corporation of which she is the CEO, Secretary, CFO, sole owner, and sole shareholder. Disputed that KVD, Inc.'s stated official purpose was, until a few months ago, "Personal Services – Body Art." <u>See</u> Dkt. 37-5 [Ex. B to Sedlik Decl.] (stating that as of *November 2008*, KVD, Inc.'s "type of business" was "personal services – body art"; Dkt 37-6 [Ex. C to Sedlik Decl.] (stating that as of 2021, type of business is "artist/actress"); Dkt. 35-11 [Ex. 26 (Kat Depo.)], pp. 71:25-72:16 (KVD, Inc. "handled [Kat's] TV appearance stuff or movies" and is "for everything except tattoos"). |

| **Plaintiff's Undisputed Fact** | **Defendants' Response** |
|---|---|
| **14.** During the pendency of this litigation (but years after the relevant acts underlying Plaintiff's claims in this action took place) Ms. Von D apparently chose to modify the corporate purpose of KVD, Inc. from "body art" to "Artist/Actress."<br><br>[Exhibit C to G. Sedlik Decl.] | Disputed. [Cited evidence does not support assertion.] |
| **15.** Kat Von D is the sole employee of Kat Von D, Inc.<br><br>[KVD Depo, p. 73:1-8.] | Undisputed. |
| **16.** On or around March 18, 2017, Defendants posted to one of their Instagram accounts that was and is owned or controlled by Defendants an image of Kat Von D in the process of reproducing Mr. Sedlik's Iconic Miles Davis Portrait in the form of a derivative work (a tattoo).<br><br>[Defendant's Answer to Complaint, Dkt. 13 ("Answer") at ¶ 32.] | Undisputed that, on or around March 18, 2017, Kat and High Voltage posted to their Instagram accounts a photo showing Kat in the middle of inking the Tattoo. (See Defendant's Undisputed Fact ("UF") 94, 95. Disputed that KVD, Inc. posted any such photo to any social media account. See Dkt. 13 (Answer) at ¶ 32 (cited evidence does not support the proposition asserted as to KVD, Inc.). |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **17.** This Instagram post also displays an unauthorized reproduction of the Iconic Miles Davis Portrait, which is prominently featured in the middle of the post, which Ms. Von D is apparently using as a visual aid and reference to precisely copy and replicate Mr. Sedlik's Iconic Miles Davis Portrait.<br><br>[Defendant's Answer to Complaint, Dkt. 13 at ¶ 32.] | Undisputed that the photo posted on Instagram shows Kat in the middle of inking the Tattoo with a printout of the Silence Photograph in the background, hanging from a lamp.  (See Defendant's Undisputed Fact ("UF") 94, 95. Disputed that that photo was used "as a visual aid and reference to precisely copy and replicate" the Silence Photo. (Dkt. 35-1 (Kat Decl.), ¶¶ 11, 12 (Photo used as a "reference," but Tattoo was inked "freehand" and the "goal was not to try to make a photocopy of the image on Mr. Farmer's skin" but rather Kat's "own interpretation"). |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **18.** The Defendants distributed, reproduced and displayed and published the photograph of Kat Von D in the act of infringing Mr. Sedlik's copyright, publishing that photograph and others depicting the resulting infringing Miles Davis Tattoo and other infringing reproductions of the Iconic Miles Davis Portrait on Instagram and other social media platforms.<br><br>[Complaint, Dkt. 1 at ¶¶ 32, 43, 45, 46, 47, 51, 52, 53, 57, 58, 59, 60, 64, 65, 66, 70, 71, 72, 76; Defendant's Answer to Complaint, Dkt. 13 at ¶¶ 32, 43, 45, 46, 47, 51, 52, 53, 57, 58, 59, 60, 64, 65, 66, 70, 71, 72, 76.] | Undisputed that Kat Von D and High Voltage posted three distinct photographs of the tattoo among certain of their social media accounts. (Defendant's Undisputed Fact 94.) Disputed that KVD, Inc. distributed, reproduced and displayed and published any such photographs on any social media platform.  See Dkt. 13, at ¶¶ 32, 43, 45, 46, 47, 51, 52, 53, 57, 58, 59, 60, 64, 65, 66, 70, 71, 72, 76 (*none* of the cited paragraphs of the Answer support the proposition asserted as to KVD, Inc.). |

| | |
|---|---|
| **19.** Defendants further exploited the derivative Miles Davis Tattoo by engaging in an organized, methodical cross-promotional campaign in which Defendants each repeatedly induced, enabled and facilitated public postings photographs of the infringing Miles Davis Tattoo to each other's social media accounts, and in such posting, included hyperlinks to Defendants' other social media account/s, so as to maximize their illicit distribution and display of the infringing Miles Davis Tattoo and to induce, enable and facilitate third party "sharing" of the depictions of the infringing Miles Davis Tattoo, in an effort to increase exposure to and engagement with a global audience of paying customers and potential customers for Defendants' various businesses and business ventures, which (at all relevant times) has not only included body art, but has also include make-up, shoes, clothing, music releases, music performances, and other products and services. | Disputed. (See Dkt. 13 (Answer) at ¶¶ 32, 43, 45, 46, 47, 51, 52, 53, 57, 58, 59, 60, 64, 65, 66, 70, 71, 72, 76: *none* of the cited paragraphs of the Answer support the assertion made by Plaintiff.) |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| [Id.] | |
| **20.**  By repeatedly publishing their infringing reproductions of Mr. Sedlik's Iconic Miles Davis Portrait (along with Kat Von D's infringing derivative work of the Iconic Miles Davis Portrait) to their tens of millions of social media followers round the world, Defendants induced, enabled, facilitated, and otherwise encouraged each other and third parties to infringe Mr. Sedlik's copyright through further, uncontrolled, viral unauthorized reproduction, distribution and display.<br><br>[Id.] | Disputed.  (See Dkt. 13 (Answer) at ¶¶ 32, 43, 45, 46, 47, 51, 52, 53, 57, 58, 59, 60, 64, 65, 66, 70, 71, 72, 76:  *none of the cited paragraphs of the Answer support the assertion made by Plaintiff.*) |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **21.** None of the Defendants sought or obtained Mr. Sedlik's permission or a license to use, reproduce, distribute, display, make derivative works of, publish or otherwise use and exploit Mr. Sedlik's copyright-protected Iconic Miles Davis Portrait on their social media accounts or in any other media, for any purpose.<br><br>[Answer at ¶¶ 26, 27, 28, 80.] | Undisputed. |

| **Plaintiff's Undisputed Fact** | **Defendants' Response** |
|---|---|
| **22.**  A reproduction of one of the March 18, 2017 Instagram post is provided below, not only depicting Kat Von D in the act of copying Mr. Sedlik's photograph in an infringing derivative tattoo, but also prominently displaying an unauthorized reproduction of that Iconic Miles Davis Portrait, as used for reference by Kat Von D to facilitate her efforts to precisely replicate the essential protected expression embodied in Mr. Sedlik's photograph.<br><br>[Answer at ¶ 32.] | Undisputed that the photo posted on Instagram on March 18, 2017 shows Kat in the middle of inking the Tattoo with a printout of the Silence Photograph in the background, hanging from a lamp.  (See Defendant's Undisputed Fact ("UF") 94, 95.  Disputed that that Kat intended "to precisely replicate the essential protected expression embodied in" the Silence Photo.  (Dkt. 35-1 (Kat Decl.), ¶¶ 11, 12 (Photo used as a "reference," but Tattoo was inked "freehand" and the "goal was not to try to make a photocopy of the image on Mr. Farmer's skin" but rather Kat's "own interpretation"). |

