Gary S. Sedlik, Esq. (CA Bar No. 181192)
SEDLIKGROUP, P.C.
P.O. Box 3238
Manhattan Beach, CA 90266
Phone: (310) 439-9986 | Fax: (844) 320-8044
Email: gary@sedlikgroup.com

Attorneys for Plaintiff Jeffrey B. Sedlik

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JEFFREY B. SEDLIK, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-01102-DSF-MRWx<br><br>Before the Hon. Dale S. Fischer, U.S. District Judge<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT**<br><br>Hearing<br>Date:    April 18, 2022<br>Time:    1:30 p.m.<br>Place:    Courtroom 7D<br>          First Street Courthouse<br>          350 West 1st Street<br>          Los Angeles, CA 90012<br><br>Action filed:    February 7, 2021<br>FPTC:    June 27, 2022<br>Trial:    July 26, 2022 |

Pursuant to this Court's standing Order Re Motions for Summary Judgment, Plaintiff Jeffrey B. Sedlik ("Plaintiff") submits the following Statement of Genuine Disputes in Opposition to the Separate Statement of Uncontroverted Facts and Conclusions of Law in support of Defendants' Motion for Summary Judgment and Partial Summary Judgment.

## STATEMENT OF GENUINE DISPUTES

| Defendants' Undisputed Fact | Disputed or Undisputed by Plaintiff |
|---|---|
| **1.** Defendant Katherine Von Drachenberg is professionally known as "Kat Von D." | Undisputed. |
| **2.** Defendant Katherine Von Drachenberg (hereafter "Kat") is a renowned tattoo artist. | Undisputed. |
| **3.** Kat has special expertise in inking "black and gray" style portrait tattoos. | Undisputed. |

| | |
|---|---|
| **4.** Kat hasn't charged a client for inking a tattoo since at least 2012. | Undisputed that defendant Von Drachenberg testified at her deposition that she herself has not been paid by a customer for making a tattoo since 2012. Disputed as to whether defendant Von Drachenberg has received other compensation relating to tattoos based on the fact that the cited testimony only refers to being "paid by a client for making a tattoo." Deft's Ex. 26 (Kat Depo.) at 24:1-3. |
| **5.** Nowadays, Kat only inks tattoos for her friends and close acquaintances. | Disputed. Defendant Von Drachenberg testified at her deposition that she is no longer making any tattoos, including for friends and family. Depo. of Katherine Von Drachenberg ("KVD Depo") at 26:15-23 attached as Exh A. to |

|  | Declaration of Gary S. Sedlik ("G. Sedlik Decl."). |
|---|---|
| **6.** Kat considers these tattoos a gift she gives people. | Undisputed. |
| **7.** Defendant High Voltage Tattoo, Inc. ("High Voltage") was the operating company for Kat's tattoo shop in West Hollywood. | Disputed. The referenced testimony does not state that High Voltage Tattoo, Inc. was the "operating company" for Kat's tattoo shop. It merely references the name of the shop and does not establish that defendant High Voltage Tattoo, Inc. was the operating company (or if there were additional operating companies). Deft's Ex. 26 (Kat Depo.) at 20:12-18. |
| **8.** The tattoo shop closed in November 2021. | Undisputed as to the closing of the physical location but disputed as to the |

| | |
|---|---|
| | "closing" of the tattoo shop's operations as High Voltage Tattoo's commercial website and numerous social media accounts are all still operating as of today. <u>See</u> G. Sedlik Decl. at ¶3. |
| **9.** The purpose of the shop was not to generate revenue. | Undisputed that defendant Von Drachenberg testified that it was not the purpose of the tattoo shop to make money. Disputed that it was actually not the purpose of the tattoo shop as defendant Von Drachenberg also testified that she had to close High Voltage Tattoo because "we weren't able to make money." KVD Depo at 26:3-6, Exh. A to G. Sedlik Decl. |

| | |
|---|---|
| **10.** Rather, the tattoo shop was a passion project for Kat. | Undisputed that defendant Von Drachenberg testified that the tattoo shop was a passion project for her. |
| **11.** She created the tattoo shop just to have a space for her to tattoo. | Undisputed that defendant Von Drachenberg was an employee of High Voltage and worked at the tattoo shop. Disputed as to the remainder of this statement as she also testified that she and other employees and contractors worked at the shop in exchange for money from customers. Deft's Ex. 26 (Kat Depo.) at 32:20-25 |
| **12.** The other tattoo artists at the shop would contribute a small percentage of their fees and keep the majority of whatever they earned. | Undisputed. |

| | |
|---|---|
| **13.** These contributions were used to cover the shop's rent. | Undisputed. |
| **14.** Defendant Kat Von D, Inc. ("KVD Inc.") is a another company owned by Kat. | Undisputed. |
| **15.** KVD Inc. has nothing to do with tattooing. | Disputed. Corporate documents filed with the California Secretary of State produced by Defendants in discovery show that KVD, Inc. identified itself as being in the business of "Personal Services - Body Art" at all times relevant to the claims in this case. This is nearly identical to the official business description used by Defendant High Voltage Tattoo, Inc. in its corresponding official government filings. <u>See</u> Exhibits B, C and D to G. |

| | Sedlik Decl. KVD, Inc. did not change its official business type until after August 2021. See Exh. E to G. Sedlik Decl. |
|---|---|
| **16.** Instead, KVD Inc. is involved in all of Kat's commercial enterprises outside of tattooing. | Disputed. See response to Item 15. |
| **17.** For example, KVD Inc. handled television and film appearances for Kat. | Disputed. See response to Item 15. |
| **18.** KVD Inc. currently holds no ownership interest in High Voltage. | Undisputed. |
| **19.** KVD Inc. has not ever held an ownership interest in High Voltage. | Undisputed. |

| | |
|---|---|
| **20.** Blake Farmer is a lighting technician who once worked on a film project with Kat. | Undisputed. |
| **21.** During one of the breaks, Farmer chatted with Kat and mentioned that he had many tattoos. | Undisputed. |
| **22.** Kat asked Farmer if he wanted to get a tattoo from her, and he said yes. | Undisputed. |
| **23.** Farmer told Kat that it would be really awesome to get a tattoo of the jazz musician Miles Davis, and that she would be the perfect person to do it. | Undisputed. |

| | |
|---|---|
| **24.** Farmer had ideas of getting a portrait tattoo of Miles Davis ever since he was in college. | Undisputed. |
| **25.** Farmer considered Miles Davis an important figure to him, personally. | Undisputed. |
| **26.** Farmer began playing trumpet in 6th grade, and played all through middle school, high school, and college. | Undisputed. |
| **27.** He began developing a particular appreciation for Miles Davis while studying jazz in college. | Undisputed. |
| **28.** Davis played the trumpet, as did Farmer. | Undisputed. |

| | |
|---|---|
| **29.** In Farmer's view, he and Davis also shared a "rebellious spirit." | Undisputed. |
| **30.** As a jazz enthusiast and amateur historian, Farmer just always identified with Miles Davis. | Undisputed. |
| **31.** As was her practice in 2017, neither Kat nor High Voltage charged Farmer for inking his Miles Davis tattoo; Kat did the tattoo for free. | Disputed. The cited testimony from defendant Von Drachenberg's deposition does <u>not</u> reference whether Ms. Von Drachenberg charged Farmer for the tattoo, only that Farmer did not pay High Voltage Tattoo. Deft's Ex. 26 (Kat Depo.) at 118:25-119:2. |
| **32.** Farmer's tattoo was inked over the course of at least two sessions in 2017. | Undisputed. |

| | |
|---|---|
| **33.** Mr. Farmer found a photograph of Miles Davis online by doing a Google search. | Undisputed. |
| **34.** Farmer texted the photo of Miles Davis to Kat's assistant in advance of the first session. | Undisputed. |
| **35.** Farmer brought in a printout of the photo of Miles Davis when he came to High Voltage for the first session. | Undisputed that defendant Von Drachenberg testified that Mr. Farmer brought a printed reproduction of the Iconic Miles Davis Portrait to High Voltage Tattoo. Disputed that Exhibit 201 is related in any way to any purported printout that Mr. Farmer may have provided to High Voltage. **Objection**: Lack of Foundation as to Ex. 201. |

| | |
|---|---|
| **36.** The photograph that Mr. Farmer found online did not contain a copyright symbol or anything else indicating it was copyrighted. | Undisputed that Mr. Farmer's declaration states that he did not see any copyright information in the image he found online. Disputed as to whether these images "contained" copyright management information that he did view or access, such as embedded metadata or watermarks. **Objection**: Lack of Foundation. |
| **37.** The photograph that Mr. Farmer brought into the shop did not have Sedlik's name on it. | Disputed. Mr. Farmer's declaration does not say that he brought a printed photograph into the shop. Also disputed that the Iconic Miles Davis Portrait displayed in Ex. 203 relates to anything that Mr. Farmer may have provided to High Voltage Tattoo or Ms. Von Drachenberg. Also disputed that any copies of photographs that Mr. Farmer |

| | |
|---|---|
| | may have provided to High Voltage Tattoo or Ms. Von Drachenberg did not contain Mr. Sedlik's name (Mr. Farmer's declaration references only other images he saw on Google). Further disputed as to whether Sedlik's name appears on the Iconic Miles Davis Portrait reproduced in Ex 203. **Objection**: Lack of Foundation as to Exh. 203. See KVD Depo. at 122:10-19 ("Yeah, I printed out a copy of it, of the image. Okay.") and KVD Depo. at 127:23-128:4 ("How else would I have been able to print it and tattoo it."). See Exh. A to G. Sedlik Decl. |
| **38.**  The photograph that Mr. Farmer brought into the shop did not have a watermark on it. | Disputed. Mr. Farmer's declaration does not say that he brought a printed photograph into the shop. The cited deposition testimony of Ms. Von |

| | |
|---|---|
| | Drachenberg relates to an unidentified electronic image file, not a photograph that Mr. Farmer "brought into the shop." Deft's Ex. 26 (Kat Depo.) at 136:2-8. |
| **39.** Kat did not remove any copyright management information ("CMI") from any version of the Photograph in connection with creating the tattoo. | Undisputed that Ms. Von Drachenberg testified at her deposition that she did not "Photoshop" any photos that she received in connection with creating the tattoo, not that she never removed CMI from "any version of the Photograph in connection with creating the tattoo." Ex. 26 (Kat Depo.) at 136:15-137:1. |
| **40.** Kat's first preliminary step in creating the tattoo was to create a "line drawing" on tracing paper. | Undisputed. |

| | |
|---|---|
| **41.** One purpose of the line drawing was to map out the placement of things, such as the eyes, nose, and mouth. | Undisputed. |
| **42.** In this way, the line drawing served as a guide or map as Kat did her freehand work later in the process. | Undisputed. |
| **43.** The other main purpose of the line drawing was to help show the client the size of the tattoo and locate a place for it on the client's body. | Undisputed. |
| **44.** Exhibit 202 is a true and correct copy of the line drawing Kat created for Mr. Farmer's tattoo. | Undisputed. |

| | |
|---|---|
| **45.** Kat created this line drawing by placing the photograph of Miles Davis and the tracing paper on a light box, and tracing out the broad outlines and contours that appear in the line drawing. | Undisputed. |
| **46.** Kat's second preliminary step was to create a "stencil" using a different kind of paper. | Undisputed. |
| **47.** Kat used a thermal-fax machine to essentially transfer the contents of her line drawing onto the tissue-paper portion of the thermal-fax paper, which constituted her "stencil." | Undisputed. |

| | |
|---|---|
| **48.** Kat then applied a special transfer liquid on Mr. Farmer's arm, placed the tissue paper (now containing her stencil) onto this portion of his arm, let it sit, then peeled it off. | Undisputed. |
| **49.** This process temporarily transferred the drawing of Kat's line drawing onto Mr. Farmer's skin. | Undisputed. |
| **50.** This transfer was not a permanent transfer. | Undisputed. |
| **51.** After allowing the transfer to dry for a few minutes, she began the tattooing. | Undisputed. |

| | |
|---|---|
| **52.** The actual tattooing consisted of two main steps. | Undisputed. |
| **53.** During this portion of the tattooing process, Kat inked the tattoo in the "freehand" method, which means that she was not following a tracing on Mr. Farmer's skin, but that she instead drew her own interpretation. | Disputed. Ms. Von Drachenberg made a nearly exact duplication of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo by first tracing the Iconic Miles Davis Portrait on a light box, transferring this tracing to a stencil, transferring the stencil onto thermal paper, transferring the tracing onto Mr. Farmer's skin and then using the tracing's details along with a printed out copy of Mr. Sedlik's Iconic Miles Davis Portrait to identically replicate the Iconic Miles Davis Portrait in the form of a tattoo. Exh 203. <u>See also</u> Rebuttal Expert Report of Professor Jeffrey Sedlik ("Sedlik Rebuttal |

| | |
|---|---|
| | Report") at pp. 13-15, attached as Exh. A to Declaration of Jeffrey B. Sedlik ("J. Sedlik Decl."). |
| **54.** While Kat used the photograph of Miles Davis as a reference, her goal was not to try to make a photocopy of that image onto Mr. Farmer's skin. | Undisputed that Ms. Von Drachenberg was not trying to make a "photocopy" of Mr. Sedlik's Iconic Miles Davis Portrait onto Mr. Farmer's skin. Disputed because Ms. Von Drachenberg was using her own technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Deposition of Jeffrey B. Sedlik ("Sedlik Depo,") at 118:21-119:1, attached as Exh. F to G. Sedlik |

| | Decl.; see also Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
|---|---|
| **55.** Rather, Kat sought to do her own interpretation of a tattoo that would be appropriate and meaningful for Mr. Farmer. | Disputed as to Ms. Von Drachenberg doing "her own interpretation" of Mr. Sedlik's Iconic Miles Davis Portrait because Ms. Von Drachenberg actually was using her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |

| | |
|---|---|
| **56.** Kat's first main step was to use a skin pen to draw her composition of the tattoo on Mr. Farmer's arm. | Disputed because Ms. Von Drachenberg did not make "her composition" of the tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
| **57.** The use of the skin pen was not Kat merely re-tracing the lines of the line drawing that were temporarily transferred onto Mr. Farmer's skin. | Undisputed. |

| | |
|---|---|
| **58.** Rather, Kat was using her own artistic judgment to lay the groundwork for her composition of the tattoo on Mr. Farmer's skin. | Disputed as to Ms. Von Drachenberg using "her own artistic judgment" or her own "composition" of Mr. Sedlik's Iconic Miles Davis Portrait because Ms. Von Drachenberg actually was using her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. <u>See</u> Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; <u>see also</u> Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
| **59.** For example, during this step Kat added the outlines of the flowing smoke that circles the perimeter of Miles Davis's hair and his hand. | Disputed. The final tattoo shows no indication of "flowing smoke" circling the hair or hand of Miles Davis, merely a transition from the edges of Mr. Sedlik's Iconic Miles Davis Portrait to |

| | |
|---|---|
| | Mr. Farmer's skin. See Exh 203. Further, Ms. Von Drachenberg did not testify that she added any "flowing smoke" encircling the hand or hair during her deposition. |
| **60.** This addition gave the tattoo a sense of motion. | Disputed that Ms. Von Drachenberg made any "addition" when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |

| | |
|---|---|
| **61.** Kat's work with the skin pen also laid the groundwork for changes in the texture of certain elements of the tattoo. | Disputed that Ms. Von Drachenberg made any "changes in the texture" of Mr. Sedlik's Iconic Miles Davis Portrait when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
| **62.** Kat did all of these alterations before beginning the permanent tattooing. | Disputed that Ms. Von Drachenberg made any "alterations" of Mr. Sedlik's Iconic Miles Davis Portrait when copying the Iconic Miles Davis Portrait |

| | |
|---|---|
| | onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. <u>See</u> Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; <u>see also</u> Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
| **63.** Once the groundwork was laid with the skin pen, Kat used a liner machine to permanently set that groundwork onto Mr. Farmer's arm. | Undisputed. |
| **64.** Kat's second main step was doing the shading. | Undisputed. |

| | |
|---|---|
| **65.** The shading work constituted most of the work for Mr. Farmer's tattoo. | Undisputed. |
| **66.** Shading work generally constitutes most of the work for black-and-gray style portrait tattoos. | Undisputed. |
| **67.** During the shading process, Kat took a number of steps to bring the tattoo to life and apply her own interpretation onto Mr. Farmer's skin. | Disputed that Ms. Von Drachenberg made applied "her own interpretation" of Mr. Sedlik's Iconic Miles Davis Portrait when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. <u>See</u> Sedlik Depo. at 118:21-119:1, |

| | attached as Exh. F to G Sedlik Decl.; <u>see also</u> Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
|---|---|
| **68.**  One aspect of Kat's interpretation was the amount of blackness in the tattoo. | Disputed that Ms. Von Drachenberg made any "interpretation" of Mr. Sedlik's Iconic Miles Davis Portrait when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. <u>See</u> Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; <u>see also</u> Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |

| | |
|---|---|
| **69.** The original photograph had a stark, black background, and this blended into the black clothing that Miles Davis was wearing. | Undisputed. |
| **70.** Kat chose not to have a stark, black background in her tattoo, and instead used the shading process to create dimension, shadows, and highlights, and create an altogether lighter and softer image. | Disputed that Ms. Von Drachenberg "created" dimension, shadows or highlights in the tattoo as opposed to copying those elements of the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo, using her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |

| | |
|---|---|
| **71.** In this way, Miles Davis's face seems to stand out from the skin and maps onto the contours of Mr. Farmer's upper arm. | Undisputed that Ms. Von Drachenberg believes that "Miles Davis's face stands out from the skin and maps onto the contours of Mr. Farmer's upper arm." |
| **72.** If Kat had merely tried to replicate the photograph onto Mr. Farmer's arm, there would have been whole swaths of black background or even worse, a black rectangular shape. | Disputed that Ms. Von Drachenberg did not attempt to replicate Mr. Sedlik's Iconic Miles Davis Portrait when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |

| | |
|---|---|
| **73.** In Kat's judgment, this would not have looked appropriate on Mr. Farmer. | Undisputed that Ms. Von Drachenberg made a judgment relating to the appropriateness of including a black rectangular background to the tattoo of Mr. Sedlik's Iconic Miles Davis Portrait onto Mr. Farmer's arm. |
| **74.** Another aspect of Kat's interpretation was the addition of a sense of movement. | Disputed that Ms. Von Drachenberg made any "interpretation" of Mr. Sedlik's Iconic Miles Davis Portrait or added a "sense of movement" when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik |

| | |
|---|---|
| | Decl.; <u>see</u> <u>also</u> Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
| **75.** Kat accomplished this through adding waves of shading in the lines of smoke that circle the perimeter of Miles Davis's hair and hand. | Disputed. The final tattoo shows no indication of "waves of shading" or "lines of smoke" circling the hair or hand of Miles Davis, merely a transition from the edges of Mr. Sedlik's Iconic Miles Davis Portrait to Mr. Farmer's skin. <u>See</u> Exh 203. Further, Ms. Von Drachenberg did not testify that she added any "lines of smoke" or "waves of shading" encircling the hand or hair during her deposition. |

| | |
|---|---|
| **76.** The smoke swirls through Miles Davis's hair and hand, creating a kind of "visual noise" that flies all around the tattoo and gives the sense of movement. | Disputed. The final tattoo shows no indication of "swirling smoke" circling the hair or hand of Miles Davis, merely a transition from the edges of Mr. Sedlik's Iconic Miles Davis Portrait to Mr. Farmer's skin. <u>See</u> Exh 203. Further, Ms. Von Drachenberg did not testify that she added any "swirling smoke" encircling the hand or hair during her deposition. |
| **77.** The smoke also adds to a sentiment of melancholy. | Undisputed that Ms. Von Drachenberg believes that the tattoo has a "sense of melancholy." Disputed. The final tattoo shows no indication of "smoke" circling the hair or hand of Miles Davis, merely a transition from the edges of Mr. Sedlik's Iconic Miles Davis Portrait to Mr. Farmer's skin. <u>See</u> Exh 203. |

| | |
|---|---|
| | Further, Ms. Von Drachenberg did not testify that she added any "smoke" encircling the hand or hair during her deposition. |
| **78.** Kat's interpretation of the tattoo also added shading, highlights, and texture to a number of parts of Miles Davis's face and hand. | Disputed that Ms. Von Drachenberg made any "interpretation" of Mr. Sedlik's Iconic Miles Davis Portrait or added "shading, highlights [or] texture" when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal |

| | |
|---|---|
| | Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
| **79.** Kat's interpretation added texture to the fingers on Miles Davis's hand. | Disputed that Ms. Von Drachenberg made any "interpretation" of Mr. Sedlik's Iconic Miles Davis Portrait or added a "texture to the fingers on Miles Davis's hand" when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal Report at pp. |

| | |
|---|---|
| | 13-15, attached as Exh. A to J. Sedlik Decl. |
| **80.** Kat's interpretation added texture to the vein on Miles Davis's forehead. | Disputed that Ms. Von Drachenberg made any "interpretation" of Mr. Sedlik's Iconic Miles Davis Portrait or added a "texture to the vein on Miles Davis's forehead" when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal Report |

| | |
|---|---|
| | at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
| **81.** Kat's interpretation added texture to the details on Miles Davis's shirt and sleeves. | Disputed that Ms. Von Drachenberg made any "interpretation" of Mr. Sedlik's Iconic Miles Davis Portrait or added a "texture to the details on Miles Davis' shirt and sleeves" when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik Decl.; see also Sedlik Rebuttal Report |

| | |
|---|---|
| | at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
| **82.** To Mr. Farmer, the meaning of his tattoo is two-fold. | Undisputed. **Objection:** Relevance. |
| **83.** First, Farmer's Miles Davis tattoo represents a callback to the times in Farmer's life when he studied and played jazz, particular his college years. | Undisputed. **Objection:** Relevance. |
| **84.** Second, Farmer's Miles Davis tattoo represents the fact that he is still an avid listener of jazz and of Miles Davis's music in particular. | Undisputed. **Objection:** Relevance. |

| | |
|---|---|
| **85.** Mr. Farmer considers his Miles Davis tattoo part of a "visible inventory" of himself. | Undisputed. **Objection:** Relevance. |
| **86.** Mr. Farmer has many other tattoos, and nearly every one of them has some personal meaning to him. | Undisputed. |
| **87.** When Kat does portrait tattoos in general, she attempts to get a feel for who the subject of the portrait is and what the subject means to the client on whose body the portrait tattoo will be inked. | Undisputed. |
| **88.** Kat's goal is to have her interpretation of the tattoo fit her client as an individual. | Undisputed. |

| | |
|---|---|
| **89.** Kat understood that Miles Davis was a figure who meant a lot to Mr. Farmer. | Undisputed. |
| **90.** Kat's goal was to create a sentiment on Mr. Farmer's body that both evoked melancholy and had movement in it. | Undisputed. |
| **91.** Kat achieved this goal through her artistic skills with shading, texture, and adding movement around Davis's hair and other parts of the tattoo. | Disputed that Ms. Von Drachenberg used her "artistic skills with shading, texture [or] adding movement" when copying the Iconic Miles Davis Portrait onto Mr. Farmer's skin in the form of a tattoo. Rather she actually used her technical capabilities to make the most accurate possible copy of Mr. Sedlik's Iconic Miles Davis Portrait in the form of a tattoo. See Sedlik Depo. at 118:21-119:1, attached as Exh. F to G Sedlik |

| | |
|---|---|
| | Decl.; see also Sedlik Rebuttal Report at pp. 13-15, attached as Exh. A to J. Sedlik Decl. |
| **92.** Kat further understood that Mr. Farmer initially intended to get a whole sleeve of Miles Davis-inspired tattoos on his arm, of which her tattoo would be but one. | Undisputed. |
| **93.** To accommodate this, Kat designed the perimeter of the tattoo in such a way so that it could more easily be joined with other tattoos that a subsequent tattoo artist might ink. | Undisputed. |

| | |
|---|---|
| **94.** Kat and High Voltage posted three distinct photographs of the tattoo among certain of their social media accounts. | Undisputed that Defendants posted three distinct photographs multiple times to numerous different social media accounts over a period of several years. |
| **95.** The first was a photo showing Kat in the middle of inking the tattoo, with a printout of the Miles Davis photograph in the background, hanging from a lamp. | Undisputed. |

| | |
|---|---|
| **96.** The second was a "messy" progress photo of a portion of the tattoo, with ink running down Mr. Farmer's skin. | Undisputed. |
| **97.** The third was a photo of the completed tattoo. | Undisputed. |

| | |
|---|---|
| **98.** Kat also posted a short video to her Instagram "highlights" of her in the process of inking the tattoo. | Undisputed. |
| **99.** The video in Exhibit 218 was posted to Kat's Instagram "highlights" for tattoos, which is a compilation of many videos of various tattoos Kat has made over the years. | Undisputed. |
| **100.** The first photo (Exs. 203-04, 212-13), second photo (Ex. 207-08), and video (Ex. 218) do not depict the completed tattoo, but only part of the tattoo in progress. | Undisputed. |

| | |
|---|---|
| **101.** While the first photo (Exs. 203-04, 212-13) also depicts the "Silence" Photograph itself, this is clearly done for a different purpose of comparing the Photograph with Kat's progress on the tattoo. | Disputed. **Objection:** Lack of foundation. |
| **102.** As of January 2022, there had been at least 4,442 posts to Kat's personal Instagram account. | Undisputed. |
| **103.** As of January 2022, there had been approximately 7,774 posts to the High Voltage Instagram account. | Undisputed. |

| | |
|---|---|
| **104.** There is no market in the tattoo industry for licensing copyrighted or trademarked materials to be used as reference materials for tattoos. | Disputed. Mr. Sedlik has previously licensed his Iconic Miles Davis Portrait for use in a tattoo on at least one other occasion and has been contacted by others requesting permission or licenses to use the Iconic Miles Davis Portrait in tattoos, including up to 20 other inquiries. Sedlik Depo. at 106-21:107:1, and 114:5-22, attached as Exh. A to G. Sedlik Decl.; <u>See also</u> Sedlik Expert Rebuttal Report at pp. 29-32, Attached as Exh. A to J. Sedlik Decl. **Objection:** Lack of Foundation; Improper/Unsupported Expert Opinion. |

| | |
|---|---|
| **105.** As a matter of current industry custom and practice, tattooists do not seek licenses from owners of source materials in the process of creating tattoos that are based on those source materials. | Disputed. Mr. Sedlik has previously licensed his Iconic Miles Davis Portrait for use in a tattoo on at least one other occasion and has been contacted by others requesting permission or licenses to use the Iconic Miles Davis Portrait in tattoos, including up to 20 other inquiries. Sedlik Depo. at 106-21:107:1, and 114:5-22attached as Exh. A to G. Sedlik Decl.; Sedlik Expert Rebuttal Report at pp. 29-32, Attached as Exh. A to J. Sedlik Decl. **Objection:** Lack of Foundation; Improper Expert Opinion. |

| | |
|---|---|
| **106.** As a matter of historical industry custom and practice, tattooists have not sought licenses from owners of source materials in the process of creating tattoos that are based on those source materials. | Disputed. Mr. Sedlik has previously licensed his Iconic Miles Davis Portrait for use in a tattoo on at least one other occasion and has been contacted by others requesting permission or licenses to use the Iconic Miles Davis Portrait in tattoos, including up to 20 other inquiries. Sedlik Depo. at 106-21:107:1, and 114:5-22, attached as Exh. A to G. Sedlik Decl.; Sedlik Expert Rebuttal Report at pp. 29-32, Attached as Exh. A to J. Sedlik Decl. **Objection:** Lack of Foundation; Improper Expert Opinion. |
| **107.** As of now, there is no indication that a market for licensing copyrighted materials to be used as source materials for tattoos is likely to develop. | Disputed. Mr. Sedlik has previously licensed his Iconic Miles Davis Portrait for use in a tattoo on at least one other occasion and has been contacted by others requesting permission or licenses |

-48-

| | |
|---|---|
| | to use the Iconic Miles Davis Portrait in tattoos, including up to 20 other inquiries. Sedlik Depo. at 106-21:107:1, and 114:5-22, attached as Exh. A to G. Sedlik Decl.; Sedlik Expert Rebuttal Report at pp. 29-32, Attached as Exh. A to J. Sedlik Decl. **Objection:** Lack of Foundation; Improper Expert Opinion. |
| **108.** The custom and practice of *not* seeking licenses for use of source materials is ubiquitous throughout the tattoo industry. | Disputed. Mr. Sedlik has previously licensed his Iconic Miles Davis Portrait for use in a tattoo on at least one other occasion and has been contacted by others requesting permission or licenses to use the Iconic Miles Davis Portrait in tattoos, including up to 20 other inquiries. Sedlik Depo. at 106-21:107:1, and 114:5-22, attached as Exh. A to G. Sedlik Decl.; Sedlik Expert Rebuttal Report at pp. 29-32, Attached as Exh. A |

| | to J. Sedlik Decl. **Objection:** Lack of Foundation; Improper Expert Opinion. |
|---|---|
| **109.** It is a common practice among tattooists to use copyrighted or copyrightable source materials as reference materials to create tattoos. | Undisputed. |

| | |
|---|---|
| **110.**  There is a wide range of copyrighted or copyrightable source materials that tattooists use as references to create tattoos, including without limitation:  photographs, paintings, drawings, sketches, album covers, cartoon characters, lines of poetry, lines of prose, excerpts from plays, short poems, quotations, sheet music, still-frames from film, famous art works, and other fine arts. | Undisputed. |
| **111.**  It is a common practice among tattooists to use trademarked or trademarkable source materials as reference materials to create tattoos. | Undisputed. **Objection:** Relevance. |

| | |
|---|---|
| **112.** It is a common practice among tattooists to use the likenesses of celebrities as source materials to create tattoos. | Undisputed. |
| **113.** It is a common practice for clients of tattooists to provide the tattooist with the source material that the client wants to be used to create the tattoo. | Undisputed. |
| **114.** The current and historical practice of tattooists is that they do not check to determine if the client-provided source material is protected by copyright. | Undisputed. **Objection**: Relevance. |

| | |
|---|---|
| **115.** It would impede and disrupt the current and historical practices of a large profession if tattoo artists were required – under threat of civil liability – to verify whether their source materials are protected by copyright. | Disputed, lack of foundation. **Objection:** Lack of foundation, improper expert opinion, more prejudicial than probative, relevance. |
| **116.** Even with regard to *tattoo designs*, the tattoo profession has historically and traditionally operated in the absence of state-based solutions – such as civil liability for copyright infringement – for regulating the use of such designs. | Disputed, lack of foundation. **Objection:** Lack of foundation, improper expert opinion, more prejudicial than probative, relevance. |

| | |
|---|---|
| **117.** The replication of one tattooist's *tattoo design* by another tattooist is often seen within the profession as paying an homage to the designer, rather than copying, ripping off, or stealing. | Disputed, lack of foundation. **Objection:** Lack of foundation, improper expert opinion, more prejudicial than probative, relevance. |
| **118.** Tattoo artists frequently strive to fulfill their client's desires by tattooing imagery that is representative of their client's identity. | Undisputed. |
| **119.** Tattoos inherently have meanings that are deeply personal and distinct to the particular individuals who wear them. | Undisputed. |

| | |
|---|---|
| **120.** Tattoos inherently have distinct meanings that can vary with the contextual in which the tattoo is displayed. | Undisputed. |
| **121.** In general, tattoos that are based on source material create new meaning in the resulting tattoo as a result of the tattoo's being imprinted on the skin of a living human's body. | Disputed. Lack of foundation.<br><br>**Objection:** Lack of foundation, improper expert testimony. |
| **122.** Both the tattoo client's choice of source material, and the tattoo artist's specific way of rendering that image, blend together in a unique work. | Disputed. Lack of foundation.<br><br>**Objection:** Lack of foundation, improper expert testimony. |

| | |
|---|---|
| **123.** Two people with the exact same tattoo can convey vastly different meanings through their respective tattoos. | Undisputed. |
| **124.** Unlike a piece of art on display in a museum, the meaning of a single tattoo can also change depending on the context in which it is displayed. | Disputed. Lack of foundation.<br><br>**Objection:** Lack of foundation, improper expert testimony. |
| **125.** For example, a tattoo of a spider web with a black widow can convey one meaning outside of prison (an innocuous passion for venomous insects), but a very different meaning inside of prison (an affiliation with a white supremacist prison gang). | Disputed. Lack of foundation.<br><br>**Objection:** Relevance, lack of foundation, improper expert testimony. |

| | |
|---|---|
| **126.** Tattoos can be used to convey multiple narratives of private meanings that are not immediately obvious, allowing the tattoo wearer to control those to whom the full meaning of the tattoo is revealed. | Undisputed. **Objection:** Relevance. |
| **127.** In general, portrait tattoos of public figures are mainly used as forms of expressing the wearer's admiration for the figure, or for channeling the public figure's desired qualities. | Disputed. **Objection:** Relevance, lack of foundation. |
| **128.** The process of tattooing requires different artistic skills and techniques than photography. | Undisputed. |

| | |
|---|---|
| **129.**  Tattooing also requires different and specialized artistic skills to work with the three main types of equipment:  rotary, coil, and pneumatic tattoo machines or "guns." | Undisputed. |
| **130.**  Tattooing involves injecting pigment into the dermis, which lies between the epidermis and the subcutaneous layers of the skin. | Undisputed. |
| **131.**  The process involves tens or even hundreds of thousands of punctures, in which the tattoo artist builds up an image millimeter-by-millimeter at a time. | Undisputed. |

| | |
|---|---|
| **132.**  Tattoos are created on the three-dimensional surface of a living human's skin. | Undisputed. |
| **133.**  Every tattoo client's skin is different, and tattooists must use their artistic skills to adjust for differences in their client's skin. | Undisputed. |
| **134.**  Due to the differences in each person's skin and the painstaking, millimeter-by-millimeter tattooing process, no two tattoos are ever truly alike. | Undisputed. |

| | |
|---|---|
| **135.** Given the permanence of the tattoo on human skin, tattooists almost always need to use some kind of reference materials to create tattoos. | Disputed. Mr. Lane does not make any statement regarding the "permanence of the tattoo" or its relation to reference materials. Ex. 28 (Lane Expert Report) at 20. **Objection:** Lack of Foundation. |
| **136.** Plaintiff's "Silence" Photograph is a photograph, not a tattoo design. | Disputed. Plaintiff specifically offers licenses of the Iconic Miles Davis Portrait for use as a tattoo design. Exh. E to Sedlik Rebuttal Report, attached as Exh. A to J. Sedlik Decl. |
| **137.** Sedlik took the Photograph in 1989, in connection with a photo shoot for Jazziz magazine. | Undisputed. |

| | |
|---|---|
| **138.**  One of the meanings that Sedlik intended to convey in the Photograph was a comment on Miles Davis's use of "negative space" in his musical works – referring to Davis's groundbreaking use of silence, low volumes, and pauses in between notes, and how the silent spaces between notes can be just as important as the notes themselves. | Undisputed. |
| **139.**  The meaning of the "Silence" Photograph says nothing about Blake Farmer or his life's story. | Disputed. Mr. Sedlik testified that the Iconic Miles Davis Portrait has many meanings, not one meaning, and it is nonsensical to say that "the meaning" of a photograph "says nothing" about a person or a person's life story. Defts' Ex. 27 (Sedlik Depo.) at 23:17-34:15 |

| | |
|---|---|
| | (Sedlik's general discussion of the many meanings of the Photograph). |
| **140.** Sedlik believes that the "meaning" and the "purpose" of his Photograph are intertwined and cannot be separated. | Undisputed that Mr. Sedlik believes that the meaning and purpose of his Iconic Miles Davis Portrait are intertwined. Disputed as to "can never be separated" as the referenced testimony does not include any statements by Mr. Sedlik that the "meaning" and "purpose" of the Iconic Miles Davis Portrait cannot be separated. |

| | |
|---|---|
| **141.** In this regard, Sedlik's primary "purpose" in creating the Photograph was to create a copyrighted work that could be commercially exploited – through licenses for reproduction, distribution, display, and the creation of derivative works – throughout the work's copyright life. | Disputed as to the meaning of "in this regard" relating to this statement but otherwise undisputed. |
| **142.** The "Silence" Photograph was published in the August / September 1989 issue of Jazziz magazine. | Undisputed. |
| **143.** This issue of Jazziz magazine was widely published through the United States. | Undisputed. |

| | |
|---|---|
| **144.**  Sedlik "believes" he licensed the "Silence" Photograph for use in a tattoo on one occasion that "could be between six to ten years ago." | Undisputed. |
| **145.**  There was only one such occasion in which Sedlik believes he licensed the Photograph for use in a tattoo. | Undisputed. |
| **146.**  Sedlik doesn't know the name of the person to whom he supposedly granted this license. | Disputed as to the term "supposedly" as Mr. Sedlik's testimony is clear that he granted a license and only that he couldn't recall the name during the time of the deposition, not that he "doesn't know" the name. |
| **147.**  Sedlik's licenses for the "Silence" Photograph are normally in writing. | Undisputed. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| **148.** But Sedlik was unable to find a copy of this claimed license. | Disputed as to the use of the word "claimed" and also disputed that Plaintiff "was unable to find" the license. Plaintiff's discovery responses clearly and expressly indicated that he would search for and produce documents relating to licenses going back only 5 years from the date of his response. He never stated that he "could not find" this license or any other licenses relating to the Iconic Miles Davis Portrait, merely that they were not located in connection with the scope of the search that Plaintiff agreed to conduct in response to Defendants discovery demands. G. Sedlik Decl., ¶11 and Exh. H. |

| | |
|---|---|
| **149.** Sedlik did not produce in discovery in this case a copy of this claimed license. | Disputed as to the use of the word "claimed" and also disputed that Plaintiff "was unable to find" the license. Plaintiff's discovery responses clearly and expressly indicated that he would search for and produce documents relating to licenses going back only 5 years from the date of his response. He never stated that he "could not find" this license or any other licenses relating to the Iconic Miles Davis Portrait, merely that they were not located in connection with the scope of the search that Plaintiff agreed to conduct in response to Defendants discovery demands. G. Sedlik Decl., ¶11 and Exh. H. |

| | |
|---|---|
| **150.** Sedlik does not recall the price of this claimed license. | Disputed as to the use of the word "claimed" but otherwise undisputed that during his deposition Mr. Sedlik did not recall the details of the license he previously made for use of the Iconic Miles Davis Portrait as a tattoo. |
| **151.** Sedlik does not recall whether this claimed license was for more or less than $100. | Disputed as to the use of the word "claimed" but otherwise undisputed that during his deposition Mr. Sedlik did not recall the details of the license he previously made for use of the Iconic Miles Davis Portrait as a tattoo. |
| **152.** Sedlik does not recall whether he even received any consideration in exchange for this claimed license. | Disputed as to the use of the word "claimed" but otherwise undisputed that during his deposition Mr. Sedlik did not recall the details of the license he |

| | |
|---|---|
| | previously made for use of the Iconic Miles Davis Portrait as a tattoo. |
| **153.**  No one has ever told Sedlik that they would not buy a copy of his "Silence" Photograph as a result of having seen Kat's tattoo. | Undisputed. |
| **154.**  No one has ever told Sedlik that they would not buy a copy of his "Silence" Photograph as a result of having seen the social media posts of the tattoo. | Undisputed. |

| | |
|---|---|
| **155.** When asked whether the market value for his "Silence" Photograph had decreased after Kat's inking of the tattoo, Sedlik responded that he had not had the Photograph's market value appraised either before or after the infringing uses. | Undisputed that Sedlik has not had the value of the Iconic Miles Davis Portrait appraised before or after Defendants' infringing usages. |
| **156.** Sedlik was not able to quantify any decrease in market value of his "Silence" Photograph as a result of the alleged infringement. | Undisputed that Mr. Sedlik has not made an effort to quantify the decrease in market value in his Iconic Miles Davis Portrait caused by Defendants' infringement. |

| | |
|---|---|
| **157.** The "Rebuttal Expert Report of Professor Jeffrey Sedlik" submitted February 8, 2022 did not discuss any decrease in market value of the "Silence" Photograph. | Disputed. Mr. Sedlik's Rebuttal Expert Report specifically states that: "Defendants' unlicensed creation of the Tattoo, will, if permitted, influence other tattooers to make unlicensed use of photographs, disrupting and usurping an existing market for the licensing of rights for artist reference and art rendering" and "The creation of unlicensed tattoos usurps the market for visual art licenses for artist reference and art rendering. Sedlik Rebuttal Expert Report, at p. 29 and p. 20. Exh. A to J. Sedlik Decl. |

| | |
|---|---|
| **158.** The "Rebuttal Expert Report of Professor Jeffrey Sedlik" submitted February 8, 2022 did not say anything about the fair market value of a license to use the "Silence" Photograph as a tattoo. | Disputed. Mr. Sedlik's Rebuttal Expert Report states: "Importantly, in each such instance, I selected a generic image, not comparable to the Photograph. For this reason, and as Plaintiff does not permit stock image agencies to license his works, the fees quoted by the agencies are inapplicable to the Photograph and do not indicate the value of a license of the Photograph for use as a tattoo." Sedlik Rebuttal Expert Report at P. 29, attached as Exh. A to J. Sedlik Decl. |
| **159.** Plaintiff never requested in discovery information concerning any of Defendants' gross revenues, and such information was not produced. | Disputed. Plaintiff requested from each of the three defendants the following documents: "All DOCUMENTS evidencing, reflecting or referring to any monetary payment, in-kind |

1
2
3
4
5
6
7
8
9
10
11
12

| | consideration or other compensation YOU have received relating to YOUR publication of the TATTOO on SOCIAL MEDIA." Each of the defendants responded that they had no responsive documents to this request and failed to produce any responsive documents. G. Sedlik Decl. at ¶10. |
| --- | --- |

13

14   Dated:  March 28, 2022                SEDLIKGROUP, P.C.
                                          Gary S. Sedlik
15

16                                        By:   /s/ Gary S. Sedlik
17                                               Gary S. Sedlik

18                                        Attorneys for Plaintiff Jeffrey B. Sedlik

19
20
21
22
23
24
25
26
27
28