GRODSKY, OLECKI & PURITSKY LLP
Allen B. Grodsky (SBN 111064)
allen@thegolawfirm.com
John J. Metzidis (SBN 259464)
john@thegolawfirm.com
11111 Santa Monica Boulevard, Suite 1070
Los Angeles, California 90025
Telephone:  (310) 315-3009
Facsimile:   (310) 315-1557

Attorneys for Defendants
Katherine Von Drachenberg, Kat Von D, Inc.,
and High Voltage Tattoo, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JEFFREY B. SEDLIK, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-01102-DSF-MRWx<br><br>Before the Hon. Dale S. Fischer, U.S. District Judge<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT; REPLY DECLARATION OF JOHN J. METZIDIS AND EXHIBITS A-F**<br><br>Hearing<br>Date:  April 18, 2022<br>Time:  1:30 p.m.<br>Place:  Courtroom 7D<br>First Street Courthouse<br>350 West 1st Street<br>Los Angeles, CA 90012<br><br>Action filed:  February 7, 2021<br>FPTC:  June 27, 2022<br>Trial:  July 26, 2022 |

# **TABLE OF CONTENTS**

1.  INTRODUCTION ...................................................................................... 5
2.  DEFENDANTS SHOULD PREVAIL ON FAIR USE ................................ 5
    A.  Fair Use Factor One ........................................................................... 5
    B.  Fair Use Factor Two ........................................................................... 8
    C.  Fair Use Factor Three ......................................................................... 9
    D.  Fair Use Factor Four ........................................................................... 9
    E.  Non-Statutory Factors ....................................................................... 13
3.  KVD, INC. IS ENTITLED TO SUMMARY JUDGMENT ......................... 14
4.  DEFENDANTS SHOULD PREVAIL ON THE
    SECTION 1202 CLAIM ............................................................................ 14
5.  PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PUTTING
    ON EVIDENCE OF ACTUAL DAMAGES OR PROFITS ....................... 15
    A.  Plaintiff Failed to Produce Evidence of Gross Revenues and
        Cannot Recover Damages Based on Defendants' Profits.................. 15
    B.  Plaintiff Failed to Produce Evidence of Actual Damages ................. 16
6.  CONCLUSION ......................................................................................... 16

# **TABLE OF AUTHORITIES**

**CASES:**                                                                                                       **PAGES:**

*A&M Records v. Napster*,
  239 F.3d 1004 (9th Cir. 2001) .................................................................. 10

*Anderson v. City of Hermosa Beach*,
  621 F.3d 1051 (9th Cir. 2010) .................................................................... 7

*Andy Warhol Foundation for Visual Arts, In. v. Goldsmith*,
  11 F.4th 26 (2d Cir. 2021) ......................................................................... 6

*Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.*,
  386 F. Supp. 2d 324 (S.D.N.Y. 2005) ...................................................... 13

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ........................................................ 5, 6, 8, 9, 11, 13

*Castle Rock Ent. v. Carol Pub. Group, Inc.*,
  150 F.3d 132 (2d Cir. 1998) ................................................................ 13, 15

*Google LLC v. Oracle Am., Inc.*,
  141 S. Ct. 1183 (2021) .............................................................................. 11

*Hendricks v. DreamWorks, LLC*,
  2007 WL 9705916 (C.D. Cal. Nov. 20, 2007) ........................................ 16

*Hernandez v. City of Los Angeles*,
  2021 WL 4497210 (C.D. Cal. July 9, 2021) ........................................... 14

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ................................................................... 10

*Leegin Creative Leather Prod., Inc. v. Belts by Nadim, Inc.*,
  316 F. App'x 573 (9th Cir. 2009) ............................................................ 16

*Lumens Co. v. GoEco LED LLC*,
  2018 WL 1942768 (C.D. Cal. Jan. 3, 2018) ............................................ 15

*McGucken v. Pub Ocean Ltd.*,
  2021 WL 3519295 (C.D. Cal. July 27, 2021) ......................................... 10

*Monge v. Maya Mags., Inc.*,
  688 F.3d 1164 (9th Cir. 2012) ................................................................. 11

*Oracle Am., Inc. v. Google, Inc.*,
  131 F. Supp. 3d 946 (N.D. Cal. 2015) .................................................... 15

*Oracle Corp. v. SAP AG*,
  765 F.3d 1081 (9th Cir. 2014) ............................................................ 15, 16

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ................................................................... 16

## TABLE OF AUTHORITIES
(Continued)
*Ringgold v. Black Entm't Tele., Inc.*,
   126 F.3d 70 (2d Cir. 1997) .................................................................................. 11

*Rogers v. Koons*,
   960 F.2d 301 (2d Cir. 1992) ................................................................................... 8

*Seltzer v. Green Day*,
   725 F.3d 1170 (2013) ............................................................................ 5, 6, 9, 10, 11

*Seltzer v. Green Day, Inc.*,
   2011 WL 13122367 (C.D. Cal. Aug. 18, 2011) ............................................................ 13

*Threshold Media Corp. v. Relativity Media, LLC*,
   2013 WL 12331550 (C.D. Cal. Mar. 19, 2013) ............................................................ 11

*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
   953 F.3d 638 (9th Cir. 2020) ................................................................................ 11

*United States v. Kitsap Phys. Serv.*,
   314 F.3d 995 (9th Cir. 2002) ................................................................................ 14

**OTHER:**

4 Nimmer, *Nimmer on Copyright* § 13.05[A][4] ......................................................... 11

1. **INTRODUCTION**

Plaintiff's opposition pretends this action is a "garden variety" copyright case, but it is not. The modern tattoo practice has been in existence since the late 19th century. Yet this case, to the best of our research, is the *first time* someone has ever filed a lawsuit claiming that a permanent tattoo based on copyrighted material was a copyright infringement.

That unprecedent claim obviously raises the question of fair use. And fair use questions "call[] for case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Plaintiff mischaracterizes our arguments as seeking a declaration that "tattoos or tattooists are exempt from federal copyright law." What Defendants seek is summary judgment that **the tattoo at issue here**, and the social media posts of it, were indeed fair uses.

The undisputed facts **in this case** show this. But rather than discussing those undisputed facts and the applicable Ninth Circuit law head-on, Plaintiff begins his opposition by launching into a vague attempt to re-litigate feigned discovery disputes. The words "fair use" don't even appear until page 6 of his opposition. Dkt. 50 at 6:11. We otherwise respond seriatim, below, to Plaintiff's arguments.

The Court should grant all Defendants summary judgment on their fair use defense, and further grant their motion as to KVD, Inc., the Section 1202 claim, and the claims for actual damages and profits.

2. **DEFENDANTS SHOULD PREVAIL ON FAIR USE.**

We respond to a number of points Plaintiff raises in his opposition:

   A. **Fair Use Factor One**

1. Plaintiff's opposition ignores the Ninth Circuit's discussion in *Seltzer v. Green Day*, 725 F.3d 1170 (2013) of what it means to be "transformative." Plaintiff instead invokes conflicting Second Circuit authority to argue that transformative is "an often misunderstood word in the context of copyright."

1  Dkt. 50 at 9:26-10:2.[1]  But *Seltzer* itself acknowledged "there is no shortage of language from other courts elucidating (or obfuscating) the meaning of transformation." *Id*. at 1176.  "To navigate these treacherous waters," the *Seltzer* court "turn[ed] to the most definitive formulation of the test":  the Supreme Court's language in *Campbell* that "one work transforms another when 'the new work . . . ***adds something new, with a further purpose or different character, alternating the first with new expression, meaning, or message***." *Id.* at 1176 (quoting *Campbell*, 510 U.S. at 579).

  2.  Plaintiff then tries to dismiss as mere "poetic waxing" the undisputed evidence of how the new expressive content and message results by virtue of this tattoo being permanently imprinted onto Blake Farmer's body.  UFs 82-86, 119-124 (Dkt. 50-2 at 38-39, 54-56).  But this kind of comparison of the "message and meaning" of the two works is *exactly* what the Ninth Circuit did in *Seltzer*.  725 F.3d at 1176-77.  And just as in *Seltzer*, regardless of the multiple meanings that Mr. Sedlik has tried to attribute to his "Silence" Photograph, it clearly says nothing about Blake Farmer or his life's story.  *Id.* at 1177; UF 139 (Dkt. 50-2 at 61-62).  And just as in *Seltzer*, Mr. Farmer's Miles Davis tattoo cannot be considered in isolation.  While it may be "prominent" on his body, "it remains only a component" of the visible inventory of tattoos on his body that convey personal meaning.  UFs 85-86 (Dkt. 50-2 at 39); *cf*. *Seltzer*, 725 F.3d at 1176-77.

  3.  Plaintiff ignores what Mr. Farmer has to say about his tattoo.  Mr. Farmer testifies that the meaning of his tattoo is a personal callback to his college years studying and playing jazz, and signifies his continued appreciation of jazz and Miles Davis's music in particular; and that he was motivated to get the tattoo because of his personal identification with Miles Davis.  UFs 24-30, 82-86 (Dkt. 50-2 at 10-11, 38-39).  Plaintiff mischaracterizes the meaning as a bland

---

[1] And as Plaintiff knows, the Supreme Court granted certiorari on March 28 in *Andy Warhol Foundation for Visual Arts, In. v. Goldsmith*, 11 F.4th 26 (2d Cir. 2021), *cert. granted*, 2022 WL 892102.

effort "to inspire listeners of jazz," Dkt. 50 at 9:20, but that's not the meaning at all. The meaning is personal to Mr. Farmer.

4. Plaintiff then ignores the role Kat played in permanently imprinting this new expressive content on Mr. Farmer's body. Plaintiff mischaracterizes her declaration as being used to show her "purported skill and effort," Dkt. 50 at 11:10-11, but that's not the argument. Her artistic skills, done in freehand, *transformed the image* into a new aesthetic on Mr. Farmer's body with new meaning, by adding the appearance of movement, adding and shading waves of smoke around the perimeter, creating a sentiment of melancholy, and creating a lighter image appropriate for Mr. Farmer's body. UFs 51-81 (Dkt. 33 at 9-13); UFs 89-91 (Dkt. 33 at 14).

5. Plaintiff also wants to ignore that the accused work here – **a permanent tattoo on living human skin** – is fundamentally different than **pieces** of art like drawings, paintings, or sculptures. Plaintiff invokes examples in which courts found it was not transformative to render an artwork from one medium into a different medium (e.g., photographs into sculptures, and vice versa). Dkt. 50 at 10:22-11:22. But in those cases, the original and the accused works were both **pieces** of art. Mr. Farmer's tattooed body, in contrast, is a not a **piece** of art to be displayed in a museum. The tattoo Kat inked for him is transformative not merely because she rendered the Photograph into a different medium, but because **that particular medium** – a living human's body – necessarily imbues this tattoo with new expressive content that is both personal to Mr. Farmer, and is the product of Kat's unique artistic interpretation. On that point, it is telling that Plaintiff's opposition fails to respond at all to the Ninth Circuit's recognition that "a permanent tattoo **often carries a message quite distinct from displaying the same words or picture through some other medium**, and provides information about the identity of the speaker." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1067

1  (9th Cir. 2010) (cleaned up, emphasis added).[2]

2        6. On the commercial use component, Plaintiff elides the distinction between the tattoo itself and the social media posts of it. As to the tattoo itself, the evidence is undisputed that the tattoo was done for free. As to the social media posts, there is in fact no evidence that the postings were "intended to promote Defendants' various brands." Dkt. 50 at 12:20. But even if we assume they were, Plaintiff once again ignores *Seltzer*'s teaching that "the degree to which the new user exploits the copyright for commercial gain – as opposed to ***incidental use as part of a commercial enterprise*** – affects the weight we afford commercial nature as a factor." 725 F.3d at 1178 (citation omitted, emphasis added). While Plaintiff attempts to dramatize their impact (Dkt. 50 at 12:14-13:2), there is nothing remarkable about 12 social media posts out of literally *thousands* of other posts made by these accounts. UFs 102-03 (Dkt. 50-2 at 45). They were drops in the bucket and thus, at most, only incidentally commercial.

      7. Perhaps recognizing that this tattoo is indeed transformative, Plaintiff's opposition now shifts focus to the first social media post that featured a printout of the actual "Silence" Photograph in the background. UF 101, Dkt. 50-2 at 45; *e.g.* Ex. 203, Dkt. 35-19. Plaintiff claims there is "no evidence" that the display of the "Silence" Photograph is clearly done for the different purpose of comparing the Photograph with the tattoo, Dkt. 50 at 21:6-10; but the evidence of this *is the social media post itself*. UF 101, Dkt. 33 at 17:3-8. No conclusion otherwise would be reasonable.

### B.    Fair Use Factor Two

Plaintiff's discussion of the second fair use factor (Dkt. 50 at 13:17-14:26)

---

[2] For the same reasons, the tattoo Kat created here is not an example of "appropriation art" along the likes Andy Warhol, Jeff Koons, or Richard Prince. The tattoo here is indeed a work of art, but it is not a ***piece*** of art like a drawing, painting, or sculpture. So "appropriation art" cases like *Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992) – a pre-*Campbell*, Second Circuit case – are factually and legally inapposite here.

just completely ignores the second aspect of this factor: the extent to which the copyrighted work has been published. *Seltzer*, 725 F.3d at 1178. It is undisputed that the "Silence" Photograph was widely published in the United States and has been so since 1989. UFs 142-43 (Dkt. 50-2 at 63). In Plaintiff's own words, it has achieved "iconic" status. As in *Seltzer*, the widely published nature of the "Silence" Photograph tends to weigh in favor of a fair use finding, and is a "[m]itigating" consideration against the Photograph's being a creative work. *Seltzer*, 725 F.3d at 1178.

### C. Fair Use Factor Three

In response to Defendants' argument that the "Silence" Photograph is "not meaningfully divisible," Plaintiff asserts – without authority – that "[t]his strange claim is entirely irrelevant to the fair use analysis." Dkt. 50 at 16:2-3. The Ninth Circuit held just the opposite in *Seltzer*. 725 F.3d at 1178 (when copyrighted work is "not meaningfully divisible," third factor "will not weigh against an alleged infringer, even when he copies the whole work, if he takes no more than is necessary for his intended use"). In explaining why the plaintiff's "Scream Icon" image was "not meaningfully divisible," the *Seltzer* court also distinguished it from literary works like book manuscripts. *Id*.

And the third factor also overlaps somewhat with the first factor, as the "extent of permissible copying varies with the purpose and character of the use." *Id*. (quoting *Campbell*, 510 U.S. at 586-87). Kat needed to have a reference to create the likeness of Miles Davis on Mr. Farmer's arm. While Plaintiff argues she "could have used any one of hundreds of thousands" of other photos of Davis (Dkt. 50 at 16:5-8), that argument just invites a game of whack-a-mole: any other photograph could have theoretically exposed her to the same infringement claims, but by a different plaintiff.

### D. Fair Use Factor Four

Defendants' moving papers established that, on the undisputed facts, the

fourth factor weighs in favor of fair use here because the tattoo is not a substitute for the "Silence" Photograph; it serves a different market function; and there is no traditional, reasonable, or likely to be developed market for licensing photographs to be used as references for tattoos. Plaintiff's arguments in response lack merit.

   1. Plaintiff insists Defendants haven't carried their burden of proving that the tattoo is **not** a market substitute for the "Silence" Photograph. But Defendants have submitted more than sufficient evidence. The alleged infringing work here is **not** a photograph; it is a tattoo and there is no reasonable argument that a tattoo is a substitute for the "Silence" Photograph. *See Seltzer*, 725 F.3d at 1179 ("there is no reasonable argument" that band's use of work, primarily intended as street art, as part video backdrop on one song during tour "is a substitute for the primary market for [Plaintiff's] art"); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 821-22 (9th Cir. 2003) (defendant's use of the copyrighted work did not harm the market, in part, because thumbnail images were not a substitute for full-sized images).

   2. Plaintiff also claims as insufficient the undisputed facts that he has no evidence anybody refused to buy a copy of the "Silence" Photograph because of the tattoo or social media posts, or that the market value of the Photograph had decreased. UFs 153-156 (Dkt. 50-2 at 68-69). But that is *exactly* the kind of evidence *Seltzer* relied upon to find that this factor weighed in favor of fair use. *See* 725 F.3d at 1179 (Plaintiff "repeatedly testified that the value of his work was unchanged" and "admitted that no one had ever told him that he would not buy his work as a result of Green Day's use"); *see also McGucken v. Pub Ocean Ltd.*, 2021 WL 3519295, at *5 (C.D. Cal. July 27, 2021) ("Defendant's use [of Plaintiff's photos] did not seem to usurp or destroy the market for his photos" because "Plaintiff still managed to license his photos").

   3. Plaintiff also twice quotes from *A&M Records v. Napster*, 239 F.3d 1004, 1016 (9th Cir. 2001) that if the allegedly infringing work is commercial in nature, "the likelihood [of market harm] may be presumed." But the Ninth Circuit and

lower courts have since recognized that this presumption is inconsistent with the Supreme Court's holding in *Campbell*. *See Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1181 (9th Cir. 2012) ("[i]n light of the Supreme Court's admonition eschewing presumptions under this factor, we refrain from presuming harm in the potential market"); *Threshold Media Corp. v. Relativity Media, LLC,* 2013 WL 12331550, at *12 (C.D. Cal. Mar. 19, 2013) ("Plaintiff's contention that market harm can be presumed from Catfish's commercial nature" was "flawed" and "flatly" contrary to *Campbell*). In any event, the tattoo (which Kat did for free) is not commercial in nature and so there can be no presumption.

    4. Nor has Plaintiff created a material dispute of fact as to the impact on "traditional, reasonable, or likely to be developed markets.'" *Seltzer*, 725 F.3d at 1179 (quoting *Ringgold v. Black Entm't Tele., Inc.*, 126 F.3d 70, 81 (2d Cir. 1997)). "Traditional, reasonable or likely to be developed markets" are not the same as "theoretical" markets. *See Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 652 (9th Cir. 2020) ("it is a given in every fair use case that plaintiff suffers a loss of a potential market if that potential is defined as the theoretical market for licensing the very use at bar") (quoting 4 Nimmer, *Nimmer on Copyright* § 13.05[A][4]). The question is not whether there is a market that the copyright owner **wishes might exist**, but rather whether there is one that does exist or is likely to be developed. To otherwise consider such "unrealized licensing opportunities" risks falling into the "danger of circularity." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1207 (2021) (also quoting Nimmer).

  In the moving papers, Defendants submitted relevant expert testimony – from experts on the tattoo industry – who unequivocally testified that there is no traditional market for tattoo artists to license reference material from photographers, nor is such a market likely to be developed. Plaintiff offers nothing in response except **his own rebuttal "expert" report**, which frankly either supports Defendants' position here or is completely irrelevant.

For example, Plaintiff offers (hearsay) communications with photographers whose work was used as a reference in the various tattoos discussed in Defendants' experts' reports. For each of these tattoos, Plaintiff reports that the photographers told him that no license was obtained from the photographer. Dkt. 50-5 at 26-30. In so doing, Plaintiff has proven Defendants' point: *the custom and practice in the tattoo industry is **not** to obtain licenses to use photographs as references, and no such license was obtained in any of the instances addressed by Plaintiff here.*

Similarly, Plaintiff in his report **asked the wrong question** to a series of photographers and companies. Rather than asking them if they have ever entered into such a license with any tattoo artist, he asked if they would hypothetically "require" a license if anyone ever asked. Dkt. 50-5 at 50, 53-54, 57, 61. But that's not the point. That a photographer or licensing company would want a license if a tattoo artist asked for one doesn't make much difference if tattoo artists don't ever obtain such licenses, which is precisely what the defense experts have uniformly testified to here.

5. What's most telling is the evidence that Plaintiff **did not** provide. Plaintiff acknowledges that he is a member of and serves on committees for multiple photography organizations. Dkt. 50-5 at 3-4, 40. He has testified as an expert on copyright matters multiple times and provides consulting services to organizations and individuals on issues relating to copyright. *Id*. And yet:

- Plaintiff could not produce a *single* license agreement between a tattooist and any photographer or artist licensing to the tattooist the right to use that photographer's or artist's work as a reference.
- Plaintiff could not find a *single* witness in the photography or art community willing to testify that he or she had licensed a work to a tattooist or was even aware of any such license having been entered into.
- Plaintiff could not find a *single* witness from a licensing organization to testify that they had ever licensed a photograph to a tattooist.

The *only* evidence of the existence of such a license is Plaintiff's testimony that six to ten years ago, Plaintiff "believes" he licensed the "Silence" Photograph for use as a tattoo but that he doesn't remember the name of the person to whom he licensed or the price (if any) that he charged and couldn't find (and still hasn't produced) a copy of the license. UFs 144-152 (Dkt. 50-2 at 64-68). That evidence is clearly not sufficient to create a material dispute of fact. As the district court in *Seltzer* noted: "the fact that a copyright holder has previously secured licenses does not make a given market traditional, reasonable, or likely to be developed." *Seltzer v. Green Day, Inc.*, 2011 WL 13122367, at *6 (C.D. Cal. Aug. 18, 2011), *aff'd*, 725 F.3d 1170 (9th Cir. 2013) (quoting *Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.*, 386 F. Supp. 2d 324, 332 (S.D.N.Y. 2005)).

Plaintiff has failed to create a genuine dispute of fact on the fourth factor. The evidence is undisputed that there is no traditional, reasonable, or likely to be developed market for the licensing of photographs by tattoo artists; and that this tattoo is not a market substitute for the "Silence" Photograph. Therefore, this fourth factor weighs strongly in favor of a finding of fair use.[3]

### E. Non-Statutory Factors

Plaintiff does not directly address Defendants' arguments that the Court should consider as a non-statutory factor Mr. Farmer's fundamental rights to bodily integrity and personal expression. Dkt. 32 at 22:11-23:3. At most, Plaintiff just mischaracterizes this as mere "wax[ing] poetic" about "appreciation for Miles Davis," Dkt. 50 at 19:17-19. It's not. This case involves the creation of new and personal expressive content through Kat's permanent markings on Mr. Farmer's body. Because fair use requires a case-by-case analysis, *Campbell*, 510 U.S. at 577, it is appropriate for the Court to consider these non-statutory factors in this unique

---

[3] Plaintiff quotes out of context from *Castle Rock Ent. v. Carol Pub. Group, Inc.*, 150 F.3d 132 (2d Cir. 1998). *Castle Rock* did not involve the question of whether a market was traditional, reasonable or likely to be developed; there **was** such a market and the only question was whether Plaintiff had to have previously expressed interest in entering that market. That case is of no relevance here.

case of first impression.

### 3. KVD, INC. IS ENTITLED TO SUMMARY JUDGMENT.

In arguing there is a genuine dispute of fact as to the elements of its infringement claims against KVD, Inc., Plaintiff relies on one – and only one – fact: a Statement of Information filed in 2008 that described KVD, Inc.'s then type of business as "personal services – body art." Resp. to UF 15 (Dkt. 50-2 at 7).

That one document from 2008 is not sufficient to contradict Kat's testimony that KVD, Inc. is a company she uses for non-tattoo-related pursuits; nor can Plaintiff provide any specific evidence that KVD, Inc. had anything to do with the tattoo or social media posts here, made in 2017. Plaintiff has failed to create a material dispute of fact as to KVD, Inc. on his direct, contributory, and vicarious infringement claims. Summary judgment for KVD, Inc. should be granted.

### 4. DEFENDANTS SHOULD PREVAIL ON THE SECTION 1202 CLAIM.

Plaintiff in essence admits he has produced no evidence to support his Section 1202 claim, but complains that Defendants failed to produce native electronic files that would somehow prove his case. Plaintiff's recitation of the "facts" in this regard is inaccurate. *See* 4/4 Metzidis Reply Decl. But it doesn't matter anyway.

If Plaintiff was dissatisfied with Defendants' response to his discovery requests, then Plaintiff needed to file a timely motion to compel, which he never did. *Id.* ¶ 12. And if his argument is that he needs more discovery to oppose this motion, the only way to get that discovery is to file a motion under current Rule 56(d), which Plaintiff did not do. *United States v. Kitsap Phys. Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002) ("A Rule 56(f) motion must be brought before the summary judgment hearing"). And even if he had brought such a motion, it would be denied because the discovery cutoff has long passed. *Hernandez v. City of Los Angeles*, 2021 WL 4497210, at *1 (C.D. Cal. July 9, 2021) ("Plaintiff cannot now use Rule 56(d) to obtain discovery when the deadline has passed and delay and

disrupt the summary judgment proceedings").

As to the falsification claim, it is objectively unreasonable to conclude that anything in the social media posts suggested that Kat proclaimed herself to be the author of the "Silence" Photograph. No reasonable jury could conclude that.

Therefore, Plaintiff has failed to offer any evidence of removal or falsification of CMI. Defendants' motion as to Section 1202 should be granted.

## 5. **PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PUTTING ON EVIDENCE OF ACTUAL DAMAGES OR PROFITS.**

A court can appropriately grant summary judgment when the Plaintiff "'fail[s] to introduce any evidence of damages,' where damages are an essential element of the claim." *Lumens Co. v. GoEco LED LLC*, 2018 WL 1942768, at *5 (C.D. Cal. Jan. 3, 2018) (quotations omitted). The same is true where Plaintiff "'has no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages.'" *Id.* at *5 (quotations omitted).

### A. **Plaintiff Failed to Produce Evidence of Gross Revenues and Cannot Recover Damages Based on Defendants' Profits.**

To recover Defendants' profits, it is Plaintiff's burden to introduce evidence of Defendants' "gross revenue from the infringing product." *Oracle Am., Inc. v. Google, Inc.*, 131 F. Supp. 3d 946, 949 (N.D. Cal. 2015). There is no dispute that Plaintiff provided no evidence of such gross revenues. Rather, Plaintiff argues that he should be given a pass because he asked for damage information in discovery and Defendants "refused to produce" it. Dkt. 50 at 22:17-26. To the contrary, Plaintiff asked in discovery only for documents reflecting monetary payment relating to publication of the tattoo in social media, and Defendants responded that *they had no such documents*. Dkt. 50-20 at 5 (Resp. to RFP 21).

Plaintiff also argues that he *could* ask Defendant about revenues at trial. Dkt. 50 at 23:10-16. That is not how this process works. This motion was Plaintiff's time to provide evidence of Defendants' revenues. He clearly did not,

-15-

and summary judgment on his claim for Defendants' profits should obtain.

### B. Plaintiff Failed to Produce Evidence of Actual Damages.

As noted in the moving papers, a Plaintiff who wishes to recover actual damages must prove "the extent to which infringement has injured or destroyed the market value of the copyrighted work at the time of infringement" or the fair market value of a license for the actual use made by the alleged infringer. *See Hendricks v. DreamWorks, LLC*, 2007 WL 9705916, at *2 (C.D. Cal. Nov. 20, 2007); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087-88 (9th Cir. 2014).

Plaintiff does not dispute that he has no evidence of a decrease in market value of the "Silence" Photograph or evidence that anybody didn't buy a copy of the Photograph because of the tattoo. UFs 153-56 (Dkt. 50-2 at 68-69). Rather, Plaintiff's only "evidence" of actual damages is his own self-serving "expert" testimony that the tattoo "will, if permitted, influence other tattooers to make unlicensed use of photographs, disrupting and usurping an existing market for the licensing of rights for artist reference" and "usurps the market for visual art licenses for artist reference." *See* Resp. to UF 157 (Dkt. 50-2 at 70). That testimony – even were it deemed admissible and not wild speculation out of the realm of Plaintiff's expertise – does not in any way establish that he has been actually damaged. Nor does it provide any basis for calculating those damages.

Plaintiff thus cannot prove actual damages. *See Leegin Creative Leather Prod., Inc. v. Belts by Nadim, Inc.*, 316 F. App'x 573, 575 (9th Cir. 2009) (affirming grant of summary judgment on issue of actual damages and noting that "mere speculation does not suffice to link the losses to the infringement") (quoting *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004)).

### 6. CONCLUSION

Defendants' motion for summary judgment should be granted in full.

| | | |
|---|---|---|
| Dated: April 4, 2022 | | Respectfully submitted, |
| | | GRODSKY, OLECKI & PURITSKY LLP
Allen B. Grodsky
John J. Metzidis |
| | | By: /s/ Allen B. Grodsky
Allen B. Grodsky |
| | | Attorneys for Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc. |