UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY B. SEDLIK,<br>    Plaintiff,<br><br>       v.<br><br>KATHERINE VON DRACHENBERG, et al.,<br>    Defendants. | CV 21-1102 DSF (MRWx)<br><br>Order GRANTING in Part and DENYING in Part Motion to Exclude (Dkt. 34) |

Plaintiff Jeffrey Sedlik moves to exclude the experts designated by Defendants Katherine Von Drachenberg (Kat Von D), Kat Von D, Inc. (KVD, Inc.), and High Voltage Tattoo, Inc. (High Voltage). Dkt. 34 (Mot.). Defendants oppose. Dkt. 44 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Sedlik's motion to exclude is GRANTED in part and DENIED in part.

## I. LEGAL STANDARD

District courts act as the gatekeeper for expert testimony by applying Rule 702 to ensure evidence is both relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (Daubert imposed a special "gatekeeping obligation" on trial judges for all expert testimony). An expert witness may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010) (quoting United States v. Sandoval-Mendoza, 472 F.3d 645, 654 (9th Cir. 2006)). "Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." Moses v. Payne, 555 F.3d 742, 756 (9th Cir. 2009). "[T]he basic function of expert testimony [is] to help the trier of fact understand highly specialized issues that are not within common experience." Elosu v. Middlefork Ranch Inc., 26 F.4th 1017, 1026 (9th Cir. 2022). There must be "at least [a] minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony" on the relevant topic. Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994) (emphasis added).

Assessing an expert's reliability is a "fact-specific inquiry" that depends on "the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000); see also Kumho Tire, 526 U.S. at 150 ("[T]he relevant reliability concerns may focus upon personal knowledge or experience" of the expert). The proponent of the expert carries the burden of proving admissibility. United States v. 87.98 Acres of Land More or Less in the Cnty. of Merced, 530 F.3d 899, 904 (9th Cir. 2008). "Although a district court may screen an expert opinion for reliability, and may reject testimony that is wholly speculative, it may not weigh the expert's conclusions or assume a factfinding role." Elosu, 26 F.4th at 1020.

## II. DISCUSSION

Sedlik moves to exclude the testimony and reports of Defendant's designated experts Anna Friedman, David Lane, and Catherine Montie. Mot. at 2.

A.  Friedman

Sedlik challenges the opinions in Friedman's expert report for various reasons. The Court discusses them in turn.

   1.   Friedman's Qualifications to Opine on Differences Between the Works

First, Sedlik argues that Friedman is not qualified to offer an opinion on the differences between the Portrait and the Tattoo because, while she is a scholar and professor of art history with a specialization in tattoo history and culture, there is "no evidence that she has ever received any training in the comparative analysis of photographs and tattoos, any education or training in forensic photographic analysis, nor that Dr. Friedman has any 'specialized knowledge' of any kind" that makes her more qualified than a member of the jury to compare the Portrait and the Tattoo. Mot. at 6, 9.

Friedman is a "scholar and professor of art history and the history of culture with a specialization in tattoo history and culture," a subject she has studied for more than 30 years. Dkt. 34-2 (Friedman Report) at 1. Friedman has a Ph.D. from the University of Chicago in the History of Culture, and a master's degree in Art History, Theory, and Criticism from the School of the Art Institute of Chicago. Id. She describes herself as "one of the world's foremost experts on tattooing." Id. In deposition, Friedman testified that she is qualified to offer an opinion comparing a photograph with a tattoo because of her prior graduate coursework in comparative analysis of photographs to other forms of art, her prior work history teaching college-level classes in which she analyzed photographs, and other publications and lectures in which she has compared photographs to tattoos. Dkt. 44-2 (Friedman Dep.) 31:3-35:12. While this testimony and her report demonstrate

3

Friedman is qualified to offer an opinion regarding the history and culture of tattoos or the tattoo industry, those opinions are not relevant. For the reasons explained below, the Court also finds Defendants have failed to establish Friedman has specialized knowledge that makes her qualified to compare photographs and tattoos.

Sedlik argues Friedman has failed to establish specialized knowledge regarding photographs or comparison of photographs and tattoos because the Friedman Report does not contain a complete statement of her opinions and the reasons for them and Friedman's qualifications. Dkt. 54 (Reply) at 2-3; Fed. R. Civ. P. 26(a)(2)(B). While the Friedman Report complies with the basic requirements of Rule 26 to the extent that it sets out Friedman's opinions and her qualifications, the Court agrees with Sedlik that none of Friedman's qualifications relevant to such an analysis were included in her Report. Nor did she describe specific credentials, qualifications (other than having spoken and written about the topic), or an accepted methodology for the comparison that requires some type of expertise.

Additionally, even to the extent Friedman's comparison of the two works is based on her expertise in the area of tattoos rather than photographs or a comparative analysis of both forms of art, her analysis is based on details that are not helpful to the jury. Friedman described at length the techniques used to achieve the purported differences between the Tattoo and the Portrait, Friedman Report at 10-13, but the description of how the Tattoo was inked is not relevant to whether Kat Von D copied the Portrait. For example, Friedman opines:

> The way highlights and shadows are created in a tattooed image is very different from the way they are created in a photograph. Rather than lighting, sunlight, time of day, etc. creating highlights and shadows, they are created through a drawing/painting technique of chiaroscuro that has been adapted to tattooing using a variation of the amount of black pigment rendered into the skin.

4

Id. at 10. The remainder of Friedman's analysis consists of a description of the differences between the two works that a jury would also be able to observe in comparing the Portrait and the Tattoo. See, e.g., id. at 10 ("Position and shape of shadows are different–they are not rendered exactly as in the photograph; there are also shadows in places where the original photograph does not have shadows (for example the fingers are shadowed in Ms. von D's version)"). Defendants have not met their burden of establishing that Friedman is qualified to opine on the differences between the Tattoo and the Portrait or that it would be helpful to the jury.

    2.    Friedman's Methodology

Sedlik also argues that the Court should exclude Friedman because there is no evidence that she has viewed the actual tattoo, and because her report did not describe efforts to obtain accurate photographs of the Tattoo. Mot. at 6. Instead, Friedman based her analysis on the photographed images of the Tattoo that appeared in Defendants' social media posts, which Sedlik argues may have altered the appearance of the Tattoo in various ways. Id. at 7. Sedlik spills much ink describing the ways in which the Tattoo may have been altered via the process of photographing it for Defendants' social media posts, or that the Portrait appeared differently in the digital copy viewed by Friedman than it does in the original due to "[v]ariations in the digital scanning process." Id. at 10-11. But even if Friedman established a proper methodology, the Court finds Friedman's comparison of the Portrait and the Tattoo is not helpful to the jury's consideration of the two works and is therefore inadmissible. In any event, it is clear that both Sedlik and Kat Von D will testify as to the similarities and differences between the two works, and Friedman's testimony would be needlessly cumulative. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

5

### 3. Subjective Purpose of Tattoos

Next, Sedlik argues Friedman's testimony that Farmer's tattoo "is a form of personal expression that the client sought to have inscribed on their body" should be excluded because it is "bare, unsupported speculation." Mot. at 13. But this fact is not reasonably in dispute. What is in dispute is whether this fact has legal significance. Friedman cannot address this fact and the Court will instruct the jury on the law. Additionally, that tattoos are a form of personal expression is a matter of common knowledge, and is therefore not admissible as expert testimony because it is not helpful to the jury. See Moses, 555 F.3d at 756.

### 4. Tattoos Based on Famous Photographs

Finally, Sedlik argues the Court should exclude Friedman's testimony about examples of tattooists who have made tattoos based on other famous photographs because (1) she does not know whether the photographers of the depicted images filed copyright infringement lawsuits or otherwise claimed infringement; and (2) the examples "mislead the jury by falsely implying that tattooists are (or should be) exempt from federal law, and more specifically, copyright law." Mot. at 14. The Court finds Friedman's testimony about tattoos based on other famous photographs is not relevant or helpful to the jury and is also likely to mislead the jury that such tattoos were not made in violation of copyright law.

## B. Lane

First, Sedlik moves to exclude Lane's opinions that tattoos inherently have distinct meanings that are both personal and contextual and the process of tattooing requires artistic skills and techniques different from photography, on the grounds that they do not require expert opinion and are not helpful to the jury. Id. at 15-16. Defendants do not appear to disagree. Opp'n at 23 ("Plaintiff appears to concede that these 'two opinions are plainly obvious' and 'do not require expert opinion.' That might even be so."). The Court agrees that these two opinions do not require an expert, are a matter of lay

knowledge, and are therefore inadmissible. Moreover, as the Court explained in its summary judgment order, the personal meaning that Farmer may ascribe to his tattoo of Miles Davis is irrelevant, so any expert testimony regarding subjective meaning of a tattoo to its wearer is also irrelevant. See dkt. 69 at 20.

Sedlik challenges portions of the Lane Report as containing irrelevant information drawn from other of Lane's prior publications – specifically, Lane's discussion of tattoos related to traumatic events, the different meanings associated with various symbols not at issue here or relevant to an infringement action, and the "shunning" by tattooists of other tattooists who copy others' tattoos. See Mot. at 16-17. the Court agrees with Sedlik that this information is irrelevant and therefore inadmissible.

Sedlik also moves to exclude Lane's opinions regarding the absence of a custom of seeking a license for source materials in the tattoo industry, that the use of reference materials that are copyrighted or copyrightable is commonplace among tattooists, and that the tattoo industry has its own norms regarding unauthorized copying of tattoos. Id. at 15, 18-19. As the Court explained in its summary judgment order with respect to the fourth prong of the fair use analysis, it will exclude expert opinions in this action that argue tattoo artists should be able to commit what would otherwise be copyright violations merely because it is the custom or practice of the tattoo industry. Dkt. 69 at 24 n.4. The Court excludes Lane's opinions to the extent they pertain to the fourth prong of the fair use analysis.

Defendants argue that even if these opinions regarding the practices and customs of the tattoo industry are inadmissible with respect to the fourth prong of the fair use analysis, they are relevant to determining willfulness. Opp'n at 21. Section 504(c)(2) of the Copyright Act provides for an increased award of statutory damages if the infringement was committed willfully. 17 U.S.C. § 504(c)(2). A finding of willfulness by the trier of fact must be supported by "substantial evidence (1) that the infringing party was actually aware of the infringing activity, or (2) that the infringing party's actions were

the result of reckless disregard for, or willful blindness to, the copyright holder's rights." VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 748 (9th Cir. 2019) (simplified) (vacating jury's finding of willfulness because there was no evidence defendant was "actually aware" of its infringing activity); Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980, 992 (9th Cir. 2017) (jury's finding of willfulness could be based on actual knowledge, or "a showing of recklessness or willful blindness"). The Court finds the opinions above are relevant to determining willfulness and are admissible for that limited purpose only.

C. Montie

Sedlik contends the Court should exclude Catherine Montie's opinions that "there is currently and historically no market in the tattoo industry for licensing copyrighted materials or trademarked materials to be used as tattoos" and that "licensing of such material is not done in the tattoo industry, and traditionally, in the past it has not been done." Mot. at 19; see also dkt. 34-5 (Montie Report).

Sedlik argues Montie is not qualified as an expert on licensing or what is "done" in the tattoo industry. Id. The Court disagrees. Montie states that she has been "intimately involved in every aspect of the body art industry" for "close to a half century." Montie Report at 1. Montie also currently owns two tattoo businesses and has worked in various tattoo shops since 1975. Id. at 7. Montie is sufficiently qualified as an expert on what is common practice in the tattoo industry.

Sedlik also argues that Montie's testimony that tattooists have and continue to copy other artists' work is "both irrelevant and dangerously misleading to the jury." Mot. at 20. For the reasons explained above with respect to Lane, the Court finds Montie's opinions about the customs and practices of the tattoo industry are admissible for the purpose of establishing lack of willfulness but not for any other purpose – including the fourth factor of the fair use analysis. However, because her opinions are duplicative of Lane's opinions on the same subject, the Court will exercise its discretion to exclude either Lane's or

8

Montie's testimony because it likely would waste time and be needlessly cumulative.

### III. CONCLUSION

The Court GRANTS in part and DENIES in part Sedlik's motion to exclude Defendants' experts.

IT IS SO ORDERED.

Date:  June 27, 2022

                                           Dale S. Fischer
                                           United States District Judge