GRODSKY, OLECKI & PURITSKY LLP
Allen B. Grodsky (SBN 111064)
allen@thegolawfirm.com
John J. Metzidis (SBN 259464)
john@thegolawfirm.com
11111 Santa Monica Boulevard, Suite 1070
Los Angeles, California 90025
Telephone: (310) 315-3009
Facsimile: (310) 315-1557

Attorneys for Defendants
Katherine Von Drachenberg, Kat Von D, Inc.,
and High Voltage Tattoo, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JEFFREY B. SEDLIK, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-01102-DSF-MRWx<br><br>Before the Hon. Dale S. Fischer, U.S. District Judge<br><br>**DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT TESTIMONY FROM PLAINTIFF JEFFREY B. SEDLIK**<br><br>Final Pretrial Conference:<br>Date: November 14, 2022<br>Time: 1:30 p.m.<br>Place: Courtroom 7D<br>       First Street Courthouse<br>       350 West 1st Street<br>       Los Angeles, CA 90012<br><br>Action filed: February 7, 2021<br>Trial: December 13, 2022 |

## **TABLE OF CONTENTS**

1. INTRODUCTION ........................................................................................... 5
2. RELEVANT FACTS AND PROCEDURAL HISTORY ............................. 6
3. LEGAL STANDARD .................................................................................... 6
   A. Federal Rule of Evidence 702 ............................................................. 6
   B. Inherent Authority to Disqualify Purported Experts ........................... 8
4. PLAINTIFF JEFFREY SEDLIK CANNOT SERVE AS HIS OWN EXPERT ........................................................................................ 8
5. EACH PORTION OF SEDLIK'S "REBUTTAL" REPORT SHOULD BE EXCLUDED ........................................................................................... 11
   A. Sections V.A and V.F are Now Immaterial as a Result of the Court's Order Excluding Defendants' Experts ............................ 11
   B. Sections V.B and V.C are Not "Rebuttal" Testimony at All, and are Irrelevant ................................................................................ 12
   C. Section V.D Does Not Discuss the Relevant Market or Pertinent Inquiry, is Not Rebuttal, and Lacks Proper Expert Foundation ........ 14
   D. Section V.E Also Does Not Discuss the Relevant Market or Pertinent Inquiry, and Lacks Proper Expert Foundation .................... 15
   E. Various Portions of Sedlik's Report Also Give Improper Testimony About the Law ................................................................... 16
6. SEDLIK IS NOT QUALIFIED TO TESTIFY ABOUT THE RELEVANT INDUSTRY .............................................................................. 17
7. CONCLUSION .............................................................................................. 18

# **TABLE OF AUTHORITIES**

**Cases:** **Pages**:

*Brittney Gobble Photography, LLC v. Sinclair Broadcast Group, Inc.*,
  2021 WL 5359671 (D. Md. Nov. 17, 2021) ................................................... 17

*Campbell Indus. v. M/V Gemini*,
  619 F.2d 24 (9th Cir. 1980) ............................................................................ 8

*Elosu v. Middlefork Ranch Inc.*,
  26 F.4th 1017 (9th Cir. 2022) ..................................................................... 7, 8

*English Feedlot, Inc. v. Norden Labs., Inc.*,
  833 F. Supp. 1498 (D. Colo. 1993) ................................................................ 8

*Hewlett-Packard Co. v. EMC Corp.*,
  330 F. Supp. 2d 1087 (N.D. Cal. 2004) ......................................................... 8

*Koch Ref. Co. v. Jennifer L. Boudreau M/V*,
  85 F.3d 1178 (5th Cir. 1996) .......................................................................... 8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .................................................................................. 6, 7

*Masterson Marketing, Inc. v. KSL Recreation Corp.*,
  495 F. Supp. 2d 1044 (S.D.Cal.2007) .......................................................... 10

*Moses v. Payne*,
  555 F.3d 742 (9th Cir. 2009) .......................................................................... 7

*Nationwide Transp. Fin. v. Cass Info. Sys.*,
  523 F.3d 1051 (9th Cir. 2008) ...................................................................... 16

*Navarro v. Procter & Gamble Co.*,
  2021 WL 868586 (S.D. Ohio Mar. 8, 2021) ................................................ 17

*Ouimet v. USAA Casualty Ins. Co.*,
  2004 WL 5865274 (C.D. Cal. July 14, 2004) ................................................ 9

*Perfect 10, Inc. v. Giganews, Inc.*,
  2014 WL 10894452 (C.D. Cal. Oct. 31, 2014) ............................... 5, 9, 10, 11

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) .............................................................. 7, 14, 15

*Ross v. Am. Red Cross*,
  567 Fed. Appx. 296 (6th Cir.2014) ................................................................ 8

*Straughter v. Raymond*,
  2011 WL 1789987 (C.D. Cal. May 9, 2011) ............................................ 9, 10

*Tagatz v. Marquette University*,
  861 F. 2d 1040 (7th Cir. 1988) ..................................................................... 10

# TABLE OF AUTHORITIES
(Continued)

*Thomas v. Newton Int'l Enters.*,
  42 F.3d 1266 (9th Cir. 1994) .................................................................................. 7

*United States v. 87.98 Acres of Land More or Less in the Cnty. of Merced*,
  530 F.3d 899 (9th Cir. 2008) .................................................................................. 7

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) ................................................................................ 7

*United States v. Sandoval-Mendoza*,
  472 F.3d 645 (9th Cir. 2006) .................................................................................. 7

**Statutes:**

17 U.S.C. § 107(1) .................................................................................................... 16

**Rules:**

Fed. R. Evid. 702 ........................................................................................... 6, 7, 8, 15

1. **INTRODUCTION**

The Court should grant this motion and preclude the Plaintiff, Jeffrey B. Sedlik, from testifying as a "rebuttal" expert witness in his own case. Mr. Sedlik is both a professional photographer and a professional expert witness, having served as an expert in scores of copyright cases. While he is obviously allowed to testify as a party to facts within his percipient knowledge, he should not be permitted to testify under the imprimatur of an "expert" in this case for multiple reasons:

- Under their inherent authority to protect the integrity of the adversary process, courts exclude parties from testifying as experts in their own cases for the same reasons that courts exclude retained experts who are being paid on contingency or who otherwise have a direct financial interest in the outcome of the case. *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 10894452 (C.D. Cal. Oct. 31, 2014).
- Mr. Sedlik disclosed no initial experts, and only disclosed himself as a "rebuttal" expert. Nearly everything in Mr. Sedlik's "rebuttal" report is improper – either because it is not true "rebuttal" testimony at all; it's no longer material due to this Court's prior order excluding Defendants' experts (6/27/22 Order, Dkt. 71); it lacks proper expert foundation; or it's otherwise improper legal conclusion.
- Mr. Sedlik has no basis to testify about the customs and practices of the relevant industry here, which is the **tattoo profession** and whether there is a market **among tattoo artists** for licensing copyrighted materials to be used as references to create tattoos.

For all these reasons, the Court should preclude Mr. Sedlik from testifying as an expert in his own case.

## 2. RELEVANT FACTS AND PROCEDURAL HISTORY

This Court's Order Re Jury Trial set January 25, 2022 as the deadline to exchange initial expert disclosures, and February 8, 2022 as the deadline to exchange rebuttal expert disclosures. Dkt. 19 at 1. Defendants disclosed three experts – Dr. Anna Felicity Friedman, Prof. David C. Lane, and Ms. Catherine Montie – as their initial experts and served their expert reports on the deadline. Metzidis Decl. ¶ 6. Plaintiff disclosed no experts as initial experts. *Id.* ¶ 7 & Ex. 5 (Gary Sedlik email).

On the February 8 deadline for disclosing rebuttal experts, Plaintiff Jeffrey Sedlik disclosed himself as his own "rebuttal expert," and served a report entitled "Rebuttal Expert Report of Professor Jeffrey Sedlik." Ex. 1; Metzidis Decl. ¶ 8.[1]

On June 27, 2022, this Court issued an order granting in part and denying in part Plaintiffs' motion to exclude all three of Defendants' experts. Dkt. 71. The Court ruled that only one of Defendants' experts – either Prof. Lane or Ms. Montie – may testify as to the customs and practices of the tattoo industry, and only for the limited purpose of establishing lack of willfulness of the alleged infringement. Dkt. 71 at 8-9.

## 3. LEGAL STANDARD

### A. Federal Rule of Evidence 702

District courts act as the gatekeeper for expert testimony by applying FRE 702 to ensure evidence is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (*Daubert* imposed a special "gatekeeping obligation" on trial judges for all expert testimony). An expert witness may testify if:

---

[1] Although Sedlik designated his report "Confidential," he later filed it on the public docket multiple times in connection with the parties' summary judgment motions. *See* Dkts. 37-9, 45-5, and 50-5.

      (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

      (b)    the testimony is based on sufficient facts or data;

      (c)    the testimony is the product of reliable principles and methods; and

      (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)). "Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009). "[T]he basic function of expert testimony [is] to help the trier of fact understand highly specialized issues that are not within common experience." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022). There must be "at least [a] minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony" on the relevant topic. *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (emphasis added).

      Assessing an expert's reliability is a "fact-specific inquiry" that depends on "the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Kumho Tire, 526 U.S. at 150 ("[T]he relevant reliability concerns may focus upon personal knowledge or experience" of the expert). The proponent of the expert carries the burden of proving admissibility. *United States v. 87.98 Acres of Land More or Less in the Cnty. of Merced*, 530 F.3d 899, 904 (9th Cir. 2008). "Although a district court may screen an expert opinion for reliability, and may reject

testimony that is wholly speculative, it may not weigh the expert's conclusions or assume a factfinding role." *Elosu*, 26 F.4th at 1020.

### B. Inherent Authority to Disqualify Purported Experts

"A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980). Encompassed within that discretion is "the **inherent power** to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (emphasis added); *accord Campbell Indus.*, 619 F.3d at 27 (holding district court had "inherent power to exclude [expert's] testimony"); *Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996) ("Federal courts have the inherent power to disqualify experts"); *see also Ross v. Am. Red Cross*, 567 Fed. Appx. 296, 304 (6th Cir.2014) (same).

Although courts reserve the power to disqualify an expert for rare or extreme cases, courts will exercise it to achieve important "policy objectives . . . includ[ing] preventing conflicts of interest and maintaining the integrity of the judicial process." *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1504 (D. Colo. 1993); *accord Koch Ref. Co.*, 85 F.3d at 1183 (same).

## 4. PLAINTIFF JEFFREY SEDLIK CANNOT SERVE AS HIS OWN EXPERT.

Parties should not serve as expert witnesses in their own cases. This is a corollary of the policy that prohibits experts from testifying in cases where their compensation is contingent on the outcome of the case.

"In addition to the standards" embodied in FRE 702, "the majority of courts, including the Courts of this district, have 'held that testimony of expert witnesses

whose compensation is contingent upon the outcome of the case must be excluded.'" *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31, 2014) (collecting cases); *cf. Straughter v. Raymond*, 2011 WL 1789987, at *2-3 (C.D. Cal. May 9, 2011) (reviewing cases and concluding "the better course of action is to exclude the testimony of expert witnesses in civil cases whose compensation is contingent on the outcome of the case"); *Ouimet v. USAA Casualty Ins. Co.*, 2004 WL 5865274, at *2 (C.D. Cal. July 14, 2004) (proposed expert excluded on the additional grounds that "her compensation under the contingency fee agreement depends upon the outcome of the case").

A consequence of this policy is that a party cannot serve as an expert witnesses in their own case: they, too, would have a direct financial interest in the outcome of the case. This is what happened in *Giganews*. The plaintiff was a corporate entity (Perfect 10, Inc.) whose sole shareholder and owner was Dr. Norman Zada. 2014 WL 10894452, at *1. While Perfect 10, Inc. was no stranger to copyright litigation, it chose to designate Dr. Zada as its expert witness.

The Court exercised its "inherent authority" to exclude Dr. Zada's expert testimony; it found he had an "overwhelming conflict of interest by way of his direct financial stake in the outcome of [the] litigation." *Id.* at *1. The Court explained: "While experts are almost universally compensated for their opinion, public policy has long made a distinction between paid experts who have an ***indirect incentive*** to win the approval of their employers (the client and attorneys) on the one hand, and experts who have a ***direct financial stake*** in the outcome of the litigation on the other." *Giganews*, 2014 WL 10894452, at *4. The Court elaborated on this distinction:

> [C]ourts of this country draw a line where the expert's incentive structure crosses the threshold from an ***indirect incentive*** to reach a certain conclusion to a ***direct financial interest*** in doing so. Once the expert obtains a direct

>financial interest in the outcome of the litigation (whether by his or her status as a party, by contingency fee agreement, or otherwise), any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded. Under those rare circumstances, the conflict of interest is so great, and raises so many "serious questions about the integrity of [the witnesses'] expert testimony," that to admit the conflicted testimony would violate public policy.

*Giganews*, 2014 WL 10894452, at *4 (quoting *Straughter*, 2011 WL 1789987, at *3). The Court also considered and persuasively rejected the rationales of other decisions that permitted parties to testify as experts in their own cases. *Id.* at *5 (discussing and rejecting *Tagatz v. Marquette University*, 861 F. 2d 1040 (7th Cir. 1988) and *Masterson Marketing, Inc. v. KSL Recreation Corp.*, 495 F. Supp. 2d 1044 (S.D.Cal.2007)).

There were also other reasons for skepticism about Dr. Zada's qualifications as an expert. *Giganews*, 2014 WL 10894452 at *6. But "[o]n balance," the Court ruled that "the strong policies in favor of preventing conflicts of interest, maintaining the integrity of the courts, and preserving public confidence in the outcomes of the adversarial process ***far outweigh*** any policies in favor of permitting Dr. Zada to offer his two remaining expert opinions." *Id.* (emphasis added).

Here, Mr. Sedlik is in an even worse position than Dr. Zada: he's not just the sole shareholder or owner of the plaintiff – he is the Plaintiff himself. Mr. Sedlik's expert report tacitly acknowledges the problem of his direct financial interest in the litigation outcome. In the "Compensation" section he writes that his "work as a

rebuttal expert in the Matter is uncompensated," but also states, "I am also the Plaintiff in the Matter." Ex. 1 at 8.[2]

Mr. Sedlik cannot be permitted to testify under the cloak of an "expert" when he has a direct financial interest in the lawsuit's outcome. This Court must protect the integrity of the judicial process and exercise its inherent authority to exclude Mr. Sedlik from testifying as an expert. This exclusion will do so without burdening Mr. Sedlik's ability to offer ***percipient*** testimony in his case, and without otherwise damaging his ability "to pursue [his] professional calling" as a paid expert witness for his other clients. *Giganews*, 2014 WL 10894452, at *6. Like Dr. Zada in *Giganews*, Mr. Sedlik here "may, of course, testify in his capacity as a fact witness to his percipient observations to the extent they are relevant and otherwise admissible. But that is all." *Id*.

### 5. EACH PORTION OF SEDLIK'S "REBUTTAL" REPORT SHOULD BE EXCLUDED.

Mr. Sedlik's "rebuttal" expert report contains six main substantive sections: Sections V.A through V.F. Ex. 1 at 9-33. Each of these sections suffers from defects and should be excluded.

#### A. Sections V.A and V.F are Now Immaterial as a Result of the Court's Order Excluding Defendants' Experts.

Section V.A of Mr. Sedlik's rebuttal report, Ex. 1 at 9-16, is under the heading, "Defendants' Experts Focus on Dissimilarity is Misplaced." This section attempts to respond to the portions of the report from Defendants' tattoo art history expert, Dr. Anna Felicity Friedman, who opined on a number of artistically meaningful differences between the Plaintiff's "Silence" photograph and the accused tattoo. *See* Friedman Report (Dkt. 35-33) at 9-13. But this Court's June 27, 2022 order on Plaintiff's motion to exclude Defendants' experts has since

---

[2] Page citations to the Sedlik report are to Mr. Sedlik's internal pagination,

barred Dr. Friedman from testifying about comparative differences between the photograph and the tattoo. Dkt. 71 at 3-5. Among other things, the Court ruled that Dr. Friedman's comparison testimony "is not helpful to the jury's consideration of the two works," and that "[i]n any event, it is clear that both Sedlik and Kat Von D will testify as to the similarities and differences between two works." *Id.* at 5.

Since Dr. Friedman's expert testimony on this issue is no longer permitted, Mr. Sedlik should not be permitted to offer "expert" testimony on this issue as well – both as a matter of fairness, and as a result of there being no expert testimony remaining for him to "rebut." Consistent with the Court's order, Mr. Sedlik can give his percipient testimony "as to the similarities and differences between the two works, Dkt. 71 at 5, but he should not be permitted to testify with the imprimatur of an "expert."

Section V.F of Mr. Sedlik's rebuttal report, Ex. 1 at 33, is under the heading, "Defendants Experts Incorrectly Suggest that 'Shunning' is an Appropriate Substitute for Copyright Law." This section of Mr. Sedlik's report **grossly mischaracterizes** a portion of the of the report from Defendants' tattoo sociology expert, Prof. David Lane, who opined on current and historical customs and practices within the tattoo profession. Within this discussion, he mentioned the practice of "shunning" among tattoo artists. *See* Lane Report (Dkt. 35-13) at 25-27. But this Court's June 27 order has since precluded Prof. Lane from testifying about the practice of "shunning." Dkt. 71 at 7.

Given that Prof. Lane will not be testifying at trial about "shunning," Mr. Sedlik should be precluded from offering any expert "rebuttal" testimony on this topic as well.

    **B.**    **<u>Sections V.B and V.C are Not "Rebuttal" Testimony at All, and are Irrelevant.</u>**

Section V.B (Ex. 1 at 16-20) and Section V.C (Ex. 1 at 20-25) both **purport** to rebut opinions expressed by Defendants experts, but the reality is that they do

nothing of the sort. These sections are really just attempts to sneak in expert testimony from Mr. Sedlik as "rebuttal" testimony.

Section V.B is titled, "Defendants' Experts' Opinions Ignore Market Usurpation." Ex. 1 at 16. It begins with Mr. Sedlik stating he "disagrees" with Defendants' experts' purported opinion "that tattooers need not acquire a license to create derivative works based on photographs" – an opinion that Defendants' experts **do not express**.[3] Then Mr. Sedlik goes on a long explanation of how visual artists license their work in both primary and derivative markets, and elaborates on the myriad "monetization opportunities" that attach to an "Image." *Id.* at 17-20.

None of this is proper "rebuttal" testimony to any of the opinions expressed by Dr. Friedman, Prof. Lane, or Ms. Montie. Nor is any of it even relevant, especially after the Court's order precluding most of Defendants' experts' testimony. Dkt. 71. Indeed, Mr. Sedlik appears to have **copied and recycled** most of Section V.B from a portion of a **prior expert report** he submitted in the *Andy Warhol Foundation v. Goldsmith* litigation in the Southern District of New York. *Compare* Ex. 1 at 16-20 (§ V.B of Sedlik's rebuttal report here) *with* Ex. 2 at 17-19 (§ VI.B of Sedlik's preliminary report in *Warhol*, entitled "Exploitation of Derivatives and Derivative Markets in Photography"); *see also* Ex. 3 (redline of these two sections).[4]

The same is true of Section V.C, entitled "Defendants' Experts Ignore the Practices and Models Employed in the Visual Art Copyright Licensing Industry."

---

[3] Again, Sedlik is misrepresenting Defendants' experts opinions. Whether such a license is "needed" or "required" is a **legal conclusion** – indeed, **the** legal conclusion that will be adjudicated at trial. Defendants' experts did not purport to testify on what the law requires. Rather, they testified about facts within their expertise that are relevant for the Court and the jury to reach a conclusion about whether a license was or was not required.

[4] Even more telling, Sedlik's prior expert report in *Warhol* does **not** identify "tattoos" as one of the myriad potential licensing opportunities in the derivative market for a photograph. *Compare* Ex. 2 at 17-18 *with* Ex. 1 at 17-18. This is all the more striking, given that Sedlik's report in *Warhol* is dated May 3, 2018. Ex. 2 at 32. This date is **after** the February 2018 date on which Sedlik claims he discovered Kat Von D's allegedly infringing tattoo.

1  Ex. 1 at 20-25.  While Mr. Sedlik describes this section as stating opinions that are
2  "contrary to Defendants experts' opinions," *id.* at 20, it does nothing of the sort.
3  Instead, Mr. Sedlik again goes on another long exposition of the different types of
4  licensing models used in the visual arts licensing market.

5       None of this is proper "rebuttal," and none of this is even relevant to the
6  issues in the case.  And like Section V.B, Section V.C. also appears to be ***copied***
7  ***and recycled*** from the previous expert report Mr. Sedlik submitted in *Warhol v.*
8  *Goldsmith*.  *Compare* Ex. 1 at 20-25 (§ V.C of Sedlik's rebuttal report here) with
9  Ex. 2 at 20-23 (§ VI.C of Sedlik's preliminary report in *Warhol*, entitled "General
10 Background Regarding Image Copyright Licensing"); *see also* Ex. 4 (redline of
11 these two sections).

12      **C.**    **Section V.D Does Not Discuss the Relevant Market or Pertinent**
13              **Inquiry, is Not Rebuttal, and Lacks Proper Expert Foundation.**

14      Section V.D (Ex. 1 at 25-29), is titled, "Defendants and Their Experts
15 Incorrectly Imply that Copyright Owners Do Not Require Licenses for Use of Their
16 Works as the Basis for Tattoos."  Mr. Sedlik opines that "copyright owners and
17 their authorized licensors ***expect and require*** that artists (in any and all genres) seek
18 and obtain a license prior to creating derivative works based on a photograph or
19 illustration."  *Id.* at 25 (emphasis added).  He then uses this section of his expert
20 report to attempt to introduce hearsay email communications from various
21 photographers.

22      None of this expert testimony concerns the relevant market or the "pertinent
23 inquiry."  *Cf. Primiano*, 598 F.3d at 565.  Nor is it proper rebuttal testimony.  The
24 relevant market is ***not*** the "visual arts licensing industry" generally.  Rather, the
25 relevant market is the specific market ***within the tattoo profession*** for licensing
26 photographs and other IP-protected material to be used as references to create
27 tattoos (if such a market even exists).  And the pertinent inquiry is ***not*** whether
28 various photographers "would require" or "would expect" tattoo artists to obtain

licenses to use their photographs as references.  Rather, the pertinent inquiry is whether these photographers ***ever entered into licenses with tattoo artists*** to use their photographs as artist references for tattoos.  Indeed, it is telling that none of the hearsay email communications that Mr. Sedlik attaches in Exhibit C to his report indicate that any of these photographers have ***ever*** licensed their photographs to tattoo artists for tattoo use.  None of this is responsive to what Defendants' experts, Prof. Lane and Ms. Montie, have to say about the customs and practices within the tattoo profession.

Additionally, Mr. Sedlik's general experience with licensing practices in the "visual arts licensing industry" do not qualify him as an expert on the specific, relevant market at issue in this case:  the market ***within the tattoo profession*** for licensing photographs and other IP-protected materials to be used as artist references to create permanent tattoos.  The Court should thus exclude Mr. Sedlik from giving any expert testimony about this market pursuant to FRE 702 and *Daubert*.

### D. **Section V.E Also Does Not Discuss the Relevant Market or Pertinent Inquiry, and Lacks Proper Expert Foundation.**

Section V.E (Ex. 1 at 29-32) suffers from similar defects as Section V.D. Section V.E is titled "Defendants Experts Ignore the Existing Licensing Practices in Which Designs are Offered for Licensed Use by Tattoo Artists."  *Id.* at 29.  Mr. Sedlik apparently did a Google search and found online two examples of tattoo artists who have decided to license their own ***tattoo designs*** to other tattoo artist, *id*. at 30-31; and a third website ("Tattoo Johnny") that apparently sells prints of ***tattoo designs*** that can be printed out by a client and given to the client's tattoo artist, *id*. at 32 (although this website says ***nothing*** about granting a "license" to the purchaser).

Once again, none of this expert testimony concerns the relevant market or the "pertinent inquiry."  *Cf. Primiano*, 598 F.3d at 565.  The relevant market is not the

1  market for licensing **tattoo designs** to be used by other tattoo artists.  Rather, the
2  relevant market is the specific market **within the tattoo profession** for licensing
3  photographs and other IP-protected material – **that are not themselves tattoo**
4  **designs** – to be used as references to create tattoos.[5]  And the pertinent inquiry is
5  not whether tattoo artists have licensed *other* tattoo artists' **tattoo designs**, but
6  whether tattoo artists have ever licensed other copyrighted materials as references
7  to create tattoos.  And again, Mr. Sedlik does not have the required qualifications to
8  give expert testimony about the relevant market here.

### E. Various Portions of Sedlik's Report Also Give Improper Testimony About the Law.

Finally, there are various portions interspersed through Mr. Sedlik's report where he appears to testify about **the law**.[6]  He frames his opinions as statements about whether a licenses is "needed" or "required," but those statements are **legal conclusions**.  If the secondary use is a fair use, then obviously no license is "needed" or "required."

The Court should thus preclude Mr. Sedlik from offering any testimony about whether licenses are "needed" or "required," or giving any other such testimony about the law.  *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d

---

[5] The asserted copyrighted work in this case is a **photograph**, not a tattoo design.  This case does not present the question of what happens when the asserted copyright is a copyright in a **tattoo design**, and it is asserted against another tattoo.  Such a case would obviously present a more difficult fair use defense on factor one, since the "purpose and character" of the accused use, 17 U.S.C. § 107(1), would be the **same** as the purpose of the copyrighted work.

[6] E.g., Ex. 1 at 16 ("By the standard practices in the visual arts licensing industries, if Defendants copied the Photograph . . . making adjustments to color and detail does not render the Tattoo any less of an **unauthorized** copy of the Photograph, and **would not**, in the visual arts licensing industry, **relieve Defendants of an obligation to request and obtain a license**"); *id.* at 16 ("Defendants' experts opine that tattooers **need not acquire a license** to create derivative works based on photographs.  *I disagree* with Defendants' experts."); *id.* at 19-20 ("*I disagree* with Defendants' experts assertions that the creation of a derivative work in the form of a tattoo **does not require a license**."); *id.* at 29 ("the assertions by Defendants and Defendants' experts that **no license is required** to make use of a Photograph to create a derivative tattoo **are incorrect**.") (emphases added).

1051, 1059-60 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her ***legal conclusion***, i.e., an opinion on an ultimate issue of law.") (quotations omitted); *see also Brittney Gobble Photography, LLC v. Sinclair Broadcast Group, Inc.*, 2021 WL 5359671, at *8-9 (D. Md. Nov. 17, 2021) (excluding Mr. Sedlik from testifying to legal conclusions; "he may not simply parrot [plaintiff's] legal arguments and lend them the imprimatur of expert").

### 6. SEDLIK IS NOT QUALIFIED TO TESTIFY ABOUT THE RELEVANT INDUSTRY.

This Court's June 27 order limited Defendants' experts to testify about "the customs and practices of the tattoo industry," and solely "for the purpose of establishing lack of willfulness but not for any other purpose – including the fourth factor of the fair use analysis." Dkt. 71 at 8.

Mr. Sedlik's resume submitted with his rebuttal report shows no indication he is qualified to testify about the customs and practices of the tattoo industry. Ex. 1 at 38-46. His experience with licensing practices in the more general "visual arts licensing marketplace" do not qualify him as an expert on the customs and practices of the tattoo profession.

The Court should thus preclude Mr. Sedlik from offering any expert testimony about the customs and practices of the tattoo profession on the grounds he is not qualified to do so. Indeed, this would not be the first time a federal court has excluded Mr. Sedlik's purported expert testimony. *See, e.g.*, *Brittney Gobble Photography, LLC v. Sinclair Broadcast Group, Inc.*, 2021 WL 5359671, at *5-9 (D. Md. Nov. 17, 2021) (barring Mr. Sedlik from testifying to value of lost licensing fee because his "conclusion defies common sense" and his methodology "was not reliably applied to the facts at issue here"); *Navarro v. Procter & Gamble Co.*, 2021 WL 868586, *11-12 (S.D. Ohio Mar. 8, 2021) (partially excluding Mr. Sedlik on grounds that "several of Sedlik's 'opinions' are actually poorly disguised

legal conclusions" and "[t]here are several instances in Sedlik's report where he simply repeats Navarro's rendition of the facts, without adding any expert evaluation").

## 7. CONCLUSION

For all these reasons, the Court should preclude Sedlik from testifying as an expert in his own case; or alternatively exclude him from testifying about all or portions of the topics in his expert report.

Dated:  October 25, 2022

Respectfully submitted,

GRODSKY, OLECKI & PURITSKY LLP
  Allen B. Grodsky
  John J. Metzidis

By:   /s/ John J. Metzidis
         John J. Metzidis

Attorneys for Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc.