1  GRODSKY, OLECKI & PURITSKY LLP
   Allen B. Grodsky (SBN 111064)
2  *allen@thegolawfirm.com*
   11111 Santa Monica Boulevard, Suite 1070
3  Los Angeles, California 90025
   Telephone:  (310) 315-3009
4  Facsimile:   (310) 315-1557

5  Attorneys for Defendants
   Katherine Von Drachenberg, Kat Von D, Inc.,
6  and High Voltage Tattoo, Inc.

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        WESTERN DIVISION

11

12  JEFFREY B. SEDLIK, an individual;        Case No. 2:21-cv-01102-DSF-MRWx

13              Plaintiff,                    Before the Hon. Dale S. Fischer,
                                             U.S. District Judge
14       vs.

15  KATHERINE VON                            **MEMORANDUM OF POINTS AND**
    DRACHENBERG (a.k.a. "KAT                 **AUTHORITIES FILED IN**
16  VON D"), an individual; KAT              **SUPPORT OF DEFENDANTS'**
    VON D., INC., a California               **MOTION FOR**
17  corporation; HIGH VOLTAGE                **RECONSIDERATION OF ORDER**
    TATTOO, INC., a California               **GRANTING IN PART AND**
18  corporation; and DOES 1 through 10,      **DENYING IN PART**
    inclusive,                               **DEFENDANTS' MOTION FOR**
19                                           **SUMMARY JUDGMENT AND FOR**
                Defendants.                  **PARTIAL SUMMARY JUDGMENT**
20                                           **(DKT 69)**

21                                           Hearing
                                             Date:      September 18, 2023
22                                           Time:      1:30 p.m.
                                             Place:     Courtroom 7D
23                                                      First Street Courthouse
                                                        350 West 1st Street
24                                                      Los Angeles, CA 90012

25                                           Action filed:   February 7, 2021
                                             Trial:          November 28, 2023
26

27

28

# TABLE OF CONTENTS

1.   Introduction ................................................................................. 4

2.   The Change in Law in the *Warhol* Case is Ground for
     Reconsideration of the Court's Denial of Defendants' Summary
     Judgment Motion on Fair Use............................................................. 5

     A.   Warhol Requires Independent Analysis of Each Alleged
          Infringement and the Court did not Separately Analyze Whether
          the Tattoo Was A Commercial Use ..................................................... 6

     B.   The First Fair Use Factor – Applied Solely to the Tattoo –
          Indisputably Supports a Finding of Fair Use ...................................... 8

          (1)   The Tattoo is not Commercial ..................................................... 8

          (2)   As Defined by *Warhol*, the Tattoo has a Further
                Purpose and Different Character than the Portrait....................... 9

     C.   Proper Weighing of all the Fair Use Factors Results
          in a Finding that the Tattoo is a Fair Use........................................... 12

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Pages:**

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
    143 S. Ct. 1258 (2023) .................................................. 4, 5, 6, 7, 8, 9, 10, 11

*Campbell v. Acuff–Rose Music, Inc.*,
    510 U.S. 569 (1994) .............................................................................. 12, 13

*Google LLC v. Oracle Am., Inc.*,
    141 S. Ct. 1183 (2021) ................................................................................... 9

*Hannley v. Mann*,
    2023 WL 3407183 (C.D. Cal. Mar. 8, 2023) ................................................ 13

*HiRel Connectors, Inc. v. United States*,
    2006 WL 3618009 (C.D. Cal. June 30, 2006) ................................................. 5

*Kramer v. Thomas*,
    2006 WL 4729242 (C.D. Cal. Sept. 28, 2006).............................................. 13

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013)...................................................................... 12

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
    953 F.3d 638 (9th Cir. 2020)........................................................................ 14

*Weinberg v. Dirty World, LLC*,
    2017 WL 5665023 (C.D. Cal. July 27, 2017) .............................................. 12

**Statutes:**

17 U.S.C. § 107(1) ............................................................................................. 6

1.      **<u>INTRODUCTION</u>**.

Defendants Katherine Von Drachenberg ("Kat Von D") and High Voltage Tattoo, Inc. move for reconsideration of the Court's order granting in part and denying in part Defendants' motion for summary judgment and partial summary judgment (the "Order") based on the Supreme Court's recent decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258 (2023)("*Warhol*"). The *Warhol* decision constitutes a change in the law within the meaning of C.D. Cal. Local Rule 7-18 entitling Defendants to reconsideration of the Order as it relates to the issue of fair use.

Two specific holdings of *Warhol* change the result here:

- First, *Warhol* expressly holds that each challenged infringement must be analyzed *separately* for fair use purposes.
- Second, *Warhol* holds that in applying the first fair use factor to each challenged infringement, courts must balance whether the specific challenged use is commercial or non-commercial against how and to what extent, it is transformative, that is, has a different purpose or character. The *less* commercial the use is, the *less* transformation need be shown. The *Warhol* Court goes on to more specifically define what is meant by different purpose and character.

Had this new law been applied on Defendants' summary judgment motion, a different result would have obtained, at least as to one of the challenged uses, the tattoo that was inked freehand by Kat Von D (the "Tattoo"). Plaintiff Sedlik's Complaint challenges multiple uses, including the Tattoo itself as well as Defendants' social media posts depicting Kat Von D's process of creating the Tattoo and the Tattoo in various stages of completion. In analyzing the first fair use factor, however, the Court did not *analyze separately* each of these challenged uses. Rather, the Court held that because it found a disputed issue of fact as to whether

Defendants' *social media posts* were commercial, that meant there was a dispute of fact as to whether *all the challenged uses* were commercial.  But the evidence was without dispute that Kat Von D did not charge for the Tattoo and received no compensation for it; therefore, the Tattoo, analyzed separately, was a non-commercial use.  Because *Warhol* requires the Court to analyze each challenged use separately the Court erred in concluding that because there was a disputed issue of fact as to whether *some* of the uses (social media posts) were commercial, that necessarily meant that all the challenged uses (such as the Tattoo) were commercial.

Because the Tattoo was a non-commercial use, under *Warhol*, a far lesser showing of different purpose or character was necessary.  As set forth below, applying *Warhol*, the Tattoo had a sufficiently different purpose or character than Sedlik's original photograph of Miles Davis (the "Portrait") especially given the Tattoo's non-commercial nature.  The Court should therefore have concluded that, as a matter of law, the first fair use factor weighed in favor of a finding of fair use.

With that first factor now in Defendants favor, application of all four factors as applied to the Tattoo should have resulted in a finding that, as a matter of law, the Tattoo was a fair use.[1]

## 2.    THE CHANGE IN LAW IN THE *WARHOL* CASE IS GROUND FOR RECONSIDERATION OF THE COURT'S DENIAL OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON FAIR USE.

A motion for reconsideration may be made on the grounds of "the emergence of new material facts or a change of law occurring after the time of such decision."

---

[1]    Because the Court found that there was a triable issue of fact as to whether the challenged social media posts were commercial uses, we do not seek reconsideration of the Order as to those uses.  We do believe, however, that under *Warhol* those uses unquestionably have a different purpose and character than Sedlik's photograph and they each will be found to be fair uses at trial.

1    CD Cal. Local Rule 7-18.  *See also HiRel Connectors, Inc. v. United States*, 2006

2    WL 3618009 at *1 (C.D. Cal. June 30, 2006).

3         Months after the Court's summary judgment order, the Supreme Court issued

4    its *Warhol* decision, regarding application of the first prong of the fair use analysis,

5    that is, "the purpose and character of the use, including whether such use is of a

6    commercial character or is for nonprofit educational purposes."  (17 U.S.C.

7    § 107(1).)  As set forth below, the Supreme Court's decision in *Warhol* constituted

8    a change of law sufficient to require reconsideration of this Court's order denying

9    Defendants' motion for summary judgment on fair use as to the Tattoo itself.

10   **A.    Warhol Requires Independent Analysis of Each Alleged**

11   **Infringement and the Court did not Separately Analyze Whether**

12   **The Tattoo Was A Commercial Use.**

13        The *Warhol* decision involved the question of whether the licensing by the

14   Andy Warhol Foundation for the Visual Arts, Inc. ("AWF") of an image of the

15   "Orange Prince" for use on the cover of a magazine was a fair use.  The Orange

16   Prince was one of 16 works now known as the "Prince Series" derived by Warhol

17   from a copyrighted photograph of Prince taken by the Plaintiff Lynn Goldsmith.

18   *Id.* at 1268.

19        In deciding that this particular use of the Orange Prince was not a fair use,

20   the Court held that "[t]he fair use provision, and the first factor in particular,

21   requires an analysis of the specific 'use' of a copyrighted work that is alleged to be

22   'an infringement.'  *Id.* at 1277.   Thus, the Court concluded that "[t]he same

23   copying may be fair when used for one purpose but not another."  *Id.*   Thus, while

24   the *Warhol* court found that the licensing of photographs of the "Orange Prince" for

25   use in a magazine was not a fair use, it "express[ed] no opinion as to the creation,

26   display or sale of any of the original Prince Series works."  *Id.* at 1266, 1278.

27        The need for a Court to separately analyze each challenged use was

28   underscored by Justice Gorsuch in his concurring opinion when he noted:

-6-

1    [W]hile our interpretation of the first fair-use factor does

2    not favor the Foundation in this case, it may in others.  If,

3    for example, the Foundation had sought to display Mr.

4    Warhol's image of Prince in a nonprofit museum or a for-

5    profit book commenting on 20th-century art, the purpose

6    and character of that use might well point to fair use. . . .

7    [W]hile the Foundation may often have a fair-use defense

8    for Mr. Warhol's work, that does not mean it always will.

9    Under the law Congress has given us, *each challenged*

10    *use must be assessed on its own terms*.

11  *Id*. at 1291 (Gorsuch concurring)(emphasis added).[2]

12  Sedlik alleges that there were multiple separate infringements of his

13  photograph, by the Tattoo itself, by social media posts depicting photographs of Kat

14  Von D in the process of creating the Tattoo, and by social media posts of the Tattoo

15  in various stages of completion.  *See* Complaint (Dkt. 1), ¶¶ 89, 90 (infringement

16  "in the form of a tattoo" and by "distributing [the photograph] online and on

17  websites bearing the URLs described above"); Plaintiff's MSJ (Dkt. 37), p.15

18  (Defendants' "made an unauthorized reproduction of [the photograph] in the form

19  of a derivative tattoo, and then repeatedly and distributed photographs of that

20  unauthorized reproduction").

21  Under the new rule set forth in *Warhol*, each of those challenged uses must

22  be analyzed *separately* and assessed on their own terms.  Copying of the Portrait

23  might be a fair use for some purposes but not for others; it requires separate

24  analysis.  As discussed below, the Court did not do so, and when the first fair use

---

25  [2]    The *Warhol* majority's criticism of the dissent primarily focuses on exactly
26  this point.  The majority opinion complains that the dissent assumes that "any and
    all uses of an original work entail the same first-factor analysis based solely on the
27  content of a secondary work."  But because *each* challenged use must be analyzed
    separately, the majority concludes that the dissent's "assumption contradicts the fair
28  use statute and this Court's precedents."  *Id*. at 1278 n.10.

factor, as interpreted by *Warhol* is applied the Tattoo alone, a different result obtains.

### B. The First Fair Use Factor – Applied Solely to the Tattoo – Indisputably Supports a Finding of Fair Use.

Under *Warhol*, the first fair use factor "focuses on whether an allegedly infringing use has a further purpose or different character, which is a matter of degree, and the degree of difference must be weighed against other considerations, like commercialism." *Id*. at 1273.

When the Tattoo is analyzed separately as *Warhol* now requires, both parts of the first fair use factor weigh in favor of finding the Tattoo to be a fair use.

### (1) The Tattoo is not Commercial.

As noted, under the first factor of the fair use test, whether "a use is commercial as opposed to nonprofit" is "weighed against the degree to which the use has a further purpose or different character." *Id*. at 1276.

In denying Defendants' summary judgment motion, this Court concluded that Sedlik "raised a triable issue as to whether Defendants' use was commercial," because "Defendants 'received and enjoyed indirect economic benefit in the form of advertising, promotion, and goodwill' by posting photos of the Tattoo on their various social media platforms." (Dkt. 69, p. 21.)  In other words, the Court found that there was a dispute of fact as to whether *other allegedly infringing uses,* that is, social media posts of photographs of the Tattoo (and the process of creating the Tattoo) were commercial.

But this is precisely what *Warhol* says cannot be done.  Each allegedly infringing use must be analyzed *separately* for fair use purposes.  The Tattoo must be analyzed separately from the social media posts.  And the evidence indisputably provided that *the Tattoo itself* was a non-commercial use.  It was undisputed that Kat Von D has not charged a client for inking a tattoo since at least 2012 and

1   considers tattoos a gift she gives people.  (Dkt 33 (Defendants' Separate

2   Statement), Undisputed Fact Nos. 4, 6; s*ee also* Dkt. 69 (MSJ Order), p. 4.)

3        While there may be a factual dispute as to commercialism as to the various

4   social media posts, there is no such dispute as to the Tattoo itself.  The Tattoo must

5   be considered a nonprofit use and weighed as such against whether and to what

6   extent the Tattoo has a further purpose or different character than Sedlik's

7   photograph.

8        This is not of minor import.  "There is no doubt that a finding that copying

9   was not commercial in nature tips the scales in favor of fair use."  *Google LLC v.*

10  *Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021).  With the scale now tipped in Kat

11  Von D's favor, we examine how the other part of the first factor – as modified by

12  *Warhol* -- applies to the Tattoo.

13       **(2)   As Defined by *Warhol*, the Tattoo has a Further Purpose**

14                  **and Different Character than the Portrait.**

15       According to *Warhol*, the first factor of the fair use analysis "asks 'whether

16  *and to what extent*' the use at issue has a purpose or character different from the

17  original."  *Id*. at 1275 (emphasis in original).  *Warhol* goes on to state that "[t]he

18  larger the difference, the more likely the first factor weighs in favor of fair use [and

19  t]he smaller the difference, the less likely.  *Id*.  A use with further purpose or

20  different character "is said to be 'transformative.'"  *Id*.  On the other hand, "use of

21  an original work to achieve a purpose that is the same as, or highly similar to, that

22  of the original work is more likely to substitute for, or 'supplan[t]' the work."  *Id*.

23  at 1274.

24       In *Warhol*, the majority opinion repeatedly states that the basis for its finding

25  that the first factor in that case weighed against fair use is because the challenged

26  use at issue was virtually the same as the original copyrighted use:   both were

27  *photos of Prince used to depict Prince in magazine stories about Prince*.  Thus, the

28  Court states:

- "As portraits of Prince used to depict Prince in magazine stories about Prince, the original photograph and AWF's copying use of it share substantially the same purpose." *Id.* at 1273.
- "Both are portraits of Prince used in magazines to illustrate stories about Prince. Such 'environment[s]' are not 'distinct and different.' AWF's licensing of the Orange Prince image thus 'supersede[d] the objects,' i.e., shared the objectives of Goldsmith's photograph even if the two were not perfect substitutes." *Id.* at 1278-79.
- "Both Goldsmith and AWF sold images of Prince (AWF's copying Goldsmith's) to magazines to illustrate stories about the celebrity . . . ." *Id.* at 1280 n.15.
- "The use is AWF's commercial licensing of Orange Prince to appear on the cover of Condé Nast's special commemorative edition. The purpose of [the] use is, still, to illustrate a magazine about Prince with a portrait of Prince." *Id.* at 1284.
- "[T]he Court finds significant the degree of similarity between the specific purposes of the original work and the secondary use at issue." *Id.* at 1278 n.11.

Because the use was commercial and uses shared substantially the same purpose, the Court found that "both elements point in the same direction," that is, against a finding of fair use. *Id.* at 1280.

The facts of *Warhol* are very different from the facts here. The specific challenged use – a non-commercial tattoo hand-inked on the arm of Kat Von D's friend – is nothing like the copyrighted use, a photograph licensed to be used in a magazine article about Miles Davis. (Dkt. 33 (Defendants' Separate Statement), Undisputed Fact Nos. 137, 142; Dkt. 35-19 (Ex. 8); Dkt. 69, p. 24 ("The Portrait was originally taken in connection with a photoshoot for Jazziz Magazine . . . and not for use in the market for tattoos.") Unlike the photographs in *Warhol*, the

1  "environments" *are* "distinct and different." *Id.* at 1278-79.  Indeed, it's hard to

2  imagine what could be more distinct and different than use of a photograph to

3  illustrate an article in a jazz magazine compared with a hand-inked tattoo on the

4  arm of Kat Von D's friend.

5      The *Warhol* court also made clear that while meaning or message of a work

6  is not "dispositive" of purpose, it is "relevant to" it.  *Id.* at 1283.  Thus, "[t]he

7  meaning of a secondary work, as reasonably can be perceived, should be considered

8  to the extent necessary to determine whether the purpose of the use is distinct from

9  the original, for instance because the use comments on, criticizes, *or provides*

10  *otherwise unavailable information about the original. . . .*"  *Id.* at 1284 (emphasis

11  added).  That is precisely the analysis this Court made, accepting the argument that

12  "Kat Von D transformed [Sedlik's Portrait] into a new . . . aesthetic."  (Dkt. 69, p.

13  21.)  The Court found that Defendants carried their burden of showing that the

14  Tattoo "has a purpose or meaning distinct from the Portrait by virtue of the way Kat

15  Von D changed its appearance to create what she characterizes as adding movement

16  and a more melancholy aesthetic."  (Dkt. 69, pp. 20-21.)  In other words, this Court

17  *already concluded* that the Tattoo provided otherwise unavailable information

18  about the original, *precisely* what *Warhol* defines to be transformative.

19      It is also true that this Court concluded that Sedlik had raised a triable issue

20  as to whether the Tattoo was transformative, by his opinion that "all of the alleged

21  dissimilarities between the Portrait and the Tattoo result from Kat Von D's

22  replication of the Portrait onto a three-dimensional surface (Farmer's arm)."  (*Id.* at

23  21.)  Under *Warhol*, however, Sedlik's opinion has no relevance to the

24  determination of the first fair use factor.  Whether any dissimilarities stemmed from

25  replication of the Portrait onto a three-dimensional surface says nothing about

26  whether the Tattoo has a different purpose or character.   To the contrary, the *fact*

27  that the Tattoo is in an environment "distinct" and "different" from the original use

28  of the Portrait – as a photograph licensed for use in a magazine – is what matters.

Furthermore, because the Tattoo is not a commercial use, this part of the
analysis carries less weight and the balance is already tipped in favor of fair use.
Here, where the Tattoo is non-commercial and where the use has a different
purpose and character than the original copyrighted use, the first factor of the fair
use analysis indisputably favors Defendants and a finding that the Tattoo is a fair
use.[3]

C.     **Proper Weighing of All the Fair Use Factors Results in a Finding
that the Tattoo is a Fair Use.**

Once it is determined that the first factor weighs in favor of fair use, the
Court must re-weigh the factors.  No single factor or combination of factors
controls the analysis; rather, the Court must weigh all the facts "in light of the
purposes of copyright." *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 577-78
(1994) ("The task is not to be simplified with bright-line rules. . . . Nor may the
four statutory factors be treated in isolation, one from another. All are to be
explored, and the results weighed together, in light of the purposes of copyright").

Factor one and factor four have "'dominated the case law' and are generally
viewed as the most important factors." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170,
1179 (9th Cir. 2013).  Furthermore, the Supreme Court has noted that
"transformative works generally further copyright's goal of promoting the arts and
sciences." *Campbell*, 510 U.S. at 579.

Courts have regularly granted summary judgment finding fair use even
though some factors weigh in favor of fair use and some against.  *See Weinberg v.
Dirty World, LLC*, 2017 WL 5665023, at *13 (C.D. Cal. July 27, 2017)("Although

---

[3]     While Defendants do not seek reconsideration of the Order as to the social
media posts, we do note that this change in law alters the analysis applicable to
those uses at law.  This part of the first factor now weighs even more heavily in
favor of fair use as to those posts.  The challenged social media posts show Kat
Von D's process of creating the Tattoo (Dkt. 35-19, 35-20, 35-26, 35-27) and the
Tattoo in various stages of completion (Dkt 35-21, 35-22, 35-23, 35-24, 35-25, 35-
28, 35-29, 35-30.)  The purpose of these posts then – showing how the Tattoo was
created – are entirely different than the purpose of the Portrait (a photo of Miles
Davis used to illustrate an article about Miles Davis in a Jazz magazine).

1    the work can be considered creative and Defendant used the Post in a commercial

2    setting, the strength of the first and fourth factors of the analysis far outweigh the

3    factors that slightly tip in favor of Plaintiff"); *Hannley v. Mann*, 2023 WL 3407183,

4    at \*6 (C.D. Cal. Mar. 8, 2023)(granting summary judgment where "factors one and

5    four weigh strongly in favor of a fair use finding, while factor two weighs slightly

6    against and factor three is neutral"); *Kramer v. Thomas*, 2006 WL 4729242, at \*11

7    (C.D. Cal. Sept. 28, 2006)(granting summary judgment for defendant on fair use

8    when the first and fourth factors weigh in favor of defendant and the second and

9    third factors weigh in favor of plaintiffs).

10          Here, the first factor weighs in favor of fair use and the second factor – given

11    that the Portrait was widely published – weighs in favor of fair use.  (Dkt. 69, p.

12    22.)   The Court found that the third factor weighs against fair use. (Dkt. 69, pp. 22-

13    23.)  The fourth factor had mixed results:  the Court concluded that there is "no

14    evidence that Tattoo is a substitute for the primary market for the Portrait" but that

15    the facts were disputed as to whether there was a market for future use of the

16    Portrait in tattoos."  (Dkt. 69, pp. 23-24.) The Court never addressed the non-

17    statutory factor raised by Defendants – that is, "fundamental rights of bodily

18    integrity and personal expression" – though the Court acknowledged that it was

19    permitted to consider non-statutory factors.  (Dkt. 69 at 25.)

20          When these factors are now weighed together – "in light of the purposes of

21    copyright" – the Court should find that the Tattoo is fair use as a matter of law.  Of

22    the important factors, all weigh in favor of fair use except the second part of the

23    fourth factor (the market for future uses) in connection with which there is a dispute

24    of fact.   The Supreme Court has made clear, however, that "[m]arket harm is a

25    matter of degree, and the importance of this factor will vary, not only with the

26    amount of harm, but also with the relative strength of the showing on the other

27    factors."  *Campbell*, 510 U.S. at 591 n.21.

28

Sedlik's showing of the potential of future harm was quite weak:  he created a dispute of fact by saying he "believed" he licensed the Portrait for use in a tattoo and that he has been approached "several times" for such licenses.  (Dkt. 69, p. 24.)  However, "a copyright holder cannot prevent others from entering fair use markets merely 'by developing or licensing a market for . . . other transformative uses of its own creative work.'"  *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 652 (9th Cir. 2020).

The non-commercial and transformative nature of the Tattoo – when combined with the Court's conclusion that is not a substitute for the primary market for the Portrait and the non-statutory factor of bodily integrity and personal expression – show that this particular challenged use is a fair use in light of purposes of the Copyright Act.

Therefore, the Court should reconsider the Order and issue a new Order holding that the Tattoo, under the circumstances of this case, is a fair use.

Dated:  August 7, 2023                Respectfully submitted,

GRODSKY, OLECKI & PURITSKY LLP


By:  ___/s/Allen B. Grodsky_____
            Allen B. Grodsky

Attorneys for Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc.