ROBERT E. ALLEN (SBN 166589)
rallen@glaserweil.com
LARA A. PETERSEN (SBN 318475)
lpetersen@glaserweil.com
JASON C. LINGER (SBN 323031)
jlinger@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Boulevard
19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile:  (310) 556-2920

Attorneys for Plaintiff
JEFFREY B. SEDLIK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY B. SEDLIK,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D'"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-01102-DSF (MRWx)<br><br>Before the Hon. Dale S. Fischer,<br>U.S. District Court Judge<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  September 18, 2023<br>Time:            1:30 p.m.<br>Place:           Courtroom 7D<br>                    First Street Courthouse<br>                    350 West 1st Street<br>                    Los Angeles, CA 90012<br><br>Action filed:    February 7, 2021<br>Trial Date:      November 28, 2023 |

# TABLE OF CONTENTS

**Page**

I.   Fair Use ........................................................................................2

    A.   Purpose and Character of the Use. .......................................2

        1.   Use of the Work ............................................................4

        2.   Creation Of A Derivative Work Is Not Fair Use .........6

        3.   A Particular Use Must Have a Compelling Justification ...........8

    B.   Nature of the Copyrighted Work. .......................................11

    C.   Amount and Substantiality of the Portion Copied ..............11

    D.   Effect on the Potential Market. ..........................................12

II.  No Substantial Similarity Analysis Where Evidence of Direct Copying ......14

III. Reference Licenses ..................................................................... 17

IV.  Direct Copying ..........................................................................18

V.   Conclusion. .................................................................................20

Glaser Weil

# TABLE OF AUTHORITIES

Page

**CASES**

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*,
  No. 22-CV-1186 TWR (BLM), 2023 WL 3366534 (S.D. Cal. May 9, 2023) ........ 15

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  143 S. Ct. 1258 (2023) ................................................................................... passim

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ....................................................................................... passim

Campbell v. Acuff-Rose Music, Inc.,
  11 F.4th 26 (2d. Cir. 2021) ...................................................................................... 3

*CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.*,
  No. 22-CV-02488, 2023 WL 3035443 (N.D. Cal. Mar. 23, 2023) ....................... 15

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020) ...................................................... 2, 11, 12, 13

*Entmn't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) .................................................................................. 7

*Funky Films, Inc. v. Time Warner Entmn't Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) ................................................................................ 16

*Gracen v. Bradford Exch.*,
  698 F.2d 300 (7th Cir. 1982) .................................................................................... 7

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) ................................................................................................ 10

*Hart v. Massanari*,
  266 F.3d 1155 (9th Cir. 2001) ................................................................................ 17

*Irish Rover Ent., LLC v. Sims*,
  No. 220CV06293CBMPLAX, 2023 WL 4317054 (C.D. Cal. June 30, 2023) ....... 15

*Klauber Bros., Inc. v. City Chic Collective Ltd.*,
  No. 22-1743, 2022 WL 18278400 (C.D. Cal. Dec. 6, 2022) .................................. 15

*Klauber Bros., Inc. v. Roma Costumes, Inc.*,
  No. 22-CV-04425, 2023 WL 3903908 (C.D. Cal. June 7, 2023) ........................... 15

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) .................................................................................. 16

*Lorador v. Kolev*,
  No. 22-15491, 2023 WL 3477834 (9th Cir. May 16, 2023) ............................. 1, 14

*McGucken v. Pub. Ocean Ltd.*,
  42 F.4th 1149 (9th Cir. 2022) ...................................................................... passim

2312071.1

*Michael Grecco Prods., Inc. v. Livingly Media, Inc.*,
  No. CV 20-0151 DSF (JCX), 2021 WL 2546749 (C.D. Cal. Apr. 16, 2021) .......... 2

*Moement, Inc. v. Groomore, Inc.*,
  No. 22-CV-02871, 2022 WL 18284405 (C.D. Cal. Nov. 29, 2022) ...................... 15

*Monge v. Maya Magazines, Inc.*,
  688 F.3d 1164 (9th Cir. 2012) ............................................................... 13

*Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*,
  361 F.3d 312 (9th Cir. 2004) ................................................................. 17

*Norse v. Henry Holt and Co.*,
  991 F.2d 563 (9th Cir. 1993) ................................................................. 17

*Northland Family Planning Clinic, Inc. v. Ctr. for Bio-Ethical Reform*,
  868 F. Supp. 2d 962 (C.D. Cal. 2012) ...................................................... 11

*Pasillas v. McDonald's Corp.*,
  927 F.2d 440 (9th Cir. 1991) ................................................................. 17

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
  668 F.3d 1148 (9th Cir. 2012) ............................................................... 17

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ................................................... 16, 17, 20

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992) .................................................................... 8

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) .................................................................. 2

*Sicre de Fontbrune*,
  39 F.4th 1214 (9th Cir. 2022) ............................................................... 13

*Silva v. Garland*,
  993 F.3d 705 (9th Cir. 2021) ................................................................. 17

*Skidmore as Tr. For Randy Craig Wolfe Tr. v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ............................................................... 16

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996) ................................................................. 17

*Talavera v. Glob. Payments, Inc.*,
  No. 21-CV-1585, 2023 WL 3080701 (S.D. Cal. Apr. 25, 2023) ...................... 15

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ................................................................. 17

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
  853 F.3d 980 (9th Cir. 2017) ................................................................. 16

Glaser Weil

MOTION FOR RECONSIDERATION

2312071.1

*Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*,
   No. 22-CV-1352, 2023 WL 4042582 (S.D. Cal. Jun. 15, 2023) ............................. 15

*Walker v. University Books,*
   602 F.2d 859 (9th Cir. 1979) ................................................................. 19

*Worldwide Church of God v. Phil. Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000) ............................................................... 10

**STATUTES**
17 U.S.C. § 107 ............................................................................... 1, 3, 6, 10

Glaser Weil

MOTION FOR RECONSIDERATION
2312071.1

Pursuant to the Court's July 18, 2023 order (ECF 139), Plaintiff Jeffrey Sedlik ("Sedlik") hereby submits this motion for reconsideration of the Court's summary judgment decision (ECF 69) in accordance with the Court's order lifting the stay (ECF 135) and L.R. 7-18(a) and (b).

Since the date of the Court's summary judgment decision on May 31, 2022, the United States Supreme Court has altered the analysis of the first factor of the test for fair use under 17 U.S.C. § 107(1) in *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258 (2023), and the Ninth Circuit has clarified the analysis of factors two through four under 17 U.S.C. § 107(2)-(4) in *McGucken v. Pub. Ocean Ltd.*, 42 F.4th 1149 (9th Cir. 2022). Additionally, the Ninth Circuit and numerous district court decisions in the Ninth Circuit have recently confirmed that a court does not engage in a substantial similarity analysis where, as here, there is direct evidence of copying. *See, e.g., Lorador v. Kolev*, No. 22-15491, 2023 WL 3477834 (9th Cir. May 16, 2023) (unpublished).

Further and also pursuant to L.R. 7-18(a) and (b), there are new material facts and law that occurred after the Court's order.  First, *Warhol* clarified that photographers routinely license their creative works to serve as reference for other artists, and that such artists' reference licenses are how photographers make their living.  *Warhol,* 143 S. Ct. at 1278.  Under *Warhol*, Defendants' admission of her use of Mr. Sedlik's photograph as a reference, her lack of use of any other materials in creating the tattoo (including her memory), and the similarities between the photograph and the tattoo become critical in proving Defendants' copyright infringement.  Second, Defendants took the deposition of Bryan Vanegas on July 31, 2023, pursuant to the Court's prior order (which was stayed, pending the outcome of *Warhol*).  Mr. Vanegas confirmed that he obtained a license from Mr. Sedlik to use the Miles Davis photograph (the exact same photograph at issue here) as a reference for creating a tattoo.

## I.      Fair Use

As the Court noted, the Defendants bear the burden of proving that their use was fair. (ECF 69 at 17); *see Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) ("[T]he Supreme Court and our circuit have unequivocally placed the burden of proof on the proponent of the affirmative defense of fair use."). In light of *Warhol* and *McGucken*, however, Defendants are unable to do so as a matter of law.  As summed up well by *McGucken* and particularly applicable here, "[t]he fair use doctrine does not [] allow infringers 'to avoid the drudgery in working up something fresh" by exploiting the value of an image they did not create.'" *McGucken*, 42 F.4th at 1152-53 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994)).

In a similar (pre-*Warhol*) case, this Court determined that summary judgment on fair use was appropriate, finding that the defendant did not make fair use of photographs, where the defendant admittedly copied several photographs in their "entirety" (factor #3) and the copying would "pose a substantial threat to the licensing market," in light of the plaintiff's previous licensing activity (factor #4), even though the photographs were previously published (factor #2) and slightly transformative (factor #1).  *Michael Grecco Prods., Inc. v. Livingly Media, Inc.*, No. CV 20-0151 DSF (JCX), 2021 WL 2546749, at *10 (C.D. Cal. Apr. 16, 2021) (Fischer, J.).

### A.      Purpose and Character of the Use.

In its previous Order, the Court found the "the first factor cannot be determined as a matter of law" because "triable issues remain[ed]" as to both commerciality and transformativeness.  ECF No. 69 at 21.

The Supreme Court's clarifications of the first fair use factor supersedes prior Ninth Circuit caselaw, including *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1176 (9th Cir. 2013), and confirms that this factor weighs *against* fair use by Defendants as a matter of law. In *Warhol*, Warhol created a silkscreen using Goldsmith's photograph of the musical artist Prince (the "Silkscreen") and licensed it for use by Vanity Fair

Glaser Weil

magazine. 143 S. Ct. at 1266. The Court agreed with the Second Circuit that this factor favored Goldsmith, even though the Silkscreen adds new expression to Goldsmith's photograph (the "Prince Photograph"). *Id.* at 1273. *See* Linger Decl., Ex. 8, for the side-by-side comparison of the Photograph and the Silkscreen. The Court's clarification of the first factor analysis includes the following:

1.      The focus is on the purpose and character of the *use* of the work, not the artistic purpose or expression of underlying it in the derivative work. The Court noted that although illustrative, the "purposes" listed in the preamble paragraph of § 107 (criticism, comment, news reporting, teaching, scholarship or research) "reflect 'the sorts of copying that courts and Congress most commonly ha(ve) found to be fair uses.'" *Id.* at 1274 (quoting *Campbell*, 510 U.S. at 577-78). These examples are "easily understood," as "they contemplate the use of an original work to 'serv(e) a manifestly different purpose from the (work) itself.'" *Id.* (quoting the lower court's opinion, 11 F.4th 26, 37 (2d. Cir. 2021)).

2.      A use that has a further purpose or different character is said to be "transformative," but the degree of transformation required "must go beyond that required to qualify as a derivative [work]." *Id.* That is because a copyright "owner has a right to derivative transformations of her work"—the owner has the exclusive right to prepare derivative works, which includes "any other form in which a work may be recast, *transformed,* or adapted." *Id.* (quoting § 101) (emphasis added).

3.      There needs to be justification for the use of the copyrighted work. "[A] use may be justified because copying is *reasonably necessary* to achieve the user's new purpose. Parody, for example, 'needs to mimic an original to make its point.'" *Id.* at 1276 (quoting *Campbell*, 510 U.S. at 580-81). Other new purposes like commentary or criticism "that targets an original work" may (but not always) have a compelling reason to "conjure up" the original by

borrowing from it. *See id.* (citing *Campbell*, 510 U.S. at 588). Other uses, however, do not have a compelling justification and are therefore considered not fair.

### 1.    Use of the Work.

Defendants' fair use defense is strikingly similar to the defense presented and rejected by the Supreme Court in *Warhol*. Warhol contended that his work was "transformative" because it conveys "a different meaning or message than [Goldsmith's] photograph." *Id.* at 1273. The Court, however, rejected this argument because the first factor focuses on whether the allegedly infringing **use** of the original has a further purpose or character, not on whether the new **work** has a different meaning or message as the result of adding new expression. *Id.* at 1273-75.

The addition of "something new" does not, by itself, "render such use fair," and the smaller the difference, the less likely the first factor weighs in favor of fair use. *Id.* at 1275. Indeed, *Warhol* pointed out that in *Campbell,* even though "2 Live Crew transformed Orbison's song by adding new lyrics and musical elements, such that 'Pretty Woman' had a new message and different aesthetic than 'Oh, Pretty Woman'" and "the whole genre of music changed from rock ballad to rap" that "was not enough for the first factor to weigh in favor of fair use . . . ." *Id.* at 1275. It was only after the *Campbell* Court determined that 2 Live Crew had created a parody, "a distinct purpose of commenting on the original or criticizing it," that the Court found the first factor favored fair use. *Id.* (citing *Campbell*, 510 U.S. at 580-83).

The Court first looked at how Goldsmith had previously used the Prince Photograph, one of which was to license it for stories about Prince and another was to license it to Vanity Fair to serve as an artistic reference. *Id.* at 1277-78 ("A photographer may also license her creative works to serve as a reference for an artist."). "Such licenses, for photographs or derivatives of them, are how photographers like Goldsmith make a living. They provide an economic incentive to create original works, which is the goal of copyright." *Id.* at 1278. The Court then

looked at Warhol's use—it licensed the Silkscreen to Condé Nast to appear on the cover of a magazine about Prince. "In that context, the purpose of the image is substantially the same as that of the Prince Photograph. Both are portraits of Prince used in magazines to illustrate stories about Prince. Such environment[s] are not distinct and different." *Id.* at 1278-79 (internal citation omitted). The Court reached this conclusion even though the Silkscreen "portrays Prince somewhat differently from Goldsmith's photograph." *Id.* at 1284-85. "To hold otherwise would potentially authorize a range of commercial copying of photographs, to be used for purposes that are substantially the same as those of the originals." *Id.* at 1285.

Evaluating the commercial/nonprofit education use (which is an additional element of the first factor that is weighed against the degree to which the use is transformative, *id.* at 1276), the Supreme Court found that this too weighed against fair use. *Id.* at 1280. Thus, the fact that Warhol's use of the Prince Photograph shared substantially the same purpose and that Warhol's use was commercial meant that this factor weighed against fair use "absent some other justification for copying." *Id.*

Here, Defendants admittedly used Sedlik's photograph of Miles Davis (the "Davis Photograph") by (a) creating multiple reproductions as intermediate steps to create a tattoo; (b) creating a derivative drawing in the form of a tattoo (the "Tattoo"); and (c) publicly displaying the Davis Photograph and the Tattoo on the Internet (ECF 50-8, 50-9; ECF 41, 28; Plaintiff's Statement of Undisputed Facts ("PSUF") ¶¶ 16-18).[1] These uses are the same as how Sedlik uses the Davis Photograph—Sedlik is in the business of licensing the Photo for reproduction, creation of derivative works and public display on the Internet (ECF 37, PSUF ¶ 7). Sedlik also licenses the Davis Photograph for use as a reference and has a history of licensing his other photographs for reference to artists (*See* Section III below). Kat Von D readily admitted that she

---

[1] The original PSUF was filed in connection with Plaintiff's summary judgment motion (ECF 37-1). Plaintiff is concurrently filing a Statement of Additional Undisputed Facts in connection with this Motion for Reconsideration.

Glaser Weil

used the Davis Photograph as a reference to create a derivative work of the Tattoo (PSUF ¶ 35). Indeed, Kat Von D admitted that she created the Tattoo only from the Davis Photograph—not from memory.  She simply adapted the Davis Photograph using her style—exactly what the Court confirmed is *not* a transformational use (PSUF ¶ 36; *see Warhol*, 143 S. Ct. at 1283, 1286).

Neither "the artistic significance of a particular work" nor "the subjective intent of the user" determine the purpose of the use. *Id.* at 1283-84. The fact that Defendants used the Davis Photograph in one of the exact same ways licensed by Sedlik—as a reference—dooms their claim to fair use under the first factor. Further, none of Defendants' uses of the Davis Photograph fit into any of the "purposes" listed in the preamble paragraph of § 107 (criticism, comment, news reporting, teaching, scholarship or research relating to the Davis Photograph), thereby confirming that Defendants' uses were not transformational absent compelling justification, for which Defendants have provided none (as discussed below, Kat Von D admitted that she could have used *any* photograph of Miles Davis).

## 2.    Creation Of A Derivative Work Is Not Fair Use.

*Warhol* clarified that *Campbell* "cannot be read to mean that §107(1) weighs in favor of any use that adds some new expression, meaning or message" because then 'transformative use' would swallow the copyright owner's exclusive right to prepare derivative works." *Warhol*, 143 S. Ct. at 1282. Derivative works "recast, transform or adapt the original, add new expression, meaning or message, or otherwise provide new information, new aesthetics, new insights and understandings." *Id.* (citing § 101) (cleaned up). Indeed, the right to prepare derivative works is a fundamental exclusive right under the Copyright Act, is critical to a creator's ability to generate revenue from his works, and is a key incentive for creators to create new works for the benefit of the public.  To preserve a copyright owner's right to prepare derivative works, "the degree of transformation required to make 'transformative' use of an original must go beyond that required to qualify as a derivative." *Id.* at 1275.

MOTION FOR RECONSIDERATION

While the Court noted that some of Warhol's other works borrowed heavily from an original work and their uses did constitute fair use, such as Warhol's Campbell's Soup can canvases, *id.* at 1281, the Silkscreen of Prince did not. In his Campbell's Soup canvases, Warhol went beyond creating a derivative work to use it for a new purpose—"Campbell's logo is to advertise soup. Warhol's canvases do not share that purpose." *Id.* Additionally, Warhol's use of the copyrighted Campbell's Soup can in his canvases "'conjures up' the original work to 'shed light' on the work itself, not just the subject of the work." *Id.* at 1281 (quoting *Campbell*, 510 U.S. at 579, 588). In contrast, Warhol's use of the Prince Photograph "does not target the photograph, nor has [Warhol] offered another compelling justification for the use." *Id.* (the lack of justification is discussed below).

Here, without Sedlik's authorization, Defendants created a derivative work by drawing a Miles Davis tattoo based upon the Davis Photograph. Both the Davis Photograph and the Tattoo have the same purpose—the display of a portrait of Miles Davis.  Just because one is on canvas and one is on skin does not change the purpose. Courts have routinely held that basing a new work on an existing one, even if there is a change of medium, constitutes a derivative work. *See, e.g., Entmn't Research Grp., Inc. v. Genesis Creative Grp., Inc.,* 122 F.3d 1211, 1218 (9th Cir. 1997) (three dimensional inflatable costumes based upon the defendant's two dimensional cartoon characters were derivative works of those characters and not separately copyrightable—even though the facial expressions of the costumes contain more than trivial differences from the facial expressions seen in the underlying drawings--"no reasonable trier of fact would see anything but the underlying copyrighted character when looking at ERG's costumes."); *Gracen v. Bradford Exch.*, 698 F.2d 300, 302 (7th Cir. 1982) (plaintiff painted Judy Garland based upon still photographs from the movie "The Wizard Of Oz" supplied to her—"As with any painting there was an admixture of the painter's creativity . . . but that it is a painting of Judy Garland as she appears in photographs from the movie . . . and is therefore a derivative work, is

Glaser Weil

1  beyond question."); *Rogers v. Koons*, 960 F.2d 301, 307-312 (2d Cir. 1992)

2  (defendant created sculpture based upon plaintiff's photograph, but with certain

3  variations—court found copying was an unauthorized copy of plaintiff's photograph

4  and did not constitute fair use). Defendants offer no evidence that their use of the

5  Davis Photograph in creating the Tattoo went beyond that required to qualify as a

6  derivative work.

7          **3.**     **A Particular Use Must Have a Compelling Justification.**

8        The first factor also relates to whether "a use may be justified because copying

9  is reasonably necessary to achieve the user's new purpose." *Warhol,* 143 S. Ct. at

10  1276.  Certain uses require copying—parody (which targets an author or work for

11  humor or ridicule) "'needs to mimic an original to make its point.'" *Id.* at 1276

12  (internal citation omitted). Certain additional uses may need to borrow: "[O]ther

13  commentary or criticism that targets an original work may have a compelling reason

14  to 'conjure up' the original by borrowing from it." *Id.* (quoting *Campbell*, 510 U.S. at

15  588). But, "when commentary has no critical bearing on the substance or style of the

16  original composition . . . the claim to fairness in borrowing from another's work

17  diminishes accordingly (if it does not vanish) and other factors, like the extend of its

18  commerciality, loom larger." *Id.* (internal citation omitted).

19        In contrast, some uses require an independent justification to borrow from

20  another work. For example, satire (which ridicules society but does not necessarily

21  target an author or work) "can stand on its own two feet and so requires justification

22  for the very act of borrowing." *Id.* at 1276 (quoting *Campbell*, 510 U.S. at 580). An

23  independent justification "is particularly relevant to assessing fair use where an

24  original work and copying use share the same or highly similar purposes, or where

25  wide dissemination of a secondary work would otherwise run the risk of substitution

26  for the original or licensed derivatives of it." *Id.* at 1277. Finally, where the new use is

27  similar to the original work's typical use, "a particularly compelling justification is

28  needed." *Id.* at 1285.

Glaser Weil

In evaluating Warhol's use, the Court found that Warhol needed an independent and compelling reason for borrowing from the Prince Photograph—"like satire that does not target an original work, [Warhol]'s asserted commentary 'can stand on its own two feet and so requires justification for the very act of borrowing." *Id.* at 1285 (internal citation omitted). While Warhol argued that the Silkscreen's purpose was to comment on the dehumanizing nature and effects of celebrity, the Court rejected that such commentary constituted a new purpose. Because the Silkscreen "has no critical bearing *on Goldsmith's photograph*, the commentary's claim to fairness in borrowing from her work diminishes accordingly (if it does not vanish)." *Id.* at 1285 (internal citation omitted, emphasis added). Warhol thus needed a compelling reason why he needed to borrow from the Prince Photograph *itself*. "Yet [Warhol] offers no independent justification, let alone a compelling one, for copying the photograph, other than to convey a new meaning or message. . . . that alone is not enough for the first factor to favor fair use." *Id.* at 1285-86.

Similarly, Defendants needed a reason to copy the Davis Photograph itself, both as to (a) the creation of a derivative work in the Tattoo and its reproduction and (b) the public display of both the Davis Photograph and the Tattoo on the Internet in twelve separate social media posts that reached millions of Defendants' followers. Like in *Warhol*, Defendants do not contend or provide evidence that either the creation of the Tattoo or the social media posts has a critical bearing on, comment on, criticize, or otherwise target the Davis Photograph, thereby requiring a compelling reason for their borrowing. *Id.* at 1285-86 and n.20. Not only do Defendants not have a compelling reason for copying the Davis Photograph in creating the Tattoo, they admit that they had *no reason* to do so—Defendant Kat Von D acknowledged that she used the Davis Photograph to create the Tattoo and that the Davis Photograph was fungible—she would have "just used another image" of Miles Davis to create the Tattoo if the Davis Photograph did not exist (PSUF ¶ 37). In so doing, Defendants admit that they did the opposite of targeting the Davis Photograph and provide no

MOTION FOR RECONSIDERATION

justification for why Defendants needed to copy this particular photograph. Nor do Defendants present any justification, let alone a compelling one, for displaying either the Davis Photograph or the Tattoo on the Web. This is fatal to Defendants' claim of fair use, at least with respect to the first factor.

**Commerciality**

As to commerciality, both *Warhol* and § 107(1) make clear that the question is "whether such use is of a commercial nature or is for nonprofit educational purposes." *Warhol,* 143 S. Ct. at 1274 (quoting § 107(1)). Defendants publicly displayed the Davis Photograph and Tattoo to more than twenty million followers on multiple commercial social media platforms over many years to advertise and promote their business and brands. Yet Defendants claim that uses of the Davis Photograph, including creating the Tattoo (a service for which they are customarily paid) and publicly displaying both on commercial, social media platforms accessible to billions of people on the Internet is "only incidentally commercial" simply because there they were not directly paid (ECF 51 at 8). First, that is not the correct legal standard, which is "whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 562 (1985). As discussed in Section III below, Sedlik offers licenses of the Davis Photograph and other photographs to artists for use as a reference in creating new works in other media, for which he typically charges a license fee. Consequently, Defendants use of the Davis Photograph without paying a reference license fee is the "exploitation of the copyrighted material without paying the customary price" as described in *Harper*.

Defendants' sole focus on monetary gain missed the mark on the issue of commerciality and thus has failed to meet their burden. *Worldwide Church of God v. Phil. Church of God, Inc*., 227 F.3d 1110, 1117–18 (9th Cir. 2000) (confirming that monetary gain is not the sole criterion, that "profit" includes gaining recognition among peers and authorship credit, and that the dictionary definition of profit includes

"an advantage, [a] benefit"). Indeed, "[g]enerating traffic to one's website or conveying one's message effectively using copyrighted material is within the type of 'profit' contemplated by *Worldwide Church*." *Northland Family Planning Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 979 (C.D. Cal. 2012).

Second, the dichotomy is not commercial/non-commercial (nor, as Defendants claim, commercial/incidentally commercial) but commercial/nonprofit educational. Defendants do not argue let alone produce any evidence that their uses of the Davis Photograph and the Tattoo were for nonprofit educational purposes. Accordingly, like in *Warhol*, the fact that Defendants' use of the Davis Photograph shared substantially the same purpose and that Defendants' uses were commercial in nature meant that this factor weighs against fair use "absent some other justification for copying," which, as described above, they did not prove.

### B. Nature of the Copyrighted Work.

While this Court correctly held that photographs are generally viewed as creative (ECF 69 at 22), it concluded that the fact that the Davis Photograph previously had been published weighed in favor of fair use, contrary to the holding of *McGucken.*

The Ninth Circuit's clarifications of the second fair use factor confirms that this factor weighs against fair use by Defendants as a matter of law. This factor concerns the extent to which a copyrighted work is creative and whether it is unpublished. *McGucken*, 42 F.4th at 1161. The photographs in *McGucken* "are creative because they were the product of many technical and artistic decisions." *Id.* Although McGucken's photographs had been published previously, "that does not weigh in favor of fair use" because "while a work's unpublished status would weigh against fair use, '*the converse is not necessarily true*.'" *Id.* at 1162 (quoting *Dr. Seuss*, 983 F.3d at 456 (emphasis added); *see Dr. Seuss*, 983 F.3d at 456 (confirming that the publication of the copyrighted work does not weigh in favor of fair use). *McGucken* found that this factor weighed against fair use. So too here.

**C.      Amount and Substantiality of the Portion Copied.**

This Court correctly found that the third factor weighed against fair use because Defendants copied "numerous elements from" the photograph, including Miles Davis' pose in the photograph (ECF 69 at 23). *McGucken* confirms that this is correct because just like Defendants, the *McGucken* defendants published "the heart" of the copied photograph without justification and "failed to put forward evidence that other photographs or visual aids were unavailable or an inadequate substitute for" the copied photographs. *McGucken*, 42 F.4th at 1162.  Indeed, Defendant Kat Von D's admission that she could have used any other photograph of Miles Davis (PSUF ¶ 37) confirms that other Miles Davis photographs were readily available.

Additionally, Defendants provide no justification for publicly displaying, both the Tattoo and/or the Davis Photograph, in twelve separate social media posts on the Internet.  Even if Defendants were justified in publicly displaying the Tattoo and/or the Davis Photograph in one social media post (which they were not), publicly displaying them in twelve separate social media posts, reaching millions of followers, was "far more than was necessary."  *McGucken*, 42 F.4th at 1162 (finding the third factor weighed against fair use because defendant had copied extensively without justification).

**D.      Effect on the Potential Market.**

The Court's previous order declined to determine whether the fourth factor weighed for or against fair use because the Court found triable fact issues, pointing to Plaintiff's deposition testimony in which he testified that he had previously licensed the photograph, including to a tattoo artist (ECF 69 at 24).

The Ninth Circuit's clarifications of the fourth fair use factor in *McGucken* confirm that this factor weighs against fair use by Defendants as a matter of law. This factor encompasses *both* (1) the extent of market harm caused by the alleged infringer and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for

Glaser Weil

the original and the market for derivative works. *McGucken*, 42 F.4th at 1163.

The defendant "as the proponent of the affirmative defense of fair use, 'must bring forward favorable evidence about relevant markets.'" *Id.* (quoting *Dr. Seuss*, 983 F.3d at 459). To negate fair use, the plaintiff "need only show that if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work." *Id.* (quoting *Monge v. Maya Magazines, Inc.,* 688 F.3d 1164, 1182 (9th Cir. 2012)). But where a defendant offers *no* evidence about the effect on the market for licensing of the copied work, *the defendant cannot meet his burden* and the fourth factor weighs against fair use. *Id.* (citing *Sicre de Fontbrune*, 39 F.4th 1214, 1226 (9th Cir. 2022) (emphasis added)).

*McGucken* found that even though the record reflected little direct evidence of actual market harm caused by defendant's use of plaintiff's photographs, the harm "would be immense" to the market for licensing those photos, where there was an existing market to republish them. "If carried out in a widespread and unrestricted fashion, [defendant's] conduct would destroy [plaintiff's] licensing market. [Defendant] made the same use of [plaintiff's] photos as the publications that obtained licenses . . . ." *Id.*; *see also Id.* (quoting *Dr. Seuss*, 983 F.3d at 460 ("Because 'Seuss has already vetted and authorized multiple derivatives' of the book the defendant had used, *'[t]his is not a case where the copyist's work fills a market that the copyright owner will likely avoid.'"*) (emphasis added)). Because defendant's use, if widespread, would destroy the market to license plaintiff's works, *McGucken* found the fourth factor weighed against fair use. *Id.* at 1164.

Here, Defendants presented ***no*** admissible evidence, as they must to demonstrate fair use, about relevant markets as to the use of the Davis Photograph as a reference to create a derivative work, the Tattoo. *See* ECF 32 at 21-22.[2] And

---

[2] Defendants sole evidence about the tattoo marketplace, opinions by its experts David Lane and Catherine Montie, was excluded by the Court. ECF 71 at 7 ("The Court excludes Lane's opinions to the extent they pertain to the fourth prong of the fair use analysis."); 8 (Montie's opinions are inadmissible with respect to the fourth fair use factor).

**Glaser Weil**

Defendants presented no argument, let alone evidence (admissible or otherwise) about relevant markets to support its fair use defense as to the public display of the Davis Photograph and/or the Tattoo on the Internet. Accordingly, on that basis alone, the fourth factor weighs against fair use as a matter of law for both the creation of the derivative Tattoo and the public display of the Davis Photograph and the Tattoo on the Internet. *McGucken*, 42 F.4th at 1163.

Notwithstanding that Defendants presented no favorable evidence of relevant markets, Plaintiff negated fair use by showing that if Defendants' uses of the Davis Photograph should become widespread, it would adversely affect and usurp not only the existing but also the *potential* licensing markets for the Davis Photograph.[3] (ECF 50 at 21-22). Indeed, the harm to the market for licensing the Davis Photograph, should Defendants' uses become widespread and unrestricted, would be immense.[4] Consequently, even if Defendants had presented admissible evidence, Sedlik negated it (see also Section III below regarding reference license), and therefore the fourth factor weighs against fair use as a matter of law. *McGucken*, 42 F.4th at 1163.

Since all four factors weigh against fair use, Defendants' fair use defense fails as a matter of law.

## II.   No Substantial Similarity Analysis Where Evidence of Direct Copying

The Ninth Circuit and numerous district court decisions in the Ninth Circuit have confirmed after this Court's summary judgment order on May 31, 2022 (ECF 69) that a court does not engage in substantial similarity analysis where there is direct evidence of copying. *See, e.g., Lorador v. Kolev*, No. 22-15491, 2023 WL 3477834, at *1 (9th Cir. May 16, 2023) (unpublished) ("*Absent direct evidence of copying*, proof of infringement involves fact-based showings that the defendant had access to

---

[3] Defendants provide no authority that the only applicable market is licensing for the tattoo industry. Such argument ignores Defendants' public display of the Davis Photograph on the Internet.

[4] Sedlik presented uncontroverted evidence that he has a long history of licensing the Davis Photograph to all manner of clients for all manner of uses, including use as a tattoo, and that he has had other inquiries from potential licensees to use his photograph as a tattoo. ECF 50 at 21.

Glaser Weil

the plaintiff's work and that the two works are substantially similar." (emphasis added)); *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, No. 22-CV-1186 TWR (BLM), 2023 WL 3366534, at *5 (S.D. Cal. May 9, 2023) ("*Absent evidence of direct copying*, a plaintiff must establish substantial similarity between the protected aspects of their work and the defendant's work to succeed on a copyright infringement claim." (emphasis added)).

Indeed, courts in this Circuit have laid out the two elements to prove copyright infringement, then held the second element can be proved *either* by direct evidence *or* through a substantial similarity analysis. *See, e.g., Irish Rover Ent., LLC v. Sims,* No. 20-cv-06293, 2023 WL 4317054, at *6 (C.D. Cal. June 30, 2023) ("To prevail on a copyright infringement claim, a plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. . . . In order to establish copying, Plaintiff must either provide 'evidence of direct copying' or they must show that 'Defendants had 'access' to [Plaintiff's] copyrighted material and that the two works at issue are 'substantially similar.'"); *Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc*., No. 22-CV-1352, 2023 WL 4042582, at *9 (S.D. Cal. Jun. 15, 2023) (same); *Klauber Bros., Inc. v. Roma Costumes, Inc.*, No. 22-CV-04425, 2023 WL 3903908, at *2 (C.D. Cal. June 7, 2023) (same); *Talavera v. Glob. Payments, Inc.*, No. 21-CV-1585, 2023 WL 3080701, at *10 (S.D. Cal. Apr. 25, 2023) (same); *CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.,* No. 22-CV-02488, 2023 WL 3035443, at *4 (N.D. Cal. Mar. 23, 2023)*,* report and recommendation adopted in *part, rejected in part,* No. 22-CV-02488, 2023 WL 3409463 (N.D. Cal. May 12, 2023) ("To prove the "copying" element, a plaintiff must catch the defendant in the act or can demonstrate '(1) circumstantial evidence of the defendant's access to the copyrighted work; and (2) substantial similarity between the copyrighted work and the defendant's work.'"); *Klauber Bros., Inc. v. City Chic Collective Ltd*., No. 22-1743, 2022 WL 18278400, at *4 (C.D. Cal. Dec. 6, 2022); *Moement, Inc. v. Groomore, Inc*., No. 22-CV-02871, 2022 WL 18284405, at *7 (C.D. Cal. Nov. 29,

2022).

This Court, relying on *Rentmeester v. Nike, Inc.,* concluded that a substantial similarity analysis was called for, notwithstanding evidence of direct copying, because "the second element [of copyright infringement] has two distinct components: copying and unlawful appropriation." ECF 69 at 9-10 (quoting *Rentmeester*, 883 F.3d 1111, 1117 (9th Cir. 2018) (internal quotation marks omitted), overruled on other grounds by S*kidmore as Tr. For Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)).

As the cases cited above confirm, *Rentmeester*, which was not a case involving direct copying (it involved the creation of two separate photographs from the same idea), did not change this Circuit's long-standing holding that a copyright owner can satisfy the second element through direct evidence of copying. As this Court recognized in its previous order, *Rentmeester* involved two *different* photographs of Michael Jordan, with "significant differences in Jordan's pose, the specific setting and backdrop, position of the basketball hoop, and Jordan's positioning within the frame" (ECF 69 at 12).  The Ninth Circuit held that the two photographs were not substantially similar as a matter of law.  *Rentmeester*, 883 F.3d at 1121.

Here, by contrast, Defendants admitted to copying the Davis Photograph. Indeed, Ninth Circuit decisions prior to *Rentmeester* unanimously confirm that evidence of direct copying satisfy the second copyright infringement element without a substantial similarity analysis. *See, e.g., Unicolors, Inc. v. Urb. Outfitters, Inc.,* 853 F.3d 980, 984-85 (9th Cir. 2017) ("If there is no direct evidence of copying, a plaintiff may prove this element through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work."); *Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016) (same); *Funky Films, Inc. v. Time Warner Entmn't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006); *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*,

2312071.1

Glaser Weil

361 F.3d 312, 316 (9th Cir. 2004) (same); *Three Boys Music Corp. v. Bolton*, 212
F.3d 477, 481 (9th Cir. 2000) (same); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir.
1996) (same); *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)
(same).

Indeed, in cases involving direct copying, the Ninth Circuit has been explicit
that substantial similarity is irrelevant. *See, e.g., Range Road Music, Inc. v. East
Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012) ("A showing of 'substantial
similarity' is irrelevant in a case like this one, in which the Music Companies
produced evidence that the public performances entailed direct copying of
copyrighted works."); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir.
1993) ("But here the substantial similarity analysis is inapposite to the copying issue
because appellees admit that they in fact copied phrases from Norse's letters.")

Nor could the *Rentmeester* panel overrule these prior Ninth Circuit decisions,
especially considering that the issue of direct copying was not even before it. *Silva v.
Garland*, 993 F.3d 705, 717 (9th Cir. 2021) ("[T]he first panel to consider an issue
sets the law not only for all the inferior courts in the circuit, but also future panels of
the court of appeals."); *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).

Because it is undisputed that Defendants copied the Davis Photograph, a
substantial similarity test between the Photograph and the Tattoo should not be
applied, and the Court should grant Plaintiff's motion as to copyright infringement.

## III.   Reference Licenses.

*Warhol* clarified that a photographer, such as Plaintiff, may license his creative
works to serve as a reference for an artist, and that such licenses are one of the ways
photographers make a living. *Warhol,* 143 S. Ct. at 1278.  Thus, under *Warhol,*
claims for copyright infringement based on use of a photograph as a reference are
actionable. Kat Von D readily admits that she created a depiction of Miles Davis
based on the Davis Photograph, which she used as a reference for the Tattoo.  *See,
e.g.,* ECF 41 at 28:19-20; PSUF ¶ 38.  Defendant also admitted that: (a) she adapted

Glaser Weil

the Davis Photograph to her style and interpretation; (b) she did not create the Tattoo from anything other than the Davis Photograph, including her memory; (c) while making a tattoo, she always uses a copy of a reference next to her; and (d) she looks at the photograph the entire time during the tattooing (PSUF ¶ 38).

Sedlik not only testified that he has licensed the Davis Photograph as a reference, but specifically as a reference for a tattoo (PSUF ¶ 39). Indeed, Sedlik produced reference licenses for the Davis Photograph, including for a tattoo (*e.g.,* PSUF ¶ 40; Linger Decl., Ex. 3). The licensee of the tattoo reference license, Bryan Vanegas, confirmed in a July 31, 2023 deposition that (a) he obtained a license from Sedlik to use the Davis Photograph as a reference; (b) as a tattoo artist, he (or the shops he has worked in) purchase tattoo flash books, which books provided a license to tattoo artists to use the contained illustrations as a reference, and that by buying the books, he has the right to use those images as a reference; (c) he was familiar with tattoo artists offering and selling licenses of their illustrations and tattoo designs for profit; (d) freehand tattooing is drawn directly on the skin with a pen before ink is applied, or is tattooed directly on the skin without the aid of a drawing or stencil; and (e) at the time Vanegas negotiated the reference license with Sedlik for the Davis Photograph, he reviewed a page on Sedlik's website that set forth the various licenses Sedlik grants, including licenses for artists' reference for the creation of tattoos (PSUF ¶ 41; Linger Decl., Exs. 3-6).

Accordingly, *Warhol* confirmed that using a photograph as a reference, such as the way in which Defendants admittedly used the Davis Photograph, requires a license as a matter of law (of note, Goldsmith's reference license was in 1984, confirming that reference licenses have been common for many years). Defendants admitted that they used the Davis Photograph as a reference without a license, thereby infringing the Photograph.

**IV.   Direct Copying.**

*Warhol's* confirmation that photographers license their photographs to be used

as reference confirms that Defendants, through Kat Von D's admissions, directly copied the Davis Photograph in creation of the Tattoo without a license.  In addition to Kat Von D's admissions, there is undisputed evidence that Defendants copied the Davis Photograph, not only in the creation of the Tattoo, but also in the public display (and public performance of a video) of both the Tattoo and the Davis Photograph on the Internet.

First, Kat Von D admitted to tracing the Davis Photograph (she was video-recorded during the process of her tracing the Davis Photograph on a lightbox at her tattoo parlor) (ECF 50-8, 50-9; ECF 69 at 4-5).  Indeed, a side-by-side comparison shows that the tracing was an exact copy (ECF 50-10).  Kat Von D admitted that she printed out copies of the Davis Photograph and used the traced sketch to produce the Tattoo (ECF 35-1 at 2-3, ¶¶ 6-9; PSUF ¶ 42).  Defendants thus additionally admit to intermediate copying, similarly violative of the reproduction right in Section 106(1). *See, e.g. Walker v. University Books,* 602 F.2d 859, 864 (9th Cir. 1979) ("The fact that an allegedly infringing copy of a protected work may itself be only an inchoate representation of some final product to be marketed commercially does not in itself negate the possibility of infringement.").

Second, Kat Von D admitted to creating the Tattoo solely from the Davis Photograph.  *See* Section I.A.3.1 above.  While she argues that she created her own "interpretation," that is no different than Warhol's use of Goldsmith's Silkscreen to depict his own interpretation of Prince.  *Warhol*, 143 S. Ct. at 1275, 1282 ("Many derivative works, including musical arrangements, film and stage adaptions, sequels, spinoffs, and others that "recast, transfor[m] or adap[t]" the original, § 101, add new expression, meaning or message, or provide new information, new aesthetics, new insights and understandings.").

Consequently, since there is no dispute that the Davis Photograph is a creative work subject to copyright protection (ECF 69 at 10), the only logical conclusion is that Kat Von D copied protectible expression of the Davis Photograph, a copyright

MOTION FOR RECONSIDERATION
2312071.1

Glaser Weil

protectible combination of unprotectible expression from the Davis Photograph or both.  *See Rentmeester,* 883 F.3d at 1119 ("What is protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements.").  This is especially true here where the Tattoo is "instantly identifiable" as an embodiment of the Davis Photograph in "yet another form."  *Entm't Research*, 122 F.3d at 1223.  Plaintiff described all of the protectible elements in the Davis Photograph in his Interrogatory responses (ECF 50-24; PSUF ¶ 34), and the bulk of those elements appear in the Tattoo as well.  Notably, Defendants have no evidence to the contrary, as Defendant's expert (who purported to opine on the *differences*, not the similarities), has been excluded (ECF 71 at 3-6).

Third, Defendant admitted to publicly displaying photographs of both the Davis Photograph and the unauthorized derivative Tattoo on the Internet without a license.  (PSUF ¶¶ 16, 17, 31; DSUF ¶ 96; ECF 35-19 – 35-30; ECF 69 at 5-7).  Defendants can offer no fair use defense to these uses after *Warhol*.  Defendants' sole basis to a fair use defense as to the social media posts was that the *Tattoo* itself was transformative, and therefore the posts showing the Tattoo *and the Davis Photograph* are also covered (ECF 32 at 24).  But *Warhol* rejects the possibility that an original *work* is transformative by adding new expression to it—only its *use* can be transformative, such as by offering criticism or commentary of the *original work itself*.  Defendants offer no justification as to why they needed to advertise using both the Tattoo and the Davis Photograph, especially where Defendant's social media posts regarding the tattoo do not target or comment on the Davis Photograph.

**V.     Conclusion.**

For all of the reasons stated above, the Court should grant Plaintiff's motion for summary judgment and deny Defendant's motion for summary judgment.

DATED: August 7, 2023        GLASER WEIL FINK HOWARD
             JORDAN & SHAPIRO LLP

By: */s/ Robert E. Allen*
_____

ROBERT E. ALLEN
LARA A. PETERSEN
JASON C. LINGER

*Attorneys for Plaintiffs*

MOTION FOR RECONSIDERATION
2312071.1