ROBERT E. ALLEN (SBN 166589)
rallen@glaserweil.com
LARA A. PETERSEN (SBN 318475)
lpetersen@glaserweil.com
JASON C. LINGER (SBN 323031)
jlinger@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Boulevard
19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Attorneys for Plaintiff
JEFFREY B. SEDLIK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY B. SEDLIK, | Case No.: 2:21-cv-01102-DSF (MRWx) |
| Plaintiff, | Hon. Dale S. Fischer |
| v. | **PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN SUPPORT OF MOTION FOR RECONSIDERATION** |
| KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D""), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff Jeffrey B. Sedlik ("Plaintiff") incorporates by reference each of the uncontroverted material facts and conclusions of law (ECF 37-1) filed in connection with his motion for summary judgment (ECF 37).

Plaintiff hereby submits the following additional undisputed facts in support of Plaintiff's Motion for Reconsideration.

## ADDITIONAL UNDISPUTED FACTS

34. As stated in Plaintiff's December 31, 2021 Second Supplemental Responses to Defendants' Interrogatory No. 8, the following list of elements are protected by copyright in the Iconic Miles Davis Photograph:

    a. Position, shape and quality of shadows achieved by Plaintiff on brow, neck, cheekbones, eyes, hair, hand, jacket, and other elements, to control the rendering of those elements and their respective shapes, lines, and dimension

    b. Transitions of highlights and shadows achieved by Plaintiff's selection and arrangement of the distance of light source to face, diffusion of sunlight, time of day chosen, blackout materials on lightsource and in proximity to subject

    c. Quality of light achieved by Plaintiff's selection and arrangement of position and type of lightsource, time of day, blackout materials used on lightsource and in proximity to subject

    d. Quality and density of shadows, achieved by Plaintiff's decision to create and maintain an opening in the studio tent at front of set, near camera, and by Plaintiff's discretionary selection and arrangement of fill cards to reflect daylight through that opening

    e. Reflectance on skin achieved by Plaintiff's adjustment of light modifier position, and by Plaintiff's direction to makeup artist to use reflecting oil on skin

    f. Sculpting of Miles Davis' physical features achieved by Plaintiff's

control and adjustment of light source position, size, material, time of day chosen

  g. Vertical tilt of head relative to camera, directed by Plaintiff

  h. Horizontal tilt of head relative to camera, directed by Plaintiff

  i. Height of head relative to center of camera lens, controlled by Plaintiff

  j. Only one ear visible, by choice of Plaintiff

  k. Amount of ear visible, selected and controlled by Plaintiff

  l. Highlight and shading on ear, controlled by Plaintiff's lighting

  m. Curls of hair over ear, placed by Plaintiff

  n. Position of curls of hair over ear, placed by Plaintiff

  o. Rendering of vein popping on forehead achieved by Plaintiff's direction to subject to tense up during momentary peak of pose

  p. Eye direction achieved by Plaintiff's direction and control over the angle of the head

  q. Position and size of Plaintiff's rendering of upper and lower eyelids, achieved by Plaintiff's lighting and by Plaintiff's direction of expression, position, and pose

  r. Position and size of irises and pupils, and corresponding position and size whites of eyes, achieved by Plaintiff's control over the light falling on the subject, and by Plaintiff's strategic discretionary placement of fill cards to reflect daylight into eyes while avoiding pupil constriction

  s. Position and shape of highlights within eyes, achieved by Plaintiff's strategic discretionary placement of fill cards to reflect daylight into eyes and by Plaintiff's decision to shape the reflections in the eyes using Plaintiff's body in order to partially obscure those reflections

  t. Position and size of Plaintiff's rendering of skin above eyelids, achieved by Plaintiff's lighting adjustments and by Plaintiff's direction of

expression, position, and pose

u.  Position and size of Plaintiff's rendering of eyebrows, achieved by Plaintiff's lighting adjustments and by Plaintiff's direction of expression, position, and pose

v.  Position and size of Plaintiff's rendering of highlights above left and right eyes, achieved by Plaintiff's lighting adjustments and by Plaintiff's direction of expression, position, and pose

w.  Position and size of Plaintiff's rendering of highlights and shading at cheek folds, achieved by Plaintiff's lighting adjustments and by Plaintiff's direction of expression, position, and pose

x.  Rendering of furrow of brow, achieved by Plaintiff's direction to subject and by Plaintiff's lighting adjustments

y.  Rendering of size and shape of nose, fold of skin above top of nose, flaring of nostrils, amount and proportion of nostrils visible, and light and shade within nostrils, all achieved by Plaintiff's direction to subject as to pose and expression, and by Plaintiff's lighting and camera selections and adjustments

z.  Shape, position, size and quality of highlights on forehead, nose, cheeks and hand, achieved by Plaintiff's selection and control over position and angle of lighting and subject

aa.  Rendering of lip expression, achieved by Plaintiff's direction to purse lips, and emphasized by Plaintiff's control over lighting

bb.  Amount of lips visible left of finger, selected and arranged by Plaintiff

cc.  Amount of lips visible right of finger, selected and arranged by Plaintiff

dd.  Position of fingertip relative to lips, selected and arranged by Plaintiff

ee. Position of fingernail relative to top lip, selected and arranged by Plaintiff

ff. Position of bottom of fingernail at junction of top and bottom of lip, selected and arranged by Plaintiff

gg. Position of bottom of bottom lip relative to finger, selected and arranged by Plaintiff

hh. Position of index finger relative to face, selected and arranged by Plaintiff

ii. Angle of index finger, selected and arranged by Plaintiff

jj. Highlight and shading on hand and on each finger, selected and arranged by Plaintiff

kk. Position, rotation, angle, visibility, bend at knuckles, and relative points of intersection of middle finger, ring finger and pinky finger (and their respective fingernails), selected and arranged by Plaintiff

ll. Highlights and shading on side of hand facing camera, and highlight at back left edge of hand, controlled by Plaintiff's lighting and by Plaintiff's direction to subject

mm. Distance between nose and mouth, determined by Plaintiff's selection of camera height and by Plaintiff's direction as to head tilt

nn. Rendering of relative sizes of hand and face, determined by Plaintiff's direction of subject's pose, and by Plaintiff's selection of camera focal length, camera position, camera angle, and camera-to-subject distance

oo. Rendering of relative sizes of nose and face, determined by Plaintiff's direction of subject's pose, and by Plaintiff's selection of camera focal length, camera position, camera angle, and camera-to-subject distance

pp. Visual compression of features, determined by Plaintiff's direction of subject's pose, and by Plaintiff's selection of camera focal length, camera position, camera angle, and camera-to-subject distance

qq. Highlight along right edge of forehead, achieved by Plaintiff's adjustment of lighting, and by Plaintiff's direction to subject

rr. Shading at area above eyebrow at right, achieved by Plaintiff's adjustment of lighting, and by Plaintiff's direction to subject

ss. Hairline at forehead, achieved by Plaintiff's direction to hair stylist, and by Plaintiff's adjustment of placement of hair at hairline

tt. Shading and highlights on hair, controlled by Plaintiff's adjustment of lighting, and by Plaintiff's direction to hair stylist to add gloss to hair

uu. Shading at right of cheek, controlled by Plaintiff's adjustments to lighting, and by Plaintiff's positioning of black "flags" in close proximity to subject

vv. Rendering of black jacket, selected by Plaintiff for use in the photograph, the appearance of which was achieved by Plaintiff's control and adjustment of lighting to emphasize/de-emphasize details, highlights, shading on jacket

ww. Black background created by Plaintiff's selection and arrangement of blackout material at the rear of the outdoor studio, and by blocking light from above to ensure dark background

xx. Tonal relationships at each intersection of subject and background, achieved by Plaintiff's artistic selection and arrangement of exposure, focal point, depth of field, lighting and control over subject position, wardrobe, development, and post production

35. Kat Von D readily admitted that she used the Davis Photograph as a reference to create a derivative work of the Tattoo (Linger Decl., Ex. 1, 184:19-22).

36. Kat Von D admitted that she created the Tattoo only from the Davis Photograph—not from memory. She simply adapted the Davis Photograph using her style (Linger Decl., Ex. 1, 141:12-19).

37. Kat Von D acknowledged that she used the Davis Photograph to create the Tattoo and that the Davis Photograph was fungible—she would have "just used another image" of Miles Davis to create the Tattoo if the Davis Photograph did not exist. (Linger Decl., Ex. 1, 183:22-25; 184:8-10).

38. Kat Von D readily admits that she created a depiction of Miles Davis based on the Davis Photograph, which she used as a reference for the Tattoo. *See, e.g.,* ECF 41 at 28:19-20; Linger Decl., Ex. 1, 141:23-25; 184:19-22. She also admitted that: (a) she adapted the Davis Photograph to her style and interpretation (*id.,* 102:1-2, 141:14-15); (b) she did not create the Tattoo from anything other than the Davis Photograph, including her memory (*id.,* 89:7-14); (c) while making a tattoo, she always uses a copy of a reference next to her (*id.,* 101:20-23); and (d) she looks at the photograph the entire time during the tattooing (*id.,* 102:5-8).

39. Sedlik not only testified that he has licensed the Davis Photograph as a reference, but specifically as a reference for a tattoo (Linger Decl., Ex. 7, at 104:8-105:5, 106:21-107:12).

40. Sedlik produced reference licenses for the Davis Photograph, including for a tattoo by Bryan Vanegas (Linger Decl., Ex. 3).

41. Bryan Vanegas, confirmed in a July 31, 2023 deposition that (a) he obtained a license from Sedlik to use the Davis Photograph as a reference (Linger Decl., Ex. 2, at 12:8-15; 13:5-7, 13:21-22; Ex. 3); (b) as a tattoo artist, he (or the shops he has worked in) purchase tattoo flash books, which books provided a license to tattoo artists to use the contained illustrations as a reference, and that by buying the books, he has the right to use those images as a reference (*id.*, Ex. 2, at 31:13-36:4, Ex. 4); (c) he was familiar with tattoo artists offering and selling licenses of their illustrations and tattoo designs for profit (*id.*, Ex. 2, at 43:8-21; Ex. 5); (d) freehand tattooing is drawn directly on the skin with a pen before ink is applied, or is tattooed directly on the skin without the aid of a drawing or stencil (*id.*, Ex. 2, at 46:5-47:4); and (e) at the time Vanegas negotiated the reference license with Sedlik for the Davis

Photograph, he reviewed a page on Sedlik's website that set forth the various licenses Sedlik grants, including licenses for artists' reference for the creation of tattoos (*id.*, Ex. 2, at 49:7-10, 49:25-50:15; 54:20-55:9; Ex. 6).

42. Kat Von D admitted that she printed out copies of the Davis Photograph and used the traced sketch to produce the Tattoo (ECF 35-1 at 2-3, ¶¶6-9; Linger Decl., Ex. 1, at 122:10).

DATED: August 7, 2023

GLASER WEIL FINK HOWARD
 JORDAN & SHAPIRO LLP

By: */s/ Robert E. Allen*

ROBERT E. ALLEN
LARA A. PETERSEN
JASON C. LINGER

*Attorneys for Plaintiffs*