GRODSKY, OLECKI & PURITSKY LLP
Allen B. Grodsky (SBN 111064)
*allen@thegolawfirm.com*
11111 Santa Monica Boulevard, Suite 1070
Los Angeles, California 90025
Telephone:  (310) 315-3009
Facsimile:   (310) 315-1557

Attorneys for Defendants
Katherine Von Drachenberg, Kat Von D, Inc.,
and High Voltage Tattoo, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JEFFREY B. SEDLIK, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-01102-DSF-MRWx<br><br>Before the Hon. Dale S. Fischer, U.S. District Judge<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR RECONSIDERATION; DECLARATION OF ALLEN B. GRODSKY IN SUPPORT THEREOF**<br><br>Hearing<br>Date:      September 18, 2023<br>Time:      1:30 p.m.<br>Place:     Courtroom 7D<br>               First Street Courthouse<br>               350 West 1st Street<br>               Los Angeles, CA 90012<br><br>Action filed:   February 7, 2021<br>Trial:             November 28, 2023 |

# **TABLE OF CONTENTS**

1.   INTRODUCTION ........................................................................ 6

2.   THERE IS NO BASIS TO RECONSIDER THE COURT'S
     ORDER THAT THERE IS A MATERIAL ISSUE OF FACT
     AS TO SUBSTANTIAL SIMILARITY ......................................... 7

     A.   Local Rule 7-18 Does Not Permit Reconsideration On Substantial
          Similarity .......................................................................... 7

     B.   Plaintiff Misinterprets Case Law On Substantial Similarity .............. 9

3.   PLAINTIFF HAS SHOWN NO BASIS FOR THE COURT TO
     RECONSIDER ITS ORDER ON FAIR USE ............................... 10

     A.   *Warhol* And The First Fair Use Factor ............................... 11

          (1)   *Warhol* Holds that, On The First Fair Use Factor,
                The Court Must Separately Analyze Each Challenged
                Infringement ......................................................... 11

          (2)   Plaintiff Improperly Seeks To Re-Argue The Court's
                Finding On Commerciality ........................................ 12

          (3)   Plaintiff Mischaracterizes *Warhol* On The "Different
                Purpose or Character" Element of the First Fair Use Factor.... 13

          (4)   Application Of *Warhol* To The Challenged Uses ................... 15

                (a)   Tattoo .......................................................... 15

                (b)   Sketch ......................................................... 15

                (c)   Social Media Posts of Process ........................ 16

                (d)   Instagram Video ........................................... 17

                (e)   Social Media Post of Tattoo In Process ............ 18

                (f)   Social Media Post Of Completed Tattoo ............ 18

1
2

# TABLE OF CONTENTS
(Continued)

3
4
5

        (g)    In Conclusion, Plaintiff Offers No Valid Basis To Reconsider The Court's Finding Of Genuine Issues of Fact On The First Fair Use Factor ................. 19

6
7

  B.    Plaintiff Fails to Establish A Basis To Reconsider The Second and Third Fair Use Factors ............................................ 19

8
9

  C.    Plaintiff Offers No Basis for Reconsidering The Decision that There is a Genuine Issue of Fact As to the Fourth Fair Use Factor ... 20

10
11

        (1)    *McGucken* Does Not Change Controlling Law On The Fourth Factor ....................................................................... 20

12
13

        (2)    The Vanegas Testimony Is Not a New Fact And, In Any Event, Doesn't Help Plaintiff ................................................... 21

14
15

        (3)    On the Merits, The First Prong of the Fourth Factor Indisputably Weighs In Favor of Fair Use and There Is A Disputed Issue of Fact As to The Second Prong ............. 22

16
17

4.    CONCLUSION ........................................................................................... 25

18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases:**                                                                              **Pages:**

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
    143 S.Ct. 1258 (2023) .............................................................................*passim*

*Bain v. Film Indep., Inc.*,
    2020 WL 5491314 (C.D. Cal. Aug. 6, 2020)...................................17

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)............................................................24

*Calkins v. Playboy Enterprises Int'l, Inc.*,
    561 F. Supp. 2d 1136 (E.D. Cal. 2008)...........................................17

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ........................................................................23

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
    983 F.3d 443 (9th Cir. 2020)...........................................................19

*Google LLC v. Oracle Am., Inc.*,
    141 S. Ct. 1183 (2021) ....................................................................15

*HiRel Connectors, Inc. v. United States*,
    2006 WL 3618009 (C.D. Cal. June 30, 2006) ..................................8

*Jada Toys, Inc. v. Mattel, Inc.*,
    518 F.3d 628 (9th Cir. 2008)...........................................................10

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003).............................................................17

*Lorador v. Kolev*,
    2023 WL 3477834 (9th Cir. May 16, 2023) .....................................7

*McGucken v. Pub. Ocean Ltd.*,
    42 F.4th 1149 (9th Cir. 2022).........................................................19

1
2

## **TABLE OF AUTHORITIES**
(Continued)

3
4

*Munoz v. Mayorkas,*
    2022 WL 3573916 (C.D. Cal. Feb. 10, 2022)..................................................9

5
6

*Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.,*
    2006 WL 8441799 (C.D. Cal. Nov. 29, 2006)..................................................7

7
8

*Rentmeester v. Nike, Inc.,*
    883 F.3d 1111 (9th Cir. 2018)..................................................9

9
10

*Ricketts v. CBS Corps.,*
    2020 WL 5005909 (C.D. Cal. July 23, 2020)..................................................8

11
12

*Rivera v. UHS of Delaware, Inc.,*
    2018 WL 6177235 (C.D. Cal. Mar. 14, 2018)..................................................8

13
14

*Rush v. Denco Ent., Inc.,*
    2012 WL 3206674 (C.D. Cal. Aug. 3, 2012)..................................................8

15
16

*Samaan v. Aetna Life Ins. Co.,*
    2019 WL 13000385 (C.D. Cal. Feb. 19, 2019)..................................................8

17
18

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,*
    5 F.3d 1255 (9th Cir. 1993)..................................................7

19
20

*Sicre de Fontebrune v. Wofsy,*
    39 F.4th 1214 (9th Cir. 2022)..................................................23

21
22

*Skidmore v. Led Zeppelin,*
    952 F.3d 1051 (9th Cir. 2020)..................................................9

23
24

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984) ..................................................13

25
26

*Talavera v. Glob. Payments, Inc.,*
    2023 WL 3080701 (S.D. Cal. Apr. 25, 2023)..................................................10

27
28

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n,*
    953 F.3d 638 (9th Cir. 2020)..................................................24

-4-

1

**TABLE OF AUTHORITIES**
(Continued)

2

3
**Additional Authority:**

4
*Nimmer on Copyright* § 13D.02 ................................................................. 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **1.    <u>INTRODUCTION</u>.**

2          Plaintiff Sedlik's motion for reconsideration of the Court's order denying his

3    summary judgment motion (and affirming in part and denying in part Defendants'

4    motion) (the "Order") is both procedurally flawed and substantively meritless.  It

5    should be denied out of hand.

6          Much of the motion is a thinly-disguised attempt to reargue his unsuccessful

7    summary judgment motion.  He relies on Ninth Circuit and district court cases that

8    do not change the law and, in many cases, are not controlling and cannot support a

9    motion for reconsideration.  The one case that does change the law is *Andy Warhol*

10   *Foundation for the Visual Arts, Inc. v. Goldsmith*, 143 S.Ct. 1258

11   (2023)("*Warhol*"), but Plaintiff misinterprets it.  As explained in Defendants'

12   motion for reconsideration (Dkt. 141), if anything, *Warhol* merits reconsideration in

13   the other direction, and a finding that the tattoo at issue is a fair use.

14         Plaintiff also seeks reconsideration based on a "change in fact," that is, the

15   recent deposition testimony of Bryan Vanegas, a tattoo artist who Plaintiff insists

16   "confirmed that he obtained a license from Mr. Sedlik to use the Miles Davis

17   photograph."  (Dkt. 143, p. 1:25-27.)  In fact, Vanegas' testimony is quite different

18   than Plaintiff represents.  Vanegas testified that he did *not* seek a license before

19   using Plaintiff's photograph as a reference for a tattoo he inked.  Rather, when

20   Plaintiff found out about the tattoo months later, Vanegas says Plaintiff "bullied"

21   and "threatened to sue" Vanegas for thousands of dollars.  Then, after he learned

22   that Vanegas had no money, Plaintiff changed his tune and proposed that they act

23   "as if" Vanegas had asked for permission ahead of time. Plaintiff then sent over a

24   supposed license – for $0 – which Vanegas never signed.  As discussed herein, this

25   new evidence does not merit reconsideration and rather further supports the Court's

26   finding that there are issues of fact on the fourth factor of the fair use analysis.

27         Bottom line, Plaintiff's arguments in this motion are simply wrong.  He

28   misstates the standard for substantial similarity, ignores the controlling en banc

opinion by the Ninth Circuit, and misinterprets dicta in an unpublished Ninth Circuit case.  He ignores the most important findings of *Warhol* and instead of separately analyzing the allegedly infringing uses as *Warhol* requires, he lumps them all together and applies standards nowhere to be found in *Warhol*.

In sum, the Court should deny Plaintiff's motion for reconsideration.

**2.     THERE IS NO BASIS TO RECONSIDER THE COURT'S ORDER THAT THERE IS A MATERIAL ISSUE OF FACT AS TO SUBSTANTIAL SIMILARITY.**

The Court denied Plaintiff's motion for summary judgment on copyright infringement because it found "there are triable issues as to substantial similarity under both the extrinsic and intrinsic tests."  (Dkt. 69, p. 16.)  Plaintiff seeks reconsideration of this order claiming that there is a change of law, within the meaning of C.D. Cal. Local Rule 7-18.  As set forth below, there is no change in the law and Plaintiff is flat out wrong as to the law on substantial similarity.

**A.     Local Rule 7-18 Does Not Permit Reconsideration On Substantial Similarity.**

Plaintiff argues that an unpublished Ninth Circuit case (*Lorador v. Kolev*, 2023 WL 3477834 (9th Cir. May 16, 2023)), and several district court decisions subsequent to the Court's Order hold that a court "does not engage in substantial similarity analysis where there is direct evidence of copying."  (Motion, p. 14.) None of these cases justify reconsideration under Local Rule 7-18.

Local Rule 7-18 requires "a material difference in . . . law from that presented to the Court before such decision" or "the emergence of . . . a change of law."  Thus, reconsideration requires "an intervening change in controlling law." *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 2006 WL 8441799, at *2 (C.D. Cal. Nov. 29, 2006), *quoting*, *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  It is the moving party's burden to

establish a basis for reconsideration.  *HiRel Connectors, Inc. v. United States*, 2006 WL 3618009, at *1 (C.D. Cal. June 30, 2006)(denying motion for reconsideration because moving party "has not met its burden for reconsideration").

Plaintiff makes no effort to explain how *Lorador* or the district court cases *change* the law.  To the contrary, they admit that *Lorador* "confirms" the law. (Motion, p. 1:13-14.)  *See Samaan v. Aetna Life Ins. Co.*, 2019 WL 13000385, at *1 (C.D. Cal. Feb. 19, 2019)(denying motion for consideration because "Plaintiff has not demonstrated that there is a material difference in law (much less controlling law) from that presented to the Court").

In any event, *Lorador*, as an unpublished Ninth Circuit decision, and the district court cases Plaintiff cites, are not controlling on this Court and therefore cannot support a motion for reconsideration.  *See Ricketts v. CBS Corps.*, 2020 WL 5005909, at *3 (C.D. Cal. July 23, 2020)(denying motion for reconsideration because, among other things, unpublished Ninth Circuit decision does not constitute a change in law "because it is unpublished"); *Rivera v. UHS of Delaware, Inc.*, 2018 WL 6177235, at *3 (C.D. Cal. Mar. 14, 2018)(denying motion for reconsideration because unpublished Ninth Circuit decision "does not constitute controlling law"); *Rush v. Denco Ent., Inc.*, 2012 WL 3206674, at *3 (C.D. Cal. Aug. 3, 2012)(denying motion for reconsideration because district court decisions "are only persuasive authority" and "not a controlling change in the law").

Finally, Local Rule 7-18 specifically states that "[n]o motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion."  Plaintiff made this *exact* argument in his papers in support of his summary judgment motion.  (Dkt. 53, p. 2:8-10:  "Because this is a case of undisputed direct copying, the Court can grant Summary Judgment even without conducting the substantial similarity analysis.").

"Motions for reconsideration are not opportunities to reargue motions."

1   *Munoz v. Mayorkas*, 2022 WL 3573916, at *1 (C.D. Cal. Feb. 10, 2022). That is

2   *precisely* what Plaintiff seeks to do here and therefore the motion as to the Court's

3   finding on substantial similarity should be rejected out of hand.

4   **B.    Plaintiff Misinterprets Case Law On Substantial Similarity.**

5          The en banc opinion in *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th

6   Cir. 2020), sets forth the Ninth Circuit's test for copyright infringement. Under

7   *Skidmore*, plaintiff must prove that defendant "copied protected aspects of the

8   work" and that element contains two separate components: "copying" and

9   "unlawful appropriation." *Id.*

10         *Skidmore* holds that the "copying" element can be shown by "direct evidence

11  of copying" or "circumstantially by showing that the defendant had access to the

12  plaintiff's work and that the two works share similarities probative of copying." *Id*.

13  The "unlawful appropriation" element, on the other hand, requires proof that the

14  works "share substantial similarities" which requires application of the extrinsic test

15  and intrinsic test applied by the Court here. *Id.*[1]

16         Here is where Plaintiff gets confused. As the Ninth Circuit notes, even

17  though "copying" and "appropriation" are "distinct concepts," they "too often [are]

18  referred to in shorthand lingo as the need to prove 'substantial similarity.'" *Id.*;

19  *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled*

20  *on other grounds by Skidmore,* 952 F.3d 1051 (9th Cir. 2020)("Unfortunately, we

21  have used the same term – 'substantial similarity' – to describe both the degree of

22  similarity relevant to proof of copying and the degree of similarity necessary to

23  establish unlawful appropriation").

24         While it is certainly true that evidence of direct copying is sufficient to

25  establish "copying," <u>no case states that evidence of direct copying eliminates the</u>

26  ―――――――――――

[1]      Nimmer refers to these elements as "factual copying" and "legal copying"
27  and notes that, with the *Skidmore* case, the Ninth Circuit joins the other circuits in
    finding that there are two distinct elements necessary to prove copying. Nimmer,
28  *Nimmer on Copyright* §§ 13D.02[B][1], 13D.02[D][3].

need to prove unlawful appropriation. Certainly, none of the cases cited in Plaintiff's motion say that. Indeed, with one exception, the cases Plaintiff cites don't even involve allegations of direct copying; any statement they make on the subject is non-binding dicta.

The exception to that is *Talavera v. Glob. Payments, Inc.*, 2023 WL 3080701 (S.D. Cal. Apr. 25, 2023). *See* Plaintiff's Motion, p. 15:18-20. In *Talavera*, the Court found that there was "incontrovertible direct evidence that Defendants exercised Plaintiffs' exclusive ownership rights without authorization." *Id*. at *12. But then the Court did *exactly the opposite* of what Plaintiff claims the rule is supposed to be. It held that, despite "the clear evidence of copying":

> [T]o establish unauthorized use, a plaintiff must also prove "that the defendant copied 'protected elements' of the [plaintiff's] work."

*Id*. at *13, *quoting*, *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636 (9th Cir. 2008). The Court then denied the summary judgment motion finding – despite direct evidence of copying -- "a narrow but genuine dispute as to whether the SunShop code is original and therefore protectable." *Id*.

*Skidmore* is controlling Ninth Circuit law. It requires a plaintiff to prove *both* copying *and* unlawful appropriation. Evidence of direct copying can establish the first part of this test (copying) but is irrelevant to the second (unlawful appropriation). Plaintiff has failed to prove any change in the law on substantial similarity and, in fact, the Court followed controlling law in finding a genuine issue of fact as to substantial similarity.

**3.    PLAINTIFF HAS SHOWN NO BASIS FOR THE COURT TO RECONSIDER ITS ORDER ON FAIR USE.**

Plaintiff seeks reconsideration of the Court's decision that there are triable issues of fact as to fair use. As shown below, the *only* change in the law is the

Supreme Court's *Warhol* decision and, if anything, that case should lead the Court to find that the Tattoo *is* a fair use; it in no way would change the Court's finding that there is a triable issue as to the other challenged uses. The other cases relied on by Plaintiff do not change controlling law and the new testimony does not constitute a new material fact and, frankly, does not help Plaintiff's case at all. This motion for reconsideration should be denied in its entirety.[2]

### A. *Warhol* And The First Fair Use Factor.

Plaintiff contends that *Warhol* is a change in controlling law requiring reconsideration of the Court's decision that there are triable issues of fact on the first factor of the fair use analysis. As set forth below, *Warhol* does somewhat change the law, but if *Warhol* were to change anything in the Order, it would be to cause the Court to hold as a matter of law that the Tattoo *is* a fair use. Bottom line, Plaintiff has not carried his burden of establishing a basis for reconsideration.

### (1) *Warhol* Holds that, On The First Fair Use Factor, The Court Must Separately Analyze Each Challenged Infringement.

Based on his papers, Plaintiff appears to have the mistaken impression that the Supreme Court held that Warhol's silkscreen portrait (the "Orange Prince") is not a fair use. (*See* Motion, at pp. 3, 7.) But *Warhol* held no such thing. From the start, the Court stated that its opinion was on the "narrow issue" of whether the first factor weighs in favor of a finding of fair use in the context of a single instance of

---

[2] It is unclear exactly what Plaintiff is asking the Court to do when it comes to the fair use defense. In denying Plaintiff's motion for summary judgment on copyright infringement, the Court found that there was a disputed issue of fact on substantial similarity and that alone was the reason for denying the motion. (Dkt 69, p. 16.) The Court reached the issue of fair use on Defendants' motion and found that Plaintiff had raised disputed issues of fact. (*Id*., p. 25.)

In his motion for reconsideration, Plaintiff says he is asking the Court to "deny Defendants' motion for summary judgment because pursuant to *Warhol* and *McGucken*, Defendants cannot prove that any of the factors favor fair use as a matter of law." (Dkt. 142, p. 3.) But the Court *already denied* Defendants' motion and there is no basis to "reconsider" what has already been denied.

commercial licensing of a photo of the Orange Prince "limited to the challenged use." *Warhol,* 143 S.Ct. at 1266. Thus, the Court "express[e]d no opinion as to the creation, display, or sale of any of the original Prince Series works." *Id*. at 1278.[3]

To that end, *Warhol* explains that "[t]he fair use provision, and the first factor in particular, requires an analysis of the specific 'use' of a copyrighted work that is alleged to be 'an infringement.'" *Id*. at 1277. Thus, "[t]he same copying may be fair when used for one purpose but not another." *Id*.

One of the many flaws of Plaintiff's analysis in his motion for reconsideration is he does not analyze separately the challenged uses by Defendants, that is, the Tattoo, the different social media posts, etc. He lumps them all together as if deciding whether one is or isn't a fair use will automatically apply to all the uses. That is precisely what *Warhol* says should not be done. This is yet another reason his motion should be denied.

> **(2)   Plaintiff Improperly Seeks To Re-Argue The Court's Finding on Commerciality.**

Under *Warhol*, the first fair use factor consists of a balancing of "the commercial nature of the use" against whether the use "has a further purpose or different character." *Id*. at 1277.  The Court concluded that there was a triable issue of fact on commerciality because Defendants "post[ed] photos of the Tattoo on their various social media platforms." (Dkt. 69, p. 21.)

---

[3]      Perhaps Plaintiff's most absurd interpretation of *Warhol* is the assertion that, under *Warhol*, "using a photograph as a reference . . . requires a license as a matter of law." (Dkt. 143, p. 18:21-23.) Plaintiff does not cite to where the *Warhol* Court supposedly made this finding; that's because the Court made no such finding. Nor would that square with the Court's express statement that its opinion addressed the "narrow issue" of application of the first fair use factor to a single instance of the licensing of a photograph to a magazine and that its affirming of the Second Circuit decision was "limited to the challenged use." *Id*. at 1266.  Indeed, the Orange Prince was admittedly based on a photographic reference, *but the Supreme Court never even addressed whether it was a fair use.*  That Plaintiff may have wished the Court made such a broad pronouncement does not make it true.

1  The *Warhol* opinion offers no new law on what is or isn't a commercial use.
2  Indeed, in arguing that the Court erred in finding a genuine issue of fact, Plaintiff
3  simply relies on older cases, some of which he cited in his original papers.  In any
4  event, without new law or new facts, there is no basis for the Court to reconsider
5  and somehow conclude that it is "undisputed" that the uses were commercial.[4]

6  On the merits, Plaintiff argues – without citation to authority – that the issue
7  is not whether a work is commercial or not commercial but rather whether a work is
8  commercial or "nonprofit educational."  (Dkt 143, p. 11:5-8.)  That, of course, is
9  wrong.  Years ago, in *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S.
10  417, 449 (1984), the Court found that "time-shifting for private home use" was a
11  fair use and, in analyzing the first fair use factor, noted that it must be
12  "characterized as a *noncommercial*, nonprofit activity."  (Emphasis supplied.)  *Sony*
13  did not require that time-shifting be an "educational" activity.

14  There is no basis under Local Rule 7-18 for the Court to reconsider its
15  decision on commerciality.  Because the first fair use factor requires that the
16  purpose or character of the use be balanced against the commercial/non-commercial
17  character of the use, that ends the analysis.  If there is a dispute of fact as to whether
18  the challenged uses are commercial, then there is a dispute of fact on the first factor
19  of the fair use analysis and resolution of that fact should be left to the jury.

20  **(3)** **Plaintiff Mischaracterizes *Warhol* On The "Different**
21  **Purpose or Character" Element of the First Fair Use Factor.**

22  As noted above, *Warhol* requires a balancing of the commercial nature of the
23  use as against "whether the use . . . has a further purpose or different character."  *Id*.
24  at 1277.   The examination must be "in the context of the particular use at issue."

25

26  _____
[4]   As noted, *Warhol* does hold that each challenged use must be analyzed
27  *separately*.  In their motion for reconsideration (Dkt. 141), Defendants argue that
this holding is new law and that if the Tattoo is analyzed separately, as *Warhol*
28  holds it should be, it is not a commercial use as a matter of law.

1   *Id*. at 1278 n.11.  A use with a further purpose or different character is said to be
2   "transformative."  *Id*. at 1275.

3       The Court addressed various elements it might look at to determine whether
4   there was a further purpose or different character.  For example, the Court held that
5   whether the challenged work conveys new expression "may be relevant" and that
6   "the meaning of a secondary work, as reasonably can be perceived, should be
7   considered to the extent necessary to determine whether the purpose of the use is
8   distinct from the original, for instance, because the use . . . provides otherwise
9   unavailable information about the original."  *Id.* at 1273, 1284.

10      The Court also held that the first factor "relates to the justification of the
11  use."  *Id*. at 1276.  If an original work and the secondary use "share the same or
12  highly similar purposes *and the secondary use is of a commercial nature*, the first
13  factor is likely to weigh against fair use, absent some other justification for
14  copying."  *Id.* at 1277 (emphasis added).[5]

15      Other facts are not relevant to the first factor.  Accordingly, the subjective
16  intent of the user does not determine the purpose of the use.  *Id*. at 1284.  On the
17  other hand, "the first factor does not ask whether a secondary use causes a
18  copyright owner economic harm."  *Id*.  at 1279 n.12.

19      Ultimately, the Court concluded that the purpose of the single challenged use
20  in the case – the licensing of a photo of the Orange Prince to a magazine – was
21  substantially the same as that of Goldsmith's photograph:  "Both are portraits of
22  Prince used in magazines to illustrate stories about Prince."  *Id.*  Because such

23

24  ⁵      Again, Plaintiff's motion makes the unsupported statement that "[t]here
    needs to be justification for the use of the copyrighted work."  (Motion, p. 3:23.)
25  *Warhol* certainly holds that justification is a relevant consideration – in particular if
    the works share similar purposes and are of a commercial nature.  *Id*. at 1277.
26  Indeed, at one point, the Court notes that "the commercial character of a secondary
    use should be weighed against the extent to which the use is transformative or
27  *otherwise justified*."  *Id*. at 1280 n.13 (emphasis added).  In other words, the more
    transformative the use, the more it is justified.
28

1   "environments" were not "distinct and different," AWF's licensing of the Orange

2   Prince image "shared the objectives" of Goldsmith's photograph.  *Id.* at 1279.

3   Further, because there was no dispute that AWF's use was commercial, "both

4   elements [of the first factor] point in the same direction" and the Court concluded

5   that the first factor weighed against fair use.  *Id.* at 1280, 1287.

6        In the next section, we do what *Warhol* requires (and what Plaintiff does not

7   do), that is, we apply *Warhol* separately to each of the challenged uses.

8              **(4)    Application of *Warhol* To the Challenged Uses.**

9                   **(a)    Tattoo.**

10       We discuss application of *Warhol* to the Tattoo in Defendants' motion for

11  reconsideration (Dkt. 141) in which we explain that the Tattoo – analyzed

12  separately as *Warhol* requires – is a noncommercial use and "[t]here is no doubt

13  that a finding that copying was not commercial in nature tips the scales in favor of

14  fair use."  *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021).

15       As also explained in that motion, unlike *Warhol*, the "environments" here are

16  "distinct and different."  Plaintiff's photograph was used to illustrate an article

17  about Miles Davis in a jazz magazine.   Kat Von D hand-inked a tattoo on the arm

18  of her friend.  Moreover, as the Court expressly found in the Order, the meaning of

19  the Tattoo, as perceived by the Court, provides otherwise unavailable information

20  about the original, that is, "transformed [Sedlik's Portrait] into a new . . . aesthetic."

21  (Dkt. 69, p. 21.)  Therefore, under the circumstances at issue here, *Warhol* – if

22  anything – would suggest a finding that the Tattoo is transformative as a matter of

23  law.  In any event, there is no basis to grant Plaintiff's motion for reconsideration.

24                  **(b)    Sketch.**

25       Plaintiff now contends that Kat Von D's sketch of Miles Davis, used in the

26  process of creating her hand-inked Tattoo is also an infringing use.  (Dkt. 35-18

27  (Ex. 202 to Plaintiff's MSJ); Dkt. 142, p. 3:6-9.)   This isn't something he argued in

28  the summary judgment motion and is therefore not a basis for reconsideration.

In any event, the sketch undoubtedly serves a further purpose and is of a different character.  The sketch was an outline of the Portrait then turned into a temporary stencil so that Kat Von D could show the client the size of the Tattoo she was planning on drawing free hand.   (Dkt. 33, Sep. Statement UF Nos. 40-50.) Kat Von D did not follow the stencil when she drew the Tattoo freehand but did her own interpretation.  (*Id.*, UF Nos. 53-55.)

In other words, the sketch had a completely different purpose than the Portrait.  The Portrait was used to illustrate an article in a magazine.  The sketch was used to size the tattoo that was to be inked on the arm of Kat Von D's friend. There is a genuine dispute about whether the sketch had a further purpose or different character.

### (c)   Social Media Posts of Process

One of the challenged uses is a social media post showing Kat Von D in the process of inking the Tattoo.  Half of the image is Kat Von D, and the other half shows the Tattoo in progress as well as the Portrait:



(Dkt. 35-27, Ex. 213 to Defs. Motion for Summary Judgment.)

It is without question that this challenged use has a different purpose and character than the Portrait.  The Portrait is a photograph of Miles Davis to be used as the cover of a jazz magazine.  This challenged use is an image of Kat Von D

creating a tattoo.   Use of the Portrait in this social media post does not in any way "achieve a purpose that is the same as, or highly similar to, that of the original work" and in no way is a "substitute for" or supplants the Portrait. *Id*. at 1274.

Courts have repeatedly granted summary judgment in favor of fair use where copyright works are – as here – incorporated into other works that serve a different function. *See Bain v. Film Indep., Inc.*, 2020 WL 5491314, at *4 (C.D. Cal. Aug. 6, 2020), *aff'd*, 2022 WL 17592422 (9th Cir. Dec. 13, 2022)(summary judgment for fair use where actor used clips of copyrighted film in reel provided to casting directors noting, "[u]nlike the Film, which seeks to tell a story involving the sexual exploitation of women, . . . [t]he reel's purpose is to provide information about Haid's acting abilities so that casting directors may become interested"); *Calkins v. Playboy Enterprises Int'l, Inc.*, 561 F. Supp. 2d 1136, 1141–42 (E.D. Cal. 2008)(granting summary judgment on fair use where Playboy magazine used photograph "in a new context to serve a different function (inform and entertain Playboy readers) than the original function (gifts for family and friends)," and therefore "did not supersede the function of the original Photograph"); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003)(use of "thumbnails" of copyrighted works in search engine is fair use because it "serves a different function" and "it would be unlikely that anyone would use [the] thumbnails for illustrative or aesthetic purposes because enlarging them sacrifices their clarity").

Plainly, the challenged social media post is transformative.

### (d)   Instagram Video

Another of the challenged uses is an Instagram video which is a compilation of videos of depicting Kat Von D in the process of inking different tattoos (including the Tattoo).  (Dkt. 33, Undisputed Fact 99.)  A portion of the video (Ex. 218) was previously lodged with the Court.  (Dkt. 36.)

For the same reasons set forth in section 3.A(4)(c), above, this video is transformative.

1

              **(e)**    **Social Media Post of Tattoo In Process.**

2        Another challenged use is a social media post depicting a "messy" progress

3 photo of a portion of the Tattoo with ink running down Mr. Farmer's skin:



12 (Dkt. 33, Undisputed Fact 96; Dkt. 35-21, Ex. 207 to Defs. Motion for Summary

13 Judgment.)

14        Again, this is a transformative use.  The photo shows only a small portion of

15 the Tattoo and has a clearly different purpose:   showing the progress of the Tattoo.

16               **(f)**    **Social Media Post of Completed Tattoo.**

17        Plaintiff also challenges a social media post depicting the completed Tattoo:



(Dkt. 33, Undisputed Fact 97; Dkt. 35-23, Ex. 209 to Defs. MSJ.)

This use is, once again, of a different purpose and character than the Portrait. The Portrait is a photo of Miles Davis used to illustrate an article about Miles Davis in a jazz magazine and this photograph is a photograph of a Tattoo used to demonstrate Kat Von D's work in hand-inking the Tattoo.  At the very least, there is a material dispute of fact on transformativeness.

> **(g)** **In Conclusion, Plaintiff Offers No Valid Basis To Reconsider The Court's Finding Of Genuine Issues of Fact On The First Fair Use Factor.**

The first fair use factor requires a balancing between the commercial nature of the use and whether it has a further purpose or different character.  The Court found that there was a dispute of fact as to commercial use and therefore the Court does not even need to reach the transformativeness analysis – if there is a dispute of fact as to commercial use, there can't be a balancing as required and therefore there must be a dispute of fact as to the first fair use factor.  And if the Court were to reach the second part of the test – further purpose and different character – and separately analyze each challenged use, that issue too is disputed and must be decided by a jury.  Accordingly, Plaintiff's motion should be denied.

> **B.** **Plaintiff Fails to Establish A Basis To Reconsider The Second and Third Fair Use Factors**.

Plaintiff asks the Court to reconsider its decision on the second and third fair use factors based on what it claims to be new law in the case of *McGucken v. Pub. Ocean Ltd.*, 42 F.4th 1149 (9th Cir. 2022), but *McGucken* has nothing new to say about the second and third fair use factors.

The part of *McGucken* that he claims is a change in controlling law is a quotation from a Ninth Circuit case from 2020, before his summary judgment papers were filed.  *See* Motion, p. 11:22-28, citing *McGucken* at 1162, which quotes from *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 456 (9th Cir.

2020).   If *Dr. Seuss* was so important, why didn't Plaintiff cite the case in his summary judgment papers?

As for third factor, Plaintiff again hints that *McGucken* is new law, even though it adds nothing new on the subject.  If there is any new law as to the third factor, it is *Warhol*, which held that "[t]he fair use provision . . . requires an analysis of the specific 'use' of a copyrighted work that is alleged to be 'an infringement.'" 143 S.Ct. at 1277.  The Court analyzed this third factor only as to the Tattoo and not to the social media posts, some of which show only portions of the Tattoo.  (Dkt 69, p. 23; Dkt. 33, Undisputed Fact 96.)   In any event, Plaintiff has failed to show a change in controlling law that justifies reconsidering the Court's decision.

## C.   <u>Plaintiff Offers No Basis for Reconsidering The Decision that There is a Genuine Issue of Fact As to the Fourth Fair Use Factor</u>.

Plaintiff also seeks reconsideration of the Court's decision that there is a genuine issue of fact as to the fourth factor of the fair use test.  He contends that there is both new law and new facts that require such reconsideration.  As shown below, there is no new law, the new facts work against him, and substantively, the Court's decision was correct.

### (1)   *McGucken* <u>Does Not Change Controlling Law On The Fourth Factor</u>.

Plaintiff argues that *McGucken*, 42 F.4th 1149, "clarifies the analysis" of the fourth factor.  (Dkt. 142, p. 2.)  Of course, that's not the test for a motion for reconsideration.  As noted above, Plaintiff must point to a *change* in controlling law and Plaintiff fails to explain how *McGucken* changes anything.

Indeed, virtually every reference to *McGucken* in Plaintiff's papers is a one in which the *McGucken* court <u>quotes from</u> an older case, in particular *Dr. Seuss,* 983 F.3d 443.[6]  In other words, there's nothing new in *McGucken*.

---

[6]      The citation to *McGucken* on page 12, line 24 to page 13, line 1 was also a direct quotation from *Dr. Seuss*, though Plaintiff doesn't identify it as such. *See*

-20-

"Motions for reconsideration are not opportunities to . . . raise issues and arguments that could have been, but were not, made in the original briefing." *Munoz,* 2022 WL 3573916, at *1.  Plaintiff had every opportunity to argue the application of *Dr. Seuss* in opposition to Defendants' summary judgment motion or in support of his own, and he chose not to do so.  There is no basis for reconsideration here.

> **(2)      The Vanegas Testimony Is Not A New Fact And, In Any Event, Doesn't Help Plaintiff.**

In the moving papers, Plaintiff argues that the testimony of Bryan Vanegas is a new material fact and that Vanegas "confirmed that he obtained a license from Mr. Sedlik to use the Miles Davis photograph." (Dkt. 143, p. 1:25-27.)  Were that what Mr. Vanegas testified to, it wouldn't be a new material fact because Plaintiff already offered evidence in opposition to Defendants' summary judgment motion that he had previously licensed the Portrait as a reference for a tattoo.  (Dkt. 69, p. 24.)  But the real problem here is that Plaintiff is not accurately describing Mr. Vanegas's testimony, which calls Plaintiff's credibility into question.

During discovery, Defendants requested that Plaintiff produce licenses, if any, of his photographs to tattoo artists and Plaintiff produced none.   (Dkt 33, Undisputed Fact 149.)   On November 22, 2022 – after the discovery cut-off and after the parties filed their original joint exhibit list for trial – Plaintiff suddenly produced a "license" with tattoo artist Bryan Vanegas for use of the Portrait as a reference for a tattoo.  (Defendants' Additional Fact ("DAF") 206;  Dkt. 144-2, pp. JSP8196-97.)  The license seemed odd as it was not signed by the supposed licensee (unlike Plaintiff's usual licenses). (*See* Dkt. 144-2, pp. 8198-8202.) Defendants' counsel located Mr. Vanegas and obtained Court approval to take his deposition.  (Dkt 109.)

---

*McGucken*, 42 F.4th at 1163, *quoting*, *Dr. Seuss*, 983 F.3d at 458.

At his deposition, Vanegas testified that, about 10 years ago, he inked a tattoo of Miles Davis using as a reference a photo his client provided him.  (DAF 207.)   That photo turned out to be the Portrait at issue in this case.  <u>Vanegas *did not* ask for or obtain a license from Plaintiff before inking the tattoo</u>.  (DAF 208.)

Plaintiff apparently saw Vanegas's tattoo on social media and started sending e-mails to Vanegas threatening to sue him for thousands of dollars.  (DAF 209.)  To Vanegas, it seemed like "bullying."  (DAF 210.)

After Vanegas told him he had no money, Plaintiff changed his tactics and told Vanegas that they were going to "present or act like [Vanegas] had asked for permission."  (DAF 211.)  Plaintiff sent Vanegas a two-page document called "Jeff Sedlik Photography License" that said it was for "Artist's Reference (Tattoo)," the license fee was $0.00, and that "$5,000 license fee waived as a professional courtesy."  (DAF 212.)

Plaintiff never asked Vanegas to sign the document and Vanegas never signed it.  (DAF 213.)  Vanegas never paid any license fee.  (DAF 214.)  Plaintiff never discussed with Vanegas that there was a license fee that was waived as a "professional courtesy."  (DAF 215.)

In other words, Vanegas' testimony does *not* support the contention that Sedlik had a history of licensing his photographs as references for tattoos; only that he had a history of threatening tattoo artists who have <u>not</u> sought licenses and that he has never made a penny licensing his photographs as a reference for tattoos.

**(3)**     **<u>On the Merits, The First Prong of the Fourth Factor Indisputably Weighs In Favor of Fair Use and There Is A Disputed Issue of Fact As to The Second Prong</u>.**

Even were the Court to find that *McGucken* is a change in controlling law, or that the Vanegas deposition is a new material fact, the Court should not reconsider its Order as to the fourth fair use factor.

The fourth factor requires courts to consider "not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

Based on the facts presented, this Court concluded that "[t]here is no evidence that the Tattoo is a substitute for the primary market for the Portrait." (Dkt. 69 at 23.) The Court further held that, given Sedlik's testimony that he "believed" he licensed the Portrait for use in the making of a tattoo and had been approached by tattoo artists several times to request a license to use the Portrait, he had raised a triable issue as to whether there is a market for future use of the Portrait in tattoos. (Dkt. 69, p. 24.)

In attempting to re-argue this finding, Plaintiff cites *McGucken* for the proposition that "where a defendant offers no evidence about the effect on the market for licensing of the copied work, the defendant cannot meet his burden and the fourth factor weighs against fair use." (Motion, p. 13.) But *McGucken* does not say that and rather based its decision on evidence in the record that showed there did exist a market and that Defendants' conduct would "destroy" it. *Id.* at 1164.[7]

In any event, this is not a case where defendants offered no evidence; the Court expressly states that "Defendants have pointed to sufficient evidence to meet their burden." (Dkt. 69, p. 24.) Plaintiff is simply rearguing a decision he lost.

---

[7]    *McGucken* in turn cites to a different case, *Sicre de Fontebrune v. Wofsy*, 39 F.4th 1214, 1226 (9th Cir. 2022), which it describes as weighing the fourth factor against a finding of fair use because there was no evidence "about the effect on the market for licensing the disputed photographs." But contrary to *McGucken's* description, the Court in *Sicre de Fontebrune* found that the fourth factor weighed against fair use because the challenged uses were commercial and not transformative and, as such, a presumption of market harm arose. *Id.* at 1226. Because there is a genuine dispute of fact as to whether the challenged uses here are commercial or transformative, such a presumption would not apply here.

1       Moreover, part of the problem with Plaintiff's analysis is that he

2   misunderstands what must be shown to establish this fourth factor.   The Ninth

3   Circuit has made very clear that "a copyright holder cannot prevent others from

4   entering fair use markets merely 'by developing or licensing a market for . . . other

5   transformative uses of its own creative work.'" *Tresóna Multimedia, LLC v.*

6   *Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 652 (9th Cir. 2020), *quoting,*

7   *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614–15 (2d Cir.

8   2006).  "Nor does the decision by secondary users to pay, or not pay, establish

9   whether fair use exists." *Id.*

10       For those reasons, when "the second use is transformative, market

11   substitution is at least less certain, and market harm may not be so readily inferred."

12   *Campbell*, 510 U.S. at 591.  Indeed, in *Tresóna*, the Ninth Circuit affirmed a grant

13   of summary judgment to defendant on fair use finding that "[b]ecause the use in

14   this case 'falls within a transformative market,' [Plaintiff] was not harmed by the

15   loss of any fees for the licensing of [his work]." *Id*. at 652.  The Ninth Circuit

16   further noted that "[f]air use exists when '[t]hose interested in obtaining plaintiff's

17   music for musical purposes would not find their need fulfilled by purchasing' the

18   defendant's allegedly infringing work." *Id*. at 651.

19       That, of course, is precisely the case here.  Nobody who wants to purchase or

20   license a copy of the Portrait from Plaintiff would find their needs fulfilled by

21   viewing a photo of the Tattoo or the process of making the Tattoo.  In any event,

22   because there is a genuine issue of fact as to whether the challenged uses are

23   transformative, under *Tresóna,* there must be a genuine issue of fact on factor four.

24       Finally, were the Court to reconsider this fourth factor, it would have to

25   consider the new deposition testimony from Vanegas which laid bare that

26   Plaintiff's testimony that he previously obtained a license for use of the Portrait as a

27   reference for a tattoo was highly misleading.  Plaintiff argued that this evidence

28   showed that there was a potential market for the licensing of photographs as a

reference for tattoos; Vanegas's testimony reveals that the only potential market here is the market for Plaintiff to threaten and bully "down on their luck" tattoo artists into allowing him to send an after-the-fact, zero dollar "license" and then to pretend that the work had been licensed in advance.  Vanegas' testimony is a direct attack on Plaintiff's credibility and is then additional evidence that there is a genuine dispute of fact on factor four of the fair use analysis.

**4.      CONCLUSION.**

For the foregoing reasons, Plaintiff's motion for reconsideration should be denied.

Dated:  August 21, 2023                Respectfully submitted,

GRODSKY, OLECKI & PURITSKY LLP

By:   /s/ Allen B. Grodsky
                Allen B. Grodsky

Attorneys for Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc.

-25-