GRODSKY, OLECKI & PURITSKY LLP
Allen B. Grodsky (SBN 111064)
*allen@thegolawfirm.com*
11111 Santa Monica Boulevard, Suite 1070
Los Angeles, California 90025
Telephone: (310) 315-3009
Facsimile: (310) 315-1557

Attorneys for Defendants
Katherine Von Drachenberg, Kat Von D, Inc.,
and High Voltage Tattoo, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JEFFREY B. SEDLIK, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-01102-DSF-MRWx<br><br>Before the Hon. Dale S. Fischer, U.S. District Judge<br><br>**DEFENDANTS' STATEMENT OF GENUINE ISSUES IN RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>Hearing<br>Date: April 18, 2022<br>Time: 1:30 p.m.<br>Place: Courtroom 7D<br>First Street Courthouse<br>350 West 1st Street<br>Los Angeles, CA 90012<br><br>Action filed: February 7, 2021 |

Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc. (together, "Defendants") submit the following Statement of Genuine Issues in Response to Plaintiff's Motion for Reconsideration.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS

| Plaintiff's Additional Undisputed Facts | Defendants' Response |
|---|---|
| **34.** As stated in Plaintiff's December 31, 2021 Second Supplemental Responses to Defendants' Interrogatory No. 8, the following list of elements are protected by copyright in the Iconic Miles Davis Photograph:<br><br>a. Position, shape and quality of shadows achieved by Plaintiff on brow, neck, cheekbones, eyes, hair, hand, jacket, and other elements, to control the rendering of those elements and their respective shapes, lines, and dimension<br><br>b. Transitions of highlights and shadows achieved by Plaintiff's selection and arrangement of the distance of light source to face, diffusion of sunlight, time of day chosen, blackout materials on lightsource and in proximity to subject | Objection: Hearsay; not a new fact pursuant to Local Rule 7-18. |

    c. Quality of light achieved by Plaintiff's selection and arrangement of position and type of lightsource, time of day, blackout materials used on lightsource and in proximity to subject

    d. Quality and density of shadows, achieved by Plaintiff's decision to create and maintain an opening in the studio tent at front of set, near camera, and by Plaintiff's discretionary selection and arrangement of fill cards to reflect daylight through that opening

    e. Reflectance on skin achieved by Plaintiff's adjustment of light modifier position, and by Plaintiff's direction to makeup artist to use reflecting oil on skin

    f. Sculpting of Miles Davis' physical features achieved by Plaintiff's control and adjustment of light source position, size, material, time of day chosen

    g. Vertical tilt of head relative to camera, directed by Plaintiff

    h. Horizontal tilt of head relative to camera, directed by Plaintiff

    i. Height of head relative to center of camera lens, controlled by Plaintiff

j. Only one ear visible, by choice of Plaintiff

k. Amount of ear visible, selected and controlled by Plaintiff

l. Highlight and shading on ear, controlled by Plaintiff's lighting

m. Curls of hair over ear, placed by Plaintiff

n. Position of curls of hair over ear, placed by Plaintiff

o. Rendering of vein popping on forehead achieved by Plaintiff's direction to subject to tense up during momentary peak of pose

p. Eye direction achieved by Plaintiff's direction and control over the angle of the head

q. Position and size of Plaintiff's rendering of upper and lower eyelids, achieved by Plaintiff's lighting and by Plaintiff's direction of expression, position, and pose

r. Position and size of irises and pupils, and corresponding position and size whites of eyes, achieved by Plaintiff's control over the light falling on the subject, and by Plaintiff's strategic discretionary placement

of fill cards to reflect daylight into eyes while avoiding pupil constriction

  s. Position and shape of highlights within eyes, achieved by Plaintiff's strategic discretionary placement of fill cards to reflect daylight into eyes and by Plaintiff's decision to shape the reflections in the eyes using Plaintiff's body in order to partially obscure those reflections

  t. Position and size of Plaintiff's rendering of skin above eyelids, achieved by Plaintiff's lighting adjustments and by Plaintiff's direction of expression, position, and pose

  u. Position and size of Plaintiff's rendering of eyebrows, achieved by Plaintiff's lighting adjustments and by Plaintiff's direction of expression, position, and pose

  v. Position and size of Plaintiff's rendering of highlights above left and right eyes, achieved by Plaintiff's lighting adjustments and by Plaintiff's direction of expression, position, and pose

  w. Position and size of Plaintiff's rendering of highlights and shading at cheek folds, achieved by Plaintiff's

lighting adjustments and by Plaintiff's direction of expression, position, and pose

 x. Rendering of furrow of brow, achieved by Plaintiff's direction to subject and by Plaintiff's lighting adjustments

 y. Rendering of size and shape of nose, fold of skin above top of nose, flaring of nostrils, amount and proportion of nostrils visible, and light and shade within nostrils, all achieved by Plaintiff's direction to subject as to pose and expression, and by Plaintiff's lighting and camera selections and adjustments

 z. Shape, position, size and quality of highlights on forehead, nose, cheeks and hand, achieved by Plaintiff's selection and control over position and angle of lighting and subject

 aa. Rendering of lip expression, achieved by Plaintiff's direction to purse lips, and emphasized by Plaintiff's control over lighting

 bb. Amount of lips visible left of finger, selected and arranged by Plaintiff

 cc. Amount of lips visible right of finger, selected and arranged by Plaintiff

    dd.  Position of fingertip relative to lips, selected and arranged by Plaintiff

    ee.  Position of fingernail relative to top lip, selected and arranged by Plaintiff

    ff.  Position of bottom of fingernail at junction of top and bottom of lip, selected and arranged by Plaintiff

    gg.  Position of bottom of bottom lip relative to finger, selected and arranged by Plaintiff

    hh.  Position of index finger relative to face, selected and arranged by Plaintiff

    ii. Angle of index finger, selected and arranged by Plaintiff

    jj. Highlight and shading on hand and on each finger, selected and arranged by Plaintiff

    kk.  Position, rotation, angle, visibility, bend at knuckles, and relative points of intersection of middle finger, ring finger and pinky finger (and their respective fingernails), selected and arranged by Plaintiff

    ll. Highlights and shading on side of hand facing camera, and highlight at back left edge of hand, controlled by Plaintiff's

lighting and by Plaintiff's direction to subject

    mm.  Distance between nose and mouth, determined by Plaintiff's selection of camera height and by Plaintiff's direction as to head tilt

    nn.  Rendering of relative sizes of hand and face, determined by Plaintiff's direction of subject's pose, and by Plaintiff's selection of camera focal length, camera position, camera angle, and camera-to-subject distance

    oo.  Rendering of relative sizes of nose and face, determined by Plaintiff's direction of subject's pose, and by Plaintiff's selection of camera focal length, camera position, camera angle, and camera-to-subject distance

    pp.  Visual compression of features, determined by Plaintiff's direction of subject's pose, and by Plaintiff's selection of camera focal length, camera position, camera angle, and camera-to-subject distance

    qq.  Highlight along right edge of forehead, achieved by Plaintiff's

adjustment of lighting, and by Plaintiff's direction to subject

    rr.  Shading at area above eyebrow at right, achieved by Plaintiff's adjustment of lighting, and by Plaintiff's direction to subject

    ss.  Hairline at forehead, achieved by Plaintiff's direction to hair stylist, and by Plaintiff's adjustment of placement of hair at hairline

    tt.  Shading and highlights on hair, controlled by Plaintiff's adjustment of lighting, and by Plaintiff's direction to hair stylist to add gloss to hair

    uu.  Shading at right of cheek, controlled by Plaintiff's adjustments to lighting, and by Plaintiff's positioning of black "flags" in close proximity to subject

    vv.  Rendering of black jacket, selected by Plaintiff for use in the photograph, the appearance of which was achieved by Plaintiff's control and adjustment of lighting to emphasize/de-emphasize details, highlights, shading on jacket

    ww.  Black background created by Plaintiff's selection and arrangement of blackout material at the rear of the outdoor

| | | |
|---|---|---|
| 1-11 | studio, and by blocking light from above to ensure dark background<br><br>xx. Tonal relationships at each intersection of subject and background, achieved by Plaintiff's artistic selection and arrangement of exposure, focal point, depth of field, lighting and control over subject position, wardrobe, development, and post production | |
| 12-17 | **35.** Kat Von D readily admitted that she used the Davis Photograph as a reference to create a derivative work of the Tattoo (Linger Decl., Ex. 1, 184:19-22). | Undisputed that Kat Von D used the Davis Photograph as a reference. Cited evidence does not support that Kat Von D admitted that she did so "to create a derivative work of the Tattoo." |
| 18-22 | **36.** Kat Von D admitted that she created the Tattoo only from the Davis Photograph—not from memory. She simply adapted the Davis Photograph using her style (Linger Decl., Ex. 1, 141:12-19). | Disputed. Cited testimony does not state that she created the Tattoo only from the Davis Photograph or that she "simply adapted" the Davis Photograph. |
| 23-28 | **37.** Kat Von D acknowledged that she used the Davis Photograph to create the Tattoo and that the Davis Photograph was fungible—she would have "just used another image" of Miles Davis to create the | Undisputed that if Farmer had brought in another image, she would have used another image as a reference. Cited evidence does not support the remaining fact. *See* Linger Decl., Ex. |

-10-

| | | |
|---|---|---|
| 1-4 | Tattoo if the Davis Photograph did not exist. (Linger Decl., Ex. 1, 183:22-25; 184:8-10). | 1, 183:22-25: "I used the [Davis Photograph] as a starting point." |
| 5-26 | **38.** Kat Von D readily admits that she created a depiction of Miles Davis based on the Davis Photograph, which she used as a reference for the Tattoo. See, e.g., ECF 41 at 28:19-20; Linger Decl., Ex. 1, 141:23-25; 184:19-22. She also admitted that: (a) she adapted the Davis Photograph to her style and interpretation (id., 102:1-2, 141:14-15); (b) she did not create the Tattoo from anything other than the Davis Photograph, including her memory (id., 89:7-14); (c) while making a tattoo, she always uses a copy of a reference next to her (id., 101:20-23); and (d) she looks at the photograph the entire time during the tattooing (id., 102:5-8). | Undisputed that Kat Von D used the Davis Photograph as a reference. Disputed as to other stated facts. See Linger Decl., Ex. 1, p. 102:1-13(while she used the Davis Photograph as a reference, "that's where the free hand comes in . . . . I can look at an image and see, you know, where I might want to up the contrast a little bit or make it a little softer. I definitely did a lot of those changes on the Miles Davis tattoo as well"); 141:14-15 ("I look at things and do my interpretation of them"); 183:1-10: "I don't think I used any the hair. I just used my own motion in it and added those waves of shading. All of it is so much different than the original photo"; 183:22-25 (Sedlik's portrait "was a starting point"), 184:19-22: "I didn't trace the portrait. I just used it as a reference.") |

| | |
|---|---|
| **39.** Sedlik not only testified that he has licensed the Davis Photograph as a reference, but specifically as a reference for a tattoo (Linger Decl., Ex. 7, at 104:8-105:5, 106:21-107:12). | Undisputed. |
| **40.** Sedlik produced reference licenses for the Davis Photograph, including for a tattoo by Bryan Vanegas (Linger Decl., Ex. 3). | Undisputed that Sedlik produced non-tattoo reference licenses. Dispute that Sedlik produced reference licenses for a tattoo. Sedlik produced no such licenses during discovery. (Grodsky Decl., ¶ 2.) The Vanegas "license" turned up long after the close of discovery and after the parties filed a joint exhibit list. (Grodsky Decl., ¶ 3.) Vanegas testified that he did not enter into a license with Sedlik (or even discuss a license) before inking a tattoo of Miles Davis using Sedlik's photo as a reference. (Grodsky Decl., Ex. A, pp. 8:3-21, 9:7-14.) Sedlik then contacted Vanegas and "bullied" and "threatened to sue" him for thousands of dollars. (Grodsky Decl., Ex. A, pp. 9:15-10:10; 10:11-11:4, 18:24-19:22, 20:25-22:3, 22:7-23:8, 29:9-30:5.) When Sedlik learned that |

| | |
|---|---|
| | Vanegas had no money, he then told Vanegas that they would pretend as if they had a license and he sent over a $0 "license." (Grodsky Decl., Ex. A, pp. 12:4-13.2.) Vanegas never signed, nor was he asked to sign, the license, nor did he pay a license fee. (Grodsky Decl., Ex. A, pp.13:3-21, 15:6-8.) |
| **41.** Bryan Vanegas, confirmed in a July 31, 2023 deposition that (a) he obtained a license from Sedlik to use the Davis Photograph as a reference (Linger Decl., Ex. 2, at 12:8-15; 13:5-7, 13:21-22; Ex. 3); (b) as a tattoo artist, he (or the shops he has worked in) purchase tattoo flash books, which books provided a license to tattoo artists to use the contained illustrations as a reference, and that by buying the books, he has the right to use those images as a reference (id., Ex. 2, at 31:13-36:4, Ex. 4); (c) he was familiar with tattoo artists offering and selling licenses of their illustrations and tattoo designs for profit (id., Ex. 2, at 43:8-21; Ex. 5); (d) freehand tattooing is drawn directly on the skin with | (a) Disputed. The Vanegas "license" turned up long after the close of discovery and after the parties filed a joint exhibit list. (Grodsky Decl., ¶ 3.) Vanegas testified that he did <u>not</u> enter into a license with Sedlik (or even discuss a license) before inking a tattoo of Miles Davis using Sedlik's photo as a reference. (Grodsky Decl., Ex. A, pp. 8:3-21, 9:7-14.) Sedlik then contacted Vanegas and "bullied" and "threatened to sue" him for thousands of dollars. (Grodsky Decl., Ex. A, pp. 9:15-10:10; 10:11-11:4, 18:24-19:22, 20:25-22:3, 22:7-23:8, 29:9-30:5.) When Sedlik learned that Vanegas had no money, he then told |

| | |
|---|---|
| a pen before ink is applied, or is tattooed directly on the skin without the aid of a drawing or stencil (id., Ex. 2, at 46:5-47:4); and (e) at the time Vanegas negotiated the reference license with Sedlik for the Davis Photograph, he reviewed a page on Sedlik's website that set forth the various licenses Sedlik grants, including licenses for artists' reference for the creation of tattoos (id., Ex. 2, at 49:7-10, 49:25-50:15; 54:20-55:9; Ex. 6). | Vanegas that they would pretend as if they had a license and he sent over a $0 "license." (Grodsky Decl., Ex. A, pp. 12:4-13.2.) Vanegas never signed, nor was he asked to sign, the license, nor did he pay a license fee. (Grodsky Decl., Ex. A, pp.13:3-21, 15:6-8.)<br><br>(b)  Objection: Not new evidence within the meaning of Local Rule 7-18; irrelevant.<br><br>(c)  Objection: Not new evidence within the meaning of Local Rule 7-18; irrelevant.<br><br>(d)  Objection. Improper opinion testimony.<br><br>(e)  Disputed. Vanegas specifically testified "I don't exactly remember" when asked if the language shown to him was on Sedlik's website at the time of his communications with Sedlik. (Linger Decl., Ex. 2, p. 50:16-20.) |

| | |
|---|---|
| **42.** Kat Von D admitted that she printed out copies of the Davis Photograph and used the traced sketch to produce the Tattoo (ECF 35-1 at 2-3, ¶¶6-9; Linger Decl., Ex. 1, at 122:10). | Undisputed that Kat Von D printed out a copy of the image. Disputed that she "used the traced sketch to produce the Tattoo." (Dkt. 35-1, ¶ 6: the line drawing "served as a guide or map as I did my freehand work later in the process" and "help[ed] show the client the size of the tattoo and help[ed] locate a place for the tattoo on the client's body.") |

## ADDITIONAL MATERIAL FACTS

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| 206. On November 22, 2022 – after the discovery cut-off and after the parties filed their original joint exhibit list for trial – Plaintiff for the first time produced a "license" with Bryan Vanegas for use of the Portrait as a reference for a tattoo. | Grodsky Decl., ¶ 3. |
| 207. At his deposition, Vanegas testified that, about 10 years ago, he inked a tattoo of Miles Davis using as a reference a photo his client provided him. That photo turned out to be the Portrait at issue in this case. | Grodsky Decl., Ex. A, pp. 8:3-21. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| 208. Vanegas *did not* ask for or obtain a license from Plaintiff before inking the tattoo. | Grodsky Decl., Ex. A, p. 9:7-14. |
| 209. Plaintiff apparently saw Vanegas's tattoo on social media and started sending e-mails to Vanegas threatening to sue him for thousands of dollars. | Grodsky Decl., Ex. A, pp. 9:15-10:10; 10:11-11:4, 18:24-19:22, 20:25-22:3, 22:7-23:8. |
| 210. To Vanegas, Plaintiff's conduct seemed like "bullying." | Grodsky Decl., Ex. A, pp. 22:7-23:8, 29:9-30:5. |
| 211. After Vanegas told him he had no money, Plaintiff changed his tactics and told Vanegas that they were going to "present or act like [Vanegas] had asked for permission." | Grodsky Decl., Ex. A, pp. 12:4-13.2. |
| 212. Plaintiff sent Vanegas a two-page document called "Jeff Sedlik Photography License" that said it was for "Artist's Reference (Tattoo)," the license fee was $0.00, and that "$5,000 license fee waived as a professional courtesy." | Grodsky Decl., Ex. A, pp. 12:4-13:2; Dkt. 143-5, Plaintiff's Ex. 3. |
| 213. Plaintiff never asked Vanegas to sign the document and Vanegas never signed it. | Grodsky Decl., Ex. A, p. 13:3-21. |

| **Defendants' Additional Fact** | **Supporting Evidence** |
|---|---|
| 214. Vanegas never paid any license fee. | Grodsky Decl., Ex. A, p. 15:6-8. |
| 215. Plaintiff never discussed with Vanegas that there was a license fee that was waived as a "professional courtesy." | Grodsky Decl., Ex. A, p. 15:9-17. |

Dated: August 21, 2023          GRODSKY, OLECKI & PURITSKY LLP


By:   /s/ Allen B. Grodsky
            Allen B. Grodsky

Attorneys for Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc.