GRODSKY, OLECKI & PURITSKY LLP
Allen B. Grodsky (SBN 111064)
*allen@thegolawfirm.com*
11111 Santa Monica Boulevard, Suite 1070
Los Angeles, California 90025
Telephone:  (310) 315-3009
Facsimile:   (310) 315-1557

Attorneys for Defendants
Katherine Von Drachenberg, Kat Von D, Inc.,
and High Voltage Tattoo, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JEFFREY B. SEDLIK, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-01102-DSF-MRWx<br><br>Before the Hon. Dale S. Fischer, U.S. District Judge<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND FOR PARTIAL SUMMARY JUDGMENT (DKT 69)**<br><br><u>Hearing</u><br>Date:      September 18, 2023<br>Time:      1:30 p.m.<br>Place:     Courtroom 7D<br>               First Street Courthouse<br>               350 West 1st Street<br>               Los Angeles, CA 90012<br><br>Action filed:   February 7, 2021<br>Trial:          November 28, 2023 |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

1.    INTRODUCTION ................................................................................ 3

2.    THE ORDER SHOULD BE RECONSIDERED AS THE
      TATTOO – EXAMINED SEPARATELY – IS INDISPUTEDLY
      NON-COMMERCIAL ........................................................................ 4

3.    BASED ON *WARHOL*, THE TATTOO HAS A SUFFICIENTLY
      FURTHER PURPOSE AND DIFFERENT CHARACTER THAN
      THE PORTRAIT ................................................................................ 7

4.    CONCLUSION .................................................................................. 11

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                  <u>Page(s)</u>

3

4

*A&M Recs., Inc. v. Napster, Inc.,*
        239 F.3d 1004 (9th Cir. 2001)......................................................... 5

5

6

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith,*
        143 S. Ct. 1258 (2023) ........................................3, 4, 7, 8, 9, 10, 11

7

8

*Google LLC v. Oracle Am., Inc.,*
        141 S. Ct. 1183 (2021) ............................................................... 7, 9

9

10

*Hannley v. Mann,*
        2023 WL 3407183 (C.D. Cal. Mar. 8, 2023) ................................ 4, 7

11

12

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.,*
        780 F. Supp. 1283 (N.D. Cal. 1991), *aff'd,* 964 F.2d 965 (9th Cir.), *cert.*
        *denied,* 507 U.S. 985 (1992) ............................................................ 5

13

14

*O'Neil v. Ratajkowski,*
        563 F. Supp. 3d 112 (S.D.N.Y. 2021) ............................................. 6

15

16

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
        464 U.S. 417 (1984) ........................................................................ 5

17

18

*Stern v. Does,*
        978 F. Supp. 2d 1031 (C.D. Cal. 2011),
        *aff'd,* 512 F. App'x 701 (9th Cir. 2013) ...................................... 4, 5

19

20

*Wong v. Vill. Green Owners Ass'n,*
        2015 WL 12672092 (C.D. Cal. Mar. 20, 2015) ............................... 5

21

22

*Worldwide Church of God v. Philadelphia Church of God, Inc.,*
        227 F.3d 1110 (9th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001)................ 6

23

24

## <u>OTHER</u>

25

4 *Patry on Copyright* § 12:25 .................................................................... 11

26

27

28

1   **1.     INTRODUCTION.**

2       Defendants' Motion for Reconsideration of the Court's Order granting in part

3   and denying in part their summary judgment motion (the "Order") was limited to

4   one narrow issue:  whether, based on new law in the Supreme Court's recent

5   decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 143 S.

6   Ct. 1258 (2023)("*Warhol*"), the single tattoo inked for free by Defendant Kat Von

7   D on the arm of her friend (the "Tattoo") is a indisputably a fair use.  Nothing in

8   Plaintiff's opposition persuasively argues to the contrary.

9       First, Plaintiff concedes that *Warhol* requires each challenged use to be

10  analyzed separately for fair use.  On the commerciality element of the first fair

11  factor, analyzing the Tattoo separately changes the result.  Unlike the other

12  challenged uses (social media posts) for which there is a triable issue as to

13  commerciality, there is no such issue as to the Tattoo which was inked for free by a

14  tattoo artist who doesn't charge for her work.  Plaintiff tries to argue to the contrary

15  by citing to cases involving the download of thousands of infringing music files or

16  the distribution of thirty thousand copies of a copyrighted work, as if those cases

17  could possibly apply to the facts here.  Similarly, Plaintiff ignores the ruling of

18  *Warhol* and tries to bootstrap the potential commerciality of the social media posts

19  onto the Tattoo, arguing that if certain uses are commercial then all must be

20  considered commercial.  The arguments are simply meritless.

21      Second, Plaintiff extracts from *Warhol* rules that the Supreme Court never

22  made.  The *Warhol* court's narrow decision holds that licensing of a photograph of

23  Prince for its "typical" use – *as the photograph on the cover of a magazine*

24  (something the photographer in *Warhol* had done many times) is not a further

25  purpose or different character.  Plaintiff twists this holding into a holding that *any*

26  *use* of his photograph (ignoring the distinct and different environment of the Tattoo

27  and the changed character of the use) must not be a fair use.  But that is not what

28  *Warhol* says.  And his second argument, that using his photograph as a reference

for a tattoo *is* a typical use is absurd:  he claims to have licensed his photograph one time many years ago for use as a reference for a tattoo but the recent deposition of the tattoo artist involved shows this not to be the case and his zero-dollar "license" that he e-mailed to the tattoo artist long after that tattoo was inked and which the tattoo artist never countersigned does not establish a typical use.

Case law is clear that a non-commercial use creates a presumption of fair use. Therefore, Defendants have a far lesser burden to show a further purpose or different use and Defendants have more than done so.  Weighing the first factor now in favor of fair use, with the other factors as already analyzed by the Court should result in a finding that the Tattoo is indisputably a fair use and the Court should reconsider its Order as to that issue only and find the Tattoo to be a fair use.

**2. THE ORDER SHOULD BE RECONSIDERED AS THE TATTOO – EXAMINED SEPARATELY – IS INDISPUTEDLY NON-COMMERCIAL.**

Plaintiff does not dispute that *Warhol* requires each challenged use to be examined separately under the fair use analysis, in particular the first factor.  (Dkt. 148, p. 3:2-6.)  Instead, Plaintiff argues in vain that Defendants' inking of a tattoo as a gift for a friend is somehow "commercial."

Defendants' argument on this issue is simple.  Kat Von D (who for years has not charged for inking tattoos) inked a single tattoo on the arm of a friend.  That is a non-commercial use.  *See, e.g., Stern v. Does*, 978 F. Supp. 2d 1031, 1045 (C.D. Cal. 2011), *aff'd*, 512 F. App'x 701 (9th Cir. 2013)(finding non-commercial use where "[t]here is no evidence that Defendants stood to profit in any manner from their reproduction of Plaintiff's listserv post, let alone evidence that they intended to commercially exploit it"); *Hannley v. Mann*, 2023 WL 3407183, at *1 (C.D. Cal. Mar. 8, 2023)(no commercial use where "there is no evidence that the Twitter, website, or Youtube pages [on which defendants posted three photographs from

-4-

plaintiff's website and social media] generated any profits"); *Wong v. Vill. Green Owners Ass'n*, 2015 WL 12672092, at *1, 4 (C.D. Cal. Mar. 20, 2015)(defendant's use of a National Historic Landmark nomination consisting of a 78-page form and 38 pages of photographs is non-commercial because defendant "has provided uncontroverted evidence that it neither charges nor receives profits or revenues from its use of the nomination").

Ignoring cases on non-commercial use with any factual similarity to this case, Plaintiff instead embarks on a series of wild goose chases.  First, Plaintiff insists that it is not sufficient for Defendants to establish that the challenged use was not commercial; rather, in his view, Defendants must show that the Tattoo was "non-profit educational."  (Dkt. 148, pp. 1-2: "The dichotomy is between commercial use and *non-profit educational use*")(emphasis in original).  That is not the law.  Courts have repeatedly found uses that are in no way "educational" are non-commercial and weigh in favor of a finding of fair use.  *See, e.g., Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449 (1984)("time-shifting for private home use" must be "characterized as a noncommercial, nonprofit activity" weighing in favor of fair use); *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 780 F. Supp. 1283, 1293 (N.D. Cal. 1991), *aff'd*, 964 F.2d 965 (9th Cir.), *cert. denied*, 507 U.S. 985 (1992)("a family's use of a Game Genie for private home enjoyment must be characterized as a non-commercial, nonprofit activity . . . establish[ing] a presumption of fair use").  In addition, the uses in *Hanley*, *Stern*, and *Wong*, cited above, were not educational and yet all were found to be non-commercial and to weigh in favor of a finding of fair use.

Second, Plaintiff cites *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001)("*Napster*"), for the proposition that "repeated and exploitative copying of copyrighted works, even if the copies are not offered for sale, may constitute a commercial use."  *Napster* involved the downloading of *thousands* of songs, thus justifying the Court's reference to "repeated" copying.  *Id*. at 1020, n.5

1   (Napster was informed of "more than 12,000 infringing files").  The facts in

2   *Napster* have no conceivable application to the single tattoo in this case.

3        Third, Plaintiff argues the Tattoo was a commercial use because, even if she

4   wasn't paid to do so, Kat Von D received other benefits from it.  (Dkt. 148, p.

5   11:11-14.)   There certainly are a few cases where courts find a use to be

6   commercial because of non-monetary benefits received by the user, but none apply

7   here.  The primary Ninth Circuit case Plaintiff relies upon is *Worldwide Church of*

8   *God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000) *cert.*

9   *denied*, 532 U.S. 958 (2001), where defendant (a church that broke off from

10  plaintiff church), distributed "approximately thirty thousand copies" of plaintiff's

11  copyrighted text to its members and potential members, who tithe 10% of their

12  income to the church.  *Id.* at 1113, 1118.  "During the time of [defendant's]

13  production and distribution of copies of [the copyrighted text], its membership grew

14  to some seven thousand members."  *Id*. at 1118.  In other words, in *Worldwide*

15  *Church of God*, there was *actual evidence* presented by the plaintiff of benefits

16  (increased membership and tithing) that could be attributed to distribution of thirty

17  thousand copies of a copyrighted work.  There is no such evidence in this case but

18  rather just rank speculation that, by tattooing the arm of a friend, Kat von D

19  "generated opportunities for other tattoo artists working at the shop."  (Dkt. 148, p.

20  12:13-23.)  Plaintiff's unsupported speculation does not create a commercial use.

21       Finally, Plaintiff tries to prove the commerciality of the Tattoo by pointing to

22  the alleged commerciality of *other* challenged uses (the social media posts).[1]

23  _____

24  [1]    On this motion for reconsideration, Plaintiff does not challenge the Court's
    finding that there is a triable issue as to whether the social media posts are

25  commercial.  Indeed, that finding is supported by a very similar case which found
    social media posts just like the ones at issue to be "slightly commercial" at best and

26  not to weigh heavily against a finding of fair use.  In *O'Neil v. Ratajkowski*, 563 F.
    Supp. 3d 112, 130 (S.D.N.Y. 2021), a professional model and actress, who heads a

27  clothing line, posted on Instagram a photograph of her taken by a paparazzi.  The
    Court held that because plaintiff "did not 'directly and exclusively acquire[ ]

28  conspicuous financial rewards from [her] use of the copyrighted material,' as she

Plaintiff is of course free to argue at trial that the social media posts are commercial. But using the social media posts to argue that the Tattoo is commercial is precisely what *Warhol* prohibits. *Warhol* requires "an analysis of the specific 'use' of a copyrighted work that is alleged to be 'an infringement.'" And in determining commerciality on the facts of that case, the Court looked only at the challenged use – AWF's "licens[ing of] the Orange Prince to Conde Nast for $10,000." *Id.* at 1279. The Court ignored the fact that AWF sold his Prince series works to collectors and galleries (*id.* at 1268 n.2) because *that was not relevant*.

Under *Warhol*, the question is whether the challenged use is commercial or non-commercial. The commerciality of other challenged uses, like the social media posts, is irrelevant. The Tattoo here – inked for free by a tattoo artist who no longer charges for her work – was unquestionably non-commercial.

3.    <u>**BASED ON *WARHOL*, THE TATTOO HAS A SUFFICIENTLY FURTHER PURPOSE AND DIFFERENT CHARACTER THAN THE PORTRAIT**</u>.

*Warhol* provides that the determination of whether "a use is commercial as opposed to nonprofit" is to be "weighed against the degree to which the use has a further purpose or different character." *Id.* at 1276. Plaintiff does not (and cannot) dispute that "a finding that copying was not commercial in nature tips the scales in favor of fair use." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021). In other words, "[n]oncommercial or nonprofit use of a copyrighted work is presumptively fair." *Hannley v. Mann*, 2023 WL 3407183, at *3 (C.D. Cal. Mar. 8, 2023). Because the Tattoo is non-commercial, a far lesser showing of further purpose or different character is required.

---

was not paid to post this particular story" and because the infringed work was not "displayed directly next to advertisements, or in a section almost exclusively meant for advertisements," the use was only "slightly commercial" and the Court afforded the factor "little weight."

As a preliminary matter, in addressing this element, Plaintiff completely misunderstands the relationship between a derivative work and the fair use analysis. Plaintiff seems to think that if a work is a derivative work, it cannot be a fair use. That is flat out wrong. *Warhol* expressly found that, while "the owner has a right to derivative transformations of her work," this right is '[s]ubject to' fair use," and "[t]he two are not mutually exclusive." 143 S.Ct. at 1275, *quoting* 17 U.S.C. §§ 106, 107. Rather, a derivative work can be a fair use but the degree of transformation must "go beyond that required to qualify as a derivative." *Id.*[2] *Warhol* expressly stated that its analysis "does not mean, however, that derivative works borrowing heavily from an original cannot be fair uses." *Id.* at 1280. In other words, *all* fair uses are derivative works; the question is whether weighing its commerciality against its further purpose and different character results in a finding of fair use. Plaintiff's argument about the Tattoo being a derivative work gets him nowhere. [3]

Plaintiff also misses the entire point of *Warhol's* analysis regarding how to analyze the similarity or difference in the purpose or character of the uses. Plaintiff states that "both the Tattoo and the Davis Photograph had substantially the same use – to display a portrait of Miles Davis." (Dkt. 148, p. 3.) That is the same analysis the Second Circuit used in *Warhol*, finding that the purpose of the Goldsmith photograph and the Warhol work was identical as "portraits of the same

_____

[2]    At least one commentator has suggested that this passage from Warhol "does not represent a narrowing of fair use: the standard of originality for derivative works, like all works, is very low." Rather, "the Court is simply repeating its basic holding that purpose under the first factor must go beyond merely saying you have a different purpose: there has to be some change to the original, or new context with new insights." 4 *Patry on Copyright* § 12:25

[3]    Plaintiff makes the similarly bizarre argument that "Defendants implicitly argue . . . that a change in medium is from photographic paper to skin is somehow not subject to the Copyright Act's protection from unauthorized derivative works." (Dkt. 148, p. 7:4-6.) Defendants have never made that argument. Rather, Defendants argue that, under the *Warhol* decision, the first fair use factor, applied to the Tattoo, weighs in favor of a finding of fair use.

1  person." *Id.* at 1278, n.11.  But the Supreme Court *rejected that analysis* and held

2  that it "[went] somewhat 'further and examine[s] the copying's more specifically

3  described 'purpose[s]' in the context of the particular use at issue (here, in a

4  magazine about Prince)." *Id*. at 1278 n.11, quoting *Google*, 141 S.Ct. at 103.  Thus,

5  for the *Warhol* court, the two uses were identical because they were portraits of the

6  same person in a magazine about that person – not merely that they were portraits

7  of the same person.

8       Plaintiff then argues that Kat Von D's use of the Tattoo is the same as his use

9  because, once many years ago, he licensed the Portrait for use by a tattoo artist.  As

10 explained in Defendants' opposition to Plaintiff's motion for reconsideration, that

11 suggestion is, at best, an exaggeration and the "license" he is referring to is a sham.[4]

12 Nevertheless, it doesn't matter.  The reason the *Warhol* court focused on the fact

13 that both parties "sold images of Prince . . . to magazines to illustrate stories about

14 the celebrity" is that that is "the typical use made of Goldsmith's photographs." *Id.*

15 at 1281 n.15.  And by typical use, the Supreme Court notes that Goldsmith's photos

16 of Prince appeared on or in People, Reader's Digest, Guitar World, Musician

17 Magazine, Rolling Stone, Time, Newsweek, and Vanity Fair.  *Id*. at 1269, 1278.

18 That is a typical use.  Plaintiff's one time, many years ago supposed zero-dollar

19 "license" to a tattoo artist is not the "typical use" of the Portrait.

20      To the contrary, the typical use of the Portrait is the sale of prints of the

21 Portrait and licensing to magazines.  (Dkt. 33, UF Nos. 137, 142, Dkt 35-12, p.

22 ────────────────

[4]    At time of the summary judgment motion, Plaintiff testified that some years
23 back he had issued a license to a tattoo artist to use the Portrait as a reference but he
   couldn't find it, couldn't remember the name of the artist, and couldn't remember
24 how much it was for. Then, close to the scheduled trial date, Plaintiff suddenly
   found and produced the "license."  Defendants obtained Court permission to depose
25 the tattoo artist who supposedly was party to the license and that deposition
   revealed that the tattoo artist did <u>not</u> seek a license or permission before inking the
26 tattoo.  Rather, after discovering the tattoo, Plaintiff threatened to sue the tattoo
   artist, and then once he learned that tattoo artist had no money, Plaintiff insisted
27 that they pretend "as if" they had entered into a license and sent over a zero-dollar
   license which the tattoo artist never signed.  (Dkt. 145, § 3.C(2).)
28

39:12-22, Dkt. 35-19, Dkt. 69, p. 24.)  The challenged use at issue on this motion –
a hand-inked tattoo of Davis on the arm of Kat Von D's friend that added
"movement and a more melancholy aesthetic." (Dkt. 69, pp. 20-21) – is a "distinct
and different" "environment" from those typical uses.  *Id.* at 1278-79.  Given the
non-commercial nature of the Tattoo as discussed above (and the resulting
presumption of fair use), the Tattoo's character is sufficiently different to establish
that the first fair use factor weighs in favor of a finding of fair use.

Plaintiff further asserts that it is Defendants' position that evidence that the
Tattoo provides a new aesthetic constitutes transformation.  (Dkt. 148, p. 1.)  But
Defendants never made that argument.  Defendants rather argued that *Warhol* holds
that new expression (such as a new aesthetic) is "not, without more, dispositive of
the first factor," but it "may be relevant to whether a copying use has a sufficiently
distinct purpose or character."  *Id.* at 1273.  *See also id.* at 1282 ("meaning or
message was simply relevant to whether the new use served a purpose distinct from
the original, or instead superseded its objects").[5]  The different aesthetic that the
Court found in the Tattoo is *relevant* then, to the analysis, but isn't by itself
sufficient to establish a further purpose and different character.  This is just one
piece of evidence to add to the showing that the uses are different because of
"distinct environments."

Finally, Plaintiff suggests that transformation cannot exist unless there is a
"compelling" justification.  (Dkt. 148, p. 2:10-11.)  Certainly, *Warhol* holds that
justification of the use is a relevant inquiry in analyzing the first fair use factor.  *Id.*
at 1276.  But it does not say that justification is required let alone that a *compelling*
justification is required.  To the contrary, *Warhol* holds that, "[i]f an original work

---

[5]    At one point, the Supreme Court noted that "[t]he application of an artist's
characteristic style to bring out a particular meaning that was available in the
photograph is less likely to constitute a further purpose."  *Id.* at 1285.  "Less
likely" means what it says.  The Court did not say "does not" constitute a further
purpose; only that it is less likely.  Here, with the presumption of fair use and the
distinct and different purposes, it is sufficient.

and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying." *Id*. at 1277.  In other words, *if* the use is commercial and *if* the uses share the same or highly similar purposes, then you have to look to justification.  But nowhere does *Warhol* require that where, as here, there is a non-commercial use and the uses do not share the same purposes, any justification need be shown at all.

Given that the non-commercial nature of the Tattoo creates a presumption of fair use, and given that the purposes of the Tattoo and the Portrait are not similar, Defendants have established that first factor – applied to the Tattoo – weighs in favor of a finding of fair use as a matter of law.

**4.    <u>CONCLUSION</u>.**

For the reasons set forth herein, the Court should reconsider its Order and find that the Tattoo (1) is a non-commercial use and (2) that the first fair use factor weighs in favor of a finding that the Tattoo is a fair use.  In addition, for the reasons set forth in the moving papers, The Court should find that, weighing all the factors, the Tattoo is a fair use.

Dated:  August 30, 2023               Respectfully submitted,

GRODSKY, OLECKI & PURITSKY LLP


By:   /s/ Allen B. Grodsky
          Allen B. Grodsky

Attorneys for Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc.