ROBERT E. ALLEN (SBN 166589)
rallen@glaserweil.com
LARA A. PETERSEN (SBN 318475)
lpetersen@glaserweil.com
JASON C. LINGER (SBN 323031)
jlinger@glaserweil.com
GLASER WEIL FINK HOWARD
 JORDAN & SHAPIRO LLP
10250 Constellation Boulevard
19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Plaintiff
JEFFREY B. SEDLIK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY B. SEDLIK,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D""), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | Case No.: 2:21-cv-01102-DSF (MRWx)<br><br>Before the Hon. Dale S. Fischer, U.S. District Court Judge<br><br>**PLAINTIFF JEFFREY B. SEDLIK'S REPLY IN SUPPORT OF HIS MOTION FOR RECONSIDERATION**<br><br>Hearing Date: September 18, 2023<br>Time:　　　1:30 p.m.<br>Place:　　　Courtroom 7D<br>　　　　　First Street Courthouse<br>　　　　　350 West 1st Street<br>　　　　　Los Angeles, CA 90012<br><br>Action filed:　　February 7, 2021<br>Trial Date:　　November 28, 2023 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. THE PARTIES STIPULATED TO ALLOWING RECONSIDERATION. ................................................................................................ 1

III. FAIR USE ................................................................................................ 2

IV. SUBSTANTIAL SIMILARITY ................................................................................................ 10

V. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   143 S. Ct. 1258 (2023) .................................................................................. passim

*Bain v. Film Indep., Inc.*,
   2020 WL 5491314 (C.D. Cal. Aug. 6, 2020) ............................................................ 6

*Bain v. Film Indep., Inc.*,
   No. 20-55948, 2022 WL 17592422 (9th Cir. Dec. 13, 2022) .................................. 6

*Barrera v. Brooklyn Music, Ltd.*,
   346 F. Supp. 2d 400 (S.D.N.Y. 2004) ...................................................................... 9

*Broadcom Corp. v. Qualcomm Inc.*,
   2007 WL 8030058 (C.D. Cal. Nov. 21, 2007) ........................................................ 1

*Calkins v. Playboy Enterprises Int'l, Inc.*,
   561 F. Supp. 2d 1136 (E.D. Cal. 2008) .................................................................... 6

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
   869 F.3d 848 (9th Cir. 2017) ..................................................................................... 4

*Fox Television Stations, Inc. v. Aereokiller LLC*,
   851 F.3d 1002 (9th Cir. 2017) ................................................................................... 4

*Great Minds v. Office Depot, Inc.*,
   945 F.3d 1106 (9th Cir. 2019) ................................................................................... 9

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) ...................................................................................................... 5

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed. Cir. 2008) ................................................................................. 9

*J-M Mfg. Co. v. Affiliated FM Ins. Co.*,
   2022 WL 1584700 (C.D. Cal. Feb. 9, 2022) ........................................................... 1

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) ..................................................................................... 6

*King v. Villegas*,
   2023 WL 4627687 (E.D. Cal. July 19, 2023) ........................................................ 11

*Kiss Catalog, Ltd. v. Passport Int'l Prods., Inc.*,
   405 F. Supp. 2d 1169 (C.D. Cal. 2005) ............................................................ 10, 11

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ..................................................................................... 5

*Liu v. Price Waterhouse LLP*,
   182 F. Supp. 2d 666 (N.D. Ill. 2001) ....................................................................... 8

*Liu v. Price Waterhouse LLP*,
  302 F.3d 749 (7th Cir. 2002) .................................................................................. 8

*Lorador v. Kolev*,
  2023 WL 3477834 (9th Cir. May 16, 2023) ..................................................... 10, 11

*McGucken v. Pub. Ocean Ltd.*,
  42 F.4th 1149 (9th Cir. 2022) ............................................................................ passim

*Norse v. Henry Holt and Co.*,
  991 F.2d 563 (9th Cir. 1993) ............................................................................ 10, 11

*Oracle Int'l Corp. v. Rimini St., Inc.*,
  2023 WL 4706127 (D. Nev. July 24, 2023) ........................................................... 12

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
  668 F.3d 1148 (9th Cir. 2012) .......................................................................... 10, 11

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992) ..................................................................................... 4

*Ross-Nash v. Almond*,
  2020 WL 6947691 (D. Nev. Oct. 28, 2020) ........................................................... 12

*Santos Elecs. Inc. v. Outlaw Audio, LLC*,
  2022 WL 18396275 (C.D. Cal. Dec. 12, 2022) ................................................ 10, 11

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) .......................................................................... 11, 12

*Smith v. Bank of Am., N.A.*,
  2019 WL 4570010 (C.D. Cal. Jan. 8, 2019) ........................................................... 11

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) .................................................................................................. 5

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
  953 F.3d 638 (9th Cir. 2020) .................................................................................... 7

*Walt Disney Prods. v. Filmation Assocs.*,
  628 F. Supp. 871 (C.D. Cal. 1986) ........................................................................... 4

*Wu v. Pearson Educ. Inc.*,
  2013 WL 145666 (S.D.N.Y. Jan. 11, 2013) ............................................................. 8

**STATUTES**

17 U.S.C. § 107 ................................................................................................................ 5

17 U.S.C. § 204 ................................................................................................................ 8

## I. INTRODUCTION

In their opposition, Defendants mostly ignore Sedlik's arguments, and instead, argue at length about the alleged procedural impropriety of Sedlik's motion, notwithstanding the fact that the Court invited the parties to address *Warhol*, that Defendants stipulated that they did not object to Sedlik bringing his motion (and would only dispute the merits), and that the Court authorized reconsideration. In light of the Supreme Court's recent *Warhol* decision and the Ninth Circuit's *McGucken* decision, each of Defendants' uses of the Davis Photograph are not fair use as a matter of law. Moreover, because Defendants admit to copying the Davis Photograph in each of their uses, substantial similarity is irrelevant, and Defendants have infringed the Davis Photograph as a matter of law.

## II. THE PARTIES STIPULATED TO ALLOWING RECONSIDERATION.

Defendants argue that Sedlik's Motion is "not permit[ted]" and that almost all the new facts and law discussed do not warrant reconsideration. Opp., 7. Defendants, however, have *already stipulated* to reconsideration. In the parties' Joint Status Report, Defendants stated that they "do not object to Plaintiff's request to file a motion for reconsideration (though they will oppose any such motion on the merits)." ECF 138, 4. Yet their Opposition is not focused on the merits, and instead, challenges Sedlik's Motion on various procedural grounds. Opp., 6-9, 10-11, 12-13, 20-23. The Court determined that reconsideration was warranted and approved the parties' briefing schedule. ECF 139, 2. The Court previously invited the parties to meet and confer regarding *Warhol* in both a written order and at the first pre-trial conference. ECF 135; Ex. 12 at 11:3-11. In similar circumstances, courts have found reconsideration to be appropriate. *J-M Mfg. Co. v. Affiliated FM Ins. Co.*, 2022 WL 1584700, at *2 (C.D. Cal. Feb. 9, 2022) (finding reconsideration warranted where the Court invited the plaintiff to address the issue); *Broadcom Corp. v. Qualcomm Inc.*, 2007 WL 8030058, at *1 (C.D. Cal. Nov. 21, 2007) (similar).

The Court should reject Defendants' claim that "there is no basis for the Court

to reconsider" its decision on commerciality because *Warhol* "offers no new law on what is or isn't a commercial use." Opp., 12-13. This position cannot be squared with Defendants' motion, which identifies commerciality as one of the "two specific holdings" of *Warhol* and offers extended argument about the Tattoo's alleged non-commerciality. ECF 143, 4, 8-9 (arguing that the Tattoo was a "gift" to a "friend"). Indeed, *Warhol* held that the first factor requires consideration of whether a use is commercial or nonprofit educational. *Warhol*, 143 S. Ct. at 1276.

Defendants contend that *McGucken* should not be addressed at all because it quotes from an earlier Ninth Circuit decision (*Dr. Seuss*). Opp., 20-21. But most, if not all, decisions cite to precedent, just as *Warhol* cited to *Campbell* and *Sony*. Indeed, the holding of *Warhol* that Defendants call "new law" (i.e., "the same copying may be fair when used for one purpose but not another") cites to *Campbell* and *Sony* for this very proposition. *Warhol*, 143 S. Ct. at 1277. Further, *McGucken* sheds new light on fair use by analyzing its contours in the context of a *photograph* published on the Internet; *Dr. Seuss* involved two books.

Importantly, the fair use analysis requires "judicial balancing" of all four factors. *Warhol*, 143 S. Ct. at 1274. Reconsideration of one factor requires reconsideration of the others to arrive at a conclusion on fair use. *McGucken*, 42 F.4th at 1164 (concluding that factors one and four are "linked").

### III.   FAIR USE

Defendants did not make fair use of the Davis Photograph. The key facts are as follows: (1) the Davis Photograph and the Tattoo have an identical use, as they are both used to depict a portrait of Miles Davis (PSUF ¶ 5; DSUF ¶ 24); (2) neither the Tattoo nor social media posts involve any "criticism, comment, news reporting, teaching, scholarship, or research"; (3) none of Defendants' uses comment, criticize, nor have any "critical bearing" on the Davis Photograph; (4) Kat Von D used the Davis Photograph as a reference to make the Tattoo; (5) she admitted that she could have referred to "another image" to do so (PSUF ¶ 37); (6) Sedlik licenses the Davis

Photograph for a wide range of uses, including derivative works (such as tattoos) (PSUF ¶¶ 7, 39); and (7) Sedlik's future potential market for licensing would be severely damaged if third-parties could use the Davis Photograph as a reference without permission.

**First Factor:** Despite *Warhol*'s instruction to focus on the *use* of a work, Defendants argue that the *Tattoo* is transformative because it provided a different "aesthetic." Opp., 15. This is precisely what the Supreme Court found is ***not*** transformative—the addition of "something new" or a "different aesthetic" does not render such use fair. *Warhol*, 143 S. Ct. at 1275, 1282. Defendants ignore that *Warhol* reviewed Goldsmith's licenses for the use of her photograph (including as an artist reference and for articles about Prince) and compared them with Warhol's. Here, Sedlik's uses and Defendants' uses are identical—to depict Miles Davis. PSUF ¶ 5; DSUF ¶ 24; *McGucken*, 42 F.4th at 1158 ("When a copyrighted work is used simply to illustrate what that work already depicts, the infringer adds no further purpose or different character."). Moreover, Sedlik licenses the Davis Photograph in several ways, including as an artist reference and to make derivative works (including tattoos), and Defendants used the Davis Photograph in exactly those same ways. Defendants never challenge these facts. PSUF ¶¶ 7, 39.

Defendants completely ignore *Warhol*'s extensive analysis of derivative works and the requirement that "the degree of transformation required to make 'transformative' use of an original must go beyond that required to qualify as a derivative." *Warhol*, 143 S. Ct. at 1275. Defendants never argue that their uses extend beyond derivative works, which they have the burden of showing. Defendants claim that the Tattoo's distinct "environment" makes their use transformative (Opp. 15), yet ignore that a change of medium still constitutes a derivative work that requires a license. *Warhol* made clear that derivative works can extend to other forms of media, "including musical arrangements, film and stage adaptions, sequels, [and] spinoffs." *Warhol*, 143 S. Ct. at 1282. "Such transformations may be substantial, like the

adaptation of a book into a movie." *Id.* at 1275; *see also Rogers v. Koons*, 960 F.2d 301, 312 (2d Cir. 1992) (not fair use to use a photograph as a reference to make a derivative sculpture); *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 876 (C.D. Cal. 1986) ("It is … no defense to copying that some of [defendant's] expressions may be embodied in a medium different from that of plaintiff's.").

Indeed, the U.S. Copyright Office (to which the Ninth Circuit provides deference on copyright matters (*Fox Television Stations, Inc. v. Aereokiller LLC*, 851 F.3d 1002, 1013 (9th Cir. 2017)) recently provided an opinion to another court that: (1) treats tattoos no differently than any other illustrative work under copyright law; (2) classifies tattoos as **derivative** works when based upon **non-tattoo** art; and (3) classifies tattoos as derivatives even where the new design elements are far more extensive that any claimed new elements in the Tattoo here. Ex. 11 at 12, 14, 16-17.

Defendants ignore *Warhol*'s instruction that there must be *justification* for the use, and if the new work has no critical bearing on the original (as is the case here), the justification must be "compelling." *Warhol*, 143 S. Ct. at 1276-77, 1285-86. Defendants offer no justification for their use, compelling or otherwise. Defendants argue that the incomplete versions of the Tattoo and the social posts showing "process" have a different purpose than the Davis Photograph. But intermediate copies of a copyrighted work are still infringing and not fair use unless they were made to study that *original work*. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 862 & n.12 (9th Cir. 2017) (finding that intermediate copies of movies were not fair use because they were not done for "study or examination" of the original works, but for commercial purposes). Here, Defendant did not create the "progress" shots to study or examine the Davis Photograph, but to advertise and promote their businesses, as evidenced by the captions and comments ("How long is the wait to get a tattoo done by you?", "What musician would you get?"). ECF 35-21, 35-27. Indeed, Defendants do not argue that these posts were to educate about tattoos or to review the Davis Photograph. And because Defendants concede that Sedlik licenses the

Davis Photograph for many uses, including for derivative works (e.g., tattoos) (PSUF ¶¶ 7, 39), Defendants' *use* is no different.

As to commerciality, Defendants do not address the proper legal standard, which is "whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Nor do Defendants dispute that under *Worldwide Church* and *Napster* their use was commercial in nature, as they used the Tattoo to their benefit and advantage, displaying it on social media to their millions of followers, generating thousands of likes and reactions, and by creating business opportunities for Kat Von D, her fellow tattoo artists, and the tattoo shop. *See* Sedlik's Opp. (ECF 148), 12. Defendants do not identify any factual issues regarding the posts, which are in the record. *See* ECF 35-19 through 35-30.

Defendants disagree with the commercial/nonprofit educational distinction, claiming that Sedlik's argument lacks any "citation to authority." Opp., 13. That distinction comes directly from the statute and *Warhol*. *Warhol*, 143 S. Ct. at 1274 ("The first fair use factor is 'the purpose and character of the use, including whether such use is of a commercial nature or is for *nonprofit educational purposes*.'") (quoting 17 U.S.C. § 107(1)). Defendants cite to *Sony*, but ignore that Sony introduced considerable evidence of the copying of educational programming. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 424 (1984). While the Court may have omitted "educational" in the cherry-picked statement, Defendants point to no analysis in *Sony* finding that the time-shifting was not considered educational. Regardless, the statute is clear and reaffirmed by *Warhol*.

Defendants contend that each challenged infringement must be analyzed separately. Opp., 11-12. But each of Defendants' uses, whether analyzed separately or together, had substantially the same "basic purpose" for the fair use analysis—to depict Miles Davis and promote Defendants and their interests. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) (rejecting karaoke machine

manufacturer's claimed use as educational or facilitating parental control, and finding that their "basic purpose" was to sell karaoke devices for profit).

Defendants cite older decisions, two of which were superseded by *Warhol* and none of which change the above analysis. In *Bain*, an actress used short film clips (most lasting less than 10 seconds) to create an "acting reel" so that she could market her abilities for future films. *Bain v. Film Indep., Inc.*, 2020 WL 5491314, at *4 (C.D. Cal. Aug. 6, 2020), *aff'd*, No. 20-55948, 2022 WL 17592422 (9th Cir. Dec. 13, 2022). The court found that the acting reel told "no story," whereas the original film was created to tell a story involving sexual exploitation of women. *Id.* Here, Defendants took the entirety of the Davis Photograph without justification and used it for the same purpose as Sedlik—to depict Miles Davis. *Warhol*, 143 S. Ct. at 1275, 1282; *see also McGucken*, 42 F.4th at 1158 ("When a copyrighted work is used simply to illustrate what that work already depicts, the infringer adds no further purpose or different character." (internal citation omitted)).

*Calkins* is a fifteen-year-old decision involving a woman's high school senior portraits which were reproduced by Playboy magazine. *Calkins v. Playboy Enterprises Int'l, Inc.*, 561 F. Supp. 2d 1136, 1141 (E.D. Cal. 2008). *Calkins* is inconsistent with *Warhol* and *McGucken*, and it should not be considered.

In *Kelly*, the Ninth Circuit found that the use of "thumbnails" of works in an Internet search engine was fair because it "serves a different function" and "it would be unlikely that anyone would use [the] thumbnails for illustrative or aesthetic purposes because enlarging them sacrifices their clarity." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003). Thumbnails of photos serve an entirely different purpose because they are used to index and improve access to images on the Internet and are smaller, lower resolution images that cannot substitute for the original. *Id.*

For all of the above reasons, *Warhol* confirms that the first factor weighs against fair use. Defendants failed to address that their *use* was for the same purpose as Sedlik's, that the Tattoo and the posts are derivative works of the Davis

Photograph, and that Defendants had no compelling justification to use the Davis Photograph. Defendants, thus, conceded that the first factor weighs against them.

**Second and Third Factors***:* For these factors (nature of the copyrighted work, amount and substantiality of the portion copied), Defendants present no arguments on the merits and therefore concede that (1) the publication of the Davis Photograph does not weigh in favor of fair use (*McGucken*, 42 F.4th at 1162); and (2) Defendants copied "the heart" of the Davis Photograph without justification and "failed to put forward evidence that other photographs or visual aids were unavailable or an inadequate substitute for" it (*id.*). Consequently, Defendants concede that both of these factors weigh against fair use.

**Fourth Factor:** The Court ruled that Sedlik had raised a triable issue whether there was a future market for preparation of tattoos derivative of the Davis Photograph. ECF 69, 24. Vanegas's recent testimony confirms that Sedlik granted a license for the Davis Photograph to a tattoo artist, thereby demonstrating an actual market for the copyrighted work. *McGucken*, 42 F.4th at 1163.[1] Defendants contend that Vanegas's testimony is not a "new fact" because "Plaintiff already offered evidence" regarding licensing the Davis Photograph as a reference for a tattoo. Opp., 21. But, with respect to tattoos, Sedlik testified that he "believed" he licensed such use and that he had been approached by tattoo artists, but that he may have rejected their offers. Opp., 23; ECF 69, 24.

Defendants do not dispute that (1) the Court opened discovery to allow for Vanegas's deposition (ECF 109); (2) this deposition occurred on July 31, 2023, after the Court's summary judgment order (ECF 69); and (3) Vanegas confirmed that Sedlik had granted him a license to use the Davis Photograph as an artistic reference for a tattoo (the "License"). While this License was not on the *original* exhibit list, it

---

[1] Defendants misleadingly quote *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 652 (9th Cir. 2020), a case involving the use of songs by a high school choir, by using ellipsis to omit the key language "for parody, news reporting, educational, or other transformative uses."

7
SEDLIK'S REPLY ISO MOTION FOR RECONSIDERATION

2323091.1

is on the parties' *amended* joint exhibit list, signed by Defendants' counsel (ECF 107, Ex. 321). The result of the late production of the License was that Defendants asked for, and the Court granted, the reopening of discovery to allow Defendants to take Vanegas's deposition (ECF 108, 109), which they did.

Without authority, Defendants question the integrity of the License by raising numerous red herrings that do not change the simple fact that Sedlik granted Vanegas a license to use the Davis Photograph as an artistic reference for a derivative tattoo.

First, that the License was not signed by Vanegas is irrelevant—"a license … need not be signed by the author of the derivative work in order to be effective." *Liu v. Price Waterhouse LLP*, 182 F. Supp. 2d 666, 673 (N.D. Ill. 2001), *aff'd*, 302 F.3d 749 (7th Cir. 2002); *see also* 17 U.S.C. § 204 (assignments of rights need be signed only by the owner, not the assignee). Contrary to Defendants' argument that this was unusual, Sedlik produced many other licenses, including for the Davis Photograph, not signed by the licensee. *See, e.g.*, Ex. 10 (five such licenses).

Second, that Vanegas did not obtain the License *before* inking the Tattoo is irrelevant—retroactive licenses by the owner are valid. *See, e.g.*, *Wu v. Pearson Educ. Inc.*, 2013 WL 145666, at *4 (S.D.N.Y. Jan. 11, 2013) ("[T]here is no legal prohibition to obtaining a retroactive license if it is authorized by the rights holder.").

Third, that Vanegas perceived Sedlik's communications to be "bullying" is misleading and irrelevant. It is unsurprising that Vanegas, a non-lawyer who was just starting out as a tattoo artist, would find a photographer's email about a potential copyright violation to be threatening. Vanegas clarified that once he responded to Sedlik, there were no further threats of litigation, that Sedlik was respectful, and that Sedlik even offered Vanegas advice on how to secure future copyright permissions. Ex. 9 at 23:9-16, 24:3-25, 30:2-5, 60:16-22.

Fourth, Defendants suggest that there is something "odd" because after Vanegas informed Sedlik he had no money, Sedlik waived his license fee. But gratis licenses are valid licenses. *See, e.g.*, *Great Minds v. Office Depot, Inc.*, 945 F.3d

8
SEDLIK'S REPLY ISO MOTION FOR RECONSIDERATION

1106, 1108 (9th Cir. 2019) (license granting rights on a royalty-free basis was valid). Defendants overlook that there are other conditions in the License, including that to promote Sedlik's business, all advertising uses "must provide credit line and copyright notice to Jeff Sedlik." ECF 144-2, 2. Such attribution conditions are enforceable and constitute compensation to Sedlik. *Jacobsen v. Katzer*, 535 F.3d 1373, 1382 (Fed. Cir. 2008) (defendant exceeded the scope of a gratis license conditioned on distributing the work without copyright notice); *Barrera v. Brooklyn Music, Ltd*., 346 F. Supp. 2d 400, 410 (S.D.N.Y. 2004) (inclusion of credit line has significant value to a photographer).

Fifth, Defendants claim that Vanegas denied that Sedlik ever discussed a license fee or that Sedlik was waiving it as a professional courtesy. That was not what Vanegas said—he simply said he did not recall such a conversation. Ex. 9 at 15:9-12.

Vanegas's testimony, along with Sedlik's testimony, all the other licenses for the Davis Photograph (Ex. 10), and even Blake Farmer's choice of the Davis Photograph as reference for the Tattoo, demonstrate the existence of an actual and potential market for licensing the Davis Photograph, including for tattoos, which is sufficient to negate fair use. *McGucken*, 42 F.4th at 1163. Further, the Court must consider that "[i]f carried out in a widespread and unrestricted fashion, [Defendants'] conduct would destroy [Sedlik's] licensing market." *Id*.

Additionally, Sedlik explained in his Motion that Defendants had produced no evidence about any of the relevant markets for the use of the Davis Photograph ((1) as a reference, (2) to prepare derivative works, or (3) to publicly display online). As to the first two, the Court excluded Defendants' expert testimony (ECF 71, 7-8), and as to the third, Defendants did not argue or produce any evidence (Mot., 13-14). In their Opposition, Defendants failed to respond to Sedlik's argument, thereby confirming that they have none. Defendants failed to bring forward favorable evidence, as they "must" do. *McGucken*, 42 F.4th at 1163. Consequently, the fourth factor weighs against fair use as a matter of law.

## IV. SUBSTANTIAL SIMILARITY

This is one of the rare cases in which the defendant has admitted to copying the copyrighted work. In such a case, Ninth Circuit precedent establishes that courts do not conduct a substantial similarity analysis. *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir. 1993). Sedlik previously presented this authority to the Court (ECF No. 53, 2), but the Court did not address it (Order, 14-16). Following the Court's ruling, the Ninth Circuit reconfirmed this rule in *Lorador v. Kolev*, 2023 WL 3477834 (9th Cir. May 16, 2023) (unpublished). The Court should reconsider its holding regarding substantial similarity.

Reconsideration is warranted because the Court has discretion to correct a "clear error of law" on a motion for reconsideration. *Santos Elecs. Inc. v. Outlaw Audio, LLC*, 2022 WL 18396275, at *4 (C.D. Cal. Dec. 12, 2022) (granting motion for reconsideration to correct legal error); *Kiss Catalog, Ltd. v. Passport Int'l Prods., Inc.*, 405 F. Supp. 2d 1169, 1170 (C.D. Cal. 2005) (Fischer, J.).

Defendants have admitted that they copied the Davis Photograph. DSUF ¶ 54. In such a case, the Ninth Circuit has found that a substantial similarity analysis is "irrelevant," "inapposite," and should not be conducted. In *Norse*, the Ninth Circuit found that "a substantial similarity analysis may be useful … when the alleged infringer *denies* that he in fact copied the plaintiff's work. *But here the substantial similarity analysis is inapposite* to the copying issue because *appellees admit that they in fact copied phrases* from Norse's letters." 991 F.2d at 565 (emphasis added). *Range Road*, another Ninth Circuit decision involving direct copying, confirmed this rule. "A showing of substantial similarity is irrelevant in a case like this one, in which the [plaintiff's] produced evidence that the public performances entailed direct copying of copyrighted works." *Range Rd.*, 668 F.3d at 1154.

Here, following the Court's summary judgment decision, the Ninth Circuit reconfirmed that infringement involves a substantial similarity analysis only "absent

direct evidence of copying." *Lorador v. Kolev*, 2023 WL 3477834, at *1 (9th Cir. May 16, 2023) (unpublished). Accordingly, the Court's summary judgment order is erroneous in view of *Norse*, *Range Road*, and *Lorador*. Despite Defendant's admission that it copied the Davis Photograph (DSUF ¶ 54), the Court engaged in an unwarranted substantial similarity analysis and found that there were triable issues of fact under both the intrinsic and extrinsic tests. Order, 14-16.

Contrary to Defendants' position, reconsideration on an issue of law is appropriate to ensure that the Court's order is not 'infected with error.'" *Santos*, 2022 WL 18396275, at *4; *Kiss Catalog*, 405 F. Supp. 2d at 1170 (Fischer, J.). The fact that Sedlik previously made this argument, and yet it was overlooked by the Court, is a reason to grant the motion, not deny it. *Smith v. Bank of Am., N.A.*, , 2019 WL 4570010, at *2 (C.D. Cal. Jan. 8, 2019) (Fischer, J.) ("[G]iven the central relevance of the paragraphs, the fact that they are in a key document and not an obscure part of the record, and that Defendant did, if in passing, refer to them, the Court will reconsider its Order to take the paragraphs into account."). The fact that one of these three decisions (*Lorador*) is unpublished is also not a reason to deny reconsideration. *See King v. Villegas*, 2023 WL 4627687, at *6 (E.D. Cal. July 19, 2023) (although noting that unpublished Ninth Circuit decision was not binding, granting reconsideration where the decision was "aligned with other authority" and court would be "hard-pressed" to ignore it). In any event, *Norse* and *Range Road* are binding precedent.

Defendants do not address *Norse* or *Range Road* in their Opposition, or attempt to distinguish these decisions. Instead, Defendants focus on the Ninth Circuit's *en banc* decision in *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Opp., 9-10. *Skidmore*, a case that did ***not*** involve direct copying, does not render a substantial similarity analysis warranted here. *Skidmore* involved whether one song incorporated protected expression of another song. Because no evidence of direct coping existed, plaintiff attempted to prove copying "circumstantially"—through access and substantial similarity. *Id.*, 1064 ("In the *absence* of direct evidence of

copying, which is the case here …").

*Skidmore* held, in a case not involving direct infringement, that the second element to prove copyright infringement, the copying of "protected aspects of the work," includes both a "copying" and an "unlawful appropriation" component. *Id.* But neither *Norse* nor *Range Road* are mentioned in *Skidmore*. *Skidmore* did overrule, however, numerous Ninth Circuit decisions regarding a different doctrine, the inverse-ratio rule, after discussing them at great length. *Id.* at 1065-1069. Accordingly, there is no basis to conclude that the Ninth Circuit overruled several Ninth Circuit decisions, without mentioning them, on a topic not before it, while simultaneously overruling other decisions after a detailed analysis.

Post-*Skidmore*, courts confronted with direct copying have continued to apply the rule set forth in *Norse* and *Range Road*, and declined to conduct a substantial similarity analysis. *Ross-Nash v. Almond*, 2020 WL 6947691, at *3 (D. Nev. Oct. 28, 2020) (granting summary judgment without conducting an substantial similarity analysis where defendant admitted to copying because it would be "irrelevant"); *Oracle Int'l Corp. v. Rimini St., Inc.*, 2023 WL 4706127, at *71 (D. Nev. July 24, 2023) (similar). Both *Ross-Nash* and *Oracle* cite *Skidmore*, and still declined to conduct a substantial similarity analysis. If *Skidmore* had changed the law regarding direct copying, these courts would have conducted a substantial similarity analysis. They did not. Consequently, since Defendants admit to copying the Davis Photograph, a substantial similarity analysis is irrelevant and Sedlik is entitled to summary judgment on each act of Defendants' copyright infringement.

## V. CONCLUSION

The Court should find that each of Defendants' uses of the Davis Photograph was not a fair use, that a substantial similarity analysis is irrelevant here, and that each of Defendants' uses infringed the Davis Photograph.

SEDLIK'S REPLY ISO MOTION FOR RECONSIDERATION
2323091.1

DATED: August 30, 2023

GLASER WEIL FINK HOWARD
 JORDAN & SHAPIRO LLP

By: */s/ Robert E. Allen*

ROBERT E. ALLEN
LARA A. PETERSEN
JASON C. LINGER

*Attorneys for Plaintiffs*