# EXHIBIT 11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES HAYDEN,** | ) | **CASE NO.: 1:17-CV-2635** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **2K GAMES INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## RESPONSE OF THE REGISTER OF COPYRIGHTS
## TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)

On May 25, 2023, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Register of Copyrights ("Register") on five questions concerning tattoo designs. The Court sought advice on whether the Register would have refused registration of four tattoo designs had the U.S. Copyright Office ("Copyright Office" or "Office") known about certain alleged inaccuracies in the applications for registration. With respect to two of these designs, the Court also sought advice as to whether the Register would have refused applications for supplementary registration had the applicant disclosed that "the excluded material was the work of another author;" and whether the remaining material would be sufficient to warrant registration.[1]

The Register hereby responds that, based on the legal standards and examining practices set forth below, the Office would not have registered the tattoo designs if it had known that the

---

[1] Req. to Reg. of Copyrights Pursuant to 17 U.S.C. § 411(b)(2) at 1–4 ("Request"), ECF No. 229.

designs included an "appreciable amount" of public domain material or material owned by a third party that the applicant did not exclude in his application for registration. Had the Office known about these issues at the time of the applications, it would have sought the applicant's permission to amend the claims. It would have then evaluated whether, after exclusion of the unclaimable material, the remaining material was sufficiently creative to warrant registration.

The Register further responds that the applicant appropriately utilized the supplementary registration procedures to amend the claim to copyright for two of the tattoo designs, "Fire D.G." and "Scroll D.G." The Office determined that the applicant's contributions to these designs, with preexisting material excluded, is copyrightable. The Office is also willing to accept supplementary registration applications to exclude unclaimable material that appears in the two remaining tattoo designs.

## **BACKGROUND**

### I.    **Examination History**

A review of the Copyright Office's records reveals the following:

### A.    **Original Registrations**

On September 6, 2016, the Office received an application to register a tattoo design titled "Lion." The application identified Jim Hayden as the sole author and copyright claimant. It stated that the work was completed in 2008 and that it was unpublished. It did not identify the tattoo design as a derivative work or disclose that it incorporated preexisting material. Based on the information provided in the application, the Office had no reason to question the applicant's representations and accepted them as true and accurate. The Office registered the claim with an

effect date of registration ("EDR")[2] of September 6, 2016, and assigned registration number VAu001271044 (the "Lion Registration").

On August 11, 2017, the Office received three applications to register tattoo designs titled "Brother's Keeper T.T.," "Fire D.G.," and "Scroll D.G." The applications identified Mr. Hayden as the sole author and copyright claimant of each of the works. It stated that the works were completed in 2012 and were unpublished. The applications did not identify any of the tattoo designs as derivative works or disclose that they incorporated preexisting material. Based on the information provided in the application, the Office had no reason to question the applicant's representations and accepted them as true and accurate. The Office registered the "Brother's Keeper T.T." claim with an EDR of August 11, 2017, and assigned registration number VAu001292453 (the "Brother's Keeper T.T. Registration"). The Office registered the "Fire D.G." claim with an EDR of August 11, 2017, and assigned registration number VAu001287552 (the "Fire D.G. Registration"). The Office registered the "Scroll D.G." claim with an EDR of August 11, 2017, and assigned registration number VAu001287545 (the "Scroll D.G. Registration").

### B. Supplementary Registrations

On July 30, 2019, the Copyright Office received supplementary registration applications to augment the information contained in the Fire D.G. Registration and the Scroll D.G. Registration. With respect to the Fire D.G. Registration, Mr. Hayden sought to limit the copyright claim by identifying material to be excluded from the claim. The application described the material excluded from the claim as "2-D artwork, [o]utline of character, outline of additional shapes, and text," and the new material included in the claim as "2-D artwork" and

---

[2] The EDR is the date the Office received a completed application, the correct deposit copy, and the proper filing fee. 17 U.S.C. § 410(d).

"[d]esign, creation, and placement of flames surrounding and accenting character image and text; addition of shading, accenting, and design aesthetics to flames and character image." Finding the new material (as described) sufficiently copyrightable, the Office approved the supplementary registration application with an EDR of July 30, 2019 and assigned registration number VAu001365279 (the "Fire Supplementary Registration").[3]

Mr. Hayden sought to limit the claim in the Scroll D.G. Registration as well by identifying material to be excluded. The supplementary application described the material excluded from the claim as "2-D artwork, [o]utline of scroll and text within the scroll," and the new material included in the claim as "[d]esign elements around the scroll, including cloud-like designs, decorative spear head, and character image around the edge of the scroll; shading in and around all elements, including the scroll." Finding the new material (as described) sufficiently copyrightable, the Office approved the supplementary registration application with an EDR of July 30, 2019 and assigned registration number VAu001365277 (the "Scroll Supplementary Registration").

## II.   The Court's Request

As the Office understands the dispute, Mr. Hayden, a tattoo artist whose clients include various professional basketball players, owns registered copyrights in six tattoo designs.[4] Mr. Hayden alleges, among other things, that Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. (collectively, "Take-Two") infringed his copyrights by depicting basketball players bearing his tattoo designs in Take-Two's video game series *NBA 2K*.[5]

---

[3] *See id.* § 408(d) (noting that an application for supplementary registration may be used "to correct an error in a copyright registration or to amplify the information given in a registration").
[4] Pl.'s Fourth Am. Compl. ¶¶ 80–103, ECF No. 33.
[5] *Id.* ¶¶ 109–149.

Take-Two challenges the validity of four of the six copyright registrations for the tattoo designs at issue. Specifically, Take-Two argues that Mr. Hayden failed to disclose to the Office when submitting the original applications that:

> (1) the Brother's Keeper Tattoo on Tristan Thompson was copied from the Bible and the Sistine Chapel; (2) the Lion Tattoo on LeBron James was copied from the registered trademark of the Venetian Resort; (3) the Scroll Tattoo is comprised mainly of work by another tattooist to which Plaintiff merely added unauthorized shading and *de minimis* other material; and (4) the Fire Tattoo likewise is an unauthorized derivative work of a preexisting tattoo.[6]

Take-Two further alleges that Mr. Hayden failed to inform the Copyright Office of this litigation before he submitted his applications for supplemental registrations for two of the tattoo designs.[7] It contends that "[h]ad the Copyright Office been aware of this litigation, it would have refused to issue [Mr. Hayden's] supplemental registrations."[8]

Mr. Hayden responds that the original applications did not contain knowing inaccuracies. First, he argues that his "sources of inspiration for the Lion and Brother's Keeper tattoos are well-known public-domain material—not the kind of pre-existing content the Copyright Office requires in [an] application for registration."[9] Second, even if the preexisting material should have been disclosed, he submits that he was not aware of that requirement and did not "knowingly submit any inaccuracies in his copyright applications."[10]

Concluding that Take-Two had sufficiently alleged that Mr. Hayden included inaccurate information in the applications for the Lion, Brother's Keeper T.T., Fire D.G., and Scroll D.G. Registrations, the Court requested the advice of the Register on the following questions:

1. Would the Register of Copyrights have refused to register the tattoo entitled "Lion" (Reg. No. VAu 1-271-044) if the Register of Copyrights had known that

---

[6] Defs.' Take-Two Resp. to Order to Show Cause at 1, ECF No. 225.
[7] *Id.* at 1–2.
[8] *Id.* at 11.
[9] Pl.'s Br. in Resp. to Order to Show Cause at 5, ECF No. 224.
[10] *Id.*

the application was based upon or incorporated preexisting material from the trademarked logo of the Venetian Resort (U.S. Trademark Reg. No. 3,429,884)?

2. Would the Register of Copyrights have refused to register the tattoo entitled "Brother's Keeper T.T." (Reg. No. VAu 1-292-453) if the Register of Copyrights had known that the work was based upon or incorporated pre-existing materials from the Sistine Chapel and the Bible?

3. Would the Register of Copyrights have refused to register the tattoo entitled "Fire D.G." (Reg. No. VAu 1-287-552) if the Register of Copyrights had known that the work was derivative of, or incorporated pre-existing material from another author who was not identified and which depicted a basketball player?

4. Would the Register of Copyrights have refused to register the tattoo entitled "Scroll D.G." (Reg. No. 1-287-545) if the Register of Copyrights had known that the work was derivative of, or incorporated pre-existing material from another author who was not identified and which depicted a scroll?

5. Would the Register of Copyrights have refused the applications for supplementary registration of "Fire D.G." (Supplemental Reg. No. VAu 1-365-279) and "Scroll D.G." (Supplemental Reg. No. VAu 1-365-277) if the Register of Copyrights had known that the **excluded** material was the work of another author? Would the **included** material described by the applicant as cloud-like designs, flames, shading, accenting, design aesthetics, decorative spear head, etc. have been considered sufficiently original to warrant registration by the Copyright Office?[11]

Because the Court's questions implicate a range of copyright issues, the Office sets forth below the portions of the Copyright Act,[12] Copyright Office's regulations, and *Compendium of U.S. Copyright Office Practices* on which the responses rely.

## <u>ANALYSIS</u>

## I.     Relevant Statutes, Regulations, and Agency Practice

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410.  Regulations governing

---

[11] Request at 2–4.
[12] Title 17, U.S. Code.

applications for registration are codified in title 37 of the Code of Federal Regulations at

37 C.F.R. §§ 202.1 to 202.24.  Further, the principles that govern how the Office examines

registration applications are set out in the *Compendium of U.S. Copyright Office Practices*, *Third

Edition* ("*Compendium*"), an administrative manual that instructs agency staff regarding their

statutory and regulatory duties and provides expert guidance to copyright applicants,

practitioners, scholars, courts, and members of the general public regarding Office practices and

related principles of law.  The Office publishes periodic revisions of the *Compendium* to provide

additional guidance where necessary and to reflect changes in the law or Office practices; these

revisions are made available for public comment prior to finalization.  Because Mr. Hayden filed

his original registration applications between September 2016 and August 2017, the governing

principles the Office would have applied to evaluate the applications are set forth in the version

of the *Compendium* that was released in December 2014.[13]  The principles the Office would have

applied to Mr. Hayden's July 2019 supplementary registration applications are set forth in the

version released in September 2017.[14]  The Office would apply the practices set forth in the

current edition of the *Compendium* to any supplementary registration applications filed today.[15]

### A.     Registration Requirements for Derivative Works

In pertinent part, the Copyright Act defines a "derivative work" as:

> [A] work based upon one or more preexisting works, such as a[n] . . . art
> reproduction . . . or any other form in which a work may be recast, transformed, or
> adapted. A work consisting of editorial revisions, annotations, elaborations, or other
> modifications which, as a whole, represent an original work of authorship, is a
> "derivative work."[16]

---

[13] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2014) ("2014 COMPENDIUM (THIRD)"), https://www.copyright.gov/comp3/docs/compendium-12-22-14.pdf.
[14] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2017) ("2017 COMPENDIUM (THIRD)"), https://www.copyright.gov/comp3/2017version/docs/compendium.pdf.
[15] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) ("2021 COMPENDIUM (THIRD)"), https://copyright.gov/comp3/docs/compendium.pdf.
[16] 17 U.S.C. § 101 (definition of "derivative work").

An application for registration of a derivative work must include "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."[17]  A registration does not cover any "unclaimable material" that may appear in the claimed work.  The *Compendium* defines "unclaimable material" as "[p]reviously published material," "[p]reviously registered material," "[m]aterial that is in the public domain," and "[c]opyrightable material that is owned by a third party."[18]  The *Compendium* further provides that if a work "contains an appreciable amount of unclaimable material, the applicant should identify the unclaimable material that appears in that work and should exclude that material from the claim [by providing] . . . a brief, accurate description of the unclaimable material in the appropriate field/space of the application."[19]  The applicant must also identify the new material it intends to register.[20]

The *Compendium* further explains that there are several scenarios in which exclusions and disclaimers are not required.  First, "[i]f the applicant intends to register a work that contains a minimal amount of unclaimable material, the applicant need not identify or disclaim that material in the application."[21]  Second, there is no need to exclude "material that is uncopyrightable, such as facts or mere ideas," or "quotations from a preexisting work."[22]  Finally, "[i]f it is clear that the claimant is not asserting a claim to copyright in the unclaimable material that appears in the work," despite the applicant's failure to identify the unclaimable material in the appropriate field/space of the application, "the registration specialist may register

---

[17] *Id.* § 409(9).
[18] 2014 COMPENDIUM (THIRD) § 621.1; *see also id.* at *Glossary* (defining "unclaimable material" for the purposes of copyright registration).
[19] *Id.* § 621.1.  The *Compendium* provides detailed instructions and examples for identifying unclaimable material in the online application and paper application.  *Id.* §§ 621.8(B), 621.8(E).
[20] *Id.* § 621.1.
[21] *Id.* § 621.2; *see also id.* § 621.9(A)(1).
[22] *Id.* § 621.2; *see also* 2017 COMPENDIUM (THIRD) § 621.2; 2021 COMPENDIUM (THIRD) § 621.2.

the claim without communicating with the applicant."[23]  In these circumstances, the registration specialist may annotate the registration record to clarify the extent of the claim and to identify material that is excluded from the claim.[24]

When examining an application for registration of a derivative work, the Office determines whether the work contains new creative authorship with a sufficient amount of original expression to satisfy the requirements for copyrightability.[25]  This is the same standard as that required for determining whether copyright exists in any work.  The author must contribute something more than a "merely trivial" variation.[26]  "[T]he key inquiry is whether there is sufficient nontrivial expressive variation in the derivative work to make it distinguishable from the [preexisting] work in some meaningful way."[27]  If granted, a registration for a derivative work covers only the new creative expression added by the author, not the expression in the preexisting work.[28]

Generally, the Office does not consider whether any preexisting material that appears in a derivative work has been used in a lawful manner.[29]  If the preexisting material has not been excluded from the claim and there is a reason to question whether the claimant owns the copyright in that material, the registration specialist may communicate with the applicant to determine if the applicant must exclude the preexisting material from the claim.[30]

### B.  Identifying the Author

An application for registration must include "the name . . . of the author or authors,"

---

[23] 2014 COMPENDIUM (THIRD) §§ 621.2, 621.9(A)(2).
[24] *Id.* §§ 621.2, 621.9.
[25] *Id.* § 311.2.
[26] *Id.* (citing *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102-03 (2d Cir. 1951)).
[27] *Id.* (citing *Schrock v. Learning Curve International, Inc.*, 586 F.3d 513, 521 (7th Cir. 2009)).
[28] *Id.*
[29] *Id.* § 313.6(B).
[30] *Id.*

unless the work is anonymous or pseudonymous.[31]  The Supreme Court has explained that, other

than in the case of a work made for hire, "the author is the party who actually creates the work,

that is, the person who translates an idea into a fixed, tangible expression entitled to copyright

protection."[32]

The *Compendium* explains that when completing the "author" field in a registration

application, "the applicant should only provide the name(s) of the author(s) who created the

copyrightable material that the applicant intends to register."[33]  The author field need not include

the names of individuals whose contributions were "*de minimis* or uncopyrightable."[34]  Likewise,

the applicant should not include "the name of any person who created material that is not owned

by the copyright claimant or material that the applicant does not intend to register."[35]  The

*Compendium* provides the example of an application submitted for a 500-page biography and a

separately authored foreword that names only the author of the biography as the author of "text."

In this case, the registration specialist will register the claim because it is clear that the applicant

intends to register only the text of the biography, rather than the text of the foreword.[36]

### C. Supplementary Registration

The Copyright Office recognizes that there may be a need for a registrant to correct

certain errors or provide additional information after the Office has issued a registration.  It

therefore permits registrants to file an application for a supplementary registration to correct

certain errors or amplify the information provided in a copyright registration.[37]  The availability

---

[31] 17 U.S.C. § 409(2).

[32] *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *see also* 2014 COMPENDIUM (THIRD) § 613.1.

[33] 2014 COMPENDIUM (THIRD) § 613.3.

[34] *Id.*

[35] *Id.* § 613.10(C).

[36] *Id.*

[37] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; 2017 COMPENDIUM (THIRD) § 1802; 2021 COMPENDIUM (THIRD) § 1802. The Office may decline to issue a supplementary registration when it is aware that there is actual or prospective litigation involving a basic registration (1) if the proposed change would be directly at issue in the litigation, and (2)

of a supplementary registration to correct errors is limited, however.  The *Compendium* provides

that a supplementary registration can be used to "correct or amend the information that appears

on the certificate of registration in the fields/spaces marked Author Created, Limitation of

Copyright Claim, Nature of Authorship, and/or Material Added to This Work," so long as the

authorship described in the application for supplementary registration is registrable.[38]  A

supplementary registration cannot be used "to correct an error in the deposit copy(ies) that were

submitted with the application for basic registration."[39]

      If an application for supplementary registration to correct or amplify the registration

record is approved, the Copyright Office prepares a certificate of supplementary registration that

contains pertinent information from the application, creates a public record that identifies and

describes the changes or revisions that have been made, and assigns a separate registration

number and EDR[40] to the supplementary registration.[41]  The Office will not cancel or replace the

original registration or the public record of that registration, or change the information or EDR

set forth therein.  Instead, the original registration and the supplementary registration, including

the EDRs for each, coexist with each other in the public record because the "supplementary

registration augments — but does not supersede — the information" submitted in the original

---

if the proposed amendment may confuse or complicate the pending dispute.  2017 COMPENDIUM (THIRD)
§ 1802.9(G); 2021 COMPENDIUM (THIRD) § 1802.9(G).  Nevertheless, whether the Office decides to issue a
supplementary registration is solely within its discretion.

[38] 2021 COMPENDIUM (THIRD) § 1802.6(J); 2017 COMPENDIUM (THIRD) § 1802.6(J).

[39] 2021 COMPENDIUM (THIRD) § 1802.7(D) (citing 37 C.F.R. § 202.6(d)(4)(ii)); 2017 COMPENDIUM (THIRD)
§ 1802.7(D).

[40] The EDR for the supplementary registration "is the day on which an acceptable application and filing fee, which
are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for
supplementary registration, have all been received in the Copyright Office."  2021 COMPENDIUM (THIRD) § 1802.12;
2017 COMPENDIUM (THIRD) § 1802.12.

[41] 2021 COMPENDIUM (THIRD) § 1802.10; 2017 COMPENDIUM (THIRD) § 1802.10.  The Office will also place a note
in the public record for the supplementary registration that cross-references the registration number and the year of
registration for the basic registration.  2021 COMPENDIUM (THIRD) § 1802.11; 2017 COMPENDIUM (THIRD)
§ 1802.11.

registration.[42]  The *Compendium* explicitly defers to a court to determine whether the changes in the supplementary registration should be deemed effective as of the original EDR, or the EDR for the supplementary registration, providing the following guidance:

> The Office maintains both records to allow courts to decide (i) whether the changes made by the supplementary registration are material, and (ii) whether those changes should or should not be deemed effective as of the date that the basic registration was made or the date that the supplementary registration was made.[43]

## II.    Register's Response to the Court's Request

Based on the foregoing statutory standards, regulatory standards, and examining practices of the Office, the Register responds to the Court's questions as follows:

<u>Question 1</u>




**Venetian Resort Logo**                              **Lion**

Had the Office known that the Lion tattoo design was based upon or incorporated preexisting material from the trademarked logo of the Venetian Resort, the Office would have asked Mr. Hayden to disclose and exclude the preexisting work, and to identify the new material added to the tattoo design.

---

[42] 2021 COMPENDIUM (THIRD) § 1802; 2017 COMPENDIUM (THIRD) § 1802; 17 U.S.C. § 408(d).
[43] 2021 COMPENDIUM (THIRD) § 1802.12; 2017 COMPENDIUM (THIRD) § 1802.12.

As explained above, a derivative work is a work that is "based upon one or more preexisting works."[44]  If the derivative work contains an appreciable amount of previously published or registered material, material that is in the public domain, or copyrightable material that is owned by a third party, then the applicant must identify that material and exclude it from the claim.[45]  As indicated by Take-Two and the Court's Request, the Lion tattoo design appears to be a modified version of the Venetian Resort logo, which constitutes third-party owned copyrightable material.  That logo also appears to be based upon ancient and byzantine era drawings and sculptures of the "Lion of Saint Mark."[46]

Had the registration specialist known that the Lion tattoo design contained an appreciable amount of material owned by a third party or in the public domain, he or she would have inquired into whether the derivative work contained new creative authorship with a sufficient amount of original expression that was not a "merely trivial" variation on the preexisting Venetian Resort logo.[47]  If the modifications contained sufficient derivative authorship, the specialist would have asked Mr. Hayden to identify the new copyrightable authorship added to the preexisting design and to exclude the third-party material from its claim.  Having reviewed the two works after receiving the Court's Request, the Register considers Mr. Hayden's modifications to the Venetian Resort logo, which include his structured interpretation of the lion's face and mane, variations to the wing and shield, and shading applied to the body and shield, to be sufficiently creative to warrant registration.

---

[44] 17 U.S.C. § 101 (definition of "derivative work").
[45] 2014 COMPENDIUM (THIRD) § 621.1.
[46] *See Facade of the Scuola Grande di San Marco*, SAVEVENICE.ORG, https://www.savevenice.org/project/scuola-grande-di-san-marco-facade (depicting a sculpture of the "Lion of Saint Mark" completed by Mauro Codussi in 1495) (last visited August 18, 2023); *see also* Pl.'s Br. in Resp. to Order to Show Cause at 7, ECF No. 224.
[47] *Alfred Bell*, 191 F.2d at 102–03; *see also* 2014 COMPENDIUM (THIRD) §§ 311.1, 311.2.

Mr. Hayden cites *Compendium* section 621.9(D)(5) for the proposition that the preexisting material modified here is "not the kind of pre-existing content the Copyright Office requires" to be identified in the registration application because it is "clearly in the public domain."[48]  While the Lion tattoo design may be inspired by the Lion of Saint Mark artwork, which is in the public domain, it appears to specifically modify the Venetian Resort logo, which is a copyrighted work owned by a third party.[49]  Thus, such material should have been identified and excluded from the claim to copyright.

Question 2





**The Creation of Adam**                    **Brother's Keeper T.T.**

Had the Office known that the Brother's Keeper T.T. tattoo design was based upon or incorporated preexisting materials from the Sistine Chapel, the Office would have asked Mr. Hayden to disclose and exclude the preexisting work, and to identify the new material added to the tattoo design.  As noted above, applications for derivative works that contain an appreciable amount of material that is in the public domain must identify that material and exclude it from the claim to copyright.[50]

---

[48] Pl.'s Br. in Resp. to Order to Show Cause at 5, ECF No. 224 (citing 2014 COMPENDIUM (THIRD) § 621.9(D)(5)).
[49] Additionally, as discussed in response to Question 2, Mr. Hayden's assertion that an applicant is not required to exclude material that is "clearly in the public domain" is incorrect.
[50] 2014 COMPENDIUM (THIRD) § 621.1.

The Brother's Keeper tattoo design contains two elements of preexisting material. The first element is the well-known phrase "My Brother's Keeper," which, as a short phrase, is not copyrightable and did not need to be excluded.[51] The second element is the hand design from the painting "The Creation of Adam," which forms part of the Sistine Chapel ceiling paintings created in the early 1500s. As with the Lion tattoo design, Mr. Hayden argues that this material is "clearly in the public domain" and, therefore, did not need to be identified.

The *Compendium* explains that if the work appears to contain an appreciable amount of unclaimable material and if the applicant fails to exclude that material and describe the new authorship, the registration specialist may register the work if the claim is "clearly limited by information provided in the application or elsewhere in the registration materials."[52] Mr. Hayden cites an illustrative example from the *Compendium* regarding an application for a musical work that contains some new lyrics and some text taken from the King James Bible in which the biblical text was not excluded in the application. In that circumstance, "[b]ecause the Biblical text is clearly in the public domain," the registration specialist may register the claim with an annotation stating "[r]egarding material excluded: copy contains some Biblical text."[53] This example demonstrates that a registration specialist who knows that a work contains an appreciable amount of material that is in the public domain may add an annotation excluding the material if the applicant has not done so; it does not stand for the proposition that material that is obviously in the public domain does not need to be excluded. There is no indication here that the registration specialist recognized the design as being based on elements of "The Creation of

---

[51] 37 C.F.R. § 202.1(a) (words and short phrases such as names, titles, and slogans are not copyrightable); 2014 COMPENDIUM (THIRD) § 621.2 ("if the work contains material that is uncopyrightable, such as facts or mere ideas, there is no need to exclude that material from the application.").
[52] 2014 COMPENDIUM (THIRD) § 621.9(D)(5).
[53] Pl.'s Br. in Resp. to Order to Show Cause at 5, ECF No. 224 (citing 2014 COMPENDIUM (THIRD) § 621.9(D)(5)).

Adam" painting.  As a result, the registration specialist did not independently make the required exclusion.

Because the preexisting painting constitutes an appreciable amount of Mr. Hayden's work, had the registration specialist known that the Brother's Keeper T.T. tattoo design was based upon that preexisting work in the public domain, he or she would have inquired into whether the Brother's Keeper T.T. tattoo design contained a sufficient amount of new creative authorship to warrant registration.  Having reviewed the two works after receiving the Court's Request, the Register believes that the non-standard shapes and shading surrounding the phrase constitute a sufficient amount of additional creative authorship to be registered as a derivative work.

Question 3




**Original Tattoo**                                           **Fire D.G.**

If the Office had known at the time of registration that the Fire D.G. tattoo design was "derivative of, or incorporated pre-existing material from another author who was not identified," the Office would have asked Mr. Hayden to disclose and exclude the preexisting work, and to identify the new material added to the tattoo design.  As stated above, an applicant

16

should not include "the name of any person who created material that is not owned by the copyright claimant."[54]  Additionally, copyrightable third-party material that constitutes an appreciable amount of a derivative work must be excluded from the claim to copyright.[55]  The Fire D.G. tattoo design builds upon a preexisting design, which constitutes an appreciable amount of the work.  Therefore, the registration specialist would have inquired into whether the Fire D.G. tattoo design contained a sufficient amount of new creative authorship to warrant registration.

Here, Mr. Hayden's depiction of flames added sufficient creative authorship to be registered as a derivative work.  Though the Court does not indicate whether Mr. Hayden was authorized to modify the preexisting work to create the Fire D.G. tattoo design, in line with its practices, the Office would not have examined the preexisting material to determine whether it has been used in a lawful manner.[56]

Question 4



**Original Tattoo**



**Scroll D.G.**

---

[54] 2014 COMPENDIUM (THIRD) § 613.10(C).
[55] *Id.* § 621.1.
[56] *Id.* § 313.6(B).

Had the Office known that the Scroll D.G. tattoo design was "derivative of, or incorporated preexisting material from another author who was not identified and which depicted a scroll," the Office would have asked Mr. Hayden to disclose and exclude the preexisting work, and to identify the new material added to the tattoo design. As with the Fire D.G. tattoo design, the Scroll D.G. tattoo design builds upon a preexisting design, which constitutes an appreciable amount of the work. Therefore, the registration specialist would have inquired into whether the Scroll D.G. tattoo design contained a sufficient amount of new creative authorship to warrant registration. Here, Mr. Hayden added more than a sufficient amount of creative authorship, which includes a character at the top of the scroll, additional cloud-like design elements, and shading throughout the design, to be registered as a derivative work. Again, the Office would not have examined the preexisting material to determine whether it has been used in a lawful manner.

Question 5

A supplementary registration can be used to limit the claim to copyright.[57] In limiting the claim to copyright, the Supplementary Registrations for the Fire D.G. Registration and Scroll D.G. Registration excluded the material discussed above. Had the Supplementary Registrations further disclosed that the excluded material was the work of other authors, the Office still would have issued the supplementary registrations as submitted. The fact that the excluded material was created by other authors would not impact the Office's decision because the Office does not generally examine such material to determine whether it has been used lawfully.

Finally, based on the Register's review of the preexisting tattoo designs and the Fire D.G. Registration and Scroll D.G. Registration, the included material, described by the applicant as

---

[57] 2017 COMPENDIUM (THIRD) § 1802.6(J).

cloud-like designs, flames, shading, accenting, design aesthetics, decorative spear head, etc., was sufficiently creative to warrant registration.  The new material incorporates numerous non-standard shapes and shading to create dimension, resulting in more than "merely trivial" variations of the preexisting works.

Mr. Hayden may likewise file supplementary registration applications to correct the omissions in the Lion and Brother's Keeper T.T. Registrations by excluding the preexisting designs from his claims to copyright.  As explained above, both of these works modify the works on which they are based in a manner that is sufficiently creative to warrant registration. Although the Office's usual practice is to stay its consideration of supplementary registration applications while there is pending litigation,[58] the Office will examine any supplementary applications Mr. Hayden files if the Court advises it to do so during the pendency of the litigation.

---

[58] 2021 COMPENDIUM (THIRD) § 1802.9(G).

# **CONCLUSION**

Based on a review of the relevant law, regulations, and the Copyright Office's practices, the Register hereby advises the Court that, had it known that Mr. Hayden's tattoo designs incorporated appreciable amounts of unclaimable material, it would have sought to have his applications amended to exclude the unclaimable material. Such material was properly excluded in Mr. Hayden's Supplementary Registrations for Fire D.G. and Scroll D.G. The Register also notes that he may file supplementary registration applications to exclude the unclaimable material incorporated in the Lion and Brother's Keeper T.T. tattoo designs.

Dated: August 21, 2023

*Shira Perlmutter*

Shira Perlmutter
Register of Copyrights and Director
of the U.S. Copyright Office
(202) 707-8350
sperlmutter@copyright.gov