ROBERT E. ALLEN (SBN 166589)
rallen@glaserweil.com
LARA A. PETERSEN (SBN 318475)
lpetersen@glaserweil.com
JASON C. LINGER (SBN 323031)
jlinger@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Boulevard
19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile:  (310) 556-2920

Attorneys for Plaintiff
JEFFREY B. SEDLIK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY B. SEDLIK, | Case No.: 2:21-cv-01102-DSF (MRWx) |
| Plaintiff, | Hon. Dale S. Fischer |
| v. | **DECLARATION OF PROFESSOR JEFFREY B. SEDLIK** |
| KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D""), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

1
DECLARATION OF PROFESSOR JEFFREY B. SEDLIK

I, Professor Jeffrey B. Sedlik, hereby declare as follows:

1. I am an individual residing in the County of Altadena, State of California. I make this declaration in support of Plaintiff Jeffrey B. Sedlik's ("Plaintiff" or "Sedlik") Supplemental Brief In Support of Plaintiff's Opposition to Defendants' Motion in Limine 1, which is to exclude my testimony as a rebuttal expert witness.

2. I have been asked by Plaintiff to rebut the opinions expressed by Defendants' expert witnesses Anna Felicity Friedman ("Friedman"), David C. Lane ("Lane"), and Catherine Montie ("Montie") in their respective expert reports submitted January 24, 2022 in the above captioned case (the "Action"). My rebuttal opinions address practices, standards, procedures, and markets with respect to copyright licensing of photographs and other visual artworks for use in any medium – including, without limitation, social media, and as reference in the creation of tattoos. My rebuttal opinions also address related business models, business transactions, original expression, creative workflows, similarity of works, and other topics on which Defendants' experts have opined or may opine.

3. My opinions are based in part on more than 25 years of service in high-level positions in trade associations and standard-setting bodies in the photography, advertising, product marketing, technology, and design industries. I have been an internationally recognized advertising photographer and commercial director for more than 35 years, working with many clients, observing and interacting with large numbers of photographers, illustrators, advertising agencies, design firms, corporate clients, stock photography and footage agencies, publishers, product manufacturers, and artists working in all manner of media, including tattoos, in the United States and abroad. I have also owned and operated a publishing company, producing and selling photography-related products for more than 20 years.

4. I currently serve as the President and CEO of the PLUS Coalition. "PLUS" is an acronym for "Picture Licensing Universal System." The PLUS

Coalition is a non-profit, international standards body and trade association representing the shared business interests of all industries involved in the creation, licensing, and use of visual art, including photographers, illustrators, videographers, advertisers, advertising agencies, graphic design studios, publishers, artists' representatives, museums, libraries, stock image agencies, and all other image licensees and licensors. The PLUS Coalition develops, propagates, and maintains universal standards for use by licensees and licensors in transactions involving the use of visual artworks in all manner of media, and as reference for the creation of derivative works in the same and different media, including tattoos. As a founding member of the PLUS Board of Directors, I developed the core concept of the Coalition and its copyright licensing standards.

5. I am the past National President of the Advertising Photographers of America ("APA"), the leading trade association for commercial photographers and videographers in the United States. I also served APA as Chief National Advisor on Licensing and Copyright, and provided leadership level guidance on topics including copyright, photography, videography, advertising, industry standards, contract terms, model release terms, and business practices. I represented the APA in discussions with legislators, other industries, and the United States Copyright Office, working with organizations around the world to develop and maintain standards for licensing terms, licensing agreements, model releases, and other photography-related business matters.

6. Until November 2019, I served as a Director of the American Society for Collective Rights Licensing ("ASCRL"), a collective management organization for the visual arts. I also serve as a legal and legislative advisor to the American Society of Media Photographers ("ASMP"), and as a member of the ASMP Copyright Speakers Bureau. I authored the "Photography Licensing" chapter of "ASMP Professional Business Practices in Photography," the predominant business operations reference for professional photographers.

7. At the request of the Register of Copyrights, I served as a guest instructor at Stanford Law School in conjunction with a United States Copyright Office-sponsored Copyright Practicum. I have been engaged by the United States Copyright Office to train new Registration Examiners on visual art copyright registration and licensing marketplace issues from 2010 to present.

8. I have been a faculty member of the American Law Institute for Continuing Legal Education events, providing instruction on licensing practices and on the practical application of copyright law in the visual arts. I have been a guest speaker and guest instructor on copyright law and licensing for leading institutions and organizations, including Duke University School of Law, New York University School of Law, Oxford University School of Law, American University Washington College of Law, Antonin Scalia George Mason University Law School, Fordham University School of Law, Joint Photographic Experts Group (JPEG), International Federation of Reproduction Rights Organizations, Smithsonian Institution, International Confederation of Societies of Authors and Composers, National Association of Recording Merchandisers, Digital Library Federation, the Copyright Society of the United States, and others.

9. In addition, I have testified repeatedly before the Judiciary Committees of both the United States Senate and House of Representatives, summoned to advise Congress on copyright law issues and legislative reform. Most recently, on September 26, 2023, I testified before the Committee on House Administration, on various topics including photography licensing, photography business practices, copyright registration, and the modernization of the United States Copyright Office.

10. I am a 25-year faculty member and Professor at the Art Center College of Design in Los Angeles, where I sit on the Intellectual Property Committee and teach advanced courses on the artistic, technical, production, legal, and business aspects of traditional and digital photography and videography. My curriculum includes

advanced instruction on legal topics such as copyright law, copyright registration, copyright licensing, and contract interpretation.

11. After more than 35 years as an award-winning commercial photographer, videographer, cinematographer, and studio owner, I continue to operate an advertising and entertainment photography and production company in California, creating photography, video, commercials, and design, with a client list that includes such companies as Nike, Federal Express, Farmers Insurance, SBC, GTE, NBC, Sony, AT&T, Blue Cross, Epson, IKEA, United Airlines, Warner Brothers, Toyota, Nestlé, Disney, Bank of America, and others. My publishing company, Mason Editions, produces and distributes fine photographic reproductions.

12. I have testified as an expert witness during the period 2002 to present, in litigation involving visual arts, copyright, metadata, advertising, branding, graphic design, right of publicity/privacy, model releases, breach of contract, criminal matters, and other topics.

13. In addition to my personal knowledge, my opinions are based on an independent examination of documents and materials produced in the Action to date, as well as the expertise I have developed as described in this declaration.

14. The facts set forth herein are true of my own personal knowledge or upon information and belief, and if called upon to testify thereto, I could and would competently do so under oath.

15. I have thoroughly reviewed the expert reports of Lane and Montie, the Court's Order Granting in part and Denying in part the Motion to exclude witnesses (ECF 71), Defendants' Memorandum of points and authorities in support of Defendants' motion in limine No. 1 to exclude expert testimony from me (ECF 77), and the Court's hearing transcript from November 11, 2022, in addition to other documents that have been produced by the parties throughout this Action.

16. I understand that Defendants challenge my expertise in relation to the licensing of photographs for use by tattooists as reference in the creation of tattoos.

17. During my 37 years as a professional photographer, I have offered and sold licenses permitting the use of my photographs in a wide variety of media – for all manner of purposes, in all manner of media – including, without limitation, book covers, movie posters, websites, board games, coffee mugs, calendars, posters, tee shirts, socks, neck ties, bus benches, billboards, coupons, leaflets, press releases, sales kits, television shows, business cards, catalogs, movies, annual reports, shopping carts, brochures, product packaging, album covers, greeting cards, business presentations, banners, subway advertisements, newsletters, elevator displays, and trade show booths, magazine covers, and newspaper advertisements. In addition, I have granted licenses for "artist's reference," permitting other artists to adapt my photographic works in the same and different media, such as in illustrations, drawings, paintings, sculptures, and tattoos. In my publishing business, I have purchased licenses from other copyright owners, permitting me to reproduce and distribute their works on posters, websites, and other media. In the course of my various business activities, I have gained considerable knowledge, experience, and expertise in licensing photographs and other visual artworks for reproduction, distribution, display, and adaptation in derivative works in any and all media.

18. In addition, in various leadership roles in the above-identified trade associations and standards bodies, I have gained considerable expertise and experience in licensing standards, licensing practices, licensing media, and licensing markets.

19. In particular, in my role as the founder and CEO of PLUS, I have organized and led a successful global initiative to create and maintain standards for the communication and management of rights associated with visual artworks. The PLUS standards have been broadly adopted and used worldwide for more than 15 years. For example, Google has integrated the PLUS standards to identify works available for licensing from within Google Images search results, and Adobe has integrated the PLUS standards in all Adobe applications used to edit and manage

visual works. Other standards bodies, such as the International Press Telecommunications Council, have adopted and integrated the PLUS standards.

20. Among the many standards developed by PLUS, the PLUS "Media Matrix" is a controlled vocabulary developed by PLUS to standardize and organize a universal hierarchy for existing licensing terminology already in broad use in the marketplace by licensors, licensees and others to communicate myriad Media Categories, Media Types, and Media Options, thus simplifying and facilitating the communication and management of rights requested and granted in relation to the use of visual artworks in all types of media.

21. In 2006, in order to accommodate requests that PLUS standardize terminology employed in the long-existing practice of requesting, offering and granting licenses of visual artworks in connection with the creation of tattoos, PLUS added, the Media Type "Artist's Reference: Tattoo" to the Media Matrix. The "Tattoo" Media Type is included twice among the many Media Types listed in the Media Matrix, and is intended for use by licensors, licensees, and others in communicating the right to adapt photographs and other visual artworks in the tattoo medium. The Media Matrix includes one Media Type for use by Tattoo Parlors in requesting and acquiring licenses for creating derivative tattoos: "Products / Art / Artist's Reference (Tattoo)," and a separate Media Type for use by private individuals requesting and acquiring licenses in advance of contracting with tattooists to create derivative tattoos: "Personal Use / Art / Artist's Reference (Tattoo)."

22. Similarly, in the PLUS Picture Licensing Glossary, the standardized definition for the term "Artist's Reference" in the licensing context is "A licensed image, typically a photograph, from which an artist may extract visual information for use in creating an illustration," and the accompanying note is "A license to use a work as an artist's reference does not grant the right to reproduce, display, distribute or make any other use of a work, unless such rights are separately granted."

23. I led a group of more than 1500 volunteers from more than 40 countries in developing the Picture Licensing Glossary, the Media Matrix, and other PLUS standards. I participated personally and directly in the research and development of the two "tattoo" Media Types in the Media Matrix, and in the "Artist's Reference" standard in the Picture Licensing Glossary after extensive research and analysis into the licensing of visual artworks for use in the creation of tattoos.

24. Specifically, during the period 2005 through 2006, I personally visited multiple tattoo parlors in the Los Angeles area, and observed that without exception, each business included "tattoo flash," primarily in the form of books and point-of-purchase display posters. On examination of the books, I noted that each such book included copyright license terms permitting the use of the included tattoo designs only for the limited purpose of reference by tattooists in adapting those designs in tattoos.

25. In the course of the instant Action, I again visited tattoo parlors in the Los Angeles area, and again examined multiple flash books in use at those parlors, and again verified that each such book included copyright license terms permitting the use of the included tattoo designs only for the limited purpose of reference by tattooists in adapting those designs in tattoos.  See, for example, <u>Exhibit A</u>.

26. As the result of the above activities and experiences, I have direct personal knowledge of the licensing of artworks for use by tattooists and in the tattoo industry. However, I would be competent to testify in this matter even if I lacked such experience with the tattoo industry. My expertise is in the licensing of photographs and illustrations by photographers and other licensors, to any and all licensees, in any and all industries, for use in any and all media. I am recognized as a leading expert on the topic. Tattoos are just one of thousands of types of media in/on which photographs may be reproduced, distributed and adapted. Just as I do not need to be a car mechanic to testify about licensing of car photographs by photographers and other licensors, to the automotive industry, I do not need to be a tattooist or professor of

tattoos to testify on the availability of photographs for licensing in the tattoo industry, and how they are licensed.

27. I understand that one of Defendants' experts — either Lane or Montie — will be offering expert testimony about the customs and practices of the tattoo industry regarding the alleged lack of a market for licensing copyrighted materials in connection with the creation of tattoos, and only for the limited purpose of proving lack of willfulness of the infringement. If permitted to testify as an expert witness, my opinion will directly rebut that opinion—based upon my knowledge, training, and experience as described above, not only does such a market exist, but Defendants either knew that to be the case or were willfully blind as to its existence.

I declare under penalty of perjury that the foregoing facts are true and correct.

Executed on October 4, 2023 at Kavouri, Vouliagmeni, Athens, Greece.

_____
Jeffrey B. Sedlik