1  ROBERT E. ALLEN (SBN 166589)
   rallen@glaserweil.com
2  LARA A. PETERSEN (SBN 318475)
   lpetersen@glaserweil.com
3  JASON C. LINGER (SBN 323031)
   jlinger@glaserweil.com
4  GLASER WEIL FINK HOWARD
5    JORDAN & SHAPIRO LLP
   10250 Constellation Boulevard
6  19th Floor
7  Los Angeles, California 90067
   Telephone:  (310) 553-3000
8  Facsimile:   (310) 556-2920

9  Attorneys for Plaintiff
   JEFFREY B. SEDLIK
10

11

ALLEN B. GRODSKY (SBN 111064)
allen@thegolawfirm.com
TIM B. HENDERSON (SBN 281159)
tim@thegolawfirm.com
GRODSKY, OLECKI & PURITSKY, LLP
11111 Santa Monica Boulevard
Suite 1070
Los Angeles, CA 90025
(310) 315-3009 – Telephone
(310) 315-1557 – Facsimile

Attorneys for Defendants
Katherine Van Drachenberg aka Kat
Von D, Kat Von D, Inc., and High
Voltage Tattoo, Inc.

12                UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                     WESTERN DIVISION

15  JEFFREY B. SEDLIK,

16              Plaintiff,

17  v.

18  KATHERINE VAN DRACHENBERG
    aka KAT VON D; KAT VON D, INC.;
19  and HIGH VOLTAGE TATTOO, INC.,

20              Defendants.

21

CASE NO.: 2:21-cv-01102-DSF-MRW

Hon. Dale S. Fischer

**JOINT PROPOSED JURY
INSTRUCTIONS WITH
SUPPORTING ARGUMENTS**

Pretrial Conference: October 30, 2023
Trial Date:   November 28, 2023

22

23

24

25

26

27

28

1    Pursuant to Section II.B of this Court's May 19, 2021 Order Re: Jury Trial

2  (Dkt. 19) and the Court's instructions at the October 30, 2023 pre-trial conference,

3  Plaintiff Jeffrey B. Sedlik and Defendants Katherine Von Drachenberg and High

4  Voltage Tattoo, Inc. submit the following joint set of jury instructions containing both

5  the disputed and undisputed instructions in the order in which they would be given.

6    An index of the instructions and the instructions follow below.

7    The instructions marked in red in the index are disputed.

8    All remaining instructions are undisputed.

9

10  DATED:  November 10, 2023       GLASER WEIL FINK HOWARD
                                    JORDAN & SHAPIRO LLP
11

12                                  By: /s/ Robert E. Allen
13                                  _____
14                                  ROBERT E. ALLEN
                                    LARA A. PETERSEN
                                    JASON C. LINGER
15
                                    Attorneys for Plaintiff
16

17  DATED:  November 10, 2023       GRODSKY, OLECKI & PURITSKY LLP

18

19                                  By: /s/ Allen B. Grodsky
                                    _____
20                                  ALLEN B. GRODSKY
                                    TIM B. HENDERSON
21

22                                  Attorneys for Defendants

23

24

25

26

27

28

2343344

# INDEX OF JURY INSTRUCTIONS

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 1 | Duty of Jury | 9th Cir. 1.4 | 7 |
| 2 | Claims and Defenses | 9th Cir. 1.5 | 8 |
| 3 | Burden of Proof – Preponderance of the Evidence | 9th Cir. 1.6 | 9 |
| 4 | Two or More Parties: Different Legal Rights | 9th Cir. 1.8 | 10 |
| 5 | What is Evidence | 9th Cir. 1.9 | 11 |
| 6 | What is Not Evidence | 9th Cir. 1.10 | 12 |
| 7 | Evidence for Limited Purpose | 9th Cir. 1.11 | 13 |
| 8 | Direct and Circumstantial Evidence | 9th Cir. 1.12 | 14 |
| 9 | Ruling on Objections | 9th Cir. 1.13 | 15 |
| 10 | Credibility of Witnesses | 9th Cir. 1.14 | 16 |
| 11 | Conduct of the Jury | 9th Cir. 1.15 | 18 |
| 12 | Taking Notes | 9th Cir. 1.18 | 20 |
| 13 | Stipulations of Fact | 9th Cir. 2.2 | 21 |
| 14 | Deposition in Lieu of Live Testimony | 9th Cir. 2.4 | 22 |
| 15 | Transcript of Recording in English | 9th Cir. 2.5 | 23 |
| 16 | Use of Interrogatories | 9th Cir. 2.11 | 24 |
| 17 | Expert Opinion | 9th Cir. 2.13 | 25 |
| 18 | Charts and Summaries Not Received in Evidence | 9th Cir. 2.14 | 26 |

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

| 19 | Charts and Summaries Received in Evidence | 9th Cir. 2.15 | 27 |
|---|---|---|---|
| 20 | Evidence in Electronic Format | 9th Cir. 2.16 | 28 |
| 21 | Duty to Deliberate | 9th Cir. 3.1 | 30 |
| 22 | Consideration of Evidence – Conduct of the Jury | 9th Cir. 3.2 | 31 |
| 23 | Communication with the Court | 9th Cir. 3.3 | 33 |
| 24 | Return of Verdict | 9th Cir. 3.5 | 34 |
| 25 | Corporations and Partnerships – Fair Treatment | 9th Cir. 4.1 | 35 |
| 26 | Liability of Corporations – Scope of Authority Not In Issue | 9th Cir. 4.2 | 36 |
| 27 | Damages – Proof | 9th Cir. 5.1 | 37 |
| 28 | Preliminary Instruction - Copyright | 9th Cir. 17.1 | 38 |
| 29 | Definition of Copyright (17 U.S.C. § 106) | 9th Cir. 17.2 | 41 |
| 30 | Copyright – Subject Matter – Generally | 9th Cir. 17.3 | 43 |
| 31 | Copyright – Subject Matter – Ideas and Expression (17 U.S.C. § 102(b)) | 9th Cir. 17.4 | 43 |
| 32 | Copyright Infringement—Elements—Ownership and Copying (17 U.S.C. § 501(a)-(b))) | 9th Cir. 17.5 | 44 |
| 33 | Copyright Infringement – Ownership of Valid Copyright – Definition | 9th Cir. 17.6 | 48 |
| 34 | Copyright Infringement – Copyright Registration Certificate | 9th Cir. 17.7 | 49 |
| 35 | Reserved | | |
| 36 | Copyright Interests – Derivative Work | 9th Cir. 17.15 | 50 |

| 37 | Copying – Access and Substantial Similarity | 9th Cir. 17.17 | 51 |
| 38 | Copyright Infringement – Copying – Access Defined | 9th Cir. 17.18 | 52 |
| 39 | Substantial Similarity—Extrinsic Test; Intrinsic Test | 9th Cir. 17.19 | 53 |
| 40 | Substantial Similarity—Extrinsic Test (for Photographs) | 9th Cir. 17.19 | 60 |
| 41 | Substantial Similarity—Intrinsic Test | 9th Cir. 17.19 | 64 |
| 42 | Secondary Liability – Vicarious Infringement – Elements and Burden of Proof | 9th Cir. 17.20 | 66 |
| 43 | Derivative Liability – Contributory Infringement – Elements and Burden of Proof | 9th Cir. 17.21 | 67 |
| 44 | Copyright – Affirmative Defense – Fair Use (17 U.S.C. § 107) | 9th Cir. 17.22 | 68 |
| 45 | Introduction to First Fair Use Factor | *Warhol* | 77 |
| 46 | First Fair Use Factor – Transformative | *Warhol* | 80 |
| 47 | First Fair Use Factor – Commercial Use | *Seltzer* | 83 |
| 48 | Second Fair Use Factor | *Seltzer* | 87 |
| 49 | Third Fair Use Factor | *Campbell* | 89 |
| 50 | Fourth Fair Use Factor | *Seltzer* | 92 |
| 51 | Fifth Fair Use Factor: Personal Expression and Bodily Integrity | 9th Cir. 17.22 | 96 |
| 52 | Concluding Remarks on Fair Use | *Campbell* | 100 |
| 53 | Copyright – Damages (17 U.S.C. § 504) | 9th Cir. 17.32 | 102 |

2343344

| 54 | Copyright – Damages – Actual Damages (17 U.S.C. § 504(b)) | 9th Cir. 17.33 | 103 |
|----|------|------|-----|
| 55 | Copyright—Damages—Defendant's Profits (17 U.S.C. § 504(b)) | 9th Cir. 17.34 | 105 |
| 56 | Copyright – Damages – Statutory Damages (17 U.S.C. § 504(c)) | 9th Cir. 17.35 | 108 |
| 57 | Copyright – Damages – Innocent Infringement (17 U.S.C. § 504(c)(2)) | 9th Cir. 17.36 | 109 |
| 58 | Copyright – Damages – Willful Infringement (17 U.S.C. § 504(c)(2)) | 9th Cir. 17.37 | 110 |
| 59 | Copyright – Statute of Limitations and Three-Year Bar | *Starz* | 111 |

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## <u>INSTRUCTION NO. 1 (UNDISPUTED)</u>

### Duty of Jury

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.


<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 1.4 (2017).

2343344

## INSTRUCTION NO. 2 (UNDISPUTED)

### Claims and Defenses

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff asserts that defendants infringed on plaintiff's copyright and that plaintiff suffered damages as a result of the infringement. The plaintiff has the burden of proving these claims.

The defendants deny those claims and also contend that defendants' use of the work was fair use; [and] that if there was infringement, it was innocent infringement; and that the plaintiff's recovery is limited by the statute of limitations. The defendants have the burden of proof on these affirmative defenses.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 1.5 (2017) (underlined text subject to pending motion in limine filed by Plaintiff).

2343344

## <u>INSTRUCTION NO. 3 (UNDISPUTED)</u>

### Burden of Proof – Preponderance of the Evidence

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 1.6 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## <u>INSTRUCTION NO. 4 (UNDISPUTED)</u>

### Two or More Parties: Different Legal Rights

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 1.8 (2017).

2343344

## <u>INSTRUCTION NO. 5 (UNDISPUTED)</u>

### **What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I have instructed you to accept as proved.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 1.9 (2017).

2343344

## INSTRUCTION NO. 6 (UNDISPUTED)

### What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 1.10 (2017).

2343344

## <u>INSTRUCTION NO. 7 (UNDISPUTED)</u>

### Evidence for Limited Purpose

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 1.11 (2017) (with bracketed text removed).

2343344

## <u>INSTRUCTION NO. 8 (UNDISPUTED)</u>

### Direct and Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 1.12 (2017).

2343344

## **INSTRUCTION NO. 9 (UNDISPUTED)**

### **Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 1.13 (2017).

2343344

## **INSTRUCTION NO. 10 (UNDISPUTED)**

### **Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the

2343344

1   number of witnesses who testify. What is important is how believable the witnesses

2   were, and how much weight you think their testimony deserves.

3

4   <u>AUTHORITY FOR INSTRUCTION:</u>

5       Model Civ. Jury Instr. 9th Cir. 1.14 (2017).

2343344

## <u>INSTRUCTION NO. 11 (UNDISPUTED)</u>

### Conduct of the Jury

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you  must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference

2343344

materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 1.15 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## INSTRUCTION NO. 12 (UNDISPUTED)

### Taking Notes

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 1.18 (2017).

2343344

## <u>INSTRUCTION NO. 13 (UNDISPUTED)</u>

### Stipulations of Fact

The parties have agreed to certain facts that will be read to you. You must therefore treat these facts as having been proved.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 2.2 (2017).

2343344

## INSTRUCTION NO. 14 (UNDISPUTED)

### Deposition in Lieu of Live Testimony

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of Jeffrey B. Sedlik was taken on January 11, 2022, and the deposition of Katherine Von Drachenberg was taken on January 18, 2022. The deposition of Brian Vanegas was taken on July 31, 2023.  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 2.4 (2017).

2343344

## <u>INSTRUCTION NO. 15 (UNDISPUTED)</u>

### Transcript of Recording in English

You are about to watch a recording that has been received in evidence. Please listen to it very carefully. Each of you has been given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording. However, bear in mind that the recording is the evidence, not the transcript. If you hear something different from what appears in the transcript, what you heard is controlling. After the recording has been played, the transcript will be taken from you.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 2.5 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## __INSTRUCTION NO. 16 (UNDISPUTED)__

### **Use of Interrogatories**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 2.11 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## <u>INSTRUCTION NO. 17 (UNDISPUTED)</u>

### **Expert Opinion**

You have heard testimony from expert witnesses Cathy Montie [and Jeffrey Sedlik (SUBJECT TO MOTION IN LIMINE)] who testified to opinions and the reasons for his or her opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 2.13 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## INSTRUCTION NO. 18 (UNDISPUTED)

### Charts and Summaries Not Received in Evidence

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 2.14 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## <u>INSTRUCTION NO. 19 (UNDISPUTED)</u>

### Charts and Summaries Received in Evidence

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 2.15 (2017).

2343344

## INSTRUCTION NO. 20 (UNDISPUTED)

### Evidence in Electronic Format

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any non juror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any non juror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 2.16 (2017).

2343344

## <u>INSTRUCTION NO. 21 (UNDISPUTED)</u>

### **Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 3.1 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## INSTRUCTION NO. 22 (UNDISPUTED)

### Consideration of Evidence – Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as   jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to outside information, please notify the court immediately.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 3.2 (2017).

# <u>INSTRUCTION NO. 23 (UNDISPUTED)</u>

## **Communication with the Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 3.3 (2017).

## INSTRUCTION NO. 24 (UNDISPUTED)

### Return of Verdict

A verdict form has been prepared for you. [*Explain verdict form as needed*.] After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the [*clerk*] that you are ready to return to the courtroom.

AUTHORITY FOR INSTRUCTION:

Ninth Circuit Manual of Model Jury Instructions 3.5.

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## **INSTRUCTION NO. 25 (UNDISPUTED)**

### **Corporations and Partnerships – Fair Treatment**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 4.1 (2017).

2343344

## <u>INSTRUCTION NO. 26 (UNDISPUTED)</u>

**Liability of Corporations – Scope of Authority Not In Issue**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 4.2 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## <u>INSTRUCTION NO. 27 (UNDISPUTED)</u>

### Damages – Proof

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence.

It is for you to determine what damages, if any, have been provided.

Your award must be based on evidence and not upon speculation, guesswork, or conjecture.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 5.1 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## INSTRUCTION NO. 28 (UNDISPUTED)

### Preliminary Instruction – Copyright

The plaintiff, Jeffrey B. Sedlik, claims ownership of copyright and seeks damages against the defendants, Katherine Von Drachenberg and High Voltage Tattoo, Inc., for copyright infringement. The defendants deny infringing the copyright, and assert the affirmative defense that they made a fair use of the work, along with other defenses. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

DEFINITION OF COPYRIGHT

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

HOW COPYRIGHT IS OBTAINED

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. The owner of the copyright may register the copyright by completing a registration form and depositing a copy of the  copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

certificate of registration to the copyright owner.

## PLAINTIFF'S BURDEN OF PROOF

In this case, the Plaintiff, Jeffrey B. Sedlik, contends that Defendants Katherine Von Drachenberg and High Voltage Tattoo, Inc. have infringed the plaintiff's copyright. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyright and that the defendants copied original expression from the copyrighted works. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

The plaintiff must also prove that the defendants' use of the copyrighted work was substantial. In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.

## PROOF OF COPYING

To prove that the defendants copied the plaintiff's work, the plaintiff may show that the defendants had access to the plaintiff's copyrighted work and that there are substantial similarities between the defendants' work and the plaintiff's copyrighted work.

## LIABILITY FOR INFRINGEMENT

One who reproduces, prepares derivative works from, publicly displays, or publicly distributes a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.

Copyright may also be infringed by vicariously or contributorily infringing.

## VICARIOUS INFRINGEMENT

A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and had the right and ability to supervise or control the infringing activity, whether or not the person knew of the infringement.

## CONTRIBUTORY INFRINGEMENT

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces or materially contributes to the activity.

DEFENSES TO INFRINGEMENT

The defendants contend that there is no copyright infringement. There is no copyright infringement when the defendants made fair use of the copyrighted work.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 17.1 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## INSTRUCTION NO. 29 (UNDISPUTED)

### Definition of Copyright (17 U.S.C. § 106)

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

(1) reproduce the copyrighted work in copies;

(2) recast, transform, or adapt the work, that is prepare derivative works based upon the copyrighted work;

(3) distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4) display publicly a copyrighted graphic work.

It is the owner of a copyright who may exercise these exclusive rights. The term "owner" includes the author of the work or an assignee. In general, copyright law protects against reproduction, adaptation, public distribution, and public display of identical or substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.


AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.2 (2017).

## INSTRUCTION NO. 30 (UNDISPUTED)

### Copyright – Subject Matter – Generally

The work involved in this trial, the Miles Davis Photograph, is known as a pictorial work.

Pictorial works, such as photographs, prints, and art reproductions, can be protected by copyright law.

You are instructed that a copyright may be obtained in the Miles Davis Photograph.

This work can be protected by copyright law. Only that part of the work comprised of original works of authorship fixed in any tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any idea, concept or principle, regardless of the form in which it is described, explained, illustrated, or embodied.


AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.3 (2017).

2343344

## **INSTRUCTION NO. 31 (UNDISPUTED)**

### **Copyright – Subject Matter – Ideas and Expression (17 U.S.C. § 102(b))**

Copyright law allows the author of an original work to stop others from copying the original expression in the author's work. Only the particular expression of an idea can be copyrighted and protected. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries. In order to protect any ideas in the work from being copied, the author must secure some other form of legal protection because ideas cannot be copyrighted.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.4 (2017).

2343344

**<u>INSTRUCTION NO. 32 (DISPUTED)</u>**

**Copyright Infringement—Elements—Ownership and Copying**

**(17 U.S.C. § 501(a)-(b)))**

**<u>PLAINTIFF'S PROPOSED INSTRUCTION NO. 32:</u>**

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright. For each of plaintiff's copyright infringement claims, the plaintiff has the burden of proving by a preponderance of the evidence that:

1. the plaintiff is the owner of a valid copyright; and

2. the defendant copied original expression from the copyrighted work.

The Court has already determined that Plaintiff has proven he is the owner of a valid copyright in the Miles Davis Photograph and that Defendants have copied the Photograph in connection with the Tattoo and the social media posts. You must determine whether Defendants copied "original expression" from the Miles Davis Photograph.

To prove whether Defendants copied "original expression" from the Miles Davis Photograph, Plaintiff does not have to show that Defendants produced an exact duplicate of the Miles Davis Photograph. Instead, as I will discuss in further detail later, Plaintiff must show that Defendants copied the Miles Davis Photograph's protected expression to render their works "substantially similar."

If you find that Plaintiff has proven copying of "original expression," and that Plaintiff's claims are not otherwise barred by an affirmative defense (which I will discuss later), your verdict should be for Plaintiff. If, on the other hand, you find that Plaintiff has failed to prove this element, your verdict should be for Defendants.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.5 (2017); *Rentmeester v. Nike, Inc.*, 883 F.3d

2343344

1  1111, 1118 (9th Cir. 2018).

2

3  **PLAINTIFF'S STATEMENT RE: PLAINTIFF'S PROPOSED INSTRUCTION**

4  **NO. 32:**

5      Plaintiff proposes this jury instruction that is based on the Ninth Circuit Model

6  Civil Jury Instruction 17.5 and complies with the Court's Standing Order.

7      As the Court has already found, "Defendants do not dispute that Sedlik owns a

8  valid copyright in the Portrait." ECF 69, 10.  Additionally, the Court has already

9  found that Plaintiff has satisfied the "copying prong."  *Id.* (Defendants "do not appear

10 to dispute the 'copying' prong, as they do not address it in their Opposition.").  Thus,

11 as the Court found, the only outstanding issue is whether Defendants copied

12 "protectible elements" of the Photograph in the Tattoo (although Defendants do not

13 dispute that they publicly displayed an exact copy of the Photograph in certain of their

14 social media posts).  *Id.*

15     At the October 30, 2023 pre-trial conference, the Court stated that it would

16 include a cross-reference to affirmative defenses in this instruction.  A cross-reference

17 to substantial similarity (discussed in further detail in Instruction No. 39) is also

18 appropriate given that this instruction uses a copyright law term of art, "original

19 expression."  The instruction should offer some guidance on the meaning of this term,

20 and preview the substantiality similarity instruction that will be provided later on.

21     The second to last paragraph comes directly from *Rentmeester v. Nike, Inc.*,

22 883 F.3d 1111, 1118 (9th Cir. 2018).

23

24 **DEFENDANTS' STATEMENT RE: PLAINTIFF'S PROPOSED**

25 **INSTRUCTION NO. 32:**

26     The additional modifications to the model instruction as proposed by Plaintiff

27 are, for the most part unnecessary and confusing. There is no reason to instruct the

28 jury that it has been found Defendants "copied the photograph."  The question for the

jury is not where Defendants copied the photograph but Defendants copied "protectible elements" of the photograph and that has not been established.

The second to last paragraph is duplicative, confusing, and unnecessary. There will be an instruction (both sides have proposed one as Proposed Instruction No. 32) on what the protectible elements of a photograph are.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 32

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

Plaintiff is the owner of a valid copyright in the Miles Davis photograph. On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that the defendants copied original expression from the copyrighted work.

If you find that the plaintiff has proved this, and that the plaintiff's claim is not otherwise barred by an affirmative defense (which I will discuss later), then your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove that the defendants copied original expression from the copyrighted work, your verdict should be for the defendants.

## DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 32:

Defendants' proposed Instruction No. 32 is a slightly modified version of Ninth Circuit Model Instruction No. 17.5.

There is no dispute that Plaintiff owns a valid copyright in the Miles Davis photograph and so that element has been removed from the instruction.

## PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 32:

Defendants' proposed instructions offers no clarity on the meaning of "original expression" and does not cue the jury that "original expression" is related to substantial similarity.

The Court has already found that Plaintiff has satisfied the "copying prong," with the only outstanding issue being whether Defendants have copied enough of the protected expression from the Miles Davis Photograph to render the works substantially similar with the Tattoo (Defendants do not dispute that they publicly displayed an exact copy of the Photograph in their social media posts). Accordingly, the instruction should make clear that the "copying prong" has been shown with respect to all of Defendants' uses, and that Plaintiff's burden is only to prove that the Photograph and Tattoo are substantially similar.

Plaintiff proposes his jury instruction that is based on the Ninth Circuit Model Civil Jury Instruction 17.5 and complies with the Court's Standing Order.

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## INSTRUCTION NO. 33 (UNDISPUTED)

### Copyright Infringement – Ownership of Valid Copyright – Definition

The plaintiff is the owner of a valid copyright in the Miles Davis Photograph if the plaintiff proves by a preponderance of the evidence that, with respect to each work:

    1. the plaintiff's work is original; and

    2. the plaintiff is the author or creator of the work, or received a transfer of the copyright.

AUTHORITY FOR INSTRUCTION:

    Model Civ. Jury Instr. 9th Cir. 17.6 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## <u>INSTRUCTION NO. 34 (UNDISPUTED)</u>

**Copyright Infringement – Copyright Registration Certificate**

A copyright owner may obtain a certificate of registration from the Copyright Office.

The evidence in this case includes <u>Exhibit 7</u>, a certificate of copyright registration from the Copyright Office. You are instructed that the certificate is sufficient to establish that there is a valid copyright in the Miles Davis Photograph.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 17.7 (2017).

2343344

## <u>INSTRUCTION NO. 36 (UNDISPUTED)</u>

### Copyright Interests – Derivative Work

A copyright owner is entitled to exclude others from creating derivative works based on the owner's copyrighted work. The term derivative work refers to a work based on one or more pre-existing works, such as an art reproduction or any other form in which the pre-existing work is recast, transformed, or adapted. Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming, or adapting the copyrighted work without the owner's permission, unless the derivative work is itself found to be a fair use.

The copyright owner of the pre-existing work may enforce the right to exclude others in an action for copyright infringement to the extent that the material copied derived from the pre-existing work.

AUTHORITY FOR JOINT AGREED-UPON INSTRUCTION NO. J35:

Model Civ. Jury Instr. 9th Cir. 17.15 (2017) (modified to include exception for fair use).

## <u>INSTRUCTION NO. 37 (UNDISPUTED)</u>

### Copying – Access and Substantial Similarity

Instruction 32 states that the plaintiff has the burden of proving that the defendants copied original elements from the plaintiff's copyrighted work. The plaintiff may show the defendants copied from the work by proving by a preponderance of the evidence that the defendants had access to the plaintiff's copyrighted work and that there are substantial similarities between the defendants' work and original elements of the plaintiff's work.

There is no dispute that Defendants had access to Plaintiff's copyrighted work. If you find that the plaintiff has failed to prove substantial similarities between the defendants' work and original elements of the plaintiff's work, your verdict should be for the defendants.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 17.17 (2017).

2343344

## INSTRUCTION NO. 38 (UNDISPUTED)

### Copyright Infringement – Copying – Access Defined

As part of its burden in the above Instruction, the plaintiff must prove by a preponderance of the evidence that defendants had access to the plaintiff's work at issue and then created the allegedly infringing work.

It is agreed that the defendants had access to the Miles Davis Photograph.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.18 (2017) (modified to reflect parties' agreement that access is not in dispute).

**<u>INSTRUCTION NO. 39 (DISPUTED)</u>**

**Substantial Similarity—Extrinsic Test; Intrinsic Test**

**<u>PLAINTIFF'S PROPOSED INSTRUCTION NO. 39:</u>**

A substantial similarity test is <u>not</u> necessary if you determine that Defendants directly copied the Miles Davis Photograph.

However, to the extent the Court determines that a substantial similarity test should be performed, Plaintiff must prove both substantial similarity under both the "extrinsic test" and "intrinsic test."

The "extrinsic test" is an objective comparison of specific expressive elements. The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.

For the extrinsic test, you should examine and compare the similarities in their "objective details in appearance," including subject matter, pose, lighting, camera angle, depth of field, selection of film and camera, evoking the desired expression in the person depicted, and almost any other variant involved in the works. The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in "total concept and feel."

Photographs like the Miles Davis Photograph are entitled to "broad" copyright protection because there were a great number of choices involved in creating the Miles Davis Photograph, such as Davis's highly specific pose, lighting and shadows, camera angle, and background. You must decide "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar."

A photographer's selection and arrangement of a photograph's otherwise unprotected elements is protected by copyright. If sufficiently original, the combination of subject matter, pose, lighting, camera angle, depth of field and the

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

like, receives protection.  The greater the range of creative choices that may be made, the broader the level of protection that will be afforded to the resulting image.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.19 (2017); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992); *Ets–Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003).

**PLAINTIFF'S STATEMENT RE: PLAINTIFF'S PROPOSED INSTRUCTION NO. 39:**

In *Norse* and *Range Road*, the Ninth Circuit held that a substantial similarity analysis is irrelevant and unnecessary in a case such as this one involving direct copying of the copyrighted work.  *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir. 1993).  Plaintiff's Instructions are in accord with these decisions, which were not addressed by the Court in the summary judgment or reconsideration decisions.

Defendants cite to *Rentmeester* and *Skidmore*, but those cases did not involve direct copying. As this Court recognized in its summary judgment order, *Rentmeester* involved two *different* photographs of Michael Jordan, with "significant differences in Jordan's pose, the specific setting and backdrop, position of the basketball hoop, and Jordan's positioning within the frame" (ECF 69 at 12).  The Ninth Circuit held that the two photographs were not substantially similar as a matter of law.  *Rentmeester*, 883 F.3d at 1121.  Similarly, in *Skidmore*, "there [was] no direct evidence that the two bands toured together, or that Led Zeppelin band members heard Spirit perform *Taurus*."  *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1057 (9th Cir. 2020).  Therefore, the plaintiff attempted to prove copying "circumstantially"—that "the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Id.* at 1064.  Here, by contrast, Defendants ***admitted*** to copying the Miles

2343344

Davis Photograph.  Both *Norse* and *Range Road* remain good law and have continued to be applied by Courts in this Circuit.  *Ross-Nash v. Almond*, 2020 WL 6947691, at *3 (D. Nev. Oct. 28, 2020) (granting summary judgment without conducting an substantial similarity analysis where defendant admitted to copying because it would be "irrelevant"); *Oracle Int'l Corp. v. Rimini St., Inc.*, 2023 WL 4706127, at *71 (D. Nev. July 24, 2023) (similar).

The instruction regarding "broad" protection is appropriate because the Court has already found that the Miles Davis Photograph is entitled to "broad" protection and provided the basis for that determination.  ECF 69, 14 (citing *Rentmeester*, 883 F.3d at 1120) (finding photograph was entitled to broad protection because the range of creative choices was "exceptionally broad" and "very few of those choices were dictated by convention or subject matter.").  Plaintiff's instruction matches the language used by the Court in its summary judgment order.  ECF 69, 14 ("[T]he Court finds the Portrait is entitled to broad protection because there were a great number of choices involved in creating the Portrait, such as Davis's highly specific pose, facial expression, lighting and shadows, camera angle, and background for the image.").  The jury should be advised on what are the protectible elements of a copyrighted photograph.  The protectible elements referenced in Plaintiff's instruction are taken from language in *Rentmeester*, *Ets-Hokin*, and *Rogers*.

The Model Instructions offer a single "substantial similarity" instruction for both tests.  The Ninth Circuit recently approved the use of a single instruction on both the extrinsic and intrinsic tests.  *Williams v. Gaye*, 885 F.3d 1150, 1168 (9th Cir. 2018) (cited by Model Instructions) ("Instruction 43 further underscores that the Gayes 'must show that there is **both** substantial extrinsic similarity and substantial intrinsic similarity as to that pair of works.'").  Defendants' instruction is broken down into three different instructions which may unnecessarily confuse the jury. A single instruction regarding the intrinsic and extrinsic test is more workable for the jury and would not be prejudicial to the Defendants.

2343344

The last paragraph of Plaintiff's proposed instruction comes directly from *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1119 (9th Cir. 2018).

**DEFENDANTS' STATEMENT RE: PLAINTIFF'S PROPOSED INSTRUCTION NO. 39:**

Plaintiff's first paragraph reflects his previously made argument that a substantial similarity test may not be necessary if there was direct copying, an argument that was rejected by this Court as "unpersuasive." (Dkt. 160, p. 3 n.3.)  *See also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)("Proof of unlawful appropriation – that is illicit copying – is necessary because copyright law does not forbid all copying"); *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (2020)("[t]he second prong of the infringement analysis contains two separate components:  'copying' and 'unlawful appropriation' . . . [a]lthough these requirements are too often referred to in shorthand lingo as the need to prove 'substantial similarity' they are distinct concepts'").   Where unlawful appropriation is an issue (as it is here), courts continue to require proof of unlawful appropriation even where direct copying is found.  *See Talavera v. Glob. Payments, Inc.,* 2023 WL 3080701 at * 12, 13(S.D. Cal. Apr. 25, 2023)(requiring proof of unlawful appropriation despite "the clear evidence of copying").

In the second paragraph of the proposed instruction, it is confusing to talk about the intrinsic test and the extrinsic test in the same instruction.  Defendants propose a short introductory instruction explaining that there are two separate tests that the jury must apply (proposed instruction no. 39), a separate instruction explaining the extrinsic test (proposed instruction no. 40) and a separate instruction explaining the intrinsic test (proposed instruction no. 41).

The third paragraph of Plaintiff's proposed instruction is duplicative of the last paragraph, and is unnecessarily confusing, in particular as to the phrase "objective details in appearance."

2343344

1    Plaintiff states that the last paragraph of his instruction comes directly from

2 *Rentmeester*, which is true except that Plaintiff omits a critical phrase from the

3 opinion.  What *Rentmeester* actually says is:

4            What is protected by copyright is the photographer's

5            selection and arrangement of the photo's otherwise

6            unprotected elements.  If sufficiently original, the

7            combination of subject matter, pose, camera angle, etc.

8            receives protection, **not any of the individual elements**

9            **standing alone**.

10 883 F.3d at 1119 (emphasis added).  The boldface language is what Plaintiff

11 improperly leaves out of the instruction.  Defendants have no objection to including

12 this quotation from *Rentmeester* in the instruction as long as the bolded language is

13 included.

14    Plaintiff's proposed instruction also includes language that "The greater the

15 range of creative choices that may be made, the broader the level of protection that

16 will be afforded to the resulting image."  That language is directly from *Rentmeester*

17 and Defendants have no problem with it.  However, instead of allowing the jury to

18 apply this test and determine how broad a level of protection is afforded, the

19 instruction improperly instructs the jury that Plaintiff's Photograph is entitled to

20 "broad" protection.  That is for the jury to decide.

21

22 **<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 39:</u>**

23    In order to establish copyright infringement, plaintiff must prove by a

24 preponderance of the evidence that the defendant's work is substantially similar to

25 what is protected by copyright law in the plaintiff's work.

26    Substantial similarity is determined by an extrinsic and intrinsic test, and the

27 plaintiff must satisfy both tests to meet his burden.

28    I will discuss the extrinsic test and the intrinsic test in the next two instructions.

2343344

1

## DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 39:

The current version of Ninth Circuit Model Instruction No. 17.19 provides **no** default model instruction for all cases and, instead, "recommends that the court and counsel specifically craft instructions on substantial similarity based on the particular work(s) at issue, the copyright in question, and the evidence developed at trial." Because of the additional details required for the extrinsic test in the context of photographs, Defendants recommend breaking out the extrinsic test and intrinsic test into two separate instructions (Nos. 40 and 41, below), and including the above instruction (No. 39) as an introductory instruction.

The Comment then identifies cases that may provide guidance for formulating substantial similarity instructions in specific areas, but includes no suggestions for photographs.

For the introductory instruction (No. 39), Defendants have followed the language of *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016), which block-quoted in the Comment to Ninth Circuit Model Instruction No. 17.19, with one modification. That quotation referred to "specific expressive elements" but in the context of copyrights in **photographs**, such a reference is inapplicable and will confuse the jury. The Ninth Circuit has held that "[p]hotographs **cannot be dissected** into protected and unprotected elements in the same way" as other works. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1119 (9th Cir. 2018) (emphasis added). Rather, "[w]hat **is** protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements," and "a photographer's copyright is limited to 'the particular selection and arrangement' of the elements as expressed in the copyrighted image." *Id.* at 1119-20. Defendants thus propose using the words "what is protected by copyright law," instead of "specific expressive elements," for purposes of this introductory instruction.

Plaintiff cites to *Williams v. Gaye*, 885 F.3d 1150, 1163 (9th Cir. 2019) as a case that "approved" use of a single instruction on both the extrinsic and intrinsic tests, but it is not at all clear from that case that a single instruction with substantive explanations of both the extrinsic and intrinsic tests was given and certainly no party objected to the discussion of both tests in the same instruction.

**PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 39:**

The Model Instructions offer a single "substantial similarity" instruction for both tests.  The Ninth Circuit recently approved the use of a single instruction on both the extrinsic and intrinsic tests.  *Williams v. Gaye*, 885 F.3d 1150, 1168 (9th Cir. 2018) (cited by Model Instructions) ("Instruction 43 further underscores that the Gayes 'must show that there is ***both*** substantial extrinsic similarity and substantial intrinsic similarity as to that pair of works.'").  Defendants' instruction is broken down into three different instructions, which may unnecessarily confuse the jury. A single instruction regarding the intrinsic and extrinsic test is more workable for the jury and would not be prejudicial to the Defendants.

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## INSTRUCTION NO. 40 (DISPUTED)

### Substantial Similarity—Extrinsic Test (for Photographs)

**DEFENDANTS' PROPOSED INSTRUCTION NO. 40:**

The first step is the extrinsic test. At this step, you are to examine the similarities between what is protected by copyright law in the plaintiff's photograph, on the one hand, with each of the accused infringements, on the other hand.

In the context of photographs, what is it that copyright law protects? Photographs can be broken down into elements that reflect the various creative choices the photographer made in composing the image. These creative choices are elements such as the photograph's subject matter, pose, lighting, camera angle, depth of field, and the like.

When viewed in isolation, none of these elements is, by itself, protected by copyright law. A photographer does not have the exclusive right to photograph a particular subject matter, like a famous person, just because the photographer was the first to capture that subject or famous person on film. And even if a photographer directs his subject to pose in an unusual or distinctive way, that pose, by itself, is not separately protectible by copyright.

Rather, what <u>is</u> protected by copyright is limited to the particular combination, selection, and arrangement of these elements, as they are expressed in the copyrighted photograph.  The greater the range of creative choices that may be made, the broader the level of protection that will be afforded to the resulting image.

It is the plaintiff's burden to identify the particular combination, selection, and arrangement of elements expressed in his photograph that he claims is protected by copyright law.

It is also the plaintiff's burden to show that each of the accused infringements is substantially similar to this particular combination, selection, and arrangement of elements as they are expressed in his photograph.

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

1    If there is no substantial similarity at this first step, then the plaintiff has not
2    met his burden.

3

4    **DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED**
5    **INSTRUCTION NO. 40:**

6    As discussed above with respect to Defendants' Instruction No. 39, the
7    Comment to the current Ninth Circuit Instruction No. 17.19 "recommends that the
8    court and counsel specifically craft instructions on substantial similarity based on the
9    particular work(s) at issue, the copyright in question, and the evidence developed at
10   trial."

11   The second and third paragraph of the proposed instruction come directly from
12   the Ninth Circuit's leading case on that subject, *Rentmeester v. Nike, Inc.*, 883 F.3d
13   1111, 1119 (9th Cir. 2018): "Photo[graphs] can be broken down into objective
14   elements that reflect the various creative choices the photographer made in
15   composing the image – choices related to subject matter, pose, lighting, camera angle,
16   depth of field, and the like. . . . But none of those elements is subject to copyright
17   protection when viewed in isolation."; *id.*("With respect to a photograph's subject
18   matter, no photographer can claim a monopoly on the right to photograph a particular
19   subject just because he was the first to capture it on film . . . . Without gainsaying the
20   originality of the pose Rentmeester created, he cannot copyright the pose itself and
21   thereby prevent others from photographing a person in the same pose").

22   The fourth paragraph of the instruction is also from *Rentmeester*, 883 F.3d at
23   1119 ("What *is* protected by copyright is the photographer's selection and
24   arrangement of the photo's otherwise unprotected elements. If sufficiently original,
25   the combination of subject matter, pose, camera angle, etc., receives protection, not
26   any of the individual elements standing alone"); *id.* at 1120 ("As with any other work,
27   the greater the range of creative choices that may be made, the broader the level of
28   protection that will be afforded to the resulting image").

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

The last three paragraphs of the proposed instruction reflect Ninth Circuit law on the plaintiff's burden on the extrinsic test. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (under the extrinsic test, the plaintiff must first identify the alleged similarity between his work and the defendant's work). This Court also noted Plaintiff's obligation to carry this burden in its summary judgment ruling.  Dkt. 69 at 10-11.

**PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 40:**

First, Defendants' instruction is broken down into three different instructions which may unnecessarily confuse the jury. A single instruction regarding the intrinsic and extrinsic test is more workable for the jury and would not be prejudicial to the Defendants.

Second, the last three paragraphs of Defendants' instructions repeat that plaintiff has the burden in slightly different wording.  Such repetition is unnecessary and prejudicial.  Plaintiff's burden on this issue should be stated only once, the same way it is done for the other instructions.

Third, Defendants provide prejudicial and one-sided examples of what is not protectible, which will be confusing to the jury without examples showing what is protectible.  For example, there is no reason to instruct the jury that a photographer lacks the exclusive right to photograph a famous person.  Plaintiff is ***not*** alleging that no one else can photograph or make tattoos of Miles Davis. the Court already determined that the Miles Davis Photograph is entitled to broad copyright protection. ECF 69 at 14.

Fourth, Defendants' instruction fails to consider the Ninth Circuit's decisions in *Norse* and *Range Road*, which held that a substantial similarity analysis is irrelevant and unnecessary in a case such as this one involving direct copying of the copyrighted

2343344

work. *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir. 1993).

Fifth, Defendants misstate the law by claiming that "what is protected by copyright is limited to the particular combination, selection, and arrangement of these elements." *See Ets-Hokin v. Skyy Spirits*, 225 F.3d 1068, 1074-75 (9th Cir. 2000) ("selection of subject, posture, background, lighting, and perhaps even perspective *alone* [are] protectable elements of a photographer's work.'" (quoting *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992)).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 40:**

Plaintiff's position is that substantial similarity need not be split into three separate instructions and that Plaintiff's Proposed Instruction No. 39 on substantial similarity is appropriate.  The Model Instructions offer a single "substantial similarity" instruction for both tests.  The Ninth Circuit recently approved the use of a single instruction on both the extrinsic and intrinsic tests.  *Williams v. Gaye*, 885 F.3d 1150, 1163 (9th Cir. 2018) (cited by Model Instructions) ("Instruction 43 further underscores that the Gayes 'must show that there is *both* substantial extrinsic similarity and substantial intrinsic similarity as to that pair of works.'").

2343344

## INSTRUCTION NO. 41 (DISPUTED)

### Substantial Similarity—Intrinsic Test

**DEFENDANTS' PROPOSED INSTRUCTION NO. 41:**

The second step is the intrinsic test. This is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 41:**

As discussed above with respect to Defendants' Instruction Nos. 39 and 40, the Comment to the current Ninth Circuit Instruction No. 17.19 "recommends that the court and counsel specifically craft instructions on substantial similarity based on the particular work(s) at issue, the copyright in question, and the evidence developed at trial." Defendants' Instruction No. 41, on the intrinsic test, comes from language in *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) ("The 'intrinsic test' is a subjective comparison that focuses on 'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.'"). This Court also cited this language (as quoted in *Rentmeester*) in its summary judgment ruling.  Dkt. 69 at 16.

**PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 41:**

First, Defendants' instruction is broken down into three different instructions which may unnecessarily confuse the jury. A single instruction regarding the intrinsic and extrinsic test is more workable for the jury and would not be prejudicial to the Defendants.

Second, Defendants' instruction is confusing because it uses the contradictory terms "subjective" along with "ordinary" and "reasonable."  The following language from *Rentmeester* is a more recent and clearer articulation of the intrinsic test, and it should be used here.  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018) ("The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'").

Third, Defendants' instruction fails to consider the Ninth Circuit's decisions in *Norse* and *Range Road*, which held that a substantial similarity analysis is irrelevant and unnecessary in a case such as this one involving direct copying of the copyrighted work. *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir. 1993).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 41:**

Plaintiff's position is that substantial similarity need not be split into three separate instructions and that Plaintiff's Proposed Instruction No. 39 on substantial similarity  is appropriate.  The Model Instructions offer a single "substantial similarity" instruction for both tests.  The Ninth Circuit recently approved the use of a single instruction on both the extrinsic and intrinsic tests.  *Williams v. Gaye*, 885 F.3d 1150, 1163 (9th Cir. 2018) (cited by Model Instructions) ("Instruction 43 further underscores that the Gayes 'must show that there is ***both*** substantial extrinsic similarity and substantial intrinsic similarity as to that pair of works.'").

2343344

## INSTRUCTION NO. 42 (UNDISPUTED)

**Secondary Liability – Vicarious Infringement – Elements and Burden of Proof**

If you find that one of the defendants infringed the plaintiff's copyright in the Miles Davis Photograph, you must determine whether the other defendant vicariously infringed that copyright. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. the other defendant directly benefitted financially from the infringing activity of the defendant that committed direct infringement;

2. the other defendant had the right and ability to supervise or control the infringing activity of the defendant that committed direct infringement; and

3. the other defendant failed to exercise that right and ability.

If you find that the plaintiff has proved each of these elements as to the defendant accused of vicarious infringement, your verdict should be for the plaintiff if you also find that the other defendant committed direct infringement of plaintiff's copyright. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant accused of vicarious infringement.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.20 (2017).

2343344

## <ins>INSTRUCTION NO. 43 (UNDISPUTED)</ins>

**Derivative Liability – Contributory Infringement – Elements and Burden of Proof**

A defendant may be liable for copyright infringement engaged in by another if the defendant knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity.

If you find that one of the defendants infringed the plaintiff's copyright in the Miles Davis Photograph, you must determine whether the other defendant contributorily infringed that copyright. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1. the defendant knew or had reason to know of the infringing activity of any of the other defendants; and

2. the defendant intentionally induced or materially contributed to any of the other defendant's infringing activity.

If you find that one the defendants infringed the plaintiff's copyright and you also find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff as to those defendants for which these elements were proven. If, on the other hand, the plaintiff has failed to prove either or both of these elements, your verdict should be for the defendants.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 17.21 (2017) (removing bracketed language regarding proof of intent to induce).

2343344

## **INSTRUCTION NO. 44 (DISPUTED)**

### **Copyright – Affirmative Defense – Fair Use (17 U.S.C. § 107)**

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 44:**

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

Defendants contends that they made fair use of the copyrighted work. Defendants have the burden of proving this defense by a preponderance of the evidence.

In determining whether the use made of the work was fair, you should consider the following factors:

(1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole;

(4) the effect of the use upon the potential market for or value of the copyrighted work; and

The Court has already determined that factors (2) and (3) weigh against fair use for all of Defendants' uses of the Miles Davis Photograph.  For the Tattoo (not Defendants' social media uses or line drawing), the Court has found that the purpose and character of the use under factor (1) weighs against fair use.  You must accept the Court's determination on these factors.

As to factor (1), the Court has already determined that Defendants did not have a transformative purpose in making the Tattoo.  Your task then is to weigh the lack of

2343344

purpose against the character of the uses, including whether Defendants' uses were commercial or nonprofit educational. In determining whether Defendants' uses were commercial or nonprofit educational, the distinction is not whether the sole motive of the use is monetary gain but whether the user stands to benefit from exploitation of the copyrighted material without paying the customary price.

Regarding factor (4), Defendants, as the proponents of the fair use defense, must bring forward favorable evidence about relevant markets to prove that Defendants' use of the Miles Davis Photograph did not harm the actual or potential market for the Miles Davis Photograph, including the actual or potential licensing market.  To negate fair use, Plaintiff need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work. Additionally, the Court has already determined that the Defendants' uses of the Miles Davis Photograph in creating the Tattoo was not transformative.  As a result, there is a presumption that Defendants' creation of the Tattoo caused market harm.

It is not a fair use merely if the derivative work appears in a different media or environment than the copyrighted work.  The copyright owner has an exclusive right to derivative transformations of his work, even if such transformations are substantial. Derivative works frequently appear in other media (e.g., movies based a copyrighted book, sculpture based on copyrighted photograph, documentary using copyrighted television clips).  In these cases, the person or entity creating the derivative work may still need permission from the copyright owner.

Defendants have the burden of proving that they made fair use for each of their uses.  If you find that Defendants have failed to meet their burden of proving fair use for any of their uses, your verdict should be for Plaintiff for those uses.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.22 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

**PLAINTIFF'S STATEMENT RE: PLAINTIFF'S PROPOSED INSTRUCTION NO. 44:**

The first factor should include the term "educational."  That language comes directly from *Warhol*, the statute, 35 U.S.C. § 107, and the Model Instructions.

The Court has found that the second and third factors weigh against fair use for both the Tattoo and the social media posts.  ECF 160, 12 ("The reasoning applicable to the second and third factors under the Court's analysis is also applicable to the social media posts …").

Plaintiff objects to instructing the jury that the second factor is not "terribly significant," as Defendants have proposed.  If this instruction is given, there is substantial risk that the jury will disregard this factor.  This factor is an important part of the fair use framework.  Indeed, in *McGucken*, the Ninth Circuit found that the second factor weighed against fair use because, although published, the plaintiff's photographs were "creative" and "the product of many technical and artistic decisions."  *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1162 (9th Cir. 2022).  Thus, the Ninth Circuit found that each of the four factors "point unambiguously in the same direction"—against fair use.  *Id.*

Contrary to Defendants' argument, it is appropriate to instruct the jury that the Defendants carry the burden on showing a lack of market harm under factor (4).  This instruction is in accord with *McGucken*.  Many of the other jury instructions, such as substantial similarity, include descriptions of which party carries the burden.  The defendant's burden relating to the fourth factor should not be treated any differently.

The Supreme Court held in *Warhol* that "the owner has a right to derivative transformations of her work. Such transformations may be substantial, like the adaptation of a book into a movie."  *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1275 (2023).  As the Supreme Court found, "that does not in itself dispense with the need for licensing."  *Id.* at 1282.  As this Court correctly recognized in its reconsideration order, "*Warhol* does not change the longstanding

2343344

rule that recasting a photograph into a different visual medium is not sufficiently transformative. To preserve the copyright owner's right to make and authorize derivatives, "the degree of transformation required to make 'transformative' [fair] use of an original must go beyond that required to qualify as a derivative." ECF 160, 7 (internal citations omitted). Moreover, Defendants fail to recognize that *Warhol* requires that the new work have a "critical bearing" on the original.

Plaintiff includes the Court's determinations on the second and third factors because these factors have already been decided, and there is no reason for the jury to revisit them. Plaintiff's Instructions on factors (1) and (4) come directly from *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) and *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022). The language used from *Worldwide Church* regarding payment of the customary price was cited by the Court in its reconsideration order. Further, there is a presumption of likely market harm where works are found to be not transformative. *Disney Enters. Inc. v. VidAngel, Inc.*, 869 F.3d 848, 861 (9th Cir. 2017) ("Because the district court concluded that VidAngel's use was commercial and not transformative, it was not error to presume likely market harm.") (citing *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 531 (9th Cir. 2008) ("[I]t is well accepted that when 'the intended use is for commercial gain,' the likelihood of market harm 'may be presumed.' ***We have not hesitated to apply this presumption in the past, and we are not reluctant to apply it here***.") (internal citation omitted)).

## DEFENDANTS' STATEMENT RE: PLAINTIFF'S PROPOSED INSTRUCTION NO. 44:

Defendants do not object to the first two paragraphs of this proposed instruction (and have used the same paragraphs in their version of this instruction). Defendant believes, however, that it would be less confusing for the jury to have

separate instructions on each of the fair use factors and has provided such separate instructions.

Defendants object to Plaintiff's inclusion in the third full paragraph (subpart (1)) of language suggesting that a non-commercial use must be educational when that argument was already rejected by the Court. (Dkt. 160, p. 9 n.5 ("*Seltzer* directly contradicts Sedlik's claim that only non-profit education uses are protected by the fair use doctrine"). *See also Warhol*, 143 S.Ct. at 1276 ("the fact that a use is commercial as opposed to nonprofit is an additional 'element of the first factor'"). The word "educational" should be deleted.

Defendants object to the fourth full paragraph for the following reasons. In the first place, with respect to the third factor, the Court in denying both summary judgment motions on fair use, concluded that the third factor weighed against fair use but analyzed only the tattoo and not the various social media posts (in particular the post that showed only a small portion of the in process tattoo) or the sketch. At the very least, the jury will need to understand the third factor to be able to apply it to the social media posts and sketch. With respect to the first factor, while the Court concluded on the motion for reconsideration that there was no evidence that the tattoo was transformative, it noted that that was only one consideration under the first factor and that "the first factor cannot be determined as a matter of law. (ECF 160, p. 10.) The jury must be permitted to take into account all the issues to be considered as part of the first factor or it will not be able conduct the balancing required under the first factor. Finally, it would be inappropriate to state that the second factor weighs against Defendants without also noting that "the second factor 'typically has not been terribly significant in the overall fair use balancing[.]." (ECF 160, p. 10, n.6, *quoting*, *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 456 (9th Cir. 2020).)

In the fifth full paragraph, Plaintiff includes language re: the burden of putting forth evidence which is inappropriate for a jury. Plaintiff also includes language about "presumptions of market harm" which is not only an incorrect statement of the

law, but also not appropriate for a jury.  *See De Fontbrune v. Wofsy*, 39 F.4th 1214, 1226 (9th Cir. 2022), *cert. denied*,  143 S. Ct. 1084 (2023)(presumption of market harm arises "where the allegedly infringing use is both commercial and non-transformative") (emphasis added).

The sixth full paragraph of the instruction on derivative works is not an accurate statement of the law. *Warhol* expressly found that, while "the owner has a right to derivative transformations of her work," this right is '[s]ubject to' fair use," and "[t]he two are not mutually exclusive."  143 S.Ct. at 1275, quoting 17 U.S.C. §§ 106, 107.  Rather, a derivative work can be a fair use but the degree of transformation must "go beyond that required to qualify as a derivative."  Id.   *Warhol* expressly stated that its analysis "does not mean, however, that derivative works borrowing heavily from an original cannot be fair uses."  Id. at 1280.  In other words, *all fair uses* are derivative works; the question is whether weighing its commerciality against its further purpose and different character results in a finding of fair use.

Defendants refer the Court to its own proposed fair use instructions which they believe more accurately reflect appropriate law.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 44:

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

Defendants Katherine Von Drachenberg and High Voltage Tattoo contend that they made fair use of the copyrighted work. The Defendants have the burden of proving this defense by a preponderance of the evidence.

In determining whether the use made of the work was fair, you should consider the following factors, which I will explain in more detail in subsequent instructions:

2343344

1      (1) the degree to which the use has a further purpose or different character

2  weighed against whether the use is commercial as opposed to non-profit;

3      (2) the nature of the copyrighted work;

4      (3) the amount and substantiality of the portion used in relation to the

5  copyrighted work as a whole;

6      (4) the effect of the use upon the potential market for or value of the

7  copyrighted work; and

8      (5) the fundamental rights that individuals have to personal expression and

9  bodily integrity.

10      If you find that Defendants Katherine Von Drachenberg and High Voltage

11  Tattoo have proved by a preponderance of the evidence that they made a fair use of

12  Plaintiff Jeffrey Sedlik's copyrighted work, <u>then</u> your verdict should be for the

13  Defendants.

14      Now I will further explain each of the five fair use factors.

15

16  **DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED**

17  **INSTRUCTION NO. 44:**

18      Defendant's Proposed Instruction No. 44 is based on the Ninth Circuit's Model

19  Instruction No. 17.22, and the recent case *Andy Warhol Foundation for the Visual*

20  *Arts, Inc. v. Goldsmith*, 143 S.Ct. 1258, 1273, 1276 (2023)(*Warhol*).

21      The Comment to Model Instruction No. 17.22 makes clear that it is just a

22  "basic instruction" that "could be supplemented by the court to suggest how the

23  presence or absence of any particular factor may tend to support or detract from a

24  finding of fair use."  The Comment then identifies "numerous cases involving

25  application of the fair use factors" that "might be consulted concerning facts helpful

26  to assessing whether a particular fair use factor exists." It is absolutely necessary to

27  do so here. As the Comment recognizes, the Court here must elaborate upon each of

28  the fair use factors.

2343344

Defendants' Proposed Instruction No. 44 identifies a fifth factor that should be charged to the jury. The Comment to Model Instruction No. 17.22 expressly calls on the Court to "insert any other factor that bears on the issue of fair use," and that the four statutory factors "are by no means exhaustive or exclusive." Defendants elaborate on their proposed fifth factor below, in Defendants' Proposed Instruction No. 51.

**PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 44:**

First, Plaintiff believes that Defendants' nine-part instruction is overreaching, unnecessarily long and confusing, and will prejudice Plaintiff. Instead, the Court should adopt Plaintiff's instruction, for the reasons described above for Plaintiff's Proposed Instruction No. 44.

Second, Defendants propose a fifth factor regarding bodily integrity, that is not part of 17 U.S.C. § 107 and in tension with current U.S. Copyright Office policy.

This Court has rejected Defendants' arguments that a tattoo creates a different meaning by virtue of its location on the human body or that tattoo artists should be treated differently than other artists for purposes of the fair use analysis. ECF 160, 7. Moreover, the U.S. Copyright Office, to whom the Ninth Circuit accords deference, recently stated in a court filing that it will treat tattoos no different than other works under copyright law and classify tattoos as derivative works when based upon non-tattoo art. ECF 150-4, 9, (for tattoos, the Copyright Office will apply "the same standard [for original expression] as that required for determining whether a copyright exists in any work"), 13 (tattoos are derivative works if based on non-tattoo preexisting work and lack an "appreciable amount" of new material).

Third, Defendants misstate the law by omitting the word "educational" from the fair use factors.  "Educational" appears in *Warhol*, the Ninth Circuit Model

Instructions 17.22, and 17 U.S.C. § 107. Defendants fail to justify any deviation from that language.

Fourth, factors two and three have already been found by the Court to weigh against fair use, and thus, this instruction should include that those factors have already been determined by the Court as a matter of law to weigh against fair use.

Fifth, the Court has already found that Defendants' Tattoo does not have a transformative purpose with respect to factor one.  Defendant's Instruction fails to mention that determination.

2343344

## **INSTRUCTION NO. 45 (DISPUTED)**

### **Introduction to First Fair Use Factor**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 45:**

The first fair use factor concerns the purpose and character of the accused use. This factor requires a balancing of:

(1) whether and to what extent the accused use has a further purpose or different character, and

(2) whether the accused use is commercial as opposed to non-profit.

A use that has a further purpose or different character is said to be "transformative."

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 45:**

This proposed instruction is based on specific language from *Warhol* 143 S.Ct. at 1273, 1277 (2023) ("In sum, the first fair use factor considers whether the use of a copyrighted work has a further purpose or different character, and the degree of difference must be balanced against the commercial nature of the use"); *Id*. at 1275 ("A use that has a further purpose or different character is said to be 'transformative'").

Plaintiff's suggestion Defendants must show that its use was both non-profit *and* educational was already rejected by this Court.  (ECF 160, p. 9 n.5.) Furthermore, Plaintiff cherry-picks his citations from *Warhol* and ignores the section where *Warhol* actually discusses the issue and says "the fact that a use is commercial as opposed to nonprofit is an additional element of the first factor," without any mention of educational.  *Id*. at 1276.  Nor can Plaintiff point to a single case in which a court finds that where there is a non-commercial use that is not also educational non-commerciality does not weigh in favor of fair use.

2343344

Furthermore, contrary to Plaintiff's argument, *Warhol* specifically says that commerciality is weighed against the degree to which the use has a further purpose or character. *Warhol*, 143 S.Ct. at 1276 ("The commercial nature of the use . . . is to be weighed against the degree to which the use has a further purpose or different character"); *id*. at 1277 ("the first fair use factor considers whether the use of a copyrighted work has a further purpose or different character, which is a matter of degree, and the degree of difference must be balanced against the commercial nature of the use").

**PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 45:**

First, Defendants misstate the law by deviating from The Ninth Circuit Model Instructions 17.22, which is based on the exact language of 17 U.S.C. § 107. Specifically, both Instruction 17.22 and § 107 state "the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes." *Warhol* also repeatedly uses the "educational" terminology from the statue. *Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 508–09 (2023) ("In this Court, the sole question presented is whether the first fair use factor, "the purpose and character of the use, including whether such use is of a commercial nature or is for ***nonprofit educational purposes***," § 107(1), weighs in favor of AWF's recent commercial licensing to Condé Nast."). Defendants fail to justify any deviation from that language.

Second, Defendants misstate the law by attempting to create a two-factor balancing test between the "further purpose and character" and commerciality. That is not the law, as stated in § 107. Nor is what is articulated recently by the U.S. Supreme Court in *Warhol*. "[T]he first fair use factor instead focuses on whether an allegedly infringing use has a further purpose or different character, which is a matter of degree, and the degree of difference ***must be weighed against other***

*considerations*, like commercialism." *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 143 S.Ct. 1258, 1273 (2023); *accord Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994) ("The language of the statute makes clear that the commercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character.").

Third, this Court has already found that Defendants' Tattoo is not transformative. Defendants' instruction fails to mention that, essentially inviting the jury to reconsider that finding.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 45:**

Plaintiff's position is that fair use need not be split into nine separate instructions and that Plaintiff's Proposed Instruction No. 44 on fair use  is appropriate.  Under the Ninth Circuit Model  Jury Instructions, the fair use factors are discussed together.

**INSTRUCTION NO. 46 (DISPUTED)**

**First Fair Use Factor – Transformative**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 46:**

A work is transformative when it adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.

Analysis of this factor requires review of the specific use that is claimed to be an infringement. The same copying may be fair when used for one purpose but not another.

You should compare the challenged uses with the typical use of the original work. If the environments are distinct and different, this factor weighs in favor of fair use, If, on the other hand, the challenged use supersedes the objects of the original work, this factor weighs against fair use.

The first factor relates to the justification of the use. A use that has a distinct purpose is justified. A use that shares the purpose of a copyrighted work is not.

The meaning or message of the challenged works should be considered to the extent necessary to determine whether the purpose of the use is distinct from the original, for instance, because the use comments on, criticizes, or provides unavailable information about the original.

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 46:**

The first paragraph of the proposed instruction comes from *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994) ("A work is transformative when it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message[]'").

The second paragraph of the instruction is from *Warhol*, 143 S.Ct. at 1277 ("The fair use provision, and the first factor in particular, requires an analysis of the

2343344

specific 'use' of a copyrighted work that is alleged to be 'an infringement' . . . . The same copying may be fair when used for one purpose but not another").

The third paragraph of the instruction is based on *Warhol*, 143 S.Ct. at 1278-79 ("Both are portraits of Prince used in magazines to illustrate stories about Prince. Such 'environment[s]' are not 'distinct and different' . . . . AWF's licensing of the Orange Prince image thus 'supersede[d] the objects,' . . . shared the objectives of Goldsmith's photograph, even if the two were not perfect substitutes").

The fourth paragraph of the instruction is from *Warhol*, 143 S.Ct. at 1276 ("the first factor also relates to the justification for the use.  In a broad sense, a use that has a distinct purpose is justified because it furthers the goal of copyright. . . .. A use that shares the purpose of a copyrighted work, by contrast, is more likely to provide 'the public with a substantial substitute for matter protected by the [copyright owner's interests in the original wor[k] or derivatives of [it] . . . which undermines the goals of copyright."

The fifth paragraph of the instruction comes directly from *Warhol*, 143 S.Ct. at 1284 ("the meaning of a secondary work, as reasonably can be perceived, should be considered to the extent necessary to determine whether the purpose of the use is distinct from the original, for instance, because the use comments on, criticizes, or provides otherwise unavailable information about the original.").

Plaintiff objects to this instruction on the ground that the Court already found that the tattoo is not transformative (in the order on the motions for reconsideration (Dkt. 160).)  But the Court made no such finding as to the sketch and social media posts and the jury will need to determine whether or not those are transformative. Furthermore, even as to the tattoo, the Court found the first fair use factor could not be determined as a matter of law because there was still as dispute of fact as to commerciality.  (Dkt. 160, pp. 8-9.)  The jury will need to weigh degree of transformativeness and commerciality as part of this first factor and thus must be instructed as to what makes a use transformative.

**PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 46:**

This Court has already found that Defendants' tattoo is not transformative. Defendants' instruction essentially invites the jury to reconsider that finding by the Court. Moreover, Defendants continue to advance the erroneous argument, which the Court has already rejected, that a derivative work is transformative because it appears in a distinct or different medium or environment. *Rogers v. Koons*, 960 F.2d 301, 312 (2d Cir. 1992) (not fair use to use a photograph as a reference to make a derivative sculpture); ECF 160, 7.  Defendants also continue to advance the false argument that a work is transformative if it carries a new "meaning or message." *Warhol* rejected that view of transformation.

Defendants' instruction is further not consistent with *Warhol*. Under *Warhol*, the justification for the use of a copyrighted work must be "compelling," and the use of the work must be necessary to provide comment or have critical bearing on the original work. *Warhol*, 143 S. Ct. at 1276-77, 1285-86. The requirement to comment on the original work also applies to intermediate copies. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 862 & n.12 (9th Cir. 2017) (finding that intermediate copies of movies were not fair use because they were not done for "study or examination" of the original works, but for commercial purposes).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 46:**

Plaintiff's position is that fair use need not be split into nine separate instructions and that Plaintiff's Proposed Instruction No. 44 on fair use  is appropriate.  Under the Ninth Circuit Model Jury Instructions, the fair use factors are discussed together.

2343344

## INSTRUCTION NO. 47 (DISPUTED)

### First Fair Use Factor – Commercial Use

**DEFENDANTS' PROPOSED INSTRUCTION NO. 47:**

In evaluating the first fair use factor, the extent of the commercial nature of the accused use must also be considered.

You must consider the degree to which the Defendants exploited the copyright for commercial gain, as opposed to incidentally using the copyrighted material as part of a commercial enterprise.

Finding that the use was not commercial tips the scales in favor of fair use. However, the inverse is not necessarily true: a use can be indisputably commercial but still be found to be a fair use.

To put it differently, the more transformative an accused work, the more other factors, such as commercialism, will decrease in importance.  By contrast, the less transformative the accused work, the more other factors like commercialism will increase in importance.

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 47:**

This second paragraph of this proposed instruction comes from *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013) ("Furthermore, although the statute instructs us to consider the 'commercial nature' of a work . . . 'the degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise—affects the weight we afford commercial nature as a factor.'").

The third paragraph of this proposed instruction comes from *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021) ("There is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use. But the

2343344

inverse is not necessarily true, as many common fair uses are indisputably commercial."). *See also Hannley v. Mann,* 2023 WL 3407183, at *3 (C.D. Cal. Mar. 8, 2023)("Noncommercial or nonprofit use of a copyrighted work is presumptively fair."), *citing Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449 (1984).   Contrary to Plaintiff's argument, *Google* is not specifically limited to cases involving computer programs and the particular language at issue here has been followed in multiple cases *not* involving computer programs. *See Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.,* 27 F.4th 313, 322 (5th Cir. 2022); *Larson v. Dorland*, 2023 WL 5985251, at *12 (D. Mass. Sept. 14, 2023); *Facility Guidelines Inst., Inc. v. UpCodes, Inc.*, 2023 WL 4026185, at *9 (E.D. Mo. June 15, 2023)(all quoting the relevant language of *Google* with approval).

The fourth paragraph comes from *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)("The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use"); *id.* at 580 (the less transformative, "the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger").

Plaintiff's suggestion that *Warhol* superseded *Seltzer* on the issue of whether a non-commercial use must also be "educational" is wrong both because that wasn't an issue in *Warhol* (where the use was unquestionably commercial) and because Plaintiff cherry-picks his citations from *Warhol* and ignores the section where *Warhol* actually discusses the text and says "the fact that a use is commercial as opposed to nonprofit is an additional element of the first factor," without any mention of educational.  *Id.* at 1276.  Nor can Plaintiff point to a single case in which a court finds that where there is a non-commercial use that is not also educational that the non-commerciality doesn't weigh in favor of fair use.  Numerous cases hold that opposite:  that a non-commercial use that is not educational weighs in favor of fair use.  *See, e.g., Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449 (1984)("time-shifting

1  for private home use" must be "characterized as a noncommercial, nonprofit activity"

2  weighing in favor of fair use); *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 780

3  F. Supp. 1283, 1293 (N.D. Cal. 1991), *aff'd*, 964 F.2d 965 (9th Cir.), *cert. denied*, 507

4  U.S. 985 (1992)("a family's use of a Game Genie for private home enjoyment must be

5  characterized as a non-commercial, nonprofit activity . . .  establish[ing] a

6  presumption of fair use")

7  **PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED**

8  **INSTRUCTION NO. 47:**

9          Defendants rely heavily on *Seltzer* throughout these instructions.  The Supreme

10  Court's clarifications of the first fair use factor in *Andy Warhol Found. for the Visual*

11  *Arts, Inc. v. Goldsmith*, supersedes prior Ninth Circuit caselaw, including *Seltzer v.*

12  *Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013). Specifically, both *Warhol* and

13  § 107(1) make clear that the question is "whether such use is of a commercial nature

14  or is for nonprofit educational purposes." 143 S. Ct. 1258, 1266, 1272, 1274, 1287

15  (2023) (stating this exact dichotomy four separate times); *accord Campbell v. Acuff-*

16  *Rose Music, Inc.*, 510 U.S. 569, 584 (1994) ("The language of the statute makes clear

17  that the commercial or nonprofit educational purpose of a work is only one element of

18  the first factor enquiry into its purpose and character."); *Monge v. Maya Magazines,*

19  *Inc.*, 688 F.3d 1164, 1172 (9th Cir. 2012) (same); *Worldwide Church of God v.*

20  *Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (same).

21          Defendants' instruction fails to apply the Ninth Circuit's test in *Worldwide*

22  *Church of God* regarding the profit/nonprofit distinction, which this Court cited in its

23  decision on reconsideration. "The crux of the profit/nonprofit distinction is not

24  whether the sole motive of the use is monetary gain but whether the user stands to

25  profit from exploitation of the copyrighted material without paying the customary

26  price." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d

27  1110, 1117 (9th Cir. 2000).

28

2343344

Further, the U.S. Supreme Court has rejected Defendants' claim that non-commercial use is "presumptively fair." "The language of the statute makes clear that the commercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character. Section 107(1) uses the term 'including' to begin the dependent clause referring to commercial use, and the main clause speaks of a broader investigation into 'purpose and character.'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994). "Accordingly, the mere fact that a use is educational and not for profit does not insulate it from a finding of infringement, any more than the commercial character of a use bars a finding of fairness." *Id.*

Defendants' reliance on *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021) is also misplaced. That case is specifically limited to cases involving computer programs that are primarily functional and does not apply to other cases, like creative works, involving fair use. *Id.* at 1208.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 47:**

Plaintiff's position is that fair use need not be split into nine separate instructions and that Plaintiff's Proposed Instruction No. 44 on fair use  is appropriate.  Under the Ninth Circuit Model  Jury Instructions, the fair use factors are discussed together.

## **INSTRUCTION NO. 48 (DISPUTED)**

### **Second Fair Use Factor**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 48:**

The second fair use factor is the nature of the copyrighted work. The more creative the copyrighted work is, the more this factor weighs against fair use.

You must also consider the extent to which the copyrighted work has been published. When a copyrighted work has already been published, the artist has been able to control the first public appearance of his or her work. Thus, the more that a copyrighted work has been previously published, the more this factor weighs in favor of fair use.

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 48:**

This proposed instruction is based on *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013) ("Mitigating this factor in favor of Green Day is that we are instructed to consider the extent to which a work has been published."; "The fact that a work is unpublished is a critical element of its 'nature.'") (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985)); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) ("Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred."); *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012);

"Under the second factor, we address two aspects of the work: the extent to which it is creative and whether it is unpublished.")

Plaintiff argues that no instruction on the second factor need be given that the Court, in its motion for reconsideration, found that the second factor favors Plaintiff. However, the Court also found that "the 'four statutory factors [should not] be treated in isolation one from another. All are to be explored and the results weighed together .

2343344

. . ."  (ECF 160, p. 10, *quoting*, *Campbell*, 510 U.S. at 578.)  The jury cannot weigh this factor if it doesn't understand what the factor is.  In addition, if the Court is to instruct the jury that the second factor has been decided in Plaintiff's favor, it should also instruct the jury that "the second factor 'typically has not been terribly significant in the overall fair use balancing.'"  (ECF 160, p. 10, n. 6, *quoting*, *Dr. Seuss,* 983 F.3d at 456.)

## PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 48:

No instruction is needed on the second factor because the Court already found on reconsideration that the second factor weighs against fair use. (ECF No. 160, 9-10, n.6.) The jury should be informed of the Court's finding and instructed to accept it. Defendants' instruction invites the jury to reconsider the Court's finding, which would be entirely improper. As the Court found, publication does ***not*** weigh in favor of use, contrary to Defendants' instruction. *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 456 (9th Cir. 2020) ("[N]either Harper & Row nor any principle of fair use counsels that the publication of the copyrighted work weighs in favor of fair use.").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 48:

Plaintiff's position is that fair use need not be split into nine separate instructions and that Plaintiff's Proposed Instruction No. 44 on fair use  is appropriate.  Under the Ninth Circuit Model  Jury Instructions, the fair use factors are discussed together.

## INSTRUCTION NO. 49 (DISPUTED)

### Third Fair Use Factor

**DEFENDANTS' PROPOSED INSTRUCTION NO. 49:**

The third fair use factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole. This factor looks to the quantitative amount and qualitative value of the original work used, and how that use relates to the justification for it use.

When an accused work copies little of the original work, then this factor weighs in favor of fair use. Conversely, when an accused work copies most of the original work, then this factor weighs against fair use.

However, if the original work is not capable of being divided up into meaningful portions, and if the secondary user only copies as much as is necessary for a transformative use, then this factor will not weigh against fair use, even if the secondary user copies the whole of the original work.

The extent of permissible copying varies with the purpose and character of the use, which relates back to the first fair use factor.

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 49:**

This proposed instruction is based on *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994) ("The third factor asks whether 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole,' . . . (or, in Justice Story's words, 'the quantity and value of the materials used,' . . . are reasonable in relation to the purpose of the copying"); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178-79 (9th Cir. 2013) ("However, unlike an episode of the Ed Sullivan show or a book manuscript, *Scream Icon* is not meaningfully divisible. Given that fact, this court has acknowledged that this factor will not weigh against an alleged infringer,

2343344

even when he copies the whole work, if he takes no more than is necessary for his intended use); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820–21 (9th Cir. 2003)("If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her").

Plaintiff argues that no instruction is needed on this factor because the Court already found that the third factor weighed against fair use.  But in its summary judgment order, the Court conducted an analysis of the third factor only as to the tattoo, and not as to the social media posts or sketch.  The jury will need to conduct their own analysis as to those challenged uses (some of which use small portions of the photograph at issue).  Furthermore, as to the tattoo itself, the jury must analyze and consider together all of the fair use factors and therefore must know the elements of this factor.

**PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 49:**

No instruction is needed on the third factor because the Court already found that the third factor weighs against fair use. (ECF No. 69, 23.) The jury should be informed of the Court's finding and instructed to accept it. Defendants' instruction invites the jury to reconsider this finding, which would be entirely improper.

The Court has found that the second and third factors weigh against fair use for both the Tattoo and the social media posts.  ECF 160, 12 ("The reasoning applicable to the second and third factors under the Court's analysis is also applicable to the social media posts …").

For example, Defendants' instruction includes terms such as "quantitative amount," "qualitative value," and "meaningful portions," that are likely to confuse the jury.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 49:**

1     Plaintiff's position is that fair use need not be split into nine separate

2 instructions and that Plaintiff's Proposed Instruction No. 44 on fair use  is

3 appropriate.  Under the Ninth Circuit Model  Jury Instructions, the fair use factors are

4 discussed together.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2343344

## INSTRUCTION NO. 50 (DISPUTED)

### Fourth Fair Use Factor

**DEFENDANTS' PROPOSED INSTRUCTION NO. 50:**

The fourth fair use factor is the effect of the accused infringer's use on the potential market for or value of the copyrighted work. This factor weighs against fair use if the accused use materially impairs the marketability or value of the copyrighted work. This factor considers three issues.

The first issue that the fourth fair use factor considers is whether the accused work is offered or used as a substitute for the original copyrighted work. If the accused work serves a different market function, and does not substitute for the original copyrighted work, then this factor weights in favor of fair use.

The second issue that the fourth fair use factor considers is whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for or value of the copyrighted work.  A potential market is one that is traditional, reasonable, or likely to be developed.

The third issue that the fourth fair use factor considers is whether there are public benefits that are likely to be produced by allowing the kind of copying engaged in by the Defendants, such as whether allowing the kind of use engaged in by the Defendants would produce a public benefit of encouraging the creative production of new expression.

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 50:**

The second paragraph of the proposed instruction comes from *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013) ("Where the allegedly infringing use

1  does not substitute for the original and serves a 'different market function,' such

2  factor weighs in favor of fair use.").

3      The third and fourth paragraphs of the proposed instruction come from *Seltzer*,

4  725 F.3d at 1179 ("The fourth factor asks what effect the allegedly infringing use has

5  on the 'potential market for or value of the copyrighted work.' . . . This factor should

6  consider 'the extent of market harm caused by the particular actions of the alleged

7  infringer [and] also whether unrestricted and widespread conduct of the sort engaged

8  in by the defendant would result in a substantially adverse impact on the potential

9  market for the original.'; "This factor also considers any impact on 'traditional,

10  reasonable, or likely to be developed markets.'"); *Google LLC v. Oracle Am., Inc*.,

11  141 S. Ct. 1183, 1207 (2021) (citing Prof. Nimmer's treatise to "caution[] against the

12  'danger of circularity posed' by considering unrealized licensing opportunities

13  because 'it is a given in every fair use case that plaintiff suffers a loss of a potential

14  market if that potential is defined as the theoretical market for licensing the very use

15  at bar").

16      The fifth paragraph of the proposed instruction comes from *Google LLC*, 141

17  S. Ct. at 1206 ("Further, we must take into account the public benefits the copying

18  will likely produce. Are those benefits, for example, related to copyright's concern for

19  the creative production of new expression?"); *id*. at 1208 (concluding that "the risk of

20  creativity-related harms to the public," when taken with other considerations,

21  "convince that this fourth factor—market effects—also weighs in favor of fair use").

22

23  **PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED**

24  **INSTRUCTION NO. 50:**

25      Defendants' instruction (including on the burden of proof and unrealized

26  licensing opportunities) conflicts directly with the Ninth Circuit's recent decision in

27  *McGucken*, a case involving the unauthorized use of copyrighted photographs.

28  *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022). *McGucken* held

that Defendants, as the proponents of the fair use defense, "must bring forward favorable evidence about relevant markets." *Id.* "To negate fair use, [the plaintiff] need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work." *Id.* In *McGucken*, the Ninth Circuit held that although there was "little direct evidence of actual market harm," the defendant failed to carry its burden. *Id.* The Ninth Circuit also considered the impact if similar type of conduct was carried out by others.

*Seltzer*, a case involving the use of an artist's illustration in a rock band backdrop, conflicts with *McGucken* because *Seltzer* placed the burden on the plaintiff. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013) ("according to Seltzer's declaration, Scream Icon was used in a music video by a band named 'People.' Seltzer provides no additional information about this licensing, including how much revenue he earned as a result, how the music video was used by the band, or how the music video used Scream Icon."). Moreover, *Warhol* supersedes *Seltzer* as discussed above.

Defendants' reliance on *Google* is misplaced because that case involved copyrighted software, not photographs.

Further, there is a presumption of likely market harm where works are found to be not transformative. *Disney Enters. Inc. v. VidAngel, Inc.,* 869 F.3d 848, 861 (9th Cir. 2017) ("Because the district court concluded that VidAngel's use was commercial and not transformative, it was not error to presume likely market harm.") (citing *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 531 (9th Cir. 2008) ("[I]t is well accepted that when 'the intended use is for commercial gain,' the likelihood of market harm 'may be presumed.' ***We have not hesitated to apply this presumption in the past, and we are not reluctant to apply it here***.") (internal citation omitted))..

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 50:**

2343344

1    Plaintiff's position is that fair use need not be split into nine separate

2  instructions and that Plaintiff's Proposed Instruction No. 44 on fair use  is

3  appropriate.  Under the Ninth Circuit Model  Jury Instructions, the fair use factors are

4  discussed together.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2343344

### INSTRUCTION NO. 51 (DISPUTED)

### Fifth Fair Use Factor: Personal Expression and Bodily Integrity

**DEFENDANTS' PROPOSED INSTRUCTION NO. 51:**

The fifth fair use factor you should consider is the following. You should consider the fundamental rights of Katherine Von Drachenberg's client, Blake Farmer, to personal expression and bodily integrity

Tattoos and the process of tattooing are forms of pure expression that are fully protected by the First Amendment to the United States Constitution.

Individuals have, in general, a fundamental right to bodily integrity, which means a right to make decisions about control over one's own body.

In deciding whether the use of the Miles Davis Photograph to create a tattoo was a fair use, you should consider the fundamental rights of Blake Farmer to make decisions about how to express himself through permanent markings on his body.

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 51:**

The Comment to Ninth Circuit Model Instruction No. 17.22 expressly calls on the Court to "insert any other factor that bears on the issue of fair use," and that the four statutory factors "are by no means exhaustive or exclusive." *See also* 4 Nimmer on Copyright § 13F.09[B]("Consider that the factors listed in the statute are preceded by the word 'shall include,' and that the statute as a whole defines the term 'including' as 'illustrative and not limitative' . . . [for that reason, the four factors contained in Section 107 stand by way of example, rather than being an exhaustive illumination").

The Supreme Court has twice emphasized that the fair use doctrine, along with the idea/expression dichotomy, are vital protections against overexpansion of copyright monopolies to protect the First Amendment interests that subsequent

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

speakers have in building on existing works. *See Golan v. Holder*, 565 U.S. 302, 328 (2012) ("Both are recognized in our jurisprudence as 'built-in First Amendment accommodations'"); *Eldred v. Ashcroft*, 537 U.S. 186, 219-20 (2003) (same).

Closely related to the vital First Amendment interests in free expression are the fundamental rights of individuals to express themselves through permanent markings on their bodies. This ties in with the fundamental right individuals have to bodily integrity. *See Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 269 (1990) ("Every human being of adult years and sound mind has a right to determine what shall be done with his own body."); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (identifying "bodily integrity" as among the "fundamental rights and liberty interests" for which the Due Process Clause "provides heightened protection against government interference"). In the context of deciding the constitutionality of a municipality's ban on tattoo parlors, the Ninth Circuit has expressly held "that the tattoo itself, the process of tattooing, and the business of tattooing are forms of pure expression fully protected by the First Amendment." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1068 (9th Cir. 2010).

Plaintiff cites to a decision by the U.S. Copyright Office which he claims holds that "it will treat tattoos no different than other works under copyright law." But that's not what the decision says and it has no application here. The request to which the U.S. Copyright office responded came up in a context that has no relation to the issue here. A tattoo artist copyrighted several tattoo designs and was in a dispute with a video game company who depicted NBA players in its game bearing his tattoo designs. (ECF 150, p. 4.) That case – and the decision by the U.S. Copyright office – addresses questions about whether the fact that the designs incorporated pre-existing material would have prevented them from being registered. It says nothing about whether a permanent tattoo on a human body can constitute copyright infringement.

While Plaintiff did not sue Blake Farmer, he is seeking a finding that a tattoo inked on Blake Farmer's body is a copyright infringement (and not a fair use), and a

2343344

finding that a tattoo is a copyright infringement would be the basis of other artists bringing infringement claims against individuals based on their tattoos. The jury should be able to consider the impact of the fundamental rights of bodily integrity of the person being tattooed.

**PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 51:**

There is no fifth factor in the statute or Ninth Circuit Model Instructions. This Court has rejected Defendants' arguments that a tattoo creates a different meaning by virtue of its location on the human body or that tattoo artists should be treated differently than other artists for purposes of the fair use analysis. The U.S. Copyright Office, to whom the Ninth Circuit accords deference, recently stated that it will treat tattoos no different than other works under copyright law and classify tattoos as derivative works when based upon non-tattoo art. ECF 150-4 (Copyright Office Response in *Hayden v. 2K Games Inc.*) (for tattoos, the Copyright Office will apply "the same standard [for original expression] as that required for determining whether a copyright exists in any work"), 13 (tattoos are derivative works if based on non-tattoo preexisting work and lack an "appreciable amount" of new material). Moreover, the only party who could possibly claim body integrity is Mr. Farmer, who is not a party to this litigation. This case is about the unauthorized reproduction, creation of a derivative work, public display, and distribution of a photograph by the Defendants.

Second, Defendants contend that the First Amendment protects their activities. Such statement is false and has been rejected by the U.S. Supreme Court. "Copyright laws are not restrictions on freedom of speech as copyright protects only form of expression and not the ideas expressed." *Harper & Row Publrs. v. Nation Enters.*, 471 U.S. 539, 556 (1984) ("[C]opyright's idea/expression dichotomy '[strikes] a

definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression.").

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 51:**

Plaintiff's position is that fair use need not be split into nine separate instructions and that Plaintiff's Proposed Instruction No. 44 on fair use  is appropriate.  Under the Ninth Circuit Model  Jury Instructions, the fair use factors are discussed together.

2343344

## **INSTRUCTION NO. 52 (DISPUTED)**

### **Concluding Remarks on Fair Use**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 52:**

It is up to you to decide whether all relevant factors, when considered fully and together, favor or disfavor fair use. All of these factors must be explored, discussed, and evaluated by you. No single factor is dispositive. Your evaluation of all factors must be weighed together in light of the purpose of copyright law, which is to promote the progress of science and useful arts.

Some factors may weigh in favor of fair use and some against fair use. You must decide, after giving the factors such weight as you find appropriate based on the evidence and my instructions, whether or not, on balance, the Defendants have shown by a preponderance of the evidence that they made a fair use.

If you find in favor of fair use, then your verdict on the copyright infringement claims should be for the Defendants.

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 52:**

The jury needs to be given some instruction on how to weigh the factors, particularly given that this is not a situation where each factor holds equal weight.

This proposed instruction is based on *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994)("Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright"); *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 652 (9th Cir. 2020)("We weigh each of these factors in light of the Copyright Act's purpose "to stimulate artistic creativity for the general public good."")

2343344

**PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED
INSTRUCTION NO. 52:**

The Court has already determined as a matter of law that: (1) Defendants'
tattoo was not transformative; (2) the second factor weights against fair use; and (3)
the third factor weighs against fair use. Accordingly, the above instruction is
confusing and prejudicial to the jury because it asks the jury "evaluate" "all factors,"
including those that has already been determined by the Court. The jury should be
instructed to accept the Court's previous findings relating to fair use.  Plaintiff's
Instruction No. 44 instructs the jury on how to appropriately weigh the factors, while
simultaneously accepting the Court's legal determinations on these issues.

Defendants' Instruction does not instruct the jury that each of Defendants' uses
must be analyzed individually.

Additionally, Defendants have improperly modified critical language from
Ninth Circuit Model Civil Jury Instruction 17.22 that it is Defendants' burden to
prove fair use: "If you find that the defendant has proved by a preponderance of the
evidence that the defendant made a fair use of the plaintiff's work, your verdict
should be for the defendant."

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 52:**

Plaintiff's position is that fair use need not be split into nine separate
instructions and that Plaintiff's Proposed Instruction No. 44 on fair use  is
appropriate.  Under the Ninth Circuit Model  Jury Instructions, the fair use factors are
discussed together.

2343344

## INSTRUCTION NO. 53 (UNDISPUTED)

### Copyright – Damages (17 U.S.C. § 504)

If you find for the plaintiff on the plaintiff's copyright infringement claims, you must determine the plaintiff's damages. <u>The plaintiff is entitled to recover any profits of the defendants attributable to their infringement</u>. The plaintiff must prove these damages by a preponderance of the evidence.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 17.32 (2017).

2343344

## **INSTRUCTION NO. 54 (DISPUTED)**

### **Copyright – Damages – Actual Damages (17 U.S.C. § 504(b))**

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 54:**

The copyright owner is entitled to recover the actual damages suffered as a result of the infringement. Actual damages mean the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work. That amount also could be represented by the lost license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's work

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.33 (2017).

**PLAINTIFF'S STATEMENT RE: PLAINTIFF'S PROPOSED INSTRUCTION NO. 54:**

Plaintiff proposes this jury instruction that is based on the Ninth Circuit Model Civil Jury Instruction 17.33 and complies with the Court's Standing Order. Plaintiff disagrees with Defendants that the Court's order at ECF 69 granted Defendants' summary judgment on the issue of actual damages. Plaintiff will not be arguing for actual damages based on the decrease in the market value of the Photograph. Rather, Plaintiff will be proving his actual damages based upon the hypothetical-license theory, which is calculated based on "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the

2343344

actual use made by [Defendants] of the [Photograph]." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) (internal citation omitted).

Plaintiff believes that this instruction is necessary as it follows with the next instruction, 17.34 "Defendants' Profits."

**DEFENDANTS' STATEMENT RE: PLAINTIFF'S PROPOSED INSTRUCTION NO. 54:**

Defendants object to Plaintiff's inclusion of a jury instruction on actual damages. Defendants sought partial summary judgment on the remedies of actual damages and Defendants' profits. Dkt. 31 at 2:22-24 (notice of motion); Dkt. 32 at 29:15-31:9 (brief). This Court's summary judgment ruling granted *in part* Defendants' motion for partial summary judgment as to remedies, and removed the issue of actual damages from the case.  Dkt. 69 at 28-29 ("The Court GRANTS in part and DENIES in part Defendants' motion for partial summary judgment as to remedies"; "Defendant[] argues Sedlik cannot prove actual damages . . . . Sedlik does not address this argument, and indeed he has put forward no such evidence.").

Plaintiff did not seek reconsideration of the Court order granting summary judgment as to actual damages (nor would he have had a basis for doing so) and actual damages is not an issue that should be presented to the jury.

2343344

## <u>INSTRUCTION NO. 55 (DISPUTED)</u>

## **Copyright—Damages—Defendant's Profits (17 U.S.C. § 504(b))**

## <u>**PLAINTIFF'S PROPOSED INSTRUCTION NO. 55:**</u>

In addition to actual damages, the copyright owner is entitled to any profits of the defendants attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of the defendants' profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendants' gross revenue.

The defendants' profit is determined by deducting all expenses from the defendants' gross revenue.

The defendants' gross revenue is all of the defendants' receipts from the sale of a product containing or using the copyrighted work. The plaintiff has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all costs incurred in producing the defendants' gross revenue. The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from use of the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendants have the burden of proving the percentage of the profit, if any, attributable to factors other than copyright or infringing the copyrighted work.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.34 (2017).

2343344

**PLAINTIFF'S STATEMENT RE: PLAINTIFF'S PROPOSED INSTRUCTION
NO. 55:**

Plaintiff proposes this jury instruction that is based on the Ninth Circuit Model
Civil Jury Instruction 17.34 and complies with the Court's Standing Order. Plaintiff
believes that the language "actual damages" is necessary as it is connected directly
with the previous instruction, 54. Plaintiff believes that the Court's order at ECF 69
did not grant summary judgment for Defendants in favor of actual damages, for the
reasons discussed above.

The term "Defendants' gross revenue" is the same term used by the Court in
the summary judgment decision.  ECF 69, 29.  The Court found triable issues with
respect to the gross revenue, and denied summary judgment on it.  *Id.*

**DEFENDANTS' STATEMENT RE: PLAINTIFF'S PROPOSED
INSTRUCTION NO. 55:**

Defendants object to the first paragraph of this instruction to the extent it
references actual damages for the reasons discussed above with respect to Plaintiff's
Proposed Instruction No. 54.  Defendants object to the second paragraph of the
instruction.  Model Instruction 17.34 includes the following:

> You may make an award of the defendant's profits only if
> you find that the plaintiff showed a causal [relationship]
> [nexus] between the infringement and the [profits generated
> indirectly from the infringement] [defendant's gross
> revenue].

Plaintiff chose to include "defendant's gross revenue" as opposed to "profits
generated indirectly from the infringement."  But in its summary judgment ruling, the
Court granted partial summary judgment to Defendants on the remedy of ***direct***
profits. Dkt. 69 at 28-29 ("so Sedlik cannot establish direct profits"). Therefore, the

2343344

phrase "profits generated indirectly from the infringement" should be used, not "gross revenue."

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

## INSTRUCTION NO. 56 (UNDISPUTED)

### Copyright – Damages – Statutory Damages (17 U.S.C. § 504(c))

If you find for the plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages. The plaintiff seeks a statutory damage award, established by Congress for the work infringed. Its purpose is not only to compensate the plaintiff for its losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

The amount you may award as statutory damages is not less than $750, nor more than $30,000.

If you find the infringement was innocent, you may award as little as $200.

However, if you find the infringement was willful, you may award as much as $150,000.

AUTHORITY FOR INSTRUCTION:

Model Civ. Jury Instr. 9th Cir. 17.35 (2017).

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

1
2

### INSTRUCTION NO. 57 (UNDISPUTED)

**Copyright – Damages – Innocent Infringement (17 U.S.C. § 504(c)(2))**

3    An infringement is considered innocent when the defendant has proved both of

4  the following elements by a preponderance of the evidence:

5    1. the defendant was not aware that her or its acts constituted infringement of

6  the copyright; and

7    2. the defendant had no reason to believe that her or its acts constituted an

8  infringement of the copyright.

9

10  AUTHORITY FOR INSTRUCTION:

11    Model Civ. Jury Inst. 9th Cir. 17.36 (2017).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2343344

## <u>INSTRUCTION NO. 58 (UNDISPUTED)</u>

**Copyright – Damages – Willful Infringement (17 U.S.C. § 504(c)(2))**

An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1. the defendants engaged in acts that infringed the copyright; and

2. the defendants knew that those acts infringed the copyright, or the defendants acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

<u>AUTHORITY FOR INSTRUCTION:</u>

Model Civ. Jury Instr. 9th Cir. 17.37 (2017).

2343344

**INSTRUCTION NO. 59 (DISPUTED)**

**Copyright – Statute of Limitations and Three-Year Bar**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 59:**

To ensure that claims are brought to court reasonably promptly, copyright law generally bars the Plaintiff from recovering damages for infringing acts that occurred prior to three years before he filed his lawsuit. I will refer to this limitation as the "three-year bar."

There is an exception to the three-year bar. The exception is this: if, prior to the critical date of three years before filing the lawsuit, the Plaintiff was unaware of the infringement, and his lack of knowledge was reasonable under the circumstances, then the three-year bar does not apply.

In our case, the Plaintiff filed this lawsuit on February 7, 2021. Thus, the critical date of three years before he filed the lawsuit is February 7, 2018.

If you find that the Plaintiff discovered or should have discovered any of the alleged infringements prior to February 7, 2018, then the three-year bar applies as to that infringement. You may award damages only as to those alleged infringements that you determine that Plaintiff discovered on or after February 7, 2018.

**DEFENDANTS' STATEMENT RE: DEFENDANTS' PROPOSED INSTRUCTION NO. 59:**

This instruction is based on existing Ninth Circuit law on the Copyright Act's time limitations doctrines – the "discovery rule" for the treatment of the "accrual" question, and the "rolling approach" / "separate-accrual" rule for the treatment of the "continuing infringement" question. *See Starz Entm't, LLC v. MGM Domestic Television Distr., LLC*, 510 F. Supp. 3d 878, 882-89 (C.D. Cal. 2021) (discussing time limitations doctrines of 17 U.S.C. § 507(b)), *aff'd*, 39 F. 4th 1236, 1239-41 (9th

2343344

1  Cir. 2022); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994); *Polar*

2  *Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 705-07 (9th Cir. 2004)).

3  Defendant has modified the instruction to address Plaintiff's stated concern that

4  there are multiple alleged infringements.

5

6  **PLAINTIFF'S STATEMENT RE: DEFENDANTS' PROPOSED**

7  **INSTRUCTION NO. 59:**

8  First, Plaintiff believes this instruction is unnecessary because no evidence

9  exists that Plaintiff either discovered or should have discovered any of Defendants'

10  infringements prior to three years before the suit was filed. Plaintiff has presented

11  uncontroverted evidence that he discovered the infringements on or around February

12  10, 2018, which is within the three-year period.  As with all affirmative defenses, the

13  burden is on Defendants to prove Plaintiff's claims are barred.

14  Second, this instruction is not in accordance with the law. "A copyright

15  infringement claim is subject to a three-year statute of limitations, which runs

16  separately for each violation. [A] copyright infringement claim accrues—and the

17  statute of limitations begins to run—when a party discovers, or reasonably should

18  have discovered, the alleged infringement." *Oracle Am., Inc. v. Hewlett Packard*

19  *Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020) (quoting 17 U.S.C. § 507(b); *Petrella*

20  *v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)); *see also Starz Ent., LLC v.*

21  *MGM Domestic Television Distribution, LLC,* 39 F.4th 1236, 1240 (9th Cir. 2022) (a

22  copyright claim "accrues at 'the moment when the copyright holder has knowledge of

23  a violation or is chargeable with such knowledge,' and therefore 'the three-year clock

24  begins upon discovery of the infringement.'" (quoting *Polar Bear Prod. Inc. v. Timex*

25  *Corp.*, 384 F.3d 700, 706 (9th Cir. 2004)). Therefore, "§ 507(b) does not prohibit the

26  recovery of damages for infringing acts that occurred outside the three-year window

27  so long as the copyright plaintiff was unaware of the infringement, and that lack of

28  knowledge was reasonable under the circumstances." *Id.*(internal citation omitted). It

2343344

is Defendants' burden to prove that Plaintiff was aware, or should have been aware, of the infringement. Defendants' Instruction does not describe which party carries the burden on this issue.

Third, Plaintiff has alleged that Defendants have committed different infringements (reproduction, preparation of a derivative work, distribution and public display) with respect to the tattoo, the materials used to prepare the tattoo, and the public display of both the tattoo and the photograph. Defendant has the burden of proving that the statute of limitations bars recovery of damages beyond three years with respect to *each* separate act of infringement.

Thus, Defendants' open-ended instruction is prejudicial to Plaintiff and ignores the burden of proof. Instead of Defendants needing to prove that the Statute of Limitations applies, Defendants' instruction requires Plaintiff to prove that he did not have knowledge of the infringement and that his lack of knowledge was "reasonable under the circumstances." Plaintiff does not agree that Defendants' modifications have addressed Plaintiff's concerns regarding multiple infringements.

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 59:

Plaintiff's position is that no instruction on the statute of limitation or three-year bar is appropriate.

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344

1

## **ATTESTATION**

2      Pursuant to Local Rule 5.4.3.4(2)(i), all signatories listed, and on whose

3  behalf this filing is submitted, concur in the filing's content and have authorized the

4  filing.

5

6                                            */s/ Robert E. Allen*

7                                            ROBERT E. ALLEN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS WITH SUPPORTING ARGUMENTS

2343344