ROBERT E. ALLEN (SBN 166589)
rallen@glaserweil.com
LARA A. PETERSEN (SBN 318475)
lpetersen@glaserweil.com
JASON C. LINGER (SBN 323031)
jlinger@glaserweil.com
GLASER WEIL FINK HOWARD
 JORDAN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Plaintiff
JEFFREY B. SEDLIK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JEFFREY B. SEDLIK,

             Plaintiff,

v.

KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,

             Defendants.

Case No.: 2:21-cv-01102-DSF-MRX

Before the Hon. Dale S. Fischer, U.S. District Court Judge

**PLAINTIFF JEFFREY B. SEDLIK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL**

*[Notice and Renewed Motion; Declaration of Jason C. Linger in support thereof; and (Proposed) Order filed concurrently herewith]*

Hearing Date: April 1, 2024
Time:        1:30 PM
Place:       Courtroom 7D
              First Street Courthouse
              350 West 1st Street
              Los Angeles, CA 90012

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................... 1

II.   LEGAL STANDARD ............................................................................ 3

    A.   Judgment as a Matter of Law ...................................................... 3

    B.   Motion for a New Trial ................................................................ 3

III.  SUBSTANTIAL SIMILARITY ......................................................... 4

    A.   No Reasonable Jury Could Find That All of Defendants' Uses Were Not Substantially Similar to the Davis Photograph. ................. 4

    B.   Alternatively, the Jury's Substantial Similarity Analysis Was Improper Because Defendants Admitted to Direct Copying. ............... 9

    C.   *Skidmore* and *Rentmeester* Did Not Involve Direct Copying ............ 12

IV.   FAIR USE .............................................................................................. 14

    A.   The Court Determined That Certain Fair Use Factors Weigh Against Fair Use as a Matter of Law. ................................................. 14

    B.   The Court Failed to Correctly Instruct the Jury on Fair Use. ............. 15

    C.   Alternatively, No Reasonable Jury Could Find That the Undecided Factors, When Weighed With All Four Factors, Result in Fair Use. . 17

        1.   The Social Media Posts and Tracing Are Not Transformative ................................................................... 17

        2.   All of Defendants' Uses Were Commercial in Nature. ............ 20

        3.   The Harm To Sedlik's Potential Market Was Immense ........... 23

        4.   Overall Weighing of the Factors ............................................ 25

V.    CONCLUSION ..................................................................................... 25

2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

# TABLE OF AUTHORITIES

Page

## CASES

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ................................................................. 20

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023) .............................................................. 9, 18, 25

*Antonick v. Elec. Arts, Inc.*,
841 F.3d 1062 (9th Cir. 2016) ................................................................ 5

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ................................................................. 20

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ........................................................................ 18

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
983 F.3d 443 (9th Cir. 2020) .......................................................... 16, 24

*Elvis Presley Enterprises, Inc. v. Passport Video*,
349 F.3d 622 (9th Cir. 2003) ................................................................ 19

*Fierro v. Smith*,
39 F.4th 640 (9th Cir. 2022) ................................................................ 15

*Friedman v. Guetta*,
No. CV 10-00014 DDP JCX, 2011 WL 3510890 (C.D. Cal. May 27, 2011) ........... 8

*Frost v. BNSF Ry. Co.*,
914 F.3d 1189 (9th Cir. 2019) .............................................................. 15

*Google LLC v. Oracle Am., Inc.*,
141 S. Ct. 1183 (2021) ................................................................ 15, 17

*Gray v. Hudson*,
28 F.4th 87 (9th Cir. 2022) .......................................................... 4, 5, 9

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985) ......................................................................... 9

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*,
No. CV122650JFWAJWX, 2015 WL 12712311 (C.D. Cal. Dec. 16, 2015) .......... 13

*Jarvis v. K2 Inc.*,
486 F.3d 526, 9th Cir. 2007) ................................................................. 9

*Krikor v. Sports Mall, LLC*,
No. CV225600DMGMRWX, 2023 WL 2372068 (C.D. Cal. Jan. 24, 2023) ......... 12

*Landes Const. Co. v. Royal Bank of Canada*,
833 F.2d 1365 (9th Cir. 1987) ................................................................ 4

*Leadsinger, Inc. v. BMG Music Pub*
   512 F.3d 522 (9th Cir. 2008) ........................................................ 22, 23

*McGucken v. Pub. Ocean Ltd.*,
   42 F.4th 1149 (9th Cir. 2022) .......................................... 18, 19, 23, 25

*McGucken v. Triton Elec. Vehicle LLC*,
   No. CV213624DMGGJSX, 2022 WL 2101725 (C.D. Cal. Mar. 21, 2022) ........... 12

*Miller v. Republic Nat. Life Ins. Co.*,
   789 F.2d 1336 (9th Cir. 1986) ........................................................ 15

*Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*,
   856 F.2d 1341 (9th Cir. 1988) ........................................................ 9

*Molski v. M.J. Cable*, Inc.,
   481 F.3d 724 (9th Cir. 2007) ........................................................ 3

*Monge v. Maya Mags., Inc.*,
   688 F.3d 1164 (9th Cir. 2012) ........................................................ 25

*Morris v. Guetta*,
   No. LA CV12-00684 JAK, 2013 WL 440127 (C.D. Cal. Feb. 4, 2013) ............ 8, 11

*Murphy v. City of Long Beach*,
   914 F.2d 183 (9th Cir. 1990) ...................................................... 4, 15

*Norse v. Henry Holt and Co.*,
   991 F.2d 563 (9th Cir. 1993) .................................................. 9, 11, 12, 13

*Oracle Int'l Corp. v. Rimini St., Inc.*,
   2023 WL 4706127 (D. Nev. July 24, 2023) ........................................ 13

*Ostad v. Or. Health Scis. Univ.*,
   327 F.3d 876 (9th Cir. 2003) ........................................................ 3

*Peralta v. Dillard*,
   744 F.3d 1076 (9th Cir. 2014) ........................................................ 15

*Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.*,
   295 F. Supp. 1366 (S.D.N.Y.) ........................................................ 7

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ...................................................... 9, 11

*Reed v. Lieurance*,
   863 F.3d 1196 (9th Cir. 2017) ........................................................ 3

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ...................................................... 12, 13

*Richey v. I.R.S.*,
   9 F.3d 1407 (9th Cir. 1993) ........................................................ 15

*Rogers v. Koons*,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

960 F.2d 301 (2d Cir. 1992)..................................................................................... 7

*Ross-Nash v. Almond*,
  2020 WL 6947691 (D. Nev. Oct. 28, 2020) ........................................................ 13

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ....................................................................... 12, 13

*Society of Holy Transfiguration Monastery, Inc. v. Gregory*,
  689 F.3d 29 (1st Cir. 2012)................................................................................. 20

*Teradyne, Inc. v. Astronics Test Sys., Inc.*,
  No. CV 20-2713-GW-SHKX, 2023 WL 9284863 (C.D. Cal. Dec. 6, 2023).......... 17

*Tolkien Tr. v. Polychron*,
  No. 2:23-CV-04300-SVW-E, 2023 WL 9471264 (C.D. Cal. Dec. 14, 2023) .... 7, 13

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
  715 F.2d 1327 (9th Cir. 1983) .............................................................................. 4

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
  853 F.3d 980 (9th Cir. 2017) ............................................................................... 4

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ........................................................................ 23, 25

*Vogts v. Penske Media Corp.*,
  No. 222CV01153FWSPVC, 2023 WL 7107276 (C.D. Cal. Aug. 30, 2023).......... 18

*Weissmann v. Freeman*,
  868 F.2d 1313 (2d Cir. 1989)............................................................................. 20

*White v. Ford Motor Co.*,
  500 F.3d 963 (9th Cir. 2007) ............................................................................. 15

*Wilkerson v. Wheeler*,
  772 F.3d 834 (9th Cir. 2014) ............................................................................. 15

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
  227 F.3d 1110 (9th Cir. 2000) ........................................................................... 20

**STATUTES**
17 U.S.C. § 107 ..................................................................................................... 14

17 U.S.C. § 107 (4) ............................................................................................... 23

Fed. R. Civ. P. 50(b) .............................................................................................. 3

**FEDERAL RULES**
Fed. R. Civ. P. 59(a)(1 ........................................................................................... 3

Rule 50(b) .............................................................................................................. 3

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

Glaser Weil

Rule 59 ........................................................................................................... 3

**OTHER AUTHORITIES**
PATRY ON COPYRIGHT § 9:78 ........................................................................ 6

# I.    <u>INTRODUCTION</u>

Plaintiff Jeffrey Sedlik's Miles Davis Photograph is one of the most celebrated photographs ever taken of Miles Davis.  Captured in 1989 at Davis's home in Malibu, California, the Photograph originally appeared on the cover of a leading jazz magazine known as JAZZIZ.  Since then, the Photograph has appeared in museums, on merchandise, in television, and it was even used as a reference for a statute in France, all pursuant to license agreements between Sedlik and the licensees.

The subject of the Photograph, Miles Davis, is generally considered the greatest trumpet musician of the 20th century. Sedlik is a professional photographer and professor of photography who earns his living creating high-end photography and licensing his work to licensees in a variety of media.

Sedlik invested years of development in order to create the Davis Photograph. After receiving an assignment from JAZZIZ magazine, Sedlik designed a custom studio and transported it, piece by piece, to the shoot at Davis's home.  To achieve his desired lighting, Sedlik covered the studio with black fabric, blocking the sunlight. However, he left an opening so that Davis's face and body would be illuminated in shaft of light. Sedlik also positioned reflectors behind the camera, choosing just the right size, distance, and angle to create white "catchlights" in Davis's eyes.

During the shoot, Sedlik selected and controlled the camera position, camera angle, camera height, lens focal length, aperture, and other creative tools in order to achieve Sedlik's desired original expression in the Photograph.  Sedlik paid exacting attention to directing Davis's hair, pose, expression, and makeup.  He gave Davis suggestions about how to tilt his head, where to position his shoulders and arms, and the direction and intensity of his gaze.  He asked Davis to put his finger to his lips, symbolizing the jazz legend's masterful use of silent negative space—the pauses between his musical notes—in his performances.  Sedlik physically adjusted the precise position of Davis's fingers to achieve the visual effect of a series of cascading musical notes.  He asked Davis to lower and raise his hand and simultaneously tense

his facial muscles, rendering his face in an intensity of expression to contrast with the symbolic pose.

Defendant Katherine Von Drachenberg is a world-famous tattoo artist.  She has starred in multiple reality TV shows, started her own makeup line, and has millions of followers on social media.  In 2017, Von D inked a tattoo replicating the Davis Photograph on Von D's business partner and client, Blake Farmer.  The tattoo was inked at High Voltage Tattoo ("HVT"), a tattoo shop that Von D owned located in West Hollywood, California.  Farmer wanted a Tattoo that matched as closely as possible to the Photograph, and by tracing and otherwise replicating it at every step in the tattooing process, Von D was able to make a near-identical copy of the Photograph on Farmer's arm.  At the time, High Voltage Tattoo wrote on social media to confirm that the Tattoo was a "100% match" of the Davis Photograph.

Defendants did not use the Davis Photograph to comment or criticize the Photograph or to engage in nonprofit educational uses.  Instead, over the next three years, Von D and HVT advertised the Tattoo on their social media platforms at least 17 times.  With their millions of social media followers, Defendants' posts reached an enormous audience, some of whom praised Von D's work and expressed a desire to get their own tattoos.  As a highly-successful businesswoman, Von D's social media advertises other products for sale, including Von D's music, makeup, and shoes, side-by-side with photographs and videos of the Tattoo.

In February 2021, after first attempting to contact Von D to discuss and resolve the matter, Sedlik sued Defendants for copyright infringement.  After a four-day jury trial in January 2024, the jury found that the Tattoo and Defendants' other uses of the Davis Photograph were not substantially similar.  And for certain other uses, the jury found that Defendants had engaged in fair use.

Judgment as a matter of law and a new trial are necessary here.  No reasonable jury could find that Defendants' Tattoo of the Davis Photograph—which they admitted achieved a "100% match" of it—is not substantially similar.  Alternatively, a

2

jury should not have considered substantial similarity at all because Defendants admitted to direct copying at every step in the tattooing process.  As to fair use, the Court already determined that certain fair use factors favored Plaintiff as a matter of law, and yet, the jury was instructed to determine these findings.  Alternatively, no reasonable jury could find Defendants met their burden of showing fair use.  If the Court grants judgment as a matter of law, a new trial on damages would be required.

## II.   LEGAL STANDARD

### A.   Judgment as a Matter of Law

Fed. R. Civ. P. 50(b) authorizes a party to renew a motion for judgment as a matter of law submitted under Rule 50(a).  Under Rule 50(b), a court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."  Fed. R. Civ. P. 50(b).  "The standard for judgment as a matter of law ... 'mirrors' the summary judgment standard."  *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017). "Judgment as a matter of law is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury."  *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003).

### B.   Motion for a New Trial

"The court may, on motion, grant a new trial on all or some of the issues ... for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1).  Rule 59 does not specify the grounds upon which a new trial may be granted, but a new trial may be granted "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Molski v. M.J. Cable*, Inc., 481 F.3d 724, 729 (9th Cir. 2007).  On a motion for new trial, "the district court has 'the duty ... to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'"  *Id.*  "The judge

can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial."  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

## III.   SUBSTANTIAL SIMILARITY

### A.   No Reasonable Jury Could Find That All of Defendants' Uses Were Not Substantially Similar to the Davis Photograph.

Judgment as a matter of law is warranted on the issue of substantial similarity. No reasonable jury could find that Defendants' uses were not substantially similar to the Davis Photograph.

The standards for summary judgment and JMOL are "essentially the same"— "whether a reasonable jury would have had a legally sufficient evidentiary basis to conclude" that there was no infringement.  *Gray v. Hudson*, 28 F.4th 87, 95 (9th Cir. 2022).  "Allowing district courts to grant summary judgment for plaintiffs in copyright cases plays an important role in preserving the effect and weight of Rule 56.  When the works are so overwhelmingly identical that the possibility of independent creation is precluded, there is simply no genuine dispute as to any material fact."  *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 987 (9th Cir. 2017) (finding that the district court properly found that no reasonable jury could find no substantial similarity where the works were "overwhelmingly similar"); *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983) ("A grant of summary judgment for plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded."). "A trial judge has had the benefit of hearing testimony and a full presentation of the evidence when ruling on a post-trial JMOL motion, which may occasionally give her new insights into the legal sufficiency of the evidence." *Gray*, 28 F.4th 87, 102-03.  When appropriate, courts will reverse jury findings on substantial similarity on a motion for

1   JMOL.  *Id.*; *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016).

2          Here, the Court properly determined that the Davis Photograph was entitled to

3   "broad protection because there were a great number of choices involved in creating

4   [the Photograph], such as Davis's highly specific pose, facial expression, lighting and

5   shadows, camera angle, and background for the image."  ECF 69, 14.  Here, the

6   similarities between the original expression in the Davis Photograph and the features

7   of the Tattoo are overwhelming, and the relatively minor differences arise from the

8   different media of the works:



18  Ex. 229.[1]  The jury heard extensive evidence about the myriad similarities between

19  the Photograph and the Tattoo, including Davis's facial expression, dramatic pose,

20  body positioning, and gaze.  Trial Transcript ("Tr."), 281:11-289:7.  Plaintiff carefully

21  instructed Davis on the tilt of his head, the non-natural, cascading position of his

22  fingers, and the intense furrowing of his brow—and this same original expression was

23  copied in the Tattoo.  Tr., 213:13-25, 222:8-19, 230:22-25, 263:2-14.  The jury also

24  heard about the identical mood and sentiment of the works (Tr., 288:6-24), in addition

25  to the numerous similarities between the light box tracing and the Photograph (Tr.,

26  265:22-267:4).

27  _____

28  [1] The cited exhibits and portions of the trial transcript are attached to the Declaration of Jason Linger.  The video exhibits were already lodged with the Court.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

Glaser Weil

The social media posts featuring the Tattoo and tracing are similar for the same reasons.  ECF 169, 12 ("The same elements and pose copied from the Portrait for the Tattoo were necessarily reproduced in the social media posts of the Tattoo."). Defendants' social media "progress" shots showing the partially-completed Tattoo are irrelevant to the question of substantial similarity because substantial similarity "rests solely upon a comparison of the plaintiff's work and the defendant's final version." PATRY ON COPYRIGHT § 9:78.  But even if they are considered, these progress shots show, in a zoomed in level, the same distinctive features present in the Davis Photograph, such as Davis's gaze, the reflection in his eyes, and his furrowed brow, all of which Plaintiff carefully crafted for the Photograph.  Tr., 282:22-284:6, Exs. 212, 213, 315.  Accordingly, both the extrinsic and intrinsic tests are met here as a matter of law for all of Defendant's uses.

Defendants admitted that they attempted to make the Tattoo as accurate as possible.  Tr., 387:4-7.  Defendant High Voltage Tattoo, which was wholly owned by Von D, wrote on Instagram to a potential customer that the Tattoo is "100% exactly the same as" the Photograph.



Ex. 336 (zoomed in), Tr., 382:22-383:1. Von D agreed at trial that there are myriad similarities between the Photograph and Defendants' works and that she relied only on the Davis Photograph to make her works.  Tr., 416:14-18.  Von D did not dispute Plaintiff's assertion that she copied the "heart" of Plaintiff's original expression.  Tr., 266:2-13.  She agreed that Davis's pose, perspective, gaze, and finger arrangement, as well as the lighting, perspective, and shadows are all the "same" or "similar."  Tr., 421:15-422:9, 423:1-16.  And she agreed that the Photograph and light box tracing "match up exactly."  Tr., 416:14-18.  Defendants should be held to their word.  *Peter*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

*Pan Fabrics, Inc. v. Dan River Mills, Inc.*, 295 F. Supp. 1366, 1369 (S.D.N.Y.), *aff'd*, 415 F.2d 1007 (2d Cir. 1969) ("defendant's agent admitted not only that there was an opportunity to copy, but also that there was actual copying."); *Tolkien Tr. v. Polychron*, No. 2:23-CV-04300-SVW-E, 2023 WL 9471264, at *6 (C.D. Cal. Dec. 14, 2023) ("[defendant's] admission that he attempted to keep his book as closely tied to [The Lord of the Rings] is direct evidence that he copied TLOR.").

At trial, Defendants called only two witnesses, Von D and Bryan Vanegas via deposition. Vanegas offered no testimony regarding substantial similarity.  Von D offered the following superficial differences: the hair, jawline, and shoulder.  Tr., 517:8-25.  These differences—contradicting Defendant HVT's statement that the Tattoo was a "100%" match—are minor and "artifacts from imperfect copying" of the Photograph to an ink-based tattoo on a person's skin.  *Unicolors*, 853 F.3d at 985; Tr., 422:5-6 (Von D admitting that she "can't make something exactly the same as a photo").  In Von D's own words, these differences appear only when you get "microscopic with the details."  Tr., 492:10.

The side-by-side Photograph and Tattoo reveals just how minor these differences really are.  Davis has similar hair and a jawline in both pictures, and the hair, which was carefully placed by Plaintiff during the shoot, covers Davis's right ear in ***exactly*** the same way in both works.  Tr., 285:9-20.  Von D further testified that the shoulders are not seen in the Tattoo because her assistant simply cropped that part out when printing out the Photograph.  Tr., 407:17-22.

The test is "substantial" similarity, not complete and total similarity. *Unicolors*, 853 F.3d at 987 ("Where the extrinsic similarity is so strong that the works are near duplicates save for superficial differences, the court may properly conclude that no reasonable jury could find that the works are not substantially similar in their overall concept and feel.") (finding substantial similarity as a matter of law notwithstanding "minor differences" in color and background); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Substantial similarity does not require literally

Glaser Weil

<div style="writing-mode: vertical-rl">Glaser Weil</div>

1  identical copying of every detail.") (finding substantial similarity as a matter of law
2  between a black-and-white photograph and a 3D, colorful sculpture).  The photograph
3  and derivative sculpture in *Rogers* feature a much higher degree of difference
4  between the works than what it is present here.



11  In this District, judges have also found substantial similarity as a matter of law
12  involving derivative works of human portraits showing much greater differences.

   

19  **Left**: *Morris v. Guetta*, No. LA CV12-00684 JAK, 2013 WL 440127, at *3 (C.D. Cal.
20  Feb. 4, 2013) (finding substantial similarity to be "irrelevant" ***and*** substantially
21  similar as a matter of law); **Right**: *Friedman v. Guetta*, No. CV 10-00014 DDP JCX,
22  2011 WL 3510890, at *5 (C.D. Cal. May 27, 2011).

23      In *Morris*, you ***cannot*** see the man's arms or shirt in the derivative, but it is still
24  substantially similar to the photograph as a matter of law.  The painting also adds
25  splashes of color and curls to the man's straight hair.  In *Friedman*, the brick-wall
26  background, black-and-white coloring, and details of the jackets are dramatically
27  changed in the colorful, graffiti-filled painting.  Yet the Court found substantial
28  similarity as a matter of law.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

1   If an infringer could add a trivial amount of features like Defendants' to

2   copyrighted works and escape liability, that would mean the end of derivative works,

3   like books to movies, or songs to music videos. *Andy Warhol Found. for the Visual*

4   *Arts, Inc. v. Goldsmith*, 598 U.S. 508, 529 (2023) ("[T]the owner has a right to

5   derivative transformations of her work. Such transformations may be substantial, like

6   the adaptation of a book into a movie."); *Harper & Row Publishers, Inc. v. Nation*

7   *Enterprises*, 471 U.S. 539, 565 (1985) ("no plagiarist can excuse the wrong by

8   showing how much of his work he did not pirate.").

9   The evidence shows that Defendants executed a copy of the Davis Photograph

10   in a different medium. That is by definition a derivative work that infringes

11   Plaintiff's copyright. *Jarvis v. K2 Inc.*, 486 F.3d 526, 532 (9th Cir. 2007) (holding

12   that photographs that were "altered … in various ways and fused … with other

13   images and artistic elements" were infringing derivatives); *Mirage Editions, Inc. v.*

14   *Albuquerque A.R.T. Co.*, 856 F.2d 1341 (9th Cir. 1988) (images that were encased in

15   black border and mounted on ceramic tiles constituted infringing derivatives).

16   Accordingly, the Court should find all of Defendants' works to be substantially

17   similar to the Davis Photograph as a matter of law.

18   **B.    Alternatively, the Jury's Substantial Similarity Analysis Was**

19   **Improper Because Defendants Admitted to Direct Copying.**

20   This is one of the extraordinary cases in which the defendant has admitted and

21   there is uncontroverted evidence of direct copying. In such a case, Ninth Circuit

22   precedent establishes that a substantial similarity analysis is "irrelevant" because the

23   defendant is necessarily copying protected expression from the copyrighted work.

24   *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir.

25   2012); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir. 1993). The Ninth

26   Circuit's most recent precedent on substantial similarity—*Gray v. Hudson*—states

27   that substantially similarity must be shown when the "plaintiffs [do] ***not*** present any

28   direct evidence that defendants copied [the protected work]." *Gray*, 28 F.4th at 96.

9

1  For this statement to make any sense, substantial similarity should ***not*** be applied

2  when a plaintiff ***does*** present such evidence.

3        Here, there is undisputed evidence of direct copying.  Von D admitted that she

4  copied and used the Davis Photograph at every single step in making the tattoo.  Tr.,

5  412:13-18, 424:8-10.  She did so by downloading the Photograph from Google (Tr.,

6  489:11), printing it out (414:21-23), placing it on a lightbox (415:6-10), tracing the

7  Photograph on parchment paper (416:2-6), transferring the tracing of the Photograph

8  to her client's arm using thermal paper (417:4-9), and then keeping the Photograph

9  directly next to her as a reference to guide her throughout the shading process (420:8-

10 11). Von D's client, Blake Farmer testified that he wanted a tattoo that contained the

11 same original expression as the Photograph, including Davis's facial expression and

12 finger position, and that's exactly what Von D achieved by directly copying the

13 Photograph.  Tr., 371:15-20, 399:13-15, 416:14-18.

14       In addition to the trial testimony, there was extensive photographic evidence of

15 direct copying by Defendants.  In their social media posts, the Davis Photograph is

16 shown prominently during the making of the Tattoo.  When the Tattoo was

17 completed, Defendants announced to their millions of social media followers that they

18 had made a "100%" match of the Photograph.

19

20

21

22

23

24

25





26 **Exhibit 338 – Tracing the Photograph**          **Exhibit 337 – Using the Photograph**
      **at the Lightbox**                                        **During Shading**

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

Glaser Weil

In cases involving undisputed copying, the Ninth Circuit has found that a substantial similarity analysis is "irrelevant" and "inapposite," and has reversed the district court for conducting such analysis. The Ninth Circuit has stated that it is error to consider whether unlawful appropriation has occurred. In *Norse*, a publisher copied phrases from a writer's letters. *Norse v. Henry Holt & Co.*, 991 F.2d 563, 565 (9th Cir. 1993). The copied phrases were confined a single paragraph of a 746-page book. However, there was no dispute that the publisher directly copied the phrases from the author. *Id.* The district court held that the letters and the publisher's book were not substantially similar because "no protected expression was copied." *Id.*, 566. The Ninth Circuit reversed, finding "a substantial similarity analysis may be useful … when the alleged infringer denies that he in fact copied the plaintiff's work. But here the substantial similarity analysis is inapposite to the copying issue because appellees admit that they in fact copied phrases from Norse's letters." *Id.*

The law was reconfirmed in the Ninth Circuit's decision in *Range Road*, a case involving direct copying of copyrighted music. *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012). The Court explained that substantial similarity "is not an element of a claim of copyright infringement," and instead, "helps courts adjudicate whether copying" of original elements "actually occurred." Where there is uncontested evidence of direct copying, copying have original elements has occurred, and "substantial similarity is irrelevant." *Id.* The Ninth Circuit found that the district court properly granted summary judgment as to infringement even though there was no attempt to show substantial similarity or unlawful appropriation. *Id.* at 1153-54 ("neither Greene nor any other witness proved 'substantial similarity' between the compositions"; "no genuine issue of material fact existed as to whether copyright infringement occurred").

The law, as stated in *Norse* and *Range Road*, has repeatedly been applied to cases involving photographs, including photographs of people that were modified and turned into art in different media. *Morris*, 2013 WL 440127, at *3 (applying it to a

1   painting based on a photograph); *McGucken v. Triton Elec. Vehicle LLC*, No.

2   CV213624DMGGJSX, 2022 WL 2101725, at *5 (C.D. Cal. Mar. 21, 2022); *Krikor v.*

3   *Sports Mall, LLC*, No. CV225600DMGMRWX, 2023 WL 2372068, at *8 (C.D. Cal.

4   Jan. 24, 2023) ("It is undisputed that Sports Mall copied the Jersey Photos, so the

5   question is only whether Krikor's copyright is valid.").

6       Under *Norse* and *Range Road*, given that copying was undisputed, it was error

7   to permit the jury to consider substantial similarity.  Because the jury found that

8   Defendants' uses were not substantially similar, a new trial is warranted.

9       **C.   *Skidmore* and *Rentmeester* Did Not Involve Direct Copying.**

10       The Ninth Circuit's decisions in *Skidmore* and *Rentmeester* do not require

11   substantial similarity to be performed in this case.  Neither case involved evidence of

12   direct copying like Defendants carried out here.

13       *Skidmore* involved two famous rock-and-roll songs. *Skidmore v. Led Zeppelin*,

14   952 F.3d 1051, 1064 (9th Cir. 2020).  The plaintiff alleged that Led Zeppelin's song

15   *Stairway to Heaven* infringed portions of the plaintiff's song *Taurus*.  No evidence of

16   direct copying existed: "there [was] no direct evidence that the two bands toured

17   together, or that Led Zeppelin band members heard Spirit perform *Taurus*." *Id.*

18   Therefore, the plaintiff attempted to prove copying "circumstantially"—by showing

19   "the defendant had access to the plaintiff's work and that the two works share

20   similarities probative of copying." *Id.  Skidmore* says nothing about what must be

21   shown when there is direct evidence of copying.

22       Similarly, *Rentmeester* involved two different photographs of Michael Jordan

23   dunking a basketball.  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1122 (9th Cir. 2018).

24   The Ninth Circuit held that the defendant "borrowed only the general idea or concept

25   embodied in the photo" and that there were significant differences in background,

26   pose, lighting, and positioning of the elements.  *Id.  Rentmeester* stated that because it

27   did ***not*** involve direct copying, substantial similarity needed to be shown.  *Id.* at

28   1117, 1124 ("When the ***plaintiff lacks direct evidence*** of copying, he can attempt to

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

Glaser Weil

prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying."; "a plaintiff **who lacks direct evidence** of copying can attempt to prove that fact circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying."). *Id.* at 1117. None of these statements make sense if a plaintiff **also** had to prove substantial similarity when it was armed with evidence of direct copying.

Post-*Skidmore* and *Rentmeester*, courts confronted with direct copying have continued to apply the rules set forth in *Norse* and *Range Road*, and **not** conducted a substantial similarity or unlawful appropriation analysis. *Tolkien Tr.*, 2023 WL 9471264, at *8 (finding copyright infringement as a matter of law where there was "a plethora of evidence that Defendant knowingly appropriated countless elements" of the copyrighted work); *Ross-Nash v. Almond*, 2020 WL 6947691, at *3 (D. Nev. Oct. 28, 2020) ("There is no dispute that Almond copied Red Thread. Almond admitted to doing so. … No reasonable jury could find that Almond did not copy Red Thread. Ross-Nash has thus proven both elements of her copyright infringement claim.") (granting summary judgment without conducting an substantial similarity analysis because it would be "irrelevant"); *Oracle Int'l Corp. v. Rimini St., Inc.*, 2023 WL 4706127, at *71 (D. Nev. July 24, 2023) ("Given the direct evidence of copying presented at trial, the Court finds that it is unnecessary to perform analytic dissection to determine whether there were substantial similarities between Rimini's RSI files and Oracle's protected source code files."). All three of these cases cite *Skidmore*, and yet still declined to conduct a substantial similarity analysis.

If *Skidmore* had the changed the law regarding direct copying, these cases would have said so. Pre-*Skidmore* cases also did **not** conduct any substantial similarity analysis when there is direct copying. *ITC Textile Ltd. v. Wal-Mart Stores Inc.*, No. CV122650JFWAJWX, 2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015) ("the law is clear that in cases of direct copying, the fact that the final result of

defendant's work differs from plaintiff's work is not exonerating."); *Morris*, 2013 WL 440127, at *3 ("Copying can be shown without a substantial similarity analysis when defendants admit that they in fact copied."). A substantial similarity analysis should not have been conducted by the jury.

## IV.   FAIR USE

### A.   The Court Determined That Certain Fair Use Factors Weigh Against Fair Use as a Matter of Law.

Courts analyze the following fair use factors:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

In the summary judgment and reconsideration orders, the Court found that factors two and three—the nature of the copyrighted work and the amount and substantiality used—weigh ***against*** fair use.  ECF 160, 9-10 n.6 ("The second factor thus weighs against fair use because the Portrait is a creative work."), 12 ("The reasoning applicable to the second and third factors under the Court's analysis is also applicable to the social media posts …"); ECF 69, 23 ("The Court finds this [third] factor weighs against fair use.").  The Court also found that the Tattoo was ***not*** transformative.  ECF 160, 8 ("there is no evidence that the Tattoo is transformative.").  No factor or sub-factor was found to weigh in ***favor*** of fair use.

Thus, the fair use issues that were ***not*** decided as a matter of law are as follows: (1) under factor one, whether the social media posts and tracing are transformative; (2) also under factor one, whether Defendants' uses are commercial or for nonprofit

educational purposes; and (3) and, under factor four, the effect on the potential market for or value of the Davis Photograph.

The jury found that certain of Defendants' uses—including the social media posts containing an exact image of the Davis Photograph—were a fair use.  ECF 217, 3-4.  As discussed below, the Court should find that each of these factors also weighs against fair use as a matter of law for all of Defendants' uses.

**B.     The Court Failed to Correctly Instruct the Jury on Fair Use.**

The Court should order a new trial because the jury instructions on fair use did not inform the jury of the Court's previous rulings and are inconsistent with the Supreme Court's decision in *Google LLC v. Oracle America, Inc.*, which addresses how courts should address mixed fact/legal questions relating to fair use.

"[E]rroneous jury instructions, as well as the failure to give adequate instructions, are [] bases for a new trial."  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  Courts "must presume prejudice where an erroneous jury instruction is given."  *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1198 (9th Cir. 2019); *Fierro v. Smith*, 39 F.4th 640, 643 (9th Cir. 2022) (new trial where erroneous instruction "may have affected the verdict").

"Jury instructions must be supported by the evidence, fairly and adequately cover the issues presented, correctly state the law, and not be misleading." *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc); *Wilkerson v. Wheeler*, 772 F.3d 834, 837 (9th Cir. 2014).  When an instruction conflicts with the law, or fails to inform the jury about previous legal rulings, such instructions are erroneous and warrant a new trial.  *Richey v. I.R.S.*, 9 F.3d 1407, 1414 (9th Cir. 1993); *White v. Ford Motor Co.*, 500 F.3d 963, 974 (9th Cir. 2007); *Miller v. Republic Nat. Life Ins. Co.*, 789 F.2d 1336, 1340 (9th Cir. 1986) ("[B]ecause [the Court] incorrectly stated the law in the jury instructions regarding the duty to disclose, we reverse the judgment of the district court and remand the matter for a new trial.").

The jury instructions on fair use were misleading, did not adequately cover the

issues presented, and incorrectly stated the law.  Rather than inform the jury about the Court's fair use findings, they expressly asked the jury to evaluate and determine all of the factors.  ECF 219, 32.  Making matters worse, the jury was never instructed that they were required to accept the Court's previous rulings, which gave the jury free reign to evaluate all of the fair use factors.  Indeed, the final fair use instruction asks the court to "explore[], discuss[], and evaluate" "all" four factors.  ECF 219, 32.

The jury was correctly instructed that the Tattoo was found to be not transformative.  ECF 219 at 27.  However, on the second factor, the jury was never told that the Court determined that it weighed against fair use.  Rather, the instruction states: "[i]t is agreed that the Miles Davis Photo is creative in nature, and therefore this factor is more likely to weigh against fair use." *Id.* at 29.  This factor is not "more likely" to weigh against fair use.  The Court determined as a matter of law that this factor "weighs against fair use."  ECF 160, 9-10 n.6 (citing *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 456 (9th Cir. 2020) ("[N]either *Harper & Row* nor any principle of fair use counsels that the publication of the copyrighted work weighs in favor of fair use.")).  There was no principled reason to instruct the jury about the Tattoo's non-transformativeness under factor one, but not the Photograph's creativity weighing against fair use under factor two.

The error was repeated for the instructions for the third fair use factor, the amount and substantiality of the portion used.  Contradicting the Court's findings that this factor weighed against fair use for all of Defendants' uses (ECF 69, 23; ECF 160, 12), the instructions expressly invited the jury to find that this factor weighed in favor of fair use.  The instruction stated: "When an accused work copies little of the original work, this factor weighs in favor of fair use. … If the secondary user copies only as much as is necessary for a transformative use, then this factor will not weigh against fair use."  ECF 219, 30.  The jury was not instructed to accept the Court's ruling as a matter of law on this issue, and the Court's ruling is not even mentioned.

The errors were even more extreme for the final fair use instruction, which

16

repeatedly tells the jury to explore, evaluate, and discuss "all" four factors:

> It is up to you to decide whether ***all relevant factors, when considered fully and together, favor or disfavor fair use. All of these factors must be explored, discussed, and evaluated by you.*** No single factor is dispositive. ***Your evaluation of all factors must be weighed*** together in light of the purpose of copyright law, which is to promote the progress of science and useful arts. Some factors may weigh in favor of fair use and some against fair use. ***You must decide, after giving the factors such weight as you find appropriate*** based on the evidence and my instructions, whether or not, on balance, the defendants have shown by a preponderance of the evidence that they made a fair use.

ECF 219, 32.  This instruction fails to inform the jury to accept the Court's previous legal rulings on the fair use factors.  When Plaintiff attempted during closing arguments to inform the jury about the Court's ruling on the third factor, the Court ordered Plaintiff not to do so.  Tr., 630:16-19.

The jury's fair use instructions were incorrect, misleading, and warrant a new trial.  The instructions also contradict the Supreme Court's holding in *Google v. Oracle*, as a court in this District very recently found.  *Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. CV 20-2713-GW-SHKX, 2023 WL 9284863, at *15 n.16 (C.D. Cal. Dec. 6, 2023) (Wu, J.) (the *Sedlik* decision "inappropriately leave[s] the issue of fair use (rather than factual disputes informing application of that doctrine) to the jury, contrary to the process *Google* appears to indicate is appropriate.").  In *Google*, the Supreme Court stated that subsidiary factual determinations, such as market harm under factor four, may be left to the jury, but the "ultimate question" of fair use is a "legal question" to be decided by the court.  *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199-1200 (2021) ("fair use is a legal question for judges to decide *de novo*").  The Court should order a new trial on fair use.

### C.   Alternatively, No Reasonable Jury Could Find That the Undecided Factors, When Weighed With All Four Factors, Result in Fair Use.

#### 1.   The Social Media Posts and Tracing Are Not Transformative.

Just like the non-transformative Tattoo, Defendants' other uses, including the social media posts and tracing, are not transformative because they provide no

"critical bearing," such as comment or criticism, on the Davis Photograph itself.

The "central purpose" of this inquiry is to see "whether the new work merely supersedes the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). "The meaning of a secondary work, as reasonably can be perceived, should be considered to the extent necessary to determine whether the purpose of the use is distinct from the original, for instance, because the use comments on, criticizes, or provides otherwise unavailable information about the original." *Warhol*, 598 U.S. at 545. Where an infringer uses a photograph "simply to illustrate what that work already depicts, the infringer adds no 'further purpose or different character." *McGucken v. Pub. Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022).

In *Warhol*, the Supreme Court emphasized that to be transformative, the secondary work must have a "critical bearing" on the copyrighted work itself, not what it depicts. *Warhol*, 598 U.S. at 546-47 ("Because [the secondary work] 'has no critical bearing on' Goldsmith's photograph, the commentary's 'claim to fairness in borrowing from' her work 'diminishes accordingly (if it does not vanish).'"). Based on *Warhol*, this District recently found as a matter of law that secondary works were not transformative because they did not comment on the copyrighted photographs *themselves*, but instead, what the photographs *depicted* (i.e., celebrity homes). *Vogts v. Penske Media Corp.*, No. 222CV01153FWSPVC, 2023 WL 7107276, at *16 (C.D. Cal. Aug. 30, 2023) (granting summary judgment to plaintiff on infringement).

Here, just as the Court correctly found the Tattoo to be non-transformative, the Court should find as a matter of law that Defendants' other uses, including the social media posts and tracing, are not transformative. Defendants presented no evidence that the social media posts and tracing provide any "critical bearing" on the Davis Photograph. Rather, Defendants used the Davis Photograph so that they could make a "100%" copy of it, and they succeeded in their efforts. Tr., 412:13-18, 424:8-10; Exs.

18

Glaser Weil

337, 338.  The lightbox tracing was made by tracing over the Davis Photograph, and

Kat Von D used it to transfer the image to her client's arm.  Tr., 416:14-417:11.

Using a photograph as a reference for art in other media is not transformative.

*Rogers*, 960 F.2d at 309 (holding transformation of photograph into sculpture was not

fair use); *Warhol*, 598 U.S. at 529 ("[T]he owner has a right to derivative

transformations of her work.  Such transformations may be substantial, like the

adaptation of a book into a movie.").

As for the social media posts, none of the videos or images posted by

Defendants provide any "critical bearing" on the Davis Photograph, and instead, were

designed to promote Defendants and their businesses, as discussed further below.

Defendants included a caption with their posts, but "[a]dding informative captions

does not necessarily transform copyrighted works."  *McGucken*, 42 F.4th at 1158

(finding use of photographs of lakes in online article was not transformative because

the article discussed the lakes, ***not*** the photographs).  The captions must offer a

"critical bearing" on the photograph, and such commentary must be "substantial."

*Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003)

(use of still photographs and music in a 16-hour documentary not transformative

because they "serve[d] the same intrinsic entertainment value").

Here, the only discussion in the 17 social media posts regarding the Davis

Photograph was High Voltage Tattoo's response to a follower that the Tattoo was a

"100%" match of it.  Ex. 336.  This comment helps show substantial similarity, but it

does not establish a transformative use.  All other captions and comments discuss Kat

Von D, Miles Davis, or the Tattoo, ***but not the Photograph***.  Exs. 209 ("Final

#MilesDavis portrait I tattooed at @highvoltagetat"), 212 ("@thekatvond's 1st time

doing a portrait of the incomparable @MilesDavis"), 209-218, 240, 242, 338, 339.

Because there is no substantive comment on the Photograph, these are not

transformative uses.  *McGucken*, 42 F.4th at 1158-59 ("The article does not present

McGucken's photos in a new or different light.  It uses them for exactly the purpose

Glaser Weil

for which they were taken: to depict the lake. … Exploiting the beauty and intrigue of McGucken's photos in this way without adding anything new is not transformative.").

The Court should rule as a matter of law that all of Defendants' uses, including the social media and tracing, are not transformative.

### 2. All of Defendants' Uses Were Commercial in Nature.

"The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562. As a matter of law, profit is "ill-measured in dollars" or "direct economic benefit." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000); *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001). Rather, "profit" can come in the form of any "advantage" or "benefit" to the infringer, such as enhanced recognition, publicity, or following. *Worldwide Church of God*, 227 F.3d at 1118 (distribution of religious text by non-profit religious organization "at no cost" was commercial as a matter of law because the organization gained an increased following); *Society of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 61 (1st Cir. 2012) (finding commercial gain where defendant benefitted by providing, free of cost, the core text of the works to his members and gained recognition within his community); *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989) (finding commercial gain where defendant gained recognition among his peers in the profession and authorship credit).

All of Defendants' uses are commercial in nature as a matter of law. There is no evidence that Defendants' uses served a "non-profit educational" purpose. Social media is a powerful advertising tool. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (Instagram posts referencing Americans constituted "significant advertising efforts" and justified hauling Australian company into California court). Defendants repeatedly posted to **both** HVT's and Von D's social media accounts to promote themselves and their business. High Voltage Tattoo, Inc.

20

was a for-profit California corporation that posted the Tattoo numerous times to advertise their services.  Tr., 382:2-15; Exs. 212, 213, 214.  As soon as Von D started working on the Tattoo, she posted it to her accounts and linked the HVT business account.  *E.g.*, Exs., 203, 204, 207.  She testified that she did so "to engage with [Defendants'] fans and followers."  Tr., 454:4-5.  On these same accounts, around the same time, she promoted her products for sale, such as music, shoes, makeup, and books, and provided actual links where followers can buy her products.  For example:



Ex. 341, 1-9; Tr., 456:6-24, 457:23-458:5, 459:4-6, 461:2-11, 462:6-11, 464:17-20. By advertising the Tattoo and other uses of the Davis Photograph on social media, Defendants attracted followers to their pages, thereby boosting their businesses.

Additionally, Kat Von D and her business HVT have tens of millions of followers across their social media accounts, including 9.7 million followers on Kat Von D's Instagram account alone.  Tr., 314:17-22, 451:16-23, 466:9-11.  Together, Defendants posted the works to their social media accounts on Facebook, Instagram, and Twitter at least 17 times, over a three-year period.  Exs. 203, 204, 207-216, 240, 242, 253, 338, 339.  Defendants received hundreds of thousands of likes and reactions to these posts, including praise for their "amazing" and "gorgeous" work.  Ex. 215, Tr., 453:5-12.  Based on seeing the Tattoo, multiple fans demonstrated an interest to get their own tattoos from Von D's business.  Ex. 207; Tr., 453:17-19 ("How long is

the wait to get a tattoo done by you?"); Ex. 215 ("Need a tat by Kat").  Accordingly, there is abundant evidence that Defendants achieved promotion, recognition, and following for their uses on social media, which is precisely the sort of commercial activity recognized as a matter of law in *Worldwide Church*.

Turning next to the Tattoo and tracing, Von D is a professional tattoo artist that has charged $1,000 to $3,000, and sometimes more, for tattoos.  Tr., 381: 21-22, 393:15-21.  Farmer's Tattoo was inked at High Voltage Tattoo, a tattoo shop she owned in West Hollywood.  HVT was the subject of a massively-popular reality television show on TLC called *L.A. Ink*, which brought Von D wealth and fame.  Tr., 383:8-24.  Other tattoo artists worked at HVT, and they would bring in paying customers wanting their own tattoos.  Tr., 394:2-14.  HVT provided employees, maintained equipment, and paid rent, and Von D received a percentage of the other artists' earnings.  Tr., 394:2-14, 474:8-10.  The employees ran HVT's social media.  Tr., 430:20-22.  Farmer testified that Defendants expected, and per their request, he tipped the shop manager, just as Von D's other clients provided a tip to the manager of $100 to $150.  Tr., 364:23-25, 350:12-18, 351:15-21, 353:6-12; Exs. 237, 238, 239.

As a fully-functioning tattoo business, HVT's activities, and those of its owner Von D, were commercial in nature as a matter of law.  That Von D declined to charge Farmer for the Tattoo does not render these plainly commercial uses nonprofit educational in nature.  Tr., 364:23-25.  Defendants made the Tattoo, knowing they would broadcast it on social media where it would draw attention and promote the sale of their products and services.  Tr., 452:16-20, 455:12-18.

The Ninth Circuit has held that a defendants' subjective feelings about an obviously commercial operation are irrelevant.  In *Leadsinger, Inc. v. BMG Music Pub.*, the infringer, a manufacturer of karaoke devices, argued that its use of copyrighted song lyrics was non-commercial because the devices had the "potential to teach singing," "help[ed] consumers to understand the song lyrics," and "facilitate[d] parental control over objectionable song words." 512 F.3d 522, 530 (9th Cir. 2008).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

Glaser Weil

The Ninth Circuit rejected the infringer's arguments, holding as a matter of law that their "basic purpose remain[ed] a commercial one—to sell its karaoke devices for profit" and that the end-user's specific "utilization" was "irrelevant." *Id.*

Defendants' "basic purpose" is a commercial one—to promote themselves, sell their products and services, and boost their business.  HVT is nothing but a business.  Defendants did not submit any evidence that their uses were for nonprofit educational purposes.  All of Defendants' uses are commercial as a matter of law.

### 3. The Harm To Sedlik's Potential Market Was Immense.

The Court should find as a matter of law that the fourth factor weighs against fair use.  The fourth factor considers "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107 (4).  Defendants, "as the proponent of the affirmative defense of fair use, must bring forward favorable evidence about relevant markets." *McGucken*, 42 F.4th at 1163.  "To negate fair use," Plaintiff "need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work."  *Id.*

In *McGucken*, the Ninth Circuit noted that "the record reflects little direct evidence of actual market harm."  *Id.*  In fact, the only evidence of direct market harm was licensing that occurred "after" the infringement had occurred.  Similarly, in *VHT*, the plaintiff had **never** before licensed its photos for use on a database like the infringer's, but it was "actively exploring" the possibility.  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 744 (9th Cir. 2019).  Nonetheless, in both cases, the Ninth Circuit ruled as a matter of law that the fourth factor weighed against fair use, because the fourth factor considers the "potential market" for the copyrighted work.

Here, Plaintiff produced overwhelming evidence of a decades-long, currently-active licensing market for the Davis Photograph, as well as his other photographs.  Plaintiff makes his living by selling and licensing his photographs, and his website includes a license offering for photographs in all manner of media, including tattoos and other artist reference uses.  Ex. 280; Tr., 164:2-6.  Plaintiff has sold fine art poster

prints of the Davis Photograph through his website.  Ex. 251; Tr., 156:18-157:4.

Plaintiff presented numerous licenses of the Davis Photograph as an artist reference, including to a town in France to build a sculpture, to Jay Johansen (a painter), another JAZZIZ magazine cover in 2019, and Bryan Vanegas (a tattoo artist).  Exs. 321, 322, 326, 332; Tr., 175:17-21, 176:6-20, 202:8-13, 305:13-23.  The Johansen license is currently producing royalties for Plaintiff and is on track to generate over $85,000.  Tr., 178:8-11.  The 2019 license with JAZZIZ included a royalty of $18,150 for its uses of the Davis Photograph.  Ex. 326.  Plaintiff testified that he has licensed the Davis Photograph for use in album covers, CDs, movies, T-shirts, hoodies, neckties, press kits for news media, music videos, and even to a museum for an exhibition of a mural-sized print of the Photograph.  Tr., 292:8-295:16.

As these licenses show, Plaintiff licenses his photograph to be used in a variety of different media.  *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) (finding harm to potential market for derivative works of Dr. Seuss' book, including movies and toys, particularly in light that Seuss collaborated with other artists).  Before filing his lawsuit, Plaintiff even reached out to Von D's business manager about the possibility of taking a license.  Tr., 239:25-240:7; Ex. 11.

A market clearly exists to reproduce, distribute, and display the Davis Photograph pursuant to a license.  That Plaintiff choose to waive the customary $5,000 license fee for one licensee does not tip this factor in favor of Defendants.  The factor considers "the *potential* market," not only the past market.  Plaintiff testified that, based on his positive interactions with that licensee, Bryan Vanegas, Plaintiff decided to waive his fee, but still required attribution on any of Vanegas's uses in the future.  Tr., 200:4-201:11.  Plaintiff further testified that he calculates his fee based on the number of the licensee's social media followers, and unlike Defendants, Vanegas had extremely few followers.  Tr., 305:18-306:8.

Plaintiff's decision does not erase his decades-long history and current activity in licensing the Davis Photograph.  *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1181

(9th Cir. 2012) ("The potential market for the photos exists independent of the [plaintiff's] present intent, and the district court's decision to the contrary was error."); *Dr. Seuss Enterprises*, 983 F.3d at 461 ("[The plaintiff] certainly has the right to the artistic decision not to saturate those markets with variations of their original, and [he] has the right to change [his] mind.").

Just as in *McGucken*, if unlicensed uses, such as Defendants', were carried out in a "widespread and unrestricted fashion," it "would destroy" Plaintiff's "licensing market." *McGucken*, 42 F.4th at 1163; *Warhol*, 598 U.S. at 535 (recognizing that "a photographer may also license her creative work to serve as a reference for [another] artist" in different media).  No one would take a license to use the Davis Photograph, including as an artistic reference, if they could do so for free.  As the Court previously found, tattoo artists are not "immune" from copyright law.  ECF 69, 20, 24, n.4 Tattoo artists use flash books, where, in exchange for purchasing the book, the artist is given permission to use the designs in the book as a reference.  Tr., 390:1-3; Ex. 308.  Defendants' unlicensed use of the Davis Photograph will embolden others to exploit the Davis Photograph and other photographs protected by copyright.

For the reasons, the fourth factor weighs against fair use as a matter of law.

### 4. Overall Weighing of the Factors

Courts routinely decides all fair use factors as a matter of law and grant judgment in the copyright owner's favor.  *McGucken*, 42 F.4th at 1164; *VHT*, 918 F.3d at 744.  Each of the fair use factors weighs decisively in Plaintiff's favor—none of the uses was transformative, Defendants' uses were not transformative, were for commercial purposes, and caused potential market harm to Plaintiff.  Thus, Defendants have failed to carry their burden of showing fair use.

## V. CONCLUSION

Plaintiff respectfully requests JMOL on the issue of substantial similarity.  On the issue of fair use, Plaintiff requests JMOL, or alternatively, a new trial.  If any of Plaintiff's requests are granted, a new trial on damages is also necessary.

DATED: February 27, 2024

GLASER WEIL FINK HOWARD
 JORDAN & SHAPIRO LLP

By:  */s/ Robert E. Allen*
ROBERT E. ALLEN
LARA A. PETERSEN
JASON C. LINGER

*Attorneys for Plaintiffs*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL