1    GRODSKY, OLECKI & PURITSKY LLP
     Allen B. Grodsky (SBN 111064)
2    *allen@thegolawfirm.com*
3    Tim B. Henderson (SBN 281159)
     *tim@thegolawfirm.com*
4    11111 Santa Monica Boulevard, Suite 1070
     Los Angeles, California 90025
5    Telephone:  (310) 315-3009
6    Facsimile:   (310) 315-1557

7    Attorneys for Defendants
     Katherine Von Drachenberg, Kat Von D, Inc.,
8    and High Voltage Tattoo, Inc.

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        WESTERN DIVISION

13

14   JEFFREY B. SEDLIK, an individual;      Case No. 2:21-cv-01102-DSF-MRWx

15                Plaintiff,                 Before the Hon. Dale S. Fischer,
                                             U.S. District Judge
16         vs.
                                             **DEFENDANTS' OPPOSITION TO**
17   KATHERINE VON                           **PLAINTIFF'S RENEWED MOTION**
     DRACHENBERG (a.k.a. "KAT                **FOR JUDGMENT AND REQUEST**
18   VON D"), an individual; KAT             **FOR A NEW TRIAL**
     VON D., INC., a California
19   corporation; HIGH VOLTAGE              Hearing Date:   April 1, 2024
     TATTOO, INC., a California             Time:           1:30 p.m.
20   corporation; and DOES 1 through 10,    Place:          Courtroom D
     inclusive,
21
22                Defendants.               Action filed:   February 7, 2021
23                                          Trial:          January 23, 2024

24

25

26

27

28

# **TABLE OF CONTENTS**

1. INTRODUCTION ........................................................... 8

2. THE RENEWED MOTION FOR JUDGMENT SHOULD BE DENIED..... 8

  A. Because Plaintiff Did Not Make A Rule 50(a) Motion
    On Fair Use, He Cannot Bring A Renewed Rule 50(b)
    Motion On That Issue ............................................................ 8

  B. Plaintiff's Rule 50(b) Motion On Substantial Similarity Fails............. 9

    (1) This Court Should Not Second Guess The Jury's
      Application of The Intrinsic Test................................... 9

    (2) There Is Sufficient Evidence To Support The Jury's
      Finding On The Extrinsic Test ................................... 11

      (a) Tattoo................................................. 13

      (b) Messy Progress Posts ................................... 16

      (c) Line Drawing................................................. 17

      (d) Kat Von D at Light Box Post .......................... 17

    (3) Plaintiff's Argument That the Extrinsic and Intrinsic Tests
      Do Not Apply Here Is Still Wrong............................... 18

3. PLAINTIFF'S MOTION FOR NEW TRIAL FAILS ................................. 20

  A. The Jury's Verdict On Substantial Similarity Is Not Against The
    Weight Of The Evidence ...................................................... 21

  B. Plaintiff's Motion For New Trial As To The Verdict On Fair Use
    Should Be Denied ............................................................. 21

    (1) The Jury's Only Verdict On Fair Use Was As To The Process
      Social Media Posts....................................................... 21

1
2

# TABLE OF CONTENTS
(Continued)

(2)   The Fair Use Instructions Provide No Basis For A
      New Trial ................................................................... 22

(3)   The Fair Use Verdict Is Not Against The Weight Of The
      Evidence .................................................................... 25

      (a)   The First Factor Weighs In Favor of Fair Use .............. 25

            (i)   Commerciality ...................................... 26

            (ii)  Transformativeness ............................... 28

      (b)   The Fourth Factor Weighs In Favor Of Fair Use ........... 30

      (c)   Weighing of Fair Use Factors ........................ 32

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

3

**Cases:**                                                                                      **Pages:**

4

5

*Andersson v. Sony Corp.*,
    1997 WL 226310 (S.D.N.Y. May 2, 1997) ................................................. 13

6

7

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023) ........................................................................26, 28, 29

8

9

*Antonick v. Elec. Arts, Inc.*,
    841 F.3d 1062 (9th Cir. 2016)................................................................. 10, 11

10

11

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994)................................................................... 10, 12

12

13

*Bell v. Moawad Grp., LLC*,
    326 F. Supp. 3d 918 (D. Ariz. 2018)............................................................ 26

14

15

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)........................................................................ 31

16

17

*Bulgo v. Munoz*,
    853 F.2d 710 (9th Cir. 1988)........................................................................ 24

18

19

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ................................................................24, 25, 30, 31

20

21

*Chuman v. Wright*,
    76 F.3d 292 (9th Cir. 1996)......................................................................... 22

22

23

*Clem v. Lomeli*,
    566 F.3d 1177 (9th Cir. 2009)...................................................................... 22

24

25

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005)....................................................................... 22

26

27

*Deland v. Old Rep. Life Ins. Co.*,
    758 F.2d 1331 (9th Cir. 1984)...................................................................... 25

28

1
2

### TABLE OF AUTHORITIES
(Continued)

3
4
*Downing v. Abercrombie & Fitch,*
265 F.3d 994 (9th Cir. 2001)...........................................................................13

5
6
*Escriba v. Foster Poultry Farms, Inc.,*
743 F.3d 1236 (9th Cir. 2014)............................................................................9

7
8
*Ets-Hokin v. Skyy Spirits, Inc.,*
225 F.3d 1068 (9th Cir. 2000).........................................................................16

9
10
*Fiorito Bros. v. Fruehauf Corp.,*
747 F.2d 1309 (9th Cir. 1984).........................................................................22

11
12
*Floyd v. Laws,*
929 F.2d 1390 (9th Cir. 1991).........................................................................22

13
14
*Friedman v. Guetta,*
2011 WL 3510890 (C.D. Cal. May 27, 2011) ...........................................19, 20

15
16
*Freund v. Nycomed Amersham,*
347 F.3d 752 (9th Cir. 2003)..............................................................................8

17
18
*Gray v. Hudson,*
28 F.4th 87 (9th Cir. 2022)...............................................................................10

19
20
*Hannley v. Mann,*
2023 WL 3407183 (C.D. Cal. Mar. 8, 2023) .............................................26, 27

21
22
*Harper v. City of Los Angeles,*
533 F.3d 1010 (9th Cir. 2008).............................................................................9

23
24
*Harper & Row Publishers, Inc. v. Nation Enterprises,*
471 U.S. 539 (1985) ...............................................................................26, 27, 32

25
26
*Kelley v. Morning Bee, Inc.,*
2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023).............................................29, 30

27
28
*Kelly v. Arriba Soft Corp.,*
336 F.3d 811 (9th Cir. 2003).............................................................................30

## TABLE OF AUTHORITIES
(Continued)

*Krikor v. Sports Mall, LLC*,
   2023 WL 2372068 (C.D. Cal. Jan. 24, 2023) ................................................ 19

*Madrigal v. Allstate Ins. Co.*,
   215 F. Supp. 3d 870 (C.D. Cal. 2016)........................................................... 22

*McGucken v. Pub Ocean Ltd.*,
   42 F.4th 1149 (9th Cir. 2022)........................................................................ 32

*McGucken v. Triton Elec. Vehicle LLC*,
   2022 WL 2101725 (C.D. Cal. Mar. 21, 2022) .............................................. 19

*McGuinn v. Crist*,
   657 F.2d 1107 (9th Cir. 1981)....................................................................... 24

*Mike Deodato Photography LLC v. Kate Spade, LLC*,
   388 F. Supp.2d 382 (S.D.N.Y. 2005)............................................................ 16

*Molski v. M.J. Cable, Inc.*,
   481 F.3d 724 (9th Cir. 2007).......................................................................... 20

*Morris v. Guetta*,
   2013 WL 440127 (C.D. Cal. Feb. 4, 2013).................................................... 19

*Norse v. Henry Holt & Co.*,
   991 F.2d 563 (9th Cir. 1993).......................................................................... 19

*O'Neil v. Ratajkowski*,
   563 F. Supp. 3d 112 (S.D.N.Y. 2021)........................................................... 27

*Oriol v. H&M Hennes & Mauritz L.P.*,
   2014 WL 12589636 (C.D. Cal. Feb. 10, 2014).............................................. 13

*Pavao v. Pagay*,
   307 F.3d 915 (9th Cir. 2002)............................................................................ 9

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012).................................................................. 18, 19

1
2

**<u>TABLE OF AUTHORITIES</u>**
(Continued)

3
4

*Reece v. Island Treasures Art Gallery, Inc.,*
    468 F. Supp. 2d 1197 ................................................................. 17

5
6

*Reed v. Lieurance,*
    863 F.3d 1196 (9th Cir. 2017) ..................................................... 11

7
8

*Rentmeester v. Nike, Inc.,*
    883 F.3d 1111 (9th Cir. 2018) ............................... 10, 12, 13, 16, 18

9
10

*Ross-Nash v. Almond,*
    2020 WL 6947691 (D. Nev. Oct. 28, 2020) ................................. 19

11
12

*Sandoval v. New Line Cinema Corp.,*
    147 F.3d 215 (2d Cir. 1998) .................................................. 18, 19

13
14

*Seltzer v. Green Day, Inc.,*
    725 F.3d 1170 (9th Cir. 2013) ..................................................... 30

15
16

*Skidmore v. Led Zeppelin,*
    952 F.3d 1051 (9th Cir. 2020) ................................................ 9, 10

17
18

*Swirsky v. Carey,*
    376 F.3d 841 (9th Cir. 2004) ....................................................... 10

19
20

*Talavera v. Glob. Payments, Inc.,*
    2023 WL 3080701 (S.D. Cal. Apr. 25, 2023) ............................. 20

21
22

*Three Boys Music Corp. v. Bolton,*
    212 F.3d 477 (9th Cir. 2000) ....................................................... 10

23
24

*Tolkien Tr. v. Polychron,*
    2023 WL 9471264 (C.D. Cal. Dec. 14, 2023) ...................... 19, 20

25
26

*Tortu v. Las Vegas Metro. Police Dep't,*
    556 F.3d 1075 (9th Cir. 2009) ....................................................... 8

27
28

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n,*
    953 F.3d 638 (9th Cir. 2020) ....................................................... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
(Continued)

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ......................................................................... 11

*United States v. Hui Hsiung*,
    778 F.3d 738 (9th Cir. 2015) ........................................................................ 23

*Venegas v. Wagner*,
    831 F.2d 1514 (9th Cir. 1987) ..................................................................... 20

*Vogts v. Penske Media Corp.*,
    2023 WL 7107276 (C.D. Cal. Aug. 30, 2023) ............................................ 29

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) ..................................................................... 10

## RULES:

Federal Rule of Civil Procedure, Rule 50 ........................................................ *passim*

## OTHER AUTHORITIES:

4 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.05[A][4] (2019) ........... 31

1

1.    **INTRODUCTION.**

2          Plaintiff's renewed motion for judgment and request for a new trial are

3    procedurally and substantively flawed and should be denied.

4          His Rule 50(b) motion impermissibly seeks judgment on fair use even though

5    he didn't raise fair use in his Rule 50(a) motion.  He seeks judgment on substantial

6    similarity without making any effort to show that he satisfied the Ninth Circuit's

7    intrinsic or extrinsic tests (both of which he must prove), and without construing the

8    evidence in a light most favorable to Defendants as he must.  Plaintiff cannot show

9    that the evidence permits only one reasonable conclusion and that such conclusion

10   is contrary to the jury's verdict and the motion must therefore be denied.

11         His motion for new trial is equally flawed.  He complains about a jury

12   instruction *his lawyer* jointly proposed, and about the jury deciding the fair use

13   issue *as requested by his lawyer*.  He also fails to show that the jury's verdict on

14   substantial similarity or on the sole fair use issue the jury decided was against the

15   great weight of the evidence.  His new trial motion should also be denied.

16
17   2.    **THE RENEWED MOTION FOR JUDGMENT SHOULD BE DENIED.**

     A.    **Because Plaintiff Did Not Make A Rule 50(a) Motion On Fair Use,**
18          **He Cannot Bring A Renewed Rule 50(b) Motion On That Issue.**
19
20         Plaintiff purports to make a renewed motion for judgment on both substantial

21   similarity and fair use as to all challenged uses.  But he cannot do so.

22         "A Rule 50(b) motion may be considered only if a Rule 50(a) motion for

23   judgment . . . has been previously made." *Tortu v. Las Vegas Metro. Police Dep't*,

24   556 F.3d 1075, 1081 (9th Cir. 2009).  Moreover, "[b]ecause it is a renewed motion,

25   a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the

26   pre-deliberation Rule 50(a) motion."  Thus, a party cannot "raise arguments in its

27   post-trial motion for judgment . . . that it did not raise in its preverdict Rule 50(a)

28   motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

Plaintiff moved pre-verdict for judgment as to substantial similarity but not as to fair use.  (Declaration of Allen B. Grodsky ("Grodsky Decl."), Ex. B, p. 467:5-24, Ex. C, pp. 535:25-536:7.)  Therefore, Plaintiff cannot bring a renewed motion under Rule 50(b) on the issue of fair use.

### B.    Plaintiff's Rule 50(b) Motion On Substantial Similarity Fails.

"A renewed motion for JMOL is properly granted 'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014), *citing*, *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

On a Rule 50(b) motion, the court "must not weigh the evidence."  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008).  Rather, the Court "should simply ask whether the [nonmoving party] has presented sufficient evidence to support the jury's conclusion." *Id*.  In so doing, the court must "draw all reasonable inferences in favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Id*.

While Plaintiff's motion insists that "no reasonable jury" could have found that his photograph was not substantially similar to the tattoo and other challenged works, the motion at no point analyzes the relevant tests for determining substantial similarity of a photograph to other works and impermissibly construes the evidence in Plaintiff's favor.  But when the facts presented at trial are applied to the Ninth Circuit's intrinsic and extrinsic tests, it becomes clear that there was sufficient evidence for a jury to have found Plaintiff did not carry his burden on *either* test.

### (1)    This Court Should Not Second Guess The Jury's Application Of The Intrinsic Test.

In the Ninth Circuit, to prove that defendant's work is substantially similar to plaintiff's copyrighted work, a plaintiff must satisfy both the intrinsic test and the extrinsic test. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

1       The intrinsic test "test[s] for similarity of expression from the standpoint of

2   the ordinary reasonable observer, with no expert assistance."  *Apple Computer, Inc.*

3   *v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994), *cert. denied*, 513 U.S. 1184

4   (1995).  It "requires a more holistic, subjective comparison of the works to

5   determine whether they are substantially similar in 'total concept and feel.'"

6   *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *cert. denied*, 139

7   S.Ct. 1375 (2019).[1]

8       The Ninth Circuit has made very clear that reviewing courts should not

9   second guess a jury's application of the intrinsic test.  *Williams v. Gaye*, 895 F.3d

10   1106, 1127 (9th Cir. 2018), *quoting*, *Three Boys Music Corp. v. Bolton*, 212 F.3d

11   477, 485 (9th Cir. 2000) ("[W]e are generally reluctant to disturb the trier of fact's

12   findings, and have made clear that [w]e will not second-guess the jury's application

13   of the intrinsic test.'").  *See also Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir.

14   2004)("the subjective question whether works are intrinsically similar must be left

15   to the jury").

16       The primary case on which Plaintiff relies makes this very point.  In *Gray v.*

17   *Hudson*, 28 F.4th 87, 97 (9th Cir. 2022), the Ninth Circuit affirmed the trial court's

18   Rule 50 order vacating a jury's verdict for the plaintiff on copyright infringement

19   on the ground that, as a matter of law, plaintiff failed to satisfy the *extrinsic* test.

20   The Ninth Circuit emphasized that review of a jury's decision on the extrinsic test

21   is different than review of its decision on the intrinsic test:  "the intrinsic test for

22   substantial similarity is 'uniquely suited for determination by the trier of fact'

23   because of its focus on the lay listener, and so 'this court must be reluctant to

24   reverse' a jury's finding that two works are intrinsically similar."  *Id.* at 97.[2]

---

25       [1]    *Rentmeester* was overruled on other grounds in *Skidmore*, 952 F.3d 1051.

26   [2]    Plaintiff also relies on *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1066 (9th

27   Cir. 2016), which is completely inapposite.  In *Antonick*, the Ninth Circuit affirmed
the grant of a Rule 50 motion *because the alleged infringing work was not in*

28   *evidence* and "[t]he jury therefore could not compare the works" and could not then

-10-

And there is no reason to second-guess the jury's application of the intrinsic test here.  This Court already looked at this issue in denying Plaintiff's summary judgment motion and held that "a reasonable juror applying the intrinsic test could conclude that the works are not substantially similar in concept and feel."  (Dkt. 69, p. 16.)  "The standard for judgment as a matter of law . . . 'mirrors' the summary judgment standards."  *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).  Therefore, this Court has already concluded that a reasonable jury could have found that Plaintiff failed to satisfy the intrinsic test as to any of the challenged uses.[3]

The jury here had all the evidence needed to determine whether Plaintiff satisfied the intrinsic test:  Sedlik's photograph, the tattoo itself, the line drawing, and the challenged social media posts.  A reasonable jury could have found that Plaintiff failed to satisfy the intrinsic test as to each of the challenged uses.  Therefore, the Court need not even examine whether Plaintiff satisfied the extrinsic test and Plaintiff's renewed motion for judgment should be denied.

### (2)   There Is Sufficient Evidence To Support The Jury's Finding On The Extrinsic Test.

If there was sufficient evidence for the jury to have found in Defendants' favor on the intrinsic test, that ends the discussion and the motion must be denied.  But it is equally true that there was sufficient evidence for the jury to have found in

---

have found in favor of Plaintiff on the intrinsic test.  *Id.*  Since the accused infringements were in evidence here, *Antonick* is irrelevant.

[3]   Plaintiff cites one case in which the Ninth Circuit affirmed the grant of summary judgment for a plaintiff in a copyright case, noting that "in exceptional cases, works may be so identical that summary judgment in favor of a plaintiff is warranted."  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 986-87 (9th Cir. 2017).  That may be true, but this is obviously not such a case, given that the Court already found that "a reasonable juror applying the intrinsic test could conclude that the works are not substantially similar." (Dkt. 69, p. 16.)

favor of Defendants on the extrinsic test and that provides an independent reason for this motion to be denied.

The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression. *Rentmeester*, 883 F.3d at 1118. While photographs "can be broken down into objective elements that reflect the various creative choices the photographer made in composing the image—choices related to subject matter, pose, lighting, camera angle, depth of field, and the like," "none of those elements is subject to copyright protection when viewed in isolation." *Id*. at 1119.

Therefore, "[w]hat is protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements." *Id.* "If sufficiently original, the combination of subject matter, pose, camera angle, etc., receives protection, not any of the individual elements standing alone." *Id.* It is Plaintiff's burden to identify those otherwise unprotected elements. *Apple Computer,* 35 F.3d at 1443. There is not "a well-defined standard for assessing when similarity in selection and arrangement becomes 'substantial,' and in truth no hard-and-fast rule could be devised to guide determinations that will necessarily turn on the unique facts of each case." *Rentmeester*, 883 F.3d at 1121

In their renewed motion for judgment, Plaintiff addresses none of this controlling law, does not identify the individual non-protectible elements, the combination of which he claims is protectible, and fails to analyze the challenged works separately. Rather his motion is a hodge-podge of "facts" from the case (many which are misstated) and citation to cases that do not apply the controlling tests. As shown below, the evidence does not permit only one conclusion under the extrinsic test and there was sufficient evidence for the jury to conclude that the extrinsic test favored Defendants as to each of the challenged uses.

### (a)   <u>Tattoo</u>.

In applying the extrinsic test to the tattoo we start with the principal that the general idea of Miles Davis making a "Shhh!" symbol with his fingers is an unprotectible idea. *Rentmeester*, 883 F.3d at 1122-23. *See also Oriol v. H&M Hennes & Mauritz L.P.,* 2014 WL 12589636, at *1 (C.D. Cal. Feb. 10, 2014) (idea of "a person making the LA sign with their fingers" "cannot be copyrighted only the expression thereof"); *Andersson v. Sony Corp.*, 1997 WL 226310, at *3 (S.D.N.Y. May 2, 1997) ("a photographer cannot monopolize a pose").

Similarly, Miles Davis's appearance is not protectible. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. 2001) ("A person's . . . likeness is not a work of authorship. . . notwithstanding the fact that Appellants' names and likenesses are embodied in a copyrightable photograph").

It was Plaintiff's burden to prove that the photograph and the tattoo *express* the idea of Miles Davis making the "Shhh!" symbol using substantially similar creative choices. And the "tattoo" that should be compared to the photograph is not the incomplete photo of the tattoo that cuts off the left side and top of the tattoo (upon which Plaintiff relies exclusively). (*See* Dkt. 234-1, p. 5.) To the contrary, what must be compared is the photograph to the *actual tattoo on Farmer's arm*.[4]

When the photograph and the actual tattoo are examined, it is clear, that like in *Rentmeester*, Kat Von D "made [her] own distinct choices" that "produced an image that differs from [Sedlik's] photo in more than just minor details." *Rentmeester*, 883 F.3d at 1121. Though they "embody a similar idea or concept, they express it in different ways." *Id.* at 1122.

---

[4]     The Court and the jury were able to inspect Farmer's tattoo. (Ex. B, pp. 365:1-18, 372:16.) The closest thing in the record to the actual tattoo is the video file showing the tattoo from all angles. (Trial Ex. 217.) Screenshots from that video showing various views of the tattoo are submitted as Exhibit E to the Grodsky Declaration.

1    The best evidence of the difference in Kat Von D's choices regarding

2    selection and arrangement that created different expression is a comparison of the

3    actual tattoo and the photograph. (*Compare* Ex. E *with* Trial Ex. 1.)  Based on that

4    comparison alone, the Court identified in its summary judgment order differences

5    that "a reasonable jury could find to be more than de minimis." (Dkt. 69, pp. 15-

6    16.)  The different choices in selection and arrangement were underscored by Kat

7    Von D in her testimony at trial.  Those different choices include the following:

8    - Differences in the hairline and hair.  (Ex. B, pp. 426:10-17 ("The

9    hairline is different because it's my interpretation of telling the story"),

10   427:3-12 ("I think that's one of the big parts that is . . . not very similar

11   at all"), Ex. C, p. 517:8-21("creating a lot of my own hair"); Dkt. 69,

12   p. 16 (noting differences in "the hairline and flowing hair on Davis's

13   head");

14   - The free hand shading which reflected Kat Von D's interpretation of

15   the lighting and highlights on Davis's face.  (Ex. B, pp. 422:2-6,

16   431:8-432:1); Dkt. 69, p. 16 (noting differences in "the light and

17   shading on Davis's face");

18   - The eyes – where Sedlik's reflection is visible in the photograph but

19   not in the tattoo.  (Ex. B, pp. 488:25-489:19: "if you zoom in on the

20   eye, there's -- you don't see Mr. Sedlik in the reflection");

21   - The clothing, none of which is included in the tattoo.  (Ex. B, pp.

22   488:25-489:19, 492:16-493:8);

23   - The jawline which "is a definite interpretation and does not match the

24   photograph itself as well as the shoulder."  (Ex. B, pp. 492:16-493:8);

25   - The wrist, which "instead of like fully polishing and rendering it," Kat

26   Von D "just wanted to make it more abstract and give . . . almost like a

27   watercolor feeling."  (Ex. B, pp. 492:13-493:8); and

28

-14-

- Differences in the background (Ex. B, pp. 420:12-22: "I did a bunch of texture and movement around it . . . not included in the original photo," 491:7-492:3: "I started putting like the negative space and you see like that texture that kind of is a little bit smoky"; Dkt. 69, p. 16.)

Ignoring the substantial evidence of different creative choices made by Kat Von D that result in a difference in expression, Plaintiff instead focuses on supposed "admissions" in Kat Von D's testimony as to certain similarities between the tattoo and photograph. In many cases, Plaintiff simply misstates her testimony,[5] or misconstrues it.[6] He also relies on a comment made by an unknown person at High Voltage on one of the Instagram posts, a comment Kat Von D testified she disagreed with. (Ex. B, p. 420:15-22, 427:13-16.) The comment of an unknown High Voltage employee does not trump Kat Von D's testimony or the differences made clear by comparing the tattoo (Ex. E) with the photograph (Trial Ex. 1.)

Other similarities focused on by Plaintiff just don't matter. For example, Plaintiff quotes Kat Von D as stating that Davis's fingers in the tattoo are arranged the same as in the photograph. But there are only so many ways one can make the "Shhh!" sign with one's hand. The placement of the hand "necessarily flows from [the] commonplace idea [of the Shhh! symbol]," and is thus not protectible. *See*

---

[5]    For example, Kat Von D did not testify that the difference between the tattoo and photograph "appear only when you get 'microscopic with the details.'" Rather, she testified that *she* "didn't get microscopic with the details" when describing how she made different choices than Sedlik. (*Compare* Dkt. 234-1, p. 7:14-15 *with* Ex. B, p. 492:4-15.) Nor did she testify, as Plaintiff inaccurately states, that the reason Davis's shoulders do not appear in the tattoo was because her assistant cropped that part out when printing the photograph. (*Compare* Dkt. 234-1, p. 7:19-21 *with* Ex. B, p. 407:17-22.)

[6]    Plaintiff says that Defendants "admitted that they attempted to make the Tattoo as accurate as possible." (Dkt. 234-1, p. 6:13-14.) But what Kat Von D stated is that she tries "to capture the sentiment of the people that [she's] tattooing" and to make the "portrait looks as accurate *to the person* as possible." (Ex. B, p. 386:24-387:7, emphasis added.)

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000); *see also Mike Deodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp.2d 382, 393 (S.D.N.Y. 2005) ("there are few places that [a handbag] can be strategically positioned so as not to conceal the model's shoes or fade into the background").

Bottom line, it was not unreasonable for the jury to conclude that Kat Von D "made choices regarding selection and arrangement that produced an image unmistakably different from [Sedlik's] photo in material details" and that what the tattoo and photo share "are similarities in general ideas or concepts." *Rentmeester*, 883 F.3d at 1122–23. For that reason, the jury could reasonably have concluded that Plaintiff failed to satisfy the extrinsic test as to the tattoo.[7]

### (b) <u>Messy Progress Posts</u>.

The jury concluded that the Messy Progress Posts (Trial Exs. 207, 208) – social media posts showing a portion of the tattoo in an unfinished state – were not substantially similar. (Dkt. 217, p. 3.) This was in no way even a close call.

Plaintiff identified the individually unprotectible elements, the combination of which he believed was protected by copyright: placement and arrangement of Davis's fingers, the wardrobe and jewelry he selected, how he modelled Davis's jacket to affect the lighting, how he caused Davis's hair to be styled, including placing a lock over his ears, the way in which Sedlik was reflected in Davis's eyes, the furrowing of Davis's brow, the shading and shadowing created by his lighting. (Ex. A, pp. 213:6-214:16, 217:20-219:1, 220:21-222:24, Ex. B, p. 285:9-15.)

None of this can be found in the Messy Progress Posts. Davis' fingers, wardrobe and jewelry are not visible in the Posts. His eyes, brows and hair can

---

[7]    For the same reasons, the jury could reasonably have concluded that Plaintiff failed to meet his burden of proving that the social media posts depicting the final version of the tattoo (the "Final Tattoo Posts") or the Instagram story depicting Kat Von D working on the tattoo were substantially similar under the extrinsic test. (Trial Exs. 209-11, 214-16, 240, 242, 253.)

barely be seen and none of Sedlik's contributions can be found.  The lighting and shading of the Posts are nothing like Sedlik's photograph.  (Trial Exs. 207, 208.)

In no way could any reasonable person argue that the only conclusion the jury could have reached here was for Plaintiff.

### (c)   Line Drawing.

Plaintiff also challenges the jury's finding that the line drawing (Trial Ex. 202) was not substantially similar.  (Dkt. 217, p. 3.)  Again, this is not a close call.

Plaintiff testified at great length about everything he did in connection with lighting to create the shades and shadows he wanted in the photograph.  *The line drawing has no shades or shadows at all*.  There is no reflection in the eyes, no lock of hair over the ear, no brows to furrow, no wardrobe at all.  It's not at all clear what direction Davis is even looking.

A jury could reasonably have concluded that the combination of creative choices in the line drawing was not substantially similar to that in the photograph. *See Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197 (D. Haw. 2006) (though "works appear to be images of the same likeness," extrinsic test not met because the dancer in allegedly infringing stained glass "has no facial features, hand details, or muscular differentiation," "[t]he dancers' hairstyles are notably different lengths and shapes," and "the sepia tone of the photograph is markedly contrasted by the vibrant colors of the stained glass").

### (d)   Kat Von D At Light Box Post

Though he doesn't address it specifically, Plaintiff apparently challenges the jury's verdict as to the Kat Von D at the Light Box Post.  (Trial Exs. 338, 339.) These posts show a blurry version of the photograph that can barely be made out.  It is not clear what Davis's hands are doing (let alone that they are making the "Shhh!" symbol) and his hair, ear, or clothing cannot be made out.  It barely looks like Miles Davis.  *See Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 218 (2d Cir. 1998) ("defendants' copying of [Plaintiff's] photographs falls below the

quantitative threshold of substantial similarity" because "photographs as used in the movie are not displayed with sufficient detail for the average lay observer to identify even the subject matter of the photographs, much less the style used in creating them.").

Therefore, a jury could clearly reasonably conclude that Plaintiff failed to satisfy the extrinsic test as to this post.

### (3) **Plaintiff's Argument That The Extrinsic And Intrinsic Tests Do Not Apply Here Is Still Wrong**.

Presumably because he understands that it was well within reason for the jury to conclude that he failed to carry his burden on the extrinsic or intrinsic tests, Plaintiff argues yet again that he is exempt from having to comply with these tests because there was "direct copying."  He raised this identical argument unsuccessfully on his summary judgment motion and motion for reconsideration. (Dkt. 160, pp. 3-4 n.3: "This repeats an argument Sedlik made in his motion for summary judgment. . . Plaintiff's argument is unpersuasive").

The Court rejected this argument a third time in connection with the jury instructions, noting that "Plaintiff continues to confuse [the] two concepts" of "the degree of similarity relevant to proof of copying and the degree of similarity necessary to establish unlawful appropriation" and that "[w]hile no substantial similarity analysis is needed to prove copying when it is admitted, it is still necessary to prove unlawful appropriation."  (Grodsky Decl. ¶ 7; Ex. F (1/23/24 version of court jury instructions), pp. 33-34.)  *See also Rentmeester*, 883 F.3d at 1117 ("Proof of unlawful appropriation—that is, illicit copying—is necessary because copyright law does not forbid all copying.").

That is why Plaintiff has been unable to find a single case where a court holds that the extrinsic and intrinsic tests need not be satisfied *where there is an issue as to whether protectible elements have been copied*.  Plaintiff continues to cite to *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th

Cir. 2012) and *Norse v. Henry Holt & Co.,* 991 F.2d 563, 566 (9th Cir. 1993), even though, as this Court has explained "[i]n both *Norse* and *Range Road* it was indisputable that copyrightable original expression was used." (Ex. F, p. 34.) He also cites several other cases which, like *Norse* and *Range Road,* do not involve any issue as to whether protectible elements were copied and are thus inapposite.[8]

Moreover, in the two cases that Plaintiff cites that do involve issues of whether protectible elements were copied, the courts do the *exact opposite of what Plaintiff claims to be the rule*. For example, Plaintiff cites *Tolkien Trust  v. Polychron*, 2023 WL 9471264, at *3 (C.D. Cal. Dec. 14, 2023), as a case where "courts confronted with direct copying have    . . . *not* conducted a substantial similarity or unlawful appropriation analysis." (Dkt. 234-1, p. 13:10-13.)  Except, that is not what happened.  The Court in *Tolkien* noted that the element of copying has "two sub-elements": "actual[] cop[ying]" and "unlawful appropriation."  *Id.* at *3.  On the first sub-element, the court found that there is "direct evidence of copying" and therefore the actual copying prong was satisfied.  *Id.* at *6.  <u>The Court proceeded to the second sub-element and separately concluded that the works shared substantial similarities and that defendant "unlawfully appropriate[d] Plaintiffs' works</u>."  *Id.* at *8.  In other words, the *Tolkien* Court is an example of a case showing that Plaintiff's three-times-rejected theory is flat out wrong.

Plaintiff also cites *Friedman v. Guetta*, 2011 WL 3510890, at *3 (C.D. Cal. May 27, 2011), another case where the defendant admitted direct copying.  *Id*. at

---

[8]    *See, e.g., Krikor v. Sports Mall, LLC*, 2023 WL 2372068, at *1 (C.D. Cal. Jan. 24, 2023) (defendant took photos from one website and posted them on his own: <u>no issue of whether protectible elements were copied</u>); *McGucken v. Triton Elec. Vehicle LLC*, 2022 WL 2101725, at *2 (C.D. Cal. Mar. 21, 2022) (defendant found plaintiff's photo on Google, saved it and posted it to his own website; <u>no issue of whether protectible elements were copied</u>); *Ross-Nash v. Almond*, 2020 WL 6947691, at *1 (D. Nev. Oct. 28, 2020) (sale of unauthorized copies of book; <u>no issue of whether protectible elements were copied</u>); *Morris v. Guetta*, 2013 WL 440127, at *4 (C.D. Cal. Feb. 4, 2013) (the sole argument raised by Defendants in opposition to a summary judgment motion is that Plaintiff couldn't establish ownership of copyright: <u>no issue of copying at all</u>).

*3. But because defendant argued that "the elements of the Photograph that he copied were not original," the Court proceeded to apply the two-part extrinsic and intrinsic test. *Id.  Friedman* and *Tolkien* confirm that where there is an issue of whether what was copied is protectible, the extrinsic and intrinsic test must be applied.  *See also Talavera v. Glob. Payments, Inc.*, 2023 WL 3080701 at *13 (S.D. Cal. Apr. 25, 2023) (despite "the clear evidence of copying," plaintiff must also prove "that the defendant copied 'protected elements' of the [plaintiff's] work.").

Plaintiff cannot escape his obligation to prove that *protectible* elements of his photograph were copied.  As this Court has stated, since "Defendants argue that the elements copied from the Portrait (such as Miles Davis's face) are not copyrightable," "the admitted copying does not foreclose the substantial similarity issue, because it may not be forbidden copying."  (Ex. F, p. 34.)

Given that there was sufficient evidence for the jury to conclude that Plaintiff failed to satisfy either the intrinsic or the extrinsic test, his renewed motion for judgment should be denied.

## 3.    <u>PLAINTIFF'S MOTION FOR NEW TRIAL FAILS.</u>

The trial court may grant a new trial "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

Though the exercise of discretion is involved in ruling on a new trial motion, "a stringent standard applies when the motion is based on insufficiency of the evidence."  *Venegas v. Wagner*, 831 F.2d 1514, 1518-19 (9th Cir. 1987).  A new trial motion may be granted on insufficiency of the evidence "only if the verdict is against the 'great weight' of the evidence or 'it is quite clear that the jury has reached a seriously erroneous result.'"  *Id.*

As set forth below, the verdict here is not against the great weight of the evidence nor did the jury reach an erroneous result.  To the contrary, there was more than sufficient evidence for the jury to reach the verdict they did, and the Court did not err in the giving of jury instructions.  The new trial motion should be denied in its entirety.

### A.   The Jury's Verdict On Substantial Similarity Is Not Against The Weight Of The Evidence.

For the reasons set forth in Section 2 above, the jury's verdict as to substantial similarity is not against the weight of the evidence.

### B.   Plaintiff's Motion For New Trial As To The Verdict On Fair Use Should Be Denied.

Plaintiff asserts two separate grounds for a new trial on fair use.  He claims that the Court failed to correctly instruct the jury on fair use and that the verdict is against the weight of the evidence.  The motion should be denied on both grounds.

### (1)   The Jury's Only Verdict On Fair Use Was As To The Process Social Media Posts.

Because the jury decided that virtually all of the challenged uses were not substantially similar, it decided the issue of fair use as to only one challenged use: the social media posts showing Kat Von D in the process of inking the tattoo (the "Process Social Media Posts").  (Trial Exs. 203, 204, 212, 213; Dkt. 217, p. 3.) Since those posts visibly displayed Sedlik's entire photograph it was agreed that they were substantially similar and the jury had to decide whether they were a fair use.

It appears that the jury also answered the fair use question as to one other challenged use:  the Final Tattoo Social Media Posts.  (Dkt. 217, pp. 3-4.) However, because the jury found that the Final Tattoo Social Media Posts were not substantially similar, they were not supposed to answer that fair use question.  (Dkt. 217, p. 3:  "Skip any work for which you answered 'no' in Question No. 1.")

Case law is clear that when a jury gives "superfluous answers in violation of a trial court's express instructions contained on the special verdict form," those answers "do not constitute legitimate or viable findings of fact" and "[t]he trial court must therefore dismiss them as surplusage, as a matter of law." *Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991).

Thus, the *only* verdict on fair use is as to the Process Social Media Posts.

### (2)  The Fair Use Instructions Provide No Basis For A New Trial.

Plaintiff challenges three jury instructions and for the first time insists that the ultimate fair use question should not have been put to the jury at all.  Plaintiff's arguments are wholly meritless.

Jury instructions "must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996).  "A party is not entitled to a jury instruction phrased exactly as it desires; rather, an instruction is proper if it adequately allows the party to argue its theory of the case to the jury." *Fiorito Bros. v. Fruehauf Corp.*, 747 F.2d 1309, 1316 (9th Cir. 1984).  The ultimate question is "whether, viewing the jury instructions as a whole, the trial judge gave adequate instructions on each element of the case to insure that the jury fully understood the issues." *Id.*

However, even if an instruction was erroneous, if "the error in the jury instruction is harmless, it does not warrant reversal." *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005).  An erroneous instruction is harmless if "it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 910 (C.D. Cal. 2016), *aff'd.*, 697 F. App'x 905 (9th Cir. 2017), *quoting*, *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009).

Applying these principles, Plaintiff's challenges to the jury instructions are without merit.

**Jury Instruction No. 24**:  Plaintiff first complains that Instruction No. 24 incorrectly provides that the second fair use factor "is more likely to weigh against fair use" and should have said that it "weighs against fair use."  (Dkt. 234-1, p. 16.) But Plaintiff's counsel <u>agreed</u> to this version of the instruction, <u>which was proposed jointly</u>, and therefore cannot object to it now.  (Grodsky Decl., ¶¶ 8-10; Ex. G: 1/25/24 e-mail).  *See United States v. Hui Hsiung*, 778 F.3d 738, 747 (9th Cir.), *cert. denied*, 576 U.S. 1022 (2015)("Because the defendants were the ones who proposed the instruction in the first place, they cannot now claim that giving the instruction was error").

Furthermore, even if there was some difference between "weighs against" and "is more likely to weigh against" (and there is not), the error is harmless. During closing argument, *Defendants'* counsel repeatedly told the jury that the second factor *weighed against* a finding of fair use.  (Ex. D, pp. 666:18-667:3, 678:21-22, 679:19, 680:9, 681:2, 681:11, 681:21.)  It is inconceivable that changing "more likely to weigh against" to "weigh against" would have changed the verdict.

**Jury Instruction No. 25:**  Plaintiff also complains about Instruction No. 25 because it "[c]ontradicted the Court's findings [in its summary judgment order] that [the third fair use] factor weighed against fair use for all of Defendants' uses." (Dkt. 234-1, p. 16.)  But the Court's summary judgment decision did not "enter an order stating [that this issue on the third fair use factor] is not genuinely in dispute and treating the fact as established in the case" per FRCP 56(g).  And the Court could not have done so because the Court's summary judgment order analyzed only the Tattoo in its examination of factor 3, not the other social media posts (Dkt. 69, pp. 22-23), and the line drawing and the KVD at Light Box Post were not even at issue on either party's summary judgment motions.  (Dkt. 32, 37.)

-23-

1    In any event, it does not matter because, even if there were error, it is

2  unquestionably harmless.  The *only* fair use verdict by the jury was on the Process

3  Social Media Posts and in closing argument, *Defendants'* counsel, in arguing

4  application of the fair use factors *told the jury that factor 3 weighed <u>against</u> a*

5  *finding of fair use as to those posts*.  (Ex. D, p. 681:6-15.)

6    Given that Defendants' counsel conceded factor 3 weighed against fair use

7  for the Process Social Media Posts (and the jury never reached the fair use issue as

8  to any other challenged uses), any error was harmless.  *See McGuinn v. Crist*, 657

9  F.2d 1107, 1109 (9th Cir. 1981) ("erroneous instruction with respect to an

10  undisputed issue is harmless error"); *Bulgo v. Munoz*, 853 F.2d 710, 716-17 (9th

11  Cir. 1988) ("any error [in instruction on comparative fault] was harmless" because

12  the jury "never reached the issue of comparative responsibility").

13    **<u>Jury Instruction No. 27</u>:**  Plaintiff objects to Instruction No. 27, the

14  concluding fair use instruction, because it tells the jury to explore and evaluate all

15  four factors.  The language of this instruction comes directly from controlling case

16  law.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) ("Nor may the

17  four statutory factors be treated in isolation, one from another. All are to be

18  explored, and the results weighed together, in light of the purposes of copyright");

19  *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638,

20  652 (9th Cir. 2020) ("We weigh each of these factors in light of the Copyright Act's

21  purpose 'to stimulate artistic creativity for the general public good.'").

22    The jury was obligated to consider all factors (whether the Court found that

23  some weighed in favor or against fair use), and this instruction simply follows the

24  law.  And to the extent Plaintiff's concern again stems from the conclusion in the

25  summary judgment order that the second and third factors weighed against fair use,

26  that is precisely what Defendants' counsel told the jury regarding the sole fair use

27  decision they made – on the Process Social Media Posts.  Therefore, any error is

28  harmless.

**Jury's Decision of Ultimate Fair Use Question.**  Finally, Plaintiff argues that the issue of fair use should not have been given to the jury at all, and that under *Google LLC v. Oracle Am., Inc.*, 141 S.Ct. 1183, 1199-1200 (2021), the jury should only have determined "subsidiary factual determinations" but not the "ultimate question of fair use."  (Dkt. 234-1, p. 17.)

Plaintiff never made this argument before.  Beyond that, his counsel argued at the pretrial conference that fair use *should* be submitted to the jury.  (*See* Ex. H, (11/14/22 transcript), p. 13:2-9:  "under the last time the Supreme Court addressed this issue, which is *Oracle v. Google*, the jury is entitled to make the determination of fair use" and "your Honor would be in a position to instruct the jury on existing understanding of fair use, and under these facts, it would be their determination.")

Plaintiff also submitted jury instructions and a special verdict form on the ultimate fair use question.  (*See* Dkt. 170, no. P3; Dkt. 171-1, p. 2.)  By so doing, he invited the error and cannot object on this ground now.  *See Deland v. Old Rep. Life Ins. Co.*, 758 F.2d 1331, 1337 (9th Cir. 1985) (Appellant invited error and "will not be heard to complain on appeal," having offered a jury instruction that "permitted the jury to determine the very question [he] now argues on appeal should not have been submitted to the jury").

### (3)   The Fair Use Verdict Is Not Against The Weight Of The Evidence.

As discussed above, the jury concluded that the Process Social Media Posts constituted a fair use.  This verdict is not against the weight of the evidence.

Fair use is determined by examining four statutory factors with "the results weighed together, in light of the purposes of copyright."  *Campbell*, 510 U.S. at 578.  As noted, Defendants conceded in closing argument that the second and third factors weighed against fair use as to the Process Social Media Posts, the only challenged use for which the jury found fair use.  But the jury could reasonably have concluded that the first and fourth factors weigh in favor of a fair use finding.

1         **(a)    The First Factor Weighs In Favor Of Fair Use**.

2         Under the first factor, whether the challenged use has a "commercial nature"

3 "is to be weighed against the degree to which the use has a further purpose or

4 different character," that is, whether it is transformative. *Andy Warhol Foundation*

5 *for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 531 (2023).  Both

6 commerciality and transformativeness weigh in favor of fair use here.

7                    **(i)    Commerciality.**

8         "There is no doubt that a finding that copying was not commercial in nature

9 tips the scales in favor of fair use." *Google*, 141 S. Ct. at 1204.   In other words,

10 "[n]oncommercial or nonprofit use of a copyrighted work is presumptively fair."

11 *Hannley v. Mann*, 2023 WL 3407183, at *3 (C.D. Cal. Mar. 8, 2023).

12         In denying both the motion for summary judgment and the motion for

13 reconsideration, the Court found that there were disputes of fact as to whether the

14 challenged social media posts – which included the Process Social Media Posts –

15 were commercial.  The posts themselves and the testimony at trial confirmed those

16 posts contained no links to purchase products and did not promote any kind of

17 product.  (Trial Exs. 203, 204, 212, 213; Ex. C, pp. 520:11-521:8.)

18         In arguing yet again that Defendants' social media posts were commercial

19 "as a matter of law," Plaintiff points to the language of *Harper & Row Publishers,*

20 *Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985), that "[t]he crux of the

21 profit/nonprofit distinction is not whether the sole motive of the use is monetary

22 gain but whether the user stands to profit from exploitation of the copyrighted

23 material without paying the customary price" but fails to cite to any cases applying

24 that standard to cases involving social media posts.  There is a good reason for that:

25 such cases uniformly reject Plaintiff's position.

26         A case right on point is *Bell v. Moawad Grp., LLC*, 326 F. Supp. 3d 918,

27 926–27 (D. Ariz. 2018), in which the author of a book on sports psychology

28 brought a copyright infringement claim against a consulting firm that posted a

passage from plaintiff's book on the firm's social media accounts.  There was "no
evidence suggesting that Defendants actually profited from posting an image." *Id*.
at 926.   On the other hand, the evidence did show that these social media accounts
were "associated with a commercial enterprise" and that Defendants' "logo,
website, and business description [were] prominently displayed on the accounts."
*Id*.   Relying on the *Harper & Row* quote above, the Court denied Plaintiff's
summary judgment motion finding there was a triable issue of fact "on whether the
use was primarily for . . . marketing purposes or primarily for dispersing
inspirational information, a noncommercial use." *Id.*

Also instructive is *Hannley*, 2023 WL 3407183, in which Defendants copied
three photographs from Plaintiff's website and posted them to a website, Twitter
page, and Youtube page.  In analyzing the commerciality element of the first factor
of the fair use test, the Court quotes the same part of *Harper & Row* on which
Plaintiff relies, and then finds that the use was noncommercial because "there is no
evidence that the Twitter, website or Youtube pages generated any profits . . . ." *Id.*

Finally, in *O'Neil v. Ratajkowski*, 563 F. Supp. 3d 112, 130 (S.D.N.Y. 2021),
a professional model and actress, who heads a clothing line, posted on Instagram a
photograph of her taken by a paparazzi.  The Court relied on the same language
from *Harper & Row* discussed above and then concluded that, despite the fact that
her Instagram account is a for-profit enterprise, this particular use was only
"slightly commercial" because "Ratajkowski did not 'directly and exclusively
acquire[ ] conspicuous financial rewards from [her] use of the copyrighted
material,' as she was not paid to post this particular story. . . . . [n]or was the
infringed work displayed directly next to advertisements, or in a section almost
exclusively meant for advertisements." *Id.* at 129-30 (citations omitted).

Therefore, the language Plaintiff quotes from *Harper & Row* does not resolve
the commerciality issue as a matter of law.  Rather, consistent with the Court's
summary judgment order and these three cases, there was sufficient evidence for

the jury to conclude that these posts were not commercial, thus making the posts "presumptively fair."

### (ii)     Transformativeness.

It was not against the great weight of the evidence for the jury to conclude that the Process Social Media Posts were transformative. A use with further purpose or different character "is said to be 'transformative.'" *Warhol*, 598 U.S at 529. On the other hand, "use of an original work to achieve a purpose that is the same as, or highly similar to, that of the original work is more likely to substitute for, or 'supplan[t]' the work." *Id*. at 528.

There was more than sufficient evidence to show that the Process Social Media Posts have a different purpose and character than Sedlik's photograph. Sedlik's photograph was for the purpose of displaying a portrait of Miles Davis. This Process Social Media Post was for the purpose of showing Kat Von D in the process of creating a tattoo. Use of the Portrait in this social media post does not in any way "achieve a purpose that is the same as, or highly similar to, that of the original work" and does not "substitute for" or supplant the Portrait. *Id*. at 528.[9]

In the motion, Plaintiff ignores virtually everything the Supreme Court says in *Warhol*, and instead insists that *Warhol* holds that a use cannot be transformative unless it "comments on" the original. (Dkt. 234-1, p. 18.) That is not at all what *Warhol* says. Plaintiff cites to a section of *Warhol* in which the defendant argued that the "Orange Prince" was transformative because it commented on the "dehumanizing nature" and "effects" of celebrity. *Id*. at 546. The *Warhol* court held that this commentary was not sufficient to make the work transformative because it did not comment on (or "target") the borrowed work. *Id.* But *Warhol* nowhere says that commenting on a work is the only way to establish

---

[9]     This is consistent with the Court's finding on the motion for reconsideration that "[w]hether the process images have a transformative purpose is a triable issue of fact." (Dkt. 160, p. 12.)

transformation. To the contrary, it says the opposite: "targeting is not always required." *Id*. at 546-47 n. 20, 21.[10]

Post-*Warhol* cases confirm this. In *Kelley v. Morning Bee, Inc.*, 2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023), plaintiff, a professional photographer, whose photographs of architecture and aircrafts have appeared in publications, art exhibits, and advertisements for clients, sued a production company for copyright infringement because ten of his photographs briefly appeared in the background of various scenes of a documentary about the singer Billy Eilish. The photographs were part of an exhibit at an airport in New Zealand where Eilish was visiting. *Id*.

The Court found that the documentary was transformative and a fair use, *despite the fact that it in no way commented on or targeted the copyrighted photographs*. To the contrary, the Court found that the documentary "'adds something new, with a further purpose or different character' to that of the underlying work—the photographs." *Id*. at *12. What was the something new? The Court looked to the photographs' and film's respective purposes: The photographs "comment upon and capture the spirit of modern aviation" while the film has a "larger purpose of documenting Eilish's life and career, including her world tour that took her to the New Zealand airport." *Id*.

That is exactly the case here with the Process Social Media Posts. Defendants have never argued that the Process Social Media Posts are transformative because of their "commentary." Rather, just like in *Kelley*, they serve different purposes. Sedlik's photograph is a depiction of Miles Davis. The Process Social Media Posts have a larger purpose of documenting Kat Von D's life

---

[10]     Plaintiff also cites *Vogts v. Penske Media Corp.*, 2023 WL 7107276, at *16 (C.D. Cal. Aug. 30, 2023), in which defendants argued that their uses were transformative because they "provide[d] unique commentary, criticism, and discussion." The court held it "place[d] little value on this messaging because they are untethered from the Subject Photographs themselves." In other words, targeting matters *only* when arguing that commentary is what the defendant argues is making the use transformative.

and her process in creating tattoos.  The Process Social Media Posts thus have a different purpose and character.

Therefore, the jury could reasonably have concluded that the first factor weighs in favor of a finding of fair use.  The Process Social Media Posts are not commercial (and are therefore presumptively fair) and are transformative as well.

### (b)      The Fourth Factor Weighs In Favor Of Fair Use.

The fourth fair use factor considers "the extent of market harm caused by the particular actions of the alleged infringer [and] also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590.  "Where the allegedly infringing use does not substitute for the original and serves a 'different market function,' such factor weighs in favor of fair use." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013), *quoting Campbell*, 510 U.S. at 591.

There was no market harm caused by the Process Social Media Posts.  Sedlik admitted as much, testifying that nobody told him that they would not buy a copy of his photograph because of the social media posts.  (Ex. C, pp. 529:24-530:2.)  In the more than 3 ½ hours of his testimony, Sedlik never identified a single lost sale or license caused by the Process Social Media Posts.  Furthermore, those Posts are clearly not a substitute for Sedlik's photograph; nobody who wanted to buy or license Sedlik's photograph would want to use one of the Process Social Media Posts instead.  *See Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 821-22 (9th Cir. 2003) (defendant's use of plaintiff's photographs as thumbnails "would not harm [Plaintiff's] ability to sell or license his full-sized images [because Defendant] does not sell or license its thumbnails [and a]nyone who downloaded the thumbnails would not be successful selling full-sized images . . . because of the low resolution of the thumbnails"); *Kelley,* 2023 WL 6276690 at *15 ("It seems highly

implausible that someone in the market for Plaintiff's works could find a substitute in the obscured, ill-lit, fleeting images contained in the Film").

Nor is there damage to any potential market. The Ninth Circuit has made clear that "a copyright holder cannot prevent others from entering fair use markets merely 'by developing or licensing a market for . . . other transformative uses of its own creative work.'" *Tresóna*, 953 F.3d at 652, *quoting, Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614-15 (2d Cir. 2006). The Supreme Court has similarly cautioned that considering "unrealized licensing opportunities" poses a "danger of circularity," because "it is a given in every fair use case that plaintiff suffers a loss of a potential market if that potential is defined as the theoretical market for licensing the very use at bar." *Google*, 141 S. Ct. at 1207 (*quoting* 4 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.05[A][4] (2019)).

Sedlik testified about what he "would" charge to license his photograph in social media posts in general but offered into evidence no written license anything like the situation here. Indeed, when asked how he was damaged, Sedlik's response was that he lost license fees because Kat Von D did not pay him for a license for her social media posts. (Ex. B, p. 298:16-23.) But that isn't sufficient to establish harm to an actual or potential market: "Nor does the decision by secondary users to pay, or not pay, establish whether fair use exists." *Tresóna*, 953 F.3d at 652.

Finally, when "the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Campbell*, 510 U.S. at 591. Indeed, in *Tresóna*, the Ninth Circuit affirmed a grant of summary judgment to defendant on fair use finding that "[b]ecause the use in this case 'falls within a transformative market,' [plaintiff] was not harmed by the loss of any fees for the licensing of [his work]." *Id*. at 652.

The Process Social Media Posts were transformative and are in no way a substitute for Sedlik's photograph. Sedlik's customers would not find their needs fulfilled by purchasing the social media posts (which were not for sale) and Sedlik

cannot show market harm by asserting that he would want to charge Kat Von D for using his photograph in the Process Social Media Posts.

There was more than sufficient evidence, then, for the jury to conclude that this fourth factor weighed in favor of fair use.

### (c)   <u>Weighing Of Fair Use Factors.</u>

Based on the evidence at trial, it would be reasonable for the jury to conclude that the first and fourth factors weigh in favor of a finding that the Process Social Media Posts are a fair use, and the second and third weigh against.

The fourth factor is "the single most important element of fair use." *Harper & Row*, 471 U.S. at 568.  The second factor, on the other hand, "typically has not been terribly significant in the overall fair use balancing." *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1161 (9th Cir. 2022) (citations omitted).

Given the foregoing, with two factors – including the most important factor – weighing in favor of fair use – and two others – including the least significant factor – weighing against, the jury was well within reason to conclude that the Process Social Media Posts were a fair use.  The motion for new trial should therefore be denied.[11]

Dated:  March 8, 2024

GRODSKY, OLECKI & PURITSKY LLP
Allen B. Grodsky
Tim B. Henderson


By:   <u>   /s/ Allen B. Grodsky        </u>
           Allen B. Grodsky

Attorneys for Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc.

---

[11]    Since the jury's verdict did not address whether the other uses were a fair use, we do not discuss those uses here because the verdict cannot be "against the weight of the evidence" as to issues the jury never reached.