ROBERT E. ALLEN (SBN 166589)
rallen@glaserweil.com
LARA A. PETERSEN (SBN 318475)
lpetersen@glaserweil.com
JASON C. LINGER (SBN 323031)
jlinger@glaserweil.com
GLASER WEIL FINK HOWARD
 JORDAN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Plaintiff
JEFFREY B. SEDLIK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY B. SEDLIK,<br><br>    Plaintiff,<br><br>v.<br><br>KATHERINE VON DRACHENBERG (a.k.a. "KAT VON D"), an individual; KAT VON D., INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 2:21-cv-01102-DSF-MRX<br><br>Before the Hon. Dale S. Fischer, U.S. District Court Judge<br><br>**PLAINTIFF JEFFREY B. SEDLIK'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL**<br><br>Hearing Date: April 1, 2024<br>Time:  1:30 PM<br>Place:  Courtroom 7D<br>     First Street Courthouse<br>     350 West 1st Street<br>     Los Angeles, CA 90012 |

Glaser Weil

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................1

II.  DEFENDANTS' WORKS ARE OVERWHELMINGLY SIMILAR
     TO PLAINTIFF'S DAVIS PHOTOGRAPH...........................................3

     A.   The Works Are Substantially Similar as a Matter of Law...................3

     B.   Any Differences Between the Tattoo and Photograph are
          Superficial or Arise from Functional Considerations, Like the
          Change in Media. ...............................................................................5

     C.   Plaintiff Satisfied the Intrinsic Test for Substantial Similarity.............8

     D.   The Social Media Posts and Tracing Are Substantially Similar...........9

     E.   Substantial Similarity is "Irrelevant" in Direct Copying Cases..........10

III. FAIR USE............................................................................................12

     A.   Plaintiff Preserved the Issue of Fair Use for JMOL and New Trial...12

     B.   All of the Jury's Fair Use Findings Are Reviewable Here. ................13

     C.   The Fair Use Jury Instructions Did Not Correctly State the Law.......14

          1.   The Instructions Failed to Inform the Jury About The
               Court's Summary Judgment Rulings...........................................14

          2.   The Instructions Are Inconsistent with *Google v. Oracle*........17

     D.   No Reasonable Jury Could Find Defendants' Uses to Be Fair and
          the Weight of Evidence Shows There Was No Fair Use....................17

          1.   The Social Media Uses and Tracing Were Not
               Transformative.........................................................................18

          2.   Defendants' Uses Were Commercial. .......................................20

          3.   Defendants' Uses Harmed the Market for the Photograph. ......22

IV.  CONCLUSION ..................................................................................23

2
PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bell v. Moawad Grp., LLC,*
  326 F. Supp. 3d 918 (D. Ariz. 2018) ...................................................... 21

*Benay v. Warner Bros. Entm't,*
  607 F.3d 620 (9th Cir. 2010) ............................................................... 8

*Boyde v. California,*
  494 U.S. 370 (1990) ........................................................................... 16

*Carl Zeiss A.G. v. Nikon Corp.,*
  2018 WL 9869242 (C.D. Cal. Sept. 4, 2018) ........................................ 14

*Comerica Bank & Tr., N.A. v. Habib,*
  433 F. Supp. 3d 79 (D. Mass. 2020) ..................................................... 20

*Dermansky v. Hayride Media, LLC,*
  2023 WL 6160864 (E.D. La. Sept. 21, 2023) ........................................ 19

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC,*
  983 F.3d 443 (9th Cir. 2020) ............................................................... 22

*Durham Indus., Inc. v. Tomy Corp.,*
  630 F.2d 905 (2d Cir. 1980) ................................................................. 5

*elley v. Morning Bee, Inc.,*
  2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023) ....................................... 19

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.,*
  122 F.3d 1211 (9th Cir. 1997) ......................................................... 2, 5, 6

*Floyd v. Laws,*
  929 F.2d 1390 (9th Cir. 1991) ............................................................. 14

*Frazetta v. Vanguard Prods., LLC,*
  2024 WL 519767 (M.D. Fla. Feb. 9, 2024) ........................................... 19

*Google v. Oracle,*
  141 S. Ct. 1183 (2021) .................................................................... 2, 17

*Gracen v. Bradford Exch.,*
  698 F.2d 300 (7th Cir. 1983) ................................................................ 5

*Grant v. Trump,*
  563 F. Supp. 3d 278 (S.D.N.Y. 2021) ................................................... 21

*Gray v. Hudson,*
  28 F.4th 87 (9th Cir. 2022) ................................................................. 11

*Hannley v. Mann,*
  2023 WL 3407183 (C.D. Cal. Mar. 8, 2023) ......................................... 21

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1

*In re Bard IVC Filters Prod. Liab. Litig.*,
    2018 WL 3037161 (D. Ariz. June 19, 2018) ......................................... 14

*Knitwaves v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995) ..................................................................... 6

*Kode v. Carlson*,
    596 F.3d 608 (9th Cir. 2010) ............................................................... 13

*Landes Const. Co. v. Royal Bank of Canada*,
    833 F.2d 1365 (9th Cir. 1987) ............................................................. 13

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ............................................................... 21

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
    922 F.3d 946 (9th Cir. 2019) .......................................................... 8, 10

*McClaran v. Plastic Indus., Inc.*,
    97 F.3d 347 (9th Cir. 1996) ................................................................. 12

*McGucken v. Pub Ocean Ltd.*,
    42 F.4th 1149 (9th Cir. 2022) ............................................................. 22

*McGucken v. Pub. Ocean Ltd.*,
    42 F.4th 1149 (9th Cir. 2022) ............................................................. 12

*Michael Grecco Prods., Inc. v. Livingly Media, Inc.*,
    No. CV 20-0151 DSF (JCX), 2021 WL 2546749 (C.D. Cal. Apr. 16, 2021) ......... 12

*Monge v. Maya Mags., Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ............................................................. 22

*Mophie, Inc. v. Shah*,
    2015 WL 13917980 (C.D. Cal. Dec. 11, 2015) ................................... 13

*Morris v. Guetta*,
    2013 WL 440127 (C.D. Cal. Feb. 4, 2013) ........................................ 7, 8

*Morrow Crane Co. v. Affiliated FM Ins.*,
    885 F.2d 612 (9th Cir. 1989) ................................................................. 5

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
    551 F. Supp. 3d 408 (S.D.N.Y. 2021) ................................................. 21

*Norse v. Henry Holt & Co.*,
    991 F.2d 563 (9th Cir. 1993) ............................................................... 11

*Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*,
    868 F. Supp. 2d 962 (C.D. Cal. 2012) ................................................ 20

*O'Neil v. Ratajkowski*,
    563 F. Supp. 3d 112 (S.D.N.Y. 2021) ................................................ 21

*Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*,

Glaser Weil

4

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1

Glaser Weil

992 F.3d 893 (9th Cir. 2021) ................................................................. 9

*Philpot v. Indep. J. Rev.*,
   92 F.4th 252 (4th Cir. 2024) ......................................................... 18

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ...................................................... 11

*Reeves v. Teuscher*,
   881 F.2d 1495 (9th Cir. 1989) ...................................................... 12

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ........................................... 5, 6, 8, 11

*Rottlund Co. v. Pinnacle Corp.*,
   452 F.3d 726 (8th Cir. 2006) .......................................................... 5

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ...................................................... 11

*Stromback v. New Line Cinema*,
   384 F.3d 283 (6th Cir. 2004) .......................................................... 9

*Talavera v. Glob. Payments, Inc.*,
   2023 WL 3080701 (S.D. Cal. Apr. 25, 2023) ................................. 12

*Tolkien Tr. v. Polychron*,
   2023 WL 9471264 (C.D. Cal. Dec. 14, 2023) ................................ 12

*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
   953 F.3d 638 (9th Cir. 2020) ......................................................... 23

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017) ................................................... 4, 5, 8

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) ........................................................ 12

*Vogts v. Penske Media Corp.*,
   2023 WL 7107276 (C.D. Cal. Aug. 30, 2023) ................................ 19

*Walker v. Time Life Films, Inc.*,
   615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986) .............. 9

*Warhol v. Goldsmith*,
   598 U.S. 508 (2023) ............................................................. 1, 2, 18

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*,
   106 F.3d 894 (9th Cir.1997) ......................................................... 14

*White v. Ford Motor Co.*,
   500 F.3d 963 (9th Cir. 2007) ........................................................ 16

*Williams v. Gaye*,
   895 F.3d 1106 (9th Cir. 2018) ...................................................... 14

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1

*Worldwide Church.  Worldwide Church of God v. Philadelphia Church of God, Inc.*,
227 F.3d 1110 (9th Cir. 2000) ................................................................. 20

*Zhang v. Am. Gem Seafoods, Inc.*,
339 F.3d 1020 (9th Cir. 2003) ................................................................. 14

**OTHER AUTHORITIES**

PATRY ON COPYRIGHT § 9:78 .................................................................. 9

WRIGHT & MILLER § 2504.1 .................................................................. 14

Glaser Weil

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1

## I.       **INTRODUCTION**

Tattoo artists, like all other artists, must follow copyright law.  This was recognized by this Court and the U.S. Copyright Office in a recent case.  ECF 69 at 7, 20; ECF 150-4 (Copyright Office Response in *Hayden v. 2K Games*).  Here, the facts are about as devastating to Defendants as you could ever find in a copyright case.

***Substantial Similarity:*** If Defendants Kat Von D ("Von D") and High Voltage Tattoo ("HVT") did not produce any substantially similar works to Plaintiff's Miles Davis Photograph (the "Davis Photograph" or "Photograph"), it is hard to imagine a scenario in which any defendant could do so.  Defendants admitted that they deliberately copied the Photograph at every step in the process of making the Tattoo.  Defendants posted images and videos in which they directly trace from and work side-by-side with the Photograph.  Defendants wrote on one of their official business accounts that the Tattoo was a "100% match" of the Photograph.  Plaintiff is ***not*** claiming a copyright in Davis' face or the "shhh" gesture only, but rather, his highly-creative original expression in the Photograph.  At trial, Von D admitted that she copied nearly all this expression in the Photograph, from Davis' pose and finger arrangement, to the lighting and shadows.  The client, Blake Farmer, testified that he wanted and received a Tattoo that matched Plaintiff's original expression.  The differences identified by Defendants, and apparently credited by the jury, are immaterial as a matter of law because they are superficial and stem from functional considerations, like adapting the Photograph into a different medium.

The verdict eviscerates the Copyright Act's recognition of derivative works, which the copyright owner has the exclusive right to prepare.  As the Supreme Court recognized in *Warhol*, the changes from an original to a derivative "may be substantial," like a book to a movie.  *Warhol v. Goldsmith*, 598 U.S. 508, 524 (2023) ("[T]he fact that Martin Scorsese's recent film *The Irishman* is recognizably 'a Scorsese' does not absolve him of the obligation to license the original book.").  As the Ninth Circuit held in a case involving 3D costumes based on 2D photographs,

"making decisions that enable one to reproduce or transform an already existing work into another medium or dimension - though perhaps quite difficult and intricate decisions - is not enough to constitute the contribution of something recognizably his own." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1222 (9th Cir. 1997). Here, this Court found that "Defendants have not explained why the medium of tattoos should be treated any differently from other visual mediums like sculpture or film." ECF 169 at 7. Yet, under the jury's decision, ***no*** derivative work, in any medium, could be deemed substantially similar to the original.

*Fair Use:* The jury instructions on fair use were erroneous because they tasked the jury with analyzing all of the fair use factors, including the ones previously decided, without any guidance or notice about the Court's previous rulings on certain factors. That was also contrary to the Supreme Court's holding in *Google v. Oracle*, 141 S. Ct. 1183 (2021). Moreover, when considering the fair use factors not already decided by the Court, the evidence at trial demonstrated that all of Defendants' uses were commercial, non-transformative, and caused market harm to Plaintiff.

*(1) Commerciality:* Von D is a professional tattoo artist and one of the most famous tattoo artists in the world. HVT was Von D's business and the shop where the Tattoo was made. Using the Tattoo, Defendants advertised their products and services on social media over a three-year period to their millions of followers. In today's world, social media is one of the most effective ways to promote brands and reach potential customers. Here, no fewer than 10 prospective jurors were already familiar with Von D and her products. How did they know her? Through her social media. Trial Transcript ("Tr."), 29:15-19, 30:9-13, 31:1, 58:13-14.[1]

*(2) Non-Transformative Use:* Under *Warhol*, the Court already determined that the Tattoo is not transformative because it did not target or shed light on the

---

[1] The portions of the trial transcript cited herein are submitted concurrently with this Reply (Linger Decl., Ex. A). All of the trial exhibits cited herein were submitted in connection with Plaintiff's motion and/or Defendants' opposition.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

Photograph.  Like the Tattoo, it is undisputed that Defendants' other uses, including the social media posts and tracing, did not target or shed light on the Photograph. Instead, Defendants replicated the Photograph in a different medium and then advertised it with their other products and services on social media.

*(3) Market Harm:*  Defendants unquestionably harmed the market for the Davis Photograph.  Plaintiff, Jeffrey Sedlik, is a professional photographer who makes a living capturing and licensing photographs in a variety of media, including as artistic references.  At trial, he presented significant evidence regarding his decades-long history licensing the Davis Photograph and other photographs, including on T-shirts, album covers, television, statues, and magazines.  Plaintiff even presented a license for the Photograph with a tattoo artist.

Thus, each of the factors weighs strongly against fair use as a matter of law. Defendants' positions are incompatible with precedent.  The Opposition (ECF 236, "Opp.") ignores most of the Ninth Circuit's leading copyright decisions discussed in Plaintiff's Motion (ECF 234-1, "Mot."), such as *Worldwide Church*, *Monge, VHT*, *Seuss*, *Napster*, *Elvis Presley*, *Jarvis*, and *Leadsinger*.  Nor does the Opposition ever mention the highly-analogous case of *Rogers*, in which the Court ruled that a colorful, wooden sculpture was substantially similar to a black-and-white photograph, despite significant differences in the works.  This Court relied on *Rogers* in its order granting reconsideration.  ECF 160 at 7.  When this precedent is applied here, there can be only one reasonable conclusion:  Defendants' uses *were* substantially similar to the Davis Photograph.  And Defendants did *not* engage in fair use.  The Court should grant judgment as a matter of law and a new trial, solely on damages.

## II.   DEFENDANTS' WORKS ARE OVERWHELMINGLY SIMILAR TO PLAINTIFF'S DAVIS PHOTOGRAPH.

### A.   The Works Are Substantially Similar as a Matter of Law.

Defendants' works are "near duplicates [of the Davis Photograph] save for superficial differences," and thus, "no reasonable jury could find that the works are

1  not substantially similar." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 987

2  (9th Cir. 2017).  Because the objective similarities between the works are so

3  overwhelming, and the differences trivial, the intrinsic test is not needed here.  *Id.*

4  ("Where the extrinsic similarity is so strong … the court need not delve into a

5  complex subjective analysis of the works to assess substantial similarity and does not

6  risk supplanting the jury's subjective interpretation with its own.").  As discussed

7  below, the intrinsic test is nonetheless satisfied.

8       It is undisputed that Defendants sought to replicate the Photograph in the form

9  of a tattoo.  Exs. 336, 337, 338.  As explained in Plaintiff's motion, the objective

10  similarities include Plaintiff's highly-creative depiction of Davis' dramatic pose,

11  serious gaze, unique finger positioning, and intense furrowing of the brow, as well as

12  the lighting and shadows in the Photograph.  Mot., 5.  As the Court previously found,

13  Plaintiff's **combination** of these elements constitutes the original expression in the

14  Photograph.  ECF 69 at 14.  And, as the Court found, this expression is highly

15  original and entitled to broad copyright protection.  *Id.*

16       At trial, Von D admitted that nearly all of this expression was copied:

17       Q. The **pose** of Miles Davis is the same? A. **Yes, yes.** Q. And it's the

18       same **perspective**, isn't it? A. **Yes**, uh-huh. Q. And look**ing in the same**

19       **direction**? A. **Yep**. It's a photo, yeah. Q. And the **fingers** are arranged the

20       same? A. **Yes**. Q. And the **lighting direction** is the same? A. **Yeah**. Q. And

21       the **perspective** is the same? A. **Yes**. … Q. And the tattoo **shadows and**

22       **highlights** match the shadows and highlights of the photo, don't they? A.

23       **A lot of them, yeah.**

24  Tr., 421:15-422:10.  She did **not** refer to any other photographs to make the Tattoo.

25  Tr., 424:8-10.  Farmer testified that he asked for a Tattoo matching the Photograph

26  with no changes.  Tr., 399:13-15, 371:15-20.  HVT admitted on its social media

27  account that the works were "100% exactly the same."  Ex. 336.  Von D gave her

28  shop manager the authority to speak on behalf of HVT on social media (Tr., 430:19-

Glaser Weil

22), and this statement, made through an official account in the scope of their authority, is binding. *Morrow Crane Co. v. Affiliated FM Ins.*, 885 F.2d 612, 614 (9th Cir. 1989) (principal is bound by the acts of its agents in the scope of their authority).

In sum, "[Defendants] went well beyond the factual subject matter of the photograph to incorporate the very expression of the work created by [Plaintiff]." *Rogers v. Koons*, 960 F.2d 301, 311 (2d Cir. 1992).

**B.  <u>Any Differences Between the Tattoo and Photograph are Superficial or Arise from Functional Considerations, Like the Change in Media.</u>**

The objective similarities between the works are overwhelming. It is not appropriate to scour the works under a microscope to detect any minute variation between them. Such a test would render all derivative works not substantially similar, including books/movies, photographs/sculptures, photographs/paintings, and movie characters/toys, which the copyright owner has the exclusive right to prepare. *Ent. Rsch. Grp.*, 122 F.3d at 1224 ("these distinctions [between the ***photographs*** and ***3D costumes***] are so slight that no reasonable trier of fact would see anything but a direct replica of the underlying characters."); *Gracen v. Bradford Exch.*, 698 F.2d 300, 304 (7th Cir. 1983) (Posner, J.) (***painting*** based on ***photograph*** of Dorothy from *The Wizard of Oz* was a derivative work, despite "perceptible differences" in background and Dorothy's body position); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980) (similar, involving ***plastic toys*** of Disney ***movie characters***).

To determine whether the extrinsic similarities are substantial, the works "must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'" *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1121 (9th Cir. 2018). "[S]mall changes here and there made by the copier are unavailing." *Rogers*, 960 F.2d at 308 ("Substantial similarity does not require literally identical copying of every detail."); *Unicolors*, 853 F.3d at 987 (noting differences in color and background); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006) ("the similarity of expression between the two works should not

5

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1

Glaser Weil

be considered hypercritically or with meticulous scrutiny.").  The Ninth Circuit has borrowed from the Second Circuit's substantial similarity test.  *Rentmeester*, 883 F.3d at 1121.  To be *not* substantially similar, the differences must "*exceed*" the similarities, and the similarities must be "of *small import* quantitatively or qualitatively."  *Rogers*, 960 F.2d at 308.  Substantially similar exists if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  *Knitwaves v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995).

Here, the differences between the Photograph and Defendants' works do *not* exceed the similarities, and any reasonable observer *would* recognize that copying has occurred.  As discussed, Von D, Farmer, and HVT admitted that they copied most of the original expression from the Photograph.  Von D testified that, as a practical matter, a tattoo cannot look identical to the photograph on which it is based.  Tr., 422:5-6 ("I'm not a copy machine. I … physically can't make something exactly the same as a photo."); Tr., 491:18-20 (testifying that she makes minor tweaks to all her tattoos to avoid them looking like a "floating" head).

Defendants have identified seven differences between the Photograph and the Tattoo.  Opp., 14-15.  As analyzed below, each of these differences is trivial and would be overlooked under the "ordinary observer" test.  *Knitwaves*, 71 F.3d at 1004 ("we are not convinced by [defendants'] lengthy recitation of differences" given that an ordinary observer "cannot help but perceive them as coming from one creative source").  Other variations stem from functional considerations to accommodate the replication of the Photograph in the tattoo medium.  *Ent. Rsch. Grp.*, 122 F.3d at 1224 (differences in the infringer's 3D costume designs based on photos "stemmed from functional considerations" like accommodating the size and shape of human body, and should be ignored as a matter of law).

| Alleged "Differences" | The Evidence |
|---|---|
| Hair | As Plaintiff testified, Davis' hair covers his ear in exactly the same way in the Tattoo and the Photograph.  Tr., 285:9-15.  Von D |

| | |
|---|---|
| | testified that she had to make adjustments to copy the Photograph and that she adjusted the hair to accommodate other tattoos on Farmer's arm. Tr., 425:16-19, 426:18-21. |
| Shading and Light | Plaintiff painstakingly crafted the light and shading in the Photograph, and Von D confirmed that "[a] lot of" the shadows and highlights "match." Tr., 422:7-9. She testified that all the shadows around Davis' cheeks, nose, and eyes are "similar" or even "very similar." Tr., 423:1-16. She confirmed that "the lighting direction is the same" in both works. Tr., 421:23-24. |
| Eyes | Plaintiff carefully controlled the lighting and shadows around the eyes, and the eyes are compared in Ex. 315. Von D confirmed the shadows around the eyes are "exactly the same" and that certain eye reflections do not appear in the Tattoo "because [her copy of the Photograph] was just a medium-res image." Tr., 431:23-24. |
| Clothing | Von D testified that she used a cropped version of the Photograph, causing certain clothing features to not appear in the Tattoo. Tr., 492:16-21. Clothing was also omitted in the infringing work in *Morris v. Guetta*, 2013 WL 440127, at *3 (C.D. Cal. Feb. 4, 2013), but the works were still substantially similar. Mot., at 8. |
| Jaw | The angle of the jaw is the same, as shown in Ex. 229. Von D testified that her copy of the Photograph lacked a fully visible jawline, and that she simply made it more visible. Tr., 492:16-21. |
| Wrist | As shown in Ex. 229, the direction and flexing of the wrist and fingers were carefully crafted by Plaintiff for symbolic purposes. Tr., 213:13-25. Von D testified that the fingers were arranged the same. Tr., 421:21-22. Plaintiff also testified that the fingers and fingernails were all in the same position. Tr., 286:3-10. |
| Background | Von D testified she "always" adds "negative space" around her tattoos, so that they do not "look like a block with like a head cut off floating on your arm." Tr., 491:21-24. This a functional consideration to accommodate the tattoo medium. |

Defendants also contend that the Tattoo must be analyzed from "all angles," but that argument should be rejected. Opp., 13 n.4. The 3D sculpture in *Rogers* obviously would have certainly appeared much different than the 2D photograph if you turned it to the left or right. Mot., 8 (showing the sculpture). Here, Defendants also cropped and copied from a low-resolution copy (Tr., 492:16-21), resulting in certain features missing from the Tattoo. "[C]ropping and angle" are not "real

7

Glaser Weil

1  differences in the designs." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d
2  946, 954 (9th Cir. 2019). All told, the differences here are insignificant compared to
3  those present in *Rogers*, *Morris*, and *Friedman* – in which courts found substantial
4  similarity as a matter of law, as well as the various authority cited above involving
5  derivative works (*Ent. Res.*, *Gracen*, and *Durham*). Mot., 8 (showing the works at
6  issue in *Rogers*, *Morris*, and *Friedman*). The vast similarities between the
7  Photograph and Defendants' uses, discussed above, are obvious and unrebutted.

8  Thus, Plaintiff has satisfied the extrinsic test as a matter of law for the Tattoo
9  and the various social media posts featuring the Tattoo. ECF 169 at 12 ("The same
10  elements and pose copied from the Portrait for the Tattoo were necessarily reproduced
11  in the social media posts of the Tattoo.")

12  **C.  Plaintiff Satisfied the Intrinsic Test for Substantial Similarity.**

13  Defendants have failed to present any evidence showing that the works have a
14  different "total concept and feel." *Rentmeester*, 883 F.3d at 1118. As Plaintiff's
15  motion explained, the Photograph and Defendants' uses have an identical "mood and
16  sentiment" of drama, moodiness, and melancholy. Mot., 5 (citing Tr., 288:6-24) ("Q.
17  Does that tattoo evoke the same sense of drama and moodiness? A. Yes."); Tr., 214:1-
18  3 ("You do get … a sense of moodiness and melancholy. It's kind of a dark portrait
19  with shadows on him."). There was no testimony or evidence explaining that the
20  works had a different concept and feel.

21  In response, Defendants argue that the Court should not "second-guess" the
22  jury's decision, but other than a generic reference to the works themselves, they never
23  explain ***why*** a reasonable jury could have found a failure to satisfy the intrinsic test.
24  Opp., 11. Defendants certainly do not articulate any difference in the concept or feel
25  of the works. The Ninth Circuit has rejected the position that "only a jury may apply
26  the intrinsic test." *Unicolors*, 853 F.3d at 986 (this position "cannot be reconciled"
27  with precedent); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010)
28  ("Substantial similarity requires a fact specific inquiry, but it may often be decided as

8

1  a matter of law.").  Judges routinely grant summary judgment to copyright plaintiffs,

2  including on the intrinsic test, and the same standard applies here.  Defendants, as the

3  non-moving party, must identify "genuine" and "material" evidence in their favor.

4  *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th

5  Cir. 2021).  Defendants have failed to point to any such evidence.  The intrinsic test is

6  met as a matter of law.

7          **D.**      **The Social Media Posts and Tracing Are Substantially Similar.**

8       As Plaintiff explained, the variations that arise from viewing the partially-

9  completed uses are irrelevant because substantial similarity "rests solely upon a

10 comparison of the plaintiff's work and the defendant's ***final version.***"  PATRY ON

11 COPYRIGHT § 9:78; *Stromback v. New Line Cinema*, 384 F.3d 283, 299 (6th Cir.

12 2004) (refusing to consider earlier versions of screenplay for substantial similarity);

13 *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 435 (S.D.N.Y. 1985), *aff'd*, 784

14 F.2d 44 (2d Cir. 1986) ("Consideration of earlier versions of the screenplay is too

15 unreliable in determining substantial similarity.").  This applies to the social media

16 posts showing the Tattoo with blood marks or running ink (e.g., Exs. 203, 204, 207,

17 208, 212, 213).  Likewise, any variations in Defendants' tracing (Ex. 202) and light

18 box posts (Exs. 338, 339) cannot be used to overcome substantial similarity, and they

19 are still infringing uses.  Defendants do not respond to Plaintiff's argument that these

20 variations should not be considered.

21      To the extent these variations are considered, the works are still substantially

22 similar.  An ordinary observer would clearly recognize that original expression was

23 copied from the Davis Photograph, particularly given that a cropped copy of the

24 Photograph appears in the background of some of these posts.  Exs. 203, 204.  The

25 combination of expression in the Photograph, including Plaintiff's depiction of Davis'

26 pose, gaze, and fingers, is clearly visible in these images, as well as in the tracing (Ex.

27 202; Tr., 266:1-267:4 (explaining how the hair, nose, eyes, fingers, fingernails, lips,

28 shoulder, ear, and jaw all matched in the tracing)).  As for the cropped "messy

9

progress shots" showing Davis' eyes, brow, and nose (Exs. 207, 208), Von D testified that the shadows around Davis' eyes and nose were "very similar." Tr., 423:14-16. As Plaintiff testified, and Defendants did not rebut, Davis' brow is similar in both the progress shots and Photograph. Tr., 282:9-11. Defendants' "cropping" of the images does not lead to a different creative design. *Malibu Textiles*, 922 F.3d at 954.

All of Defendants' uses are substantially similar as a matter of law.

### E.   Substantial Similarity is "Irrelevant" in Direct Copying Cases.

Plaintiff's motion explained, based on substantial authority, why a substantial similarity test is "irrelevant" in cases involving direct copying. Plaintiff cited multiple cases holding that the extrinsic and intrinsic tests should not be applied in cases involving direct copying, even where there is a dispute about whether original expression is copied. Mot., 9-10, 13-14 (e.g., *Norse*, *Rogers*, *ITC*, *Morris*).

*Rogers v. Koons* makes this express holding.[2] The defendant, Jeff Koons, admitted that he copied from the black-and-white photograph to make his sculpture. *Rogers*, 960 F.2d at 305. Just like Defendants here, Koons attempted to make the sculpture appear like the photograph of a man and woman and their puppies, but he **added his own variations like color, flowers, and larger noses.** *Id.* at 308. The Court found that "the copying was so blatantly apparent as not to require a trial" and that "this undisputed direct evidence of copying" was **_sufficient, by itself_**, to support the granting of summary judgment on copyright infringement. *Id.* at 307 (**"This undisputed direct evidence of copying is sufficient to support the district court's granting of summary judgment."**). **The Court rejected Koons' argument that the copied expression was limited to "facts, ideas, or concepts," such as the idea of a man sitting on a bench.** *Id.* at 308. The Opposition does not address *Rogers*.

The rule is the same in the Ninth Circuit. *Norse*, similar to the facts here, involved **incomplete, but direct,** copying. *Norse v. Henry Holt & Co.*, 991 F.2d 563,

---

[2] *Rogers* proceeded to analyze substantial similarity as a separate, independent basis for affirming the district court.

565 (9th Cir. 1993).  The publisher copied a handful of short phrases from an author's letters – but not the entire letters – and inserted them into a paragraph containing the publisher's own writing.  *Id.*  The copied phrases included those that would likely be unprotected standing alone (e.g., "he talked only to Burroughs"), and the parties disputed whether original expression in the letters was copied.  *Id.* at 566.  The district court agreed with the defendant publisher, finding that "no protected expression was copied."  *Id.*  On appeal, the Ninth Circuit reversed, stating that "***even a small taking may sometimes be actionable***."  *Id.*  Again, even though the copied phrases did not constitute the entirety of the author's writing and were sprinkled among the defendant's writing, substantial similarity was irrelevant.

This was confirmed in *Range Road*: "substantial similarity is ***not an element of a claim of copyright infringement***" and "a demonstration of substantial similarity is ***only necessary*** to prove infringement absent evidence of direct copying."  *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012).

*Skidmore* and *Rentmeester* did not involve direct copying, and thus, do not directly apply to this issue.  *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) ("In the absence of direct copying, which is the case here …"); *Rentmeester*, 883 F.3d at 1117 ("When the plaintiff lacks direct evidence of copying …").  But even if they did, *Skidmore*, *Rentmeester*, as well as *Gray*'s references to direct copying would make zero sense if a plaintiff also had to show substantial similarity in cases of direct copying.  *Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022) ("Because plaintiffs did not present any direct evidence that defendants copied Joyful Noise's ostinato, they were required to show that (1) defendants had 'access' to their work and (2) the ostinatos in Joyful Noise and Dark Horse 'are substantially similar.'").  Defendants do not address this argument in Plaintiff's motion.  Mot., 9-10, 13.

Finally, Defendants contend that Plaintiff is "flat out wrong" in light of this District's recent decision in *Tolkien*.  Opp., 19.  Defendants misread *Tolkien*.  *Tolkien* used defendant's admission as a shortcut to establish substantial similarity.  The Court

set forth the intrinsic and extrinsic tests, but the Court did not apply them, such as analyze the total concept and feel. *Tolkien Tr. v. Polychron*, 2023 WL 9471264, at *8 (C.D. Cal. Dec. 14, 2023).[3] Given Defendants' direct copying, substantial similarity should not have been considered here.

## III.   FAIR USE

The jury's verdict on fair use is unreasonable as a matter of law and against the weight of the evidence. The Ninth Circuit routinely rejects fair use defenses, as a matter of law, in cases involving ***vastly*** weaker facts for the plaintiff. *McGucken v. Pub. Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022) (no evidence of past licensing); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 744 (9th Cir. 2019) (similar). This Court has too. *Michael Grecco Prods., Inc. v. Livingly Media, Inc.*, No. CV 20-0151 DSF (JCX), 2021 WL 2546749 (C.D. Cal. Apr. 16, 2021) (granting summary judgment for plaintiff even though the first factor weighed in favor of fair use and the second factor was neutral). For the reasons below, Defendants' arguments are without merit, and their fair use defense should be rejected as a matter of law.

### A.   Plaintiff Preserved the Issue of Fair Use for JMOL and New Trial.

Plaintiff brought his motion seeking to overturn the jury's verdict on fair use under both Rules 50 and 59. Mot., 25. As a preliminary issue, Defendants contend that Plaintiff waived his right to seek relief under Rule 50 because he did not bring a Rule 50(a) motion during trial. Opp., 8-9.

Defendants are incorrect. "[A]n objection to a jury instruction … may constitute a sufficient approximation … to satisfy the requirements of Rule 50(b)." *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 360 (9th Cir. 1996); *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989). Here, Plaintiff made numerous objections to the fair use jury instructions throughout the trial. Tr., 251:15-16

---

[3] Defendants cite *Talavera v. Glob. Payments, Inc.*, 2023 WL 3080701 at *13 (S.D. Cal. Apr. 25, 2023). Opp., 20. *Talavera* involved computer code which was 98% open source. The Photograph is not open source, and its expression is highly creative, original, and copyrightable, as the Court found. ECF 69 at 14.

Glaser Weil

(objecting to failure to include Court's findings on second and third factors), 572:22-23 ("this issue has already been decided by the Court"), 597:17-19.  Indeed, at trial, Plaintiff raised objections on the same issues raised by here Plaintiff's motion, including the fair use concepts of transformation and commerciality.  Tr., 498:6-7 (instructions "leave[] a vacuum as to what constitute commerciality"), 569:14-16 ("both *Warhol* and *Campbell* make clear it's the relationship to the copyrighted work itself not the subject matter of the work"), 567:9-14 (arguing that transformation requires a "justification" to use the original).  Both the Court and Defendants had notice of Plaintiff's positions (Tr., 567:6-8, 568:25-569:2), and this issue has been preserved for judgment as a matter of law.

Moreover, Plaintiff's request for a new trial under Rule 59 does not require a motion to be made at trial.  *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010) ("The usual procedures for overturning jury verdicts as inconsistent with the facts therefore suffice and may be used without objecting to the verdict before the jury is dismissed."); *Mophie, Inc. v. Shah*, 2015 WL 13917980, at *15 (C.D. Cal. Dec. 11, 2015) (Rule 59 motions are "not waived by failure to raise the issue before submission to the jury.").  Importantly, on such a motion, the Court "need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  Plaintiff's motion was not waived.

**B.    <u>All of the Jury's Fair Use Findings Are Reviewable Here.</u>**

Defendants contend that certain of the jury's findings should be ignored because, for certain works, they had already found those works to not be substantially similar.  Opp., 21-22.

Once again, Defendants are incorrect.  The verdict was a general verdict form, not a special verdict form, and the same legal outcome resulted: Defendants were found to be not liable for copyright infringement.  "A jury may return multiple general verdicts as to each claim, and each party, in a lawsuit, without undermining

13

Glaser Weil

1  the general nature of its verdicts." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020,

2  1031 (9th Cir. 2003) (citing WRIGHT & MILLER § 2504.1); *Westinghouse Elec. Corp.*

3  *v. Gen. Circuit Breaker*, 106 F.3d 894, 902 (9th Cir.1997) ("the law forbids a judge

4  from upsetting general verdicts merely because they are inconsistent as to different

5  claims"). Here, the verdicts – not substantially similar and fair use – were not

6  inconsistent with each other because they were paths to the same result.

7      By way of example, in patent trials, juries routinely deliver verdicts that an

8  asserted patent is invalid ***and*** that the defendants do not infringe that patent. *Carl*

9  *Zeiss A.G. v. Nikon Corp.*, 2018 WL 9869242, at *1 (C.D. Cal. Sept. 4, 2018). Either

10 finding would allow the defendant to win, and both findings can be reviewed in a

11 post-trial motion, as *Zeiss* demonstrates. Of course, without a valid patent, there can

12 be no infringement. But that is immaterial to the scope of a post-trial motion.

13     Defendants cite to *Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991) (Opp.,

14 22), but that case applies to special verdicts, not general verdicts like the one here.

15 Special verdicts "comprise only factual findings," not legal conclusions. *Zhang*, 339

16 F.3d at 1031. Thus, the rule set forth in *Floyd* regarding special verdicts does not

17 apply here. *In re Bard IVC Filters Prod. Liab. Litig.*, 2018 WL 3037161, at *7 (D.

18 Ariz. June 19, 2018) (distinguishing *Floyd* on this basis), *aff'd*, 969 F.3d 1067 (9th

19 Cir. 2020). Additionally, Defendants waived this challenge by not objecting before

20 the jury was discharged. *Williams v. Gaye*, 895 F.3d 1106, 1130 (9th Cir. 2018).

21     Accordingly, ***all*** of the jury's verdict on fair use should be considered.[4]

22 **C.**   **The Fair Use Jury Instructions Did Not Correctly State the Law.**

23      **1.**   **The Instructions Failed to Inform the Jury About The Court's**

24           **Summary Judgment Rulings.**

25 The jury instructions on fair use were erroneous and misleading because they

26

27 ---

[4] Should the Court only consider Defendants' uses as shown in Exs. 203, 204, 212,
and 213, the Plaintiff's analysis below regarding lack of transformation,
28 commerciality, and market harm remains unchanged.

failed to inform the jury about the Court's legal rulings with respect to the second and third fair use factors.  Mot., 14 (explaining that the Court found the second and third factors to weigh against fair use).  The jury instructions should have included this information to properly instruct the jury on the law.  Instead, the final instruction expressly tasked the jury to explore and evaluate "all" four factors, including those previously decided as a matter of law, rendering the Court's legal rulings meaningless.  ECF 219 at 32.  The Court *did* inform the jury that it found the Tattoo to be non-transformative under factor one.  ECF 219 at 27.  There is no reason for this inconsistency, and it suggested to the jury that the remaining factors were undecided, or weighed in Defendants' favor.

Defendants present *no* argument or authority stating that the jury instructions need not inform the jury about the Court's legal rulings.  Instead, Defendants twist Plaintiff's words and raise waiver arguments that lack any merit.

For the instruction on the second factor (No. 24), Plaintiff is not objecting because the instruction said "more likely" – instead, he is objecting because the instruction never mentioned the Court's findings.  Mot., 16.  Defendants also argue waiver, pointing only to an email sent by counsel for Plaintiff on January 25, 2024, after Defendants had rested their case.  Opp., 23.  There has been no waiver.  On November 14, 2023, the parties submitted their proposed jury instructions to the Court.  ECF 181.  In relevant part, Plaintiff proposed the following instruction: "The Court has already determined that factors (2) and (3) weigh against fair use for all of Defendants' uses …. You must accept the Court's determination on these factors." ECF 181 at 62, 64 ("Plaintiff includes the Court's determinations on the second and third factors because these factors have already been decided, and there is no reason for the jury to revisit them.").  Plaintiff repeatedly objected to Defendants' omission of the Court's findings regarding these factors.  ECF 181 at 70, 82, 84, 95.  Then, at trial, Plaintiff again objected to not informing the jury about the Court's findings on the second and third factors.  Tr., 251:15-17.  The Court ruled that it would not inform

Glaser Weil

the jury about its findings with respect to the second and third factors.  Tr., 251:18-22.  Plaintiff did not waive this issue given that he made timely objections and then followed the Court's orders.[5]

For the instruction on third factor (No. 25), Defendants try to defend the instruction as consistent with the Court's summary judgment order.  Opp., 23.  But Defendants ignore that the Court granted **reconsideration** on fair use, and in that order, the Court expressly found that the third factor weighed against fair use for the social media posts.  ECF 160 at 12 ("The reasoning applicable to the second and third factors under the Court's analysis is also applicable to the social media posts …");  ECF 69 at 23 ("The Court finds this [third] factor weighs against fair use.").  The instructions were not consistent with this order.

Defendant also contend that any error in the third factor was "harmless" because Defendants' counsel "told the jury that factor 3 weighed against a finding of fair use as those points."  Opp., 24.  "[A]rguments of counsel generally carry less weight with a jury than do instructions from the court."  *Boyde v. California*, 494 U.S. 370, 384–85 (1990).  Regardless of what counsel argues at trial, jury instructions must correctly state the law.  Moreover, Defendants' counsel argued the **exact opposite** during closing – that this factor weighed in favor or was neutral.  Tr., 679:2 ("neutral"), 679:22 ("in favor"), 680:11 ("neutral"), 681:3 ("neutral"), 681:22-23 ("Factor 3, … **Weighs heavily in favor**.").  The lack of a jury instruction allowed Defendants' counsel to make incorrect arguments that were contrary to the Court's rulings.  And the treatment of this factor was not even-handed, as during Plaintiff's closing arguments, Plaintiff's counsel was ordered not to inform the jury about the Court's ruling on the third factor.  Tr., 630:16-19.

The jury instructions failed to properly instruct the jury on the law.

---

[5] Plaintiff made one last attempt to persuade the Court to inform the jury about her previous summary judgment rulings and directed the Court's attention to *White v. Ford Motor Co.*, 500 F.3d 963, 974 (9th Cir. 2007), in which the Ninth Circuit held that jury instructions should inform a jury about previous legal rulings.  Tr., 572:8-13.

16

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1

2.      **The Instructions Are Inconsistent with *Google v. Oracle*.**

Defendants do not argue that Plaintiff's application of the Supreme Court's decision in *Google* is incorrect. *Google*, 141 S. Ct. at 1199-1200 ("fair use is a legal question for judges to decide de novo"). Nor do Defendants present any authority stating that juries should be tasked with making an overall fair use determination.

Rather, Defendants' response is based ***only*** on waiver. Defendants first argue that Plaintiff's counsel stated that "fair use should be submitted to the jury," citing to a pretrial conference that occurred on November 14, 2022. Opp., 25. The statement cited by Defendants was made by Plaintiff's former counsel. Plaintiff fired his counsel for making these statements, and Plaintiff then retracted these statements at a subsequent conference, which the Court accepted. Linger Decl., Ex. B, 5:5-13, 7:7-15, 9:21. Thus, these statements are no longer binding on Plaintiff.

Nor do Plaintiff's proposed jury instructions result in any waiver. A post-trial motion is entitled to cite additional authority in support of Plaintiff's position. Plaintiff proposed vastly different fair use instructions. For example, Plaintiff's instructions stated: "The Court has already determined that factors (2) and (3) weigh against fair use for all of Defendants' uses .... You must accept the Court's determination on these factors." ECF 181 at 62. Plaintiff's instructions tasked the jury with considering market harm, whether Defendants' uses were commercial, and whether the uses besides the Tattoo were transformative. *Id.* Thus, Plaintiff's instructions asked the jury to decide the issues not previously ruled on by the Court, while taking into account the Court's rulings. This language was rejected by the Court, and the final jury instructions tasked the jury with evaluating all factors, contrary to the Court's legal rulings. ECF 219 at 32.

D.      **No Reasonable Jury Could Find Defendants' Uses to Be Fair and the Weight of Evidence Shows There Was No Fair Use.**

At summary judgment and in the reconsideration order, the Court declined to decide the following issues: (1) whether Defendants' tracing and social media were

17

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1

transformative (the Court found the Tattoo was not transformative); (2) whether Defendants' uses were commercial; and (3) whether Defendants' uses harmed the potential market for the Davis Photograph.  Mot., 14.  The Court decided all of the other fair use issues in Plaintiff's favor.  *Id.*  These three remaining issues weigh against fair use both as a matter of law and based on the weight of evidence at trial.

### 1. The Social Media Uses and Tracing Were Not Transformative.

On reconsideration, the Court found that the Tattoo was not transformative because the Tattoo does not "***require*** borrowing from the original like parody, criticism, or commentary."  ECF 160 at 8 (citing *Warhol*, 143 S. Ct. at 1281).  The Court held that transformative uses, such as parody, "conjure 'up the original work to shed light ***on the work itself***, not just the subject of the work.'"  *Id.*  Thus, as the Court previously found, a use "require[s] borrowing" to be transformative.

Like the Tattoo, each of Defendants' uses did not "require borrowing from" the Photograph or "shed light on" the Photograph "itself."  Defendants admitted that they used the Photograph so that they could make a tattoo matching it "100%" and promote Von D and HVT on social media.  Mot., 18-19.  Except for HVT's "100%" comment, Defendants concede that their uses offer no comment, criticism, or information on ***the Photograph itself***.  The Opposition states that "Defendants have never argued that the Process Social Media Posts are transformative because of their 'commentary'" and that their uses were "for the purpose of showing Kat Von D in the process of creating a tattoo."  Opp., 28-29.  But, as the Court found, if the Photograph did not exist, "she would have just used another image" of Davis.  ECF 160 at 8.  Indeed, Von D could have used any of her hundreds of tattoos to show her in the process of creating a tattoo.  Defendants' uses did not target ***the Photograph***, and are thus not transformative as a matter of law.

Like the Court's reconsideration order, decisions after *Warhol* have recognized that to be transformative, the work must target the original work itself.  *Philpot v. Indep. J. Rev.*, 92 F.4th 252, 260 (4th Cir. 2024) (using a photograph "expressly for

18

2381908.1

its content," even if contained in a funny article, does not add new meaning and is not transformative); *Frazetta v. Vanguard Prods., LLC*, 2024 WL 519767, at *10 (M.D. Fla. Feb. 9, 2024) (infringing book cover was not transformative because its "primary purpose is to showcase" the same artwork and "this use supplants the object of the protected work"); *Dermansky v. Hayride Media, LLC*, 2023 WL 6160864, at *10 (E.D. La. Sept. 21, 2023) ("none of Hayride's articles make any mention or criticism whatsoever of Dermansky's images."); *Vogts v. Penske Media Corp.*, 2023 WL 7107276, at *16 (C.D. Cal. Aug. 30, 2023) (article not transformative because it did not comment on the photographs themselves).

Defendants dispute whether targeting is required under *Warhol*, citing to a truncated clause in a footnote that begins "Why does targeting matter?" that goes on to state that "targeting is not always required." Opp., 29 (citing *Warhol*, 598 U.S. at 547 n.21). The *Warhol* decision extensively discusses why targeting matters and distinguishes between protected parody and unprotected satire on this basis. *Id.* at 530-31 ("[S]atire can stand on its own two feet and so requires justification for the very act of borrowing. … when commentary has no critical bearing on the substance or style of the original composition, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish)"), 540 (A fair use "conjures up the original work to shed light on the work itself, not just the subject of the work."). Defendants' position cannot be squared with Justice Kagan's read of the majority opinion. Justice Kagan, in dissent, recognized "the majority's strong distinction between follow-on works that 'target' the original and those that do not." *Id.* at 580, 591 ("absent that 'targeting,' the majority thinks the portraits' distinct messages make no difference."). Under *Warhol*, targeting clearly matters.

Defendants cite *Kelley v. Morning Bee, Inc.*, 2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023), but the facts there are extremely different. In *Kelley*, certain photographs at an airport were momentarily captured for a few seconds in a 140-minute film documentary about the life and travels of a musician. The Court

19

calculated that the photographs appeared for "0.18%" of the film and that this "momentary and incidental depiction" was a transformative purpose. *Id.* Here, there is nothing "momentary" or "incidental" about Defendants' illicit copying of the Davis Photograph and displaying it on social media over a dozen times.

None of Defendants' uses were transformative.

## 2. Defendants' Uses Were Commercial.

Defendants present no argument that their uses served a "non-profit educational use." The facts regarding Defendants' uses are not in question: a for-profit corporation, HVT, and its owner, Von D, inked a Tattoo on Von D's client, Blake Farmer. Von D is world-famous tattoo artist who has appeared on tattoo reality TV shows and regularly promotes her tattoos and products on social media. Mot., 22. In fact, Von D has millions of followers on social media, and she testified that she posted the Tattoo on social media to "engage with her fans and followers" (Tr., 454:4-5), a paradigmatic commercial use under *Worldwide Church*. *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000).

HVT and Von D's activities were commercial as a matter of law. Defendants did not pay the customary price to license the Photograph. Moreover, HVT was a business that shut down during the pandemic when it became no longer profitable. Tr., 473:13-15; *Philpot*, 92 F.4th at 260 (online article was commercial because it was posted by a "for-profit corporation" to generate attention and views, even though it earned only $2 in revenue).

"Generating traffic to one's website or conveying one's message effectively using copyrighted material is within the type of 'profit' contemplated by *Worldwide Church*." *Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 979 (C.D. Cal. 2012). Courts have held this remains true, even when no direct revenue is generated. *Comerica Bank & Tr., N.A. v. Habib*, 433 F. Supp. 3d 79, 93 (D. Mass. 2020) (defendant sought to drive traffic to his YouTube channel, even though he earned no revenue from YouTube); *Grant v. Trump*, 563 F. Supp. 3d

20

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1

278, 287 (S.D.N.Y. 2021) (video spread the political candidate's message without paying the customary licensing fee).

Here, Defendants' social media posts and videos drove traffic to Defendants' business pages, and these pages contained sales offers and links to buy Defendants' products.  Ex. 341.  Importantly, in all of her posts with the Tattoo, Von D linked or referenced her business HVT.  Exs. 203, 204; *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 423 (S.D.N.Y. 2021) ("While Defendant may not derive direct income from its YouTube content, Defendant's Video included links to [other sites], through which consumers pay for Defendant's content.").

The cases cited by Defendants are easily distinguishable, or even help Plaintiff's position.  In *Bell v. Moawad Grp., LLC*, 326 F. Supp. 3d 918, 926 (D. Ariz. 2018), defendants' social media accounts were never used to sell any products, but to provide motivational quotes.  Here, Von D admitted that she uses her social media to sell her products, including music, makeup, and books. Tr., 456:6-464:20.  In *Hannley v. Mann*, 2023 WL 3407183, at *1 (C.D. Cal. Mar. 8, 2023), the defendant copied photographs from a man's social media pages and posted them on a website along with derogatory comments about the man.  There was no commercial activity involved.  In *O'Neil v. Ratajkowski*, 563 F. Supp. 3d 112 (S.D.N.Y. 2021), a model posted a picture of herself that was taken by paparazzi while she was out running errands on her Instagram page.  The post was removed after 24 hours.  The Court still found the model's use to be "slightly commercial" because the model occasionally used her Instagram to promote products.  *Id.* at 130.  Here, Defendants' uses are certainly more commercial in nature than a model running errands. Defendants do not attempt to distinguish *Leadsinger*, discussed in Plaintiff's motion, in which the Ninth Circuit rejected a corporation's proffered "non-commercial" activities.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008).

All of Defendants' uses were commercial.

**3.** **Defendants' Uses Harmed the Market for the Photograph.**

Plaintiff produced a plethora of evidence regarding his licensing activity for the Davis Photograph and other photographs he has taken over his career. Plaintiff has licensed his photographs to be used in television shows, t-shirts, paintings, murals, and even tattoos. Many of these licenses were submitted into evidence and discussed at trial. Exs. 321, 322, 326, 332; Tr., 175:17-21, 176:6-20, 202:8-13, 305:13-23. The Ninth Circuit has recognized that market harm can arise when a copyright owner licenses his work in other media, but it also occurs ***when the copyright owner does not license the work at all***. *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020); *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1181-82 (9th Cir. 2012) (wedding photos were intended for private use but still harmed the market because the couple "could decide to sell the images for profit in the future").

Defendants offer no discussion of this extensive history of licensing or this Ninth Circuit precedent. Nor do Defendants dispute that Defendants' actions, if performed by others, would destroy Plaintiff's licensing market, just as the Ninth Circuit found in *McGucken*. Mot., 25. The standard applied by Defendants in their opposition is absurd. Defendants argue that there was no market harm because Plaintiff testified that "nobody told him that they would not buy a copy of his photograph because of the social media posts." Opp., 30-31.

That is the wrong standard. Putting aside the impossibility of proving a negative, the proper standard is set forth in *Monge* and *McGucken*, and that is the standard applied in Plaintiff's motion. *Monge*, 688 F.3d at 1181 (market harm "includes harm to derivative works"); *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022) ("This factor encompasses both (1) the extent of market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market' for the original" and "the market for derivative works."). Defendants do not try to distinguish *Monge* or *McGucken*.

1    Defendants rely on *Tresona Multimedia, LLC v. Burbank High Sch. Vocal*

2  *Music Ass'n*, 953 F.3d 638, 649 (9th Cir. 2020), in which the Ninth Circuit

3  unremarkably found that the use of sheet music at no charge to high school students

4  in a music program was non-commercial.  When *McGucken* and other precedent is

5  applied here, Defendants' uses harmed Plaintiff's actual and potential market for the

6  Davis Photograph as a matter of law and based on the weight of the evidence.

7  **IV.    CONCLUSION**

8    If the jury's verdict is left intact, what message does it send to would-be

9  infringers?  Copy the work in a different medium, and the copy will not be

10  substantially similar.  Advertise your work on social media—where your millions of

11  followers can see it and buy your products—and it becomes a "transformative" fair

12  use.  That makes no sense and is not the law.  Plaintiff's motion should be granted.

13

14  DATED: March 18, 2024                GLASER WEIL FINK HOWARD
                                          JORDAN & SHAPIRO LLP
15

16                                        By: */s/ Robert E. Allen*

17                                        ROBERT E. ALLEN
                                          LARA A. PETERSEN
18                                        JASON C. LINGER

19                                        *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL

2381908.1