# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY B. SEDLIK,<br>    Plaintiff,<br><br>          v.<br><br>KATHERINE VON DRACHENBERG, et al.,<br>    Defendants. | CV 21-1102 DSF (MRWx)<br><br>ORDER ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A NEW TRIAL<br><br>(Dkt. 234) |

Plaintiff Jeffrey B. Sedlik moves for judgment as a matter of law and a new trial.  Dkt. 234.  Defendants Kat von D and High Voltage Tattoo oppose.  Dkt. 236.  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, the motions are DENIED.

## I. Judgment as a Matter of Law

### A.    Legal Standard

Federal Rule of Civil Procedure 50(a) permits a party to move for judgment as a matter of law after the close of evidence but before the case is submitted to a jury.  Dupree v. Younger, 598 U.S. 729, 731 (2023).  "This standard largely 'mirrors' the summary-judgment standard, the difference being that district courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record."  Id. at 731–732.  If the motion is denied, Rule 50(b) permits a renewed motion for judgment as a matter of law after the jury renders a verdict.  Id. at 732.

The standard for overturning a jury verdict is "very high"; it requires a showing that there is no legally sufficient basis for a reasonable jury to find for the prevailing party on the challenged issue. Costa v. Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir. 2002). The court must review all evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000). Because Rule 50(b) permits only a renewed motion, "[a] party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).

**B.    Substantial Similarity**

Sedlik asks the Court to displace the jury's verdict on substantial similarity.  The jury found that the Tattoo, the Sketch (Ex. 202), the "Messy Progress" Social Media Post (Exs. 207, 208), the Final Tattoo Social Media Post (Ex. 209, 210, 211, 214, 215, 216, 240, 242), the Instagram Story (Ex. 253), and the photo of KVD at the lightbox (Exs. 338, 339) were not substantially similar to Sedlik's photograph of Miles Davis (the Portrait).  Dkt. 218.

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)), overruled on other grounds by Skidmore as Tr. For Randy Craig Wolfe Tr. v. Led Zeppelin, 952 F.3d 1051 (9th Cir. 2020).  "[T]he second element has two distinct components: copying and unlawful appropriation." Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018) (internal quotation marks omitted), overruled on other grounds by Skidmore, 952 F.3d 1051.

To determine whether the defendant has engaged in unlawful appropriation, courts consider whether the alleged infringement is

2

"substantially similar" to the original. See Skidmore, 952 F.3d at 1064. The Ninth Circuit applies a two-part test to determine whether a defendant has engaged in unlawful appropriation: the extrinsic test and the intrinsic test, both of which must be satisfied. Id. The extrinsic test "compares the objective similarities of specific expressive elements in the two works," distinguishing between the protected and unprotected material in a plaintiff's work. Id. The intrinsic test considers "similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance." Id. (citing Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 637 (9th Cir. 2008)).

"The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'" Rentmeester, 883 F.3d at 1118. This Court has already concluded that a reasonable juror could find the two works different in total concept and feel. Dkt. 69 (Summ. J. Order) at 16. The Court must draw the reasonable inference that the jury did. Reeves, 530 U.S. at 150 (all reasonable inferences must be drawn in favor of non-moving party).

The Ninth Circuit has stated that "[i]t is not the courts' place to substitute our evaluations for those of the jurors" in unlawful appropriation cases. Williams v. Gaye, 895 F.3d 1106, 1127 (9th Cir. 2018) (citing Union Oil Co. of Cal. v. Terrible Herbst, Inc., 331 F.3d 735, 743 (9th Cir. 2003)).[1] The intrinsic test for unlawful appropriation

---

[1] It is true that in "exceptional cases," both copying and unlawful appropriation may be decided as a matter of law. Unicolors, Inc. v. Urb. Outfitters, Inc., 853 F.3d 980, 986 (9th Cir. 2017). But this is not an exceptional case. It concerns a derivative work, which is the second most frequently discussed right in cases concerning substantial similarity analyses. Clark D. Asay, An Empirical Study of Copyright's Substantial Similarity Test, 13 U.C. Irvine L. Rev. 35, 73 (2022). Here, there is direct evidence of copying. This is true of approximately 17% of cases where copying or unlawful appropriation are disputed. Id. at 78. And the contested issues in this case concern unlawful appropriation, which is true of most

is "'uniquely suited for determination by the trier of fact' because of its focus on the lay [person], and so '[a] court must be reluctant to reverse' a jury's finding that two works are intrinsically similar." Gray v. Hudson, 28 F.4th 87, 97 (9th Cir. 2022) (citing Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1166 (9th Cir. 1977)). Persuading a court to second guess the jury's application of the intrinsic test is a "significant, if not unsurmountable, hurdle[.]" Williams, 895 F.3d at 1127.

Sedlik argues that he has satisfied the intrinsic test because Defendants have not presented any evidence showing that the works have a different total concept and feel. Dkt. 241 (Reply) 8. Sedlik cites trial testimony concerning the mood of the photograph and the Tattoo. Id. However, the entire point of the intrinsic test is that it is from the perspective of the ordinary person without expert assistance. The only evidence that a jury needs in order to apply the intrinsic test is the original work and the alleged infringement. Again, the Court must draw the reasonable inference that considering the works, the jury concluded that they had a different total concept and feel from the Portrait.[2]

Sedlik also argues that application of the substantial similarity test was unnecessary because Defendants admitted to evidence of direct copying. For this principle he cites Norse v. Henry Holt & Co., 991 F.2d 563 (9th Cir. 1993) and Range Rd. Music, Inc. v. E. Coast Foods, Inc., 668 F.3d 1148 (9th Cir. 2012). Dkt. 234-1 (Mem.) 9. This is the fourth time that Sedlik has raised this argument, which is clearly contradicted by black letter copyright law. As explained above, the second prong of the infringement analysis contains two separate

---

cases in the subject area. Id. at 40. The legal issues in this case are in many ways run of the mill.

[2] The Court has already explained that it found a triable issue of fact on this issue. Dkt. 69 (Summ. J. Order) at 16. Considering the two works, the Court finds that the jury's verdict is also not against the clear weight of the evidence and a new trial is not warranted.

4

components: "copying" and "unlawful appropriation." Skidmore, 952 F.3d at 1064 (citing Rentmeester, 883 F.3d at 1117).

Even "after proving that the defendant's work is the product of copying rather than independent creation, the plaintiff must still show copying of protected expression that amounts to unlawful appropriation." Rentmeester, 883 F.3d at 1124. "Proof of unlawful appropriation— that is, illicit copying—is necessary because copyright law does not forbid all copying." Id. at 1117. "Unfortunately, . . . [the Ninth Circuit has] used the same term—'substantial similarity'—to describe both the degree of similarity relevant to proof of copying and the degree of similarity necessary to establish unlawful appropriation." Id.

Sedlik continues to confuse these two concepts. If copying is admitted, then there is no need to prove copying under the first prong of the infringement test. But it is still necessary to prove the second prong: unlawful appropriation. In both Norse and Range Road, it was indisputable that copyrightable original expression was used, and thus the second prong was satisfied. Norse concerned idiosyncratic phrases from unpublished letters, and Range Road concerned the public performance of copyrighted songs. Here, for several of the challenged uses (including the Tattoo), Defendants argue that the elements copied from the Portrait (such as Miles Davis's face) are not copyrightable. The first prong was not in dispute, but the second prong was. The Court must draw the reasonable inference that the jury found that it was the unprotected elements of the Portrait that were copied.

C.   **Fair Use**

Sedlik also moves for judgment as a matter of law on the issue of fair use. Mem. at 17. Rule 50(b) allows for a *renewed* motion for a judgment as a matter of law after the entry of judgment. "As explicitly stated in the Rule, a Rule 50(b) motion may be considered only if a Rule 50(a) motion for judgment as a matter of law has been previously made." Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1081 (9th Cir. 2009). Otherwise, the motion is not *renewed*.

"The purpose of this rule is twofold. First it preserves the sufficiency of the evidence as a question of law, allowing the district court to review its initial denial of judgment as a matter of law instead of forcing it to 'engage in an impermissible reexamination of facts found by the jury.'" Freund, 347 F.3d at 761 (quoting Lifshitz v. Walter Drake & Sons, 806 F.2d 1426, 1428–29 (9th Cir.1986)). "Second, it calls to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them." Freund, 347 F.3d at 761.

At trial, Sedlik moved for a directed verdict only on substantial similarity, not fair use. Dkt. 237-1 (Ex. B) 467:6–13; Ex. C at 535:25–536:7. Sedlik argues that he has preserved the issue because he raised numerous objections to the jury instructions on substantive grounds. Reply at 12–13. "[A]n objection to a jury instruction on the ground that insufficient evidence was presented on an issue to allow it to be submitted to the jury may constitute a 'sufficient approximation' of a motion for a directed verdict to satisfy the requirements of Rule 50(b)." McClaran v. Plastic Indus., Inc., 97 F.3d 347, 360 (9th Cir. 1996) (quoting Farley Transp. Co. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1346–47 (9th Cir.1985)). However, Sedlik's objections regarded the language of the instructions, and whether the jury should be instructed on the Court's prior findings, not the sufficiency of the evidence. See infra II.C. Sedlik neither preserved the sufficiency of the evidence as an issue of law, nor gave Defendants fair notice to correct any alleged deficiencies in the evidence. Sedlik's Rule 50(b) motion is "procedurally foreclosed" by his failure to file a Rule 50(a) motion. Tortu, 556 F.3d at 1083.

## II. Motion for a New Trial

### A.   Legal Standard

A court may grant a new trial under Federal Rule of Civil Procedure Rule 59 "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). These reasons, include, but are not

limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (citation and quotation marks omitted). A new trial is appropriate where "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Id. (citation and quotation marks omitted). On a motion for new trial, "the district court has 'the duty . . . to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" Id. (citation and quotation marks omitted). "However, a district court may not grant a new trial simply because it would have arrived at a different verdict." Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001).

**B.   Fair Use**

Sedlik contends that the jury's verdict on fair use is against the clear weight of the evidence. The jury found that Defendants' reproduction of the Portrait on her social media was a fair use. Verdict at 3. The image determined to be a fair use depicts Kat von D inking the Tattoo with the Portrait in the background. Exs. 203, 204, 212, 213. It was posted to several of Defendants' social media pages. The Court need consider only whether the jury's verdict is contrary to the clear weight of the evidence as to the social media posts, not the other uses that were not considered substantially similar.[3]

---

[3] The jury found that several exhibits were both not substantially similar and a fair use. This was contrary to the form's instructions. Superfluous answers on a verdict form are to be disregarded. See Floyd v. L., 929 F.2d 1390, 1398 (9th Cir. 1991). Sedlik argues that the findings that a work is "not substantially similar and fair use – [are] not inconsistent with each other because they [are] paths to the same result." Reply at 14. The Court disagrees. Fair use is an affirmative defense; therefore, there must be a copyright infringement for the application of the doctrine. A finding that

7

Sedlik argues that that the jury's finding of fair use is contrary to the clear weight of the evidence because the social media uses were not transformative, were commercial, and harmed the market for Sedlik's photograph. Reply at 18–23. While the Court cannot read the jurors' minds, it is not persuaded that the clear weight of the evidence (and law) favors any of Sedlik's positions.

First, Sedlik argues that the social media post is not transformative because it does not target the original work itself. The Supreme Court has held that a work that targets another, such as criticism, commentary, and parody, is transformative because it needs to conjure up the other to make its point or fulfill its purpose. See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 598 U.S. 508, 530 (2023). However, targeting is not required. Id. at 547 n.21. The Supreme Court noted in Warhol that the proponent of a fair use defense must either show that they targeted the original work or offer another "compelling justification for the use." Id. at 540.

In Kelley v. Morning Bee, Inc., No. 1:21-CV-8420-GHW, 2023 WL 6276690, at *12 (S.D.N.Y. Sept. 26, 2023), the district court found that the incidental appearance of copyrighted images in the background of a documentary about Billy Eilish was a transformative use of the images. The court reasoned that "the momentary and incidental depiction of Plaintiff's photographs in the documentary-style Film (sic) comprises 'a transformative purpose of enhancing the biographical story, a purpose separate and distinct from the original artistic and promotional purpose for which the images were created.'" Kelley, 2023 WL 6276690 at *12 (quoting Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 609 (2d Cir. 2006)) (simplified). Similarly, Defendants' social media posts have the biographical purpose of documenting Kat von D's life and creative process. This purpose is distinct from the original

---

there is no substantial similarity is a finding that there was no infringement, so the fair use doctrine is inapplicable.

8

artistic and commercial purposes of the Portrait.[4] However, Sedlik's contention that targeting is required is false as a matter of law. As discussed above, it may be a sufficient condition for fair use, but it is not a necessary condition.

But even if the jury found that the social media posts were not transformative, they still could have found that evidence of non-commerciality tipped the first factor (and perhaps all of the factors) towards fair use. The Supreme Court has stated that "[t]here is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use." Google LLC v. Oracle Am., Inc., 593 U.S. 1, 32 (2021). Citing Worldwide Church. Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110, 1117 (9th Cir. 2000), Sedlik argues that the social media posts were "a paradigmatic commercial use." Reply at 20. But a paradigmatic commercial use is surely one where copyrighted material is exploited for monetary profit. None of the posts included a link to purchase anything. And testimony at trial revealed that the posts did not generate any sort of direct profit. Dkt. 231-1 (Ex. C) 520:11–521:8.

It is true that "the crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price[.]" Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 562 (1985). However, construing the term "profit" too broadly would render everything commercial. Not all social media posts are for profit. See Bell v. Moawad Grp., LLC, 326 F. Supp. 3d 918, 926 (D. Ariz. Sept. 4, 2018) (finding a genuine dispute of fact as to whether infringing social media post was non-commercial inspirational information or marketing); see also Hannley v. Mann, No. 2:21-CV-02043-JLS, 2023 WL 3407183, at *4 (C.D. Cal. Mar. 8, 2023)

---

[4] One could argue that the social media posts actually *did* target the Portrait, because including the Portrait was necessary to make the social media post's point, which was to show Kat von D's use of source material to create a tattoo and her prowess in replication.

(finding use non-commercial where there is no evidence that the Twitter, website, or Youtube pages generated any profits); but see Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform, 868 F. Supp. 2d 962, 979 (C.D. Cal. 2012) ("Generating traffic to one's website or conveying one's message effectively using copyrighted material is within the type of 'profit' contemplated by Worldwide Church."). Whether an infringing social media post that generates no-direct revenue is a commercial use is a fact-sensitive inquiry. This case is admittedly a close call, which is why it was sent to a jury. However, the clear weight of the evidence does not allow the Court to disturb the jury's verdict and grant a new trial.

Finally, Sedlik argues that the social media posts harmed the market for his photograph license. Reply at 22. The fourth fair use factor requires the jury "to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994). Sedlik does not contend that the social media posts served as a direct market substitute for the Portrait (nor could he), but instead argues that they harm a potential licensing market for him. Reply at 22.

"[I]t is a given in every fair use case that plaintiff suffers a loss of a potential market if that potential is defined as the theoretical market for licensing the very use at bar." Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n, 953 F.3d 638, 652 (9th Cir. 2020) (quoting 4 Nimmer § 13.05[A][4]). "However, a copyright holder cannot prevent others from entering fair use markets merely 'by developing or licensing'" other markets. Tresona, 953 F.3d at 652 (quoting Bill Graham Archives, 448 F.3d at 614–15).

Sedlik offered evidence of licenses for sculptures, paintings, t-shirts and even tattoos (albeit for $0). Dkt 241-2 (Ex. A) 175:17-21, 176:6-20, 202:8-13. However, Sedlik never offered any evidence of a license for a social media post. None of the licenses offered by Sedlik

are quite analogous to the use at bar, which reproduces the Portrait to document Kat von D's process in creating a tattoo. Defining the scope of this potential market is difficult. But the jury could have reasonably concluded based on the evidence that the social media posts did not displace a potential market for Sedlik.

In conclusion, under the existing state of the law, the jury could have reasonably concluded that factors one and four favor fair use. Therefore, the finding of fair use was not against the clear weight of the evidence. See Lucasfilm Ltd. LLC v. Ren Ventures Ltd., No. 17-CV-07249-RS, 2018 WL 5310831, at *6 (N.D. Cal. June 29, 2018) ("[C]ourts often give more weight to the first and fourth factors of the fair use test because they are more closely related to incentivizing the creation of new arts[.]").

## C. Jury Instructions

Sedlik also contends that Jury Instruction Nos. 24, 25, and 27 were misleading and incorrectly stated the law. Mem. at 15–16. "Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." White v. Ford Motor Co., 312 F.3d 998, 1012 (9th Cir. 2002). An erroneous jury instruction may warrant a new trial unless the error was harmless. Madrigal v. Allstate Ins. Co., 215 F. Supp. 3d 870, 908 (C.D. Cal. May 19, 2016). "In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered." Swinton v. Potomac Corp., 270 F.3d 794, 802 (9th Cir. 2001) (simplified). A new trial should be ordered "only if the jury's understanding of the issues was seriously affected to the prejudice of the complaining party." Havoco of Am., Ltd. v. Sumitomo Corp. of Am., 971 F.2d 1332, 1343 (7th Cir. 1992) (citing Simmons, Inc. v. Pinkerton's, Inc., 762 F.2d 591, 597 (7th Cir. 1985)).

Sedlik argues that Jury Instruction Nos. 24 and 25 were incorrect as a matter of law because the court failed to instruct the jury that it

11

had previously found that factors two and three weigh against fair use. Reply at 16.  Jury Instruction No. 24 states:

> The second fair use factor is the nature of the copyrighted work. Copyrighted works that are creative in nature are more protected. It is agreed that the Miles Davis Photo is creative in nature, and therefore this factor is more likely to weigh against fair use.

Dkt. 219 at 29.  Sedlik does not contend that this is an inaccurate statement of law.  Rather, he argues that the jury should have been told that the second factor *does* weigh against fair use, rather than is "more likely to weigh against fair use." Id.  The Court finds that the applicable law was fairly and correctly covered here, and that the jury's understanding of the issues would not have been seriously affected by changing "more likely" to "does."

> Jury Instruction No. 25 states:
>
> The third fair use factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole. This factor looks to the amount of the original work used and the importance of the portion copied.
>
> When an accused work copies little of the original work, this factor weighs in favor of fair use. When an accused work copies most of the original work or its most important parts, then this factor more likely weighs against fair use. If the secondary user copies only as much as is necessary for a transformative use, then this factor will not weigh against fair use.

Dkt. 219 at 30.  Again, Sedlik does not contend that "the substance of the applicable law was not fairly and correctly covered." Swinton, 270 F.3d at 802.  Instead, he argues that the Court should have told the jury that it found the third factor to favor Sedlik in its summary judgment and reconsideration orders.

An instruction that the Court had already considered and made a finding on the third factor would not have seriously affected the jury's

12

understanding of the substance of the third factor.  Moreover, the Court was concerned that instructing the jury on its prior rulings would confuse the jury and prevent them from weighing all of the factors, as is required by section 17 U.S.C. 107.  It is firmly within the district court's discretion to forego "potentially confusing jury instructions and information regarding the procedural history of the case."  Fryar v. Curtis, 485 F.3d 179, 183 (1st Cir. 2007).  An instruction that the third factor favored fair use would not have seriously affected the jury's verdict because Defendants conceded that the factor weighed against fair use in their closing argument.  Dkt. 237-1 (Ex. D) 681:6–15.

Similarly, instruction No. 27, that the jury weigh all relevant factors, was also not prejudicial to Sedlik.  Sedlik does not argue that this instruction was an inaccurate statement of law.  He argues that the jury should have been told about the Court's prior findings regarding the second and third factors.  The jury was accurately informed of the law.  The jury was told that the second factor likely weighed against fair use.  And Defendants conceded in their closing argument that the third factor weighed against fair use.  The decision not to explain the Court's prior findings to the jury was firmly within the Court's discretion and did not prejudice Sedlik.

Finally, Sedlik argues that the issue of fair use should not have been put to the jury at all. Mem. at 17.  He cites Google LLC v. Oracle Am., Inc., 593 U.S. 1, 24 (2021) for the proposition that fair use is a mixed question of fact and law.  The factual issues should be determined by a jury, and the legal questions should be decided by a judge.  Id.  However, this is the first time that Sedlik, or any party, has raised this argument.

"One who by his conduct induces the commission of some error by the trial court, or, in other words, who has invited error, is estopped from insisting that the action of the court is erroneous[.]"  Deland v. Old Republic Life Ins. Co., 758 F.2d 1331, 1336 (9th Cir. 1985).  Sedlik "had no objection to submission of this issue to a jury" prior to the jury's verdict against him.  Deland, 758 F.2d at 1337.  Actually, Sedlik represented to the Court that "the last time the Supreme Court

13

addressed this issue, which is <u>Oracle v. Google</u>, the [Supreme Court decided the] jury is entitled to make the determination of fair use."[5] Sedlik was intimately involved in the drafting of the jury instructions and the verdict form. Never once did he suggest that the issue of fair use was not fit for a jury, or that the Court should bifurcate the verdict between factual and legal issues. Sedlik went "beyond mere acquiescence" and invited this purported error. <u>Deland</u>, 758 F.2d at 1337. He cannot now ask for a second bifurcated or bench trial because the jury trial that he demanded did not go as planned.

### III. Conclusion

For the reasons stated above, the motions are DENIED.

IT IS SO ORDERED.

Date: May 3, 2024

Dale S. Fischer
United States District Judge

---

[5] That this was done by Sedlik's prior counsel is immaterial. "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent[.]" <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 633–34, (1962).