# EXHIBIT E

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY B. SEDLIK,<br>　　　Plaintiff,<br><br>　　　　v.<br><br>KATHERINE VON<br>DRACHENBERG, et al.,<br>　　　Defendants. | CV 21-1102 DSF (MRWx)<br><br>Order GRANTING Defendants'<br>Motion for Reconsideration (Dkt.<br>140); Order GRANTING<br>Plaintiff's Motion for<br>Reconsideration (Dkt. 142)[1] |

　　　Jeffrey Sedlik moves for reconsideration of the Order DENYING Plaintiff's Motion for Summary Judgment or Summary Adjudication. Defendants move for reconsideration of the Court's Order GRANTING in part and DENYING in part Defendants' Motion for Summary Judgment and Partial Summary Judgment. Both motions for reconsideration are GRANTED. However, even after finding that the Tattoo is not transformative, the Court finds that neither side has satisfied its summary judgment burden on the affirmative defense of fair use.

---

[1] "A motion for reconsideration is considered granted when the district court thoroughly reconsiders its previous ruling, even if it reaches the same outcome." Valcom, Inc. v. Vellardita, No. 2:13-CV-3025-WHW-CLW, 2014 WL 2965708, at *2 (D.N.J. July 1, 2014) (simplified) (citing Pena–Ruiz v. Solorzano, 281 Fed. App'x 110, 111 n. 1 (3d Cir. 2008)).

## I. Legal Standard

In the Central District of California, a motion for reconsideration may be made only on grounds of:

> (a) a material difference in fact or law from that presented to the Court before such decision that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

L.R. 7-18. "No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." Id.

## II. Procedural History

This case concerns Jeffrey Sedlik's photographic portrait of Miles Davis (Portrait). The Portrait was used as a reference by the tattoo artist Katherine Von Drachenberg, famously known as Kat Von D, to ink a tattoo for her friend Blake Farmer (Tattoo). She did this free of charge, and later posted photos and videos of the Tattoo in progress and completed form on her personal and business social media accounts.[2]

Both parties moved for summary judgment on the claim of copyright infringement. Defendants raised the affirmative defense of fair use. In the summary judgment orders, the Court conducted a fair use analysis, considering and weighing the determinative factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used

---

[2] The facts and the parties' positions are set forth at length in the summary judgment orders. See Dkt. 69 (Summ. J. Orders) at 2–7.

2

in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

The Court found that Defendants had "met their burden of showing the Tattoo has a purpose or meaning distinct from that of the Portrait by virtue of the way Kat Von D changed its appearance to create what she characterizes as adding movement and a more melancholy aesthetic." Summ. J. Orders at 21. But because Sedlik raised a triable issue in response, the Court found that the decision as to whether the Tattoo was transformative was more appropriately left to a jury. Id. The Court found after weighing all the fair use factors that "the issue of fair use as to the Tattoo and the associated social media posts is more appropriately left to a jury." Id. at 25.

The Court agrees with the parties that there has been a material change in controlling law since the Court issued the summary judgment orders. On May 18, 2023, the United States Supreme Court decided Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith, 143 S. Ct. 1258 (2023) (Warhol), giving lower courts new instructions on how to evaluate the first factor under 17 U.S.C. § 107(1)'s fair use analysis. Warhol changes the Court's analysis. The Court now finds that Defendants have not produced evidence that the Tattoo is transformative and that the social media posts must be analyzed separately, but the Court still finds that "the issue of fair use as to the Tattoo and the associated social media posts is more appropriately left to a jury." Summ. J. Orders at 25.[3]

---

[3] Sedlik argues that the Court should reconsider its finding that there were triable issues of fact as to the substantial similarity between the Portrait and alleged infringements, citing Lorador v. Kolev, No. 22-15491, 2023 WL 3477834 (9th Cir. May 16, 2023)(unpublished) and a host of district court opinions for the proposition "that a court does not engage in substantial similarity analysis where there is direct evidence of copying[.]" Dkt. 143 (Pl. Mem. Supp. Recons.) 14. This repeats an argument Sedlik made in his

3

### III. Fair Use

"Fair use is a mixed question of law and fact." McGucken v. Pub Ocean Ltd., 42 F.4th 1149, 1158 (9th Cir. 2022). "Where no material, historical facts are at issue and the parties dispute only the ultimate conclusions to be drawn from those facts, [the Court] may draw those conclusions without usurping the function of the jury." Id. But where there is a triable issue of fact and a jury could "reasonably conclude that the work constitutes a fair use," summary judgment cannot be granted. See Morris v. Young, 925 F. Supp. 2d 1078, 1089 (C.D. Cal. 2013).

Sedlik claims Warhol requires that the Court grant his motion for summary judgment because "Defendants have admitted to copying Plaintiff's photograph of Miles Davis ["the Portrait"] by (1) tracing the [the Portrait] to create a tattoo of it (the "Tattoo"), (2) using the [Portrait] as a reference in creating the Tattoo, [and] (3) publicly displaying both the [Portrait] and the Tattoo on the Internet." Dkt. 142 (Pl. Mot. Recons.) at 3. Sedlik contends that "defendants cannot prove that any of the factors favor fair use as a matter of law." Id.

Defendants argue that in light of Warhol, the Court should find that "(1) the Tattoo is a non-commercial use under the first fair use factor; (2) as specifically applied to the Tattoo, the first factor of the fair use analysis weighs in favor of a finding of fair use; and (3) weighing all the factors together, as a matter of law given the facts in this case, the Tattoo is a fair use." Dkt. 140 (Def. Mot. Recons.) at 2.

### A. Warhol

Warhol concerned an orange silkscreen portrait of the recording artist Prince that was a derivative of a photograph by Lynn Goldsmith. 143 S. Ct. at 1268. The Andy Warhol Foundation, which owned the silkscreen, licensed it to Condé Nast for a retrospective magazine issue on Prince. Id. at 1266. The Foundation argued that the silkscreen was transformative because it imbued Goldsmith's photo with new

---

motion for summary judgment. Dkt 53 (Reply) at 2. For the reasons stated in the summary judgment orders, Plaintiff's argument is unpersuasive.

4

meanings and messages.  Id. at 1282.  The Supreme Court affirmed the Second Circuit's holding that the first factor of 17 U.S.C. § 107 did not support the Foundation's claim of fair use of Goldsmith's photograph. 143 S. Ct. at 1287.  In rejecting the Foundation's argument and the proposition that the first factor "weighs in favor of any use that adds some new expression, meaning, or message," id. at 1282, the Supreme Court stated that even if the silkscreen could "be perceived to portray Prince as iconic, whereas Goldsmith's portrayal is photorealistic, that difference must be evaluated in the context of the specific use at issue," id. at 1284.  The relevant use was the Foundation's "commercial licensing of Orange Prince to appear on the cover of Condé Nast's special commemorative edition[,]" not Orange Prince's meaning or aesthetic.  Id.

Even after Warhol, it is not always inappropriate to examine art's meaning or message.  "But new meaning or message [is] not sufficient. [...]  Instead meaning or message [is] simply relevant to whether the new use served a purpose distinct from the original, or instead superseded its objects.  That was, and is the 'central' question under the first factor."  Id. at 1282-83.  For example, in parody the meaning of the infringing work must be considered to determine whether the secondary work comments on the original or is satire that "can stand on its own two feet[.]"  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 581 (1994).  A "court should not attempt to evaluate the artistic significance of a particular work[.]"  Warhol, 143 S. Ct. at 1283.

One clear example of a transformative use that survives Warhol is Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007).  In Perfect 10, the Ninth Circuit held that Google's use of thumbnails was highly transformative.  Id. at 1165.  The circuit reasoned that "[a]lthough an image may have been created originally to serve an entertainment, aesthetic, or informative function, a search engine transforms the image into a pointer directing a user to a source of information."  Id.  Although Google's use reproduced copyrighted images in their entirety, it had a function different from the copyrighted work.

5

In light of Warhol, the Court recognizes that its prior analysis "assess[ed] the aesthetic character of the resulting work," instead of focusing on the purpose of its use as required by Warhol. 143 S. Ct. at 1289 (Gorsuch, J., concurring). The Court therefore must reconsider its finding that Defendants met their burden. Summ. J. Orders at 21. In addition, in the summary judgment orders, this Court looked at the Tattoo and social media posts together instead of analyzing each use separately. Summ. J. Orders at 18–21. But Warhol has clarified that the Court must now look at the purpose of each use, because "[t]he same copying may be fair when used for one purpose but not another." 143 S. Ct. at 1277.

## B. The Tattoo

Sedlik argues that under Warhol there is no evidence that the Tattoo is transformative beyond being a derivative work, which is insufficient for a fair use defense.[4] "A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version,

---

[4] The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To prevail at summary judgment, a moving party without the burden of persuasion "may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1106 (9th Cir. 2000). "Because fair use is an affirmative defense, on which the defendant bears the burden at trial, when a plaintiff challenges it on summary judgment, he may satisfy his Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." O'Neil v. Ratajkowski, 563 F. Supp. 3d 112, 128 (S.D.N.Y. 2021). Thus, the Court must consider whether Sedlik has shown that there is an absence of evidence that the Tattoo was a fair use. If so, then it must consider whether Defendants have produced enough evidence to create a genuine issue as to whether the Tattoo was a fair use, or in the alternative, whether Defendants are entitled to a finding of fair use as a matter of law on their cross-motion for summary judgment.

6

sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C.§ 101. The Tattoo has recast the Portrait in a new visual medium, akin to a "translation" or "motion picture version." Id. This is a violation of the copyright owner's exclusive right "to prepare [and authorize] derivative works based upon the copyrighted work." 17 U.S.C. § 106(2). This exclusive right is limited by the fair use doctrine. 17 U.S.C. § 107.

After Warhol, the first factor of a fair use defense "considers whether the use of a copyrighted work has a further purpose or different character, which is a matter of degree, and the degree of difference must be balanced against the commercial nature of the use." Warhol, 143 S. Ct. at 1277. A work is transformative when it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message[.]" Campbell, 510 U.S. at 579. The parties agree that Kat Von D's use of the work is at issue, not Farmer's use. Tr. Oral Arg. 23:2–3.

Warhol does not change the longstanding rule that recasting a photograph into a different visual medium is not sufficiently transformative. See Rogers v. Koons, 960 F.2d 301, 309 (2d Cir. 1992) (holding transformation of photograph into sculpture was not fair use). To preserve the copyright owner's right to make and authorize derivatives, "the degree of transformation required to make 'transformative' [fair] use of an original must go beyond that required to qualify as a derivative." Warhol, 143 S. Ct. at 1275. Defendants have not explained why the medium of tattoos should be treated differently from other visual mediums like sculpture or film. Nor have they pointed to a transformative purpose that goes "beyond that required to qualify as a derivative[,]" Warhol, 143 S. Ct. at 1275, like the way a thumbnail transforms an image "into a pointer directing a user to a source of information." Perfect 10, 508 F.3d at 1165.

Sedlik points to the record to show the lack of a genuine issue as to the Tattoo's transformative purpose. The burden shifts to Defendants to provide evidence of one. The evidence Defendants previously relied

7

on to meet their burden no longer shows a transformative purpose after Warhol, and there is now an absence of evidence on the issue. Dkt. 33 (DSUF) ¶¶74–77. Defendants rely on the same fair use defense that the Court accepted before Warhol. They argue that the environments of the two uses are distinct and different: "[Sedlick's] photograph was used to illustrate an article about Miles Davis in a jazz magazine. Kat Von D hand-inked a tattoo on the arm of her friend." Dkt. 145 (Def. Opp'n) 15. And the Tattoo is transformative because Kat Von D has added "movement" and a "melancholy aesthetic." Dkt. 141 (Def. Mem. Supp. Recons.) 11. Defendants' argument relies on a formal analysis of the Tattoo's aesthetic character. This is precisely the type of argument foreclosed by Warhol. See 143 S. Ct. at 1282.

Nor does the Tattoo require borrowing from the original like parody, criticism, or commentary, which are transformative because they conjure "up the original work to shed light on the work itself, not just the subject of the work." Warhol, 143 S. Ct. at 1281. Kat Von D admits that had the Portrait not existed, she would have "just used another image." Dkt, 143-3 (Ex. 1) 184:9–10. Like satire, the Tattoo can "stand on its own two feet and so requires justification for the very act of borrowing." Campbell, 510 U.S. at 581.

Sedlik has met his burden of showing that there is no evidence the Tattoo is transformative. Defendants have not produced any evidence creating a genuine issue. But this is not the only fair use factor, nor the only consideration under the first factor.

The Court previously found a triable issue as to whether the Defendants' use was commercial because "Defendants 'received and enjoyed indirect economic benefit in the form of advertising, promotion, and goodwill' by posting photos of the Tattoo on their various social media platforms." Summ. J. Orders at 21. Defendants continue to argue that the Tattoo is a non-commercial use because Kat Von D has not charged a client for a tattoo for over a decade. Def. Mem. Supp. Recons. at 8–9; DSUF ¶31. The Tattoo, like her others, was inked for free. DSUF ¶31.

But "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110, 1117 (9th Cir. 2000) (citing Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 562 (1985)). The social media posts may be seen as evidence of a commercial purpose. Kat Von D had a photo taken of her while she was inking the Tattoo, and later posted it to both her Facebook and Instagram accounts as well as her shop's social media accounts. Dkts. 35-19 (Ex. 203); 35-20 (Ex. 204); 35-26 (Ex. 212); 35-27 (Ex. 213). A reasonable factfinder could conclude that Kat Von D inked the Tattoo for the commercial purpose of building her personal brand and attracting customers to her shop.

Conversely, a reasonable factfinder could also conclude that the Tattoo was an "incidental use as part of a commercial enterprise" and not done for the purpose of marketing Kat Von D's brand or shop. See Seltzer v. Green Day, Inc., 725 F.3d 1170, 1178 (9th Cir. 2013).[5] Whether the Tattoo was done for a commercial purpose is a material factual issue that must be resolved by a jury. Neither side has met the burden of showing that there is no triable issue as to whether the first factor favors Sedlik or Defendants. The outcome of the Court's summary judgment remains the same: the first factor cannot be determined as a matter of law.

Warhol does not change the Court's analysis of the second or third factor.[6] The fourth factor, the effect of the use on the potential market

---

[5] Seltzer directly contradicts Sedlik's claim that only non-profit educational uses are protected by the fair use doctrine. Pl. Mot. Recons. at 10–11.

[6] The Court notes that in its summary judgment orders it found that "[b]ecause the Portrait was previously published several decades ago, [the second factor] weighs in favor of fair use." Summ J. Orders at 22. This was a mistake. Dr. Seuss Enterprises, L.P. v. ComicMix LLC, 983 F.3d 443, 456 (9th Cir. 2020)("[N]either Harper & Row nor any principle of fair use counsels that the publication of the copyrighted work weighs in favor of fair use.").

for or value of the copyrighted work, is "undoubtedly the single most important element of fair use." Harper & Row, 471 U.S. at 566. Nothing in Warhol disturbs the Court's finding that there is a "triable issue as to whether there is a market for future use of the Portrait in tattoos." Summ. J. Orders at 24.[7]

After reconsideration, the Court again "finds triable issues as to the [first and fourth] statutory factors." Summ. J. Orders at 25. The "four statutory factors [should not] be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright[.]" Campbell, 510 U.S. at 578. Because there are triable issues of fact as to the two most important factors, whether the Tattoo is a fair use as a matter of law cannot be determined and both motions for summary judgment as to the Tattoo are DENIED.

## C. The Line Drawing

Sedlik now argues that Kat Von D infringed his copyright by making a line drawing based on the Portrait. Pl. Mot. Recons. at 3. But Sedlik did not argue that the line drawing was an infringement in his summary judgment motion. See Dkt. 37 (Pl. Mot. Summ. J.). A motion for reconsideration is "not the place for parties to make new arguments not raised in their original briefs." Woulfe v. Universal City Studios

---

The second factor thus weighs against fair use because the Portrait is a creative work. Summ J. Orders at 22. However, the second factor "typically has not been terribly significant in the overall fair use balancing[.]" Dr. Seuss Enterprises, 983 F.3d at 456.

[7] Sedlik submitted additional undisputed facts regarding the past licensing of his work to a tattoo artist. Dkt. 143-1, ASUF ¶41. Defendants object that this is not a new material fact because Sedlik has already offered evidence that he has previously licensed the Portrait as a reference for a tattoo. Def. Opp'n at 21. The Court already heard evidence of past licenses Sedlik granted to tattoo artists and found a triable issue of fact. Summ. J. Orders at 24. Testimony concerning evidence already considered does not raise a new material fact under C.D.Cal.R. 7-18.

10

LLC, No. 222CV00459SVWAGR, 2023 WL 3321752, at *1 (C.D. Cal. Mar. 9, 2023).

### D. Social Media Posts

In Sedlik's summary judgment motion, he argued that Defendants' reproduction of the Portrait on social media infringed his copyright. Pl. Mot. Summ. J. at 15. Defendants argued that the "social media posts depicting the tattoo in various states of progress – three distinct photographs, and one video – are also protected by fair use[.]" Dkt 32 (Def. Mot. S. J.) at 24. The Court's previous fair use analysis did not consider the Tattoo separately from the social media posts, let alone each separate use on social media as required by Warhol. Compare 143 S. Ct. at 1277 with Summ. J. Orders at 18–21. On reconsideration, Sedlik seeks summary judgment on the issue of fair use as to the social media posts. Pl. Mot. at 3. Defendants do not. See Def. Mot. at 2. Sedlik must show that there is no evidence in the record supporting a fair use defense of the social media posts. Fed. R. Civ. P. 56(a). He has not carried his burden.

#### 1. Process Images

Sedlik identifies three allegedly infringing images documenting the process of inking the Tattoo: the picture of the Tattoo in progress posted to Kat Von D's and High Voltage's Instagram and Facebook pages (Exs. 203, 204, 212, 213), the "messy progress shot" on Instagram and Facebook, dkt. 35-21 (Ex. 207), dkt. 35-22 (Ex. 208), and a video posted to Kat Von D's Instagram Stories of the work in progress, dkt. 35-31 (Ex. 217).

Defendants argue that these images "do not in any way achieve a purpose that is the same as, or highly similar to, that of the original work[.]" Def. Opp'n at 17. Sedlik argues that the posts were for the purpose of displaying a portrait of Miles Davis. Dkt. 148 (Pl. Opp'n) at 14. This appears doubtful as a reasonable juror could have trouble even discerning that the "messy progress shot" depicts Miles Davis, and both parties seem to agree that the Portrait accounts for only about 10% of the other images. Id. at 15; Def. Mot. S. J. at 24. This is

11

evidence that the posts have a different purpose or function than the Portrait. Whether the process images have a transformative purpose is a triable issue of fact.

There is also a triable issue of fact as to whether these posts were commercial. Generating traffic to one's social media page using copyrighted material is "within the type of 'profit' contemplated by Worldwide Church." Northland Fam. Plan. Clinic, Inc. v. Ctr. For Bio-Ethical Reform, 868 F. Supp. 2d 962, 979 (C.D. Cal. 2012). Kat Von D testified that her social media posts were not for the purpose of generating profit or customers for High Voltage Tattoo. Dkt. 35-11 (Ex. 26), Dep. Kat von D 32:7–25, 33:15–23. A jury may find otherwise. Even if she did not seek to generate financial profit with her posts, a jury may conclude that Kat Von D "stood to gain recognition among [her] peers in the profession" and increase the value of her brand. See Weissmann v. Freeman, 868 F.2d 1313, 1324 (2d Cir. 1989). Weighing the alleged transformative purpose of the social media posts against their commercial nature, the Court finds there is a triable issue of fact as to whether the first factor favors fair use.

The reasoning applicable to the second and third factors under the Court's analysis of the Tattoo is also applicable to the social media posts, because the second and third factors consider the original work. The same elements and pose copied from the Portrait for the Tattoo were necessarily reproduced in the social media posts of the Tattoo.

The fourth factor "encompasses both (1) the extent of market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original and the market for derivative works." McGucken, 42 F.4th at 1163. Neither Sedlik nor Defendants have identified evidence or law that allows for a determination with respect to the potential markets for the social media posts. Defendants argued before Warhol that "[o]n the fourth factor, social media photographs and videos of the tattoo in various states of progress are not remotely substitutes for the primary market for Sedlik's Photograph." Def. Mot.

12

Summ. J. at 24. But this conclusory statement is not sufficient. The section of Sedlik's brief analyzing the social media posts does not mention the fourth factor. Pl. Opp'n at 14–16.

Where neither party meets its burden on cross motions for summary judgment "due to the inadequate briefing on the relevant legal issues and the insufficient factual support provided therein," both motions will be denied. Sheedy v. BSB Properties, LC, No. 2:13-CV-00290-JNP, 2016 WL 6902513, at *5 (D. Utah Mar. 1, 2016). There is a triable issue of fact as to whether the social media posts caused actual market harm to Sedlik, and whether widespread use of the portrait on social media would have an adverse impact on the potential markets for the Portrait and its derivatives.

### 2. Completed Picture

The completed Tattoo was posted to both Kat Von D's and High Voltage's social media profiles. Dkts. 35-23 (Ex. 209), 35-24 (Ex. 210), 35-25 (Ex. 211), 35-28 (Ex. 214), 35-29 (Ex. 215), 35-30 (Ex. 216), 35-31 (Ex. 217). Both sides acknowledge that the analysis with respect to these photos is different. Def. Opp'n 18–19; Pl. Opp'n at 15. However, neither side applies the four factors to both the process images and completed images separately. The analysis and conclusions with respect to the first and fourth factor likely differ between the two. The Court cannot decide whether these social media posts are fair uses as a matter of law. Therefore, Sedlik's motion for summary judgment as to the social media posts is DENIED.

## IV. Conclusion

The Court GRANTS both parties' motions for reconsideration. Having reconsidered, the Court revises its determinations as described above.

IT IS SO ORDERED.

Date: October 10, 2023

Dale S. Fischer
United States District Judge

13