# EXHIBIT G

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY B. SEDLIK,<br>　　　Plaintiff,<br><br>　　　　v.<br><br>KATHERINE VON<br>DRACHENBERG, et al.,<br>　　　Defendant. | CV 21-1102 DSF (MRWx)<br><br>ORDER ON MOTIONS *IN LIMINE* (Dkts. 76, 78, 80, 83, 84, 85, 86) |

Before the Court are motions *in limine* filed by Defendants Katherine Von Drachenberg, Kat Von D, Inc., and High Voltage Tattoo, Inc. and Plaintiff Jeffrey Sedlik.[1]

### 1. Defendants' Motion *in Limine* #1 (Dkt. 76)

Defendants move to exclude Sedlik as an expert. In addition to arguments about the substance of Sedlik's opinions, his qualifications, and whether his testimony is proper rebuttal testimony, Defendants argue that Sedlik should be precluded from testifying in his own case because he has a financial stake in the litigation. Dkt. 77.

As a preliminary matter, the Court notes there is a dispute about whether this motion is an untimely Daubert motion. Dkt. 100 at 3. The scheduling order set May 19, 2021 as the deadline for all motions other than motions in limine as April 18, 2022. Dkt 19 at 1, 5. Sedlik

---

[1] All rulings on motions in limine are tentative. The issues may be raised again during trial—outside the presence of the jury—if circumstances change.

filed his Daubert motion on March 16, 2022. Dkt. 34. "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009). In the absence of a specific deadline for Daubert motions, it was reasonable to file this motion as a motion in limine.

Sedlik seeks to serve as a rebuttal expert witness to Catherine Monty or David Lane (who will testify if Catherine Monty is unavailable). Monty and Lane have been permitted to testify on licensing in the tattoo industry exclusively "for the purpose of establishing lack of willfulness[.]" Dkt. 71 at 8. Sedlik's expertise does not clearly bear on this issue. While he may have experience in setting aspirational licensing standards for the tattoo industry, he has not shown any expertise when it comes to the norms of that industry relating to willful infringement. Dkt. 152 (Supp. Mem.) at 3–5. Sedlik is not permitted to testify as to whether tattoo artists should seek licenses.

Defendants' MIL #1 is GRANTED.

## 2. Defendants' Motion *in Limine* #2 (Dkt. 78)

Defendants seek an order excluding Sedlik from introducing any evidence or argument related to Defendants' profits because there was no timely disclosure pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii) and because there is no causal nexus between the infringement and Defendants' profits. Dkt. 79.

A "copyright infringement plaintiff seeking to recover indirect profits damages under 17 U.S.C. § 504(b) must proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as the result of the infringement." Mackie v. Rieser, 296 F.3d 909, 911 (9th Cir. 2002) (emphasis added). The "district court must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits." Id. at 915. A "copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally

2

significant relationship to the infringement" and "a plaintiff seeking to recover indirect profits must 'formulate the initial evidence of gross revenue duly apportioned to relate to the infringement.'" Polar Bear Prods. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004) (quoting 4 Nimmer on Copyright § 14.03[B], 14-39). A "trial court is entitled to reject a proffered measure of damages if it is too speculative." Mackie, 296 F.3d at 915 (quoting Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 513 (9th Cir. 1985)).

The bar for showing causation is low, but there is still a bar – one that Sedlik cannot clear. In opposing the motion, Sedlik points to no evidence that creates any link between the photos of the Tattoo on social media and profit Defendants earned. Sedlik simply claims that "[t]here is no question that Katherine Von Drachenberg received profits from her infringement of Sedlik's Iconic Miles Davis Photograph. That is why she posted it on social media, to get those profits by enhancing her business and obtaining new business through notoriety and promotion." Dkt. 101 at 3.

However, if Defendants' social media profiles are profitable, it is more likely that Defendants' use of the copyrighted material was commercial under the first fair use factor. Compare Fed. R. Evid. 401 with 17 USC §107. Particularly if profits were yielded from the allegedly infringing posts. Evidence of Defendants' profits to demonstrate damages is inadmissible, but evidence of profits may be admitted to demonstrate commercialism under the first fair use factor.

Defendants' MIL #2 is GRANTED in part.

### 3. Defendants' Motion *in Limine* #3 (Dkt. 80) and Sedlik's Motion *in Limine* #2 (Dkt. 84)

The parties dispute whether Blake Farmer can testify as to the meaning he assigns his tattoo. Defendants move to clarify this Court's prior rulings and seek an order allowing testimony from Blake Farmer as to the meaning of his tattoo. Dkt. 80. Sedlik opposes. Dkt. 102. Sedlik also filed his own motion seeking an order preventing Blake

3

Farmer from discussing the reasoning and meaning behind the tattoo. Dkt. 84. Defendants oppose. Dkt. 96.

Since filing the *motions in limine*, Defendants have represented to the Court that they do not seek to elicit testimony from Blake Farmer about the meaning he ascribes to the Tattoo. Rather if they call Farmer "it will be for nothing other than to say: I didn't pay anything for this tattoo and here's what it looks like." Tr. Oct. 30, 2023 9:3–7. Defendants would like to show the jury what the Tattoo looks like on Farmer's arm, "which is a little bit different than on the photograph." Id. The Court deems this to be relevant and potentially helpful testimony. Id. However, the personal meaning Farmer attaches to the Tattoo is not.

Sedlik's MIL #2 is GRANTED and Defendants' MIL #3 is DENIED.

### 4. Sedlik's Motion *in Limine* #1 (Dkt. 83)

The parties dispute whether Katherine Van Drachenberg can use the word "free-hand" in her testimony. Sedlik argues that the "tattoo industry" commonly understands free-hand tattooing to mean the artist sketches the tattoo directly on skin and does not use a stencil as Drachenberg did here. Dkt. 83 at 3. Defendants counter that Sedlik has not presented any evidence of this definition and that it is clear from Katherine Van Drachenberg's testimony that she used a stencil.

The Court agrees with Defendants. This can properly be addressed through cross-examination. Drachenberg's description of her process clearly describes the use of a stencil. Dkt. 95-3. She uses "free-hand" to describe how she fills in and creates the rest of the tattoo after the initial stencil. Id. ¶¶ 11-12. The jury is unlikely to be made up of members of the "tattoo industry" who might construe "free-hand" to indicate no stencil was used at all. The risk of confusion and prejudice is low if it exists at all. Fed. R. Evid. 403.

Sedlik's MIL #1 is DENIED.

4

### 5. Sedlik Motion *in Limine* #3 (Dkt. 85)

Sedlik moves to exclude evidence and argument related to nine of Defendants' affirmative defenses because of lack of evidence or because Defendants did not raise arguments related to these affirmative defenses at summary judgment. Dkt. 85 (claiming that Defendants' First, Second, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh affirmative defenses have "been abandoned as Defendants failed to raise [them] in their motion for summary judgment" and claiming that Defendants' Second, Seventh, Eighth, Ninth, and Tenth affirmative defenses are moot because "Defendants have offered no evidence" to support them).

Defendants were not required to move for summary judgment on these issues in order to assert them at trial. They have not abandoned these defenses.

Sedlik's MIL #3 is DENIED.

### 6. Sedlik's Motion *in Limine* #4 (Dkt. 86)

Sedlik moves to bifurcate damages and liability. Dkt. 86. Fed. R. Civ. P. 42(b) allows a court to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" for "convenience, to avoid prejudice, or to expedite and economize." District courts have broad discretion over trial management and the decision to bifurcate claims. Graves v. Arpaio, 623 F.3d 1043, 1047 (9th Cir. 2010). "Factors to be considered when deciding whether to bifurcate a trial include: complexity of issues, factual proof, risk of jury confusion, difference between the separated issues, the chance that separation will lead to economy in discovery, and the possibility that the first trial may be dispositive of the case." Bordegaray v. Cnty. of Santa Barbara, No. 2:14-CV-8610-CAS(JPRx), 2016 WL 7260920, at *9 (C.D. Cal. Dec. 13, 2016).

Sedlik has not shown that the factors weigh in favor of bifurcation. The Court declines to bifurcate.

Sedlik's MIL #4 is DENIED.

### 7. Sedlik's Motion *in Limine* #5 (Dkt. 157)[2]

Sedlik moves to preclude Defendants from arguing, suggesting, or presenting evidence that the license agreement for the Davis Photograph between Bryan Vanegas and Sedlik is unusual or not a valid license. Sedlik argues that this evidence will confuse the jury and prejudice Sedlik. Dkt. 157 at 3. Sedlik never explains the relevance of the Vanegas license. However, he presumably wishes to present evidence of this license in order to show that there is a derivative market for tattoo licenses of his photograph under the fourth factor of 17 U.S.C. § 107. Dkt. 50 at 17–18; Dkt. 143 at 1; Dkt. 150 at 7–9. Sedlik provides authority for the proposition that his license to Vanegas is valid and legally enforceable. Dkt. 157 at 3–5. The validity of the license is not at issue. Defendants may present evidence rebutting that the license shows a derivative market in the tattoo industry for photographic references, including testimony that Vanegas did not seek a license prior to using Sedlik's photograph as a reference for the tattoo he inked (dkt. 165-2 (Ex. 1) at 9:7–14), the fabricated nature of the request for the license (id. at 12:4–13:18), the fact that the license was not signed by Vanegas (dkt. 165-3 (Ex. 2)), and the lack of payment from Vanegas (id.).

Sedlik also seeks to preclude evidence that he bullied Vanegas to obtain the license. When Vanegas was deposed, he characterized his encounters with Sedlik as "bullying." Dkt. 165-2 23:3–8, 29:14–18. If Sedlik introduces evidence of the license, he opens the door to evidence of the circumstances surrounding it. Vanegas's testimony is relevant to

---

[2] The Court is told that Sedlik's attorneys have failed to comply with the Court's Order by filing *motions in limine* without meeting and conferring with opposing counsel. Dkt. 165-1 (Decl. Grodsky) ¶4. "Counsel are to meet and confer to determine whether opposing counsel intends to introduce the disputed evidence, etc. and to attempt to reach an agreement that would obviate the motion[.]" Dkt. 19 (Order Re Jury Trial) 5. Future disregard of the Court's orders may result in sanctions.

6

the fourth fair use factor and its probative value is not substantially outweighed by unfair prejudice.

Sedlik's Mil #5 is DENIED.

IT IS SO ORDERED.

Date: January 11, 2024

Dale S. Fischer
United States District Judge

7