| **Plaintiff's Undisputed Fact** | **Defendants' Response** |
|---|---|
| **23.** On or about May 16, 2017, Defendants published the following image on Kat Von D's Instagram page. The May 16, 2017 image ("May 16, 2017 KVD Final Instagram Post") depicts a nearly exact duplication of the Iconic Miles Davis Portrait as a derivative work reproduced by Defendant Kat Von D in the form of a derivative tattoo.  Kat Von D captioned the May 17, 2017 KVD Final Instagram Post: "Final #MilesDavis portrait I tattooed at @highvoltagetat ♥", not only failing to provide attribution to Mr. Sedlik, but also falsely claiming authorship of the portrait, while knowing that she did not in fact author that portrait, in a purposeful effort to conceal her infringing activity. <br><br> [Answer at ¶¶ 47, 49; Complaint at ¶¶ 47, 49.] | Undisputed that on May 16, 2017, Kat Von D and High Voltage posted on Instagram a photo of the completed Tattoo, and that the Instagram post contained the caption "Final #MilesDavis portrait I tattooed at @highvoltagetat ♥",.  (See Defendants' Undisputed Fact Nos. 94, 97.)  Disputed as to all other assertions. <u>See</u> Dkt. 13 (Answer), ¶¶ 47, 49 (cited paragraphs of the Answer do not support the assertion made by Plaintiff.) |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **24.**  Continuing their coordinated promotional campaign,  Defendants shared and duplicated this image, including the unauthorized derivate work of the Iconic Miles Davis Portrait, with each other, inducing, enabling, facilitating and encouraging the other Defendants and the public to unlawfully reproduce the same image on their respective social media accounts. By posting this image on their social media accounts and publishing an unauthorized derivative work of Mr. Sedlik's copyrighted Iconic Miles Davis Portrait to tens of millions of people around the world, Defendants induced, enabled, facilitated and otherwise encouraged others to unlawfully reproduce, distribute and display the Iconic Miles Davis Portrait.<br><br>[Answer at ¶¶ 53, 57, 58, 59; Complaint at ¶¶ 53, 57, 58, 59.] | Disputed.  Dkt. 13 (Answer) ¶¶ 53, 57, 58, 59 (cited paragraphs of the Answer do not support the assertions made by Plaintiff). |

**25.**  One year later, on or about April 26, 2018, Defendants published the following image on High Voltage Tattoo's Instagram page: The April 26, 2018 image ("April 26, 2018 HVT Instagram Post") depicts the ¨final product¨ of defendant Kat Von D's unauthorized and unlicensed reproduction and derivative work made from the Iconic Miles Davis Portrait in the form of a tattoo. The April 26, 2018 HVT Instagram Post depicts a nearly exact unauthorized derivative of the Iconic Miles Davis Portrait as reproduced by defendant Kat Von D in the form of a tattoo. Defendants captioned the April 26, 2018 HVT Instagram Post, somewhat ironically, with an apparent quotation from Miles Davis praising the creation of original works of art: ""When you're creating your own shit, man, even the sky ain't the limit." -Miles Davis [tattoo by @thekatvond]". Defendants "tagged" Kat Von D's Instagram username for the purpose of promoting and soliciting sales of products and services offered by Kat

Undisputed that, on or about April 26, 2018, High Voltage posted a photo of the completed Tattoo, with the caption "When you're creating your own shit, man, even the sky ain't the limit" -- Miles Davis tattoo by @thekatvond. (See Defendants' Undisputed Facts 97; Dkt. 35-30 (Ex. 216).  Disputed as to all other assertions.  Dkt. 13 (Answer), ¶¶ 72, 73, 74, 76 (cited paragraphs of the Answer do not support the assertions made by Plaintiff).

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| Von D, KVD, Inc. and High Voltage Tattoo.<br><br>[Answer at ¶¶ 72, 73, 74, 76; Complaint at ¶¶ 72, 73, 74, 76.] | |
| **26.** Defendants also posted videos depicting Mr. Sedlik's Iconic Miles Davis Portrait to their social media accounts, and induced, enabled and facilitated third parties to share and post videos online displaying, distributing, reproducing and publishing Mr. Sedlik's Iconic Miles Davis Portrait without his permission or a license.<br><br>[Answer at ¶¶ 38, 39, 40, 41, 42, 43, 44, 45, 46; Complaint at ¶¶ 38, 39, 40, 41, 42, 43, 44, 45, 46; KVD Depo p. 171:21 – p. 173:10. KVD Depo Exhibit 218.] | Undisputed that Kat posted a short video to her Instagram "highlights" of her in the process of inking the tattoo. (Defendants' Undisputed Fact 99.) Disputed as to all other assertions. Dkt. 13 (Answer), ¶¶ 38, 39, 40, 41, 42, 43, 44, 45, 46 (cited paragraphs of the Answer do not support the assertions made by Plaintiff). |

| **Plaintiff's Undisputed Fact** | **Defendants' Response** |
|---|---|
| **27.** Defendants strategically utilized their social media accounts to cross-promote their various brands, products and services, and regularly monitored and assessed the performance of individual social media posts to determine their customer engagement and to otherwise determine the effectiveness of their commercial campaigns.<br><br>[KVD Depo p. 152:2 through p. 153:16.] | Disputed.  The cited deposition testimony does not *in any way* support the asserted fact.  (Ex. A to Sedlik Decl. (Dkt 37-4), pp. 152:2-153:16.)  See also Dkt. 35-11 [Ex. 26 (Kat Depo.)], pp. 33:15-23 (purpose of social media accounts not to attract more customers to High Voltage); 142:1-13 (Kat not trying to promote High Voltage in Instagram posts);  Ex. 34, pp. 42:20-43:19 (Kat's Instagram is her "personal account" to post "anything that is happening in [her] life"). |

| **Plaintiff's Undisputed Fact** | **Defendants' Response** |
|---|---|
| **28.** By proclaiming to millions of her followers in her May 16, 2017 KVD Final Instagram Post (along with other social media posts made by Kat Von D and other Defendants) that Kat Von D had "made" a portrait of Miles Davis, Kat Von D knowingly appended false Copyright Management Information to the unauthorized derivative tattoo of Mr. Sedlik's Iconic Miles Davis Portrait, with the intent to mislead the public and to conceal her infringement and to further conceal the fact that Mr. Sedlik, not Kat Von D, conceived and created the Iconic Miles Davis Portrait, and that Mr. Sedlik, not Kat Von D is the copyright owner of the Iconic Miles Davis Portrait.<br><br>[Answer at ¶¶ 47, 49, 81; Complaint at ¶¶ 47, 49, 81.] | Disputed.  (Dkt. 35-23 [Ex. 209]; Dkt. 35-24 [Ex. 210];  Ex. 34 (Kat Depo.), p. 106:14-17, 113:15-20 (Kat did not know who Sedlik was or that he owned the copyright to the Silence Photograph). |

| Plaintiff's Undisputed Fact | Defendants' Response |
|---|---|
| **29.** On about February 10, 2018, Mr. Sedlik discovered, for the first time, that Defendants had made, distributed and displayed the unauthorized derivative tattoo and the various unauthorized reproductions of his copyrighted Iconic Miles Davis Portrait.<br><br>[Complaint at ¶ 83, J. Sedlik Decl. at ¶ 9.] | Disputed.   Ex. 32 (Resp. to Interrogatory No. 1):  Sedlik discovered image of Tattoo "[b]ased on Plaintiff's current and best recollection of events, *on or about* February 10, 2018")(emphasis added); Ex. 33 (Resp. To Request for Production No. 28)(Sedlik has no documents responsive to request seeking "DOCUMENTS" and "COMMUNICATIONS" that support his response to Special Interrogatory No. 1). |
| **30.** Defendants had access to the Iconic Miles Davis Portrait in advance of rendering the Miles Davis Tattoo.<br><br>[KVD Depo, p. 122:9-11, p. 122:20 – p. 123:1, p. 127:9-11, p. 127:17 - p. 128:4, p. 128:18 – p. 130:7.] | Undisputed. |

| **Plaintiff's Undisputed Fact** | **Defendants' Response** |
|---|---|
| **31.** Further, Defendants admit that they obtained, viewed and used digital and printed copies of the Iconic Miles Davis Portrait prior to making the tattoo that is the subject of this lawsuit.<br><br>[KVD Depo p. 122:9-11; p. 127:17 through p. 128:4; P. 136:21-23.] | Undisputed that Kat received a file of the Silence Photograph by text from Mr. Farmer and a hard copy that he brought to the Tattoo session and that she used it as a reference in creating the Tattoo. (Defendants' Undisputed Facts 34, 35, 53.)  Disputed that Defendants KVD, Inc. or High Voltage "obtained, viewed, or used" any copy of the Silence Photograph.  (Ex. A to Sedlik Decl., pp. 122:9-11, 127:17-128:4, 136:21-23: testimony cited by Plaintiff does not support the factual assertion made.) |

| **Plaintiff's Undisputed Fact** | **Defendants' Response** |
|---|---|
| **32.** Multiple photographs and videos depicting Kat Von D meticulously tracing Mr. Sedlik's Iconic Miles Davis Portrait on a light box in order to replicate the details of the Iconic Miles Davis Portrait and then transfer those details in through that tracing to her client's arm, in the form of a derivative tattoo.<br><br>[Rebuttal Expert Report of Professor Jeffrey Sedlik dated February 8, 2022 ("Sedlik Rept"), p. 10 through p. 13.] | Disputed.  Kat used the Silence Photograph as a reference to create a "line drawing." The main purpose of the line drawing was to help show the client the size of the tattoo and locate a place for it on the client's body.  She inked the tattoo in the freehand method meaning she did not follow the tracing on the client's skin but drew her own interpretation and was not trying to make a photocopy of that image.  (Dkt. 35-01 [Kat Decl.], ¶¶ 6, 7, 9, 11.) |
| **33.** Defendants readily admitted in their deposition that they had full knowledge that it would be unlawful for a business to use a photographer's image without prior permission.<br><br>[KVD Depo, p. 196:14 through p. 199:6.] | Disputed.   Dkt. 37-4 (Ex. A to Sedlik Depo. [Kat Depo.], p. 1-7: in response to question of whether an online magazine needs to get the photographer's permission before putting a photograph on the cover, "I don't know.  I don't run a magazine so I don't know how it works. . . . [T]hat's not the industry I am in." |

## ADDITIONAL MATERIAL FACTS

Pursuant to this Court's Standing Order Re Motions for Summary Judgment, Defendants submit the following Additional Material Facts ("AFs") in opposition to Plaintiff's motion for summary judgment.  Please note that Defendants' AF Nos. 34 through 185 are identical to Defendants' Undisputed Facts ("UFs") Nos. 1 through 152 submitted in support of Defendants' motion for summary judgment.  *See* Defs.' Sep. Stmt. of Uncontroverted Facts and Conclusions of Law in Support of Defs.' MSJ (Dkt. 33).  These AFs have been identified as such below.

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **34 (same as Defs.' UF 1).**  Defendant Katherine Von Drachenberg is professionally known as "Kat Von D." | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 13:14-20. |
| **35 (same as Defs.' UF 2).**  Defendant Katherine Von Drachenberg (hereafter "Kat") is a renowned tattoo artist. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 15:7-19, 26:24-27:18. |
| **36 (same as Defs.' UF 3).**  Kat has special expertise in inking "black and gray" style portrait tattoos. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 20:19-21:16. |
| **37 (same as Defs.' UF 4).**  Kat hasn't charged a client for inking a tattoo since at least 2012. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 24:1-3. |
| **38 (same as Defs.' UF 5).**  Nowadays, Kat only inks tattoos for her friends and close acquaintances. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 24:4-25:3. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **39 (same as Defs.' UF 6).** Kat considers these tattoos a gift she gives people. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 24:4-25:3. |
| **40 (same as Defs.' UF 7).** Defendant High Voltage Tattoo, Inc. ("High Voltage") was the operating company for Kat's tattoo shop in West Hollywood. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 20:12-18. |
| **41 (same as Defs.' UF 8).** The tattoo shop closed in November 2021. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 25:17-26:23. |
| **42 (same as Defs.' UF 9).** The purpose of the shop was not to generate revenue. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 32:7-33:4. |
| **43 (same as Defs.' UF 10).** Rather, the tattoo shop was a passion project for Kat. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 32:7-33:4. |
| **44 (same as Defs.' UF 11).** She created the tattoo shop just to have a space for her to tattoo. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 32:7-33:4. |
| **45 (same as Defs.' UF 12).** The other tattoo artists at the shop would contribute a small percentage of their fees and keep the majority of whatever they earned. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 32:20-25. |
| **46 (same as Defs.' UF 13).** These contributions were used to cover the shop's rent. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 32:20-25. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **47 (same as Defs.' UF 14).**  Defendant Kat Von D, Inc. ("KVD Inc.") is a another company owned by Kat. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 73:4-8. |
| **48 (same as Defs.' UF 15).**  KVD Inc. has nothing to do with tattooing. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 25:17-26:23 & 72:12-16. |
| **49 (same as Defs.' UF 16).**  Instead, KVD Inc. is involved in all of Kat's commercial enterprises outside of tattooing. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 25:17-26:23 & 72:12-16. |
| **50 (same as Defs.' UF 17).**  For example, KVD Inc. handled television and film appearances for Kat. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 71:25-72:11. |
| **51 (same as Defs.' UF 17).**  KVD Inc. currently holds no ownership interest in High Voltage. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 73:9-12. |
| **52 (same as Defs.' UF 19).**  KVD Inc. has not ever held an ownership interest in High Voltage. | Dkt 35-11 [Ex. 26 (Kat Depo.)] at 73:9-12. |
| **53 (same as Defs.' UF 20).**  Blake Farmer is a lighting technician who once worked on a film project with Kat. | Dkt. 35-02 [Farmer Decl.] ¶ 10. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **54 (same as Defs.' UF 21).** During one of the breaks, Farmer chatted with Kat and mentioned that he had many tattoos. | Dkt. 35-02 [Farmer Decl.] ¶ 11. |
| **55 (same as Defs.' UF 22).** Kat asked Farmer if he wanted to get a tattoo from her, and he said yes. | Dkt. 35-02 [Farmer Decl.] ¶ 12. |
| **56 (same as Defs.' UF 23).** Farmer told Kat that it would be really awesome to get a tattoo of the jazz musician Miles Davis, and that she would be the perfect person to do it. | Dkt. 35-02 [Farmer Decl.] ¶ 12. |
| **57 (same as Defs.' UF 24).** Farmer had ideas of getting a portrait tattoo of Miles Davis ever since he was in college. | Dkt. 35-02 [Farmer Decl.] ¶ 7. |
| **58 (same as Defs.' UF 25).** Farmer considered Miles Davis an important figure to him, personally. | Dkt. 35-02 [Farmer Decl.] ¶ 8. |
| **59 (same as Defs.' UF 26).** Farmer began playing trumpet in 6th grade, and played all through middle school, high school, and college. | Dkt. 35-02 [Farmer Decl.] ¶¶ 3-6. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **60 (same as Defs.' UF 27).** He began developing a particular appreciation for Miles Davis while studying jazz in college. | Dkt. 35-02 [Farmer Decl.] ¶ 6. |
| **61 (same as Defs.' UF 28).** Davis played the trumpet, as did Farmer. | Dkt. 35-02 [Farmer Decl.] ¶ 8. |
| **62 (same as Defs.' UF 29).** In Farmer's view, he and Davis also shared a "rebellious spirit." | Dkt. 35-02 [Farmer Decl.] ¶ 8. |
| **63 (same as Defs.' UF 30).** As a jazz enthusiast and amateur historian, Farmer just always identified with Miles Davis. | Dkt. 35-02 [Farmer Decl.] ¶ 9. |
| **64 (same as Defs.' UF 31).** As was her practice in 2017, neither Kat nor High Voltage charged Farmer for inking his Miles Davis tattoo; Kat did the tattoo for free. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 118:25-119:2. |
| **65 (same as Defs.' UF 32).** Farmer's tattoo was inked over the course of at least two sessions in 2017. | Dkt. 35-02 [Farmer Decl.] ¶ 13; Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 149:2-7. |
| **66 (same as Defs.' UF 33).** Mr. Farmer found a photograph of Miles Davis online by doing a Google search. | Dkt. 35-02 [Farmer Decl.] ¶ 14. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **67 (same as Defs.' UF 34).** Farmer texted the photo of Miles Davis to Kat's assistant in advance of the first session. | Dkt. 35-02 [Ex. 26 (Kat Depo.)] at 122:20-123:1, 130:3-9, 133:12-16, 134:4-135:5; Dkt. 35-17 [Ex. 201]. |
| **68 (same as Defs.' UF 35).** Farmer brought in a printout of the photo of Miles Davis when he came to High Voltage for the first session. | Dkt. 35-02 [Ex. 26 (Kat Depo.)] at 122:20-123:1, 130:3-9, 133:12-16, 134:4-135:5; 137:6-8; Dkt 35-17 [Ex. 201]. |
| **69 (same as Defs.' UF 36).** The photograph that Mr. Farmer found online did not contain a copyright symbol or anything else indicating it was copyrighted. | Dkt. 35-02 [Farmer Decl.] ¶¶ 14-15. |
| **70 (same as Defs.' UF 37).** The photograph that Mr. Farmer brought into the shop did not have Sedlik's name on it. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 109:19-110:1; Dkt. 35-02 [Farmer Decl.] ¶ 15; *see also*, *e.g.*, Dkt. 35-19 [Ex. 203] (depicting printout of Photograph in the background), Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 140:22-141:8. |
| **71 (same as Defs.' UF 38).** The photograph that Mr. Farmer brought into the shop did not have a watermark on it. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 136:2-8. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
| --- | --- |
| **72 (same as Defs.' UF 39).** Kat did not remove any copyright management information ("CMI") from any version of the Photograph in connection with creating the tattoo. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 136:15-137:1. |
| **73 (same as Defs.' UF 40).** Kat's first preliminary step in creating the tattoo was to create a "line drawing" on tracing paper. | Dkt. 35-01 [Kat Decl.] ¶ 6. |
| **74 (same as Defs.' UF 41).** One purpose of the line drawing was to map out the placement of things, such as the eyes, nose, and mouth. | Dkt. 35-01 [Kat Decl.] ¶ 6. |
| **75 (same as Defs.' UF 42).** In this way, the line drawing served as a guide or map as Kat did her freehand work later in the process. | Dkt. 35-01 [Kat Decl.] ¶ 6. |
| **76 (same as Defs.' UF 43).** The other main purpose of the line drawing was to help show the client the size of the tattoo and locate a place for it on the client's body. | Dkt. 35-01 [Kat Decl.] ¶ 6. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **77 (same as Defs.' UF 44).** Exhibit 202 is a true and correct copy of the line drawing Kat created for Mr. Farmer's tattoo. | Dkt. 35-01 [Kat Decl.] ¶ 7; Dkt. 35-18 [Ex. 202]. |
| **78 (same as Defs.' UF 45).** Kat created this line drawing by placing the photograph of Miles Davis and the tracing paper on a light box, and tracing out the broad outlines and contours that appear in the line drawing. | Dkt. 35-01 [Kat Decl.] ¶ 7; Dkt. 35-18 [Ex. 202]. |
| **79 (same as Defs.' UF 46).** Kat's second preliminary step was to create a "stencil" using a different kind of paper. | Dkt. 35-01 [Kat Decl.] ¶ 8. |
| **80 (same as Defs.' UF 47).** Kat used a thermal-fax machine to essentially transfer the contents of her line drawing onto the tissue-paper portion of the thermal-fax paper, which constituted her "stencil." | Dkt. 35-01 [Kat Decl.] ¶ 8. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **81 (same as Defs.' UF 48).** Kat then applied a special transfer liquid on Mr. Farmer's arm, placed the tissue paper (now containing her stencil) onto this portion of his arm, let it sit, then peeled it off. | Dkt. 35-01 [Kat Decl.] ¶ 9. |
| **82 (same as Defs.' UF 49).** This process temporarily transferred the drawing of Kat's line drawing onto Mr. Farmer's skin. | Dkt. 35-01 [Kat Decl.] ¶ 9. |
| **83 (same as Defs.' UF 50).** This transfer was not a permanent transfer. | Dkt. 35-01 [Kat Decl.] ¶ 9. |
| **84 (same as Defs.' UF 51).** After allowing the transfer to dry for a few minutes, she began the tattooing. | Dkt. 35-01 [Kat Decl.] ¶ 9. |
| **85 (same as Defs.' UF 52).** The actual tattooing consisted of two main steps. | Dkt. 35-01 [Kat Decl.] ¶ 10. |
| **86 (same as Defs.' UF 53).** During this portion of the tattooing process, Kat inked the tattoo in the "freehand" method, which means that she was not following a tracing on Mr. Farmer's skin, but that she instead drew her own interpretation. | Dkt. 35-01 [Kat Decl.] ¶ 11. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **87 (same as Defs.' UF 54).** While Kat used the photograph of Miles Davis as a reference, her goal was not to try to make a photocopy of that image onto Mr. Farmer's skin. | Dkt. 35-01 [Kat Decl.] ¶ 11. |
| **88 (same as Defs.' UF 55).** Rather, Kat sought to do her own interpretation of a tattoo that would be appropriate and meaningful for Mr. Farmer. | Dkt. 35-01 [Kat Decl.] ¶ 11. |
| **89 (same as Defs.' UF 56).** Kat's first main step was to use a skin pen to draw her composition of the tattoo on Mr. Farmer's arm. | Dkt. 35-01 [Kat Decl.] ¶ 12. |
| **90 (same as Defs.' UF 57).** The use of the skin pen was not Kat merely re-tracing the lines of the line drawing that were temporarily transferred onto Mr. Farmer's skin. | Dkt. 35-01 [Kat Decl.] ¶ 12. |
| **91 (same as Defs.' UF 58).** Rather, Kat was using her own artistic judgment to lay the groundwork for her composition of the tattoo on Mr. Farmer's skin. | Dkt. 35-01 [Kat Decl.] ¶ 12. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **92 (same as Defs.' UF 59).**  For example, during this step Kat added the outlines of the flowing smoke that circles the perimeter of Miles Davis's hair and his hand. | Dkt. 35-01 [Kat Decl.] ¶ 13. |
| **93 (same as Defs.' UF 60).**  This addition gave the tattoo a sense of motion. | Dkt. 35-01 [Kat Decl.] ¶ 13. |
| **94 (same as Defs.' UF 61).**  Kat's work with the skin pen also laid the groundwork for changes in the texture of certain elements of the tattoo. | Dkt. 35-01 [Kat Decl.] ¶ 13. |
| **95 (same as Defs.' UF 62).**  Kat did all of these alterations before beginning the permanent tattooing. | Dkt. 35-01 [Kat Decl.] ¶ 13. |
| **96 (same as Defs.' UF 63).**  Once the groundwork was laid with the skin pen, Kat used a liner machine to permanently set that groundwork onto Mr. Farmer's arm. | Dkt. 35-01 [Kat Decl.] ¶ 14. |
| **97 (same as Defs.' UF 64).**  Kat's second main step was doing the shading. | Dkt. 35-01 [Kat Decl.] ¶ 15. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **98 (same as Defs.' UF 65).** The shading work constituted most of the work for Mr. Farmer's tattoo. | Dkt. 35-01 [Kat Decl.] ¶ 15. |
| **99 (same as Defs.' UF 66).** Shading work generally constitutes most of the work for black-and-gray style portrait tattoos. | Dkt. 35-01 [Kat Decl.] ¶ 15. |
| **100 (same as Defs.' UF 67).** During the shading process, Kat took a number of steps to bring the tattoo to life and apply her own interpretation onto Mr. Farmer's skin. | Dkt. 35-01 [Kat Decl.] ¶ 15. |
| **101 (same as Defs.' UF 68).** One aspect of Kat's interpretation was the amount of blackness in the tattoo. | Dkt. 35-01 [Kat Decl.] ¶ 16. |
| **102 (same as Defs.' UF 69).** The original photograph had a stark, black background, and this blended into the black clothing that Miles Davis was wearing. | Dkt. 35-01 [Kat Decl.] ¶ 16; *cf.* Dkt. 35-17 [Ex. 201]. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **103 (same as Defs.' UF 70).** Kat chose not to have a stark, black background in her tattoo, and instead used the shading process to create dimension, shadows, and highlights, and create an altogether lighter and softer image. | Dkt. 35-01 [Kat Decl.] ¶ 16. |
| **104 (same as Defs.' UF 71).** In this way, Miles Davis's face seems to stand out from the skin and maps onto the contours of Mr. Farmer's upper arm. | Dkt. 35-01 [Kat Decl.] ¶ 16; *cf.* Dkt. 35-19 [Ex. 203]; Dkt. 35-15 [Ex. 30]; Dkt. 35-31 [Ex. 217] (clear photos and video of the tattoo). |
| **105 (same as Defs.' UF 72).** If Kat had merely tried to replicate the photograph onto Mr. Farmer's arm, there would have been whole swaths of black background or even worse, a black, rectangular shape. | Dkt. 35-01 [Kat Decl.] ¶ 17. |
| **106 (same as Defs.' UF 73).** In Kat's judgment, this would not have looked appropriate on Mr. Farmer. | Dkt. 35-01 [Kat Decl.] ¶ 17. |
| **107 (same as Defs.' UF 74).** Another aspect of Kat's interpretation was the addition of a sense of movement. | Dkt. 35-01 [Kat Decl.] ¶ 18. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **108 (same as Defs.' UF 75).** Kat accomplished this through adding waves of shading in the lines of smoke that circle the perimeter of Miles Davis's hair and hand. | Dkt. 35-01 [Kat Decl.] ¶ 18; *cf.* Dkt. 35-19 [Ex. 203]; Dkt. 35-15 [Ex. 30]; Dkt. 35-31 [Ex. 217] (clear photos and video of the tattoo). |
| **109 (same as Defs.' UF 76).** The smoke swirls through Miles Davis's hair and hand, creating a kind of "visual noise" that flies all around the tattoo and gives the sense of movement. | Dkt. 35-01 [Kat Decl.] ¶ 18; *cf.* Dkt. 35-19 [Ex. 203]; Dkt. 35-15 [Ex. 30]; Dkt. 35-31 [Ex. 217] (clear photos and video of the tattoo). |
| **110 (same as Defs.' UF 77).** The smoke also adds to a sentiment of melancholy. | Dkt. 35-01 [Kat Decl.] ¶ 18; *cf.* Dkt. 35-19 [Ex. 203]; Dkt. 35-15 [Ex. 30]; Dkt. 35-31 [Ex. 217] (clear photos and video of the tattoo). |
| **111 (same as Defs.' UF 78).** Kat's interpretation of the tattoo also added shading, highlights, and texture to a number of parts of Miles Davis's face and hand. | Dkt. 35-01 [Kat Decl.] ¶ 18; *cf.* Dkt. 35-19 [Ex. 203]; Dkt. 35-15 [Ex. 30]; Dkt. 35-31 [Ex. 217] (clear photos and video of the tattoo). |
| **112 (same as Defs.' UF 79).** Kat's interpretation added texture to the fingers on Miles Davis's hand. | Dkt. 35-01 [Kat Decl.] ¶ 19; *cf.* Dkt. 35-19 [Ex. 203]; Dkt. 35-15 [Ex. 30]; Dkt. 35-31 [Ex. 217] (clear photos and video of the tattoo). |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **113 (same as Defs.' UF 80).** Kat's interpretation added texture to the vein on Miles Davis's forehead. | Dkt. 35-01 [Kat Decl.] ¶ 19; *cf.* Dkt. 35-19 [Ex. 203]; Dkt. 35-15 [Ex. 30]; Dkt. 35-31 [Ex. 217] (clear photos and video of the tattoo). |
| **114 (same as Defs.' UF 81).** Kat's interpretation added texture to the details on Miles Davis's shirt and sleeves. | Dkt. 35-01 [Kat Decl.] ¶ 19; *cf.* Dkt. 35-19 [Ex. 203]; Dkt. 35-15 [Ex. 30]; Dkt. 35-31 [Ex. 217] (clear photos and video of the tattoo). |
| **115 (same as Defs.' UF 82).** To Mr. Farmer, the meaning of his tattoo is two-fold. | Dkt. 35-02 [Farmer Decl.] ¶ 19. |
| **116 (same as Defs.' UF 83).** First, Farmer's Miles Davis tattoo represents a callback to the times in Farmer's life when he studied and played jazz, particular his college years. | Dkt. 35-02 [Farmer Decl.] ¶ 19. |
| **117 (same as Defs.' UF 84).** Second, Farmer's Miles Davis tattoo represents the fact that he is still an avid listener of jazz and of Miles Davis's music in particular. | Dkt. 35-02 [Farmer Decl.] ¶ 19. |
| **118 (same as Defs.' UF 85).** Mr. Farmer considers his Miles Davis tattoo part of a "visible inventory" of himself. | Dkt. 35-02 [Farmer Decl.] ¶ 19. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
| --- | --- |
| **119 (same as Defs.' UF 86).**  Mr. Farmer has many other tattoos, and nearly every one of them has some personal meaning to him. | Dkt. 35-02 [Farmer Decl.] ¶¶ 18, 20-28. |
| **120 (same as Defs.' UF 87).**  When Kat does portrait tattoos in general, she attempts to get a feel for who the subject of the portrait is and what the subject means to the client on whose body the portrait tattoo will be inked. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 21:25-22:9, 85:15-86:1. |
| **121 (same as Defs.' UF 88).**  Kat's goal is to have her interpretation of the tattoo fit her client as an individual. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 21:25-22:9, 85:15-86:1; Dkt. 35-01 [Kat Decl.] ¶ 20. |
| **122 (same as Defs.' UF 89).**  Kat understood that Miles Davis was a figure who meant a lot to Mr. Farmer. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 181:11-23. |
| **123 (same as Defs.' UF 90).**  Kat's goal was to create a sentiment on Mr. Farmer's body that both evoked melancholy and had movement in it. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 181:11-23; *see also id.* at 86:5-87:7. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **124 (same as Defs.' UF 91).** Kat achieved this goal through her artistic skills with shading, texture, and adding movement around Davis's hair and other parts of the tattoo. | Dkt. 35-01 [Kat Decl.] ¶¶ 13, 18; Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 181:11-23, 182:13-183:10; *see also id.* at 86:5-87:7. |
| **125 (same as Defs.' UF 92).** Kat further understood that Mr. Farmer initially intended to get a whole sleeve of Miles Davis-inspired tattoos on his arm, of which her tattoo would be but one. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 86:5-87:7; *cf.* Dkt. 35-02 [Farmer Decl.] ¶ 17. |
| **126 (same as Defs.' UF 93).** To accommodate this, Kat designed the perimeter of the tattoo in such a way so that it could more easily be joined with other tattoos that a subsequent tattoo artist might ink. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 86:5-87:7. |
| **127 (same as Defs.' UF 94).** Kat and High Voltage posted three distinct photographs of the tattoo among certain of their social media accounts. | *Compare* Dkts. 35-19, 35-20, 35-26, 35-27 [Exs. 203-04, 212-13] (first photograph) *with* Dkts. 35-21, 35-22 [Exs. 207-08] (second photograph) *with* Dkts. 35-23, 35-24, 35-25, 35-28, 35-29, 35-30 [Exs. 209-11, 214-16] (third photograph). |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **128 (same as Defs.' UF 95).**  The first was a photo showing Kat in the middle of inking the tattoo, with a printout of the Miles Davis photograph in the background, hanging from a lamp. | Dkt. 35-19 [Ex. 203] (3/18/17 Kat Instagram post); Dkt. 35-20 [Ex. 204] (3/18/17 Kat Facebook post); Dkt. 35-26 [Ex. 212] (3/17/17 HVT Instagram post); Dkt. 35-27 [Ex. 213] (3/17/17 HVT Facebook post); *see also* Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 140:6-21, 142:17-143:5, 162:14-20, 163:13-25. |
| **129 (same as Defs.' UF 96).**  The second was a "messy" progress photo of a portion of the tattoo, with ink running down Mr. Farmer's skin. | Dkt. 35-21 [Ex. 207] (5/16/17 Kat Instagram post); Dkt. 35-22 [Ex. 208] (5/16/17 Kat Facebook post); *see also* Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 149:22-150:14, 151:18-22. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **130 (same as Defs.' UF 97).** The third was a photo of the completed tattoo. | Dkt. 35-23 [Ex. 209] (5/16/17 Kat Instagram post); Dkt. 35-24 [Ex. 210] (5/16/17 Kat Facebook post); Dkt. 35-25 [Ex. 211] (5/16/17 Kat Twitter post); Dkt. 35-28 [Ex. 214] (4/15/17 HVT Instagram post); Dkt. 35-29 [Ex. 215] (4/15/17 HVT Facebook post); Dkt. 35-30 [Ex. 216] (4/26/18 HVT Instagram post); *see also* Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 158:8-22, 159:11-18, 160:9-21, 164:3-12, 165:19-166:5, 166:21-167:6. |
| **131 (same as Defs.' UF 98).** Kat also posted a short video to her Instagram "highlights" of her in the process of inking the tattoo. | Dkt. 35-32 [Ex. 218 (undated Kat Instagram video post)]; *see also* Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 171:21-172:13. |
| **132 (same as Defs.' UF 99).** The video in Exhibit 218 was posted to Kat's Instagram "highlights" for tattoos, which is a compilation of many videos of various tattoos Kat has made over the years. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 172:18-173:5. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **133 (same as Defs.' UF 100).** The first photo (Exs. 203-04, 212-13), second photo (Ex. 207-08), and video (Ex. 218) do not depict the completed tattoo, but only part of the tattoo in progress. | Dkt. 35-19 [Ex. 203]; Dkt. 35-20 [Ex. 204]; Dkt. 35-26 [Ex. 212]; Dkt. 35-27 [Ex. 213]; Dkt. 35-21 [Ex. 207]; Dkt. 35-22 [Ex. 208]; Dkt. 35-32 [Ex. 218]. |
| **134 (same as Defs.' UF 101).** While the first photo (Exs. 203-04, 212-13) also depicts the "Silence" Photograph itself, this is clearly done for a different purpose of comparing the Photograph with Kat's progress on the tattoo. | Dkt. 35-19 [Ex. 203]; Dkt. 35-20 [Ex. 204]; Dkt. 35-26 [Ex. 212]; Dkt. 35-27 [Ex. 213]. |
| **135 (same as Defs.' UF 102).** As of January 2022, there had been at least 4,442 posts to Kat's personal Instagram account. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 44:16-22. |
| **136 (same as Defs.' UF 103).** As of January 2022, there had been approximately 7,774 posts to the High Voltage Instagram account. | Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 34:7-14. |
| **137 (same as Defs.' UF 104).** There is no market in the tattoo industry for licensing copyrighted or trademarked materials to be used as reference materials for tattoos. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 2, 12-27; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 1-2. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **138 (same as Defs.' UF 105).**  As a matter of current industry custom and practice, tattooists do not seek licenses from owners of source materials in the process of creating tattoos that are based on those source materials. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 12; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 1-2. |
| **139 (same as Defs.' UF 106).**  As a matter of historical industry custom and practice, tattooists have not sought licenses from owners of source materials in the process of creating tattoos that are based on those source materials. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 12; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 1-2. |
| **140 (same as Defs.' UF 107).**  As of now, there is no indication that a market for licensing copyrighted materials to be used as source materials for tattoos is likely to develop. | Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 2. |
| **141 (same as Defs.' UF 108).**  The custom and practice of *not* seeking licenses for use of source materials is ubiquitous throughout the tattoo industry. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 12; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 1-2. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **142 (same as Defs.' UF 109).**  It is a common practice among tattooists to use copyrighted or copyrightable source materials as reference materials to create tattoos. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 2, 12-25; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 2; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 2. |
| **143 (same as Defs.' UF 110).**  There is a wide range of copyrighted or copyrightable source materials that tattooists use as references to create tattoos, including without limitation: photographs, paintings, drawings, sketches, album covers, cartoon characters, lines of poetry, lines of prose, excerpts from plays, short poems, quotations, sheet music, still-frames from film, famous art works, and other fine arts. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 12-25; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 2; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 2-7. |
| **144 (same as Defs.' UF 111).**  It is a common practice among tattooists to use trademarked or trademarkable source materials as reference materials to create tattoos. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 12-14; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 2. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **145 (same as Defs.' UF 112).** It is a common practice among tattooists to use the likenesses of celebrities as source materials to create tattoos. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 2; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 2-6. |
| **146 (same as Defs.' UF 113).** It is a common practice for clients of tattooists to provide the tattooist with the source material that the client wants to be used to create the tattoo. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 19-20, 21; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 2; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 2. |
| **147 (same as Defs.' UF 114).** The current and historical practice of tattooists is that they do not check to determine if the client-provided source material is protected by copyright. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 20; Dkt. 35-14 [Ex. 29 (Montie Expert Report)] at 2; *see also* Dkt. 35-11 [Ex. 26 (Kat Depo.)] at 65:3-7, 130:24-131:6, 131:17-22, 132:6-10, 132:19-133:2. |
| **148 (same as Defs.' UF 115).** It would impede and disrupt the current and historical practices of a large profession if tattoo artists were required – under threat of civil liability – to verify whether their source materials are protected by copyright. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 20. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **149 (same as Defs.' UF 116).**  Even with regard to *tattoo designs*, the tattoo profession has historically and traditionally operated in the absence of state-based solutions – such as civil liability for copyright infringement – for regulating the use of such designs. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 25-27. |
| **150 (same as Defs.' UF 117).**  The replication of one tattooist's *tattoo design* by another tattooist is often seen within the profession as paying an homage to the designer, rather than copying, ripping off, or stealing. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 27. |
| **151 (same as Defs.' UF 118).**  Tattoo artists frequently strive to fulfill their client's desires by tattooing imagery that is representative of their client's identity. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 19; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 13. |
| **152 (same as Defs.' UF 119).**  Tattoos inherently have meanings that are deeply personal and distinct to the particular individuals who wear them. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 2, 3-8; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 8, 13. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **153 (same as Defs.' UF 120).**  Tattoos inherently have distinct meanings that can vary with the contextual in which the tattoo is displayed. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 2, 3-8. |
| **154 (same as Defs.' UF 121).**  In general, tattoos that are based on source material create new meaning in the resulting tattoo as a result of the tattoo's being imprinted on the skin of a living human's body. | Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 8. |
| **155 (same as Defs.' UF 122).**  Both the tattoo client's choice of source material, and the tattoo artist's specific way of rendering that image, blend together in a unique work. | Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 8, 13. |
| **156 (same as Defs.' UF 123).**  Two people with the exact same tattoo can convey vastly different meanings through their respective tattoos. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 4-5; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 8. |
| **157 (same as Defs.' UF 124).**  Unlike a piece of art on display in a museum, the meaning of a single tattoo can also change depending on the context in which it is displayed. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 5-7. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **158 (same as Defs.' UF 125).** For example, a tattoo of a spider web with a black widow can convey one meaning outside of prison (an innocuous passion for venomous insects), but a very different meaning inside of prison (an affiliation with a white supremacist prison gang). | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 6. |
| **159 (same as Defs.' UF 126).** Tattoos can be used to convey multiple narratives of private meanings that are not immediately obvious, allowing the tattoo wearer to control those to whom the full meaning of the tattoo is revealed. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 7-8; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 8. |
| **160 (same as Defs.' UF 127).** In general, portrait tattoos of public figures are mainly used as forms of expressing the wearer's admiration for the figure, or for channeling the public figure's desired qualities. | Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 2. |
| **161 (same as Defs.' UF 128).** The process of tattooing requires different artistic skills and techniques than photography. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 2; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 8-9. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **162 (same as Defs.' UF 129).** Tattooing also requires different and specialized artistic skills to work with the three main types of equipment:  rotary, coil, and pneumatic tattoo machines or "guns." | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 11-12. |
| **163 (same as Defs.' UF 130).** Tattooing involves injecting pigment into the dermis, which lies between the epidermis and the subcutaneous layers of the skin. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 9. |
| **164 (same as Defs.' UF 131).** The process involves tens or even hundreds of thousands of punctures, in which the tattoo artist builds up an image millimeter-by-millimeter at a time. | Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 9. |
| **165 (same as Defs.' UF 132).** Tattoos are created on the three-dimensional surface of a living human's skin. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 8-9; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 9. |
| **166 (same as Defs.' UF 133).** Every tattoo client's skin is different, and tattooists must use their artistic skills to adjust for differences in their client's skin. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 9-10; Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 9. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **167 (same as Defs.' UF 134).** Due to the differences in each person's skin and the painstaking, millimeter-by-millimeter tattooing process, no two tattoos are ever truly alike. | Dkt. 35-33 [Ex. 224 (Friedman Expert Report)] at 9. |
| **168 (same as Defs.' UF 135).** Given the permanence of the tattoo on human skin, tattooists almost always need to use some kind of reference materials to create tattoos. | Dkt. 35-13 [Ex. 28 (Lane Expert Report)] at 20. |
| **169 (same as Defs.' UF 136).** Plaintiff's "Silence" Photograph is a photograph, not a tattoo design. | Dkt. 35-09 [Ex. 7 (certificate of registration)]; Dkt. 35-10 [Ex. 8] at JSP002528 (deposit copy); Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 56:17-23, 58:17-59:8 (authenticating same). |
| **170 (same as Defs.' UF 137).** Sedlik took the Photograph in 1989, in connection with a photo shoot for Jazziz magazine. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 18:13-23; Dkt. 35-09 [Ex. 7]; Dkt. 35-10 [Ex. 8]. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **171 (same as Defs.' UF 138).** One of the meanings that Sedlik intended to convey in the Photograph was a comment on Miles Davis's use of "negative space" in his musical works – referring to Davis's groundbreaking use of silence, low volumes, and pauses in between notes, and how the silent spaces between notes can be just as important as the notes themselves. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 23:17-18 & 23:22-24:9; Dkt. 35-08 [Ex. 3]; Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 41:16-42:6 & 39:10-41:1 (authenticating Ex. 3); Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 38:9-25 & 45:9-46:22; *see generally* Dkt.s 35-12 [Ex. 27 (Sedlik Depo.)] at 23:17-34:15 (Sedlik's discussion of meanings of the Photograph). |
| **172 (same as Defs.' UF 139).** The meaning of the "Silence" Photograph says nothing about Blake Farmer or his life's story. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 23:17-34:15 (Sedlik's general discussion of meanings of the Photograph). |
| **173 (same as Defs.' UF 140).** Sedlik believes that the "meaning" and the "purpose" of his Photograph are intertwined and cannot be separated. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 29:11-22; *see also id.* at 117:25-118:2. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **174 (same as Defs.' UF 141).**  In this regard, Sedlik's primary "purpose" in creating the Photograph was to create a copyrighted work that could be commercially exploited – through licenses for reproduction, distribution, display, and the creation of derivative works – throughout the work's copyright life. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 23:17-21, 24:10-13, 31:3-7. |
| **175 (same as Defs.' UF 142).**  The "Silence" Photograph was published in the August / September 1989 issue of Jazziz magazine. | Dkt. 35-09 [Ex. 7]; Dkt. 35-10 [Ex. 8] at JSP002528; Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 56:17-23, 58:17-59:8 (authenticating same). |
| **176 (same as Defs.' UF 143).**  This issue of Jazziz magazine was widely published through the United States. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 60:16-19. |
| **177 (same as Defs.' UF 144).**  Sedlik "believes" he licensed the "Silence" Photograph for use in a tattoo on one occasion that "could be between six to ten years ago." | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 106:21-107:3. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **178 (same as Defs.' UF 145).** There was only one such occasion in which Sedlik believes he licensed the Photograph for use in a tattoo. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 121:15-19, 109:12-18. |
| **179 (same as Defs.' UF 146).** Sedlik doesn't know the name of the person to whom he supposedly granted this license. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 107:11-14. |
| **180 (same as Defs.' UF 147).** Sedlik's licenses for the "Silence" Photograph are normally in writing. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 110:25-111:6. |
| **181 (same as Defs.' UF 148).** But Sedlik was unable to find a copy of this claimed license. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 108:8-22, 110:25-111:6. |
| **182 (same as Defs.' UF 149).** Sedlik did not produce in discovery in this case a copy of this claimed license. | Dkt. 35-06 [Grodsky Decl.] ¶¶ 3-6. |
| **183 (same as Defs.' UF 150).** Sedlik does not recall the price of this claimed license. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 113:22-24. |
| **184 (same as Defs.' UF 151).** Sedlik does not recall whether this claimed license was for more or less than $100. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 113:25-114:4. |

| Defendants' Additional Fact | Supporting Evidence |
|---|---|
| **185 (same as Defs.' UF 152).** Sedlik does not recall whether he even received any consideration in exchange for this claimed license. | Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 116:23-117:2. |
| **186.** Ex. 8 is the deposit copy of the Silence Photograph that is the subject of the copyright registration | Dkt. 35-10 [Ex. 8] at JSP002528; Dkt. 35-12 [Ex. 27 (Sedlik Depo.)] at 56:17-23, 58:17-59:8 (authenticating same). |
| **187.** Anna Felicity Friedman is a scholar and professor of art history with a Master's degree in Art History, Theory & Criticism from the School of the Art Institute of Chicago, as well as a Ph.D. in the History of Culture from the University of Chicago. | Dkt. 35-33 [Ex. 224] at 1, 15. |
| **188.** In comparing the Tattoo with the Silence Photograph, Dr. Friedman opined that the "quality of shadows is quite different due to the inherent difference in the tattoo medium which makes them soften and muddier." | Dkt 35-33 [Ex. 224], p. 10.  Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **189.**  Dr. Friedman further opined: "The tattooed portrait has significantly less reflectance and sculpting through the use of light and a more uniform lighting effect that is far less dramatic.   For example, in the tattooed portrait the cheekbones are far less prominent and there is little highlighting on the forehead of the subject in contrast to the photograph.  This is partially due to the nature of tattooing on skin which is tinted and disallows a bright white highlight." | Dkt. 35-33 [Ex. 224], p. 11.  Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |
| **190.**   The Silence Photograph has a black background as compared to the Tattoo which "features an amorphous small border of fuzzy greys of various shades that then dissolves into a background of skin color." | Dkt. 35-33 [Ex. 224], p. 13.  Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |
| **191.**  In the Silence Photograph, Miles Davis is wearing a black jacket as compared to the Tattoo in which no black jacket is depicted. | Dkt. 35-33 [Ex. 224], p. 13.  Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **192.** In contrast to the Silence Photograph, "[t]he tattooed portrait has a very different hairstyle that does not feature curls but rather a hazy halo of hair. The hairline is also slightly different. It is more receding in the tattooed portrait. There is little, if no, shading or highlights on the hair in the tattooed version." | Dkt. 35-33 [Ex. 224], p. 11. Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |
| **193.** Dr. Friedman further opines: "The eyes in the tattooed portrait are rendered quite differently. They feature bright white spots near the pupils rather than tiny, almost unnoticeable pinprick-sized spots in the original; the shape of the eyelids and the quality of light on them differs – the eyes in the tattooed portrait look more droopy, older and the upper eyelids are noticeably bigger in the tattooed portrait; above the eyelids, especially with the eye on the left, the shape of the skin between the eyebrow and eyelid are substantially different" | Dkt. 35-33 [Ex. 224], p. 12. Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **194.** Davis's eyebrows on the Tattoo are "wider and appear more sparse with respect to eyebrow hair" and "the brow [on the Tattoo] is significantly less furrowed with fewer wrinkles and softer edges to those that are present [in the Silence Photograph]." | Dkt. 35-33 [Ex. 224], p. 12. Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |
| **195.** Dr. Friedman concludes that "[t]he less furrowed brow gives Davis a more resigned, gentler and less aggressive appearance." | Dkt. 35-33 [Ex. 224], p. 12. Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |
| **196.** The nose in the tattooed portrait is wider and less angular, and it lacks the highlights and shadows that sculpt the nose in the photographic portrait. The nostril is not flared but more relaxed. | Dkt. 35-33 [Ex. 224], p. 12. Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |
| **197.** Dr. Friedman also opined that "[a]dditionally, the 'laugh line' running from the left side of the nose to the mouth is rendered as deeper and at a steeper angle conveying a more sad appearance in the tattooed portait." | Dkt. 35-33 [Ex. 224], p. 12. Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **198.** Dr. Friedman opined: "[D]ue to the nature of the tattoo being rendered onto a 3-dimensional, uneven substrate," "[t]he tattooed portrait is fuller and softer . . . . [t]he nose and cheekbones are less angular, the forehead is taller and narrower . . . . [t]he eye area is also narrower." | Dkt. 35-33 [Ex. 224], p. 13.  Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |
| **199.** According to Dr. Friedman, the Silence Photograph "is dynamic," makes Davis look "powerful with a strong gaze," and results in Davis "look[ing] as if he could jump off the photographic paper." | Dkt. 35-33 [Ex. 224], p. 9.  Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |
| **200.** Dr. Friedman opines that in the Tattoo, Davis looks "older, more weathered, almost defeated" and "[h]is hair looks dull and ungroomed.  His eyes seem vacant.  He floats in a ghostly manner, his head and hand disembodied, amidst a murky, undefined background." | Dkt. 35-33 [Ex. 224], p. 10.  Compare Dkt. 35-10 [Ex. 8] with Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **201.** Dr. Friedman further opines regarding the Tattoo: "Davis looks like he is about to be absorbed into the tattoo wearer's skin, and at his wrist the image looks as if it is starting to dissolve. This tattooed portrait of Miles Davis looks like a memorial, nor a person captured in vibrant life . . . ." | Dkt. 35-33 [Ex. 224], p. 10. <u>Compare</u> Dkt. 35-10 [Ex. 8] <u>with</u> Dkt. 35-15 [Ex. 30], Dkt. 35-19 [Ex. 203], and Dkt. 35-31 [Ex. 217]. |
| **202.** Regarding the Tattoo, Kat testified: "So I wanted to create a sentiment on him that was something that was melancholy and had movement in it. Because when I do listen to Miles Davis' music there is so much movement in it. And so that's why I -- I added all the textures and all of the shading and the composition that you see in that tattoo, none of which are in the original photograph." | Dkt. 35-11 [Ex. 26 (Kat Depo.)], p. 87:1-7. |
| **203.** Kat had never heard of Sedlik before she was sued in this case. | Ex. 34 (Kat Depo.), p. 106:14-17. |
| **204.** At the time she created the Tattoo, she had no idea that Sedlik had a copyright in the Silence Photograph. | Ex. 34 (Kat Depo.), p. 113:15-20. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| **205.** In Kat's experience, "[t]attooers never look into who has done any of the [reference] artwork" because "[i]t's not common practice in the tattoo industry." | Dkt. 35-11 [Ex. 26 (Kat Depo.), p. 131:17-22. |

Dated:  March 28, 2022

GRODSKY, OLECKI & PURITSKY LLP
Allen B. Grodsky
John J. Metzidis

By:   /s/ Allen B. Grodsky
Allen B. Grodsky

Attorneys for Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc.